# IN THE
## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MARYLAND

| | |
|---|---|
| *PROPRIA PERSONA*  RYAN DILLON-CAPPS | Civil Action No. ___ **24 CV 3744** |
| *Plaintiff,* | |
| vs. | Hon. _____ |
| **Ohana Growth Partners, LLC et al** | |
| *∴ SEE TABLE OF DEFENDANTS ∴* | **CIVIL COMPLAINT** |
| *Defendants* | FOR WRONGFUL TERMINATION AND OTHER VIOLATIONS UNDER FMLA; & CONSTITUTIONAL AND OTHER FEDERAL RIGHTS AND PROTECTION VIOLATIONS & CIVIL ENTERPRISE RICO WITH VICARIOUS LIABILITY |

USDC– BALTIMORE
'24 DEC 27 PM12:22

**HD**

Rcv'd by: _____

| |
|---|
| **SEEKING PERMISSION TO** |
| PROCEED IN FORMA PAUPERIS WITH MARSHALL PERSONAL SERVICE, COPY SERVICES, AND COURT ASSIGNED COUNSEL WITH SPECIAL RELIEF |
| **REQUESTING EMERGENCY EX PARTE HEARING FOR** |
| EMERGENCY INJUNCTIVE RELIEF TO STOP A JUDICIARY COVERUP; & APPOINTMENT OF A SPECIAL MASTER TO INVESTIGATE SYSTEMIC CORRUPTION; & STATE-LEVEL NEGOTIATIONS ON STRUCTURAL AND SYSTEMIC REFORM |
| **AND** |
| INTERLOCUTORY SUMMARY JUDGEMENT FOR DECLARATORY JUDGEMENTS AND MONETARY RELIEF WITH SPECIAL RELIEF TO BE GRANTED AND ORDERED TO BE PAID IMMEDIATELY |
| **AND** |
| PERMISSIVE CONDITIONAL JOINDERS |
| **AND** |
| ALTERNATIVE DISPUTE RESOLUTION WITH CONDITIONAL DEMAND FOR JURY TRIAL |
| AMOUNT IN CONTROVERSY EXCEEDS $75,000 |

2024-12-26

## PREFATORY STATEMENT

1      There are portions of the complaint that could be considered less formal or even

irreverent, and it should be noted that no statements are reflective of a generalized opinion.

2      This filing should be considered the first part. All claims and counts not fully stated or

not stated at all are reserved.  Furthermore, nothing about this filing should be viewed as

relinquishing any claim or count in part or whole, and this applies to civil, criminal, and other

applicable pursuits.

3      On Exhibits, whereby a zip of files is numbered, the number indicates the Exhibit to

which it belongs and is considered the supplemental portion of the exhibit.

### INCORPORATING PREFATORY APPENDIX A-C

**4      Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are**

**hereby incorporated by reference into this filing:**

| Prefatory Appendix A | Table of Defendants |
| Prefatory Appendix B | Cause of Action Table |
| Prefatory Appendix C | Table of Exhibits |

## INTRODUCTION

5      Civil action number C-03-CV-24-002264 in the Circuit Court for Baltimore County was

absent any procedural safeguards, the opposing party did not have a single material non-perjured

statement or piece of evidence in their favor and the Defendants were the only ones issuing

threats. Ohana Growth Partners, LLC breached the written accord that President Justin

Drummond entered into with Ryan Dillon-Capps on June 7th, and Ryan Dillon-Capps was

denied all fair and just opportunities to be heard during the entirety of the lawsuit that was

dismissed without prejudice on November 6th.

6      The lawsuit, filed on June 14, 2024, falsely stated that Ryan Dillon-Capps had refused a

lawful order, and they were seeking injunctive relief because the refusal was a breach of

employment agreement and a breach to duty of loyalty. Count III went so far as to say that refusal was in violation of criminal statute Md. Code Ann., Crim. Law., §7-302. Paragraph 31 of the complaint reads:

> "Ohana has suffered a specific and direct injury because of Defendant's violation of and therefore is entitled, pursuant to MD. CODE ANN., CRIM. LAW., §7-302(g), to bring a civil action against Defendant for that violation to recover Ohana's actual damages and reasonable attorneys' fees and court costs."

7       It is ridiculous to imagine someone describing their singular injury as "specific and direct", and the Defendants are the only ones who have inflicted any harm. Filed with the complaint, at the top of page 4 of Richard Hartman's, head of Huaman Resources, affidavit it reads:

> *"Somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave."*

8       The lawsuit in question was adjudicated in direct violation of the **Norris-LaGuardia Act (NLA)**. Consequently, the state court's continued assertion of jurisdiction over this matter was unlawful, constituting a fundamental overreach. If the case has not been dismissed without prejudice, any rulings made under such circumstances would still be rendered void **ab initio**.

9       Furthermore, the employer admitted to violating Ryan Dillon-Capps' **Family and Medical Leave Act (FMLA)** rights. The precedent established in **Cehrs v. Northeast Ohio Alzheimer's Research Center**, 155 F.3d 775 (6th Cir. 1998), reinforces the employer's obligation under the **Americans with Disabilities Act (ADA)** to provide leave as a reasonable accommodation when necessary to address a qualifying condition.

10      Exhibit 102 provides key supporting documentation:

1.      **Pages 4–7:** Completed WH-381 form from January 8th.

2.    **Pages 10–13 and 18–21**: Original WH-380-E form completed January 22nd, and the recertification from March 12th.

3.    **Page 22**: A healthcare provider's note dated November 23, 2013, explicitly diagnosing Ryan Dillon-Capps with **Posttraumatic Stress Disorder (PTSD)** and **Panic Disorder with Agoraphobia**, confirming eligibility for ADA accommodations.

