IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS<br><br>*Plaintiff,*<br><br>vs.<br><br>OHANA GROWTH PARTNERS, LLC et *al*<br><br>*Defendants* | Civil Action<br>No. _____<br><br>Hon. _____ |

## COMPLAINT INTEGRATED APPENDIX: PRETEXT

Plaintiff incorporates all subsequent sections and attachments herein by reference as though fully stated in this main document.

| Date | Event Summary |
|---|---|
| October 2023 | **Ryan Dillon-Capps** and the employer's senior accountable report accounting irregularities connected to **Andrew Dinh** and **Onsite Solutions, Inc**. The development department's IT and entertainment installer and discovered after the decision was made to turn over IT and entertainment installations to the Plaintiff as part of their upcoming promotion to the C-Suite.<br><br>**Glenn Norris** intervenes and actively prevents an internal investigation on the accounting irregularities from proceeding. |
| November 2023 | **Ryan Dillon-Capps** files a formal HR complaint after **Josh Geber** engages in harassment that is distinctly different that the discriminatory conduct of previous years. Circumstantial evidence suggests that **Glenn Norris** and **Justin Drummond** have been involved and this was retaliation connected to the October 16th accounting irregularities reported by the Plaintiff. The report also included **Joshua Beyer**, **Bill Flax**, and **Jared Flax** for their conduct connected to **Andrew Dinh** |
| December 2023 | **Fraud Investigation** begins in response to admission of felonies and confirmed modifications of defamatory emails are confirmed in connection to **Andrew Dinh** of **Onsite Solutions Inc.**, **Joshua Beyer**, **Bill Flax**, and **Jared Flax**.<br><br>**Ryan Dillon-Capps** discovered collusion between the development department and their vendor targeting the Plaintiff and a competing vendor, Cielo IT. This creates a conflict of interest because it changed the situation from investigating the fraud connected with an existing vendor believed to be misleading others involved to an active conspiracy targeting the Plaintiff . Prompting Dillon-Capps to request a 3rd party investigator.<br><br>**Ryan Dillon-Capps** initiated a search for legal representation after **Victor Brick** cancelled plans to meet less than a day after agreeing to the meeting. **Stephen Frenkil, Principal of Miles & Stockbridge, P.C.** was one of those contacted. The email response demonstrates his |

| Date | Event Summary |
|---|---|
| | involvement extending back to December 2023. The number of law firms that has previously represented **Ohana Growth Partners, LLC.** makes for an argument of regulations to prohibit an employer form effectively hiring every substantial law firm in the jurisdiction – effectively rendering legal representation of equivalent band/tier unreasonably difficult. The Plaintiff was getting recommendations from professional contacts only to have them also conflict out.<br><br>**Justin Drummond** informed the Plaintiff that **Holly Butler**, **Principal of Miles & Stockbridge P.C.** would be the 3rd party investigator requested. Butler contacted the Plaintiff via text the following day.<br><br>**Justin Drummond** arranged travel for **Joshua Beyer** for a "secret" meeting with **Victor Brick**; replacing the meeting to address the fraud with the Plaintiff |
| January 2024 | **Jan4: Ryan Dillon-Capps** request FMLA.<br><br>**Jan8: Karen Debus** provides **WH-381** stating the Plaintiff CANNOT be denied FMLA.<br><br>**Jan10: Richard Hartman's** first of many acts of **FMLA interference and retaliation** FMLA is to apply a more restrictive FMLA policy to the Plaintiff; claiming the company policy was to prohibit employees from working at all during FMLA leave.<br><br>**Jan22: Ryan Dillon-Capps** healthcare provider provides the completed **WH-380e** form connected to their **2013 PTSD diagnosis**. The form states the hostile workplace as a significant factor.<br><br>**Jan25: Richard Hartman** requests additional information on FMLA leave to find a pretext to deny FMLA.<br><br>**Jan31**: Healthcare provider provides a follow up letter. Since then, the employer has provided none of the required documentation on their FMLA leave except to say they are entitled to use it – while also engaging in interference or retaliation. Notably on May 25 Debus and June 13 Hartman.<br><br>Jan - The Plaintiff begins intermittent FMLA leave and formally requests ADA accommodations.<br><br>**Glenn Norris** assumes control of the IT department and proceeds to intentionally sabotage the department to create a pretext of ineffective leadership. Other employees are unaware Norris is running the department. |
| March 2024 | **Holly Butler** is accused of negligence, challenging the pretext of her involvement and false claim of being the 3rd party fraud investigator that the Plaintiff requested in December. In Response, the law firm and employer attempt to fabricate events (March 11–14) to justify the Plaintiff's termination.<br><br>**Richard Hartman** retaliates against the Plaintiff by closing the HR investigation and falsely stating an investigation had been conducted after a failed attempt to create pretext for terminating the Plaintiff.<br><br>**Glenn Norris** agrees to consult a law firm that is not Miles & Stockbridge P.C. regarding the aggravated identity theft, wire fraud, forgery, and other crimes connected to **Andrew Dinh's** unauthorized use of the Plaintiff's name on official compliance forms. |
| Wednesday March 20 | **Ryan Dillon-Capps** calls **Glenn Norris** at **3:32 PM** and **25 minutes and 16 seconds later**, **Glenn Norris** agrees to getting "**a second opinion**" from another law firm on **the felonies** associated with **Andrew Dinh's** unauthorized use of the Plaintiff identity to **attest formal** |

