**Ryan Dillon-Capps**

| | |
|---|---|
| **From:** | Ryan Wagner |
| **Sent:** | Thursday, January 4, 2024 12:24 PM |
| **To:** | Rich Hartman; Glenn Norris; Justin Drummond |
| **Cc:** | hbutler@milesstockbridge.com |
| **Subject:** | FMLA Notice for Mental Health |

Subject: FMLA Notice for Mental Health

Dear HR,

I am writing to inform you that I will be taking leave under the Family and Medical Leave Act (FMLA) for mental health reasons.

This letter is a follow-up to my email on 21 December 2023, in which I informed Glenn Norris, Justin Drummond, and Rich Hartman that I needed to take some time off. I asked for time off to recover, I asked for help, and I asked for some reprieve because the hostile work environment, excessive hours, and the investigation were negatively affecting me physically, emotionally, and mentally. This has not happened, and I have been experiencing daily panic attacks that sometimes last hours, severe anxiety, and every part of my life has been negatively affected.
I am re-requesting a thorough investigation into several unusual and concerning discoveries that appear to contain accounting irregularities, libel, and fraud. I request that the investigation into the allegations of a hostile work environment resume immediately. I also ask that appropriate actions be taken against those responsible in accordance with company policies and applicable laws.

I find it deeply troubling that HR has denied any knowledge of my previous reports nor any knowledge of formal reprimands against those responsible for creating a hostile work environment. This contradicts meetings with the CEO, myself, and these individuals where they were reprimanded and instructed to stop, and contradicts what I was told by the CFO when I asked if the CEO knew about the incidents that occurred after those meetings. The CFO said that the CEO had formally reprimanded the CDO in 2023. According to the email that the CFO inadvertently showed me during a shared screen video call, the head of HR immediately notified the CDO and CMO that I had filed a formal complaint against them.

After reporting the missing invoices and payments to Onsite Solutions, we notified them, and they immediately submitted hundreds of thousands of dollars worth of invoices. However, I would like to know if these invoices can account for the discrepancy extending further back than the last several months. My requests for additional team members have been denied every time despite providing detailed information about my team's workload being too high and how I was already working excessive hours to prevent my team from experiencing the entirety of the excess. After reporting the accounting irregularities and subsequent suspicious emails that appeared to contain libel and fraud, my workload began to increase dramatically, the frequency of our meetings increased, and the deadlines for these requests decreased to the point that I was being asked to provide complete analyses by the next meeting, which was sometimes the next day.

When the investigation began, I pleaded for us to bring in a digital forensic expert to take over because it overlapped the hostile work environment. I was forced to read the emails and conversations of those responsible for the hostile work environment between themselves and others. Communications explained why I had encountered so much hostility and disdain from people I never or rarely interacted with and why it was considered acceptable for a person to start yelling at me randomly. It explained how my interaction with the accounts payable manager, to which I was asking her questions about what she needed and wanted, resulted in another member of the accounts payable team yelling at me to "just get her what she wants." Since being yelled at without cause had become normalized, I responded, "That is the plan and why I am asking her questions." It explains all of those things and more because those responsible for the hostile work environment

1

were engaging in a campaign to turn others against me and portray me as a monster who goes out of their way to make the lives of others difficult. As anyone who has spent significant time with me can tell you, this is the polar opposite of who I am.

You do not need me to be involved; I do not need to be forced to relive these events. Shannon Anderson made the complaint in August of 2021 and is available to speak to. The emails and communications provide more than enough information on everything I have already mentioned and so much more.

I appreciate your understanding and support during this time. I will contact you as soon as I have more information about my return date.

Thank you,
Ryan Wagner

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
**Ohana Growth Partners, LLC**



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

FMLA & ADA Page # 2 of 33                    EXHIBIT   102



Americans with Disabilities Act of 1990
Businesses May ask:
1. Is this a Service Dog?
2. What tasks does the Service Dog perform?
Businesses May Not:
1. Require special ID for the dog.
2. Ask about the person's disability.
3. Charge fees because of the dog.
4. Refuse admittance, isolate, or treat this person less favorably than others.

A person with a disability cannot be asked to remove his service animal from the premises unless:
1. the animal is out of control and the animal's owner does not take effective action to control it.
2. the animal poses a direct threat to the health or safety of others.

Any business that sells or prepares food must allow service animals in public areas even if state or local health codes prohibit animals on the premises.

Refusal to provide equal access to people with disabilities with service animals is a federal civil rights violation, provided by the American Disability Act of 1990. Violators of the ADA can be required to pay money damages and penalties.

**Notice of Eligibility & Rights and Responsibilities**
**under the Family and Medical Leave Act**

**U.S. Department of Labor**
**Wage and Hour Division**



DO NOT SEND TO THE DEPARTMENT OF LABOR.
PROVIDE TO EMPLOYEE.

OMB Control Number: 1235-0003
Expires: 6/30/2023

In general, to be eligible to take leave under the Family and Medical Leave Act (FMLA), an employee must have worked for an employer for at least 12 months, meet the hours of service requirement in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. §§ 825.300(b), (c) which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

Date: 01/08/24 _____ (mm/dd/yyyy)

From: Karen Debus _____ (Employer) To: Ryan Wagner _____ (Employee)

On 01/04/24 _____ (mm/dd/yyyy), we learned that you need leave (beginning on) 01/04/24 _____ (mm/dd/yyyy) for one of the following reasons: (Select as appropriate)

☐ The birth of a child, or placement of a child with you for adoption or foster care, and to bond with the newborn or newly-placed child

■ Your own serious health condition

☐ You are needed to care for your family member due to a serious health condition. Your family member is your:

    ☐ Spouse        ☐ Parent        ☐ Child under age 18    ☐ Child 18 years or older and incapable of self-care because of a mental or physical disability

☐ A qualifying exigency arising out of the fact that your family member is on covered active duty or has been notified of an impending call or order to covered active duty status. Your family member on covered active duty is your:

    ☐ Spouse        ☐ Parent        ☐ Child of any age

☐ You are needed to care for your family member who is a covered servicemember with a serious injury or illness. You are the servicemember's:

    ☐ Spouse        ☐ Parent        ☐ Child        ☐ Next of kin

Spouse means a husband or wife as defined or recognized in the state where the individual was married, including in a common law marriage or same-sex marriage. The terms "child" and "parent" include *in loco parentis* relationships in which a person assumes the obligations of a parent to a child. An employee may take FMLA leave to care for an individual who assumed the obligations of a parent to the employee when the employee was a child. An employee may also take FMLA leave to care for a child for whom the employee has assumed the obligations of a parent. No legal or biological relationship is necessary.

## SECTION I – NOTICE OF ELIGIBILITY

**This Notice is to inform you that you are:**

■ **Eligible** for FMLA leave. *(See Section II for any Additional Information Needed and Section III for information on your Rights and Responsibilities.)*

☐ **Not eligible** for FMLA leave because: *(Only one reason need be checked)*

    ☐ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately: _____ towards this requirement.
                                    *(months)*

    ☐ You have not met the FMLA's 1,250 hours of service requirement. As of the first date of requested leave, you will have worked approximately: _____ towards this requirement.
                         *(hours of service)*

Form WH-381, Revised June 2020

EXHIBIT  102

Employee Name: Ryan Wagner

☐ You are an airline flight crew employee and you have not met the special hours of service eligibility requirements for airline flight crew employees as of the first date of requested leave (i.e., worked or been paid for at least 60% of your applicable monthly guarantee, and worked or been paid for at least 504 duty hours.)

☐ You do not work at and/or report to a site with 50 or more employees within 75-miles as of the date of your request.

If you have any questions, please contact: Karen Debus/410-252-8058 x117 _____ *(Name of employer representative)*
at karen.debus@ohanagp.com/212 W. Padonia Rd., Timonium, MD 21093 _____ *(Contact information).*

## SECTION II – ADDITIONAL INFORMATION NEEDED

As explained in Section I, you meet the eligibility requirements for taking FMLA leave. Please review the information below to determine if additional information is needed in order for us to determine whether your absence qualifies as FMLA leave. Once we obtain any additional information specified below we will inform you, **within 5 business days**, whether your leave will be designated as FMLA leave and count towards the FMLA leave you have available. **If complete and sufficient information is not provided in a timely manner, your leave may be denied.**

*(Select as appropriate)*

☐ No additional information requested. If no additional information requested, go to Section III.