11    Circuit Court Judge Michael S. Barranco adjudicated the June 26th and 27th hearings for preliminary injunction and civil contempt. On **page 56 of the June 26th Hearing Transcript**, it is stated:

> *"The Court has jurisdiction over the claim, so that's not an argument, I'm just telling you right now."*

12    The next statement made:

> *13    "...if you contend that they're violating the law, and I'm not sure I even need to hear about that, but if they did, then if you have a federal claim, assuming they're violating the law, I'm making no such finding, fine, you can pursue that claim either administratively or -- or by law. You can go down to federal court and file a -- a, if there is such a private cause of action for violation of the FLMA"*

14    Eight pages prior to that statement, soon-to-be former attorney Robert S. Brennen addressed the court, stating:

> *15    "The facts, which are established in the record that's already before the Court, and I don't think there's any dispute of it is, this concept that the -- a demand was made to, uh, the defendant on June 13th, an hour after he'd asked for -- for FMLA leave, uh, and we're forcing him to work"*

16    Within the eight pages preceding Brennen's statement, there is no catastrophic event or argument that could conceivably justify any judicial uncertainty regarding the explicit admission and confirmation of violations. It is indisputable that, by this point, multiple jurisdictional challenges had been raised, including issues of multi-state consumer protection violations, unlawful business practices, and clear violations of the **Family and Medical Leave Act (FMLA).**

17      This was not merely a standard hearing. It was a **Preliminary Injunction** hearing combined with a **Civil Contempt** proceeding—both of which stemmed from fundamentally flawed judicial decisions. The hearing itself was granted by Defendant Truffer, who had already denied a formal request pursuant to **Maryland Rule 15-504(f)**. This denial occurred after an ex parte **Temporary Restraining Order (TRO)** was issued without notice on June 17th. The TRO was granted by Defendant DeSimone Jr. one hour before Dillon-Capps with served notice of the complaint, a sequence of events that underscores the procedural misconduct at play.

18      Defendant Barranco imposed a punitive contempt fine of **$2,500 per day**, reflecting an intentional and egregious misrepresentation of the facts. Despite sworn testimony confirming the **Family and Medical Leave Act (FMLA)** violations just moments before, Barranco pretended that no FMLA case existed. He claimed willful defiance on the part of Dillon-Capps, despite clear evidence that every reasonable effort had been made to comply with the court's directives. This contempt ruling underscores a deliberate pattern of misconduct, where punitive measures were issued based on fabricated justifications entirely divorced from the reality of the case.

19      Six days later, Barranco escalated his overreach by issuing a **show cause order** seeking incarceration. This action was taken despite the established FMLA violations and the clear procedural flaws in the issuance of the Preliminary Injunction. The court's actions demonstrate a systematic effort to suppress valid claims, intimidate parties into submission, and deny Dillon-Capps his federal rights under the guise of judicial authority.

20      The argument that the state and its actors possess immunity in this case has already been thoroughly dismantled. The lawsuit's unlawful and jurisdictionally prohibitory nature, stemming from violations of the **Norris-LaGuardia Act (NLA)**, voids any claim of immunity. Moreover,

Judge Barranco explicitly waived jurisdiction of FMLA matters to federal court, covering all related case and controversy elements arising from the civil **RICO enterprise conspiracies.**

<u>INCORPORATING MEMORANDUM OF LAW IN OPPOSITION TO IMMUNITY</u>

21      Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Memorandum of Law | Opposition to Immunity |
|---|---|

22      Dillon-Capps has submitted an abridged version of the memorandum but possesses hundreds of pages of detailed arguments ready for submission if required. These arguments include issues involving foreign investors, joint employers, interstate commerce, and numerous other critical elements, all of which remain reserved for future review.

23      To further illustrate one such argument, specifically addressing the **9th Amendment,** we turn to **Nevada Dep't of Human Resources v. Hibbs,** 538 U.S. 721 (2003). This landmark case underscores the principle that state actors are not immune from liability under federal statutes like the **Family and Medical Leave Act (FMLA).** Judge Barranco's conduct during the June 26th hearing exemplifies a blatant disregard for this established precedent.

> "I know you might think it's related, uh, but in the Court's view that is a separate matter."

24      Dillon-Capps pleads:

> "-- erm, on both days I was forced to worked. Erm, on the 13th I submitted a cease and desist saying they're encroaching on my FMLA, please let me have my FMLA time"

25      This exchange illustrates a blatant instance of **interference with FMLA leave,** a direct violation of **29 U.S.C. § 2615(a)(1),** which explicitly prohibits:

> "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

26      With **29 U.S.C. § 2611(4)(A):**

> The term *"employer"* includes:
> - Any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> - **Any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer;**
> - Any successor in interest of an employer;
> - Any public agency, as defined in section 203(x) of this title.

27     By this definition, the following parties are implicated as employers under the FMLA: Miles & Stockbridge, P.C., Robert S. Brennen, Frenkil, Hoffberger, and Duvall, Defendant Truffer, and Judge Barranco.

28     Dillon-Capps is prepared to argue that others also fall within the statutory definition of an employer, further expanding the scope of liability.

29     The scale of coordinated harm in this case is so extensive that it connects multiple entities and individuals through a singular chain of unlawful actions. For example:

1.     **Back pay denial** violates Maryland Wage Law.

2.     **Paid leave denial** constitutes another violation for benefits withheld.

3.     The refusal to honor the leave request submitted through the Paycom system adds a third violation.

4.     **Termination during FMLA leave** is a fourth violation.

5.     **Email notification of termination** is a fifth violation.

6.     **Termination letter** is a sixth violation.

7.     **COBRA paperwork manipulation:** Address updates to route paperwork to others constitute a seventh violation.

8.     **Withholding COBRA paperwork** is an eighth violation.

9.     **Falsification of dates** on the paperwork, including information regarding health plans containing **HIPAA-protected data**, constitutes a ninth violation.

10.    **Mailing falsified paperwork** to Dillon-Capps constitutes a tenth violation.

30    Each of these violations is part of a coordinated effort that further underscores the magnitude of harm inflicted on Dillon-Capps and the systemic failures within this case.