| Date | Event Summary |
|---|---|
|  | **online compliance documents** required by **Planet Fitness**, the Franchisor, to ensure new Planet Fitness locations meet technical compliance standards. takes time off to attend to their wedding. |
|  | **Glenn Norris** tells the Plaintiff that he had not taken the complaints seriously because he thought that the Plaintiff had a grudge [referring to the years of the harassment from **Joshua Beyer, Bill Flax, Jared Flax, and Andrew Dinh** (Norris' statement may have also included **Josh Gerber** through inference)] |
|  | **Glenn Norris** agreeing to "the second opinion" after the Plaintiff pointed out that the grudge theory was illogical because Dillon-Capps had not retaliated against the harassment before, no one in the IT Department has ever retaliated against them, and before any of "this" the Plaintiff had everything – promotion, Dinh had already been notified he was not going to be rehired, Beyer and the Flaxs were already notified that the Defendant was taking over all IT and Entertainment installation work, presumably Beyer had already told the other 3 about the promotion and they were aware of existing changes connected with the IT Department with complete support of Norris and other owners on the associated organizational changes. |
|  | No history of a grudge, no motive to start, and from the Development's perspective the Plaintiff had "won" a fight that Dillon-Capps didn't know they were in until after everything was reported and after learning their conduct was intentional, coordinated, and malicious – Dillon-Capps requested a neutral 3rd party investigator. |
|  | Glenn Norris immediately agreed and assured the Ryan Dillon-Capps that after the Plaintiff returned from their wedding a meeting with Glenn Norris, Justin Drummond, new attorney, and Dillon-Capps would occur so that the Plaintiff heard what the attorney had to say firsthand. |
|  | Ryan Dillon-Capps made final arrangements before disconnecting completely for their wedding. |
| Friday March 22 – Sunday March 24 | On or about March 22, an overlooked security system reflects an unauthorized change being made in Ohana Growth Partners, LLC Microsoft Cloud Solutions. Two days later, a script or similar mechanism is used to reduce the Company's Endpoint Security and Ransomware Protection. |
| Saturday March 30 - Monday April 1 | Changes are made to Ohana's Cloud that are detected in the security system has changes that impact Ransomware Protections. |
| Monday April 1 – Sunday April 7 | The system detects a gradual change at a constant rate for 6 days, suggesting that the changes made previously would be realized over time. The pattern matches what would be later found in May and immediately reported to the owners on May 26, 2024, at 8:44 PM with visual evidence of the changes. |
|  | In reverse order, the dramatic changes from May 24 bring systems back on to reflect nearly the same standing as before. |
|  | **Ryan Dillon-Capps wedding was on April 4, 2024**. |
|  | The evidence supports the following conclusions: |
|  | 1  **Glenn Norris** spoke with an attorney between March 20-22. |