☑ We request that the leave be supported by a certification, as identified below.

   ☑ Health Care Provider for the Employee      ☐ Health Care Provider for the Employee's Family Member
   ☐ Qualifying Exigency                 ☐ Serious Illness or Injury *(Military Caregiver Leave)*

Selected certification form is ☑ attached / ☐ not attached.

If requested, medical certification must be returned by 01/20/24 _____ *(mm dd yyyy) (Must allow at least 15 calendar days from the date the employer requested the employee to provide certification, unless it is not feasible despite the employee's diligent, good faith efforts.)*

☐ We request that you provide reasonable documentation or a statement to establish the relationship between you and your family member, including *in loco parentis* relationships (as explained on page one). The information requested must be returned to us by _____ *(mm dd yyyy)* You may choose to provide a simple statement of the relationship or provide documentation such as a child's birth certificate, a court document, or documents regarding foster care or adoption-related activities. Official documents submitted for this purpose will be returned to you after examination.

☐ Other information needed *(e.g. documentation for military family leave)*: _____.

The information requested must be returned to us by _____ *(mm dd yyyy).*

If you have any questions, please contact: Karen Debus/410-252-8058 x117 _____ *(Name of employer representative)*
at karen.debus@ohanagp.com/212 W. Padonia Rd., Timonium, MD 21093 _____ *(Contact information).*

## SECTION III – NOTICE OF RIGHTS AND RESPONSIBILITIES

### Part A: FMLA Leave Entitlement

You have a right under the FMLA to take unpaid, job-protected FMLA leave in a 12-month period for certain family and medical reasons, including up to **12 weeks** of unpaid leave in a 12-month period for the birth of a child or placement of a child for adoption or foster care, for leave related to your own or a family member's serious health condition, or for certain qualifying exigencies related to the deployment of a military member to covered active duty. You also have a right

Form WH-381, Revised June 2020

EXHIBIT 102

**Employee Name:** Ryan Wagner

under the FMLA to take up to **26 weeks** of unpaid, job-protected FMLA leave in a single 12-month period to care for a covered servicemember with a serious injury or illness (*Military Caregiver Leave*).

The 12-month period for FMLA leave is calculated as: *(Select as appropriate)*

- ☐ The calendar year (January 1st - December 31st)
- ☐ A fixed leave year based on _____
  *(e.g., a fiscal year beginning on July 1 and ending on June 30)*
- ☑ The 12-month period measured forward from the date of your first FMLA leave usage.
- ☐ A "rolling" 12-month period measured backward from the date of any FMLA leave usage. *(Each time an employee takes FMLA leave, the remaining leave is the balance of the 12 weeks not used during the 12 months immediately before the FMLA leave is to start.)*

If applicable, the single 12-month period for *Military Caregiver Leave* started on _____ *(mm dd/yyyy)*.

***You (☑ are / ☐ are not) considered a key employee*** as defined under the FMLA. Your FMLA leave cannot be denied for this reason; however, we may not restore you to employment following FMLA leave if such restoration will cause substantial and grievous economic injury to us.

We (☐ have / ☑ have not) determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us. Additional information will be provided separately concerning your status as key employee and restoration.

## Part B: Substitution of Paid Leave – When Paid Leave is Used at the Same Time as FMLA Leave

You have a right under the FMLA to request that your accrued paid leave be substituted for your FMLA leave. This means that you can request that your accrued paid leave run concurrently with some or all of your unpaid FMLA leave, provided you meet any applicable requirements of our leave policy. Concurrent leave use means the absence will count against both the designated paid leave and unpaid FMLA leave at the same time. If you do not meet the requirements for taking paid leave, you remain entitled to take available unpaid FMLA leave in the applicable 12-month period. Even if you do not request it, the FMLA allows us to require you to use your available sick, vacation, or other paid leave during your FMLA absence.

*(Check all that apply)*

- ☑ **Some or all of your FMLA leave will not be paid.** Any unpaid FMLA leave taken will be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ☐ **You have requested to use some or all of your available paid leave** *(e.g., sick, vacation, PTO)* during your FMLA leave. Any paid leave taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ☑ **We are requiring you to use some or all of your available paid leave** *(e.g., sick, vacation, PTO)* during your FMLA leave. Any paid leave taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.
- ☐ **Other:** *(e.g., short- or long-term disability, workers' compensation, state medical leave law, etc.)*
  Any time taken for this reason will also be designated as FMLA leave and counted against the amount of FMLA leave you have available to use in the applicable 12-month period.

The applicable conditions for use of paid leave include: _____.

For more information about conditions applicable to sick/vacation/other paid leave usage please refer to _____
Employee Handbook _____ available at: Paycom Employee Self Service Portal _____.

Form WH-381, Revised June 2020

EXHIBIT  102

**Employee Name:** Ryan Wagner

## Part C: Maintain Health Benefits

Your health benefits must be maintained during any period of FMLA leave under the same conditions as if you continued to work. During any paid portion of FMLA leave, your share of any premiums will be paid by the method normally used during any paid leave. During any unpaid portion of FMLA leave, you must continue to make any normal contributions to the cost of the health insurance premiums. To make arrangements to continue to make your share of the premium payments on your health insurance while you are on any unpaid FMLA leave, contact Karen Debus/410-252-8058    at karen.debus@ohanagp.com        .

You have a minimum grace period of (■ 30-days or □ _____ *indicate longer period, if applicable*) in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided we notify you in writing at least 15 days before the date that your health coverage will lapse, or, at our option, we may pay your share of the premiums during FMLA leave, and recover these payments from you upon your return to work.

You may be required to reimburse us for our share of health insurance premiums paid on your behalf during your FMLA leave if you do not return to work following **unpaid** FMLA leave for a reason other than: the continuation, recurrence, or onset of your or your family member's serious health condition which would entitle you to FMLA leave; or the continuation, recurrence, or onset of a covered servicemember's serious injury or illness which would entitle you to FMLA leave; or other circumstances beyond your control.

## Part D: Other Employee Benefits

Upon your return from FMLA leave, your other employee benefits, such as pensions or life insurance, must be resumed in the same manner and at the same level as existed when your FMLA leave began. To make arrangements to continue your employee benefits while you are on FMLA leave, contact Karen Debus _____ at karen.debus@ohanagp.com _____.

## Part E: Return-to-Work Requirements

You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. An equivalent position is one that is virtually identical to your former position in terms of pay, benefits, and working conditions. At the end of your FMLA leave, all benefits must also be resumed in the same manner and at the same level provided when the leave began. You do not have return-to-work rights under the FMLA if you need leave beyond the amount of FMLA leave you have available to use.

## Part F: Other Requirements While on FMLA Leave

While on leave you (■ will be / □ will not be) required to furnish us with periodic reports of your status and intent to return to work every month _____.

*(Indicate interval of periodic reports, as appropriate for the FMLA leave situation).*

**If the circumstances of your leave change and you are able to return to work earlier than expected, you will be required to notify us at least two workdays prior to the date you intend to report for work.**

---

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

It is mandatory for employers to provide employees with notice of their eligibility for FMLA protection and their rights and responsibilities. 29 U.S.C. § 2617; 29 C.F.R. § 825.300(b), (c). It is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 10 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND THE COMPLETED FORM TO THE DEPARTMENT OF LABOR. EMPLOYEE INFORMATION.**

**From:** Ryan Wagner
**Sent:** Wednesday, January 10, 2024 5:32 PM
**To:** Rich Hartman
**Subject:** Clarification of Text Message Requested

@Rich Hartman On 10 January 2024, you sent me the following text message

> When I say preclude I mean our practice.
> You are correct in that we cannot require
> you to work but it is not your choice to
> work while on leave. Our policy is to not
> allow work while on leave.

Can you please elaborate on what you are saying?