31    This is merely the **abridged version** of a single chain of harm. Now consider the aggregate: six months of similar chains spanning **29 defendants**. But even that timeline is inaccurate because the FMLA-related violations began in January, making it a **12-month period**. Yet it doesn't stop there.

32    This chain of harm can be traced back to **October 16th**, where **accounting irregularities** revealed two additional enterprise conspiracies. Compounding this, **Ohana** was actively involved in covering up these conspiracies. This significantly expands the timeline by several years, long before the January FMLA violations. Even prior to these events, further conspiracies emerge, connecting back to the findings of the **December 2023 fraud investigation**.

33    All these chains lead directly back to the proceedings at hand, where **Holly Butler of Miles & Stockbridge** entered under the false pretense of conducting a legitimate investigation. In reality, Butler was assisting **Ohana** in fabricating pretexts for termination.

34    Most of the defendants were fully aware of these connections before committing their violations, which highlights the premeditated and coordinated nature of their actions. This underscores why Dillon-Capps avoided becoming entangled in this baseless and convoluted scheme. Yet, once it became clear that Dillon-Capps had uncovered the truth, the defendants began engaging in increasingly reckless legal decisions. Their actions are akin to a "Ricky Bobby" approach to litigation, recklessly wielding another legal "knife" to extract the multitude of felony-level violations already embedded in this case.

35    Upon discovering that Dillon-Capps had uncovered **digital manipulation of emails and documents,** what did **Ohana** and **Miles & Stockbridge** do? They brought Dillon-Capps before the Maryland Judiciary. This desperate move was akin to bringing a **drug-sniffing dog to a meth lab**—an act of sheer recklessness driven by the need to conceal their actions.

36    The state has since **remanded the case to federal court,** where sworn admissions and confirmations of key facts are now part of the record. Dillon-Capps asserts that, upon reviewing the submitted evidence and the conclusions of an emergency ex parte hearing—which will include testimony to be sealed—this Honorable Court will find the decision to grant the motions and judgment requested to be straightforward and in accordance with the law.

INCORPORATING INTEGRATED APPENDIX PRETEXT

37    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Integrated Appendix | Pretext |
|---|---|

INCORPORATING EXHIBITS 100-105 & 160-165

38    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Exhibit 100 | Intro Summary |
|---|---|
| Exhibit 101 | Court Record Summary |
| Exhibit 102 | FMLA and ADA |
| Exhibit 103 | Identity Theft, Insurance Fraud, and Mail Fraud |
| Exhibit 104 | Ruling Summary |
| Exhibit 105 | State of Maryland Summary |
| Exhibit 160 | December 12 Court Record Event Files |
| Exhibit 161 | December 12 Court Record Document Files |
| Exhibit 162 | Source Documents for Manual Match Records |
| Exhibit 163 | June 26th and 27th Transcripts ('current' version) |
| Exhibit 164 | M&S Emails |
| Exhibit 165 | M&S Fillings minus 6/14 from Attachments |

JURISDICTION AND VENUE

39      **THIS COURT HAS JURISDICTION TO HEAR** under 28 U.S.C. § 1331, as this case

arises under the U.S. Constitution and federal laws, including the Family and Medical Leave Act

(FMLA), Norris-LaGuardia Act (NLA), 42 U.S.C. §§ 1983, 1985, and 1986, and RICO.

Supplemental jurisdiction exists under 28 U.S.C. § 1367 for related state-law claims. Venue is

proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to these

claims occurred in the Circuit Court for Baltimore County (401 Bosley Ave, Towson, MD

21204), as a labor dispute where Ohana Growth Partners, LLC (212 W Padonia Rd, Timonium,

MD 21093) and Miles & Stockbridge, P.C. (100 Light St, Baltimore, MD 21201) claimed the

Plaintiff had refused to follow the directives issued by Glenn Norris, Victor Brick, Richard

Hartman, and Justin Drummond, constituting a breach of employment agreement, and duty of

loyalty; seeking injunctive relief.

40      The **jurisdictional violation** was filed on **June 14, 2024** (C-03-CV-24-002264), one day

after **Victor Brick, Glenn Norris, Richard Hartman,** and **Justin Drummond** subjected Ryan

Dillon-Capps to 12 hours of torment instead of allowing them to use the **FMLA leave** they were

approved for and had attempted to take for the second consecutive day.

41      However, the supposed "lawful" task imposed that day was anything but lawful. The

pretext for refusing Dillon-Capps their FMLA leave was to compel them to breach **six Franchise**

**Disclosure Documents**. Each document contained **two separate contracts** mandating **PCI**

**Compliance**. This demand required Dillon-Capps to violate **twelve contracts** spanning

**Washington, California, Tennessee, Florida, Maryland,** and the **District of Columbia**.

42      Had Dillon-Capps complied with the unlawful demand, they would have breached those

contracts in direct violation of **PCI Standards**, which exist to protect **consumer rights**. Such

actions would also constitute **unfair business practices violations** in connection with consumer protection laws.

43      Why was this demand so important to **Ohana Growth Partners, LLC**? It wasn't. If it had been, the **accord entered into six days earlier** by company President **Justin Drummond** with Ryan Dillon-Capps would have been honored on **June 10th and 11th.** The accord would have made Drummond a **PCI Compliance Officer**, granting him direct authority and access to provide access himself. Instead, Drummond evaded fulfilling the agreement and misled Dillon-Capps into believing it would be satisfied the following week.

44      Why did they go through all this trouble? The answer is simple: **money.** Dillon-Capps knows exactly why they did it, what it was for, and the precise day they achieved their objective. For now, the public answer remains money. They sought to refinance and were working on a deal to acquire liquidity.

45      To achieve this, they concealed **accounting irregularities, a hostile workplace environment, years of defamation,** and **fraud.** In their efforts, they even enlisted the help of **Miles & Stockbridge, P.C.** to facilitate and cover up these actions.