| Date | Event Summary |
|---|---|
|  | 2  **Glenn Norris** had **Ryan Brooks** make an initial change on March 22-24, and **Ryan Brooks** then used another system or process to test and verify a working script that was executed on the 24th.<br>3  The following weekend additional changes were made based on what **Ryan Brooks** efforts to identify areas that still needed to be "taken care of"<br>4  Aware only that the Plaintiff had cancelled their honeymoon the exact moment of their return was unknown. **Ryan Brooks** runs a script so that it would be less obvious to anyone not looking at specific portions of the system. |
| April 7 – May 20 | **A conference** delays the Plaintiff's follow up, and when **Glenn Norris** does not engage about the attorney meeting the Plaintiff engages **Glenn Norris and Justin Drummond**. An overconfident **Glenn Norris** had combined the work of **Ryan Brooks** with conversations occurring during the conference to lay the groundwork for a plan to frame the Plaintiff.<br><br>**Glenn Norris** changing the previous obstruction strategy to pretending that the previous months never happened reframing those months as the Plaintiff "is the head of IT and if there is something wrong then the Plaintiff should address it because the Plaintiff has been the head of IT this entire time."  The CFO claiming they did not seize control of the department and spend the time since January 4 sabotaging the department.<br><br>Ryan Dillon-Capps had spent months preparing for a legitimate return of their position, and within days a series of rapidly executed and well-organized logistical structure sprung up. Immediately, department heads were given the opportunity to join technical meetings as observers, defined roles were issued.  Ryan Brooks began actively obstructing the process and was refusing to participate.  When Glenn Norris became aware of the transparency of meetings he wanted the Plaintiff to not allow others to voluntarily attend meetings as observers, wanted to have the Plaintiff stop providing meaningful updates about maintenance and other scheduling, and wanted the Plaintiff to stop all communication with anyone who wasn't in the IT Department – communication only to select people who would communicate what was important to others.<br><br>In the final days, Geoff VanMaastrict contacted the Plaintiff about the mandatory PCI DSS v4 compliance attestation.  Ryan Dillon-Capps replied to the Planet Fitness PCI Compliance Officer, stating that they would need a day to respond properly, inferring of a problem without any names or going into the specific details.  The Plaintiff was planning on speaking with Glenn Norris about the situation to see if Norris agreed that Brooks conduct was obstruction and unacceptable.  Before the Plaintiff could obtain a second opinion on the conduct, Ryan Brooks emailed the Plaintiff an outright refusal to collaborate or participate in any meaningful way.<br><br>The second opinion was no longer necessary following the overt email, and the Plaintiff immediately terminated Ryan Brooks and the associated Baltimore Consulting service agreement for Ohana Growth Partners, LLC.  Leaving the Brick Bodies agreement active for Ryan Brooks and Baltimore Consulting – aligning with what Glenn Norris and Ryan Dillon-Capps had agreed to do before Dillon-Capps went on FMLA leave. |
| "Gauntlet" May 20 - June 13 | **Glenn Norris** reveals, without a direct reference, that  he had misled the Plaintiff.  Informing Dillon-Cap's over multiple emails that the Plaintiff was not the head of IT nor have they been the entirety of the year.  Supporting previous communications, Norris clarified the year for the Plaintiff.<br>The plaintiff … |