For 3 years, I have virtually never had vacation or personal day of leave where I did not work, and I have also worked on sick days and company holidays. This is equally true for the rest of the team members in a senior management or executive position. In the last few weeks, Glenn was on leave and him responding or not responding to something because he was on leave was a material part of the conversation. After saying I needed to take some time off, no one – including you, hesitated to reach out to me. I have an out of office message up, and people read that as a sign that for urgent issues they need to text me.

On Page 30 of the handbook, it shows that we allow for full or partial days of absences from FMLA

Under federal and state law, your salary is subject to certain deductions. For example, unless state law requires otherwise, your salary can be reduced for the following reasons:

- Full-day absences for personal reasons.
- Full-day absences for sickness or disability.
- Full-day disciplinary suspensions for infractions of our written policies and procedures.
- Family and Medical Leave absences (either full- or partial-day absences).
- To offset amounts received as payment for jury and witness fees or military pay.
- The first or last week of employment in the event you work less than a full week.
- Any full work week in which you do not perform any work.

From page 41 through 51 where it talks about our leave policies the only place that I found to use similar language of "not allowed to work on leave" is on page 45.

**D. No Work While on Leave**

The taking of another job while on family/medical leave or any other authorized leave of absence is grounds for immediate termination, to the extent permitted by law.

1 of 2

Except this appears to say that we are not allowed to take another job, not that we are prohibited from performing the duties for Ohana. Additionally, the reference on page 30 shows that we do not expect everyone to take FMLA and never perform any work. Logically, it does not make sense to me that Ohana would want the head of IT to suddenly become completely unavailable, and one would think that the head of IT voluntarily working when, where, and how they can so that it does not interfere with what they need for FMLA would be an exceptionally good thing. I am confused as to why you are not happy and celebrating me for my flexibility and dedication to Ohana.

Even if there was a written policy that said we are not allowed to work while on leave. For the same reason that all of us work while we are on leave, it is for the betterment of Ohana and we do it out of love for the company and each other.

If you want to prohibit me from working, then I need to understand why and I will need to know how we are communicating this out to others since this is a deviation from how we have worked in the past. I.E. Are we going to send out an email blast and what do I tell people when they ask me?

I do not even know right now how the 12 weeks of FMLA will ultimately be broken up. How will people know when I am back to work and then what are we doing about the times that I return to FMLA leave.

I am not authorizing Ohana to tell people that I am on FMLA leave. With very few exceptions, those who have been reaching out to me, personally and work related, do not know that I am on FMLA leave.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
Ohana Growth Partners, LLC



office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**Certification of Health Care Provider for
Employee's Serious Health Condition
under the Family and Medical Leave Act**

**U.S. Department of Labor
Wage and Hour Division**



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR.
RETURN TO THE PATIENT.

OMB Control Number  1235-0003
Expires  6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee at least **15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: Ryan Wagner
　　　　　　　　　First　　　　　　　　　Middle　　　　　　　Last

(2) Employer name: Ohana Growth Partners　　　　　　　Date: 01/08/24　　(mm/dd/yyyy)
　　　　　　　　　　　　　　　　　　　　　　　　　　(List date certification requested)

(3) The medical certification must be returned by 01/24/24　　　　　　　　　(mm/dd/yyyy)
　　(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)

(4) Employee's job title: Vice President of Information Technology　　Job description (☒ is / ☐ is not) attached.
　　Employee's regular work schedule: 40+ hours per week
　　Statement of the employee's essential job functions: Work w/executive leadership to develop and maintain IT roadmap and oversee day-to-day operations.
　　(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves *inpatient care* or *continuing treatment by a health care provider*. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Page 1 of 4

Form WH-380-E, Revised June 2020

EXHIBIT   102

Employee Name: Ryan Wagner

Health Care Provider's name: *(Print)* Megan Robison, LCSW-C

Health Care Provider's business address: 1045 Taylor Ave, Suite 211, Towson, MD 21286

Type of practice / Medical specialty: Mental Health Therapy

Telephone: (443) 814-9411____ Fax: (  ) _____ E-mail: meganrobisonlcswc@gmail.com

## PART A:  Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. After completing Part A, complete Part B to provide information about the amount of leave needed. Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1)  State the approximate date the condition started or will start: 05/15/13 _____ *(mm/dd/yyyy)*

(2)  Provide your **best estimate** of how long the condition lasted or will last: Chronic/Permanent

(3)  Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐  **Inpatient Care**: The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): _____

☐  **Incapacity plus Treatment**: *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from _____ *(mm/dd/yyyy)* to _____ *(mm/dd/yyyy)*.

The patient (☐ was / ☐ will be) seen on the following date(s): _____

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐  **Pregnancy**: The condition is pregnancy. List the expected delivery date: _____ *(mm/dd/yyyy)*.

☐  **Chronic Conditions**: *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

☑  **Permanent or Long Term Conditions**: *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

☑  **Conditions requiring Multiple Treatments**: *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐  **None of the above**: If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Form WH-380-E, Revised June 2020

**Employee Name:** Ryan Wagner

(4)   If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks

FMLA leave. *(e.g., use of nebulizer, dialysis)* Ryan experiences frequent, intense panic attacks, severe anxiety and agoraphobia. These episodes are particularly triggered by specific workplace stressors, including direct contact with certain colleagues. Episodes vary in frequency and intensity, leading to intermittent incapacitation that prevents him from performing regular daily activities. Ryan is engaged in psychotherapy, and is being referred for medication management as part of his treatment plan. Due to the unpredictable nature of these episodes, Ryan's ability to work is intermittently impacted, necessitating periods of FMLA leave for recovery.

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5)   Due to the condition, the patient (☑ had / ☑ will have) **planned medical treatment(s)** (scheduled medical visits)

*(e.g., psychotherapy, prenatal appointments)* on the following date(s): Twice per week, Mondays and Wednesdays
Ryan has been in ongoing psychotherapy and using stress reduction strategies. Despite these treatments, he continues to experience episodes that are unpredictable and significantly impair his ability to work. He reports that episodes are particularly exacerbated by the hostile interactions and environment in his workplace. His symptoms allow him to work in a limited capacity from home on non-consecutive days or outside regular business hours. Working from home is essential to mitigate the impact of the hostile workplace triggers and allow him to better manage panic attacks and agoraphobia.

(6)   Due to the condition, the patient (☑ was / ☐ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* Medication management/ Psychiatry

Provide your **best estimate** of the beginning date 01/16/24 _____ *(mm/dd/yyyy)* and end date Ongoing _____
*(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)*
Ryan will continue 2 sessions a week as symptoms persist, with ability to increase if needed.

(7)   Due to the condition, it is medically necessary for the employee to work a **reduced schedule**.

Provide your **best estimate** of the reduced schedule the employee is able to work. From 01/04/24 _____
*(mm/dd/yyyy)* to Ongoing _____ *(mm/dd/yyyy)* the employee is able to work: *(e.g., 5 hours/day, up to 25 hours a week)*
As his condition allows, Ryan may be able to work intermittently, varying week to week. Ability to work from home is essential due to triggers linked to the hostile work environment and His symptoms are more manageable at home.

(8)   Due to the condition, the patient (☐ was / ☐ will be) **incapacitated for a continuous period of time**, including any time for treatment(s) and/or recovery.

Provide your **best estimate** of the beginning date _____ *(mm/dd/yyyy)* and end date _____ *(mm/dd/yyyy)* for the period of incapacity.

(9)   Due to the condition, it (☑ was / ☑ is / ☑ will be) medically necessary for the employee to be absent from work on an **intermittent basis** (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur 1-3 _____ times per
(☐ day / ☑ week / ☐ month) and are likely to last approximately 1-2 _____ (☐ hours / ☑ days) per episode.

Page 3 of 4                                                                                    Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10)  Due to the condition, the employee (☐ was not able / ☐ is not able / ☐ will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform.

Ryan experiences panic attacks, anxiety and agoraphobia which severely limit his ability to commute to, and function in, a traditional office environment. Essential job functions impacted include tasks that require physical presence in the office, such as in-person meetings, on-site collaboration and immediate face-to-face response. During episodes of heightened agoraphobia, especially when triggered by direct interaction with specific individuals in the workplace, working from home becomes a necessary and reasonable accommodation. During severe episodes, he is incapacitated and unable to perform any work functions, whether remotely or in the office, necessitating intermittent leave.