46      Since **January 4th,** Dillon-Capps has been on intermittent **FMLA leave,** during which time **Glenn Norris** deliberately sabotaged the IT Department. The quality of Dillon-Capps' work was so impeccable and well-supported by data that the only way they could fabricate a case against them was by falsely claiming poor performance. Despite this concerted effort to undermine them, Dillon-Capps continued to sacrifice their health for the benefit of the company and their team. The harder **Ohana, Hartman,** and **Norris** worked against Dillon-Capps, the harder Dillon-Capps worked to support and protect their IT Department colleagues.

47    **Ohana, Hartman,** and **Norris** systematically stripped away every aspect of Dillon-Capps's former position. Dillon-Capps was denied control and access to funding, forced to delegate technical work to others, and deprived of the autonomy to work independently. They had no input on hiring or firing decisions, while Norris personally managed projects and team members. Despite this, Dillon-Capps spent months advocating for the IT Department, holding out hope that reason and common sense would eventually prevail. They did not.

48    Instead, Dillon-Capps endured a month-long **"gauntlet" of open abuse**, during which Norris deliberately obstructed all legal solutions. To clarify, resolving the matter required Norris to provide just **one legitimate reason** for granting access—a requirement he promised to fulfill multiple times in conversations with other parties. While this might sound trivial, it was anything but. The justification represents the **jurisdictional threshold for PCI Compliance**—the minimum standard necessary to ensure secure compliance. Granting access without such justification would have been reckless, exposing the company to significant risks. Improper access remains one of the leading causes of organizational breaches, as evidenced by cases like **FTC v. Wyndham,** which was presented to the circuit court.

49    Yet, Norris refused to act because it was all a pretext. This becomes evident when **Drummond** entered into a **written accord** over text. Shortly thereafter, **Hartman Executive Advisors** was introduced into the equation, further complicating matters and solidifying the coordinated nature of the conspiracy.

## FAMILY MEDICAL LEAVE ACT

50    On June 14, 2024, at 12:18 PM, Lead Counsel Robert S. Brennen (Principal), Stephen D Frenkil (Principal), and Victoria K. Hoffberger(Associate) from Miles & Stockbridge P.C. (100 Light Street, Baltimore Maryland 21201, Baltimore City County) as Counsel for Ohana Growth

Partners, LLC (212 West Padonia Road, Timonium Maryland 21093, Baltimore County) filed

the civil action against Ryan Dillon-Capps seeking temporary, preliminary, and permanent

injunctive relief under the pretext that the Plaintiff refused to provide Global Administrator

rights to their employer.

---

*"Dillon-Capps claimed that Ohana's efforts to regain control of its own systems, MS 365 Account somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave"*

**Richard Hartman's June14 Affidavit**

---

*"Effective immediately, June 13, 2024 , you are suspended from your employment with Ohana Growth Partners until further notice . This is due to your insubordination and failure to comply with directives from superiors, described in part to you in the email sent to you earlier today" ... "The suspension is without pay" ... "During this period of suspension, you are" ... "not authorized to" ... "have any electronic, internet, physical, or other access to or connection with any company property or systems, including but not limited to company IT systems and equipment."*

**June13 Suspension Letter from Richard Hartman's June14 Affidavit**

---

*"Thank you for your attention to this matter. I am doing the best I can, and technically, since I said I would tell them when I was back, my FMLA leave is still active. If they believe something else to be true, please inform them that as a result of the escalated hostility, I will be on FMLA leave until further notice. The statement about there being no other administrators is incorrect. LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there have been some gaps in Azure administration. I would like to provide this access to Dante Martinez, who is the Help Desk Manager. The gap in understanding what the Global Administrator role does underscores how their statements do not qualify as expert testimony."*

**RDC Email on June18 at 5:30pm to Brennen**

---

*"The facts, which are established in the record that's already before the Court, and I don't think there's any dispute of it is, this concept that the — a demand was made to, uh, the defendant on June 13th, an hour after he'd asked for -- for FMLA leave, uh, and we're forcing him to work"*

**Robert Brennen under oath, hearing transcript from June 26, 2024, page 48**

---

*"Your communication yesterday about your need for FMLA time off, <u>to which you are entitled</u>, makes self-evident the reasons for the company's demand".*

*"Glenn has signed an agreement on behalf of OGP with Hartman Executive Advisors (HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3 pm today.*

**Hartman's Email on June13 at 9am Email from Richard Hartman's June 14 Affidavit**

---

> *"I am writing to inform you that I will be taking leave under the Family and Medical Leave Act (FMLA) for mental health reason"..." because the hostile work environment, excessive hours, and the investigation were negatively affecting me physically, emotionally, and mentally"... "I have been experiencing daily panic attacks that sometime last hours, severe anxiety, and every part of my life has been negatively affected."..."I am re-requesting a thorough investigation into several unusual and concerning discoveries that appear to contain accounting irregularities, libel, and fraud. I request that the investigation into the allegations of a hostile work environment resume immediately. I also ask that appropriate actions be taken against those responsible in accordance with company policies and applicable laws."*
>
> **RDC Email on Jan4: FMLA Notice for Mental Health,**
> **Filed on July 2 with Motion to Reconsider Continuance**

51      The Plaintiff initially requested **FMLA leave** on **January 4, 2024**, promptly completing and returning the required paperwork. In response to Ohana's request for additional information, the healthcare provider submitted a supporting letter. Despite these efforts, the Plaintiff faced ongoing harassment and targeted attempts to damage their reputation, which made it impossible to take any meaningful time off to make use of their leave. Resulting in full **FMLA entitlement** unused.

52      While still on approved **FMLA leave**, the Plaintiff was unlawfully terminated on **July 30, 2024**, just six weeks later. This termination represents a blatant violation of the **Family and Medical Leave Act**, which explicitly prohibits adverse employment actions against employees during approved leave.