| Date | Event Summary |
|---|---|
| | 1  Required permission or to be directly assigned tasks<br>2  Had no influence over the hiring and firing process<br>3  Had no authority to manage anyone<br>4   Was not allowed to perform IT work.<br><br>Confirming that since January 4's request for FMLA leave:<br>1  Glenn Norris and Richard Hartman's collective efforts were reflective of the Plaintiff's secret reassignment to the unemployment line<br>2  The entire time Norris and Hartman had intentionally made the work environment unbearable<br>3  Regardless of their intentions the new role did not qualify as exempt<br>4  All of the overtime the Plaintiff had been working in response to their efforts to make the work environment unbearable remains unpaid overtime.<br><br>**Victor Brick, Glenn Norris, Richard Hartman, Justin Drummond, Matt Norris**, and **Karen Debus** engage in a coordinated effort of escalating abuse, harassment, retaliation, and coercion against the Plaintiff,<br><br>**Richard Hartman** and **Glenn Norris** direct **LeeAnn Hartman**, **Kristen Seiler,** and **Karen Debus** to knowingly harass **Darren Koritzka** and the **Help Desk.**<br><br>**Richard Hartman** and **Glenn Norris** designed a subjective annual review process to replace one based on objective data because under the Plaintiff's leadership from February 2020 to December 2023 the IT Department had achieved unprecedented levels of success that was fully supported by objective data and backed by rigorous analysis.<br>**Richard Hartman** manipulates **Kali Roscoe** to act as his agent of retaliation in the annual review scheme. |
| June 6 | **Holly Butler** refuses to confirm Miles & Stockbridge, P.C. representation status for Ohana Growth Partners, LLC.<br><br>**Holly Butler** notifies **Richard Hartman** of Plaintiff's inquiry, and Hartman retaliates by notifying the Plaintiff the fraud investigation was closed with no findings. |
| June 7-10 | **Justin Drummond** accepts the Plaintiff texted proposal and agrees to satisfy the terms of the accord on June 10th and 11th; agreeing to become a PCI Compliance Officer for Ohana Growth Partners and receive access to an account with the Global Administrator role.  Enabling the President to give access on his own recognizance. |
| June 6-10 | **Ryan Dillon-Capps** challenges the absurdity of **Richard Hartman** claiming the Fraud Investigation yielded no findings by sending a series of emails to **Holly Butler**, CCing Hartman and the equity owners' screenshots of evidence of suspicious findings, supported allegations, and proven crimes. |
| June 12 | **June 12, 7:00 AM**: The Plaintiff notifies **Justin Drummond**, **Glenn Norris**, and **Richard Hartman** they need to make use of their intermittent FMLA leave**.  Glenn Norris** and **Richard Hartman** spend the workday **harassing** the Plaintiff, Darren Koritzka, and members of the Help Desk. |

| Date | Event Summary |
|---|---|
| June 13 | **7:00 AM**: Plaintiff emails **Justin Drummond**, **Glenn Norris**, and **Richard Hartman.** Explicitly stating they are taking the day as FMLA leave and would provide updates later regarding their return.<br><br>**9:00 AM**: **Richard Hartman** sent an email relaying a **coercive threat** from **Glenn Norris** – this is a pretext leveraging the unresponsive **Hartman Executive Advisors** to falsely claim that the Plaintiff was "refusing" to give access. The same week **that Justin Drummond intentionally evaded receiving the same access being demanded, and Drummond would make** no mention or request access on June 13th.<br><br>**12:00 PM**: Plaintiff responded to Hartman with a **cease-and-desist letter**, requesting confirmation that the threats and demands would stop, the email also confirms compliance with the demand and states the owners are included on the emails attempting to reach **Hartman Executive Advisors.**<br><br>**2:05 PM**: The Plaintiff escalated Richard Hartman and Glenn Norris' conduct to the company's **owners**, urging intervention to stop Hartman and Norris from further violating FMLA protections. This email also included reports of other legal concerns, constituting **protected whistleblowing activity**.<br><br>**2:20 PM**: **Richard Hartman** retaliated against **Darren Koritzka** by issuing a **paid leave of absence letter**, which is included in the court record. Koritzka notifies the Plaintiff saying that Hartman said "it is like a paid vacation"<br><br>**June 13, 2:20 - 7:30 PM**: Over the next **five hours**, the Plaintiff sent emails notifying key individuals and text messages to **Victor Brick** and **Justin Drummond**, documenting **Richard Hartman** and **Glenn Norris** conduct. **Justin Drummond** assures the Plaintiff that **Hartman Executive Advisors** will respond after receiving the update from Dillon-Capps that they are unresponsive and follow-up request for assistance reaching HEA.<br><br>**June 13, 9:30-10:00 PM**: Over **12 hours** after the original 9 AM threat, the Plaintiff received a **suspension email and letter** from Hartman. The Plaintiff responded by copying the **President**, who ultimately sanctioned the suspension |

## RESPECTFULLY SUBMITTED

**December 25, 2024**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113