Signature of
Health Care Provider  [signature] LCSW-C          Date 01/22/24          *(mm/dd/yyyy)*

---

### Definitions of a Serious Health Condition *(See 29 C.F.R. §§ 825.113-.115)*

#### Inpatient Care

- An overnight stay in a hospital, hospice, or residential medical care facility.
- Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

#### Continuing Treatment by a Health Care Provider (any one or more of the following)

**Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

- Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,
- At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care.

**Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616, 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.

| From: | Rich Hartman |
|---|---|
| Sent: | Thursday, January 25, 2024 5:40 PM |
| To: | Ryan Wagner |
| Subject: | Re: Clarification on FMLA Leave and Core Job Functions |
| Attachments: | Ryan Wagner WH-380-E Certificate of HCP.pdf |

Hi Ryan,

Thank you for providing FMLA paperwork completed by your healthcare provider on January 22, 2024. While we believe the time off you are seeking may ultimately be covered by the FMLA, we write seeking clarification regarding certain information in that certification form, which we need to designate your time off as FMLA. I also wish to provide further clarification with regard to our expectations in response to certain information in the certification form and the email you sent with it.

Your healthcare provider indicates that you have a chronic condition that requires planned medical treatments on Mondays and Wednesdays. In response to Question 5, your provider does not indicate whether such planned appointments occur during the workday and/or necessitate you to take time off from work. Please have your provider clarify the time of such appointments and the amount of time off from work that you will need to attend them. In response to Question 6, your provider states that you will continue 2 sessions a week, which we assume relates to the sessions described in response to Question 5. If in fact this is two additional medical appointments that you will have each week (i.e., 4 in total), please similarly have your provider indicate the time of day of those appointments and the amount of time off you will require to attend them.

In response to Question 7, your provider states that you will be able to work an intermittent schedule week to week, and that working from home may make your symptoms more manageable. In response to Question 9, your provider states that over the next six months, you may experience 1-3 periods of incapacity per week, lasting approximately 1-2 days per episode. Please ask your provider to confirm that the leave described in response to Question 9 is the "varying" and "intermittent schedule" being described in response to Question 7 and that you do not in fact need to work a reduced schedule each week other than in the event of a flare up as described in Question 9. If that understanding is incorrect, please ask your provider to clarify what reduced schedule you need each week, in addition to the time off you may need for a flare up.

I am enclosing a copy of your FMLA Certification for your convenience. Please have your provider answer these questions and provide clarification within seven (7) days. You can return the information to me via email. Failure to timely return this information may result in your loss of the protections guaranteed by the FMLA.

Within your FMLA paperwork, your healthcare provider identifies two requests that really are more appropriately considered as requests for accommodation: the ability to work from home and the ability to work outside of regular business hours. As your provider acknowledges, there are certain elements of your job that must be performed in the office. It is not clear whether your provider is stating that you are not able to work in the office at all or whether you are simply limited in some fashion from being able to do so. Please ask your provider to clarify this response so that we can consider whether we can accommodate you in this regard. In addition, the vast majority of your job duties are to be performed during regular business hours, when your colleagues are also working. Your provider does not explain why you need to work outside of regular business hours or how such an accommodation would allow you to perform your essential job functions. We also seek confirmation that you are in fact generally able to work regular business hours, subject to the flare ups and need to attend medical appointments as described above.

1 of 3

While we await this clarification, and to the extent you take any time off due to this condition moving forward, I want to reiterate the requirement that you provide advanced notice to Glenn and to me as soon as you become aware of the need to take leave. Our regular working hours are normally an 8 hour window between 7 am and 6 pm. If at any point during those regular working hours you realize that you are in need of leave, you can send an email, copying me and Glenn, simply stating that you are going to be taking FMLA beginning at a particular day/time and that you anticipate returning to work at a particular day/time. To the extent that information changes because you realize you need more or less leave than initially anticipated, please provide an updated email to the two of us, advising how much time off you then intend to take. Absent an emergency or documented inability to do so, this notice should be provided prior to the start of your taking time off. During the time you are taking FMLA, as we previously advised, you will be relieved of all job responsibilities. To the extent you do not notify us of your need for leave as described here, we will assume you are working and performing your assigned duties.

Finally, we seek clarification regarding the time off you have taken since the beginning of the year that is related to the health condition for which you are now seeking FMLA. Particularly, we wish to understand any time off you took during the regular working hours identified above, which may have prevented you from performing the job duties we otherwise would have expected you to perform. As you are aware, there are a number of assignments that have not been completed, and to the extent that is the result of your need for leave, which ultimately is covered by the FMLA once we receive clarification and are able to designate it as such, such delay would be excused. If you maintain that you have not taken any time off to date, we wish to get a better understanding from you regarding the status of these assignments, what is causing delay, and how we can ensure they are completed in a timely way. It would probably be best for you, Glenn, and I to meet together to discuss this.

As always, if you have any questions about the information in this email, please do not hesitate to contact me.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**



office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

**From:** Ryan Wagner <Ryan.Wagner@ohanagp.com>
**Sent:** Tuesday, January 23, 2024 3:30 PM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Subject:** Clarification on FMLA Leave and Core Job Functions

Greetings Rich,

Thank you for your detailed communication regarding FMLA policies and expectations. I am writing to provide clarification on my current situation, specifically regarding my intermittent FMLA leave and the execution of my core job functions during this period.

2 of 3

Enclosed is the completed FMLA form, as requested. My health condition requires intermittent FMLA leave, meaning there will be times when I am fully capable of performing my core job functions, and others when I am unable. My intention is to remain as productive as possible during my periods of wellness while strictly adhering to FMLA guidelines.

My role as Vice President of IT involves critical functions that often require my attention. These include overseeing IT operations, supervising the IT team, and contributing to strategic IT initiatives like the 2024 IT Roadmap and budget. The intermittent nature of my health condition means that providing advance notice of the exact times I will be working is challenging. However, I assure you that during the periods I am able to work, I will focus on critical tasks that align with my role's core responsibilities.

Given the unpredictability of my health condition, I will make every effort to ensure that my work activities during intermittent FMLA leave are documented and transparent. This approach aims to maintain compliance with FMLA provisions while ensuring the continuity of essential IT functions at Ohana Growth Partners.

I understand and respect the importance of adhering to FMLA guidelines and Ohana's policies. Should there be specific protocols or procedures you recommend for me to follow during this period, I am open to suggestions and will strive to incorporate them, balancing my health needs with my professional responsibilities.

Your support and understanding in this matter are greatly appreciated. I am committed to upholding both my health and my professional obligations to the best of my ability.

Respectfully,


This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Wagner**
Vice President of IT
Ohana Growth Partners, LLC

   office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093
www.planetfitness.com

**"Culture eats strategy for breakfast"**

# Megan Robison, LCSWC LLC

## Mental Health Therapist

January 31, 2024

Dear Mr. Hartman,

I am writing in response to your questions regarding Ryan Wagner's FMLA documentation.

Ryan has been and will continue meeting with me twice a week, on Monday and Tuesday during business hours. He has reported symptoms prior to and after appointments, lasting multiple hours, which impact his ability to complete work related tasks. He does have the ability to request urgent appointments in response to severe flare-ups, however these are not currently scheduled.

The intermittent FMLA leave is specifically for flare-ups as described. Ryan does not require a consistently reduced work schedule each week. His work capacity is directly affected by these episodic flare-ups, during which he is unable to work.

Due to the nature of Ryan's condition, working in a traditional office environment is very challenging. Accommodations such as the ability to work from home and flexible working hours are essential for Ryan to perform his job functions effectively. His condition severely limits his ability to commute to and function in a traditional office setting. Currently his symptoms severely limit his ability to work in the office, however his goal is to return to the office. Additionally, Flexible working hours allow Ryan to attend appointments, manage symptoms and continue to complete work when able.

Please contact me with any additional questions or concerns.