## THREE THOUSAND FIVE HUNDRED WORKING HOURS LATER

53      The Plaintiff's experience is akin to being held hostage for over five months, as multiple groups of conspirators acted independently yet in concert to compound the harm. Each group's actions were tied to the Plaintiff's confinement in a fraudulent lawsuit, where judges, clerks, and oversight agencies colluded against them.

54      Victor Brick, Glenn Norris, Richard Hartman, and Justin Drummond led  orchestrated the first conspiracy, unleashing a relentless seven-month campaign of coordinated systemic retaliation and harassment. This was followed by a barrage of malicious abuse, with the Plaintiff

pleading for the coercive threats to end. Even after the Plaintiff offered compliance in search of reprieve, Norris continued his abuse for hours, ignoring repeated warnings from the Plaintiff that the mistreatment was causing severe harm. Norris, Hartman, and Victor Brick intentionally induced panic attacks and directed other employees to engage in harassment and retaliation which culminating in the Plaintiff's first catatonic episode during the period known as "the gauntlet," from May 20 to June 13.

55    On June 13, the employer, Ohana Growth Partners, LLC, escalated to a new level of misconduct during a 12-hour day of gaslighting and manipulation. Glenn Norris, Richard Hartman, Victor Brick, and Justin Drummond breached a written accord, interfered with FMLA leave, denied reasonable ADA accommodations, retaliated against another employee, and misled the Plaintiff into believing that other employees, their spouse, and even the Plaintiff themselves were in imminent danger. The day culminated in a sudden and abrupt suspension that contradicted the fabricated narrative of the entire gaslit day.

56    On June 14, their co-conspirator filed the lawsuit, in the first 13 days the second conspiracy Robert Brennen of Miles & Stockbridge, County Clerk Ensor, Judge DeSimone Jr, Judge Truffer, and Judge Barranco interfered with FMLA leave, denied ADA accommodations, violated federal prohibitions on injunctive orders, defied federal supremacy, violated appointment doctrine, breached consumer protection laws in Washington D.C., Maryland, Washington, California, Florida, and Tennessee, violated federal injunctive prohibitions, interfered with the Plaintiff's FMLA leave, and violated Ryan Dillon-Capps 1st, 5th, 6th, 8th, 9th, 13th, and 14th Amendment rights. Turning a civil lawsuit into a series of systemic human rights abuses that induced dissociative episodes and dissociative amnesia.

57      Over the course of more than five months, the original conspirators—Ohana Growth

Partners, LLC and Miles & Stockbridge, P.C.—delegated most of their efforts to a second group

of conspirators: a coalition of Robert Brennen, Clerk Ensor, and Judges DeSimone Jr, Truffer,

Barranco, Battista, Alexander, Mayer, Stringer, and Robinson Jr.

58      The coalition capitalized on the induced catatonia; turning it into malignant catatonia,

obstructed the judicial process; forcing the plaintiff into financial default, and crafted a court

record to destroy the plaintiff's credibility.

59      After County Administrative Judge Robinson Jr., Director of Investigations Bernstein,

Bar Counsel Degonia II, and Judges Stringer and Mayer learned that the harm induced exceeded

what the Plaintiff could recover from and without relief would function as a death sentence; The

conspirators efforts focused on ensuring the Plaintiff cannot seek or obtain relief by obstructing

avenues for potential redress. The coverup also focused on destroying or changing records,

ignoring mandatory hearings to prevent relief, and deliberately targeting at undermining the

plaintiff's credibility and obstructing access to relief. The deadly consequences of their

intentions are as transparent as the previous conspirator's fraudulent court record and confessions

of violating the law.

60      The trilogy of malicious conspirators levied a relentless bombardment of consecutive

attacks, magnifying and compounding on top of one another to create a colossal scale of harm

that places the Plaintiff's life in jeopardy. Their sustained campaign of calculated and egregious

conduct inflicted unrelenting physical, emotional, and financial damage, with each successive

blow amplifying the severity of the last.

61      Every act of retaliation was designed to impose their will, compel subjugation, and

ensure the Plaintiff remained defenseless, constrained, silenced, and stripped of the means to

seek reprieve. The conspirators' feverish intensity to harm the Plaintiff resulted in an incomprehensible volume of reprehensible violations of state and federal protections, rights, doctrines, and statutes—all under the umbrella of escalation. In their reckless pursuit of malignant goals, they discarded caution and inadvertently exposed the systemic corruption that fueled their actions.

62    Akin to the police arriving at a kidnapper's hideout and, instead of rescuing the victim, actively assisting the kidnappers in burying the victim alive, the Bar Counsel and Director of Investigations conspired to separate the Plaintiff from life-saving relief after the judiciary had already caused catastrophic harm by taking turns targeting a helpless victim. [i]

INCORPORATING AFFIDAVITS ON HEALTH AND FINANCIAL HARM

63    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Notice | Affidavits |
|---|---|
| Affidavit | Caroline Dillon-Capps [Health] |
| Affidavit | Ryan Dillon-Capps Financial Harm |

THE UNACCEPTABLE AND DEFICIENT STANDARDS OF THE JUDICIAL ACTIVIST

64    Moving from the federal courts in Washington D.C. to the Circuit Court of Baltimore County, the Plaintiff was not prepared for the pre-civil rights era of policies and procedures rewritten to obfuscate their inherent racist and ableist intentions.  Intentions kept alive through discriminatory enforcement that has remained shielded by the same systemic corruption that conspires now.

65    The entering assumption was that their differences in rule and policy enforcement was Pro Se bias, and while there are elements of truth that have amplified the discrimination in the Plaintiff's previous case the truth was far more illegal.

66    The emerging pattern was initially mistaken for a preferential bias connected to the

prestige of the law firm, and outliers being excused away from an unknown influence from the

former employer. After the Judiciary and Attorney oversight committee's involvement was

confirmed, the Plaintiff reviewed previous assumptions and records.  This wasn't prestige bias –

it was favoritism toward the "racist acceptability standard".