Thank you,

*Megan Robison signature* LCSW-C

Megan Robison, LCSW-C

MD License # 24852

**Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act**

**U.S. Department of Labor**
**Wage and Hour Division**



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR.
RETURN TO THE PATIENT.

OMB Control Number 1235-0003
Expires: 6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee at least **15 calendar days** to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. **You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308.** Additionally, you **may not** request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1) Employee name: Ryan Wagner
　　　　　　　　　　　First　　　　　　　　　Middle　　　　　　　Last

(2) Employer name: Ohana Growth Partners　　　　　　　Date: 01/08/24　　　(mm/dd/yyyy)
　　　　　　　　　　　　　　　　　　　　　　　　　　　(List date certification requested)

(3) The medical certification must be returned by 01/24/24
　　(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)　(mm/dd/yyyy)

(4) Employee's job title: Vice President of Information Technology　　Job description (☑ is / ☐ is not) attached.
　　Employee's regular work schedule: 40+ hours per week
　　Statement of the employee's essential job functions: Work w/executive leadership to develop and maintain IT roadmap and oversee day-to-day operations.
　　(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves *inpatient care* or *continuing treatment by a health care provider*. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You may, but are **not required** to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow disclosure of private medical information about the patient's serious health condition, such as providing the diagnosis and/or course of treatment.

Form WH-380-E, Revised June 2020

**Employee Name:** Ryan Wagner

Health Care Provider's name: *(Print)* Megan Robison, LCSW-C

Health Care Provider's business address:

Type of practice / Medical specialty: Mental Health Therapist, LCSWC

Telephone: (443) 814-9411        Fax: (   )                    E-mail: meganrobisonlcswc@gmail.com

## PART A:  Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. **After completing Part A, complete Part B to provide information about the amount of leave needed.** Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b).

(1)  State the approximate date the condition started or will start: 05/15/13                          *(mm/dd/yyyy)*

(2)  Provide your **best estimate** of how long the condition lasted or will last: Permanent

(3)  Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B.

☐  **Inpatient Care:** The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s):

☐  **Incapacity plus Treatment:** *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from                 *(mm/dd/yyyy)* to                 *(mm/dd/yyyy)*.

The patient (☐ was / ☐ will be) seen on the following date(s):

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐  **Pregnancy:** The condition is pregnancy.  List the expected delivery date:                 *(mm/dd/yyyy)*.

▩  **Chronic Conditions:** *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

▩  **Permanent or Long Term Conditions:** *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

▩  **Conditions requiring Multiple Treatments:** *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐  **None of the above:** If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Form WH-380-E, Revised June 2020

Employee Name: Ryan Wagner

(4)    If needed, briefly describe other appropriate medical facts related to the condition(s) for which the employee seeks FMLA leave. *(e.g. use of nebulizer, dialysis)*

The patient experiences frequent, intense panic attacks, severe anxiety, and agoraphobia. These episodes are particularly triggered by specific workplace stressors, including direct contact with certain individuals at work. The condition varies in frequency and intensity, leading to intermittent incapacitation that prevents the patient from working or performing regular daily activities during episodes. The patient undergoes ongoing psychotherapy and medication management as part of the treatment plan. Due to the unpredictable nature of these episodes, the patient's ability to work is intermittently impacted, necessitating periods of FMLA leave for recovery.

## PART B: Amount of Leave Needed

For the medical condition(s) checked in Part A, complete all that apply. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your **best estimate** based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage.

(5)    Due to the condition, the patient (☑ had / ☐ will have) **planned medical treatment(s)** (scheduled medical visits) *(e.g. psychotherapy, prenatal appointments)* on the following date(s): Twice Per Week: Monday and Wednesday

Ongoing psychotherapy, medication management, and stress reduction strategies. Despite these treatments, the patient experiences episodes of incapacitation that are unpredictable and significantly impair his work ability. These episodes are particularly exacerbated by the hostile interactions and environment in his workplace. The patient's condition allows him to work in a limited capacity from home on non-consecutive days or outside regular business hours, as the condition allows. Working from home is essential to mitigate the impact of the hostile workplace triggers and manage his panic attacks and agoraphobia.

(6)    Due to the condition, the patient (☐ was / ☐ will be) **referred to other health care provider(s)** for evaluation or treatment(s).

State the nature of such treatments: *(e.g. cardiologist, physical therapy)* _____

Provide your **best estimate** of the beginning date 01/16/24 _____ *(mm/dd/yyyy)* and end date ___ongoing___ *(mm/dd/yyyy)* for the treatment(s).

Provide your **best estimate** of the duration of the treatment(s), including any period(s) of recovery *(e.g. 3 days/week)* Regular ongoing sessions, approximately twice per week, with potential for increased frequency during periods of heightened stress or episodes.

(7)    Due to the condition, it is medically necessary for the employee to work a **reduced schedule**.

Provide your **best estimate** of the reduced schedule the employee is able to work. From 01/04/24 *(mm/dd/yyyy)* to ___Ongoing___ *(mm/dd/yyyy)* the employee is able to work: *(e.g. 5 hours/day, up to 25 hours a week)*

The patient is able to work intermittently as his condition allows, which may vary week to week. Ability to work from home is essential due to condition triggers linked to the hostile workplace environment.

(8)    Due to the condition, the patient (☑ was / ☑ will be) **incapacitated for a continuous period of time**, including any time for treatment(s) and/or recovery.

Provide your best estimate of the beginning date 12/21/23 _____ *(mm/dd/yyyy)* and end date Ongoing, as episodes are unpredictable. _____ *(mm/dd/yyyy)* for the period of incapacity.

Ryan experiences episodic periods of incapacity due to his mental health condition. While these periods are not continuous in the traditional sense, they occur intermittently and unpredictably. Each episode can incapacitate Ryan for a variable duration, typically lasting from a few hours to several days. The exact frequency and length of these episodes vary, but they are recurrent and expected to continue given the nature of his condition.

(9)    Due to the condition, it (☑ was / ☐ is / ☑ will be) medically necessary for the employee to be absent from work on an **intermittent basis** (periodically), including for any episodes of incapacity i.e., episodic flare-ups. Provide your **best estimate** of how often (frequency) and how long (duration) the episodes of incapacity will likely last.

Over the next 6 months, episodes of incapacity are estimated to occur 1-3 _____ times per

(☐ day / ☑ week / ☐ month) and are likely to last approximately 1-2 _____ (☐ hours / ☑ days) per episode.

The frequency and duration may vary based on workplace stressors and effectiveness of ongoing treatment.

Form WH-380-E, Revised June 2020

EXHIBIT  102

Employee Name: Ryan Wagner

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

(10)  Due to the condition, the employee (☒ was not able / ☐ is not able / ☒ will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform:

The patient experiences panic attacks and agoraphobia which severely limit his ability to commute and function in a traditional office environment. Essential job functions that are impacted include tasks that require physical presence in the office, such as in-person meetings, on-site collaboration, and immediate face-to-face response to work situations. During episodes of heightened agoraphobia, especially when triggered by direct interaction with specific individuals in the workplace, working from home becomes a necessary reasonable accommodation. During severe episodes, the patient is incapacitated and unable to perform any work functions, whether in the office or remotely, necessitating intermittent FMLA leave.

Signature of
Health Care Provider _William LCSW-C_____    Date _03/12/24_____    *(mm/dd/yyyy)*

| **Definitions of a Serious Health Condition** *(See 29 C.F.R. §§ 825.113-.115)* |
|---|
| **Inpatient Care** |

- An overnight stay in a hospital, hospice, or residential medical care facility.
- Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay.

| **Continuing Treatment by a Health Care Provider (any one or more of the following)** |
|---|

**Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:

  o  Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,

  o  At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment.

**Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care.

**Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity.

**Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer.

**Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment.

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Form WH-380-E, Revised June 2020



1628 11th Street, NW
Washington, DC 20001

Phone: 202-232-4270
Fax: 202-232-4394
E-mail: blchealthcare@verizon.n

November 23, 2013

To whom it may concern:

This is to provide documentation about Mr. Ryan Wagner's medical condition. Mr. Wagner is a patient under my care who I have diagnosed with Posttraumatic Stress Disorder and Panic Disorder with Agoraphobia; mental impairments that substantially limit the following major life activities as compared to most people in the general population; concentrating, interacting with others, maintaining social relationships, sleeping, eating, and the operation of the digestive system and bowel. Mr. Wagner has been under my medical care since May 2013, during which time he was evaluated and started on treatment. He receives both psychotherapy and medication management treatment. Mr. Wagner's mental impairments are permanent. Physical symptoms of his mental impairments, including sleep and appetite disturbances are episodic and recurring; they impair his major life activities when they are active. Mr. Wagner has, in the last few weeks, experienced an increase in active symptoms, resulting in Ryan requiring additional treatment sessions and emergency medical care.

Given the nature of his mental impairments, Mr. Wagner needs reasonable accommodation under the ADA or the Rehabilitation Act of 1990 and its subsequent 2008 amendment. Specifically, Mr. Wagner requires a flexible work schedule that permits him to attend regularly scheduled treatment sessions and emergency treatment sessions; and permits him to perform work from home when he experiences symptoms of his mental impairments.

Should you need additional information or questions, I may be contacted as indicated on this letter-header either by telephone or email.

Sincerely,

Maguy Destin-Jeanty, MD

**Subject**: RE: [EXTERNAL] Request for ADA Assistance
**From**: Amira Savoy <Amira.Savoy@mdcourts.gov>
**To**: "ryan@mxt3.com" <ryan@mxt3.com>
**Date Sent**: Tuesday, July 30, 2024 9:29:19 AM GMT-04:00
**Date Received**: Tuesday, July 30, 2024 9:29:22 AM GMT-04:00

Your request to amend was reviewed by the judge and the judge's ruling is to keep their first ruling the same.

Best,

### Amira Savoy
**Interpreter/ ADA Coordinator**
Baltimore County Circuit Court, Suite 101-A
401 Bosley Avenue Towson, MD 21204
410-887-4818



**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Monday, July 29, 2024 5:44 PM
**To:** Amira Savoy <Amira.Savoy@mdcourts.gov>
**Subject:** Re: [EXTERNAL] Request for ADA Assistance

Am I supposed to do something differently to amend my request?  The ruling indicates that they treated this as a first request and not a request to amend?

On Thu, Jul 25, 2024 at 4:09 PM Amira Savoy <Amira.Savoy@mdcourts.gov> wrote:

Please see attached ruling.

### Amira Savoy
**Interpreter/ ADA Coordinator**
Baltimore County Circuit Court, Suite 101-A
401 Bosley Avenue Towson, MD 21204
410-887-4818



**From:** Amira Savoy
**Sent:** Wednesday, July 24, 2024 1:31 PM
**To:** Ryan Wagner <ryan@mxt3.com>
**Subject:** RE: [EXTERNAL] Request for ADA Assistance

I can accept the attached ADA form as a request for accommodation of future hearings but I did not want you to think it was being accepted as a request for a trial date.

### Amira Savoy
**Interpreter/ ADA Coordinator**
Baltimore County Circuit Court, Suite 101-A
401 Bosley Avenue Towson, MD 21204

410-887-4818



**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Wednesday, July 24, 2024 1:23 PM
**To:** Amira Savoy <Amira.Savoy@mdcourts.gov>
**Subject:** Re: [EXTERNAL] Request for ADA Assistance

Sorry for the confusion. The instructions on the form suggested that I need to complete a separate form for each trial/hearing, and I was submitting my request for accommodations for the civil case trial.

If that form will apply to all trials and hearing moving forward, then my question is what I file to amend my previous request?

**From:** Amira Savoy <Amira.Savoy@mdcourts.gov>
**Sent:** Wednesday, July 24, 2024 1:16 PM
**To:** ryan@mxt3.com <ryan@mxt3.com>
**Subject:** RE: [EXTERNAL] Request for ADA Assistance

A request for a trial date and an ADA request are not the same thing.

Please file an appropriate request in you case with the clerk's office as I cannot accept filings in your case.

Your ADA request has already been ruled on for future hearing dates, if you have any in the future.

Best,

**Amira Savoy**

**Interpreter/ ADA Coordinator**

Baltimore County Circuit Court, Suite 101-A

401 Bosley Avenue Towson, MD 21204

410-887-4818



**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Wednesday, July 24, 2024 1:02 PM
**To:** Amira Savoy <Amira.Savoy@mdcourts.gov>
**Subject:** Re: [EXTERNAL] Request for ADA Assistance

Thank you for your assistance.

The Plaintiff has withdrawn their Petition to Show Cause and there will be no trial on August 7, 2024.

We do not have a trial date for the Complaint, but attached is the request for that trial. I have adjusted the request based on the Court notes. I understand why the Judge ruled a partial denial, and the misunderstanding is my fault. Hopefully, this clarifies what is being requested.

with gratitude and appreiciation,

RDC

On Mon, Jul 22, 2024 at 2:36 PM Amira Savoy <Amira.Savoy@mdcourts.gov> wrote:

Please see attached ruling on your ADA request.

Best,

Amira Savoy

**Interpreter Coordinator**

**Baltimore County Circuit Court**

401 Bosley Avenue, Suite 101-A

Towson, MD 21204

410-887-4818



**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Tuesday, July 16, 2024 8:21 PM
**To:** Amira Savoy <Amira.Savoy@mdcourts.gov>
**Subject:** Re: [EXTERNAL] Request for ADA Assistance


Thank you for this information. I am including 3 of the Exhibits from the case. Exhibit 1B is my ADA letter from the diagnosing psychiatrist in 2013 and the 2024 therapist who completed the FMLA form. Exhibit 1E is the FMLA form. Exhibit 5A is my wife's Affidavit; while not my therapist nor specializing in this area, she is a licensed C therapist who has experience in trauma therapy. I want to share more, but I am out of respect for the court's time and trying to moderate my verbose nature. I will provide anything else I have to give and appreciate the opportunity to clarify and deliver anything necessary if it could prevent a denial.


With gratitude and appreciation,

RDC


On Thu, Jul 11, 2024 at 12:18 PM Amira Savoy <Amira.Savoy@mdcourts.gov> wrote:

Good afternoon,


Please fill out the attached ADA request form and email back to me with your request to appear remotely for your hearing on August 7th at 1pm. I will have a judge rule on it and I will email you their decision.


Additionally, any documents from your case can be requested through the civil department, their phone number is 410-887-2622.


Best,


**Amira Savoy**

**Interpreter/ ADA Coordinator**

Baltimore County Circuit Court, Suite 101-A

401 Bosley Avenue Towson, MD 21204

410-887-4818



**From:** Ryan Wagner <ryan@mxt3.com>
**Sent:** Wednesday, July 3, 2024 3:59 AM
**To:** Amira Savoy <Amira.Savoy@mdcourts.gov>; Kristina Ivins <Kristina.Ivins@mdcourts.gov>
**Subject:** [EXTERNAL] Request for ADA Assistance

Greetings and Salutations,

I apologize for reaching out via email, but I have encountered difficulties in following the prescribed procedures. Despite my efforts, I find myself either starting over repeatedly or becoming sidetracked.

The plaintiff was aware of my intention to file a protective order and preemptively filed one themselves. They scheduled a hearing and sent the notice to an email address my employer (the plaintiff) instructed me not to use. Consequently, I was unaware of the hearing until it had already occurred. My attorney was unable to respond in time due to bereavement and a prescheduled conference, resulting in a refund of my fees and my need to proceed pro se.

The TRO issued against me requires actions that are impossible to comply with, as the plaintiff has ordered me to restrict my own access, which I did by doing something with the key fob needed to access the system. The same system the TRO says I must access. I have no idea what I did with the key fob, but based on clues, it seems I took action to send it somewhere. Under the current duress, my memory is deteriorating, and it is unreasonable to expect me to remember actions taken during a period for which I have no memory when I am currently struggling to recall where I am in the process of filing a motion or filling out a form for ADA accommodations. The plaintiff demanded compliance within three hours of sending the TRO judgment via email, which I received with barely an hour remaining. I used this time to seek legal assistance and was advised to write a letter to the judge, which I did, accompanied by exhibits that my former attorney and I intended to use in our filing. However, the judge ruled only on the letter, treating it as a motion to modify the TRO. I believe it should have been considered a motion to stay enforcement of the TRO to allow me to secure legal representation. This occurred on the third business day.