67    Policies and their enforcement designed to meet the minimum legal requirements and

merely avoid overtly racist language or actions while permitting implicit biases and

discriminatory impact. The structural racism being redirected toward the Plaintiff's disability

reveals an egregious measure of tolerance, and the unified language issued out from the

conspirators is a demonstrative act that reflects this standard previous success to prevent

corrective measures.

68    Clerk Ensor has taken it upon herself to "be part of the solution" by positioning herself in

a role where she controls the access to the Circuit Court for Baltimore County. She determines

the merits, she determines worthiness, she determines accessibility.  She won't let procedural

abuse stop her from solving the problem of guilty people not being found guilty anymore.

**Ruling Moot on Motions and Marking Filings Deficient  is one in the same to Judge Ensor**

**and County Clerk Ensor.**

69    Every action, every word, every letter, every second violated the Plaintiff's federal rights

and protections.

| "In the end, justice is not just a right; it is the bedrock of human dignity. Denying it leaves people dehumanized and society corrupted." — **Robert F. Kennedy** |
| --- |

### THERE IS NO QUESTION THAT…

70    The employer violated FMLA leave and retaliated because they admit to interference and

then admit to retaliation. The law firm engaged in a lawsuit without a proper purpose because

they filed a civil action with Richard Hartman's affidavit confession to violating FMLA leave, and the attached exhibit containing the statement that the suspension was "in part" retaliation. Every ruling by the circuit court judges exceeded the bounds of their judicial discretion because every ruling judge unanimously supported the employer's position in an employment dispute filed as an injunction. The County Clerk breached her Ministerial duties because the lawsuit is a violation of the Norris-LaGuardia Act.

71      There is no question that from the moment the lawsuit was filed Ohana Growth Partners, LLC, Miles & Stockbridge, P.C., Circuit Court of Baltimore County, and Baltimore County Office of the Clerk for the Circuit Court were violating federal rights, protections, statutes, and supremacy.

72      The court case never had any merit, and everything filed was without a proper purpose because the law firm confirmed the employer had violated federal protection and rights, and filed the lawsuit along with the affidavits proving everything filed was without proper purpose. The ruling judges ruled in favor of a case without proper purpose. The court record stands as a body of evidence reflecting bias against the Plaintiff and favoritism toward the law firm and employer. The Bar Counsel and Director of Investigations acted against their duty, and provided private information that benefited the employer, law firm, ruling judges, and county clerk.

73      The Defendants wrongdoing is fully documented, and the court record is immediately available for the court to review.  This civil action is presented with only a fraction of the applicable violations, and the arguments made focus on the merit of the relief and nuances of the law because the egregious conduct of the employer, law firm, ruling judges, county clerk, bar counsel, and director of investigations has caused catastrophic harm and there is no need to

relitigate their guilt.  The body of evidence is well documented, and discovery and depositions will only further support the already known facts.

74      The Plaintiff now faces a medical emergency, financial default with the remaining resources directed toward necessities like food, and reputational damage so profound that professional contacts who once inundated the Plaintiff with thanksgiving well-wishes have now fallen silent. This stark contrast underscores the devastating impact of the Defendants' actions.

## PLAINTIFF REPEATS

75      Every single piece of paper from the opposing party in litigation, every letter of every word from adjudication or magisterial decision, and every minute of every day since the commencement of action on June 14, 2024, is a violation of one or more of the Plaintiff's constitutional and federal rights and protections.

76      This lawsuit arises from violations of protections, rights, judicial discretion, federal supremacy, statutes, and torts, all deliberately committed to silence the Plaintiff. The trilogy of conspiracies represents the latest group of enterprise conspirators with vicarious liability, having knowingly joined a conspiracy chain and becoming equally liable for its entirety. Fully aware of the chain's branching links—alleged and proven to include an even longer list of felonies than their own—they willingly aligned themselves with its unlawful conduct

77      The previous violations sought to prevent disclosure of the unlawful conduct uncovered and reported in 2023. These revelations exposed a sprawling chain of conspiracies, with branching links that stretch endlessly resembling a poorly crafted novel packed with too many disconnected plots.

78      The "orgy of evidence" makes the unbelievable even harder to believe for those newly exposed to the conspiracy chain, enabling its continued growth. Foes disguised as friends induce

complicity, and by the time the unwitting realize "unbelievable" is not the same as "impossible," they are already too entangled to escape.

79     The Plaintiff warns against moderation in action because this is not a mindless virus robbing people of choice or will.

80     County Administrative Judge Robinson Jr. didn't convince Director of Investigations Berstein to join a conspiracy covering up misconduct they were duty-bound to investigate. Robert Brennen, Steven Frenkil, and Holly Butler from Miles & Stockbridge, P.C. wasn't lurking in the shadows to meet with the Ruling Judges, DeSimone Jr., Truffer, Barranco, Alexander, Battista, Mayer, Stringer, and Robinson Jr., after hours with envelopes of cash. The County Clerk didn't suddenly implement new policies or issues office memorandums on changes for the enforcement of policies. The Bar Counsel DeGonia II didn't suddenly become incapacitated, lose their vision, and forget about the grievance filed.

**81**     These are not coincidences either – it is systemic corruption, their actions are premeditated and coordinated, and the malignancy is entrenched into the heart of the Maryland judiciary.   These Statements of fact are backed by admissions, confirmations under oath, court records, supporting evidence, and by established, repeatable, and verifiable methodology

INCORPORATING INTEGRATED APPENDIX COVERUP

82     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Integrated Appendix | Coverup |
|---|---|

## RELIEF AND JUDGEMENT

PLAINTIFF HAS ALREADY WON

83     This is not overconfidence or arrogance—it is a statement of fact. The lawsuit was not filed with a few misleading statements and a hint of pretext—it reads like a tabloid cover story. I

didn't believe the tabloids when they claimed Bigfoot was having a movie star's baby, and similarly, the authors of these filings and affidavits only spoke the truth unintentionally. Out of the side of their mouths, they inadvertently admitted to violating the Plaintiff's **FMLA leave** and accidentally revealed that the claims of needing relief were a fabrication—including the outright denial of an entire department's existence.