By the following Wednesday, the plaintiff had filed a motion to show cause, and the preliminary injunction had effectively become a summary judgment. During this time, my wife and I contacted several attorneys, but none could assist at the pace required by the proceedings. On the first day of the hearing, my motion to dismiss on jurisdictional grounds was poorly articulated. The complexity of the matter necessitated a translator to explain the technical-legal connections, which the judge did not understand despite referencing the correct relevant court opinion from a cited case.

Something happened that day which resulted in a second day being scheduled. I remember needing to find a key fob that only the judge and opposing counsel believed was in my home. However, my wife tells me it appears I spent the entire night looking for it, as I had made virtually no progress on my motion for a continuance. I arrived exhausted and sleep deprived. The judge asked if I had anything to say. I managed to say "motion for a continuance" before the next word on records was the judge saying denied. His subsequent comments seemed to dismiss my PTSD, allowing him to rule without providing accommodations. I feel like the case was "won" by the judge, as the transcripts of the second day show that my attorney's few words did not reflect the day's outcome.

Since then, my wife has been assisting me to remain focused and organized. It took three days to submit a motion to reconsider the denial of the continuance, which is now under review. We have implemented a new system to help me stay organized, although I still experience periods of lost time, such as spending three hours updating printer firmware without realizing it.

I need additional time and written records to manage my case effectively, and I need to attend hearings remotely. This is not about what I can do normally but about being legally qualified for accommodations. The ADA prohibits even a judge from ruling based on personal beliefs about my disability. I was diagnosed with PTSD in 2013 by a psychiatrist, and I have a letter from November 2013 confirming that my diagnosis qualifies me for accommodations under the ADA. Additionally, I have been on intermittent FMLA leave with my employer since January 2024 for my PTSD.

Thank you for your understanding and consideration. Please let me know if you need anything from me.
Case is C-3-CV-24-002264


Ryan Dillon-Capps

1334 Maple Ave

Essex Md 21221

703-303-1113

ryan@mxt3.com


I strongly prefer text or email and schedule any calls.

GRANTED in part and DENIED in part. The request for frequent breaks is granted and shall be accomodated, as needed. The additional requests, such as advance questions and "a written record of all conversations" are denied as unreasonable and imposing undue hardship.

*Stay J. Meyer*

07/22/2024 9:47:28 AM

Requests for accommodation should be submitted to the court not less than thirty (30) days before the proceeding for which the accommodation is requested. Specific case-related questions (e.g. postponements) should not be made on this form.

MARYLAND JUDICIARY

☐ SUPREME COURT OF MARYLAND ☐ APPELLATE COURT OF MARYLAND
☒ CIRCUIT COURT ☐ DISTRICT COURT OF MARYLAND FOR Baltimore County
City/County

Located at 401 Bosley Ave, Towson, MD 21204     Telephone (410) 887-2139
Court Address

STATE OF MARYLAND
or
Ohana Growth Partners, LLC     VS. Ryan Dillon-Capps

Plaintiff/Petitioner                                         Defendant/Respondent

Case No. C-03-CV-24-002264

## REQUEST FOR ACCOMMODATION FOR PERSON WITH DISABILITY

Requests for accommodation should be submitted to the court not less than thirty (30) days before the proceeding for which the accommodation is requested.

Name of person needing accommodation: Ryan Dillon-Capps

Name of person requesting accommodation (if different person):

Person needing accommodation is: ☒ Party ☐ Witness ☐ Juror ☐ Prospective Juror ☒ Attorney

☐ Victim ☐ Victim's Representative ☐ Other (*specify*):

Applicant requests accommodation under Americans with Disabilities Act (ADA) as follows:

1. Type of court proceeding:
   ☐ Criminal ☒ Civil ☐ Traffic ☐ Juvenile ☐ Family ☐ Other (*specify*):

2. Hearing/Trial date (if any): August 7, 2024     Time: 1:00 PM

3. Nature of disability or impairment (*specify*): P

4. Type of accommodation(s) requested. Be specific. remote attendance when possible, frequent breaks, additional time to prepare, all questions provided in advance and the ability to provide the court with additional or corrected information. A written record of all conversations and proceedings. All binding agreements or statements must be affirmed in writing and outside of adversarial space and time. A court-appointed advocate to ensure a fair judicial process.
**NOTE:** If requesting a **sign language interpreter**, specify type: American Sign Language interpreter (ASL), Certified Deaf Interpreter (CDI), or Communication Access Real Time Translation (CART). If requesting a **spoken language interpreter**, please use form CC-DC-041.

Please provide any further information that may assist the court in providing a reasonable accommodation (*specify*):

☒ I request that this information be kept confidential to the extent allowed by law.

I certify that to the best of my knowledge this information is true and correct. I agree to provide medical documentation if required by the court.

July 16, 2024                          *RDC*
Date                                   Signature of Applicant/Applicant's Representative     703-303-1113
Ryan Dillon-Capps                                                                             Attorney Number
Printed Name                                                                                  Telephone Number
1334 Maple Ave.                        Essex MD. 21221
Address                                City, State, Zip
                                       ryan@mxt3.com
Fax                                    E-mail

The clerks's office and the ADA Coordinator are available to provide further assistance.

**CC-DC-049** (Rev. 12/2022)     [ Reset ]                                    MRSPA

I suffer from frequent and intense panic attacks, severe anxiety, and agoraphobia, which are known to be triggered by conflict and can last for hours. Symptoms include twitching, shaking, hyperventilating, emotional dysregulation, memory issues, catatonia, and dissociative behaviors. Additionally, a "fawning" trauma response can overlap with these symptoms, resulting in inconsistent responses and fragmented or inconsistent memory recall. I have difficulty communicating in a cohesive, linear fashion, often over-explaining, looping and repeating myself, and hyper-focusing on the literal meaning of words.

I had been living with minimal disruption to my life until recently, and some of these symptoms are new to me. My therapist has recommended and referred me to additional resources. However, all requests for additional time have been denied, and the time normally required by law has been reduced. Mandatory notices were not provided, I have been omitted from all prehearing conferences, and my motions are either prematurely denied or never responded to. The financial loss and cost and threat of jail prevents me from obtaining the care i need.

| OHANA GROWTH PARTNERS. LLC | IN THE |
|---|---|
| *PLANTIFF* | CIRCUIT COURT |
| | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| DEFENDANT | FILE NO: C-03-CV-24-002264 |

# AFFIDAVIT OF CAROLINE DILLON-CAPPS

1. **Professional Background:**
   A. I am the wife of Ryan Dillon-Capps and a licensed Clinical Social Worker in the state of Maryland, holding license number 23862, LCSW-C.
   B. I received my LMSW in May 2018 and my LCSW-C in July 2023.
   C. Ryan and I have known each other since 2021.

2. **Observations of Decline in Mental Health:**
   A. Since the end of December 2023, I have closely observed a significant decline in Ryan's mental health condition. He has been diagnosed with Post-Traumatic Stress Disorder (PTSD) and has experienced numerous panic attacks, ranging from a few minutes to several hours. These panic attacks are frequently accompanied by:
      i. **Dissociative Behaviors:** Ryan experiences flashbacks, distressing dreams (including talking in his sleep), recurring intrusive memories, time loops, and episodes of losing track of time.
      ii. **Hyperventilation:** During panic attacks, Ryan often hyperventilates, struggling to regain normal breathing patterns.
      iii. **Catatonia:** Since May 2024, I have witnessed Ryan go catatonic multiple times, becoming unresponsive for varying periods.
      iv. **Memory Issues:** Ryan frequently struggles with memory lapses and confusion, often unable to recall recent events or information. For instance, Ryan has been driving less, and on one occasion, after we had lunch, Ryan could not remember where he parked. We had arrived in separate vehicles and parked separately, so I drove Ryan around to help him locate his car, which was found in an adjacent parking lot.
      v. **Emotional Dysregulation:** Ryan exhibits extreme emotional dysregulation. He can be happy and optimistic one moment and then show signs of depression the next. Conversely, he may express excitement and optimism immediately after receiving adverse information.
      vi. **Agoraphobia:** Since April 2024, I have observed Ryan's agoraphobia symptoms, where he feels uncomfortable and anxious

being away from home. After our wedding, we planned a few days away but had to return early because Ryan was extremely uncomfortable being away from home.