84      **Richard Hartman** and **Robert Brennen** respond to every single perceived challenge by committing fraud, spoliation, perjury, or whatever else is necessary. As they flail about trying to harm others, they reveal just how incredibly dishonest they are.

85      Take Hartman's removal of his wife from her billing administrator role to support the perjured statement that no other administrators existed—despite the existence of an entire **Help Desk** department of administrators with whom he regularly interacted. The level of detachment from reality required to commit perjury and spoliation while believing an entire department would go unnoticed is astounding.

86      It is becoming increasingly difficult not to use expletives to emphasize the sheer absurdity of the situation, which can only be described as consuming a truly ludicrous amount of **wacky laughy coco puffs** to sustain such a delusion.

87      Ohana's President Justin Drummond enters into a written agreement on June 7th to gain access, only to claim on June 14th that the Plaintiff was denying him access. The Defendants act as if the passage of time changes the fabric of reality and all that is needed to resolve the problem with honesty and facts is to declare "I disagree" and if they commit enough crimes then the "court record" will agree with them too.

88      This is not a case of "he said, she said." The evidence speaks for itself: **emails, agreements,** and **admissions.** Yet, none of it seems to matter because the law firm and former

employer have already proven, through their own actions, that their claims are lies. No reasonable person could believe that anything filed or ruled in their favor is legitimate—hence, the desperate need for a cover-up.

89      So, how does a lawsuit so blatantly fraudulent persist for five months? The answer is simple: **more fraud**.

90      If every filing lacks a proper purpose, then every ruling in their favor is equally without a proper purpose. This means every filing and ruling—essentially, anyone other than **Ryan Dillon-Capps** who has taken action in, on, or around this lawsuit—has violated one or more **fundamental rights** or **legal principles**. Even the **County Clerk** is complicit, as their policies fail to accurately reflect the statutes they are supposed to enforce, and when in doubt change the form to create a reason.

91      These flawed policies have not eradicated discrimination; they have merely transformed it. What was once overt **racism** has evolved into broader, generalized discrimination that now targets a wider population. However, let's be clear: **more hate doesn't eliminate racism—it just hides it better.**

92      The two experts filed perjured statements, and questions must be asked to determine who was involved.

93      At this stage, non-ruling judges, clerks, **Judiciary Information Systems (JIS), Office of Administrative Hearings (OAH), Office of the Attorney General (OAG),** and the **OAG Civil Rights Division,** along with other contacted parties not directly involved in the conspiracy, are being collectively attributed to the **State.** This distinction is immaterial at this point, as all these entities could—and should—have done more to intervene. Naming them individually at this time would waste judicial resources and increase litigation costs unnecessarily.

94    This situation reflects a logistical failure of the judicial system, underscored by systemic

corruption involving the **Bar Counsel, Director of Investigations, County Clerk,** and **County**

**Administrative Judge.** However, the conspiracy involving the **Senior Judge** and six other

ruling judges in collaboration with **Miles & Stockbridge, P.C.** transcends mere systemic

failure—it constitutes a malignant corruption of the judiciary itself.

95    Chambers USA 2024 may want to reconsider the glowing quote featured on Robert

Brennen's company profile, which reads:

| 96    "Robert Brennen is a highly talented lawyer, hard-working, and very well respected by the bench." |
| --- |

97    The Plaintiff has firsthand experience of what "very well respected" feels like—it feels

like the deprivation of constitutional rights.

INCORPORATING MEMORANDUM OF LAW IN SUPPORT OF INTERLOCUTORY PARTIAL SUMMARY
JUDGEMENT

98    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby

incorporated by reference into this filing:

| Memorandum of Law | Support of Interlocutory Partial Summary Judgement |
| --- | --- |

INCORPORATING INTERLOCUTORY PARTIAL SUMMARY JUDGEMENT

99    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby

incorporated by reference into this filing:

| Relief | Interlocutory Partial Summary Judgement |
| --- | --- |

INCORPORATING EXHIBITS 106-110

100    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby

incorporated by reference into this filing:

| Exhibit 106 | Harm Summary |
| --- | --- |

| Exhibit 107 | Zero Evidence |
|---|---|
| Exhibit 108 | Counts, Sanctions, and More |
| Exhibit 109 | Multi-State, Consumer Protection Rights, and Unfair/Unlawful Business Practices |
| Exhibit 110 | Ex Parte, Injunction, and Judgement Hearing Notification |

## THE SCOPE OF HARM

101     Plaintiff, Darren Koritzka, Caroline Dillon-Capps, and the Planet Fitness Members of Washinton, California, Tennessee, Florida, Maryland, and the District of Columbia are known victims of the pretext used to file the unlawful lawsuit.

102     The unfortunate reality is that this situation surpasses the scale of many historical judicial scandals, such as **Operation Greylord** and the **Oklahoma County Commissioner Scandal**. In this case, conclusive evidence has already been obtained, and a motion for judgment is being pursued.

103     The following high-ranking individuals and offices within the Circuit Court for Baltimore County are implicated:

    1.      The County Administrative Judge,

    2.      The County Clerk,

    3.      A Senior Judge,

    4.      Six Associate Judges,

    5.      The Bar Counsel from the Attorney Grievance Commission, and

    6.      The Director of Investigations for the Judiciary Disabilities Commission.

104     This evidence demonstrates systemic misconduct within the judiciary, raising profound concerns about the integrity of judicial oversight and the fairness of proceedings in Maryland. This is no longer a matter of speculation but one of addressing verifiable and actionable corruption.