3. **Escalation of Symptoms:**
   A. Since May 21, 2024, Ryan's symptoms have progressively worsened. Between May 21 and June 13, 2024, a series of events significantly heightened my concern for his well-being. We had multiple conversations about the possibility of hospitalization if his condition continued to deteriorate.
   B. Since June 13, 2024, Ryan's PTSD symptoms have become significantly more severe, with longer durations and increased frequency. He has been unable to complete basic tasks and has required my assistance to meet his basic needs.
   C. On June 17, 2024, I found Ryan hiding under a table in a dissociated state, repeatedly saying that they were safe under there and expressing confusion about whether this was real or a dream, and if I was a ghost. During this event, Ryan kept asking me the same questions, and then would ask why I kept saying the same thing.

4. **Courtroom Observations:**
   A. On June 26 and 27, 2024, I attended a hearing at the Baltimore Circuit Court, Courtroom 8, where I observed Ryan Dillon-Capps.
      i. I entered the courtroom around 9:15-9:20 AM while the court was in session. Upon entering, I noticed Ryan's table was cluttered with disorganized papers.
      ii. While Ryan was speaking in court, he exhibited pressured speech and struggled to answer questions appropriately. He had trouble recalling information, which impacted his ability to respond accurately.
      iii. On the night of June 26th, Ryan's account of looking for the key fob was portrayed as casually looking through his office. The search began by Ryan in his office and me downstairs to search the finished areas of the basement. When I came back upstairs, he had pulled bins and drawers and appeared to be going through them item by item. I joined Ryan, and we then had to go through everything again as he put things away item by item. Ryan mentioned that he went through the unfinished portion of the basement but forgot to mention how we went through the entire contents of the living room, dining room, upstairs guest bedroom, our bedroom, and our bathroom before I went to bed. When I woke up in the morning, the office was in disarray suggesting that he had gone through it again and had spent the entire night continuing to search the house.
      iv. Ryan also mentioned that he contacted a lawyer from another state but failed to recall that he had also asked me to contact attorneys

with a letter and a list of conflicts he wrote. He also told me about a scheduled meeting to speak with an attorney on June 24, 2024, and has told me about other instances where he contacted other attorneys in the weeks prior to June 13, including three other attorneys that Ryan told me he had started talking with before they found a conflict of interest. These are further examples of his memory issues.

5. **Personal Impact:**
    A. **Rescheduling Client Appointments:** Since June 13, 2024, I have had to reschedule client appointments on multiple days in order to help Ryan systematically.
    B. **Birthday Incident:** On a personal note, my birthday is January 4, 1987. On January 2, 2024, my mother arrived in Baltimore to visit us for my birthday and to assist with our wedding planning, as our wedding was scheduled for April 4, 2024. Unfortunately, Ryan was unable to participate in birthday celebrations on January 4, 2024, due to experiencing numerous panic attacks. His concern about my mother witnessing these episodes added to his distress, leaving me torn between attending to my mother and caring for Ryan.
    C. **Wedding Planning:** During the wedding planning process, we envisioned certain elements that were ultimately unattainable due to ongoing harassment from Ohana Growth Partners, LLC. This harassment severely hindered Ryan's ability to engage in the planning process, which he had been looking forward to.

**I SOLEMNLY DECLARE ADN AFFIRM UNDER PENALTIES OF PURJURY AND UPON PERSONAL KNOWLDGE THAT THE CONTRANTS OF THE FORGONG PAPER AND EXHIBTS THERETO ARE TRUE**

**DATE: JULY 29, 2024**

The date is wrong -- a technical error because the system clock was 7-July instead of 6-June, and the date was generated when printed.  It was signed as printed. -RDC

Caroline Dillon-Capps

Please see previous Order granting in part and denying
in part.

07/25/2024 4:03:57 PM

---

Requests for accommodation should be submitted to the court not less than thirty (30) days before the proceeding for which the accommodation is requested. Specific case-related questions (e.g. postponements) should not be made on this form.

---

☐ SUPREME COURT OF MARYLAND ☐ APPELLATE COURT OF MARYLAND
☒ CIRCUIT COURT ☐ DISTRICT COURT OF MARYLAND FOR Baltimore County
                                                    City/County

Located at 401 Bosley, Ave Towson, MD 21204          Telephone 410-887-2139
                    Court Address

STATE OF MARYLAND                                    Case No. C-03-CV-24-002264
        or
Ohana Growth Partners, LLC               VS.   Ryan Dillon-Capps
    Plaintiff/Petitioner                            Defendant/Respondent

## REQUEST FOR ACCOMMODATION FOR PERSON WITH DISABILITY

Requests for accommodation should be submitted to the court not less than thirty (30) days before the proceeding for which the accommodation is requested.

Name of person needing accommodation: Ryan Dillon-Capps

Name of person requesting accommodation (if different person): _____

Person needing accommodation is: ☒ Party ☐ Witness ☐ Juror ☐ Prospective Juror ☒ Attorney

☐ Victim ☐ Victim's Representative ☐ Other (*specify*): _____

Applicant requests accommodation under Americans with Disabilities Act (ADA) as follows:

1. Type of court proceeding:
   ☐ Criminal ☒ Civil ☐ Traffic ☐ Juvenile ☐ Family ☐ Other (*specify*): _____
2. Hearing/Trial date (if any): _____ Time: _____
3. Nature of disability or impairment (*specify*): I suffer from frequent and intense panic attacks, severe anxiety, and agoraphobia, which are known to be triggered by conflict and can last for hours. Symptoms include twitching, shaking, hyperventilating, emotional dysregulation, memory issues, catatonia, and dissociative behaviors. Additionally, a "fawning" trauma response can overlap with these symptoms, resulting in inconsistent responses and fragmented or inconsistent memory recall. I have difficulty communicating in a cohesive, linear fashion, often over-explaining, looping and repeating myself, and hyper-focusing on the literal meaning of words.
4. Type of accommodation(s) requested. Be specific. 1) Remote attendance when possible, 2) Frequent breaks 3) Additional time to prepare, including additional time to respond/answer/oppose filings and to submit my own filings. 4) Opportunity to review and, if necessary, correct or supplement information provided. Including the ability to clarify or amend statements made in court or in written submissions without penalty. 5) A copy of the audio recording and written transcript of all past and future court proceedings. 6) All binding agreements or statements must be affirmed in writing and outside of adversarial space and time. 7) A court appointed advocate to ensure a fair judicial process, helping me advocate for additional accommodations if they are necessary, and advocate for the enforcement of all granted accommodations.

**NOTE:** If requesting a **sign language interpreter**, specify type: American Sign Language interpreter (ASL), Certified Deaf Interpreter (CDI), or Communication Access Real Time Translation (CART). If requesting a **spoken language interpreter**, please use form CC-DC-041.
Please provide any further information that may assist the court in providing a reasonable accommodation (*specify*): I had been living with minimal disruption to my life until recently, and some of these symptoms are new to me. My therapist has recommended and referred me to additional resources. However, I currently lack the financial and legal stability necessary to obtain the help I need.

☒ I request that this information be kept confidential to the extent allowed by law.
I certify that to the best of my knowledge this information is true and correct. I agree to provide medical documentation if required by the court.

July 24, 2024                              *RDC*
        Date                  Signature of Applicant/Applicant's Representative      Attorney Number
Ryan Dillon-Capps                                                        703-303-1113
    Printed Name                                                         Telephone Number
1334 Maple Ave                        Essex MD 21221
    Address                            City, State, Zip
                                      ryan@mxt3.com
    Fax                                E-mail

The clerks's office and the ADA Coordinator are available to provide further assistance.

CC-DC-049 (Rev. 12/2022)                                              MRSPA