105    The implications of this case are monumental, likely necessitating the removal and permanent disbarment of the individuals involved. The path forward will be shaped by the judicial system's ability to hold its own accountable and restore public trust.

106    Disturbingly, the extent of the misconduct appears far-reaching. The Maryland judiciary has engaged in practices such as falsifying court records, interfering with electoral processes, and abusing judicial and magisterial authority to impose their subjective version of justice.

107    Evidence suggests these actions are not confined to the Circuit Court of Baltimore County. The full scope of this scandal will remain obscured until either a comprehensive formal investigation examines all Maryland courthouses and implicated private law firms or informal investigations bring the truth to light.

108    The true victims of this systemic corruption are those who believed their cases had reached closure. It is critical to emphasize that Ryan Dillon-Capps could have exposed these issues through the media, creating a public outcry. To date, Dillon-Capps has exercised restraint, but safeguards are in place to ensure that further interference will trigger others to act decisively.

109    Plaintiff respectfully requests that the court allow testimony under seal to provide critical details not included in the written filings. Additionally, Plaintiff encourages both named and unnamed parties to engage in direct, good-faith negotiations to resolve these matters and begin restoring confidence in the judiciary.

<u>PRAYER FOR RELIEF</u>

<u>INCORPORATING COUNTS, RELIEF, AND SUPPORTING FILINGS</u>

110    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure the following are hereby incorporated by reference into this filing:

| Complaint Integrated Appendix | Emergency Ex Parte Hearing |
|---|---|

| Proposed Order | Emergency Ex Parte Hearing |
|---|---|
| AO239 | In Forma Pauperis Form |
| USM28 | Personal Service Forms for Defendants |
| Complaint Integrated Appendix | In Forma Pauperis Relief with Limited Attorney Designation |
| Proposed Order | In Forma Pauperis Relief with Limited Attorney Designation |
| Complaint Integrated Appendix | State-Level Negotiations and Systemic Oversight Relief |
| Proposed Order | State-Level Negotiations and Systemic Oversight Relief |
| Resume | Timothy E Allen |
| Meet and Confer Letter | Attorney General Anthony Brown |
| Complaint Integrated Appendix | Conditional Permissive Joinder |
| Proposed Order | Conditional Permissive Joinder |
| Complaint Integrated Appendix | Interlocutory Partial Summary Judgement |
| Complaint Integrated Appendix | Counts |
| Memorandum of Law | Support of the Interlocutory Partial Summary Judgement |

<u>SINGLE CLAIM</u>

*"...it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"*-- **Russello v United States 464 US 16 23 78 L Ed 2d 17 104 S Ct 296 (1983)**

111    And...

> "Any attorney or other person admitted conducting cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and **<u>vexatiously</u>** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"-- **28 U.S.C. § 1927 - U.S. Code**

112    Dillon-Capps presents the argument for equity:

1.    In by *Safir v. U.S. Lines, Inc., 792 F.2D 19 (2D CIR. 1986).,* the **Second Circuit** the court ruled that **when litigation is pursued with improper motives, such as harassment or delay, and when the claims are clearly without merit,** the litigation becomes **<u>vexatious</u>**.

2.    The Maryland Court of Special Appeals case Tucker V. Woolery, 99 Md. App. 295, 637 A.2d 482 (1994) would call it an **abuse of the judicial process** and **warrants severe sanctions,** and the U.S.

3.    Supreme court case Caperton v. A.T. Massey Coal Co., 556 U.S. 868 would have the level of judiciary bias be called **"too high to be constitutionally tolerable."** - Justice Kennedy

113    The Defendants are 100% liable and their vexatious, severe, and too high to be constitutionally tolerable conduct, and there is no bulk discount for harm. Relief that isn't vexatious, severe, and too high to be constitutionally tolerable is declaring that Ryan Dillon-Capps does not deserve to be equitably relieved.

114    Here, **ad aequitatem** demands a remedy that fully accounts for the compounded and consecutive nature of the harm inflicted. Anything less than applying all multipliers consecutively to the cumulative damage fails to achieve fairness. The Defendants' deliberate, escalating misconduct has caused harm that equity requires be addressed in full—not minimized or diluted by arbitrary limitations.

115    Relief that ignores the compounding nature of the harm is not equitable; it is a miscarriage of justice. To restore balance and fairness, this Court must impose relief proportional to both the scale and the severity of the harm caused by the Defendants' actions. Equity demands nothing less.

116    During oral argument and testimony, Ryan Dillon-Capps will provide their insights on what this equates to, and it is based on 4 elements

1.    If the amount of monetary relief must be grater than the value of their gain or pursuit.  Otherwise, this becomes a profitable risk reward analysis, and it isn't a deterrent it is an encouragement.

2.    Consecutive compounding harm is vexatious, severe, too high to be constitutionally tolerable, and so anything less would not be equitable.

3.      Without the State of Maryland, they would have been unable to accomplish life threatening harm, reputational destruction, and financial ruin.  Therefore, the State of Maryland should immediately pay for all monetary relief and everyone else should become a debtor to the State of Maryland.

4.      The State of Maryland cannot go bankrupt, and therefore rules that limit relief on ability to pay are frivolous.  If the calculations made on a single dollar are logistically and legally sound in applying equitable relief then why would be give a bulk discount on harm because the number is "too high".  This is the case where "too high" begs the question – but it is equitable.

**Wherefore,** the Plaintiff respectfully requests that this Honorable Court grant the relief sought herein and issue an **opinion and order** following oral argument and testimony, fully addressing the legal and factual issues presented in this case.

RESPECTFULLY SUBMITTED

December 26, 2024                    Ryan Dillon-         Digitally signed by Ryan          1334 Maple Avenue
                                                             Capps               Dillon-Capps                      Essex, Maryland 21221
                                  /s/ Ryan Dillon-Capps                   Date: 2024.12.26 20:34:47     ryan@mxt3.com
                                    **Ryan Dillon-Capps**                       -05'00'                          703-303-1113