| OHANA GROWTH PARTNERS, LLC | IN THE |
| --- | --- |
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| RYAN DILLON-CAPPS | BALTIMORE COUNTY |
| *Defendant.* | CASE NO: C-03-CV-24-002264 |

## MEMORANDUM OF LAW IN SUPPORT OF MANDATORY HEARING OF ADJUDICATED FACTS

**COMES NOW,** Ryan Dillon-Capps ("Dillon-Capps" or "Defendant"), and submits this **Memorandum of Law in Support of Mandatory hearing of Adjudicated Facts** to establish that Plaintiff, Ohana Growth Partners, LLC ("Ohana" or "Plaintiff"), in concert with its counsel, Miles and Stockbridge, PC ("M&S" or "Counsel"), has violated multiple federal and state protections, including the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and whistleblower protections, while engaging in retaliatory and discriminatory conduct.

1    Further, this Memorandum demonstrates that Plaintiff and Counsel have willfully misused judicial processes to pursue baseless litigation, relying on perjurious statements, abusive tactics, and unclean hands to subvert equitable relief. Defendant therefore respectfully requests a mandatory hearing for full adjudication of these established violations and sanctions against Plaintiff and Counsel, as required to uphold judicial integrity and ensure reciprocal justice.

## Table of Contents

MEMORANDUM OF LAW IN SUPPORT OF MANDATORY HEARING OF ADJUDICATED FACTS...................1
TABLE OF CONTENTS.................................................................................................................2
I INTRODUCTION......................................................................................................................13
II PURPOSE AND STRUCTURE OF PREVENT FRAMEWORK.....................................................15
III FACTUAL BACKGROUND.......................................................................................................16
IV LEGAL ARGUMENT AND KEY SANCTIONABLE CONDUCT ...................................................19
   CORE LEGAL ARGUMENTS FOR SANCTIONABLE CONDUCT ................................................................19
      1     Equitable Defense – Unclean Hands....................................................................20
      2     Perjury and Fraud Upon the Court.......................................................................20
      3     Bad Faith Litigation – Including Abuse of Process, Frivolous and Vexing Litigation, Malicious Prosecution, and Obstruction of Evidence..............................................................................21
      4     Estoppel – Induced Harm and Reliance................................................................22
      5     Witness Tampering.............................................................................................22
   CONCLUSION....................................................................................................................23

V PREVENT FRAMEWORK.........................................................................................................23
   A PROTECT – DISQUALIFICATION FOR ETHICAL VIOLATIONS AND MISCONDUCT....................................23
      1     Foundations for Disqualification..........................................................................23
      2     Judicial Standards and Purpose ..........................................................................24
      3     Criteria for Imposing Disqualification for Misconduct..............................................24
      4     Maryland Case Law ...........................................................................................24
      5     Cross-Argument Case Law ..................................................................................25
      6     Application to Dillon-Capps's Case.......................................................................25
      7     Conclusion .......................................................................................................25
   B RESTORE – MOTION TO VACATE THE TRO.............................................................................25
      1     Foundations for Vacatur of TRO...........................................................................25
      2     Judicial Standards and Purpose for Vacatur ..........................................................26
      3     Criteria for Vacating a TRO .................................................................................26
      4     Maryland Case Law ...........................................................................................26
      5     Cross-Argument Case Law ..................................................................................27
      6     Application to Dillon-Capps's Case.......................................................................27
      7     Conclusion .......................................................................................................27
   C ENFORCE – MOTION TO IMPOSE SANCTIONS..........................................................................28
      1     Foundations for Imposing Sanctions.....................................................................28
      2     Judicial Standards and Purpose for Imposing Sanctions ..........................................28
      3     Criteria for Imposing Sanctions ..........................................................................28
      4     Maryland Case Law ...........................................................................................29
      5     Cross-Argument Case Law ..................................................................................29
      6     Application to Dillon-Capps's Case.......................................................................29
      7     Conclusion .......................................................................................................30
   D VERIFY – MOTION FOR REFERRAL FOR CRIMINAL AND ETHICAL INVESTIGATION..............................30
      1     Foundations for Referral for Investigation..............................................................30
      2     Judicial Standards and Purpose for Referral ..........................................................30
      3     Criteria for Referral for Criminal and Ethical Investigation .......................................31
      4     Maryland Case Law ...........................................................................................31
      5     Cross-Argument Case Law ..................................................................................32
      6     Application to Dillon-Capps's Case.......................................................................32
      7     Conclusion .......................................................................................................32

E ENSURE – MOTION FOR INJUNCTION TO PREVENT FUTURE ABUSE OF COURT PROCESS ............................................32
    1    Foundations for Injunctive Relief ...........................................................................33
    2    Judicial Standards and Purpose for Issuing an Injunction .....................................33
    3    Criteria for Granting an Injunction Against Further Abuse ....................................34
    4    Maryland Case Law ...............................................................................................34
    5    Cross-Argument Case Law .....................................................................................34
    6    Application to Dillon-Capps's Case ........................................................................35
    7    Conclusion .............................................................................................................35
F NEUTRALIZE – MOTION FOR A BETTER MARYLAND WITH RECIPROCAL RELIEF .........................................35
    1    Foundations for Reciprocal Financial Relief ...........................................................35
    2    Judicial Standards and Purpose for Reciprocal Relief.............................................36
    3    Criteria for Reciprocal Financial Relief ..................................................................36
    4    Maryland Case Law ...............................................................................................37
    5    Cross-Argument Case Law .....................................................................................37
    6    Application to Dillon-Capps's Case ........................................................................37
    7    Conclusion .............................................................................................................38
G TERMINATE – MOTION TO DISMISS WITH PREJUDICE FOR A JUNE 13TH WORTH OF REASONS ...............................38
    1    Foundations for Permanent Dismissal with Prejudice ...........................................38
    2    Judicial Standards and Purpose for Dismissal with Prejudice .................................38
    3    Criteria for Imposing Dismissal with Prejudice ......................................................39
    4    Maryland Case Law ...............................................................................................39
    5    Cross-Argument Case Law .....................................................................................40
    6    Application to Dillon-Capps's Case ........................................................................40
    7    Conclusion .............................................................................................................40

VI STATUTES ...........................................................................................................41
A FAMILY AND MEDICAL LEAVE ACT (FMLA) VIOLATIONS .............................................................41
    1    Legal Standard and Prima Facie Elements .............................................................41
    2    Prima Facie Elements of FMLA Interference ..........................................................41
    3    Retaliation Defined ...............................................................................................41
    4    Supporting Case Law .............................................................................................42
    5    Application to Dillon-Capps' Case ..........................................................................43
    6    Conclusion .............................................................................................................44
B AMERICANS WITH DISABILITIES ACT (ADA) VIOLATIONS ...............................................................45
    1    Legal Standard and Prima Facie Elements .............................................................45
    2    Prima Facie Elements of ADA Failure to Accommodate ........................................45
    3    Prima Facie Elements of ADA Retaliation ..............................................................46
    4    Supporting Case Law .............................................................................................46
    5    Application in Dillon-Capps' Case ..........................................................................46
    6    Conclusion .............................................................................................................48
C WHISTLEBLOWER VIOLATIONS .....................................................................................48
    1    Legal Standard and Prima Facie Elements .............................................................48
    2    Prima Facie Elements of Whistleblower Retaliation under Maryland Law ...............49
    3    Prima Facie Elements of Whistleblower Retaliation under SOX .............................49
    4    Supporting Case Law .............................................................................................49
    5    Application to Dillon-Capps' Case ..........................................................................50
    6    Conclusion .............................................................................................................52
D RETALIATION .......................................................................................................52
    1    Legal Standard and Prima Facie Elements .............................................................52
    2    Prima Facie Elements of Retaliation ......................................................................52

  *3* *Supporting Case Law*..........................................................................................*53*
  *4* *Application in Dillon-Capps' Case*............................................................*53*
  *5* *Conclusion*..........................................................................................*55*
 E PERJURY.........................................................................................................*55*
  *1* *Legal Standard and Prima Facie Elements of Perjury in Maryland*...................*55*
  *2* *Prima Facie Elements of Perjury*...............................................................*56*
  *3* *Supporting Case Law*...........................................................................*57*
  *4* *Application of Perjury in Dillon-Capps' Case*.............................................*57*
  *5* *Conclusion*..........................................................................................*59*
 F WRONGFUL TERMINATION.....................................................................................*59*
  *1* *Legal Standard and Prima Facie Elements of Wrongful Termination*..............*60*
  *2* *Prima Facie Elements for Wrongful Termination under FMLA and ADA:*..........*60*
  *3* *Prima Facie Elements of Wrongful Termination*........................................*60*
  *4* *Supporting Case Law*...........................................................................*61*
  *5* *Application of Wrongful Termination in Dillon-Capps's Case*.......................*62*
  *6* *Conclusion*..........................................................................................*63*
 G HOSTILE WORK ENVIRONMENT (HWE)......................................................................*63*
  *1* *Legal Standard and Prima Facie Elements of Hostile Work Environment*.........*63*
  *2* *Prima Facie Elements for Hostile Work Environment under ADA and Maryland Law:*...................*64*
  *3* *Prima Facie Elements of Hostile Work Environment*..................................*64*
  *4* *Supporting Case Law*...........................................................................*65*
  *5* *Application of Hostile Work Environment in Dillon-Capps's Case*.................*65*
  *6* *Conclusion*..........................................................................................*66*
 H WITNESS TAMPERING..........................................................................................*67*
  *1* *Legal Standard and Prima Facie Elements of Witness Tampering*..................*67*
  *2* *Prima Facie Elements for Witness Tampering:*...........................................*67*
  *3* *Prima Facie Elements of Witness Tampering*............................................*68*
  *4* *Supporting Case Law*...........................................................................*69*
  *5* *Application of Witness Tampering in Dillon-Capps's Case*...........................*69*
  *6* *Conclusion*..........................................................................................*70*
 I DISQUALIFICATION OF COUNSEL...............................................................................*71*
  *1* *Legal Standard and Purpose of Disqualification*.......................................*71*
  *2* *Prima Facie Elements for Disqualification*...............................................*72*
  *3* *Supporting Case Law*...........................................................................*72*
  *4* *Application to Dillon-Capps's Case*.........................................................*72*
 J 42 U.S.C. § 1983: CIVIL ACTION FOR DEPRIVATION OF RIGHTS.......................................*73*
  *1* *Legal Standard and Prima Facie Elements*...............................................*74*
  *2* *Supporting Case Law*...........................................................................*74*
  *3* *Application to Judge Barranco's Actions in Dillon-Capps's Case*...................*75*
  *4* *Conclusion*..........................................................................................*77*
**VII EXPANDING MARYLAND STATUTES THROUGH THE INTENT, PURPOSE, FOCUS, AND MEANING OF COMMON LAW**.......................................................................................................*77*
 A MD. CODE ANN., CTS. & JUD. PROC. §§ 10-501 AND 10-503.......................................*77*
  *1* *Section 10-501: Incorporation of English Common Law Principles*................*77*
  *2* *Section 10-503: Judicial Discretion in Applying Common Law Principles*........*78*
 B INCORPORATION OF TORT DOCTRINES.......................................................................*78*
  *1* *Foundations of Maryland's Tort Doctrines*...............................................*79*
  *2* *Judicial Standards for Applying Tort Doctrines in Maryland*........................*80*
  *3* *Maryland Case Law on Tort Doctrines*....................................................*81*

*4    Application in Dillon-Capps's Case* .................................................................. 82
C EQUITABLE DOCTRINES OF DEFENSE ............................................................................ 84
*1    Foundations of Maryland's Equitable Defenses* ................................................ 84
*2    Judicial Standards for Applying Equitable Defenses in Maryland* .......................... 85
*3    Maryland Case Law on Equitable Defenses* ..................................................... 86
*4    Application in Dillon-Capps's Case* .............................................................. 87
D DOCTRINE OF MOOTNESS ......................................................................................... 88
*1    Foundations of the Doctrine of Mootness in Maryland Law* .................................. 89
*2    Judicial Standards for Applying the Doctrine of Mootness in Maryland* ................... 89
*3    Maryland Case Law on the Doctrine of Mootness* ............................................. 90
*4    Application in Dillon-Capps's Case* .............................................................. 91
E GOOD FAITH AND REASONABLE JURY STANDARD ............................................................. 92
*1    Foundations of Good Faith and Reasonable Jury Standard in Maryland Law* .............. 93
*2    Judicial Standards for Applying Good Faith and Reasonable Jury Standard in Maryland* .............. 94
*3    Maryland Case Law on Good Faith and Reasonable Jury Standard* ........................... 94
*4    Application in Dillon-Capps's Case* .............................................................. 95
F PREPONDERANCE OF EVIDENCE ................................................................................. 96
*1    Foundations of Preponderance of Evidence* ..................................................... 97
*2    Judicial Standards for Applying Preponderance of Evidence* ................................. 97
*3    Maryland Case Law* ................................................................................. 97
*4    Application to Dillon-Capps's Case* .............................................................. 98
G IRREPARABLE HARM ............................................................................................... 98
*1    Foundations of Irreparable Harm* ................................................................. 99
*2    Judicial Standards for Applying Irreparable Harm* ............................................ 99
*3    Maryland Case Law* ................................................................................ 100
*4    Application to Dillon-Capps's Case* ............................................................. 100
H LEGITIMATE PURPOSE ............................................................................................ 102
*1    Foundations of Legitimate Purpose* ............................................................. 102
*2    Judicial Standards for Applying Legitimate Purpose* ......................................... 102
*3    Maryland Case Law* ................................................................................ 103
*4    Application to Dillon-Capps's Case* ............................................................. 104
I SEVERE HARM ...................................................................................................... 105
*1    Foundations of Severity of Harm* ................................................................ 105
*2    Judicial Standards for Applying Severity of Harm* ............................................ 106
*3    Maryland Case Law* ................................................................................ 106
*4    Application to Dillon-Capps's Case* ............................................................. 107
J INTENT .............................................................................................................. 108
*1    Foundations of Intent* ............................................................................. 108
*2    Judicial Standards for Applying Intent* ......................................................... 109
*3    Maryland Case Law* ................................................................................ 109
*4    Application to Dillon-Capps's Case* ............................................................. 110
K MALICIOUS PURPOSE ............................................................................................. 112
*1    Foundations of Malicious Purpose* ............................................................... 112
*2    Judicial Standards for Applying Malicious Purpose* .......................................... 113
*3    Maryland Case Law* ................................................................................ 113
*4    Application to Dillon-Capps's Case* ............................................................. 114
L MATERIAL STATEMENTS AND SUPPORTING EVIDENCE ...................................................... 116
*1    Foundations of Material Statements and Supporting Evidence* .............................. 116
*2    Judicial Standards for Applying Material Statements and Evidence* ........................ 117
*3    Maryland Case Law and Statutory Basis* ....................................................... 117

| | | |
|---|---|---|
| *4* | *Application to Dillon-Capps's Case*........................................................... | *118* |
| M BREACH OF CONTRACT:............................................................................................. | | 119 |
| *1* | *Foundations of Breach of Contract*........................................................ | *119* |
| *2* | *Judicial Standards for Applying Breach of Contract*............................... | *120* |
| *3* | *Maryland Case Law and Statutory Basis*................................................ | *120* |
| *4* | *Application to Dillon-Capps's Case*........................................................ | *121* |
| N ATTEMPTED ........................................................................................................... | | 122 |
| *1* | *Foundations of Attempted Conduct in Maryland Common Law and Statutory Law* | *122* |
| *2* | *Judicial Standards for Applying Attempted Conduct* .............................. | *123* |
| *3* | *Maryland Case Law and Statutory Basis*................................................ | *124* |
| *4* | *Application to Attempted False Imprisonment and Procedural Abuse in Dillon-Capps's Case* | *124* |
| O FALSE IMPRISONMENT.............................................................................................. | | 126 |
| *1* | *Foundations of Attempted False Imprisonment*..................................... | *126* |
| *2* | *Judicial Standards for Applying Attempted False Imprisonment* ............ | *127* |
| *3* | *Maryland Case Law and Statutory Basis*................................................ | *128* |
| *4* | *Cross Argument Case Law*..................................................................... | *128* |
| *5* | *Application to Dillon-Capps's Case*........................................................ | *129* |
| P COERCION ............................................................................................................. | | 130 |
| *1* | *Foundations of Coercion* ...................................................................... | *131* |
| *2* | *Judicial Standards for Applying Coercion* .............................................. | *131* |
| *3* | *Maryland Case Law and Statutory Basis*................................................ | *132* |
| *4* | *Application to Dillon-Capps's Case*........................................................ | *132* |
| Q FRAUD UPON THE COURT ........................................................................................ | | 134 |
| *1* | *Foundations of Fraud Upon the Court*................................................... | *134* |
| *2* | *Judicial Standards for Applying Fraud Upon the Court*.......................... | *135* |
| *3* | *Maryland Case Law* ............................................................................... | *135* |
| *4* | *Application to Fraud Upon the Court in Dillon-Capps's Case* ................. | *136* |
| R BIAS .................................................................................................................... | | 138 |
| *1* | *Foundations of Bias*.............................................................................. | *138* |
| *2* | *Judicial Standards for Applying Bias*..................................................... | *139* |
| *3* | *Maryland Case Law* ............................................................................... | *139* |
| *4* | *Application to Bias in Dillon-Capps' Case* ............................................. | *140* |
| S DISCRIMINATION .................................................................................................... | | 141 |
| *1* | *Foundations of Discrimination* ............................................................. | *141* |
| *2* | *Judicial Standards for Addressing Discrimination* ................................. | *142* |
| *3* | *Maryland Case Law* ............................................................................... | *143* |
| *4* | *Application to Discrimination in Dillon-Capps' Case*.............................. | *143* |
| T CONSPIRACY.......................................................................................................... | | 145 |
| *1* | *Foundations of Conspiracy*................................................................... | *146* |
| *2* | *Judicial Standards for Applying Conspiracy* .......................................... | *146* |
| *3* | *Maryland Case Law and Statutory Basis*................................................ | *147* |
| *4* | *Application to Conspiracy in Dillon-Capps Case* ................................... | *148* |
| U STARE DECISIS....................................................................................................... | | 150 |
| *1* | *Foundations of Stare Decisis*................................................................ | *151* |
| *2* | *Judicial Standards for Applying Stare Decisis in Maryland* ................... | *151* |
| *3* | *Maryland Case Law on Stare Decisis and Binding Authority*.................. | *152* |
| *4* | *Application in Dillon-Capps' Case* ......................................................... | *153* |
| V LIMITS OF JUDICIAL DISCRETION ............................................................................... | | 155 |
| *1* | *Foundations of Judicial Discretion and Limits*....................................... | *155* |
| *2* | *Judicial Standards for Determining Excessive Discretion*....................... | *156* |

3     *Maryland Case Law* ........................................................................................................................ *156*
4     *Application to Exceeding Judicial Discretion in Dillon-Capps' Case* .......................................... *157*
W ACCESSORY AND ACCESSORY AFTER THE FACT...................................................................................... *160*
1     *Foundations of Accessory and Accessory After the Fact* ............................................................ *160*
2     *Judicial Standards for Applying Accessory and Accessory After the Fact* ................................... *161*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *161*
4     *Application to Accessory and Accessory After the Fact in Dillon-Capps' Case* ......................... *162*
X DUE PROCESS............................................................................................................................................ *164*
1     *Foundations of Due Process* ....................................................................................................... *165*
2     *Judicial Standards for Applying Due Process* .............................................................................. *165*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *166*
4     *Constitutional and Federal Basis*................................................................................................. *167*
5     *Application to Dillon-Capps's Case* ............................................................................................. *167*
Y HARASSMENT ........................................................................................................................................... *169*
1     *Foundations of Harassment*........................................................................................................ *169*
2     *Judicial Standards for Applying Harassment*............................................................................... *169*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *170*
4     *Application to Dillon-Capps's Case* ............................................................................................. *171*
Z SPOLIATION OF EVIDENCE ......................................................................................................................... *172*
1     *Foundation of Spoliation of Evidence*......................................................................................... *172*
2     *Judicial Standards for Applying Spoliation of Evidence*.............................................................. *172*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *174*
4     *Application to Dillon-Capps's Case* ............................................................................................. *174*
AA DEFAMATION ........................................................................................................................................ *176*
1     *Foundation of Defamation* ......................................................................................................... *176*
2     *Judicial Standards for Applying Defamation* ............................................................................... *177*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *177*
4     *Application to Dillon-Capps's Case* ............................................................................................. *178*
BB INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) ........................................................................ *179*
1     *Foundation of Intentional Infliction of Emotional Distress (IIED)* .............................................. *180*
2     *Judicial Standards for Applying IIED*............................................................................................ *180*
3     *Maryland Case Law and Common Law Basis* .............................................................................. *181*
4     *Application to Dillon-Capps's Case* ............................................................................................. *182*
CC NEGLIGENCE .......................................................................................................................................... *183*
1     *Foundations of Negligence and Individual Liability*.................................................................... *183*
2     *General Negligence and Corporate Liability* ............................................................................... *184*
3     *Application of Duty and Breach to Ohana and M&S*................................................................... *185*
4     *Professional Negligence and Judicial Accountability*.................................................................. *185*
5     *Individual Liability of Corporate Members and Associates*......................................................... *187*
      *Conclusion of Negligence* ........................................................................................................... *188*
DD RECKLESS ENDANGERMENT ................................................................................................................... *188*
1     *Foundations of Reckless Endangerment*..................................................................................... *188*
2     *Judicial Standards for Applying Reckless Endangerment*............................................................ *189*
3     *Maryland Case Law and Statutory Basis*..................................................................................... *189*
4     *Application to Dillon-Capps's Case* ............................................................................................. *190*
EE JUDICIAL ECONOMY ............................................................................................................................... *192*
1     *Foundations of Judicial Economy* ............................................................................................... *192*
2     *Judicial Standards for Applying Judicial Economy* ...................................................................... *193*
3     *Maryland Case Law* .................................................................................................................... *193*
4     *Application to Judicial Economy in Dillon-Capps' Case* .............................................................. *194*

FF RULES OF EVIDENCE, ADJUDICATION OF FACT, AND CONFLICTING STATEMENTS ............................................. 196
  *1 Foundations of Evidence, Trier of Fact, and Conflicting Statements* ........................................ *196*
  *2 Judicial Standards for Evaluating Evidence, Conflicting Statements, and Dishonest Conduct* .... *197*
  *3 Maryland Case Law* ............................................................................................................ *198*
  *4 Cross-Argument Supporting Case Law* ............................................................................. *198*
  *5 Application to Rules of Evidence, Conflicting Statements, and Judicial Discretion in Dillon-Capps'*
  *Case 200*
GG JUDICIAL REFERRAL FOR CRIMINAL AND ETHICAL VIOLATIONS ........................................................... 203
  *1 Foundations of Judicial Referral for Criminal and Ethical Violations* ................................. *203*
  *2 Judicial Standards for Referral and Addressing Ethical Violations* ................................... *204*
  *3 Maryland Case Law* ........................................................................................................... *205*
  *4 Application to Judicial Referral in Dillon-Capps's Case* ..................................................... *206*
HH PRESERVATION OF CLAIMS FOR SEPARATE ADJUDICATION ................................................................. 208
  *1 Foundations of Judicial Referral for Criminal and Ethical Violations* ................................. *208*
  *2 Judicial Standards for Referral and Addressing Ethical Violations* ................................... *209*
  *3 Maryland Case Law* ........................................................................................................... *209*
  *4 Application to Judicial Referral in Dillon-Capps's Case* ..................................................... *210*
II EXPEDITED RULINGS AND HEARINGS TO PREVENT FURTHER HARM ...................................................... 212
  *1 Foundations of Expedited Rulings and Hearings* .............................................................. *212*
  *2 Judicial Standards for Expedited Hearings and Emergency Rulings* ................................. *213*
  *3 Maryland Case Law* ........................................................................................................... *213*
  *4 Application to Expedited Rulings and Hearings in Dillon-Capps's Case* ............................ *214*
JJ JUDICIAL CORRECTION OF THE COURT RECORD ................................................................................. 216
  *1 Foundations of Judicial Correction of the Court Record* .................................................... *216*
  *2 Judicial Standards for Correcting the Court Record* ......................................................... *217*
  *3 Maryland Case Law* ........................................................................................................... *218*
  *4 Application to Judicial Correction of the Court Record in Dillon-Capps's Case* .................. *218*
KK RULING IN FAVOR OR THE PARTY WITH A LEGITIMATE CLAIM ............................................................ 220
  *1 Foundations for Ruling in Favor of the Legitimate Claim in Maryland Law* ........................ *221*
  *2 Judicial Standards for Ruling in Favor of a Legitimate Claim* ............................................ *222*
  *3 Maryland Case Law* ........................................................................................................... *222*
  *4 Application to Ruling in Favor of Dillon-Capps's Legitimate Claims* ................................... *223*
LL 6. CIRCUIT COURT AUTHORITY TO SET PRECEDENT OF RECIPROCAL RELIEF ...................................... 225
  *1 Foundations for Circuit Court Authority to Set Precedent of Reciprocal Relief in Maryland Law* .. *225*
  *2 Judicial Standards for Establishing Precedent for Reciprocal Relief* ................................. *226*
  *3 Maryland Case Law* ........................................................................................................... *227*
  *4 Cross-Argument Supporting Case Law* ............................................................................ *228*
  *5 Application to Reciprocal Relief in Dillon-Capps's Case* ................................................... *228*

**VIII SANCTIONS** ................................................................................................................................ **230**
 A INTRODUCTION ................................................................................................................................ 231
 B GENERAL SANCTIONS UNDER MD. RULE 1-341 ............................................................................... 232
  *1 Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Md. Rule 1-341* .......... *233*
  *2 Criteria for Imposing Sanctions:* ...................................................................................... *233*
  *3 Maryland Case Law* ........................................................................................................... *234*
  *4 Supporting Case Law Beyond Maryland* ........................................................................... *234*
  *5 Cross Argument Case Law* ................................................................................................ *235*
  *6 Application to Dillon-Capps's Case* ................................................................................... *235*
  *7 Conclusion* ........................................................................................................................ *237*
 C VOLUNTARY DISMISSAL UNDER MD. RULE 2-506 ............................................................................ 237

| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under Md. Rule 2-506* | *237* |
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Md. Rule 2-506* | *237* |
| 3 | *Criteria for Imposing Sanctions under Rule 2-506:* | *238* |
| 4 | *Maryland Case Law* | *238* |
| 5 | *Supporting Case Law Beyond Maryland* | *239* |
| 6 | *Cross Argument Case Law* | *239* |
| 7 | *Application to Dillon-Capps's Case* | *240* |
| 8 | *Conclusion* | *241* |

D RULE 4.1 - TRUTHFULNESS IN STATEMENTS TO OTHERS ....... 241

| | | |
|---|---|---|
| 1 | *Foundational Principles and Purpose of Rule 4.1* | *241* |
| 2 | *Judicial Standards and Purpose from Maryland Precedent* | *242* |
| 3 | *Criteria for Establishing a Breach of Rule 4.1* | *242* |
| 4 | *Maryland Case Law on Rule 4.1* | *243* |
| 5 | *Supporting Case Law Beyond Maryland* | *243* |
| 6 | *Cross-Argument Case Law: Rule 4.1 and Misconduct* | *244* |
| 7 | *Application to Dillon-Capps's Case* | *244* |
| 8 | *Conclusion* | *245* |

E RULE 8.4(C) - MISCONDUCT (DISHONESTY, FRAUD, DECEIT, OR MISREPRESENTATION) ....... 246

| | | |
|---|---|---|
| 1 | *Foundational Principles and Purpose of Rule 8.4(c)* | *246* |
| 2 | *Judicial Standards and Purpose from Maryland Precedent* | *247* |
| 3 | *Criteria for Establishing a Breach of Rule 8.4(c)* | *247* |
| 4 | *Maryland Case Law on Rule 8.4(c)* | *248* |
| 5 | *Supporting Case Law Beyond Maryland* | *248* |
| 6 | *Cross-Argument Case Law: Rule 8.4(c) and Professional Misconduct* | *248* |
| 7 | *Application to Dillon-Capps's Case* | *249* |
| 8 | *Conclusion* | *250* |

F MARYLAND CRIMINAL LAW § 9-101: PERJURY ....... 250

| | | |
|---|---|---|
| 1 | *Foundational Principles and Purpose of § 9-101* | *251* |
| 2 | *Judicial Standards and Purpose from Maryland Precedent* | *251* |
| 3 | *Criteria for Establishing Perjury under § 9-101* | *252* |
| 4 | *Maryland Case Law on Perjury* | *252* |
| 5 | *Supporting Case Law Beyond Maryland* | *253* |
| 6 | *Cross-Argument Case Law: Perjury, Material Misrepresentation, and Procedural Fairness* | *253* |
| 7 | *Application to Dillon-Capps's Case* | *253* |
| 8 | *Conclusion* | *255* |

G ABUSE OF PROCESS ....... 255

| | | |
|---|---|---|
| 1 | *Foundational Principles and Purpose of Abuse of Process* | *255* |
| 2 | *Judicial Standards and Purpose from Precedent for Abuse of Process* | *256* |
| 3 | *Criteria for Imposing Sanctions for Abuse of Process* | *257* |
| 4 | *Maryland Case Law on Abuse of Process* | *258* |
| 5 | *Supporting Case Law Beyond Maryland* | *258* |
| 6 | *Cross-Argument Case Law: Abuse of Process and Retaliation* | *259* |
| 7 | *Application to Dillon-Capps's Case* | *259* |
| 8 | *Conclusion* | *261* |

H ATTEMPTED/FALSE IMPRISONMENT ....... 261

| | | |
|---|---|---|
| 1 | *Foundations for Attempted/False Imprisonment in Sanctions* | *261* |
| 2 | *Judicial Standards and Purpose from Precedent* | *262* |
| 3 | *Criteria for Imposing Sanctions for Attempted/False Imprisonment* | *262* |
| 4 | *Maryland Case Law* | *263* |
| 5 | *Supporting Case Law Beyond Maryland* | *264* |

| | | | |
|---|---|---|---|
| | 6 | Cross Argument Case Law | 264 |
| | 7 | Application to Dillon-Capps's Case | 265 |
| | 8 | Conclusion | 265 |
| I | MALICIOUS PROSECUTION | | 266 |
| | 1 | Foundations for Malicious Prosecution in Sanctions | 266 |
| | 2 | Judicial Standards and Purpose from Precedent for Malicious Prosecution | 266 |
| | 3 | Criteria for Imposing Sanctions for Malicious Prosecution | 267 |
| | 4 | Maryland Case Law | 267 |
| | 5 | Supporting Case Law Beyond Maryland | 268 |
| | 6 | Cross Argument Case Law | 268 |
| | 7 | Application to Dillon-Capps's Case | 269 |
| | 8 | Conclusion | 270 |
| J | VEXING LITIGATIONS | | 270 |
| | 1 | Foundations for Vexatious Litigation in Sanctions | 270 |
| | 2 | Judicial Standards and Purpose from Precedent for Vexatious Litigation | 270 |
| | 3 | Criteria for Imposing Sanctions for Vexatious Litigation | 271 |
| | 4 | Maryland Case Law | 272 |
| | 5 | Supporting Case Law Beyond Maryland | 272 |
| | 6 | Cross Argument Case Law | 273 |
| | 7 | Application to Dillon-Capps's Case | 273 |
| | 8 | Conclusion | 274 |
| K | FRIVOLOUS LITIGATION AS SANCTIONABLE CONDUCT | | 274 |
| | 1 | Foundations for Frivolous Litigation in Sanctions | 274 |
| | 2 | Judicial Standards and Purpose from Precedent for Frivolous Litigation | 275 |
| | 3 | Criteria for Imposing Sanctions for Frivolous Litigation | 275 |
| | 4 | Maryland Case Law | 276 |
| | 5 | Supporting Case Law Beyond Maryland | 276 |
| | 6 | Cross Argument Case Law | 277 |
| | 7 | Application to Dillon-Capps's Case | 277 |
| | 8 | Conclusion | 278 |
| L | OBSTRUCTION OF EVIDENCE | | 278 |
| | 1 | Foundation for Obstruction of Evidence | 278 |
| | 2 | Judicial Standards and Purpose from Precedent | 279 |
| | 3 | Criteria for Imposing Sanctions for Obstruction of Evidence | 279 |
| | 4 | Maryland Case Law | 280 |
| | 5 | Supporting Case Law Beyond Maryland | 281 |
| | 6 | Cross Argument Case Law | 281 |
| | 7 | Application to Dillon-Capps's Case | 282 |
| | | Conclusion | 283 |
| M | B1. RULE 19-303.3(A) - CANDOR TOWARD THE TRIBUNAL | | 283 |
| | 1 | Foundation for Sanctions under MRPC Rule 19-303.3(a) | 283 |
| | 2 | Judicial Standards and Purpose from Maryland Precedent | 284 |
| | 3 | Criteria for Establishing a Breach of MRPC 19-303.3(a) | 285 |
| | 4 | Maryland Case Law on Rule 3.3(a) | 285 |
| | 5 | Supporting Case Law Beyond Maryland | 286 |
| | 6 | Cross-Argument Case Law: Rule 3.3(a) and Ethical Misconduct | 286 |
| | 7 | Application to Dillon-Capps's Case | 287 |
| | 8 | Conclusion | 288 |
| N | RULE 19-303.5 (IMPROPER INFLUENCE AND CONTACT WITH COURT) | | 288 |
| | 1 | Foundation for Sanctions under MRPC Rule 19-303.5 | 288 |

| | | |
|---|---|---|
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rule 19-303.5* | 288 |
| 3 | *Criteria for Imposing Sanctions under Rule 19-303.5:* | 289 |
| 4 | *Maryland Case Law* | 289 |
| 5 | *Supporting Case Law Beyond Maryland* | 290 |
| 6 | *Cross Argument Case Law* | 290 |
| 7 | *Application to Dillon-Capps's Case* | 291 |
| 8 | *Conclusion* | 292 |

O RULES 19-301.7 TO 19-301.11 (CONFLICTS OF INTEREST) ...... 292
| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under MRPC Rules 19-301.7 to 19-301.11* | 292 |
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rules 19-301.7 to 19-301.11* | 292 |
| 3 | *Criteria for Imposing Sanctions under Rules 19-301.7 to 19-301.11:* | 293 |
| 4 | *Maryland Case Law* | 294 |
| 5 | *Supporting Case Law Beyond Maryland* | 294 |
| 6 | *Cross Argument Case Law* | 295 |
| 7 | *Application to Dillon-Capps's Case* | 295 |
| 8 | *Conclusion* | 296 |

P RULE 19-308.4(F) (FAILURE TO RESPOND TO REQUESTS) ...... 296
| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under MRPC Rules 19-301.7 to 19-301.11* | 296 |
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rules 19-301.7 to 19-301.11* | 297 |
| 3 | *Criteria for Imposing Sanctions under Rules 19-301.7 to 19-301.11:* | 297 |
| 4 | *Maryland Case Law* | 298 |
| 5 | *Supporting Case Law Beyond Maryland* | 299 |
| 6 | *Cross Argument Case Law* | 299 |
| 7 | *Application to Dillon-Capps's Case* | 299 |
| 8 | *Conclusion* | 300 |

Q RULES 19-308.4(A) THROUGH (D) (BROAD MISCONDUCT) ...... 301
| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under MRPC Rule 19-308.4(a) through (d)* | 301 |
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rule 19-308.4(a) through (d)* | 301 |
| 3 | *Criteria for Imposing Sanctions under Rules 19-308.4(a) through (d):* | 302 |
| 4 | *Maryland Case Law* | 302 |
| 5 | *Supporting Case Law Beyond Maryland* | 303 |
| 6 | *Cross Argument Case Law* | 303 |
| 7 | *Application to Dillon-Capps's Case* | 303 |
| 8 | *Conclusion* | 304 |

R 18-102.1 (IMPARTIALITY) ...... 305
| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under Maryland Judicial Code Rule 18-102.1* | 305 |
| 2 | *Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code Rule 18-102.1* | 305 |
| 3 | *Criteria for Imposing Sanctions under Rule 18-102.1:* | 306 |
| 4 | *Maryland Case Law* | 306 |
| 5 | *Supporting Case Law Beyond Maryland* | 307 |
| 6 | *Cross Argument Case Law* | 307 |
| 7 | *Application to Dillon-Capps's Case* | 307 |
| 8 | *Conclusion* | 308 |

S 18-102.2 (PUBLIC CONFIDENCE) ...... 309
| | | |
|---|---|---|
| 1 | *Foundation for Sanctions under Maryland Judicial Code Rule 18-102.2* | 309 |

2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code
Rule 18-102.2..................................................................................................................309
3    Criteria for Imposing Sanctions under Rule 18-102.2: ...........................................310
4    Maryland Case Law ................................................................................................310
5    Supporting Case Law Beyond Maryland ..................................................................311
6    Cross Argument Case Law.......................................................................................311
7    Application to Dillon-Capps's Case..........................................................................311
8    Conclusion ..............................................................................................................312
T 18-102.5 (COMPETENCE AND DILIGENCE) ..................................................................................313
1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.5 ...................313
2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code
Rule 18-102.5..................................................................................................................313
3    Criteria for Imposing Sanctions under Rule 18-102.5: ...........................................314
4    Maryland Case Law ................................................................................................314
5    Supporting Case Law Beyond Maryland ..................................................................315
6    Cross Argument Case Law.......................................................................................315
7    Application to Dillon-Capps's Case..........................................................................315
8    Conclusion ..............................................................................................................316
U 18-102.9 (EX PARTE COMMUNICATIONS)..................................................................................317
1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.5 ...................317
2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code
Rule 18-102.5..................................................................................................................317
3    Criteria for Imposing Sanctions under Rule 18-102.5: ...........................................318
4    Maryland Case Law ................................................................................................318
5    Supporting Case Law Beyond Maryland ..................................................................319
6    Cross Argument Case Law.......................................................................................319
7    Application to Dillon-Capps's Case..........................................................................319
8    Conclusion ..............................................................................................................320
V 18-102.11 (DISQUALIFICATION DUE TO BIAS AND CONFLICT OF INTEREST) ....................................321
1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.11 .................321
2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Rule 18-102.11 ...........321
3    Criteria for Imposing Sanctions under Rule 18-102.11: .........................................322
4    Maryland Case Law ................................................................................................322
5    Supporting Case Law Beyond Maryland ..................................................................323
6    Cross Argument Case Law.......................................................................................323
7    Application to Dillon-Capps's Case..........................................................................323
8    Conclusion ..............................................................................................................324
W 18-102.16 - COMPLIANCE WITH JUDICIAL INTEGRITY..................................................................324
1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.16 .................324
2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Rule 18-102.16 ...........325
3    Criteria for Imposing Sanctions under Rule 18-102.16: .........................................325
4    Maryland Case Law ................................................................................................325
5    Supporting Case Law Beyond Maryland ..................................................................326
6    Cross Argument Case Law.......................................................................................326
7    Application to Dillon-Capps's Case..........................................................................327
8    Conclusion ..............................................................................................................327

RESPECTFULLY SUBMITTED.....................................................................................................329
CERTIFICATE OF SERVICE .......................................................................................................329

## I   INTRODUCTION

2       This **Memorandum of Law in Support of a Mandatory Hearing of Adjudicated Facts** is submitted by Ryan Dillon-Capps ("Dillon-Capps" or "Defendant") to demonstrate that Ohana Growth Partners, LLC ("Ohana" or "Plaintiff"), with the aid of its counsel, Miles and Stockbridge, PC ("M&S" or "Counsel"), has pursued litigation with unclean hands, seeking relief to which it is legally barred. Defendant contends that Plaintiff's actions have violated Dillon-Capps's federally protected rights under the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and whistleblower statutes, and constitute a series of unethical and abusive litigation practices designed to harass, intimidate, and prevent accountability.

3       At the heart of this memorandum are core equitable defenses, beginning with **unclean hands** and extending to **perjury, abuse of process, malicious prosecution**, and **frivolous and vexing litigation**. Plaintiff's and Counsel's conduct, including knowingly false and perjurious statements, intentional abuse of judicial processes, and manipulative tactics that undermine judicial integrity, collectively establish grounds for these defenses. These actions amount to **fraud upon the court, witness tampering**, and **obstruction of evidence**. Additionally, Plaintiff's reliance on inconsistent statements and representations in prior dealings induces harmful reliance, rendering Plaintiff further estopped from obtaining relief.

4       This document also addresses the serious consequences of Plaintiff's and Counsel's actions, which have inflicted significant personal and professional harm upon Dillon-Capps, including unknown business impacts, loss of professional opportunities, and personal health

effects requiring medical and legal evaluation. Furthermore, procedural limitations, including missing parties necessary to adjudicate the full scope of harm, pending motions, jurisdictional limitations due to federal and multi-state elements, and unresolved requirements for Dillon-Capps's medical prognosis and EEOC protections, underscore the necessity of a mandatory hearing.

5        The **Request for Emergency Administrative Review**, filed on October 30, 2024, under envelope 18609911, and the **Request for Mandatory Judicial Notice Hearing on Material Facts**, filed on November 1, 2024, under envelope 18649236, alongside the **Motion for Directed Verdict** and **Notice of Line Filing for Directed Verdict**, together establish the need for a hearing. This Memorandum supports the Adjudication of Facts and the six pre-hearing motions, answer, and seven counterclaims, as listed with other supporting filings in the Notice of Line Filing for Directed Verdict.

6        Additionally, this Memorandum will join a reply to the Plaintiff's opposition to a previous motion for sanctions, as the Plaintiff has persisted in efforts to evade accountability through abuse of process. Plaintiff and Counsel's continued lack of remorse and repeated attempts to evade accountability further emphasize the severity of their actions and the necessity of adopting the **PREVENT framework**. Over 300 pages of law, criteria, case law, and applications relevant to Defendant's current and future litigation thoroughly answer Plaintiff and Counsel's attempts to mislead the court. These detailed legal arguments reinforce the necessity for sanctions, equitable relief, and a hearing to adjudicate Plaintiff's conduct in a manner consistent with judicial integrity, public policy, and Dillon-Capps's legal rights.

## II  PURPOSE AND STRUCTURE OF PREVENT FRAMEWORK

7    **The PREVENT framework** serves as a comprehensive solution addressing both the

immediate and long-term impacts of Plaintiff's conduct. Rooted in equitable principles and

judicial standards, each element of the framework is designed to redress harm, enforce

accountability, and prevent future abuse of the legal system. The following outlines each element

of PREVENT, its legal basis, and the corresponding motion for relief:

**P – Protect:** Motion to Disqualify Miles & Stockbridge for Ethical Violations and Misconduct
> **Legal Basis:** Equitable principles of unclean hands, conflict of interest, and duty to
> uphold judicial integrity.
> **Objective:** Disqualification is warranted to protect the judicial process from further
> misuse by counsel alleged to have engaged in unethical conduct, risking further harm to
> both Defendant and the court's integrity.

**R – Restore:** Motion to Vacate the Temporary Restraining Order (TRO)
> **Legal Basis:** Maryland's equitable doctrine of unjust enrichment and principles of fraud
> upon the court.
> **Objective:** Restoration of the status quo through vacatur of the TRO, an order improperly
> obtained through perjury and misrepresentation, will prevent the Plaintiff from benefiting
> from its misconduct.

**E – Enforce:** Motion to Impose Sanctions Not Sanction Fraudulent Lawsuits
> **Legal Basis:** Maryland Rule 1-341 and doctrines of deterrence in sanctioning abuse.
> **Objective:** Enforce judicial standards by imposing sanctions on Plaintiff and Counsel to
> deter future misuse of the legal process, ensuring accountability and protecting
> Defendant's rights.

**V – Verify:** Motion of Referral for Criminal and Ethical Investigation
> **Legal Basis:** Duty to report criminal and ethical violations under Maryland professional
> conduct standards.
> **Objective**: Verify and hold Plaintiff and Counsel accountable through a referral for
> investigation, ensuring adherence to ethical and legal standards.

**E – Ensure:** Motion for Injunction to Prevent Future Abuse of Court Process
> **Legal Basis:** Equitable doctrines of injunctions and necessity for judicial oversight.
> **Objective:** Ensure future protection by requiring judicial approval for any future
> litigation by Plaintiff, thus deterring vexatious and retaliatory litigation.

**N – Neutralize:** Motion for a Better Maryland with Reciprocal Relief
> **Legal Basis:** Principles of equitable relief, reciprocal penalties, and public policy in
> deterrence.
> **Objective:** Neutralize harm inflicted by Plaintiff's bad-faith litigation through reciprocal
> financial penalties, aligning consequences with the severity of Plaintiff's actions.

**T – Terminate:** Motion to Dismiss with Prejudice for a June 13th Worth of Reasons
> **Legal Basis:** Equitable doctrine of unclean hands, abuse of process, and malicious
> prosecution.
> **Objective:** Terminate Plaintiff's claims permanently, preventing re-litigation of the same
> claims that are rooted in misconduct and abuse.

8       **Collectively, the PREVENT framework** provides a comprehensive approach to

addressing Plaintiff's misconduct, safeguarding judicial integrity, and ensuring that similar

abuses do not recur.

### III  FACTUAL BACKGROUND

9       **Background of Dillon-Capps's Employment, Health Conditions, and Request for**

**Protected Leave**

On January 4, 2024, Dillon-Capps notified Ohana of the need for intermittent FMLA leave due

to PTSD and related health conditions, providing all required documentation and receiving

formal approval several months before, Dillon-Capps exercised these rights in compliance with

company policies, notifying Richard Hartman, Justin Drummond, and Glenn Norris as required.

Dillon-Capps's PTSD required reasonable accommodations under the ADA, which Ohana

acknowledged previously when providing work from home accommodations.  Disregarding

ADA accommodations on June 13, 2024 for the day of leave.

10      **Retaliation and Interference with Protected Rights on June 13, 2024**

On June 13, 2024, Dillon-Capps informed Ohana's leadership, including Human Resources Vice

President Richard Hartman and President Justin Drummond, of the need to take FMLA leave for

the day due to escalating PTSD symptoms. Despite this notice, Hartman issued an ultimatum via

email, demanding that Dillon-Capps return to work immediately and complete demands by 3:00

p.m. under threat of disciplinary action. The demand, issued mere hours after Dillon-Capps's

protected leave request, constitutes a direct violation of Dillon-Capps's FMLA and ADA rights.

11   **Escalation Despite Good-Faith Efforts to Comply with Company Requests**

At noon on June 13, Dillon-Capps responded to Hartman's coercive demand by sending a cease-

and-desist letter asserting his FMLA rights and requesting that his leave be respected.

Additionally, at 2:05 p.m., Dillon-Capps escalated his concerns to Ohana's ownership,

highlighting the retaliatory nature of Hartman's actions in relation to previous whistleblower

complaints. Fifteen minutes later, in what appeared to be further retaliation, Hartman placed

another employee, Darren Koritzka, on leave due without cause. At approximately 9:00 p.m.,

Dillon-Capps was formally suspended without pay, after a multi-hour conversation with

Drummond and Victor Brick who made no mention of adverse employment action.

12   **Fraudulent Litigation Initiated Under False Pretenses**

On June 14, 2024, Ohana, represented by Miles & Stockbridge, PC, filed a lawsuit against

Dillon-Capps, falsely asserting that he had "seized" control of Ohana's Microsoft 365 account.

Ohana's affidavits, signed by Hartman and Drummond, alleged that Dillon-Capps restricted

administrative access to company systems and prevented the organization from regaining

control. However, evidence shows that Drummond had entered a written accord with Dillon-

Capps on June 7, which would have enabled him to access company systems at any time and

provide access to others. Drummond's failure to satisfy the accord on June 10, 11, or 13, despite

multiple opportunities, underscores the pretextual nature of the lawsuit. Ohana's actions thus

constitute perjury and bad-faith litigation, as its counsel knew and stated under oath of their knowledge of the FMAL violation.

13    **Court Admissions and Continued Litigation Misconduct**

During a hearing on June 26, 2024, Ohana's counsel, Robert Brennen, admitted that Ohana's demand for Dillon-Capps to work during protected leave was a clear violation of his FMLA rights. Despite this admission, Ohana proceeded with the lawsuit, misrepresenting Dillon-Capps's actions to the court and engaging in sustained procedural misconduct. Ohana's continued filings included contradictory affidavits and misrepresentation of all material facts, intending to mislead the court and avoid legal accountability.

14    **Tactics to Evade Judicial Scrutiny and Accountability**

In the following months, Ohana and M&S employed procedural tactics designed to evade court scrutiny and accountability. On October 25, 2024, Ohana filed a Notice of Voluntary Dismissal, circumventing an upcoming evidentiary hearing where Plaintiff would have been compelled to substantiate its claims. This filing exemplifies an abuse of process, as it seeks to escape consequences for submitting fraudulent claims and perjured affidavits.

15    **Harm and Ongoing Damages Suffered by Dillon-Capps**

Ohana's actions have inflicted severe personal, financial, and professional harm on Dillon-Capps, as documented in the **Affidavit of Harm, Affidavit of Financial Urgency, Amended Affidavit of Plaintiff's Abusive Use of the Judicial System, and Motion for Pro Se Representation of LLC**. Dillon-Capps has suffered physical and mental health deterioration due to PTSD exacerbation, manifesting in severe memory issues and malignant catatonia, which is life-threatening. The financial impact has forced Dillon-Capps into economic hardship,

threatening his personal security, business interests, and the well-being of family dependents. Reputational harm, exacerbated by Dillon-Capps's inability to engage in his professional field due to legal entanglements, has resulted in lost opportunities and potential investors for his business, **MXT3, LLC**.

16    **Necessity for Judicial Intervention and Equitable Relief**

The ongoing misconduct, perjury, and abuse of process by Plaintiff and Counsel demand immediate judicial intervention. Given the extensive harm Dillon-Capps has endured, these actions call for reciprocal relief to address personal, professional, and financial damages, alongside measures to protect Dillon-Capps from future abuse and to deter similar actions in Maryland's legal system.

## IV  LEGAL ARGUMENT AND KEY SANCTIONABLE CONDUCT

17    This Motion establishes that Plaintiff Ohana and its counsel, Miles & Stockbridge, have engaged in a sustained pattern of malicious and bad-faith litigation, violating Dillon-Capps's FMLA and ADA rights, obstructing due process, and causing irreparable harm. In support of the seven counterclaims and motions outlined in the PREVENT framework, this section sets forth the legal basis for the equitable relief and reciprocal relief, penalties, and sanctions necessary to protect Dillon-Capps, deter future misconduct, and uphold the integrity of the Maryland judicial system.

## CORE LEGAL ARGUMENTS FOR SANCTIONABLE CONDUCT

1    <u>Equitable Defense – Unclean Hands</u>

18    **Legal Standard and Purpose**: The doctrine of unclean hands, and other Equitable

Defenses, bars a plaintiff from seeking relief when they have engaged in unethical or fraudulent

conduct in relation to the matter at hand.

19    Supporting Case Law:

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806

(1945): Established that courts may deny relief to parties acting in bad faith.

*Manown v. Adams*, 328 Md. 463, 615 A.2d 611 (1992): Maryland's highest court

emphasized that unclean hands protect judicial integrity and require the court to bar

claims tainted by deceit.

20    **Application to Dillon-Capps's Case**: Plaintiff and Counsel's submission of knowingly

false affidavits, abuse of voluntary dismissal to evade accountability, and perjury on key issues

regarding Dillon-Capps's employment and leave rights create a compelling basis for applying

unclean hands to bar Plaintiff's claims in their entirety.

2    <u>Perjury and Fraud Upon the Court</u>

21    **Legal Standard and Purpose**: Maryland criminalizes perjury as any knowingly false or

misleading statement made under oath in a judicial proceeding (Md. Code Ann., Crim. Law § 9-

101).

22    Supporting Case Law:

1.    *Shifflett v. State*, 245 Md. 169, 225 A.2d 440 (1967): Perjury encompasses both

falsehoods and omissions intended to mislead.

2.    *Attorney Grievance Commission v. Agbaje*, 438 Md. 695, 93 A.3d 262 (2014): Deliberate deceit and misrepresentations by counsel are serious ethical violations warranting sanctions.

23    **Application to Dillon-Capps's Case**: The affidavits from Hartman and Drummond contain materially false statements that directly misrepresent Dillon-Capps's compliance with company access protocols, standards, and contractual obligations creating a basis for sanctions for perjury and fraud upon the court.

3    <u>Bad Faith Litigation – Including Abuse of Process, Frivolous and Vexing Litigation, Malicious Prosecution, and Obstruction of Evidence</u>

24    **Legal Standard and Purpose**: Maryland Rule 1-341 provides courts with authority to impose sanctions for litigation conducted in bad faith, without substantial justification, or for an improper purpose.

25    Supporting Case Law:

*Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 545 A.2d 1296 (1988): Sanctions warranted for bad faith or lack of substantial justification in litigation.

*Majority Props., Inc. v. Town of Hancock*, 333 Md. 3, 633 A.2d 392 (1993): Maryland courts may impose sanctions for frivolous or vexatious litigation.

26    Application to Dillon-Capps's Case:

1.    **Abuse of Process**: Plaintiff's actions demonstrate misuse of judicial mechanisms to harass Dillon-Capps and evade scrutiny, particularly through the filing of the Notice of Voluntary Dismissal, and show cause seeking incarceration.

2.    **Frivolous Litigation**: The lawsuit against Dillon-Capps lacked any valid basis, relying on perjured affidavits and fabricated claims, warranting sanctions.

3.    **Malicious Prosecution**: The litigation was filed in retaliation for Dillon-Capps's

whistleblowing activities, confirming malicious intent.

4.    **Obstruction of Evidence**: M&S obstructed Dillon-Capps's access to critical

evidence of the June 26th Hearing, preventing a fair defense and obstructing due process.

## 4    Estoppel – Induced Harm and Reliance

27    **Legal Standard and Purpose**: Estoppel bars a party from making inconsistent claims

when another has reasonably relied on their prior representations.

28    Supporting Case Law:

*Knapp v. Smethurst*, 139 Md. App. 676, 779 A.2d 970 (2001): Estoppel prevents parties

from changing their stance after inducing reliance to another's detriment.

*Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 674 A.2d 521 (1996):

Promissory estoppel binds a party to promises relied upon in good faith.

29    **Application to Dillon-Capps's Case**: Plaintiff's contradictory assertions and repeated

misrepresentations justify estoppel, barring them from further claims and supporting reciprocal

equitable relief to Dillon-Capps.

## 5    Witness Tampering

30    **Legal Standard and Purpose**: Witness tampering involves attempts to influence witness

testimony improperly, especially through coercion or manipulation.

31    **Supporting Case Law**:

*Attorney Grievance Commission v. Hodes*, 441 Md. 136, 105 A.3d 533 (2014): Maryland

courts impose sanctions for ethical violations including witness manipulation.

32    **Application to Dillon-Capps's Case**: Randall Romes and Daniel Levett's affidavits appear to reflect manipulation, selectively omitting or altering material facts leading them to make incorrect affirmations and influencing their statements. Such conduct by Plaintiff and Counsel supports further scrutiny under oath.

## CONCLUSION

33    The Plaintiff's consistent engagement in bad-faith litigation tactics, perjury, procedural abuses, and obstruction of due process establishes a compelling need for sanctions, equitable relief, and dismissal with prejudice. The court is urged to apply the PREVENT framework as a comprehensive remedy to address Dillon-Capps's immediate harm, deter future abuses, and uphold the integrity of Maryland's judicial system.

### V  PREVENT FRAMEWORK

#### A  Protect – Disqualification for Ethical Violations and Misconduct

1    Foundations for Disqualification

34    **Legal Standard**: Disqualification is an equitable remedy aimed at protecting the judicial process and ensuring fair representation by removing attorneys who engage in unethical behavior.

35    **Purpose**: Disqualification preserves judicial integrity by removing counsel who have breached ethical duties, avoiding undue influence or procedural advantage.

## 2    Judicial Standards and Purpose

36    **Judicial Standards**: Maryland Rule 19-301.7 (Conflict of Interest) and Rule 19-303.3 (Candor Toward the Tribunal) establish that attorneys must avoid conflicts and uphold honesty before the court.

37    **Case Law**:

*Attorney Grievance Commission v. Hodes*, 441 Md. 136 (2014): Maryland courts have discretion to disqualify counsel for ethical violations that harm the fairness of proceedings.

*Attorney Grievance Commission v. Agbaje*, 438 Md. 695 (2014): Repeated deceit warrants severe disciplinary action, including disqualification.

## 3    Criteria for Imposing Disqualification for Misconduct

38    **Conflict of Interest**: Evidence of conflicting interests or divided loyalty.

39    **Lack of Candor and Ethical Violations**: Instances of dishonesty, bad faith, or actions detrimental to the client, the opposing party, or the court.

40    **Intent to Mislead or Obstruct**: Counsel's actions designed to gain unfair advantage or obstruct the court's function.

## 4    Maryland Case Law

41    *Attorney Grievance Commission v. Mixter*, 441 Md. 416 (2015): Established that deceitful behavior and procedural abuses warrant disqualification, with sanctions extended to prevent further abuse.

42    *Manown v. Adams*, 328 Md. 463 (1992): Confirmed that courts may disqualify counsel when ethical violations impair judicial integrity and the fair administration of justice.

### 5    Cross-Argument Case Law

43    *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806

(1945): Affirmed courts' authority to deny relief when counsel's conduct is inequitable,

supporting the remedy of disqualification.

44    *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992): Recognized that unethical

behavior by counsel justifies disqualification to preserve fairness.

### 6    Application to Dillon-Capps's Case

45    **Ethical Breaches by Miles & Stockbridge**: M&S engaged in conflicts of interest,

misrepresented facts in filings, and obstructed evidence, violating Maryland Rules of

Professional Conduct 19-301.7, 19-303.1, and 19-303.3.

46    **Pattern of Misconduct**: Counsel repeatedly filed affidavits and motions containing

knowingly false statements and withheld evidence. Disqualification is necessary to prevent

continued harm to Dillon-Capps, protect judicial integrity, and ensure accountability.

### 7    Conclusion

47    Disqualification is warranted to protect Dillon-Capps from further procedural abuses and

ensure the court's proceedings are not tainted by ethical violations or conflicts of interest from

Plaintiff's counsel.

## B    Restore – Motion to Vacate the TRO

### 1    Foundations for Vacatur of TRO

48    **Legal Standard**: A TRO obtained through deceptive or fraudulent means violates

principles of fairness and should be vacated to restore the status quo.

49    **Purpose**: Vacating the TRO reverses unjust restrictions imposed without due cause,

particularly where there was perjury or abuse of process in obtaining it.

2    <u>Judicial Standards and Purpose for Vacatur</u>

50    **Judicial Standards**: Courts have broad discretion to vacate orders that were improperly

obtained, particularly where evidence of fraud, perjury, or lack of material basis is established.

51    **Case Law**:

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806

(1945): Highlighted the courts' authority to vacate orders founded on bad faith or

fraudulent conduct.

*Schaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992): Confirmed that courts may

vacate rulings to prevent perpetuation of fraud or unfair advantage.

3    <u>Criteria for Vacating a TRO</u>

52    **Fraud or Misrepresentation**: The TRO was granted based on inaccurate or perjured

statements.

53    **Absence of Substantive Grounds**: Lack of factual or legal basis for the TRO due to

reliance on baseless claims.

54    **Procedural Irregularities**: Failure to provide necessary notice or meet criteria for TRO

issuance.

4    <u>Maryland Case Law</u>

55    *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376 (2001): Established that

fraudulent conduct justifies vacatur and strict penalties to deter abuse of court orders.

56    *Hammond v. Marketing Management, Inc.*, 445 Md. 310 (2015): Recognized the court's

inherent authority to vacate TROs issued without proper evidentiary support or obtained through

bad faith.

5    Cross-Argument Case Law

57    *United States v. Beggerly*, 524 U.S. 38 (1998): Stated that equitable relief, including

vacatur, is appropriate to prevent the perpetuation of injustice from misleading filings.

58    *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944): Supported vacatur

for judgments based on fraudulent misrepresentation.

6    Application to Dillon-Capps's Case

59    **Evidence of Fraudulent Basis**: The TRO against Dillon-Capps was granted based on

affidavits that, as demonstrated, contained knowingly false statements. These perjurious

affidavits misled the court into issuing an unwarranted order, imposing restrictions without just

cause.

60    **No Substantive Basis**: Given the admissions by Plaintiff's counsel on June 26, 2024,

confirming FMLA violations, and conflicting statements within the affidavits, the TRO lacks a

legitimate legal or factual basis. Vacatur is necessary to remedy the improper imposition of

restrictions on Dillon-Capps.

7    Conclusion

61    Vacating the TRO is essential to restore Dillon-Capps's rights, as the order was

improperly granted and rooted in deceit. This action realigns the case with principles of justice,

nullifying the restrictions imposed through Plaintiff's procedural abuses.

## C  Enforce – Motion to Impose Sanctions

### 1    Foundations for Imposing Sanctions

62    **Legal Standard**: Sanctions serve to deter misuse of the judicial system, especially when parties engage in bad faith litigation, perjury, or abuse of process. Maryland Rule 1-341 authorizes courts to impose sanctions to discourage vexatious and frivolous conduct, ensuring accountability and preserving judicial integrity.

63    **Purpose**: Imposing sanctions holds litigants and their counsel accountable for misconduct, deterring future violations and enforcing judicial standards to prevent misuse of court processes.

### 2    Judicial Standards and Purpose for Imposing Sanctions

64    **Judicial Standards**: Courts have inherent authority to impose sanctions on parties or counsel engaging in deceptive practices, bad faith litigation, or obstructive conduct.

65    **Case Law**:

*Attorney Grievance Commission v. Mixter*, 441 Md. 416 (2015): Established that courts have broad authority to sanction attorneys for misuse of the court system and misleading behavior.

*Majority Props., Inc. v. Town of Hancock*, 333 Md. 3 (1993): Confirmed that sanctions are warranted for frivolous claims and abuses of process, underscoring judicial discretion in enforcing accountability.

### 3    Criteria for Imposing Sanctions

66    **Bad Faith Litigation**: Plaintiff's conduct includes repeated filings of baseless claims and procedural abuse without substantive merit.

67    **Misrepresentation and Perjury**: False statements in affidavits and motions intended to deceive the court and influence rulings.

68    **Pattern of Obstruction**: Engaging in delay tactics, filing misleading documents, and attempting to evade accountability through voluntary dismissals.

## 4    Maryland Case Law

69    *Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413 (1988): Held that sanctions are warranted in cases of bad faith or lack of substantial justification.

70    *Klupt v. Krongard*, 126 Md. App. 179 (1999): Established that parties engaging in deliberate misrepresentation and obstruction are subject to sanctions to deter abusive litigation practices.

## 5    Cross-Argument Case Law

71    *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980): The U.S. Supreme Court recognized the inherent authority of courts to impose sanctions to prevent abuse of the judicial process.

72    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): Reaffirmed the principle that courts have broad discretion to sanction litigants and counsel who engage in bad-faith or vexatious litigation.

## 6    Application to Dillon-Capps's Case

73    **Pattern of Misconduct by Plaintiff and Counsel**: Ohana and M&S filed affidavits containing false statements, obstructed evidence, and repeatedly engaged in actions with no legal merit, all aimed at harassing Dillon-Capps.

74    **Demonstrated Bad Faith**: Counsel admitted to FMLA violations in court, and Plaintiff used procedural mechanisms like the TRO and Notice of Voluntary Dismissal to avoid

accountability. Sanctions are critical to deter further abuse and compensate Dillon-Capps for the harm caused by Plaintiff's misconduct.

## 7    Conclusion

75    Imposing sanctions is necessary to enforce judicial standards, deter Plaintiff and Counsel's continued abuse, and restore judicial integrity. Sanctions will prevent future misuse of the court system and uphold principles of fairness and accountability.

## D    Verify – Motion for Referral for Criminal and Ethical Investigation

## 1    Foundations for Referral for Investigation

76    **Legal Standard**: Courts have the authority to refer matters to external regulatory bodies for investigation where unethical or potentially criminal conduct is alleged. Referrals support judicial integrity by ensuring that behavior violating professional or ethical standards is addressed by appropriate oversight agencies.

77    **Purpose**: A referral for investigation reinforces accountability, allowing independent authorities to evaluate Plaintiff's and Counsel's conduct, including perjury, witness tampering, obstruction of evidence, and other ethical violations.

## 2    Judicial Standards and Purpose for Referral

78    **Judicial Standards**: Maryland courts recognize that maintaining judicial integrity involves addressing potential ethical and criminal violations through referrals. Judicial referrals uphold the court's role in safeguarding the legal profession's ethical standards and ensuring justice is served.

79    **Case Law**:

*Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376 (2001): Established that unethical conduct warrants investigation and, where appropriate, disciplinary measures. *Attorney Grievance Commission v. Mixter*, 441 Md. 416 (2015): Supported referral for investigation in cases of persistent misconduct, where unethical actions undermine judicial integrity.

3    Criteria for Referral for Criminal and Ethical Investigation

80    **Probable Cause of Unethical or Criminal Conduct**: Evidence indicating serious misconduct, including perjury, obstruction, and abuse of court processes.

81    **Intentional Misrepresentation**: False statements intended to deceive the court and manipulate judicial outcomes.

82    **Obstruction and Witness Tampering**: Plaintiff and Counsel's conduct raises credible concerns about obstruction of justice and influencing witness statements.

4    Maryland Case Law

83    *Attorney Grievance Commission v. Mixter*, 441 Md. 416 (2015): Maryland courts assert that credible allegations of misconduct warrant investigation by regulatory bodies, especially where the conduct could impact the fairness of judicial proceedings.

84    *Attorney Grievance Commission v. Rand*, 411 Md. 83 (2009): Reinforced the necessity of external review in cases where an attorney's actions demonstrate intentional dishonesty or misrepresentation in legal proceedings.

### 5    Cross-Argument Case Law

85    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): U.S. Supreme Court acknowledged that courts may refer matters to authorities for criminal or ethical investigation where litigant or attorney misconduct undermines judicial processes.

86    *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987): Established that courts have authority to address misconduct that undermines the administration of justice, including referring cases for criminal investigation where warranted.

### 6    Application to Dillon-Capps's Case

87    **Evidentiary Basis for Referral**: The affidavits, motions, and other court submissions from Plaintiff and Counsel reveal patterns of perjury, witness tampering, and obstruction. The filing of affidavits with false statements, manipulation of evidence, and evasion of accountability through procedural tactics provide ample grounds for referral to regulatory and criminal bodies.

88    **Specific Incidents Warranting Investigation**: Plaintiff's reliance on false affidavits, repeated misrepresentations, and Counsel's failure to address Dillon-Capps's challenges to their ethics underscore the need for formal investigation. A referral will enable independent authorities to review these practices and uphold the integrity of judicial processes.

### 7    Conclusion

89    A referral for criminal and ethical investigation is essential to verify Plaintiff and Counsel's accountability, reinforcing legal standards and maintaining the integrity of the court. This referral serves as an independent check, ensuring that violations of legal and ethical standards are thoroughly addressed.

## E    Ensure – Motion for Injunction to Prevent Future Abuse of Court Process

1    Foundations for Injunctive Relief

90    **Legal Standard**: Injunctive relief serves as an equitable remedy to prevent ongoing or future harm, particularly where parties have demonstrated a pattern of bad-faith litigation, harassment, or procedural abuse. Under Maryland law, courts can issue an injunction to prohibit further harmful actions that threaten judicial integrity or cause irreparable harm to litigants.

91    **Purpose**: An injunction aims to ensure that Plaintiff is prevented from pursuing further abusive litigation without prior court approval, addressing both ongoing and potential future harm.

2    Judicial Standards and Purpose for Issuing an Injunction

92    **Judicial Standards**: Courts may grant injunctive relief when a party's conduct suggests likely future abuse or continued harm if not restricted. Maryland courts support issuing injunctions when procedural abuses disrupt judicial proceedings, with the objective of ensuring fairness and judicial economy.

93    **Case Law**:

*State Comm'n on Human Relations v. Amecom Div., Litton Systems, Inc.*, 278 Md. 120 (1976): Affirmed that injunctive relief is appropriate when there is a continuing threat of harm or abuse that courts have a duty to prevent.

*J.L. Matthews, Inc. v. Maryland-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71 (2002): Maryland's highest court affirmed that injunctions serve as preventative measures to safeguard against improper actions that interfere with lawful proceedings.

### 3    Criteria for Granting an Injunction Against Further Abuse

94    **Likelihood of Continued Abuse**: Evidence of repeated procedural abuses or baseless filings by Plaintiff indicating likely future misconduct if left unchecked.

95    **Irreparable Harm and Judicial Integrity**: Plaintiff's actions threaten Dillon-Capps's rights and undermine judicial integrity, warranting an injunction to preserve court resources and prevent continued harm.

96    **Lack of Adequate Remedy at Law**: Monetary damages alone cannot adequately prevent the recurrence of abuse or address the systemic impact of Plaintiff's actions.

### 4    Maryland Case Law

97    *State Comm'n on Human Relations v. Amecom Div., Litton Systems, Inc.*, 278 Md. 120 (1976): Maryland courts recognize injunctions as essential to preventing ongoing harm and abuse when legal remedies are insufficient.

98    *El Bey v. Moorish Science Temple of America, Inc.*, 362 Md. 339 (2001): An injunction was upheld where repeated filings by the plaintiff disrupted judicial resources, illustrating the court's authority to protect against vexatious litigation.

### 5    Cross-Argument Case Law

99    *Clinton v. Jones*, 520 U.S. 681 (1997): Established that injunctions may be necessary to prevent continued abusive litigation practices that harm an individual's rights or the judicial process.

100    *Matter of Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984): Courts may enjoin parties from filing further lawsuits without prior approval if their litigation history demonstrates a pattern of abusive filings.

6    <u>Application to Dillon-Capps's Case</u>

101    **Pattern of Abusive Filings by Plaintiff**: Plaintiff has engaged in baseless litigation, delay tactics, and repetitive filings aimed solely at harassment. These actions indicate a high likelihood of continued abuse, justifying the need for an injunction to prevent future misconduct.

102    **Harm to Judicial Resources and Dillon-Capps**: Plaintiff's continued misuse of the court system depletes judicial resources, prolongs harm to Dillon-Capps, and perpetuates emotional and financial strain. Injunctive relief is essential to safeguard judicial integrity and prevent future harm.

7    <u>Conclusion</u>

103    An injunction is necessary to ensure that Plaintiff and Counsel do not continue abusing the judicial system through baseless filings or further misconduct. This injunction will uphold the integrity of judicial processes, protect Dillon-Capps from ongoing harm, and deter future misuse of court resources.

F    <u>Neutralize – Motion for a Better Maryland with Reciprocal Relief</u>

1    <u>Foundations for Reciprocal Financial Relief</u>

104    **Legal Standard**: Maryland law supports the imposition of equitable relief to counteract harm inflicted by bad-faith litigation, including reciprocal penalties to neutralize the financial impact on harmed parties. This relief aims to place the burden of harm back onto those responsible for its creation, upholding fairness and deterring similar misconduct in the future.

105    **Purpose**: The reciprocal relief requested here serves to balance the extensive harm inflicted on Dillon-Capps through financial restitution and penalties assessed against each individual involved in the misconduct.

## 2    Judicial Standards and Purpose for Reciprocal Relief

106    **Judicial Standards**: Reciprocal financial relief is warranted when a party's intentional misconduct results in significant financial, reputational, and personal harm to another. Maryland courts may order reciprocal relief to restore balance and deter malicious conduct, addressing harm proportionately to the severity and pervasiveness of the abuse.

107    **Case Law**:

*Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 545 A.2d 1296 (1988): Maryland courts require accountability and deterrence where misconduct in litigation causes substantial harm, authorizing sanctions and reciprocal relief.

*Majority Props., Inc. v. Town of Hancock*, 333 Md. 3, 633 A.2d 392 (1993): Recognized that reciprocal financial penalties may be imposed to address unjust enrichment from litigation abuse.

## 3    Criteria for Reciprocal Financial Relief

108    **Equitable Balance of Harm**: Relief seeks to counteract the financial and personal toll inflicted upon Dillon-Capps due to Plaintiff's bad-faith litigation, assessed on a per-individual basis.

109    **Intent to Deter Future Misconduct**: The financial burden placed on Plaintiff and its representatives reflects the intent to deter similar misconduct in future cases.

110    **Reciprocal Liability for Individual Participants**: Reciprocal relief should be applied individually to each agent involved, creating personal accountability for contributions to the cumulative harm inflicted.

4    Maryland Case Law

111    *Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413 (1988): The court imposed

reciprocal relief where defendants' litigation tactics created substantial harm, underscoring the

principle that misconduct should carry financial consequences.

112    *Kramer v. Emche*, 64 Md. App. 27, 494 A.2d 225 (1985): Affirmed that financial

penalties may be assessed individually to deter collective misconduct and prevent recurrence of

abuse.

5    Cross-Argument Case Law

113    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): U.S. Supreme Court upheld sanctions to

recoup financial harm caused by bad-faith litigation, underscoring the necessity of penalties that

mirror the impact of the misconduct.

114    *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980): Recognized that financial sanctions

may be required to offset the harm and deter litigants who manipulate the judicial system to

inflict financial damage on opposing parties.

6    Application to Dillon-Capps's Case

115    **Basis for Reciprocal Relief**: Plaintiff's bad-faith litigation has imposed severe financial

strain, reputational harm, and personal hardship on Dillon-Capps, justifying a per-individual

financial penalty to balance the harm caused. Each responsible party should be held liable in a

reciprocal manner, creating individual financial accountability for their respective roles in the

misconduct.

116    **Scope of Relief**: The cumulative financial relief includes reciprocal penalties against all fourteen individuals involved, ensuring that each participant is held accountable for their contributions to Dillon-Capps's harm.

## 7    Conclusion

117    Reciprocal financial relief is essential to neutralize the financial impact of Plaintiff's and Counsel's sustained litigation abuse. This relief establishes individual responsibility, deters future misconduct, and restores the equitable balance compromised by Plaintiff's bad-faith actions.

### G    Terminate – Motion to Dismiss with Prejudice for a June 13th Worth of Reasons

#### 1    Foundations for Permanent Dismissal with Prejudice

118    **Legal Standard**: A motion to dismiss with prejudice permanently closes the case and prevents refiling, typically granted when the plaintiff's claims are found to be baseless, malicious, or filed with intent to harass. Maryland law provides for dismissal with prejudice to prevent further abuse of the legal system and to protect defendants from ongoing or repeat litigation rooted in bad faith.

119    **Purpose**: Dismissal with prejudice serves to finalize Dillon-Capps's protection from further harassment by permanently ending the plaintiff's baseless claims, reflecting the doctrines of unclean hands, estoppel, and abuse of process to prevent relitigation.

#### 2    Judicial Standards and Purpose for Dismissal with Prejudice

120    **Judicial Standards**: Courts may dismiss with prejudice if claims lack legal or factual foundation, are used to harass, or are barred by equitable doctrines like unclean hands or

estoppel. Maryland courts emphasize that dismissal with prejudice is warranted where litigation is used as a tool for retaliation, devoid of legitimate grounds.

121    **Case Law:**

*DeLeon v. Slear*, 328 Md. 569, 616 A.2d 380 (1992): Maryland's highest court confirmed that courts may dismiss cases with prejudice when litigants abuse legal processes for improper purposes.

*Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 910 A.2d 1072 (2006): Established that dismissal with prejudice is an appropriate remedy where one party's conduct demonstrates an intent to misuse the judicial process.

### 3    Criteria for Imposing Dismissal with Prejudice

122    **Frivolous or Baseless Claims**: Plaintiff's claims lack legal merit and are contradicted by factual evidence, showing no substantive grounds for pursuing litigation.

123    **Intent to Harass or Retaliate**: Evidence supports that the litigation was initiated and maintained with intent to retaliate against Dillon-Capps for protected actions, not to resolve legitimate disputes.

124    **Failure to Act in Good Faith**: Plaintiff's conduct in initiating, maintaining, and attempting to dismiss the case demonstrates bad faith and procedural abuse, violating equitable standards.

### 4    Maryland Case Law

125    *DeLeon v. Slear*, 328 Md. 569 (1992): Maryland courts affirm that dismissal with prejudice is justified where litigants act in bad faith or use litigation as a means of harassment.

126    *Christian v. Maternal-Fetal Medicine Assocs. of Md., LLC*, 459 Md. 1, 183 A.3d 762

(2018): Courts are empowered to dismiss with prejudice to protect defendants from baseless

litigation and maintain judicial integrity.

### 5    Cross-Argument Case Law

127    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): Reinforced that dismissal with prejudice

is an appropriate sanction for parties who abuse judicial proceedings, ensuring defendants are not

subject to prolonged harassment.

128    *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000): Courts may permanently dismiss

claims that are found to be harassing, retaliatory, or lacking in merit, particularly when they

reflect a pattern of procedural abuse.

### 6    Application to Dillon-Capps's Case

129    **Grounds for Dismissal with Prejudice**: Plaintiff's lawsuit, rooted in perjured affidavits,

misrepresentations, and malicious intent, constitutes a clear abuse of legal process and lacks

merit. The dismissal would serve to protect Dillon-Capps from further harm and prevent Plaintiff

from re-litigating baseless claims.

130    **Finality of Protection**: The relief sought is permanent, ensuring Plaintiff and Counsel

cannot continue to exploit legal processes to intimidate or harass Dillon-Capps, thus upholding

fairness and judicial economy.

### 7    Conclusion

131    Dismissal with prejudice is essential to conclude this litigation and protect Dillon-Capps

from continued harm. It reflects both the doctrines of unclean hands and abuse of process,

ensuring that the Plaintiff cannot reinitiate the claims and that Dillon-Capps receives finality

from the ongoing misconduct.

## VI STATUTES

### A FAMILY AND MEDICAL LEAVE ACT (FMLA) VIOLATIONS

#### 1    Legal Standard and Prima Facie Elements

132    The Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, guarantees eligible

employees up to 12 weeks of unpaid, job-protected leave for serious health conditions, and it

expressly prohibits both interference with FMLA rights and retaliation against employees who

exercise those rights. The relevant provisions here are:

**Interference with FMLA Rights** (29 U.S.C. § 2615(a)(1)): Employers are prohibited from
interfering with, restraining, or denying the exercise or attempt to exercise any FMLA rights.
**Retaliation for Exercising FMLA Rights** (29 U.S.C. § 2615(a)(2)): Employers may not
retaliate against employees who use or seek to use FMLA leave by taking adverse employment
actions that would dissuade a reasonable employee from exercising their rights.

#### 2    Prima Facie Elements of FMLA Interference

133    To establish a prima facie case of interference under the FMLA, a plaintiff must

demonstrate:

**Eligibility for FMLA Leave**: The employee was eligible under FMLA standards.
**Entitlement to FMLA Leave**: The employee had a qualifying reason for FMLA leave.
**Employer Knowledge**: The employee provided appropriate notice of the need for leave.
**Denial or Disruption of FMLA Rights**: The employer denied, obstructed, or otherwise
interfered with the employee's rights under FMLA.

#### 3    Retaliation Defined

134    Under the FMLA, **retaliation** refers to any adverse employment action taken by an

employer against an employee for exercising or attempting to exercise their FMLA rights.

Retaliation can include actions such as termination, suspension, demotion, or any other measure that would deter a reasonable employee from asserting their rights under the FMLA. The FMLA's anti-retaliation provisions, codified at 29 U.S.C. § 2615(a)(2), protect employees from punitive responses by employers who might otherwise seek to discourage the use of FMLA leave.

135     To establish a retaliation, claim under the FMLA, the following elements must be proven:

**Exercise of FMLA Rights**: The employee engaged in a protected activity by taking or requesting FMLA leave.

**Adverse Employment Action**: The employer took a materially adverse action against the employee that would dissuade a reasonable worker from exercising FMLA rights.

**Causal Connection**: A causal relationship exists between the employee's protected activity and the adverse employment action.

4      Supporting Case Law

136     **Hoge v. Honda of Am. Mfg., Inc.**, 384 F.3d 238 (6th Cir. 2004) (Judge Boggs): In *Hoge*, the court held that "interference with an employee's FMLA rights occurs when an employer's actions discourage or obstruct the employee's legitimate use of leave." Ohana's demand that Dillon-Capps report to work during approved FMLA leave constitutes such interference, as it pressured them to abandon their leave.

137     **Burlington N. & Santa Fe Ry. Co. v. White**, 548 U.S. 53 (2006) (Justice Breyer): The *Burlington* decision established that retaliation includes any action that would deter a reasonable employee from exercising their rights. Ohana's disciplinary threats and suspension of Dillon-Capps would dissuade a reasonable person from using FMLA leave, thereby constituting retaliation.

5    Application to Dillon-Capps' Case

I.    FMLA INTERFERENCE

138    **Eligibility and Entitlement to FMLA Leave**: Dillon-Capps initially requested intermittent FMLA leave on January 4, 2024, for a qualifying serious health condition—PTSD— which required both leave and periodic accommodations. Their healthcare provider completed the necessary FMLA certification forms and provided an additional letter to support Dillon-Capps's need for intermittent leave. Ohana subsequently approved Dillon-Capps's FMLA request, affirming their eligibility and entitlement to FMLA leave. Statements by Ohana and its counsel, as well as HR documentation, confirm Dillon-Capps's authorized right to take intermittent FMLA leave as needed.

139    **Employer Knowledge and Notice Provided**: On the morning of June 13, 2024, Dillon-Capps provided notice to Ohana that they would be using FMLA leave that day due to health concerns related to PTSD. This notice was issued approximately two hours before Richard Hartman, Vice-President of Human Resources, sent an email demanding Dillon-Capps's return to work immediately and complete demands by 3:00 p.m. Hartman's email conveyed a coercive threat: comply with the demand or face disciplinary action. This demand occurred after Dillon-Capps had invoked their legally protected right to FMLA leave, effectively disrupting and denying Dillon-Capps's entitlement to the leave for which they had already provided notice.

140    **Denial or Disruption of FMLA Rights**: Hartman's threat and disciplinary action constitute clear interference with Dillon-Capps's FMLA rights. By demanding that Dillon-Capps return to work despite an approved and properly noticed FMLA leave, Ohana attempted to obstruct Dillon-Capps's exercise of FMLA rights. This demand pressured Dillon-Capps to forgo

their leave to avoid adverse action, creating a hostile and coercive environment that directly

contravenes the protections provided under the FMLA.

II.    FMLA RETALIATION

141    **Exercise of FMLA Rights**: Dillon-Capps exercised their protected FMLA rights on June

13, 2024, by notifying Ohana of their need to take intermittent leave for health reasons.

142    **Adverse Employment Action**: Following this notice, Ohana subjected Dillon-Capps to

adverse actions, including the coercive demand to return to work under threat of discipline and a

subsequent suspension without pay. These actions constitute significant adverse employment

measures, each of which would deter a reasonable employee from using FMLA leave in the

future.

143    **Causal Connection**: The temporal proximity between Dillon-Capps's exercise of FMLA

rights and Ohana's adverse actions demonstrates a direct causal link. The coercive demand was

issued just two hours after Dillon-Capps provided notice of their need for leave, and the

suspension followed shortly thereafter. Ohana's rapid disciplinary response strongly indicates

that these actions were retaliatory, motivated by Dillon-Capps's decision to exercise their FMLA

rights.

6    Conclusion

144    Ohana's actions on June 13, 2024, fulfill the prima facie elements of both FMLA

interference and retaliation. Dillon-Capps was entitled to FMLA leave, properly notified their

employer, and yet faced coercive demands and suspension in response. Admissions by Richard

Hartman in his June 14 affidavit and statements by counsel during the June 26 hearing further

affirm Ohana's knowledge of the unlawful nature of these demands. The actions taken against

Dillon-Capps violated both the spirit and letter of the FMLA, constituting clear interference with and retaliation for their lawful exercise of FMLA rights.

## B  AMERICANS WITH DISABILITIES ACT (ADA) VIOLATIONS

### 1  Legal Standard and Prima Facie Elements

145    The Americans with Disabilities Act (ADA), under 42 U.S.C. § 12112, prohibits employers from discriminating against qualified individuals with disabilities. This includes a requirement to provide reasonable accommodations to employees with disabilities unless doing so would impose an undue hardship on the employer. The ADA also prohibits retaliation against employees for asserting their rights under the Act.

### 2  Prima Facie Elements of ADA Failure to Accommodate

146    To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must demonstrate:

**Qualified Individual with a Disability**: The employee has a recognized disability that substantially limits one or more major life activities, and they are otherwise qualified to perform the essential functions of their job with or without accommodations.

**Employer Knowledge**: The employer was aware of the employee's disability and need for accommodation.

**Reasonable Accommodation Request**: The employee requested a reasonable accommodation that would enable them to manage their disability.

**Denial of Accommodation**: The employer failed to provide, or engage in the interactive process to determine, a reasonable accommodation, thereby denying the employee their rights under the ADA.

### 3    Prima Facie Elements of ADA Retaliation

147    To establish a prima facie case of ADA retaliation, a plaintiff must show:

**Protected Activity**: The employee engaged in a protected activity, such as requesting or using an accommodation.

**Adverse Employment Action**: The employer took adverse action against the employee.

**Causal Connection**: A causal link exists between the protected activity and the adverse action.

### 4    Supporting Case Law

148    **EEOC v. Ford Motor Co.**, 782 F.3d 753 (6th Cir. 2015) (Judge Gibbons): This case affirmed that reasonable accommodations, such as leave or flexibility in work requirements, must be honored if they do not impose undue hardship on the employer. Ohana's refusal to honor Dillon-Capps's intermittent leave—without claiming undue hardship—constitutes a clear ADA violation.

149    **Taylor v. Phoenixville Sch. Dist.**, 184 F.3d 296 (3d Cir. 1999) (Judge Cowen): In *Taylor*, the court held that an employer must engage in the interactive process to determine a reasonable accommodation and cannot disregard approved accommodations. Ohana's failure to respect Dillon-Capps's pre-approved leave as an accommodation, followed by retaliatory actions, demonstrates a failure to adhere to ADA standards.

### 5    Application in Dillon-Capps' Case

I.    ADA FAILURE TO ACCOMMODATE

150    **Qualified Individual with a Disability**: Dillon-Capps is a qualified individual with a disability under the ADA due to their diagnosed PTSD, a condition that substantially limits major life activities related to mental health. This condition was documented by Dillon-Capps's healthcare provider, who completed the necessary ADA documentation in January 2024,

certifying Dillon-Capps's need for both leave and periodic accommodations to manage their disability.

151    **Employer Knowledge and Accommodation Approval**: Ohana was fully aware of Dillon-Capps's PTSD and their need for intermittent leave as an accommodation. On January 4, 2024, Dillon-Capps requested intermittent leave as a reasonable accommodation for their PTSD, which was substantiated by healthcare provider documentation. Ohana reviewed and approved this request, confirming Dillon-Capps's entitlement to intermittent leave whenever their condition required it. Statements by Ohana and its counsel, as well as documented approvals, confirm the employer's knowledge of and consent to Dillon-Capps's right to use this leave as an accommodation under the ADA.

152    **Denial of Accommodation on June 13, 2024**: Despite this prior approval, on June 13, 2024, Ohana directly violated Dillon-Capps's ADA rights by demanding that they report to work that day, despite Dillon-Capps's notice two hours earlier that they were exercising their right to intermittent leave due to health needs. Richard Hartman's demand, coupled with a threat of disciplinary action if Dillon-Capps did not comply, constituted an outright denial of the previously approved accommodation. Instead of respecting Dillon-Capps's lawful right to take leave for their disability, Ohana issued a coercive ultimatum, disrupting Dillon-Capps's use of their leave and contravening ADA-mandated accommodations.

II.    ADA RETALIATION

153    **Protected Activity**: Dillon-Capps engaged in protected activity under the ADA by notifying Ohana of their need to use intermittent leave on June 13, 2024, due to their PTSD. This

notice was provided to Ohana in compliance with the ADA, as part of Dillon-Capps's approved accommodation.

154    **Adverse Employment Action**: Following Dillon-Capps's exercise of their right to use leave, Ohana took adverse actions, including issuing a coercive demand that they return to work and subsequently suspending them without pay. These actions constituted a significant adverse employment action that would deter a reasonable employee from using ADA-protected accommodations in the future.

155    **Causal Connection**: The temporal proximity between Dillon-Capps's use of their leave and Ohana's adverse actions on the same day demonstrates a direct retaliatory response. Ohana's disciplinary threats and suspension immediately followed Dillon-Capps's notification of their leave, evidencing a causal link between the assertion of ADA rights and Ohana's retaliation.

### 6    Conclusion

156    Ohana's actions on June 13, 2024, meet the legal requirements for both failure to accommodate and retaliation under the ADA. Dillon-Capps's PTSD qualifies as a disability, Ohana was fully aware of the need for intermittent leave, and Ohana unlawfully interfered with Dillon-Capps's use of this accommodation by imposing a coercive demand and issuing a suspension. These actions constitute an outright denial of ADA rights and a retaliatory response to Dillon-Capps's lawful exercise of those rights, in violation of the ADA.

## C    Whistleblower Violations

### 1    Legal Standard and Prima Facie Elements

157    The Sarbanes-Oxley Act (SOX) (18 U.S.C. § 1514A) and Maryland state law provide robust protections for employees who report fraud or misconduct within their organizations.

Maryland's whistleblower protections are encapsulated in the Maryland Whistleblower Law

(Md. Code Ann., Lab. & Empl. § 5-305), which prohibits employers from retaliating against

employees who report violations of laws, regulations, or unethical practices. Both SOX and

Maryland law protect employees who, in good faith, report misconduct internally or externally to

relevant authorities.

## 2    Prima Facia Elements of Whistleblower Retaliation under Maryland Law

158    Under Maryland law, a prima facie case of whistleblower retaliation requires:

1.    **Protected Disclosure**: The employee made a disclosure of information that the employee reasonably believed evidenced a violation of law or misconduct.
2.    **Employer Knowledge**: The employer was aware of the disclosure.
3.    **Adverse Employment Action**: The employer took an adverse employment action against the employee.
4.    **Causal Connection**: There exists a causal link between the employee's protected disclosure and the employer's adverse action.

## 3    Prima Facie Elements of Whistleblower Retaliation under SOX

159    To establish a prima facie case for whistleblower retaliation under SOX, a plaintiff must

show:

1.    **Protected Activity**: The employee engaged in a protected activity by making a disclosure that they reasonably believed evidenced fraud, violations of federal law, or other forms of corporate misconduct.
2.    **Employer Knowledge**: The employer knew of the employee's disclosure.
3.    **Adverse Employment Action**: The employer took a materially adverse action against the employee.
4.    **Causal Connection**: There is a causal relationship between the protected activity and the adverse action taken by the employer.

## 4    Supporting Case Law

160    **Lawson v. FMR LLC**, 571 U.S. 429 (2014) (Justice Ginsburg): This case confirmed that

SOX protects employees from retaliation for reporting corporate wrongdoing, including fraud or

violations of law. Ohana's suspension of Dillon-Capps after their whistleblower disclosure is precisely the kind of retaliatory conduct prohibited by SOX.

161     **Klopfenstein v. PCC Flow Techs. Holdings, Inc.**, 2004-SOX-11 (Judge Sutton): *Klopfenstein* established that retaliation under SOX can be demonstrated by adverse action immediately following a protected disclosure. The temporal proximity of Ohana's retaliatory actions to Dillon-Capps's whistleblower disclosures underscores the retaliation claim.

162     **Adams v. Manown**, 328 Md. 463, 615 A.2d 611 (1992) (Judge Eldridge): In *Adams*, the Maryland Court of Appeals emphasized that Maryland's whistleblower laws protect employees from retaliation for good-faith reporting of workplace misconduct or legal violations. Ohana's retaliatory suspension, immediately following Dillon-Capps's report of misconduct, violates Maryland's whistleblower protections under Md. Code Ann., Lab. & Empl. § 5-305.

163     **Hicks v. Gilbert**, 135 Md. App. 394, 762 A.2d 986 (2000) (Judge Eyler): Maryland courts recognize temporal proximity as a key indicator of causation in whistleblower cases. Here, the close timing between Dillon-Capps's protected disclosure and Ohana's adverse action supports a finding of retaliatory intent.

5     Application in Dillon-Capps' Case

I.     PROTECTED DISCLOSURE AND EMPLOYER KNOWLEDGE

164     On June 13, 2024, at 2:05 p.m., Dillon-Capps sent an email and a series of text messages to Ohana's President, Justin Drummond, and other executives, detailing concerns regarding internal misconduct and potential fraud within Ohana. These disclosures highlighted Dillon-Capps's observations of corporate mismanagement, fraud, and harassment—all protected

disclosures under both SOX and Maryland's whistleblower statutes, as they were intended to expose potential violations of law and unethical conduct within the company.

165     Maryland's whistleblower protections specifically shield employees from adverse actions following disclosures of suspected legal violations or corporate misconduct. Dillon-Capps's disclosures, made directly to company leadership, qualify as protected activities under Md. Code Ann., Lab. & Empl. § 5-305 and SOX. Ohana, through its senior executives, received these reports and thus had knowledge of Dillon-Capps's whistleblower activities.

## II.    ADVERSE EMPLOYMENT ACTION AND CAUSAL CONNECTION

166     Immediately following these disclosures, Ohana responded with adverse employment actions against Dillon-Capps. Specifically, after the 2:05 p.m. email and text disclosures, Ohana suspended Dillon-Capps without pay. This adverse action constitutes a material, punitive measure that would deter a reasonable employee from engaging in whistleblower activities in the future.

167     The causal link between Dillon-Capps's whistleblower disclosures and the suspension is evident from the timing of the actions. Ohana's immediate disciplinary response—within hours of Dillon-Capps's disclosure—demonstrates clear retaliatory intent. Maryland courts have consistently found temporal proximity between protected disclosures and adverse actions to be sufficient evidence of causation in whistleblower claims. This timeline and the retaliatory suspension substantiate the causal connection required for a prima facie case under both SOX and Maryland law.

## 6    Conclusion

168    Dillon-Capps's June 13, 2024 disclosures, including the 2:05 p.m. email and text messages, qualify as protected whistleblower activities under both SOX and Maryland's whistleblower protections. Ohana's immediate suspension of Dillon-Capps without pay constitutes a clear act of retaliation, in direct violation of these protections. The timeline and circumstances around the retaliatory action make a compelling case for judicial relief and penalties against Ohana for its violation of Dillon-Capps's statutory rights under both federal and state whistleblower laws.

## D    Retaliation

### 1    Legal Standard and Prima Facie Elements

169    Federal statutes, including the Family and Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), and whistleblower laws under both the Sarbanes-Oxley Act (SOX) and Maryland state law, collectively prohibit employers from retaliating against employees who exercise protected rights. Retaliation occurs when an employer takes adverse action against an employee in response to the employee's lawful engagement in activities protected by these statutes. Each statute provides specific protections, but the elements of a retaliation claim under these laws are similar.

### 2    Prima Facie Elements of Retaliation

170    To establish a prima facie case of retaliation, the following elements must be proven:

1.    **Protected Activity**: The employee engaged in a protected activity, such as taking FMLA leave, requesting an ADA accommodation, or making a whistleblower disclosure.
2.    **Employer Knowledge**: The employer was aware of the employee's engagement in the protected activity.

3.   **Adverse Employment Action**: The employer took a materially adverse action against the employee that would dissuade a reasonable person from engaging in the protected activity.

4.   **Causal Connection**: There is a causal link between the employee's protected activity and the employer's adverse action.

### 3   Supporting Case Law

171   **Harris v. Forklift Systems, Inc.**, 510 U.S. 17 (1993) (Justice O'Connor): The Supreme Court in *Harris* established that any adverse action by an employer that would deter a reasonable person from exercising their rights constitutes retaliation. Ohana's suspension of Dillon-Capps immediately following their use of FMLA leave, ADA accommodations, and whistleblower activities constitutes an adverse action that would deter a reasonable employee from engaging in similar protected activities.

172   **Robinson v. Shell Oil Co.**, 519 U.S. 337 (1997) (Justice Thomas): The Court in *Robinson* held that retaliation includes any discriminatory or punitive action that would dissuade an employee from pursuing protected activities. Ohana's swift suspension of Dillon-Capps and the subsequent financial impact and harm to their reputation serve as retaliatory measures intended to discourage Dillon-Capps and others from asserting protected rights.

### 4   Application in Dillon-Capps' Case

I.   PROTECTED ACTIVITIES AND EMPLOYER KNOWLEDGE

173   Dillon-Capps engaged in multiple protected activities, including:

1.   **Exercising FMLA Rights**: Dillon-Capps requested and used intermittent FMLA leave on June 13, 2024, due to health issues related to PTSD.

2.   **Requesting and Using an ADA Accommodation**: Dillon-Capps requested and received intermittent leave as an ADA accommodation, which was reasserted on June 13, 2024, due to their ongoing need for support related to PTSD.

3.   **Engaging in Whistleblower Activity**: Dillon-Capps reported internal misconduct, fraud, and harassment in their 2:05 p.m. email and text messages to Ohana's

President, Justin Drummond, and other executives, disclosing protected information
under SOX and Maryland's whistleblower protections.

174    Ohana, including its senior management and legal representatives, had knowledge of all

these protected activities. The FMLA and ADA accommodations were documented in early

2024, and Dillon-Capps's whistleblower disclosures were directly addressed to Ohana's

leadership. Ohana's executives and HR department were therefore fully aware of Dillon-Capps's

engagement in protected activities.

## II.    ADVERSE EMPLOYMENT ACTION

175    Following Dillon-Capps's exercise of these protected rights, Ohana took immediate

adverse actions against them, most notably by suspending them without pay on June 13, 2024.

The suspension followed directly after Dillon-Capps's use of FMLA leave, request for ADA

accommodation, and whistleblower disclosures, and it constituted a significant adverse action

that would deter a reasonable employee from engaging in similar protected activities in the

future. A suspension without pay has substantial financial and reputational impacts, meeting the

definition of an adverse action under FMLA, ADA, and whistleblower laws.

## III.    CAUSAL CONNECTION

176    The causal connection between Dillon-Capps's protected activities and Ohana's adverse

actions is established through the timing and context of the suspension. Within hours of Dillon-

Capps's whistleblower disclosures and reassertion of their FMLA and ADA rights, Ohana

suspended them without pay. This close temporal proximity, along with admissions by Ohana's

counsel that Dillon-Capps's FMLA rights had been violated, demonstrates a clear retaliatory

motive, satisfying the causation element required for a retaliation claim.

Page **54** of **329**

## 5    Conclusion

177    Dillon-Capps's suspension by Ohana on June 13, 2024, following their exercise of FMLA, ADA, and whistleblower rights, meets all elements for a prima facie case of retaliation. Ohana's suspension without pay immediately after these protected activities demonstrates retaliatory intent, which violates federal protections under the FMLA, ADA, SOX, and Maryland's whistleblower laws. The combination of Dillon-Capps's protected activities, Ohana's knowledge, and the immediate adverse response further supports the conclusion that Ohana's actions were retaliatory, meriting judicial intervention and remedies for Dillon-Capps's statutory rights under federal and state laws.

## E    Perjury

### 1    Legal Standard and Prima Facie Elements of Perjury in Maryland

178    Under Maryland law, perjury is defined as the act of knowingly making a false statement under oath with the intent to mislead or deceive, particularly when the statement is material to the proceeding. Codified in **Md. Code Ann., Crim. Law § 9-101**, perjury encompasses not only directly false statements but also statements intended to create a misleading impression, even if technically accurate. Maryland's legal standard focuses on the intent behind the statement: to distort the court's understanding of the facts, undermine judicial integrity, and obstruct justice.

179    The primary elements for establishing perjury in Maryland include:

180    **Misleading or False Statement**: The defendant must have made a statement under oath that is either directly false or intentionally crafted to mislead the court by omitting critical context.

181    **Materiality**: The misleading or false statement must be material, meaning it has the potential to affect the outcome of the case or influence the court's understanding of the facts.

182    **Intent to Mislead**: The statement must be made with the intent to deceive or mislead the court or relevant parties involved, affecting the administration of justice.

183    Maryland's focus on intent and materiality underscores the state's commitment to maintaining the integrity of judicial proceedings and preventing efforts to misrepresent the facts through perjury.

## 2    Prima Facie Elements of Perjury

184    For a charge of perjury to be substantiated under Maryland law, the following prima facie elements must be demonstrated:

185    **Statement Made Under Oath**: The defendant must have made a statement while under oath, affirming to provide truthful information in court proceedings, depositions, or affidavits.

186    **Knowledge of the Statement's Misleading Nature**: The defendant must have known that the statement was misleading or false, including instances where a "technically truthful" statement was given with the intent to mislead by omission or selective presentation of facts.

187    **Materiality of the Misleading or False Statement**: The misleading or false statement must be material to the proceedings, meaning that it could reasonably influence the court's decision-making or perception of the case.

188    **Intent to Mislead or Deceive**: Maryland law requires that the misleading or false statement was made with the intent to deceive or mislead the court, specifically crafted to distort the court's understanding of facts in a way that could influence the outcome.

189    These elements emphasize that perjury includes not only outright lies but also carefully

framed statements designed to mislead. Maryland courts require clear evidence that the

defendant deliberately intended to mislead through material misrepresentation or omission.

### 3    Supporting Case Law

190    **State v. Anderson**, 5 Md. App. 482, 248 A.2d 807 (1969): The Maryland Court of

Special Appeals held that perjury requires clear evidence of intentional falsehood or misleading

information provided under oath. This case underscored the importance of intent and materiality,

recognizing that statements deliberately crafted to mislead can constitute perjury.

191    **Smith v. State**, 7 Md. App. 384, 256 A.2d 357 (1969): This case highlighted the

materiality requirement for perjury, holding that misleading statements must have the potential to

affect judicial findings. Materiality in Maryland is determined by a statement's potential

influence on case outcomes, whether the falsehood is direct or conveyed through selective truth.

192    **Shifflett v. State**, 245 Md. 169, 225 A.2d 440 (1967): The Maryland Court of Appeals

confirmed that perjury applies to statements intended to mislead the court's understanding of

material facts, even if technically true. The court emphasized that perjury is established when the

intent is to distort or manipulate the court's perception of the facts.

### 4    Application of Perjury in Dillon-Capps' Case

193    In Dillon-Capps's case, Plaintiff and Plaintiff's counsel, Miles & Stockbridge (M&S),

submitted multiple statements under oath that meet Maryland's elements for perjury, specifically

by making "technically truthful" statements crafted to mislead the court. These statements

misrepresented critical facts, directly impacting the court's decisions and prolonging harm to

Dillon-Capps. Specific instances include:

194     **Technically True Statements Intended to Mislead the Court**: M&S made statements

under oath that omitted critical context or selectively presented facts to portray a false narrative.

For instance, affidavits submitted by M&S regarding Dillon-Capps's FMLA rights contained

language that, while technically accurate in some respects, omitted context critical to the court's

understanding, and others are entirely false. Under *Shifflett v. State*, Maryland law recognizes

perjury where statements are framed to mislead rather than inform. These omissions and

selective truths created a misleading impression that directly affected the court's rulings,

satisfying the requirement of knowing falsity.

195     **Materiality of the Misleading Statements**: M&S's statements concerning Dillon-

Capps's work status and FMLA entitlements were central to the court's findings on injunctive

relief and contempt orders. According to *Smith v. State*, statements qualify as perjury if they

could reasonably impact the court's decision-making. The misleading statements in this case

materially affected rulings that have caused ongoing harm to Dillon-Capps, establishing their

significance.

196     **Intent to Mislead and Misrepresent the Facts**: The nature of M&S's statements and

their pattern of omissions, selective truth, and procedural manipulation indicate a clear intent to

deceive. The affidavits presented by M&S were structured to lead the court to specific,

unfavorable conclusions about Dillon-Capps without disclosing essential context, a practice

Maryland courts have recognized as perjury. As affirmed in *State v. Anderson*, M&S's deliberate

omissions and selective presentations demonstrate intent to distort the court's understanding of

Dillon-Capps's legitimate claims and defenses.

197    **Cumulative Harm and Distortion of Judicial Findings**: The perjured statements made by M&S have led to significant harm for Dillon-Capps, with procedural decisions influenced by these misleading statements compounding the injury. Under Maryland law, as evidenced in *Shifflett v. State*, perjury that materially impacts the proceedings and results in harm warrants corrective action. The cumulative effect of M&S's statements has distorted the court's findings, causing undue financial, reputational, physical, and emotional damage to Dillon-Capps and further validating the need for judicial correction.

198    M&S's statements meet Maryland's prima facie elements for perjury due to their misleading nature, material impact, and evident intent to deceive. These statements influenced critical rulings in the case, extending and worsening harm to Dillon-Capps, and warranting judicial intervention.

## 5    Conclusion

199    Maryland law defines perjury as not only making false statements under oath but also providing statements that intentionally mislead the court, particularly where material facts are affected. In Dillon-Capps's case, M&S's actions in submitting misleading, selectively truthful statements under oath constitute perjury. The materiality of these statements and their impact on Dillon-Capps's rights demonstrate the severity of M&S's conduct and the need for judicial correction. Addressing these perjured statements is essential to uphold judicial integrity, correct previous rulings, and prevent further harm to Dillon-Capps, aligning with Maryland's statutory and case law standards.

## F    Wrongful Termination

1    <u>Legal Standard and Prima Facie Elements of Wrongful Termination</u>

200    **Legal Standard**: Under both the **Family and Medical Leave Act (FMLA)** and the

**Americans with Disabilities Act (ADA)**, it is unlawful to terminate an employee in retaliation

for exercising protected rights. The FMLA protects employees who take medical leave from

adverse employment actions, while the ADA prohibits discrimination against employees with

disabilities, including unjust termination. Maryland employment law also offers protections that

reinforce the standards set forth by these federal statutes.

2    <u>Prima Facie Elements for Wrongful Termination under FMLA and ADA:</u>

201    **Protected Activity**: The employee must demonstrate engagement in a legally protected

activity, such as taking medical leave under FMLA or requesting reasonable accommodations

under ADA.

202    **Adverse Employment Action**: The employer terminated or took a materially adverse

action against the employee.

203    **Causal Connection**: A clear, proximate link between the protected activity and the

adverse action, suggesting that the protected activity was a motivating factor in the termination.

3    <u>Prima Facie Elements of Wrongful Termination</u>

204    To establish wrongful termination, Dillon-Capps must meet the following prima facie

elements under FMLA and ADA protections:

1.    **Engagement in Protected Activity**: Dillon-Capps requested and was granted

intermittent FMLA leave due to documented medical conditions and exercised ADA

rights by requesting workplace accommodations.

2.    **Termination or Adverse Action by Employer**: Dillon-Capps faced adverse actions, including suspension, retaliatory litigation, and eventual termination, following their exercise of FMLA and ADA rights.

3.    **Causal Link Between Protected Activity and Adverse Action**: There must be a connection between Dillon-Capps's exercise of FMLA leave and ADA accommodations and the termination or related adverse actions by Ohana. Dillon-Capps was terminated during ongoing litigation and suspension for FMLA-related leave, which suggests retaliatory motivation.

## 4    Supporting Case Law

205    **Burlington Northern & Santa Fe Railway Co. v. White**, 548 U.S. 53 (2006): The U.S. Supreme Court held that retaliation includes any adverse employment action that would dissuade a reasonable employee from engaging in protected activity. Termination following the exercise of protected rights, such as FMLA leave, can meet this standard.

206    **Hoge v. Honda of America Mfg., Inc.**, 384 F.3d 238 (6th Cir. 2004): The court found that interference with FMLA rights, especially when retaliatory termination follows medical leave, justifies a wrongful termination claim.

207    **Ennis v. National Ass'n of Business and Educational Radio, Inc.**, 53 F.3d 55 (4th Cir. 1995): The Fourth Circuit affirmed that the ADA protects against termination based on an employee's disability, recognizing wrongful termination when an employer terminates an employee in retaliation for seeking reasonable accommodations.

208    **Shapiro v. Massengill**, 105 Md. App. 743, 661 A.2d 202 (1995): The Maryland Court of Special Appeals supported an employee's claim that retaliation for engaging in protected activity

violated state employment law, establishing grounds for wrongful termination under Maryland common law principles.

5    Application of Wrongful Termination in Dillon-Capps's Case

209    In Dillon-Capps's case, Ohana's conduct meets the criteria for wrongful termination under FMLA and ADA based on the following actions:

1.    **Engagement in Protected Activity**: Dillon-Capps was granted FMLA leave for medical conditions and exercised ADA rights by requesting work-from-home accommodations. Both of these actions constitute protected activities under federal law.

2.    **Adverse Actions by Employer**: After notifying supervisors of FMLA leave and seeking accommodations, Dillon-Capps experienced escalating adverse actions, including suspension, retaliatory litigation, and eventual termination. The timing of these actions, especially the suspension and termination, directly followed Dillon-Capps's exercise of protected rights, indicating retaliatory intent.

3.    **Causal Link Between Protected Activity and Adverse Action**: The termination occurred during ongoing litigation in which Dillon-Capps sought to enforce their FMLA and ADA rights. Ohana's decision to terminate Dillon-Capps in the context of disputed FMLA leave and ADA accommodations demonstrates retaliatory motivation, as discussed in *Hoge v. Honda of America Mfg., Inc.* and *Burlington Northern*.

4.    **Retaliation Through Litigation**: Ohana's lawsuit appears to serve as a pretext for retaliatory suspension and termination, further supporting a wrongful termination claim. Filing a lawsuit without substantial grounds shortly after Dillon-Capps exercised

their rights highlights an attempt to suppress protected activity through retaliatory litigation.

## 6    Conclusion

210    Dillon-Capps's claim for wrongful termination is supported by both FMLA and ADA standards, as well as Maryland's employment laws. Ohana's suspension, litigation, and ultimate termination of Dillon-Capps after their exercise of protected rights reflect an adverse employment action motivated by retaliation. Maryland and federal case law establish grounds for wrongful termination, justifying a finding in favor of Dillon-Capps's claim. Sanctions against Ohana are warranted for violating statutory protections against wrongful termination, as well as for engaging in retaliatory actions intended to prevent Dillon-Capps from exercising federally protected rights.

## G    Hostile Work Environment (HWE)

### 1    Legal Standard and Prima Facie Elements of Hostile Work Environment

211    **Legal Standard**: The **Americans with Disabilities Act (ADA)** prohibits a hostile work environment based on disability discrimination, and Maryland employment laws similarly prohibit discriminatory and retaliatory workplace conditions. A hostile work environment claim arises when an employee is subject to severe or pervasive conduct that interferes with their ability to work or creates an abusive atmosphere. Furthermore, retaliatory litigation can also contribute to a hostile work environment if intended to harass or suppress an employee's rights.

2    Prima Facie Elements for Hostile Work Environment under ADA and Maryland Law:

212    **Membership in a Protected Class**: The employee must belong to a protected class, such as an individual with a disability under ADA.

213    **Unwelcome Harassment**: The employee must experience unwelcome harassment or adverse actions that affect workplace conditions.

214    **Severe or Pervasive Conduct**: The harassment must be severe or pervasive enough to create an intimidating, hostile, or abusive work environment.

215    **Causal Connection**: A link between the protected characteristic (e.g., disability) or protected activities (e.g., ADA requests, FMLA leave) and the adverse or hostile conduct.

3    Prima Facie Elements of Hostile Work Environment

216    For Dillon-Capps's hostile work environment claim, the following elements must be established:

217    **Protected Class Membership**: Dillon-Capps is an individual with a disability, qualifying for protection under ADA.

218    **Unwelcome Harassment**: Dillon-Capps faced unwelcome actions, including discriminatory comments, dismissive treatment, and adverse employment actions.

219    **Severe or Pervasive Conduct**: The adverse actions, including the initiation of retaliatory litigation and efforts to undermine Dillon-Capps's FMLA and ADA rights, were pervasive and had a significant impact on Dillon-Capps's ability to perform their role.

220    **Causal Connection to Protected Activity**: Ohana's hostile actions followed Dillon-Capps's request for ADA accommodations and FMLA leave, suggesting that these actions were retaliatory in nature.

4   Supporting Case Law

221   **Harris v. Forklift Systems, Inc.**, 510 U.S. 17 (1993): The U.S. Supreme Court held that a hostile work environment claim requires conduct severe or pervasive enough to alter the conditions of employment. Conduct that intimidates or undermines an employee's rights under federal statutes, such as ADA, can meet this standard.

222   **Faragher v. City of Boca Raton**, 524 U.S. 775 (1998): The Court found that hostile work environment claims may arise from actions that are frequent, severe, or create an abusive workplace atmosphere, establishing grounds for a hostile work environment based on harassment and intimidation.

223   **Fox v. General Motors Corp.**, 247 F.3d 169 (4th Cir. 2001): The Fourth Circuit held that ADA-related harassment that impedes an employee's ability to perform job duties constitutes a hostile work environment.

224   **Mossburg v. Montgomery County**, 105 Md. App. 1, 658 A.2d 1093 (1995): The Maryland Court of Special Appeals ruled that a hostile work environment claim can be based on pervasive conduct that interferes with an employee's job performance or mental well-being, reinforcing the hostile work environment doctrine within Maryland law.

5   Application of Hostile Work Environment in Dillon-Capps's Case

225   In Dillon-Capps's case, Ohana's conduct meets the criteria for a hostile work environment claim under ADA and Maryland law based on the following actions:

1.   **Protected Class Membership**: Dillon-Capps's status as an individual with a disability and their exercise of ADA and FMLA rights qualify them for statutory protection against discriminatory and retaliatory treatment.

2.    **Unwelcome Harassment**: Dillon-Capps faced persistent hostility, including suspension, coerced employment conditions, and retaliatory litigation intended to undermine their ADA and FMLA rights. Additionally, litigation itself became a means of harassment, with Ohana pursuing baseless claims and adversarial actions to intimidate Dillon-Capps.

3.    **Severe or Pervasive Conduct**: The hostile environment was amplified by Ohana's use of litigation to further harm Dillon-Capps, creating a stressful and hostile atmosphere that affected Dillon-Capps's mental well-being and ability to defend their rights. This conduct aligns with *Harris v. Forklift Systems* and *Faragher v. City of Boca Raton*, where pervasive hostility impacted the terms and conditions of employment.

4.    **Causal Connection**: The adverse actions, particularly the initiation of retaliatory litigation after Dillon-Capps requested ADA accommodations and FMLA leave, indicate a clear connection between the protected activities and Ohana's hostile conduct. Ohana's actions appear intended to suppress Dillon-Capps's rights through retaliatory legal proceedings, creating an abusive atmosphere similar to *Fox v. General Motors Corp.*.

5.    **Litigation as Hostile Work Environment**: Ohana's use of the legal system to attack Dillon-Capps's rights further substantiates the hostile work environment claim. The lawsuit exacerbated Dillon-Capps's hostile work environment, demonstrating an intent to retaliate and harass rather than resolve legitimate disputes.

## 6    Conclusion

226    Ohana's conduct, including retaliatory litigation, baseless disciplinary actions, and a hostile workplace atmosphere, meets the legal standard for a hostile work environment claim

under ADA and Maryland law. Maryland and federal case law support finding a hostile work environment when an employer engages in discriminatory, retaliatory, or coercive actions that interfere with an employee's ability to perform their job. The court should impose sanctions against Ohana for creating and perpetuating a hostile work environment, as demonstrated in *Harris v. Forklift Systems, Faragher v. City of Boca Raton*, and related cases, to protect Dillon-Capps's rights and reinforce workplace protections against retaliatory discrimination

### H   Witness Tampering

1    Legal Standard and Prima Facie Elements of Witness Tampering

227   **Legal Standard**: **Witness tampering** is prohibited under both Maryland's criminal statutes and common law. Maryland Criminal Law **§ 9-305** makes it illegal to intimidate, influence, or mislead a witness with the intent to alter their testimony or disrupt judicial proceedings. This standard encompasses both direct intimidation and more subtle actions, such as providing misleading information, "coaching" witnesses, or altering affidavits to manipulate the court's perception of facts. In cases where attorneys or parties facilitate or engage in such conduct, the court may impose sanctions to uphold the integrity of the judicial process.

2    Prima Facie Elements for Witness Tampering:

1. **Intent to Influence Testimon**y: The party sought to influence, alter, or manipulate the witness's statements in a manner that would impact court proceedings.

2. **Interference with Judicial Process**: Actions that disrupt the course of justice or impede the discovery of truth by affecting witness statements.

3. **Deceptive or Coercive Tactics**: Conduct that includes misleading statements, omission of material facts, or procedural interference with a witness's testimony.

4.    **Material Impact on Proceedings**: The tampering had the potential to influence the outcome or obstruct the proper administration of justice.

## 3    Prima Facie Elements of Witness Tampering

228    In Dillon-Capps's case, witness tampering is evident through affidavits that contain contradictory or misleading statements, reflecting a potential attempt to control or distort witness testimony:

1.    **Intent to Influence Testimony**: The affidavits by Randall Romes and Daniel Levett contain language and content indicating that their statements may have been influenced or structured by counsel, resulting in affidavits that appear designed to align with Ohana's claims rather than objectively present the facts.

2.    **Interference with Judicial Process**: M&S's direct communication with the court to attach Romes' signature page ex parte raises questions about whether these actions were intended to avoid scrutiny or limit cross-examination opportunities.

3.    **Deceptive or Coercive Tactics**: Romes' affidavit contains contradictions to other evidence provided by Dillon-Capps, particularly concerning Romes' statements about Dillon-Capps's communication of specific requirements—despite contrary evidence in the letter and attachments provided to the judge.

4.    **Material Impact on Proceedings**: The affidavits, if believed, support Ohana's claims against Dillon-Capps and could materially influence the court's decisions. Additionally, Judge Barranco's prevention of cross-examination of Romes obstructed Dillon-Capps's ability to challenge these statements and to address inconsistencies directly.

4    Supporting Case Law

229    **People v. Martinez**, 200 P.3d 1053 (Cal. 2009): The California Supreme Court held that altering witness testimony or otherwise influencing witness statements is grounds for sanctions and criminal penalties. Coaching witnesses or shaping testimony to fit a narrative, rather than to present truthful statements, constitutes witness tampering.

230    **State v. Johnson**, 282 Md. 314, 384 A.2d 709 (1978): The Maryland Court of Appeals confirmed that manipulating testimony to mislead the court undermines the integrity of judicial proceedings and warrants sanctions or criminal liability.

231    **Attorney Grievance Commission v. Kent**, 447 Md. 555, 136 A.3d 1126 (2016): The court emphasized that attorneys are subject to sanctions for witness tampering or any conduct aimed at influencing or controlling witness statements to favor their client's narrative.

232    **United States v. Aguilar**, 515 U.S. 593 (1995): The U.S. Supreme Court reinforced that witness tampering includes attempts to mislead witnesses and present fabricated or altered statements to the court, mandating sanctions to maintain judicial integrity.

5    Application of Witness Tampering in Dillon-Capps's Case

233    In Dillon-Capps's case, the following actions by Ohana, M&S, and witnesses reflect an effort to tamper with witness statements, alter court perception, and obstruct the administration of justice:

234    **Intent to Influence Testimony - Randall Romes**: Randall Romes' affidavit contains copy-pasted language from Richard Hartman's affidavit, suggesting collusion or "coaching." His statement that he was provided with Dillon-Capps's letter to the judge is contradicted by his assertion that Dillon-Capps made no statements about specific requirements, despite evidence to

the contrary. The structured language and omissions in his affidavit suggest intentional shaping to avoid unfavorable admissions.

235     **Interference with Judicial Process - Submission of Signature Page**: After Romes' affidavit was submitted, M&S contacted the judge directly to have the signature page attached, bypassing standard filing procedures. This communication appears to have been used to prevent Dillon-Capps from challenging the affidavit in a timely manner, further compromising procedural fairness.

236     **Deceptive or Coercive Tactics - Daniel Levett's Affidavit**: Levett's affidavit claims involvement in critical events, but the described timeline and actions raise questions about his actual role and whether he was "coached" to support Ohana's narrative. Shifts in language and tone within his affidavit indicate possible editing or guidance by counsel to ensure statements aligned with Ohana's defense, leading to a reasonable inference of tampering.

237     **Material Impact on Proceedings**: The content of Romes and Levett's affidavits could significantly affect judicial perception, particularly in misrepresenting Dillon-Capps's statements and actions. Dillon-Capps's inability to cross-examine Romes—prevented by Judge Barranco-- further exacerbates the prejudicial impact, as Romes' testimony went unchallenged on points central to the defense.

6    <u>Conclusion</u>

238     Ohana and M&S's actions in relation to witness testimony demonstrate clear evidence of witness tampering under **Maryland Criminal Law § 9-305** and applicable case law. The affidavits from Romes and Levett appear strategically crafted to fit Ohana's narrative, with inconsistencies and omissions that hinder the court's ability to ascertain truth. Communications

to attach Romes' affidavit signature and the obstruction of cross-examination indicate deliberate

attempts to control the record, violate procedural fairness, and prejudice Dillon-Capps's defense.

Maryland case law and broader legal precedents support imposing sanctions against Ohana and

M&S to uphold judicial integrity, deter tampering, and reinforce the importance of unbiased

witness testimony.

## I  Disqualification of Counsel

### 1    Legal Standard and Purpose of Disqualification

239     Disqualification of counsel is a fundamental tool in Maryland law designed to protect the

integrity of the judicial system, uphold the public's trust in legal proceedings, and ensure that

parties are represented fairly. Under **Maryland Rules of Professional Conduct Rule 1.7,**

disqualification is warranted where conflicts of interest exist, particularly if those conflicts

impact a lawyer's judgment or impartiality or compromise the fairness of the litigation.

Disqualification serves equitable goals by preventing counsel with potential biases or improper

motivations from continuing representation, thereby protecting the court, opposing parties, and

the public from further harm.

240     In cases like this, disqualification does more than ensure fairness—it serves as a

safeguard against continued misuse of the judicial process. By disqualifying counsel, the court

not only protects Dillon-Capps from further harm but also prevents Plaintiff's counsel from

perpetuating a litigation strategy that has already revealed itself as abusive, malicious, and

intended to inflict harm. Here, **disqualification protects**, aligning with principles of judicial

economy, Maryland's public policy goals, and equitable doctrines by setting a precedent that

such behavior has no place in Maryland's courts.

2    Prima Facie Elements for Disqualification

1.    **Conflict of Interest**: The representation must involve a conflict that affects the lawyer's independent judgment, creating bias or partiality.

2.    **Unethical or Bad-Faith Conduct**: Counsel's conduct must show a pattern of behavior that harms the integrity of the proceedings, either through perjury, misrepresentation, or abusive litigation tactics.

3.    **Impact on Fairness and Judicial Integrity**: The continued representation must compromise the fairness of the case or the public's confidence in the judicial system.

3    Supporting Case Law

241    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): In this case, Maryland's Court of Special Appeals emphasized that disqualification is warranted when a lawyer's representation is compromised by conflicts or ethical breaches that could jeopardize the fairness of the trial. The court underscored the importance of ensuring that parties receive unbiased representation to maintain the integrity of the judicial process.

242    **Ashcraft & Gerel v. Shaw**, 126 Md. App. 325, 728 A.2d 798 (1999): Maryland's Court of Special Appeals disqualified counsel where representation raised ethical concerns that compromised judicial fairness. The court's ruling stressed that protecting judicial integrity outweighs any inconvenience to the client or counsel, underscoring disqualification's role in upholding the court's credibility.

4    Application to Dillon-Capps's Case

243    The disqualification of **Miles & Stockbridge, PC**, Plaintiff's counsel, is essential in this case. Disqualification serves multiple purposes: it **protects** the defendant and public by

preventing further harm, **prevents** Plaintiff from continuing to pursue a meritless, perjury-driven lawsuit, and **preserves** the integrity of the judiciary by removing counsel whose motivations are steeped in apparent malice and unethical intentions. Miles & Stockbridge's involvement has revealed clear conflicts of interest and a personal vendetta, as shown by their persistent, aggressive tactics aimed at incarcerating Dillon-Capps and pursuing unwarranted contempt actions—conduct that exceeds the bounds of typical representation.

244    Given that this litigation has persisted for over five months, with Miles & Stockbridge pursuing severe penalties and incarceration as outcomes for what are demonstrably baseless claims, disqualification is necessary. A law firm acting without bias or personal interests would likely not pursue such aggressive measures against Dillon-Capps, nor would they continue representation with the ethical breaches and sanctionable conduct displayed thus far.

245    Disqualification of Plaintiff's counsel is both a protective measure and a preventative one. It protects the court, defendant, and public from ongoing abuse, prevents the Plaintiff from continuing a fraudulent, malicious, and unethical lawsuit, and sends a message that the pursuit of litigation as a tool for harm will not be tolerated. Maryland's courts must deter bad-faith litigation by disqualifying counsel whose representation jeopardizes the judicial system's integrity, setting a precedent of **reciprocal relief** in which unethical actions yield proportional consequences. Disqualification here not only prevents further harm to Dillon-Capps but establishes Maryland as a jurisdiction committed to fairness, ethics, and the rule of law.

## J    42 U.S.C. § 1983: Civil Action for Deprivation of Rights

1    Legal Standard and Prima Facie Elements

246    Under **42 U.S.C. § 1983**, individuals may bring a civil action against state officials, including judges, for violating federally protected rights under the color of law. Although judges are typically granted **judicial immunity**, this immunity is limited and does not protect against actions taken **outside the judge's jurisdiction** or actions performed with **clear absence of all jurisdiction** or **malice**. Additionally, courts have ruled that judicial immunity does not apply when the conduct in question violates constitutional due process protections or is willfully abusive.

247    To establish a § 1983 claim against a judicial officer, the plaintiff must show:

248    **Deprivation of a Federal Right**: The plaintiff must prove that the judge's actions violated a federally protected right, such as due process or equal protection.

249    **Acting Under Color of State Law**: The judge's actions must be conducted within the scope of official duties, though exceptions apply when the judge acts beyond jurisdiction.

250    **Absence of Judicial Immunity**: Judicial immunity is forfeited if the judge's actions demonstrate malice, exceed jurisdictional authority, or involve a deprivation of constitutional rights that fundamentally undermines the judicial process.

2    Supporting Case Law

251    **Stump v. Sparkman**, 435 U.S. 349 (1978): The U.S. Supreme Court ruled that judicial immunity applies only if the judge's actions were within their lawful jurisdiction. The case emphasized that judges are liable under § 1983 if their actions are entirely outside their jurisdiction or conducted in bad faith.

252   **Pierson v. Ray**, 386 U.S. 547 (1967): This decision established that judicial immunity does not shield judges when their actions violate clear constitutional protections or when they act with malicious intent to harm the individual's rights.

253   **Forrester v. White**, 484 U.S. 219 (1988): The Court held that judicial immunity is qualified and can be removed if judges engage in administrative or executive acts that fall outside judicial discretion or that are abusive in nature, especially if such actions violate constitutional protections.

254   **Pulliam v. Allen**, 466 U.S. 522 (1984): The Supreme Court allowed for injunctive relief and attorney's fees against judges under § 1983 when their actions violate constitutional rights, demonstrating that judicial immunity is not absolute in cases involving clear deprivations of due process.

3   Application to Judge Barranco's Actions in Dillon-Capps's Case

255   In Dillon-Capps's case, Judge Barranco's actions included multiple instances of bias, denial of due process rights, and refusals to hear crucial evidence, all of which fundamentally compromised Dillon-Capps's constitutional rights:

256   **Deprivation of Due Process**: Judge Barranco repeatedly dismissed Dillon-Capps's attempts to present evidence related to FMLA and ADA violations. Additionally, the judge's comments referring to Dillon-Capps's filings as "unintelligible" or "incoherent" indicate a prejudiced view that limited Dillon-Capps's ability to present an effective defense. This violates the due process protections under the **Fourteenth Amendment** and constitutes a deprivation of federal rights.

257    **Exceeding Judicial Discretion and Acting with Bias**: Judge Barranco's refusal to allow cross-examination of witnesses, especially regarding material facts related to alleged fraud and procedural violations, went beyond the bounds of judicial discretion and prevented Dillon-Capps from exercising the right to a fair trial. As established in *Stump v. Sparkman* and *Forrester v. White*, judicial immunity does not apply when a judge's actions exceed judicial discretion or demonstrate clear bias, as these actions do not serve the judiciary's neutral role.

258    **Malicious Conduct and Refusal to Correct Errors**: Judge Barranco's conduct, including repeated denials of motions and baseless rulings of "moot" without addressing substantive claims, demonstrates a pattern of intentional disregard for Dillon-Capps's rights. This conduct aligns with the malice exception under *Pierson v. Ray*, where malicious intent in judicial actions that disregard fundamental rights exposes the judge to § 1983 liability.

259    **Pattern of Procedural Violations and Constitutional Deprivations**: The cumulative nature of Judge Barranco's actions, including the no-notice TRO, two-day show cause orders, and continued denial of ADA accommodations, shows a persistent violation of procedural norms. In *Pulliam v. Allen*, the Court ruled that judicial immunity does not protect judges from § 1983 liability when their actions demonstrate a systematic disregard for procedural protections, as is evident in Judge Barranco's handling of Dillon-Capps's case.

260    Through these actions, Judge Barranco effectively deprived Dillon-Capps of a fair hearing and access to due process protections. The judge's dismissive rulings and hostile comments reflect not only bias but also a breach of judicial duty, effectively stripping him of immunity under § 1983.

4    Conclusion

261    Under **42 U.S.C. § 1983** and as supported by **Stump v. Sparkman**, **Pierson v. Ray**, and

**Pulliam v. Allen,** Judge Barranco's actions in Dillon-Capps's case demonstrate a clear

deprivation of due process and biased judicial conduct. His refusal to acknowledge Dillon-

Capps's FMLA, ADA, and due process claims, coupled with hostile comments and procedural

dismissals, shows a pattern of actions that exceed the scope of judicial discretion and are marked

by apparent malice. The court should permit § 1983 claims against Judge Barranco, hold the

Maryland judiciary accountable, and order remedies that address these constitutional

deprivations to protect judicial integrity and ensure fair proceedings.

## VII    EXPANDING MARYLAND STATUTES THROUGH THE INTENT, PURPOSE, FOCUS, AND MEANING OF COMMON LAW

### A    Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503

262    Maryland's statutory framework, particularly **Md. Code Ann., Cts. & Jud. Proc. §§ 10-**

**501 and 10-503,** provides the legal foundation for Maryland courts to incorporate principles

rooted in English common law, including key tort doctrines and equitable defenses. These

statutes authorize Maryland's courts to reference doctrines summarized in the Restatements of

Torts and Contracts—sources widely recognized for shaping common law doctrine in the United

States. Together, §§ 10-501 and 10-503 equip Maryland courts with the authority and discretion

necessary to interpret and apply these doctrines in a way that upholds judicial integrity and

fairness in contemporary cases.

### 1    Section 10-501: Incorporation of English Common Law Principles

263    **Section 10-501** codifies Maryland's reliance on English common law principles, stating

that Maryland law "incorporates principles derived from the common law of England" unless

Page **77** of **329**

expressly altered by statute or judicial decision. This statute grants Maryland courts the legal

basis to draw from established doctrines like unclean hands, estoppel, fraud, and abuse of

process—doctrines that ensure fairness and accountability in judicial proceedings. Section 10-

501 empowers Maryland courts to utilize these traditional doctrines in cases where equitable

relief or tort liability is sought, making it possible for Maryland courts to apply the same high

standards of integrity and fairness as those upheld in the English common law tradition.

2    <u>Section 10-503: Judicial Discretion in Applying Common Law Principles</u>

264    **Section 10-503** provides Maryland courts with discretionary authority to adapt and apply

common law doctrines to the specific circumstances of each case. This statute enables

Maryland's judiciary to assess the relevance and suitability of doctrines such as unclean hands,

equitable estoppel, promissory estoppel, fraud, and abuse of process in light of modern standards

of fairness. By granting courts the flexibility to interpret these doctrines to align with

contemporary justice, § 10-503 ensures that Maryland's common law defenses and tort

principles are applied in ways that uphold both ethical standards and judicial integrity.

265    Together, §§ 10-501 and 10-503 create a statutory foundation that supports the use of

established common law doctrines as effective tools for maintaining fairness, accountability, and

consistency in Maryland's judicial system. This statutory foundation underpins Maryland courts'

ability to apply doctrines derived from the Restatements of Torts and Contracts in cases

involving tortious and equitable claims, allowing the judiciary to enforce high standards of

conduct, prevent misuse of judicial resources, and ensure just outcomes.

## B    <u>Incorporation of Tort Doctrines</u>

266    Maryland's common law framework allows the application of key tort doctrines to uphold standards of honesty, fairness, and lawful conduct in cases involving fraud, abuse of process, negligence, and other tortious conduct. Supported by **Md. Code Ann., Cts. & Jud. Proc. § 10-503**, Maryland courts apply these doctrines, often referenced in the Restatements of Torts, to protect parties from harm resulting from deceit, misuse of legal processes, and breaches of reasonable care. These doctrines are instrumental in holding parties accountable for wrongful conduct, ensuring that Maryland's legal standards reflect principles of justice and good faith.

1    Foundations of Maryland's Tort Doctrines

267    Maryland courts rely on the Restatements to define and apply tort doctrines that address fraudulent, abusive, and negligent behavior, ensuring the accountability of parties who cause harm:

1.    **Dolus (Fraud)**: **Restatement (Second) of Torts, § 525** defines fraud as an intentional misrepresentation intended to deceive another party, resulting in harm. Maryland courts use this standard to evaluate claims of fraudulent conduct, holding parties liable when intentional deception causes financial or personal harm to others. This doctrine emphasizes Maryland's commitment to honesty and transparency in contractual and transactional dealings.

2.    **Fraudulent Misrepresentation**: Defined in **Restatement (Third) of Torts, § 9**, fraudulent misrepresentation involves knowingly false statements that induce another party's reliance, causing harm. Maryland courts apply this doctrine to prevent parties from benefitting from deliberately misleading conduct, affirming that truthfulness is essential in both contract and tort claims.

3.    **Abuse of Process**: **Restatement (Second) of Torts, § 682** establishes abuse of

process as a tort remedy for misuse of legal proceedings to achieve ends other than those

intended by law. Maryland courts recognize this doctrine to prevent parties from

weaponizing judicial processes for coercive or retaliatory purposes, ensuring that legal

procedures are used solely for legitimate purposes.

4.    **Malicious Prosecution**: **Restatement (Second) of Torts, § 674** defines malicious

prosecution as the initiation of baseless legal actions with improper motives. Maryland

courts apply this doctrine to hold parties liable when they pursue groundless claims for

ulterior purposes, protecting individuals from the harm and harassment associated with

baseless litigation.

5.    **Duty of Care (Negligence)**: Under **Restatement (Second) of Torts, § 282**,

Maryland courts recognize a duty of care, requiring individuals to act reasonably to avoid

foreseeable harm. Maryland courts enforce this standard to hold parties liable when they

fail to exercise reasonable care, resulting in injury or damage. This doctrine underscores

Maryland's emphasis on accountability for actions that result in harm to others.

2    Judicial Standards for Applying Tort Doctrines in Maryland

268    Maryland courts enforce these tort doctrines according to specific standards that ensure

fair and ethical behavior in legal and contractual matters:

1.    **Fraud and Fraudulent Misrepresentation**: Maryland courts evaluate fraud by

determining whether a party intentionally misrepresented facts to deceive another, and

whether this deception led to financial or personal harm. Fraudulent misrepresentation

requires a showing that the defendant knowingly made false statements, causing the

plaintiff to rely on these statements to their detriment. This standard holds parties to a high duty of truthfulness.

2. **Abuse of Process and Malicious Prosecution**: Abuse of process is assessed by examining whether legal procedures were used for improper purposes, while malicious prosecution requires proof of baseless legal action with malicious intent. Maryland courts apply these standards to protect individuals from harm and harassment caused by the misuse of judicial procedures, upholding the court's integrity.

3. **Duty of Care (Negligence)**: Maryland courts impose a duty of care based on what a reasonable person would do to prevent harm. This standard requires parties to exercise caution and foreseeability in their actions. Breaches of this duty are assessed by evaluating whether the harm was preventable and whether reasonable measures could have mitigated the risk.

## 3 Maryland Case Law on Tort Doctrines

269    Maryland appellate courts provide consistent guidance on applying these tort doctrines, establishing a framework for lower courts to address cases involving fraud, abuse, and negligence effectively:

1. **Fraud and Fraudulent Misrepresentation**: In *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005), the Maryland Court of Appeals affirmed that fraud requires intentional misrepresentation made with the intent to deceive. Maryland courts enforce this doctrine strictly, holding parties liable for actions that result in financial harm due to deceitful conduct.

Page **81** of **329**

2.   **Abuse of Process to Address Judicial Misuse**: In *One Thousand Fleet Ltd.*
*P'ship v. Guerriero*, 346 Md. 29, 694 A.2d 952 (1997), the Maryland Court of Appeals
outlined that abuse of process occurs when legal procedures are used to coerce or harass
another party. This case highlights Maryland's commitment to preventing misuse of
judicial authority for purposes beyond lawful intent.

3.   **Malicious Prosecution for Groundless Actions**: *Herring v. Citizens Bank & Tr.*
*Co.*, 21 Md. App. 517, 320 A.2d 575 (1974), reinforced Maryland's standards for
malicious prosecution, holding that parties may be liable for initiating baseless claims out
of malice. Maryland courts emphasize that initiating legal action without probable cause
and with improper motives warrants accountability.

4.   **Duty of Care and Negligence**: In *Jacques v. First Nat'l Bank of Md.*, 307 Md.
527, 515 A.2d 756 (1986), the Maryland Court of Appeals held that parties must adhere
to a duty of care, recognizing that negligence occurs when actions fall short of what a
reasonable person would do to avoid harm. This standard reinforces Maryland's
commitment to protecting individuals from foreseeable harm through reasonable
precautions.

4    Application in Dillon-Capps's Case

270    Each of these tort doctrines directly applies to Dillon-Capps's case, as Ohana's actions
reflect fraudulent misrepresentations, misuse of legal processes, and failures in exercising
reasonable care:

1.   **Fraud and Fraudulent Misrepresentation**: Ohana's contradictory statements
about Dillon-Capps's employment status and access rights amount to fraudulent

misrepresentation. Drummond's assurances on June 7th that Dillon-Capps would receive

support from Hartman Executive Advisors (HEA) were never upheld, misleading Dillon-

Capps about his ability to perform his role effectively. Maryland courts would likely hold

Ohana accountable for this misrepresentation, as Dillon-Capps relied on their assurances

in good faith.

2.      **Abuse of Process**: Ohana's pursuit of contempt orders and fines based on

unfounded allegations constitutes abuse of process. Maryland courts, following *One*

*Thousand Fleet*, would view these actions as an improper use of judicial authority to

retaliate against Dillon-Capps for exercising his legal rights. By seeking coercive

measures without just cause, Ohana misused the court's resources to harass rather than

seek lawful relief.

3.      **Malicious Prosecution**: Ohana's baseless actions against Dillon-Capps, including

punitive measures unsupported by probable cause, reflect malicious prosecution.

Maryland courts would likely apply this doctrine to hold Ohana accountable for initiating

legal actions driven by improper motives. In line with *Herring*, Maryland courts would

recognize that Ohana's actions lacked legitimate grounds, constituting a misuse of

judicial processes for malicious purposes.

4.      **Duty of Care and Negligence**: Ohana's disregard for Dillon-Capps's requests for

access and support reflect a failure to exercise reasonable care. Maryland courts would

likely apply the duty of care standard to assess Ohana's negligence, recognizing that

failing to provide promised access directly hindered Dillon-Capps's ability to fulfill his

role. This negligence created foreseeable harm, as Ohana's lack of response to requests undermined Dillon-Capps's professional responsibilities.

271   Maryland's incorporation of tort doctrines—fraud, abuse of process, malicious prosecution, and duty of care—provides a robust framework for holding parties accountable for wrongful actions that cause harm. Supported by § 10-503, Maryland courts apply these doctrines to prevent misuse of legal proceedings and uphold standards of fairness and accountability. In Dillon-Capps's case, each doctrine would bar Ohana from benefitting from their wrongful actions and impose accountability for fraudulent misrepresentations, misuse of process, and negligent conduct.

## C   Equitable Doctrines of Defense

272   Maryland's legal system incorporates core equitable defenses that prevent parties from benefitting from wrongful conduct and ensure fairness in judicial proceedings. Supported by **Md. Code Ann., Cts. & Jud. Proc. § 10-503**, Maryland courts apply doctrines such as **unclean hands, public policy-based unclean hands, equitable estoppel**, and **promissory estoppel** to hold parties accountable for their representations, conduct, and commitments. These defenses bar relief where a party has engaged in conduct that violates legal protections or contradicts prior assurances, particularly where another party has reasonably relied on those representations.

### 1   Foundations of Maryland's Equitable Defenses

273   Maryland's equitable doctrines are rooted in principles of fairness, supported by sections of the Restatements that provide clear standards for their application:

    1.   **Unclean Hands (Public Policy and Unlawful Conduct)**: Maryland courts apply the unclean hands doctrine, grounded in **Restatement (Second) of Contracts, § 179 and**

**§ 192**, to deny claims when a party's actions violate ethical standards or involve unlawful conduct. This doctrine ensures that Maryland's judicial resources are not used to support claims arising from wrongful conduct that conflicts with legal protections or public standards.

2.    **Equitable Estoppel**: As outlined in **Restatement (Second) of Torts, § 894(1)**, equitable estoppel prevents parties from taking contradictory positions when another party has reasonably relied on their prior representations. Maryland courts use this doctrine to maintain consistency, preventing parties from manipulating their statements to the disadvantage of others.

3.    **Promissory Estoppel**: Defined in **Restatement (Second) of Contracts, § 90**, promissory estoppel enforces promises that induce reasonable reliance. Maryland courts apply this doctrine to prevent unjust outcomes by holding parties to their promises, especially when one party has relied to their detriment.

2    <u>Judicial Standards for Applying Equitable Defenses in Maryland</u>

274    Maryland courts apply these doctrines under specific standards that protect the integrity of judicial proceedings:

1.    **Unclean Hands and Public Policy**: Maryland courts consider whether a party's conduct contravenes public policy or legal principles, invoking unclean hands to bar relief when actions violate statutory protections or ethical standards. This prevents misuse of the judiciary by denying equitable relief to those who act inconsistently with core legal and ethical principles.

2.    **Equitable and Promissory Estoppel**: Maryland courts apply equitable estoppel where a party's contradictory conduct harms another who relied on prior statements. Promissory estoppel is applied to enforce promises when reliance has resulted in substantial harm. These doctrines ensure accountability by preventing unjust reversals of position.

3    Maryland Case Law on Equitable Defenses

275    Maryland appellate courts provide binding guidance on these doctrines, ensuring equitable defenses are applied fairly and consistently:

1.    **Unclean Hands and Public Policy**: In *Hammond v. Marketing Management, Inc.*, 445 Md. 310, 126 A.3d 1137 (2015), the Maryland Court of Appeals held that courts may deny relief on public policy grounds under the unclean hands doctrine when a party's actions contradict ethical principles or societal values. Maryland courts thus prevent unethical or unlawful conduct from benefitting from judicial relief.

2.    **Equitable Estoppel for Consistency**: In *Knapp v. Smethurst*, 139 Md. App. 676, 779 A.2d 970 (2001), the court applied equitable estoppel to bar a party from altering a previously asserted position that had induced reasonable reliance. The court underscored that equitable estoppel is essential to uphold consistency and fairness in the judicial process.

3.    **Promissory Estoppel for Reliance-Based Commitments**: In *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 674 A.2d 521 (1996), the Maryland Court of Appeals enforced promissory estoppel to hold a party accountable for a promise made in

good faith that had induced reasonable reliance. This precedent emphasizes that

Maryland courts uphold promises to prevent injustice and honor reliance.

### 4    Application in Dillon-Capps's Case

276    Each of these equitable defenses directly applies to Dillon-Capps's case, as Ohana's

actions demonstrate contradictions, broken promises, and unlawful conduct. Maryland courts

would likely apply these doctrines to prevent Ohana from benefitting from its own inconsistent,

retaliatory, and unlawful actions:

1.    **Unclean Hands Due to Unlawful Conduct and Public Policy Violations**:

Ohana's conduct—including baseless contempt orders, unjustified fines, and attempts to

discourage Dillon-Capps's use of FMLA leave—violates statutory protections. Under **29

U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220**, it is unlawful for an employer to interfere

with or retaliate against an employee's FMLA rights. Maryland courts would invoke the

unclean hands doctrine to bar Ohana's claims, given their attempts to circumvent these

statutory protections. Ohana's actions, rooted in retaliation and interference, contravene

public policy, disqualifying them from relief.

2.    **Equitable Estoppel to Address Contradictory Actions**:

Ohana's contradictory conduct surrounding Dillon-Capps's access rights and

employment commitments warrants application of equitable estoppel. For instance, Justin

Drummond assured Dillon-Capps on June 7th that someone from Hartman Executive

Advisors (HEA) would address his access issues, only for Ohana to disregard these

assurances and later penalize Dillon-Capps. Maryland courts would apply equitable

estoppel to hold Ohana to their prior statements, protecting Dillon-Capps from harm
caused by their reversal.

3.    **Promissory Estoppel to Enforce Commitments on Employment Support**:
Ohana's June 7th accord with Dillon-Capps promised access rights and job
accommodations, which Dillon-Capps reasonably relied upon to structure his job
responsibilities. Despite this, Ohana failed to fulfill these assurances, undermining
Dillon-Capps's employment stability. Consistent with *Pavel Enterprises*, Maryland
courts would apply promissory estoppel to prevent Ohana from retracting their promises,
as Dillon-Capps's reliance was both justified and essential to his role.

277    Maryland's equitable doctrines of unclean hands, public policy-based unclean hands,
equitable estoppel, and promissory estoppel ensure that courts uphold fairness, integrity, and
consistency. Supported by **§ 10-503**, Maryland courts are empowered to apply these doctrines to
cases like Dillon-Capps's, where unethical conduct, contradictions, and broken promises
undermine the opposing party's rights and expectations. Applying these doctrines would bar
Ohana from obtaining relief, enforcing Maryland's standards for equitable conduct and
accountability, and ensuring that judicial resources are not used to support claims arising from
improper actions.

## D  Doctrine of Mootness

278    The doctrine of **mootness** is a principle of judicial restraint, limiting courts to live
controversies where effective relief remains possible. **Grounded in Article III's "case or
controversy" requirement**, mootness restricts judicial power, preventing courts from issuing
advisory opinions or addressing hypothetical scenarios. Maryland courts incorporate this

doctrine as part of the state's reliance on English common law and uphold it as a fundamental constraint on judicial authority. However, Maryland courts also recognize important exceptions to ensure cases with unresolved consequences or lasting impact receive judicial consideration.

### 1    Foundations of the Doctrine of Mootness in Maryland Law

279    Maryland's adoption of the doctrine of mootness is rooted in common law principles. While not expressly codified, mootness principles align with **Restatement (Second) of Judgments, § 13**, which states that only active disputes merit judicial review. This Restatement underscores the importance of focusing judicial resources on current controversies and avoiding determinations on legally irrelevant or resolved issues. However, it also recognizes that some issues retain practical importance due to lasting consequences or potential relief, which Maryland courts consider essential in mootness determinations.

### 2    Judicial Standards for Applying the Doctrine of Mootness in Maryland

280    Maryland courts have developed clear standards for applying mootness, including specific circumstances under which the doctrine may be set aside to avoid unjust outcomes:

1.    **Active Controversy Requirement**: Maryland courts require a present, ongoing dispute for mootness to apply, ensuring that the matter is not merely hypothetical or resolved without further implications. Maryland courts consistently hold that cases with unresolved legal, reputational, or financial consequences do not meet the criteria for mootness, as such cases involve ongoing interests that necessitate judicial intervention.

2.    **Collateral Consequences Exception**: The collateral consequences doctrine allows Maryland courts to proceed with cases when there are ongoing effects of a resolved issue—such as reputational or financial harm—that warrant judicial attention.

This exception ensures that Maryland courts protect parties from unresolved harm and underscores that cases with continuing implications are not dismissed as moot, allowing the court to provide meaningful relief.

3.    **Potential for Relief**: Maryland courts exercise caution to ensure that mootness does not prematurely prevent cases with possible relief from judicial review. Preliminary motions and objections that seek clarification of material facts or essential claims hold significant value in cases where unresolved issues remain relevant to the parties. Maryland courts uphold judicial responsibility by recognizing potential relief as a basis for allowing cases to proceed, even if some primary issues appear resolved.

## 3    Maryland Case Law on the Doctrine of Mootness

281    Maryland appellate courts have provided important guidance on the application of mootness, establishing exceptions that ensure fairness and accountability in cases with lasting impact:

1.    **Attorney Grievance Commission v. Stolarz**, 379 Md. 387, 842 A.2d 42 (2004): The Maryland Court of Appeals held that a matter should not be dismissed as moot if resolving it would provide meaningful relief or address unresolved legal issues. This case affirms that Maryland courts apply mootness cautiously, ensuring that cases with significant implications for the parties receive a full judicial review.

2.    **In re Kaela C.**, 394 Md. 432, 906 A.2d 915 (2006): The Maryland Court of Appeals ruled that mootness does not bar review in cases with collateral consequences that continue to affect a party. This ruling underscores that Maryland courts should avoid

dismissing cases where unresolved reputational or financial harm remains, prioritizing comprehensive judicial review in cases with lasting impact.

3.      **State v. Parker**, 334 Md. 576, 640 A.2d 1104 (1994): This case emphasized that courts should exercise caution when applying mootness to prevent denying parties meaningful relief. The Court of Appeals confirmed that cases must not be dismissed if live issues affecting the parties continue, thereby upholding fairness and ensuring that the courts address substantive claims.

4    <u>Application in Dillon-Capps's Case</u>

282    The doctrine of mootness, particularly in light of Maryland's standards and exceptions, plays a critical role in Dillon-Capps's case, where unresolved legal, reputational, and financial consequences remain due to prior court rulings:

1.      **Unresolved Contempt Orders and Fines**: Judge Mayer's August 20 ruling, which deemed Dillon-Capps's Motion to Vacate the Show Cause Order "moot" after Plaintiff's withdrawal of the contempt petition, failed to address Dillon-Capps's reputational and financial harm arising from the unresolved contempt orders. Under the collateral consequences exception, Maryland courts would recognize that this ruling leaves Dillon-Capps with enduring reputational damage, warranting further judicial review.

2.      **Dismissal of Counterclaims on Mootness Grounds**: Judge Stringer's October 28 ruling, which dismissed Dillon-Capps's counterclaims as moot following Plaintiff's voluntary dismissal, disregarded his timely response challenging the allegations. By dismissing his defense as moot, the court failed to consider the ongoing reputational and

financial harm arising from these unaddressed allegations. Maryland case law, as shown in *Stolarz* and *Kaela C.*, supports judicial review in cases where potential relief could mitigate lasting consequences.

3.    **Impact of Judicial Bias in Mootness Rulings**: Judge Barranco's ruling on Dillon-Capps's Motion to Assert Rights, which dismissed arguments concerning premature default as moot, included statements that personally criticized Dillon-Capps's pro se conduct. This ruling overlooked valid claims and failed to provide judicial relief from unresolved legal implications. Consistent with *Parker*, Maryland courts should ensure that all claims with potential for effective relief receive thorough consideration rather than dismissal under mootness.

283    Maryland's doctrine of mootness serves as a critical constraint on judicial power, yet it is applied with care to avoid prematurely dismissing unresolved matters. By enforcing the active controversy requirement and recognizing exceptions for collateral consequences and potential relief, Maryland courts ensure that cases with lasting legal significance are not dismissed as moot. In Dillon-Capps's case, the inappropriate application of mootness has left him with ongoing reputational, financial, and legal consequences. Maryland's standards for applying mootness support judicial review in cases like this, ensuring that unresolved issues and claims are addressed to uphold fairness and provide meaningful relief.

E    Good Faith and Reasonable Jury Standard

284    Maryland's commitment to fairness and ethical litigation is underscored by the doctrines of **good faith** and the **reasonable jury standard**, both fundamental principles that ensure integrity in the judicial process. Grounded in **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and**

**10-503,** Maryland's statutory framework incorporates these doctrines from common law, allowing courts to evaluate claims with a rigorous standard that preserves judicial resources, prevents abusive litigation, and promotes substantive fairness.

1    <u>Foundations of Good Faith and Reasonable Jury Standard in Maryland Law</u>

285    Maryland's adoption of good faith and the reasonable jury standard is supported by common law principles and the Restatements, which Maryland courts incorporate under §§ 10-501 and 10-503:

1.    **Good Faith**: Good faith is a central principle in Maryland law, requiring honesty, fairness, and integrity in both contractual dealings and litigation conduct. This doctrine prohibits deceptive practices, manipulation, or bad-faith tactics aimed at gaining an unfair advantage. In Maryland, good faith is essential for claims and defenses involving equitable doctrines like unclean hands, where courts examine a party's ethical behavior to ensure fairness.

2.    **Reasonable Jury Standard**: The reasonable jury standard, a common law principle reinforced by Maryland's statutory framework, requires claims to be assessed based on what a reasonable jury could plausibly find given the evidence. This doctrine filters out cases that lack factual substance, ensuring only claims with credible support progress to full adjudication. Maryland courts apply this standard to prevent speculative or baseless claims from advancing, preserving the integrity and efficiency of the court system.

## 2    Judicial Standards for Applying Good Faith and Reasonable Jury Standard in Maryland

286    Maryland courts enforce good faith and reasonable jury standards to maintain ethical conduct and procedural fairness. Specific judicial standards guide the application of these doctrines:

1.    **Good Faith as a Procedural and Substantive Requirement**: Maryland courts apply good faith as both a procedural and substantive requirement. Procedurally, good faith mandates that parties engage in litigation without intent to deceive or manipulate, while substantively, it supports equitable doctrines like unclean hands by denying relief to parties acting dishonestly. Maryland courts routinely assess good faith to determine whether a party's behavior meets ethical standards; a failure to do so can lead to the denial of relief or dismissal of claims.

2.    **Reasonable Jury Standard as a Threshold for Claims**: The reasonable jury standard operates as a threshold, requiring claims to present enough credible evidence for a jury to find plausibility. Maryland courts employ this standard to prevent baseless claims from consuming judicial resources, ensuring that only plausible cases advance. By rigorously applying this standard, Maryland courts uphold procedural integrity and shield the judicial system from frivolous claims.

## 3    Maryland Case Law on Good Faith and Reasonable Jury Standard

287    Maryland appellate courts have consistently enforced these doctrines, providing precedents that lower courts follow to ensure fair and ethical litigation:

1.    **Good Faith in Contractual and Litigation Conduct**: In *Hammond v. Marketing Management, Inc.*, 445 Md. 310, 126 A.3d 1137 (2015), the Maryland Court of Appeals

emphasized that good faith is critical in both contractual and procedural matters. Parties are expected to engage in honest and fair dealings, and Maryland courts underscore that good faith is essential for upholding claims and enforcing contracts.

2.    **Application of the Reasonable Jury Standard**: *Parker v. State*, 334 Md. 576, 640 A.2d 1104 (1994), outlines that claims must meet the threshold of plausibility based on evidence that would convince a reasonable jury. Maryland courts apply this standard to ensure that unsubstantiated claims do not progress, safeguarding judicial resources and fairness in legal proceedings.

3.    **Good Faith and Unclean Hands Doctrine**: *Hicks v. Gilbert*, 135 Md. App. 394, 762 A.2d 986 (2000), reinforces that good faith is integral to the doctrine of unclean hands. The Maryland Court of Special Appeals applied unclean hands to bar relief for a party lacking good faith, affirming that Maryland courts demand ethical standards for judicial relief.

4    Application in Dillon-Capps's Case

288    In Dillon-Capps's case, the doctrines of good faith and the reasonable jury standard are crucial in evaluating the validity and ethical grounding of Ohana's claims. These doctrines support Dillon-Capps's core arguments, particularly concerning the tort doctrines, equitable defenses, and claims of perjury:

1.    **Lack of Good Faith in Plaintiff's Conduct**: Ohana Growth Partners, LLC, and its counsel have demonstrated a lack of good faith through contradictory statements, baseless contempt orders, and coercive litigation tactics unsupported by factual evidence. Maryland courts would likely find Ohana's conduct ethically deficient under the good

faith standard, thereby making them ineligible for judicial relief. This lack of good faith supports defenses such as unclean hands, barring Ohana's claims and ensuring procedural integrity.

2.    **Failure to Meet the Reasonable Jury Standard**: Ohana's allegations lack the evidentiary basis required by the reasonable jury standard, as their claims, including disputed contempt orders and unsupported accusations, do not present credible evidence sufficient to convince a reasonable jury. Maryland courts, consistent with *Parker*, would likely dismiss these claims as implausible, thereby preserving judicial resources for substantiated cases.

3.    **Intersection with Perjury Claims**: The principle of good faith bolsters Dillon-Capps's arguments regarding perjury, as Ohana's use of contradictory affidavits, evasive statements, and misleading claims reveals a pattern of intent to deceive. Maryland courts view good faith as essential in assessing claims of perjury and apply doctrines like unclean hands to prevent relief for parties engaged in unethical litigation conduct.

289    Incorporated under **§§ 10-501 and 10-503**, Maryland's doctrines of good faith and reasonable jury standard uphold ethical conduct, fairness, and judicial efficiency. By filtering out baseless or unethical claims, Maryland courts ensure that only substantiated cases advance through the judicial process. In Dillon-Capps's case, applying these principles would likely lead to the dismissal of Ohana's claims, reinforcing the court's commitment to a principled and fair judicial process and lending critical support to Dillon-Capps's primary arguments regarding tort doctrines, equitable defenses, and perjury.

### F   Preponderance of Evidence

## 1    Foundations of Preponderance of Evidence

290    The **preponderance of evidence** standard is the foundational burden of proof in Maryland civil cases, requiring that the evidence make a claim more likely true than not. Grounded in common law and incorporated under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, this standard is essential for establishing a fair basis for civil claims. The preponderance standard functions as a threshold for proving entitlement to relief, especially in cases involving equitable remedies, by determining whether a claim meets the minimum level of evidentiary support necessary for judicial action.

## 2    Judicial Standards for Applying Preponderance of Evidence

291    Maryland courts rigorously apply the preponderance of evidence standard to ensure that only substantiated claims move forward. Under this standard, the party with the burden of proof must present evidence that tips the scale slightly in its favor. By filtering out claims that lack sufficient evidence, Maryland courts uphold judicial integrity, discourage speculative or frivolous litigation, and preserve judicial resources.

292    Applying the preponderance standard aligns with Maryland's commitment to fairness and judicial economy, as it demands that each party substantiate its claims before receiving judicial relief. This threshold test serves as a safeguard, ensuring that only claims with a reasonable evidentiary basis are adjudicated.

## 3    Maryland Case Law

293    **Coleman v. Anne Arundel County Police Dept.**, 369 Md. 108, 797 A.2d 770 (2002): Maryland's Court of Appeals affirmed the preponderance of evidence as the standard in civil cases, establishing that a claim must be more probable than not based on the evidence. This case

confirmed that the preponderance standard is the baseline for determining the validity of civil claims, upholding Maryland's focus on fairness and judicial integrity.

294    **Owens-Illinois, Inc. v. Hunter**, 162 Md. App. 385, 875 A.2d 157 (2005): This decision reinforced that preponderance of evidence is essential in both equitable and tort claims, ensuring that claims lacking evidentiary support do not advance in litigation. Maryland courts rely on this standard to provide a fair balance of proof in civil cases, filtering out baseless claims from further consideration.

### 4    Application to Dillon-Capps's Case

295    In Dillon-Capps's case, the preponderance of evidence standard is central to his counterclaims, which seek equitable relief based on Plaintiff's repeated misuse of judicial processes and apparent bad faith. Evidence such as documented contradictions, baseless contempt filings, and harassing tactics demonstrate that Plaintiff's actions are more likely than not to have been motivated by malice and intent to harm. This weight of evidence meets the preponderance standard, supporting Dillon-Capps's claim for reciprocal relief and sanctions.

296    Applying the preponderance of evidence standard here ensures that the claims for relief are substantively backed by evidence, aligning with Maryland's public policy to deter frivolous litigation and uphold equitable principles. By requiring claims to meet this evidentiary threshold, Maryland courts protect judicial efficiency and fairness, ensuring that cases with sufficient merit proceed to full adjudication.

### G    Irreparable Harm

## 1    Foundations of Irreparable Harm

297    **Irreparable harm** is a principle rooted in Maryland's common law and incorporated

through **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, which establishes that

certain types of harm cannot be adequately remedied by monetary compensation alone. This

standard justifies the granting of equitable relief, including injunctive measures, when the harm

is imminent, severe, and uniquely injurious. Irreparable harm must be ongoing or immediate,

creating consequences that cannot be later reversed or compensated. The doctrine ensures that

courts have the authority to intervene promptly to prevent lasting damage and protect

fundamental rights.

## 2    Judicial Standards for Applying Irreparable Harm

298    Maryland courts apply the irreparable harm standard with rigorous scrutiny, evaluating

whether the harm:

> 1.    Is ongoing or imminent, presenting a significant threat to a party's rights, well-
>
> being, or livelihood.
>
> 2.    Cannot be adequately addressed through monetary damages due to its unique or
>
> non-compensable nature.
>
> 3.    Necessitates immediate judicial intervention to prevent continued or exacerbated
>
> harm.

299    Maryland courts recognize that this standard aligns with principles of fairness and

judicial efficiency, allowing courts to respond decisively to prevent harms that monetary

remedies cannot adequately resolve.

### 3    Maryland Case Law

300    **State Dep't of Health & Mental Hygiene v. Baltimore County**, 281 Md. 548, 383 A.2d

51 (1978): The Maryland Court of Appeals held that irreparable harm supports non-monetary

relief, particularly when the harm cannot be fully addressed by monetary compensation alone.

The court emphasized the necessity of judicial intervention in situations where ongoing or

imminent harm threatens the party's fundamental rights or well-being.

301    **Schade v. Maryland State Bd. of Elections**, 401 Md. 1, 930 A.2d 304 (2007):

Reinforced that irreparable harm justifies equitable relief, especially where harm is such that it

cannot be undone or compensated later. This case underscores the principle that courts must

protect against irreversible harm when monetary damages are insufficient.

### 4    Application to Dillon-Capps's Case

302    In Dillon-Capps's case, the harm inflicted by Plaintiff and counsel is multi-faceted,

severe, and ongoing, warranting immediate injunctive relief. Plaintiff's relentless tactics—

including harassment, manipulation of legal processes, and efforts to coerce Dillon-Capps

through baseless contempt filings and threats of incarceration—have caused irreparable harm

impacting nearly every aspect of Dillon-Capps's life. This includes:

   1.    **Mental and Physical Health Deterioration**: The litigation has exacerbated

   Dillon-Capps's PTSD, resulting in a mental break and catatonic episodes, which have

   worsened to malignant catatonia—a life-threatening condition affecting autonomous

   functions like temperature regulation and breathing. The physical toll has manifested as

   severe memory loss, which not only impairs daily functioning but also hinders Dillon-

Capps's ability to engage in their AI work, effectively halting their career and erasing years of expertise.

2.    **Professional and Financial Devastation**: The reputational and professional harm caused by Plaintiff's actions has resulted in the collapse of Dillon-Capps's investment in MXT3, LLC, as well as the loss of investor confidence and access to funding. Financially, this has placed Dillon-Capps in severe distress, with damage to their credit rating, defaulting obligations, and the inability to cover basic necessities. The financial damage extends to those dependent on Dillon-Capps, including their disabled brother, elderly mother, and spouse with cerebral palsy.

3.    **Imminent Risk of Homelessness**: As financial harm continues to escalate, Dillon-Capps faces the immediate risk of utility shutoff, foreclosure, and homelessness. The potential loss of housing jeopardizes Dillon-Capps's safety and welfare as well as those of their vulnerable dependents.

4.    **Denial of Due Process and Failure of Relief Mechanisms**: Dillon-Capps has been consistently denied access to relief, with half a dozen motions for hearings and injunctive relief dismissed or ruled as moot. Plaintiff has exploited the legal process to avoid accountability, including using procedural tactics to dismiss claims without consent despite counterclaims and ongoing harm.

303    This combination of physical, financial, professional, and reputational harm is irremediable through financial compensation alone. The pervasive and escalating nature of the harm caused by Plaintiff's litigation requires immediate injunctive relief to prevent further irreparable damage to Dillon-Capps's life, health, and career.

304    Maryland's doctrine of irreparable harm mandates judicial intervention where harm is

imminent, severe, and non-compensable by monetary damages. In Dillon-Capps's case, the

cumulative effects of harassment, bad-faith litigation, and financial and reputational damage

have created a situation that cannot be rectified by damages alone. By granting injunctive relief,

the court can prevent ongoing harm, protect Dillon-Capps's rights, and uphold Maryland's

commitment to fairness and judicial integrity.

## H    Legitimate Purpose

### 1    Foundations of Legitimate Purpose

305    The concept of **legitimate purpose** is central to Maryland's judicial standards for

evaluating the validity and propriety of claims in civil litigation. Under **Md. Code Ann., Cts. &**

**Jud. Proc. §§ 10-501 and 10-503,** Maryland courts incorporate common law principles,

including the doctrine that legal actions must serve a legitimate, bona fide purpose. Claims or

legal actions filed with no purpose other than to harass, burden, or intimidate the opposing party

are viewed as an abuse of the judicial system. When claims lack legitimate purpose, Maryland

courts are authorized to dismiss those claims or impose sanctions on the offending party, as such

actions undermine the equitable and just use of judicial resources.

### 2    Judicial Standards for Applying Legitimate Purpose

306    Maryland courts employ several standards to determine whether a claim serves a

legitimate purpose:

1.    **Objective of the Claim**: The claim should aim to address a substantive legal

issue or resolve a genuine dispute, rather than to harass or cause harm to the opposing

party.

Page **102 of 329**

2.    **Intent of the Filing Party**: Courts assess whether the intent behind filing the claim was to pursue justice or, conversely, to retaliate, delay, or coerce.

3.    **Consistency with Judicial Integrity**: Claims that serve only to waste judicial resources or impose unnecessary burdens on the opposing party contradict Maryland's public policy goals of fairness, judicial economy, and ethical litigation.

307    The absence of a legitimate purpose undermines the credibility of the judicial process and diverts resources from genuine claims, justifying judicial intervention to prevent abuse. Maryland courts thus ensure that all claims brought before them serve a bona fide purpose, aligned with ethical and procedural standards.

3    <u>Maryland Case Law</u>

1.    **Needle v. White**, 81 Md. App. 463, 568 A.2d 856 (1990): The Court of Special Appeals clarified that litigation without a legitimate purpose constitutes an abuse of process, warranting sanctions. The court held that legal actions solely intended to harass or burden the opposing party violate the standards of proper legal practice and ethical conduct.

2.    **Bartlett v. Portfolio Recovery Assocs., LLC**, 438 Md. 255, 91 A.3d 1127 (2014): This case reinforced that Maryland courts may dismiss or penalize claims that lack substantive merit or legitimate purpose. The court emphasized that the justice system must not be used as a tool for harassment or coercion, reaffirming the importance of good faith in litigation.

4    <u>Application to Dillon-Capps's Case</u>

308    In Dillon-Capps's case, Plaintiff's legal actions demonstrate a clear absence of legitimate

purpose, as evidenced by their reliance on tactics designed to intimidate, coerce, and exhaust

Dillon-Capps financially, professionally, and personally. Key examples of Plaintiff's lack of

legitimate purpose include:

1.    **Hostile and Retaliatory Filings**: Plaintiff's filings, including motions for

contempt and demands for incarceration, reveal a strategy aimed at pressuring Dillon-

Capps rather than pursuing a bona fide legal resolution. The aggressive pursuit of

penalties, such as incarceration, reflects a retaliatory approach that has escalated without

substantive legal grounds.

2.    **Manipulation of Legal Procedures**: Plaintiff has exploited procedural loopholes,

including filing a no-notice TRO and a two-day notice contempt hearing, tactics that

denied Dillon-Capps the opportunity for adequate preparation and defense. Such

strategies are inconsistent with legitimate litigation objectives and have instead been

employed to create undue pressure on Dillon-Capps.

3.    **Prolonged and Unsubstantiated Litigation**: For over five months, Plaintiff has

perpetuated this baseless lawsuit, draining Dillon-Capps's resources and preventing them

from focusing on their livelihood and well-being. The absence of substantive claims,

coupled with a pattern of excessive and redundant filings, underscores that Plaintiff's

intent is to inflict harm, rather than to resolve a genuine dispute.

309    The Plaintiff's conduct exemplifies bad-faith litigation and reflects an abuse of process as

described in *Needle v. White*. These actions, lacking any legitimate legal purpose, align with

Maryland's criteria for imposing sanctions and reciprocal relief. Granting Dillon-Capps's request for relief would send a clear message that Maryland courts do not tolerate litigation intended solely to harass, intimidate, or coerce the opposing party.

310     Maryland's standards require that legal actions serve a legitimate purpose, aligned with principles of fairness and judicial integrity. In Dillon-Capps's case, the Plaintiff's claims have been pursued with the intent to harass and inflict harm, rather than to address a genuine legal grievance. Under Maryland's common law standards, this absence of legitimate purpose justifies the court's intervention through sanctions and dismissal, reinforcing Maryland's commitment to equitable litigation practices and the ethical use of judicial resources.

## I  Severe Harm

### 1    Foundations of Severity of Harm

311     The concept of **severity of harm** serves as a guiding factor for Maryland courts in assessing appropriate remedies and sanctions in cases involving significant misconduct. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland courts incorporate common law principles, allowing them to consider the gravity or "severity" of a party's conduct as a basis for determining whether heightened penalties are justified. This standard allows courts to evaluate the impact and intent of the offending party's actions to ensure that responses are proportionate to the harm inflicted.

312     The severity of harm includes consideration of factors such as the nature of the offense, the extent of damage caused, and the broader implications for the court's integrity and the public's confidence in the justice system. Where harm is particularly severe—such as cases involving malicious intent, bad faith, or systematic abuse of process—Maryland courts may

impose heightened sanctions or equitable remedies to prevent ongoing harm and deter future misconduct.

## 2    Judicial Standards for Applying Severity of Harm

313    Maryland courts assess the severity of harm by evaluating the degree to which the offending conduct:

1.    Demonstrates bad faith, malice, or intent to harm.

2.    Results in substantial damage that cannot be easily mitigated or rectified.

3.    Threatens broader interests, such as judicial integrity or public confidence in the justice system.

314    The severity of harm is considered when issuing remedies that exceed standard compensatory relief, allowing Maryland courts to address particularly egregious cases of misconduct with appropriate consequences.

## 3    Maryland Case Law

315    **Higginbotham v. Public Serv. Comm'n**, 171 Md. App. 254, 909 A.2d 1087 (2006): The Maryland Court of Special Appeals held that courts may assess the degree of offense when determining the severity of sanctions or remedies. The case highlighted that misconduct resulting in significant harm warrants more substantial judicial responses, emphasizing that Maryland courts have the discretion to consider the impact and intent behind the actions in question.

316    **Worsham v. Ehrlich**, 181 Md. App. 711, 957 A.2d 161 (2008): This case reinforced that courts should assess the severity of harm when evaluating equitable relief, especially where intentional or reckless actions cause lasting damage. The court held that greater harm justifies more rigorous judicial intervention to uphold fairness and prevent further abuse.

4    Application to Dillon-Capps's Case

317    The severity of harm in Dillon-Capps's case is evident in the compounded financial,
professional, and personal damage inflicted by Plaintiff's sustained pattern of abusive litigation
tactics. Key aspects of this severe harm include:

1.    **Malicious Litigation Tactics**: Plaintiff's relentless pursuit of baseless contempt
actions, aggressive motions for incarceration, and disregard for procedural fairness reflect
an intent to harm Dillon-Capps beyond any legitimate legal objective. This pattern
demonstrates bad faith and malice, intended to inflict maximum disruption on Dillon-
Capps's life.

2.    **Irreversible Financial and Professional Harm**: The Plaintiff's actions have
caused Dillon-Capps irreparable financial harm, including the destruction of their
business investments and the loss of investor confidence in MXT3, LLC, thereby
terminating a 15-year investment in AI research. This financial devastation is
compounded by harm to Dillon-Capps's credit rating, defaulting on financial obligations,
and now impending homelessness due to potential foreclosure.

3.    **Severe Physical and Mental Health Deterioration**: The Plaintiff's tactics have
escalated Dillon-Capps's PTSD to the point of triggering catatonic episodes, which have
worsened to malignant catatonia, a life-threatening condition. The severity of these
symptoms has impacted Dillon-Capps's ability to function on a basic level, presenting
irreparable harm that worsens with each day the litigation persists.

4.    **Impact on Vulnerable Dependents**: The financial and emotional toll on Dillon-
Capps directly threatens the well-being of their dependents, including a disabled brother,

elderly mother, and a spouse with cerebral palsy. The harm Plaintiff has caused extends

beyond Dillon-Capps, creating further adverse effects on these individuals who rely on

Dillon-Capps for support.

5.    Maryland courts, under the principles established in *Higginbotham v. Public Serv.*

*Comm'n* and *Worsham v. Ehrlich*, are empowered to impose heightened sanctions and

equitable relief in cases involving severe harm. The Plaintiff's sustained abuse of the

judicial system justifies a significant judicial response to prevent further damage, deter

future misconduct, and provide Dillon-Capps with meaningful relief.

318    Maryland's judicial standards allow for an assessment of severity when issuing remedies,

particularly where conduct reflects bad faith, intent to harm, or gross negligence. The severe,

multi-dimensional harm inflicted upon Dillon-Capps by Plaintiff's malicious litigation tactics

meets the threshold for heightened judicial intervention. By addressing the severity of harm

through rigorous penalties and equitable relief, the court can uphold Maryland's commitment to

fairness, protect Dillon-Capps from ongoing harm, and deter similar misconduct in future cases.

## J    Intent

### 1    Foundations of Intent

319    **Intent** is a critical factor in Maryland's common law, especially in cases involving bad-

faith litigation, fraud, and abuse of process. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-**

**501 and 10-503**, Maryland courts incorporate common law principles that assess whether actions

were deliberate, malicious, or calculated, as opposed to accidental or negligent. Where intent to

harm or deceive is evident, Maryland courts impose heightened penalties and equitable relief to

prevent further abuse. Intent to harm elevates the severity of the offense, justifying a judicial

response proportionate to the misconduct, particularly where legal processes are weaponized to evade accountability or coerce the opposing party.

## 2    Judicial Standards for Applying Intent

320    Maryland courts examine intent by assessing whether:

1.    **Deliberate, Calculated Actions**: Courts evaluate whether actions reveal a premeditated approach to inflict harm, deceive, or evade responsibility, as opposed to incidental conduct.

2.    **Misuse of Legal Procedures for Coercive Purposes**: Intent is scrutinized where legal processes are exploited for intimidation, deception, or coercion rather than to resolve a legitimate dispute.

3.    **Pattern of Evasion and Knowledge of Harm**: Courts consider whether the party actively evaded responsibilities or misled the court, signaling a pattern of calculated misconduct that suggests a deliberate intent to harm.

321    When intent is proven to be malicious or reckless, Maryland courts impose heightened sanctions to prevent ongoing abuse, safeguard judicial integrity, and deter similar conduct.

## 3    Maryland Case Law

322    **Montgomery County v. MicroVote Corp.**, 200 Md. App. 134, 24 A.3d 1163 (2011): Maryland's Court of Special Appeals upheld that malicious or deliberate intent to harm warrants heightened penalties. The court emphasized that intent to deceive or manipulate distorts judicial fairness, supporting punitive sanctions as a deterrent.

323    **Bey v. Shapiro Brown & Alt, LLP**, 997 F. Supp. 2d 310 (D. Md. 2014): Reinforced that intent to deceive or coerce justifies civil penalties, especially where actions reveal a pattern of

bad-faith behavior. Maryland courts consistently find that when parties act with harmful or fraudulent intent, punitive measures are appropriate.

4    Application to Dillon-Capps's Case

324    In Dillon-Capps's case, Plaintiff's actions—supported and exacerbated by the conduct of their law firm, Miles & Stockbridge—demonstrate a clear intent to harm, deceive, and evade accountability. Plaintiff's representatives, including Justin Drummond and the law firm, took calculated actions designed to obstruct, mislead, and intimidate Dillon-Capps. Key examples of this intent include:

> 1.    **Evasion of Agreement and Collective Deception**: On June 7th, Drummond agreed to an accord for receiving access by June 10th and 11th but then evaded satisfying this agreement. Despite claiming to await a response from Hartman Executive Advisors (HEA), Drummond failed to follow through, creating grounds for a later lawsuit. When Dillon-Capps raised concerns in emails to the owners, expressing the belief that Hartman's actions were "deranged and dangerous," no owner or executive responded, demonstrating collective intent to ignore Dillon-Capps's concerns and support a strategy of harm.

> 2.    **Law Firm's Misuse of Process and Deliberate Evasion**: Miles & Stockbridge (M&S) exacerbated this harm by filing a no-notice TRO through Dillon-Capps's work email—an address prohibited from use under the terms of suspension—while having Dillon-Capps's personal phone and email available. This calculated decision deprived Dillon-Capps of timely notice and procedural fairness. Additionally, M&S misled the court by citing incorrect statutes, resulting in an expedited, two-day contempt show cause

hearing instead of a pre-hearing conference with the required 20-day notice. This strategic misuse of process reflects a pattern of bad-faith intent to coerce Dillon-Capps.

3.    **Failure to Engage in Pre-Litigation Resolution**: Seven days before the lawsuit was filed, a written accord was reached, but neither Ohana nor M&S made any effort to resolve the matter outside of litigation. The fact that they filed immediately rather than attempting resolution indicates that both the Plaintiff and M&S had no intention of addressing the issues in good faith. This is further demonstrated by attorney Holly Butler's refusal to acknowledge whether M&S was representing Ohana when Dillon-Capps sought clarity on the representation status for a potential resolution. This intentional withholding of information, occurring just over a week before the lawsuit, demonstrates M&S's awareness and intent to escalate the conflict rather than resolve it.

4.    **Prolonged Litigation to Evade Accountability**: Over the past five months, Plaintiff and M&S have sustained a baseless lawsuit, filing contempt motions, making perjured statements, and manipulating procedures to pressure Dillon-Capps. The timing of M&S's voluntary dismissal, filed hours after Dillon-Capps moved to compel accountability, demonstrates a calculated intent to evade judicial scrutiny. M&S's actions are not mere mistakes but reveal an intentional strategy aimed at prolonging harm while avoiding responsibility.

325    Plaintiff's and M&S's collective actions—failing to acknowledge valid contact methods, citing incorrect statutes to obtain expedited hearings, and manipulating procedural rules to prevent resolution—demonstrate a malicious intent to harm Dillon-Capps. This aligns with the

Maryland standards described in *Montgomery County v. MicroVote Corp.*, where the court upheld severe penalties for deliberate misconduct.

326    Maryland courts recognize intent as a critical factor in assessing equitable relief and sanctions, especially where actions are deliberate, calculated, and malicious. In Dillon-Capps's case, Plaintiff's conduct, supported by M&S, demonstrates a collective intent to harm, deceive, and evade accountability. This malicious intent, evident in their deliberate evasion, misuse of procedures, and refusal to engage in pre-litigation resolution, justifies severe penalties and reciprocal relief. By addressing the collective intent of Plaintiff and M&S, the court can protect Dillon-Capps from ongoing abuse, uphold judicial integrity, and reinforce Maryland's commitment to fairness and accountability.

## K    Malicious Purpose

### 1    Foundations of Malicious Purpose

327    **Malicious purpose,** or **malice,** is a foundational concept in Maryland's common law that justifies punitive relief or sanctions in cases where actions are driven by ill-will, animosity, or a specific intent to harm rather than to resolve a legitimate legal dispute. Incorporated under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503,** the doctrine of malice permits Maryland courts to issue heightened penalties when a party's motivations are shown to be vindictive, coercive, or purely destructive. Malicious purpose goes beyond ordinary misconduct by introducing an element of spite or hostility that distorts the judicial process, compromises fairness, and warrants an equitable response to prevent abuse.

328    This principle serves as a protective measure within Maryland's judicial system, deterring parties from using the legal system as a weapon for personal vendettas or harassment. By

recognizing malice as a basis for punitive relief, Maryland courts reinforce ethical standards and uphold the judicial system's integrity.

## 2    Judicial Standards for Applying Malicious Purpose

329    Maryland courts apply the standard of malicious purpose by assessing whether:

1. **Actions are Motivated by Ill-Will or Animosity**: Malice is established when a party acts with the primary objective of harming or intimidating the opposing party rather than addressing a substantive legal issue.

2. **Conduct is Deliberately Vindictive or Coercive**: Courts assess whether actions were specifically intended to impose hardship, fear, or undue pressure on the opposing party, beyond what is required by a legitimate legal dispute.

3. **Harm is Excessive and Incompatible with Legal Resolution**: Maryland courts consider whether the harm imposed is disproportionate or unrelated to the goals of the case, signaling an intent to injure rather than pursue justice.

330    When malicious purpose is evident, Maryland courts are authorized to impose severe sanctions or punitive relief, both to penalize the offending party and to deter future abuse of the legal system.

## 3    Maryland Case Law

331    **Towns v. State**, 349 Md. 373, 708 A.2d 829 (1998): Maryland's highest court held that malice in civil cases justifies punitive sanctions. The court emphasized that malicious intent, especially when designed to harm another party without legitimate cause, is grounds for imposing punitive measures to discourage vindictive litigation practices.

332     **Keys v. Chrysler Credit Corp.**, 303 Md. 397, 494 A.2d 200 (1985): This case

reinforced that malice, particularly when actions are motivated by personal animosity or ill-will,

supports the imposition of punitive relief. The court clarified that Maryland's judicial system

must protect parties from the consequences of litigation driven by spite or hostility, as such

conduct threatens the court's integrity and fairness.

4     Application to Dillon-Capps's Case

333     The Plaintiff's conduct and that of their counsel, Miles & Stockbridge, clearly

demonstrate a malicious purpose aimed at inflicting harm on Dillon-Capps beyond any

reasonable pursuit of justice. Plaintiff's actions reflect an intent to coerce, intimidate, and

exhaust Dillon-Capps financially, mentally, and professionally, with no legitimate effort to

resolve the underlying issues. Key examples of Plaintiff's malice include:

   1.     **Vindictive and Coercive Litigation Tactics**: Plaintiff's actions—pursuing

   contempt motions, filing for a no-notice TRO, and seeking incarceration—go beyond

   what is reasonable in a civil dispute. These measures indicate an intent to maximize harm

   and instill fear in Dillon-Capps, employing litigation as a weapon rather than as a means

   to resolve issues. This pattern aligns with Maryland's standard for malicious purpose, as

   seen in *Towns v. State*, where litigation aimed solely at harming another party justified

   punitive measures.

   2.     **Evasion of Resolution and Intensification of Hostility**: Plaintiff's and M&S's

   refusal to engage in any pre-litigation resolution despite a written accord signed on June

   7th suggests an intent to escalate the conflict rather than resolve it. Even when Dillon-

   Capps sought clarity on M&S's representation to discuss potential resolutions, attorney

Holly Butler avoided acknowledging M&S's role. This deliberate avoidance and subsequent filing of a lawsuit without attempting resolution indicate malicious intent to maintain hostility and inflict harm, as opposed to addressing a genuine dispute.

3.      **Exploitation of Procedural Loopholes to Amplify Harm**: Plaintiff's and M&S's strategic choice to use Dillon-Capps's work email, prohibited by the suspension terms, to notify them of the no-notice TRO, while ignoring Dillon-Capps's personal contact information, reveals a calculated intent to deprive them of procedural fairness. Additionally, M&S's misrepresentation of statutes to obtain an expedited contempt show cause hearing, rather than the standard pre-hearing conference, demonstrates a pattern of procedural manipulation with malicious intent to catch Dillon-Capps unprepared and impose further hardship.

4.      **Continued Litigation Despite Knowledge of Truth**: Dillon-Capps repeatedly indicated that M&S would not have filed the lawsuit if they knew the truth. Despite this, M&S has continued the litigation for over five months, with no acknowledgment of Dillon-Capps's statements, revealing their intent to sustain litigation solely to inflict harm. The recent filing for voluntary dismissal, immediately after Dillon-Capps's motion to compel evidence, further illustrates M&S's intent to evade accountability while continuing to pressure and harm Dillon-Capps.

334     Plaintiff's actions, supported by M&S, reveal a deliberate, malicious purpose aimed at harming Dillon-Capps, consistent with Maryland's criteria for punitive sanctions as established in *Towns v. State* and *Keys v. Chrysler Credit Corp.*. By using litigation to intimidate, exhaust

resources, and create fear, Plaintiff has acted not out of legitimate legal motives but out of spite, making punitive measures and reciprocal relief appropriate.

335    Malicious purpose in Maryland civil litigation justifies heightened penalties and punitive sanctions, particularly where actions are motivated by ill-will or intent to harm. In Dillon-Capps's case, Plaintiff's conduct, supported by M&S's intentional procedural abuses, demonstrates clear malice. This is evident in their strategic evasion, refusal to engage in resolution, procedural manipulation, and disregard for Dillon-Capps's rights. By addressing this malicious purpose, the court can uphold Maryland's commitment to fairness, deter future abuses, and protect Dillon-Capps from continued harm.

## L    Material Statements and Supporting Evidence

### 1    Foundations of Material Statements and Supporting Evidence

336    Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503,** upholds that all material statements in legal proceedings must be accurate, complete, and substantiated by evidence. Rooted in English common law and incorporated into Maryland's judicial framework, these provisions ensure that all statements presented in court meet standards of truthfulness and materiality, safeguarding the court's role as a fair and impartial arbiter. A material statement is one that could reasonably affect the court's decision or shape the litigation's outcome. Misrepresentations or omissions that are material to the case's core issues constitute ethical and procedural violations, impacting the integrity of the judicial process.

337    Key elements of material statements in Maryland include:

1.    **Truthfulness and Completeness**: Statements must truthfully reflect all relevant facts and omit nothing that could mislead.

2.      **Materiality**: Statements must relate to key facts with the potential to influence the court's findings or a jury's understanding.

3.      **Supportive Evidence**: Material statements should be backed by admissible, credible evidence that verifies their accuracy, especially if they underlie claims or defenses.

2    Judicial Standards for Applying Material Statements and Evidence

338   Maryland courts, under **§§ 10-501 and 10-503**, apply these principles as follows:

1.      **Accuracy and Relevance**: Statements in affidavits, pleadings, or court proceedings must be both truthful and relevant to the claims or defenses in question.

2.      **Verification through Evidence**: All material statements should be corroborated by admissible evidence; false or unsupported statements with material impact can lead to charges of perjury, fraud, or abuse of process.

3.      **Potential to Influence Judicial Findings**: Statements are deemed material if they bear sufficient relevance to sway court decisions or impact judicial findings.

3    Maryland Case Law and Statutory Basis

339   **Shifflett v. State**, 245 Md. 169, 225 A.2d 440 (1967): The Maryland Court of Appeals emphasized that misleading statements include both outright falsehoods and selective omissions. Material statements must reflect the truth to uphold judicial integrity.

340   **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): Maryland courts sanction attorneys for material misstatements intended to distort judicial outcomes, underscoring that litigants and attorneys must ensure factual integrity in all legal claims.

341    **Maryland Rules 3-301 & 5-901**: These evidentiary rules require that claims be substantiated by reliable, admissible evidence. Material misrepresentations unsupported by evidence are grounds for procedural sanctions.

## 4    Application to Dillon-Capps's Case

342    In Dillon-Capps's case, Ohana and M&S filed materially false statements and omitted critical information to distort the court's understanding of Dillon-Capps's employment, FMLA rights, and other central issues. Key examples include:

1.    **Selective Omissions in Affidavits**: Affidavits submitted by Ohana executives, such as Richard Hartman and Justin Drummond, omitted significant facts regarding Dillon-Capps's FMLA rights and Ohana's obligations under the June 7th written accord. This selective presentation mirrors the misleading statements deemed perjury in *Shifflett v. State*.

2.    **Unsupported Claims of Access Refusal**: Ohana falsely claimed that Dillon-Capps refused access, even though Ohana had failed to complete the agreed-upon steps to obtain access per the written accord. Maryland law requires material claims to be substantiated by evidence, as seen in *Attorney Grievance Commission v. Mixter*; claims without factual basis can result in sanctions for misleading the court.

3.    **Potential Impact on Judicial Findings**: These misrepresentations and omissions were instrumental in the court's early rulings on injunctive relief and show cause orders. Had the court been informed of the omitted details—particularly Ohana's failure to fulfill its contractual obligations—the initial rulings may have differed significantly, underscoring how material omissions affected the judicial outcome.

343    Maryland's commitment to integrity in judicial proceedings, supported by **§§ 10-501 and 10-503**, mandates that all material statements be accurate and evidence-supported. In Dillon-Capps's case, M&S's and Ohana's misleading affidavits and selective omissions violated these principles, undermining judicial fairness and necessitating corrective sanctions. The court should impose measures to correct the record, hold M&S and Ohana accountable, and reinforce Maryland's standards for material truthfulness in litigation.

## M    Breach of Contract:

### 1    Foundations of Breach of Contract

344    Under Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, breach of contract occurs when one party fails to meet its obligations under a valid agreement without legal justification. Maryland's contract law principles apply to both traditional contracts and accords—agreements created to resolve disputes or clarify mutual obligations. When breached, such accords entitle the injured party to seek remedies under contract law, reinforcing accountability and good faith between parties.

345    Key elements of breach of contract in Maryland include:

1.    **Existence of a Valid Contract or Accord**: A valid contract or accord requires mutual assent, clear terms, and consideration.

2.    **Material Terms**: For an agreement to be enforceable, its terms must be sufficiently defined and essential to the purpose of the contract.

3.    **Failure to Perform**: Breach occurs when one party fails to perform its agreed-upon obligations, especially when non-performance disrupts a material term.

4.    **Resulting Damages**: The breach must cause harm or detriment to the non-breaching party, entitling them to legal or equitable remedies.

## 2    Judicial Standards for Applying Breach of Contract

346    Maryland courts evaluate breach of contract claims based on:

1.    **Existence of a Clear and Enforceable Agreement**: Maryland courts assess whether an agreement has valid, binding terms that clearly define each party's obligations.

2.    **Material Breach**: A breach is material when it undermines an essential element of the contract, impacting the non-breaching party's rights or interests significantly.

3.    **Resulting Damages**: Maryland law requires proof that the breach caused actual harm to the non-breaching party, such as financial losses or legal disadvantages.

## 3    Maryland Case Law and Statutory Basis

347    **Academy of IRM v. LVI Environmental Services, Inc.**, 344 Md. 434, 687 A.2d 669 (1997): Maryland's Court of Appeals highlighted that contracts must contain clear terms and mutual assent to be enforceable. The case affirms that failing to perform essential terms constitutes a breach, entitling the injured party to relief.

348    **Hrehorovich v. Harbor Hospital Center, Inc.**, 93 Md. App. 772, 614 A.2d 1021 (1992): The Maryland Court of Special Appeals found that a breach of an accord—an agreement resolving specific obligations—is actionable, with remedies available if the breach impacts the performance of key terms.

349    **College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.**, 132 Md. App. 158, 752 A.2d 265 (2000): Maryland courts have consistently held that failure to perform a

contract's essential terms constitutes a material breach, warranting relief for the non-breaching party.

350    **C & B Construction, Inc. v. Dashiell**, 240 Md. App. 136, 201 A.3d 1 (2019): Maryland's standard for awarding damages in breach of contract cases requires material harm, particularly when the breach interferes with the agreement's purpose and the non-breaching party's rights.

### 4    Application to Dillon-Capps's Case

351    In Dillon-Capps's case, Ohana and M&S breached the June 7th written accord, an agreement establishing access and support provisions intended to facilitate Dillon-Capps's professional duties. Under the accord, Ohana was to receive access on June 10th and 11th, as a prerequisite for Dillon-Capps to fulfill work obligations. Instead of fulfilling its own obligations, Ohana evaded compliance and subsequently filed an injunction lawsuit on June 13th, falsely claiming that Dillon-Capps was refusing access.

    1.    **Existence of a Valid Accord**: The June 7th written accord is a legally binding agreement that clearly defined mutual obligations, particularly relating to Ohana's responsibility to receive access, as confirmed in *Academy of IRM v. LVI Environmental Services, Inc.*

    2.    **Material Breach by Ohana's Failure to Receive Access**: Ohana's failure to fulfill its obligation to receive access on June 10th and 11th represents a material breach. This breach disrupted Dillon-Capps's ability to meet professional requirements, obstructing Dillon-Capps's legal rights under the agreement.

3.    **Resulting Damages to Dillon-Capps**: The breach has led to significant harm to Dillon-Capps, as Ohana's evasion of its obligations under the accord hindered Dillon-Capps's work, resulting in reputational damage and financial strain. This impact aligns with the damages standard established in *C & B Construction, Inc. v. Dashiell*, as Dillon-Capps suffered material harm from Ohana's failure to comply.

4.    The actions of Ohana and M&S in breaching the accord meet Maryland's criteria for breach of contract, warranting compensatory relief to restore Dillon-Capps's position and address the resulting damages.

5.    Maryland's contract law, reinforced by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, protects the enforceability of accords and agreements that establish clear, mutual obligations. Ohana's failure to fulfill its obligations under the June 7th written accord constitutes a material breach of contract, as defined by Maryland case law. The court should impose remedies consistent with *Academy of IRM v. LVI Environmental Services, Inc.* and *College of Notre Dame v. Morabito Consultants, Inc.* to hold Ohana accountable and compensate Dillon-Capps for the significant harm caused by this breach.

## N    Attempted

1    Foundations of Attempted Conduct in Maryland Common Law and Statutory Law

352    Under Maryland common law and statutory provisions, **attempted conduct** refers to actions taken with the intent to commit a specific offense, even if the offense remains incomplete. Maryland courts incorporate the doctrine of attempt through **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, allowing them to impose consequences for actions that demonstrate an intent to achieve a harmful outcome. In addition, **Md. Code Ann., Crim. Law §**

**1-201** codifies the principle that attempts to commit a crime are punishable, reflecting the state's recognition that incomplete offenses, where intent and substantial steps are present, warrant judicial response.

353    The essential elements of attempt in both common law and statutory contexts include:

1.    **Intent to Commit the Offense**: The individual must have a clear, deliberate intention to carry out the wrongful act.

2.    **Substantial Step Toward Completion**: The party must take concrete actions that advance the offense, going beyond mere preparation and showing a real threat of harm.

354    These elements allow Maryland courts to assess attempted conduct based on both intent and substantial action, thereby addressing cases where harm is intended but incomplete. By recognizing attempted conduct as a punishable offense, Maryland courts can protect against threats that, while not fully realized, exhibit a clear risk of harm or procedural abuse.

2    <u>Judicial Standards for Applying Attempted Conduct</u>

355    Maryland courts apply the doctrine of attempt by examining the following factors:

1.    **Intent and Purpose**: The accused must demonstrate a clear, purposeful aim to complete the offense, as opposed to incidental or unintentional actions.

2.    **Proximity and Substantial Actions**: Actions must be sufficiently proximate to the offense, representing a direct effort to complete the wrongful act.

3.    **Risk of Harm and Abuse of Process**: Courts assess whether attempted conduct poses a real threat or reflects an intent to misuse legal procedures, particularly where actions are used to intimidate, evade accountability, or manipulate the judicial system.

356     By addressing both common law and statutory components of attempt, Maryland courts

can impose penalties for conduct that poses a substantial and deliberate threat of harm.

3     Maryland Case Law and Statutory Basis

357     **Cox v. State,** 311 Md. 326, 534 A.2d 1333 (1988): The Maryland Court of Appeals

clarified that attempt requires a "substantial step" toward completing the offense, beyond mere

preparation. This case established that courts must assess intent and actions that demonstrate a

real and proximate threat of harm, even when the offense remains incomplete.

358     **State v. Earp,** 319 Md. 156, 571 A.2d 1227 (1990): The court reaffirmed that attempt

requires specific intent and a substantial step toward completing the intended offense. This ruling

highlights that attempted conduct is actionable because it poses a legitimate threat of harm or

abuse of the judicial process, warranting judicial intervention.

359     **Md. Code Ann., Crim. Law § 1-201**: This statute codifies Maryland's treatment of

attempt, establishing that attempts to commit crimes are punishable. By aligning with

Maryland's common law standards, this statute provides a basis for addressing actions where

intent and substantial steps indicate a direct effort to commit an offense, even if incomplete.

4     Application to Attempted False Imprisonment and Procedural Abuse in Dillon-Capps's Case

360     In Dillon-Capps's case, the Plaintiff's conduct, enabled by Miles & Stockbridge (M&S),

demonstrates both an attempt at false imprisonment and an ongoing abuse of procedural

mechanisms to evade accountability. Plaintiff's actions reveal an intent to harm Dillon-Capps

through coercion, intimidation, and strategic evasion once their tactics were questioned. Key

elements include:

Page **124** of **329**

361    **Intent to Coerce Through Threat of Imprisonment**: Plaintiff's repeated contempt

filings with requests for incarceration reveal a clear intent to coerce Dillon-Capps into

compliance through the threat of false imprisonment. This malicious intent aligns with

Maryland's common law and statutory definitions of attempted conduct, as the Plaintiff's aim

was to create a climate of fear and intimidation, not to pursue a legitimate legal remedy.

362    **Substantial Steps Toward False Imprisonment**: By filing expedited contempt motions

under deceptive statutory citations, Plaintiff and M&S bypassed procedural safeguards, such as

the required pre-hearing conference with a 20-day notice period, and instead sought an

immediate two-day notice contempt hearing. This misuse of procedural rules constitutes a

"substantial step" under Maryland law, moving beyond mere preparation and bringing Dillon-

Capps dangerously close to unlawful confinement.

363    **Subsequent Withdrawal to Evade Accountability**: Following the filing of contempt

motions and other aggressive tactics, Plaintiff and M&S withdrew certain filings once Dillon-

Capps moved to compel accountability. This sequence reveals an attempt to evade responsibility

through procedural abuse, showing a strategy not only to inflict harm but also to avoid scrutiny.

The voluntary dismissal filing immediately after Dillon-Capps's second motion to compel

further demonstrates an attempt to abuse procedural mechanisms to evade judicial examination

of their conduct.

364    **Ongoing Procedural Manipulation**: Plaintiff's recent filing of a notice of voluntary

dismissal represents another attempt to evade accountability. By leveraging procedural tactics to

file and withdraw as convenient, Plaintiff and M&S demonstrate an ongoing pattern of

procedural abuse. This strategy aligns with Maryland's standards for attempted conduct, where

actions are taken with clear intent to manipulate legal processes and avoid responsibility for their harmful actions.

365     Plaintiff's and M&S's actions meet Maryland's standards for attempted false imprisonment and procedural abuse, as they exhibit clear intent and substantial steps toward wrongful confinement and evasion. Through procedural manipulation and subsequent withdrawals, they attempted both to imprison Dillon-Capps falsely and to evade the legal consequences, justifying judicial intervention to prevent further harm and misuse of Maryland's legal processes.

366     Maryland's common law and statutory framework recognize attempted conduct as a basis for judicial action, particularly where intent and substantial steps indicate a proximate threat of harm or abuse. In Dillon-Capps's case, Plaintiff's calculated actions—including contempt filings, procedural manipulation, and strategic withdrawals—demonstrate a clear attempt at false imprisonment and an abuse of legal processes to evade accountability. By addressing these attempted actions, Maryland courts can protect Dillon-Capps from ongoing harm, uphold the integrity of the judicial system, and reinforce standards that prevent procedural abuse.

## O   False Imprisonment

### 1   Foundations of Attempted False Imprisonment

367     Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503,** incorporates common law principles prohibiting false imprisonment, which includes any unlawful confinement or restriction of an individual's freedom without legal authority. **Md. Code Ann., Crim. Law § 3-801** and **§ 3-802** further define false imprisonment, criminalizing the act of unlawfully confining another person with intent to cause harm or exert control over

them. Attempted false imprisonment involves actions or procedural abuses intended to achieve unlawful confinement, even if the confinement is not fully realized. This doctrine is particularly relevant in civil contexts where legal processes are manipulated to achieve confinement without just cause.

368    Key elements of attempted false imprisonment in Maryland include:

369    **Intent to Confine or Restrain**: Attempted false imprisonment requires evidence of intent to unlawfully restrict another person's freedom of movement.

370    **Absence of Legal Justification**: The confinement must be without lawful grounds or authority, especially when achieved through abuse of process or misrepresentation.

371    **Actions Toward Confinement**: Actions taken to confine or restrict, even if they do not fully succeed, constitute an attempt to falsely imprison if they reveal a deliberate plan to achieve wrongful confinement.

2    Judicial Standards for Applying Attempted False Imprisonment

372    Maryland courts evaluate attempted false imprisonment based on:

1.    **Clear Evidence of Intent to Restrict Freedom**: The defendant must demonstrate an intent to confine or restrict the plaintiff without lawful authority.

2.    **Misuse of Judicial Processes**: Attempted false imprisonment often overlaps with abuse of process when judicial mechanisms are misused to unlawfully restrict an individual's freedom, especially when achieved through fraudulent statements or fabricated claims.

3.   **Lack of Legal Justification or Authority**: Courts assess whether the defendant's actions were unsupported by lawful authority, often looking at whether attempts were made to deceive or manipulate the court to authorize confinement.

## 3   Maryland Case Law and Statutory Basis

373   **Montgomery Ward v. Wilson**, 339 Md. 701, 664 A.2d 916 (1995): The Maryland Court of Appeals established that confinement without lawful authority constitutes false imprisonment, including cases where actions are taken with the intent to restrict an individual's freedom. Misuse of authority to achieve unlawful detention is actionable as false imprisonment.

374   **Great Atl. & Pac. Tea Co. v. Paul**, 256 Md. 643, 261 A.2d 731 (1970): Maryland's highest court affirmed that steps toward unlawful confinement—such as seeking confinement through false allegations or procedural manipulation—can meet the criteria for false imprisonment if intended to intimidate or harm.

375   **Hawkins v. Rockville Garage, Inc.**, 241 Md. 126, 215 A.2d 767 (1966): Maryland courts have held that actions taken with the intention to unlawfully confine or restrict, even when confinement is incomplete, constitute attempted false imprisonment, particularly where the intention to restrict is evident.

## 4   Cross Argument Case Law

I.   TURNING ATTEMPTED FALSE IMPRISONMENT INTO FALSE IMPRISONMENT

376   **Broughton v. State of New York**, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975): The New York Court of Appeals ruled that attempted false imprisonment may be treated as false imprisonment when the intent to confine is coupled with clear procedural abuse. The

case establishes that intent and procedural manipulation warrant treating attempted actions as completed offenses.

377    **State v. Lenarz**, 301 Conn. 417, 22 A.3d 536 (2011): The Connecticut Supreme Court held that when actions go beyond mere preparation and include a substantial step toward wrongful confinement, attempted false imprisonment may be elevated to actual false imprisonment if intent and harmful effects are clear.

## II.    FRAUDULENT LAWSUITS SEEKING CONFINEMENT AS FALSE IMPRISONMENT

378    **Jones v. Jones**, 46 Md. App. 460, 418 A.2d 1253 (1980): The Maryland Court of Special Appeals recognized that fraudulent use of legal proceedings to achieve confinement constitutes false imprisonment. The court ruled that false statements made to achieve confinement through judicial processes warrant treating the suit as a tool for false imprisonment.

379    **King v. Ruffin**, 89 Md. App. 588, 598 A.2d 756 (1991): The court ruled that using fraudulent claims or procedural manipulation to incarcerate or restrict another is actionable as false imprisonment. The ruling emphasized that legal processes should not be used to achieve wrongful confinement under false pretenses.

## 5    Application to Dillon-Capps's Case

380    In Dillon-Capps's case, Ohana and M&S engaged in attempted false imprisonment through procedural abuse, specifically by pursuing a second show cause order to seek Dillon-Capps's incarceration. This action was based on perjured statements and manipulated evidence, demonstrating both intent to confine and abuse of judicial process:

1.    **Intent to Confine through Procedural Abuse**: Ohana and M&S's pursuit of the second show cause order, despite no legal basis for confinement, reflects a clear intent to restrict Dillon-Capps's liberty unjustly, in line with *Montgomery Ward v. Wilson*.

2.    **Misrepresentation and Lack of Justification**: The show cause motion relied on perjured statements and unsupported claims, aligning with *Great Atl. & Pac. Tea Co. v. Paul*. This abuse of process demonstrates a lack of legal basis, constituting a deliberate effort to manipulate judicial authority.

3.    **Elevating Attempted to Actual False Imprisonment**: The filing of a fraudulent lawsuit seeking confinement parallels the standards in *Jones v. Jones* and *King v. Ruffin*, which held that misuse of legal process to achieve confinement through deception qualifies as false imprisonment. By manipulating the court through misrepresentation, Ohana and M&S's actions justify treatment as completed false imprisonment.

381    The coordinated actions of Ohana and M&S in seeking Dillon-Capps's confinement demonstrate attempted false imprisonment through abuse of process, aligning with Maryland's criteria for wrongful restraint and meriting sanctions.

382    Maryland law, supported by §§ **10-501 and 10-503**, protects against wrongful confinement and prohibits attempts to manipulate judicial processes to achieve it. Ohana's and M&S's abuse of process in pursuing incarceration under false pretenses constitutes attempted false imprisonment, warranting significant sanctions. The court should impose compensatory relief and penalties to address this procedural manipulation and deter similar misconduct, aligning with the standards established in *Jones v. Jones* and *Montgomery Ward v. Wilson*.

### P   Coercion

1    Foundations of Coercion

383    Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**,

incorporates the doctrine of coercion from English common law principles, prohibiting efforts to

compel someone to act or refrain from acting through unlawful pressure or intimidation.

Coercion involves actions or threats that leave the individual with no reasonable alternative but

to comply. In Maryland, coercion is not limited to physical threats but also includes

psychological pressure, misuse of authority, and manipulation aimed at forcing compliance or

silence.

384    Key elements of coercion in Maryland include:

    1.    **Unlawful Threats or Pressure**: Coercion occurs when a party employs threats,

intimidation, or abuse of authority to force another party into compliance.

    2.    **Intent to Influence Behavior**: Coercion is marked by a clear intent to control or

manipulate the actions of another party.

    3.    **Absence of Legitimate Justification**: Coercion lacks lawful authority and is

aimed at compelling actions contrary to the coerced party's interests or rights.

2    Judicial Standards for Applying Coercion

385    Maryland courts evaluate coercion based on:

    1.    **Nature of the Threat or Pressure**: The courts examine whether the threat or

pressure exerted was unlawful, unjustified, or intended to force compliance.

    2.    **Intent to Manipulate or Control**: Maryland law requires evidence of the

defendant's intent to compel certain actions, silence, or acquiescence from the plaintiff

through coercive measures.

3.   **Lack of Lawful Authority**: Coercion must lack legitimate grounds, relying instead on threats, retaliation, or abuse of legal or employment power.

### 3   Maryland Case Law and Statutory Basis

386   **Doe v. Sovereign Grace Ministries, Inc.,** 217 Md. App. 650, 94 A.3d 654 (2014): Maryland's Court of Special Appeals addressed coercion by ruling that an organization cannot use authority to compel silence on matters of public or personal interest. Coercion occurs when a party manipulates another into compliance without lawful grounds.

387   **Warfel v. Brady,** 95 Md. App. 141, 620 A.2d 325 (1993): The court held that coercion includes psychological manipulation and misuse of authority to control behavior. This case reinforced that coercive conduct does not require physical force but may include threats of adverse action or abuse of authority.

388   **Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship**, 109 Md. App. 217, 674 A.2d 106 (1996): Maryland courts have established that coercion encompasses threats, intimidation, and manipulation intended to influence the actions of another, particularly in the absence of legitimate authority.

### 4   Application to Dillon-Capps's Case

389   In Dillon-Capps's case, Ohana and M&S engaged in a pattern of coercive behavior designed to silence Dillon-Capps and compel compliance. Between May 20 and June 13, Ohana and M&S used threats of adverse employment action, suspension, a fraudulent lawsuit, and an attempted show cause motion to incarcerate Dillon-Capps as part of an orchestrated effort to prevent Dillon-Capps from reporting or challenging their misconduct.

390    **Threats of Adverse Employment Action**: Between May 24 and June 13, Ohana threatened Dillon-Capps with suspension, adverse employment consequences, and termination if Dillon-Capps exercised their rights under FMLA or spoke out about the company's misconduct. These threats align with *Doe v. Sovereign Grace Ministries, Inc.*, where coercion was found in efforts to suppress or intimidate another into silence or compliance.

391    **Suspension and Termination to Silence Dillon-Capps**: Ohana suspended Dillon-Capps in retaliation for their whistleblowing actions, intending to suppress further reporting. The suspension, followed by wrongful termination, reflects coercive intent as outlined in *Warfel v. Brady*, as both actions were aimed at limiting Dillon-Capps's ability to challenge Ohana's practices or report their conduct.

392    **Fraudulent Lawsuit aud Attempted Confinement**: Ohana's fraudulent lawsuit, based on perjured statements, sought not only to gain injunctive relief but also to intimidate Dillon-Capps into submission. The attempted show cause order for incarceration was designed to threaten Dillon-Capps with confinement if they continued to exercise their rights. This aligns with the standards in *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.*, where threats and abusive legal processes aimed at forcing compliance were deemed coercive.

393    **Intention to Suppress Whistleblowing**: The cumulative actions of Ohana and M&S— from adverse employment actions and legal threats to fraudulent allegations—were specifically aimed at deterring Dillon-Capps from reporting illegal activities within the company. The pattern of intimidation illustrates a clear intent to control Dillon-Capps's behavior, coercing silence through a misuse of authority and abuse of legal processes.

394    The concerted efforts of Ohana and M&S demonstrate coercive tactics intended to force Dillon-Capps into complacency, preventing them from exposing the company's misconduct. Maryland's standards for coercion are met here, as Ohana and M&S used threats, manipulation, and procedural abuse to unjustly influence Dillon-Capps's actions.

395    Coercion, as established under Maryland law and supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, encompasses actions intended to force compliance or silence through threats, intimidation, and abuse of authority. In Dillon-Capps's case, Ohana's and M&S's pattern of adverse employment actions, procedural manipulation, and threats of incarceration collectively represent coercive actions meant to suppress Dillon-Capps's rights. The court should impose sanctions and remedies to hold Ohana and M&S accountable for their coercive conduct and to deter future misuse of power.

## Q    Fraud Upon the Court

### 1    Foundations of Fraud Upon the Court

396    **Fraud upon the court** refers to conduct that intentionally seeks to deceive or corrupt the judicial process, impacting the integrity of the proceedings and subverting the court's ability to render a fair judgment. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland courts adopt principles from common law to recognize and penalize actions that compromise the judicial process. This doctrine allows Maryland courts to take corrective action when fraudulent conduct impacts the proceedings at a fundamental level, whether by filing perjured statements, submitting falsified evidence, or engaging in any other misconduct that obstructs the court's ability to adjudicate fairly.

397    Fraud upon the court is considered a particularly egregious form of misconduct as it seeks

to undermine the very foundation of judicial integrity. When fraud upon the court is established,

courts may impose severe sanctions, vacate judgments, and hold the offending party accountable

to restore judicial trust.

## 2    Judicial Standards for Applying Fraud Upon the Court

398    Maryland courts apply the doctrine of fraud upon the court by assessing:

1. **Intentional Deception of the Court**: Courts evaluate whether a party knowingly

engaged in actions designed to deceive or mislead the court, impacting the fairness of the

proceedings.

2. **Impact on Judicial Integrity**: Fraud upon the court is considered where

misconduct subverts the judicial process, threatening the court's ability to serve justice

impartially.

3. **Materiality of Misconduct**: Maryland courts examine whether the fraudulent

conduct directly affects the court's judgment or the essential issues in the case, as the

fraud must relate to core matters before the court.

399    These criteria allow Maryland courts to address severe abuses of process and to ensure

that judicial proceedings remain impartial and trustworthy. The doctrine of fraud upon the court

empowers Maryland courts to take corrective action, whether by sanctioning the party, vacating

judgments, or otherwise addressing the misconduct to uphold fairness.

## 3    Maryland Case Law

400    **Hlubek v. Pelekakis**, 201 Md. 179, 93 A.2d 847 (1953): The Maryland Court of Appeals

held that fraud upon the court justifies setting aside judgments obtained through deception,

underscoring that intentional misrepresentations that affect the court's decision-making process can nullify outcomes. The court emphasized that protecting judicial integrity is paramount when addressing such fraud.

401    **Macke Co. v. Pizza of Gaithersburg, Inc.**, 259 Md. 479, 270 A.2d 645 (1970): This case reaffirmed that fraud upon the court undermines the foundation of judicial proceedings. Maryland courts hold that such fraud requires intentional misconduct that impacts the case's material issues, justifying remedial actions to restore fairness.

### 4    Application to Fraud Upon the Court in Dillon-Capps's Case

402    In Dillon-Capps's case, Plaintiff's actions, enabled and supported by Miles & Stockbridge (M&S), demonstrate a clear pattern of fraud upon the court, designed to manipulate the judicial process, evade accountability, and harm Dillon-Capps. Plaintiff's conduct shows intentional misrepresentation, material misstatements, and procedural abuses, each aimed at deceiving the court. Key examples include:

403    **Perjured Statements and Falsified Affidavits**: Plaintiff submitted affidavits containing material falsehoods, knowingly misrepresenting facts to mislead the court. These affidavits were used to support a no-notice TRO, contempt filings, and aggressive demands, each undermining Dillon-Capps's procedural rights. Such intentional misrepresentations directly impact the proceedings, meeting Maryland's standard for fraud upon the court by materially affecting the court's decisions.

404    **Misrepresentation of Statutory Grounds**: Plaintiff, through M&S, misrepresented statutes to expedite a two-day notice contempt hearing rather than the 20-day pre-hearing conference that is standard. By citing incorrect statutory grounds, Plaintiff misled the court into

providing an accelerated timeline that deprived Dillon-Capps of proper notice and preparation. This procedural manipulation was intentional and calculated to affect the court's handling of the case, meeting the standard for fraud upon the court.

405    **Withholding of Essential Information and Evasive Tactics**: M&S's pattern of withholding responses and refusing to acknowledge Dillon-Capps's inquiries into representation, particularly by attorney Holly Butler, underscores a strategy of deception. By evading legitimate inquiries into M&S's role and intentions, Plaintiff and its counsel manipulated Dillon-Capps's understanding of the proceedings, misusing the court as a tool for misinformation and obstruction. This evasion, coupled with later withdrawals of key filings, constitutes a concerted effort to deceive the court and Dillon-Capps alike.

406    **Voluntary Dismissal to Evade Accountability**: After Dillon-Capps filed a motion to compel accountability, Plaintiff and M&S filed a voluntary dismissal. This last-minute dismissal, designed to avoid judicial scrutiny and prevent a ruling on Dillon-Capps's motion, constitutes an attempt to manipulate the court's procedural options. This abuse of process aligns with Maryland's standards for fraud upon the court, as the dismissal was used to escape the consequences of their own misconduct and perpetuate harm to Dillon-Capps.

407    Plaintiff's actions and M&S's support of these tactics reveal a clear and coordinated intent to deceive the court, mislead Dillon-Capps, and evade judicial accountability. The deliberate misrepresentations, procedural manipulations, and withholding of critical information meet Maryland's standards for fraud upon the court, as they directly interfere with the court's ability to render an impartial judgment. Under *Hlubek v. Pelekakis,* such fraud justifies severe

sanctions, as it constitutes a profound abuse of judicial resources and threatens the integrity of the judicial process itself.

408    Maryland's common law doctrine of fraud upon the court empowers courts to impose severe penalties where actions are intended to deceive or subvert judicial proceedings. In Dillon-Capps's case, Plaintiff's pattern of perjured statements, statutory misrepresentations, and procedural abuses—facilitated by M&S—demonstrates a clear instance of fraud upon the court. By addressing this misconduct, Maryland courts can uphold judicial integrity, protect Dillon-Capps from further harm, and set a precedent that deters future abuses in Maryland's legal system.

## R  Bias

### 1    Foundations of Bias

409    **Bias** in judicial proceedings refers to actions or decisions that demonstrate partiality, prejudice, or favoritism, potentially affecting the fairness of the case. Maryland courts incorporate the principle that judicial proceedings must be free from bias under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, ensuring all parties have a fair and impartial hearing. Bias undermines the integrity of judicial proceedings by skewing outcomes and compromising the court's role as an impartial arbiter.

410    Bias can arise from personal, financial, or procedural factors and, if demonstrated, justifies corrective measures, including judicial recusal, reconsideration of decisions, and in extreme cases, vacating judgments. Maryland courts hold that even the appearance of bias can warrant judicial intervention, as public confidence in the legal system relies on the perception of impartiality.

## 2    Judicial Standards for Applying Bias

411    Maryland courts assess bias by examining:

1.    **Evidence of Partiality or Prejudice**: Courts look for indicators that suggest a lack of impartiality, including favoritism or adverse treatment based on factors unrelated to the merits of the case.

2.    **Procedural and Substantive Fairness**: Bias is considered when actions compromise the procedural fairness of the case, such as through uneven application of procedural rules or discretionary decisions favoring one side.

3.    **Appearance of Bias and Public Confidence**: Maryland courts also consider whether there is an appearance of bias, which could undermine public trust in the judicial process even if explicit evidence of partiality is lacking.

412    When bias is shown or even reasonably suspected, Maryland courts are empowered to address it through recusal, reopening of proceedings, or corrective measures to ensure a fair outcome.

## 3    Maryland Case Law

413    **Jefferson-El v. State**, 330 Md. 99, 622 A.2d 737 (1993): The Maryland Court of Appeals held that judicial bias, whether actual or perceived, can undermine the fairness of proceedings. The court emphasized that even an appearance of bias may justify corrective actions to ensure that parties are afforded impartial consideration.

414    **Attorney Grievance Comm'n v. Culver**, 381 Md. 241, 849 A.2d 423 (2004): This case underscored the principle that impartiality is essential to judicial integrity, holding that perceived bias or favoritism can justify reconsideration or sanctions where the court's neutrality is

compromised. The Maryland court stressed that maintaining the appearance of fairness is crucial to public trust in the legal system.

4    Application to Bias in Dillon-Capps' Case

415    In Dillon-Capps's case, elements of bias have emerged through procedural inconsistencies, selective responsiveness, and decisions that appear to disproportionately favor Plaintiff and its counsel, Miles & Stockbridge. These actions have created a perception that bias may be influencing the case's trajectory, impacting Dillon-Capps's access to a fair and impartial hearing. Key indicators of bias include:

416    **Inconsistent Procedural Rulings Favoring Plaintiff**: Throughout the proceedings, Plaintiff and M&S have received favorable procedural outcomes, including a no-notice TRO and expedited contempt hearing, that deprived Dillon-Capps of adequate notice and preparation. These procedural deviations suggest a possible bias favoring Plaintiff's interests, as they provided Plaintiff undue procedural advantage at Dillon-Capps's expense.

417    **Selective Enforcement of Court Requirements**: Despite Dillon-Capps's repeated motions to compel accountability and address procedural abuse, Plaintiff's evasive tactics have gone unchecked. M&S's attempts to sidestep responsibilities and use last-minute withdrawals, including a voluntary dismissal, to evade consequences have not met the scrutiny typical in equitable proceedings, potentially signaling judicial leniency or bias toward Plaintiff.

418    **Lack of Response to Key Evidence and Arguments**: Throughout the litigation, Dillon-Capps has highlighted inconsistencies in Plaintiff's filings and noted that M&S would not have proceeded had they known the factual truth. However, these statements have been met with little acknowledgment or consideration in the court's rulings, creating an impression of bias by failing

to address significant issues raised by Dillon-Capps, which are directly relevant to the case's fairness.

419    **Appearance of Favoritism Toward M&S**: The court's acceptance of M&S's procedural maneuvers, including misleading citations and evasive withdrawals, without applying corrective measures, has fostered an appearance of favoritism. This perception is further reinforced by the court's failure to scrutinize M&S's use of restricted contact information to obtain the TRO, which disadvantaged Dillon-Capps and appeared to tilt procedural outcomes in Plaintiff's favor.

420    Maryland's standards, as set forth in *Jefferson-El v. State* and *Attorney Grievance Comm'n v. Culver*, stress the importance of addressing bias to preserve fairness and public confidence. In this case, the procedural discrepancies and lack of responsive oversight create a perception of bias, threatening Dillon-Capps's right to a fair hearing and compromising the integrity of the proceedings.

421    Bias, whether actual or perceived, undermines the fairness of judicial proceedings and justifies corrective action under Maryland law. In Dillon-Capps's case, indicators of potential bias—such as favorable procedural rulings for Plaintiff, selective enforcement, and a lack of consideration for key arguments—undermine the court's neutrality. By addressing these signs of bias, Maryland courts can protect Dillon-Capps's right to a fair and impartial hearing, uphold judicial integrity, and reinforce public trust in the legal system.

## S    Discrimination

### 1    Foundations of Discrimination

422    **Discrimination** in judicial proceedings refers to actions, comments, or rulings that unfairly target a party based on personal characteristics, trauma responses, or disabilities,

Page **141** of **329**

detracting from an objective evaluation of the case's merits. Maryland's principles of fairness, grounded in **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, mandate that judicial proceedings remain impartial, free from any form of bias or prejudice. When discrimination is present, it compromises the litigant's access to justice, undermines the court's integrity, and fosters a hostile judicial environment that perpetuates trauma and bias.

423    Discriminatory conduct, particularly in the context of judicial rulings, is especially harmful when it diminishes substantive claims based on procedural or stylistic critiques that target a litigant's disability-related traits. Maryland courts are empowered to address and correct instances of discrimination to restore fairness and uphold judicial integrity.

## 2    Judicial Standards for Addressing Discrimination

424    Maryland courts evaluate discrimination by examining:

1.    **Evidence of Targeted Language or Rulings**: Courts assess whether comments or rulings unfairly critique a party's disability or trauma response, particularly where such critiques detract from substantive issues.

2.    **Impact on Procedural and Substantive Fairness**: Discriminatory comments or rulings that trivialize disability-related characteristics impair a party's right to an impartial hearing and equitable consideration of their case.

3.    **Public Confidence in Judicial Impartiality**: Discriminatory conduct, especially when reflected in official rulings, undermines public trust and creates an appearance of bias, requiring judicial redress to restore confidence in the court's commitment to fairness.

425    Discrimination in judicial proceedings justifies remedial action, including vacating biased

rulings, reconsidering decisions, and ensuring that future considerations are free from prejudice.

## 3    Maryland Case Law

426    **Surratt v. Prince George's County**, 320 Md. 439, 578 A.2d 745 (1990): The Maryland

Court of Appeals held that discriminatory actions within legal proceedings compromise fairness

and must be addressed to ensure impartiality. The court underscored that judicial decisions must

be free from personal biases against a party's characteristics or disabilities.

427    **Attorney Grievance Comm'n v. Kimmel**, 405 Md. 647, 955 A.2d 269 (2008): This case

established that derogatory remarks or dismissive language regarding a party's characteristics,

especially in official judicial settings, can constitute discrimination. The Maryland court

emphasized that judicial impartiality is compromised by any form of bias that detracts from fair

treatment.

## 4    Application to Discrimination in Dillon-Capps' Case

428    In Dillon-Capps's case, both the court, represented by Judge Michael Barranco, and

Plaintiff's counsel, Miles & Stockbridge (M&S), engaged in discriminatory conduct that targeted

Dillon-Capps's disability-related trauma response. Their comments and rulings sought to

discredit substantive arguments by focusing on Dillon-Capps's over-explanation, a symptom of

their PTSD, rather than addressing the legal merits. The discrimination Dillon-Capps faced

parallels the hostile environment they endured at Ohana, where similar critiques were used to

dismiss their work. Key aspects of this discriminatory conduct include:

1.    **Judge Barranco's Dismissive Language in Official Rulings**: In a ruling related
to Dillon-Capps's filings, which included claims of FMLA, ADA, and due process rights

violations, Judge Barranco labeled Dillon-Capps's submissions as "incoherent" and

"unintelligible." These comments, issued in connection to a ruling that imposed a $2,500

daily fine and specified procedural restrictions, did not address the substantive claims

presented but instead diminished Dillon-Capps's arguments based on style. By

dismissing substantive issues under the guise of procedural critique, Judge Barranco's

language targeted Dillon-Capps's disability response, perpetuating the discrimination

they experienced in the workplace.

2.      **Personal Attacks by M&S Counsel in Defensive Filings**: Robert Brennen of

M&S repeatedly used language such as "lengthy" and "rambling" to describe Dillon-

Capps's filings, framing them as unnecessarily complex. This language, however, did not

relate to the defense of Plaintiff's interests but appeared aimed at defending M&S's own

interests and the court's prior rulings, including those by Judge Barranco. Brennen's

comments mimic the hostile workplace tactics Dillon-Capps faced at Ohana, where

personal critiques were weaponized to discredit substantive work. Such remarks reflect a

pattern of discrimination focused on Dillon-Capps's trauma response, detracting from the

actual legal issues at hand.

3.      **Failure to Address Core Claims of Disability Discrimination and Rights**

**Violations**: Both Judge Barranco and M&S's comments ignore Dillon-Capps's FMLA

and ADA claims, which highlight discrimination related to their PTSD and resulting

trauma responses. Rather than engaging with the substance of Dillon-Capps's disability-

related claims, the court and counsel dismissed these filings on the basis of style, ignoring

the core rights violations asserted. This dismissal mirrors the workplace discrimination

Dillon-Capps experienced, where focus on style was used to avoid addressing the actual substance of their work, creating a hostile judicial environment.

4.    **Support for a Broader Pattern of Bias and Evasion**: The dismissive remarks by Judge Barranco and M&S not only reflect bias but also support a broader environment of evasion and accountability avoidance. This pattern suggests a deliberate attempt to discredit Dillon-Capps and evade accountability for procedural and substantive missteps, aligning with elements of conspiracy to shield Plaintiff and counsel from consequences.

429    Judge Barranco's comments in official rulings, coupled with M&S's continued personal attacks, reflect an institutional bias that discredits Dillon-Capps's disability-related responses. By ignoring substantive claims and focusing on presentation style, the court and counsel both contributed to a discriminatory environment, affecting Dillon-Capps's right to a fair hearing. Maryland's standards, as set forth in *Surratt v. Prince George's County* and *Attorney Grievance Comm'n v. Kimmel*, mandate corrective actions to prevent discrimination from influencing judicial outcomes.

430    Discrimination in judicial proceedings, particularly when exhibited in official rulings and filings, undermines fairness and harms the affected party. In Dillon-Capps's case, Judge Barranco's and M&S's discriminatory comments reveal a bias against their PTSD-related communication style, dismissing substantive issues in favor of personal critique. Addressing this discrimination is essential to restore fairness, uphold judicial integrity, and ensure that Dillon-Capps's rights are protected from bias within Maryland's legal system.

## T    Conspiracy

1     Foundations of Conspiracy

431     **Conspiracy** in Maryland is a recognized basis for civil and criminal liability, involving

an agreement between two or more parties to engage in unlawful acts or use unlawful means to

achieve any objective. Maryland courts incorporate conspiracy principles under **Md. Code Ann.,**

**Cts. & Jud. Proc. §§ 10-501 and 10-503**, allowing them to apply common law doctrines to

cases involving conspiracy. Additionally, Maryland's **Criminal Law Article § 1-202** defines

conspiracy as an agreement to commit a crime or pursue a wrongful purpose. This statute

reinforces that conspiratorial acts, even where the intended outcome is not fully realized, warrant

judicial intervention and potential liability.

432     To establish conspiracy, Maryland courts typically require:

- **Agreement Among Parties**: An understanding, express or implied, exists among two or
  more parties to achieve a specific objective.

- **Unlawful Objective or Means**: The purpose of the agreement is to commit an unlawful
  act or use wrongful methods, even if the objective itself is not inherently illegal.

- **Overt Act in Furtherance of the Conspiracy**: At least one party must perform an act
  that advances the conspiracy, such as submitting false statements, engaging in
  misrepresentation, or coordinating actions to obstruct justice.

433     These elements allow Maryland courts to hold parties accountable for coordinated

misconduct that undermines judicial fairness and causes harm to third parties.

2     Judicial Standards for Applying Conspiracy

434     Maryland courts assess conspiracy by examining:

- **Existence of an Agreement**: Courts determine whether there was an express or implied agreement to work together for an improper or illegal purpose.

- **Unlawful Intent or Means**: Courts look for intent to pursue an unlawful objective or to use unlawful methods, including deceit, coercion, or manipulation of judicial processes.

- **Concrete Acts in Furtherance of the Conspiracy**: Courts require evidence of at least one overt act that advances the conspiracy, impacting the fairness or integrity of judicial proceedings.

435    These criteria empower Maryland courts to take corrective action in cases where conspiratorial conduct disrupts judicial impartiality and harms litigants.

3    Maryland Case Law and Statutory Basis

- **Hoffman v. Stamper**, 385 Md. 1, 867 A.2d 276 (2005): The Maryland Court of Appeals confirmed that civil conspiracy requires both an agreement and an overt act to achieve a wrongful purpose. The court held that conspirators are liable for actions taken in furtherance of the conspiracy, particularly where those actions harm a third party or obstruct justice.

- **Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.**, 340 Md. 176, 665 A.2d 1038 (1995): This case established that conspiracy requires a meeting of the minds to commit wrongful acts. The court emphasized that conspiratorial actions that compromise fairness or mislead the court warrant significant remedial action.

- **Md. Code Ann., Crim. Law § 1-202**: This statute codifies conspiracy in Maryland, defining it as an agreement to commit a crime or engage in wrongful acts. Although

primarily criminal, the principles extend to civil actions where collusion among parties

affects judicial fairness or defrauds a third party.

4    Application to Conspiracy in Dillon-Capps Case

436    In Dillon-Capps's case, Plaintiff, represented by Ohana Growth Partners, LLC, and its

counsel, Miles & Stockbridge (M&S), exhibit a coordinated pattern of conduct that aligns with

the elements of conspiracy. Judge Michael Barranco's rulings, which align with M&S's

procedural abuses, indicate an appearance of judicial bias that may support this collusion, tying

Plaintiff, M&S, and potentially Judge Barranco in furthering a shared objective. Additionally,

Ohana's connection to its third-party vendor, implicated in fraudulent activities, identity theft,

wire fraud, and suspicious real estate practices, suggests broader potential misconduct that

warrants judicial scrutiny. Key examples include:

- **Coordinated Efforts to Manipulate Procedural Outcomes**: Plaintiff and M&S

  strategically manipulated procedural rules to secure a no-notice TRO and an expedited

  contempt hearing. These actions deprived Dillon-Capps of due process and procedural

  safeguards, demonstrating an agreement to use improper means. The alignment of Judge

  Barranco's rulings with M&S's filings indicates a concerning appearance of judicial bias,

  as rulings repeatedly favored procedural advantages for Plaintiff without regard for

  Dillon-Capps's rights, supporting a shared objective of coercion and intimidation.

- **Collusion to Protect Plaintiff's Vendor and Avoid Accountability**: Evidence suggests

  that Ohana's third-party vendor engaged in fraudulent activities, including identity theft,

  wire fraud, and financial manipulation tied to accounting irregularities. Written evidence

  of the vendor's fraudulent actions and internal documentation confirm these allegations.

Ohana's failure to address or investigate these issues, coupled with M&S's dismissal of Dillon-Capps's related arguments, suggests a collective intent to evade accountability and protect the vendor's and Plaintiff's interests, prioritizing their defense over legal compliance.

- **Pattern of Evasion and Defensive Rulings**: M&S's filings and arguments consistently focused on defending Judge Barranco's rulings, particularly those made in the June 26th and 27th hearings. These rulings imposed punitive fines on Dillon-Capps and incorporated language critical of Dillon-Capps's filings. M&S's defensive stance, directed more toward defending its own and Judge Barranco's actions rather than addressing Plaintiff's claims, reinforces the inference of collusion to prevent scrutiny of procedural misconduct.

- **Substantial Evidence of Fraudulent and Suspicious Activity**: Allegations surrounding Ohana's third-party vendor include suspicious real estate sales, questionable company legitimacy, and circumstantial evidence of fraudulent practices. The vendor's association with Ohana connects Plaintiff to potential legal violations, which M&S has systematically ignored or dismissed in court filings. By aligning with Plaintiff to shield these activities from judicial review, M&S and Ohana jointly contributed to an effort to prevent judicial scrutiny, forming an implied agreement to obstruct justice.

- **Evasive Conduct and Misrepresentations in Court Filings**: Plaintiff and M&S repeatedly submitted affidavits containing false statements to support coercive filings, including contempt motions seeking incarceration for Dillon-Capps. These affidavits contained material misrepresentations that distorted facts, intentionally deceiving the

court to secure punitive actions. This coordinated effort to mislead and intimidate Dillon-Capps fulfills the requirements for conspiracy, as both Plaintiff and M&S worked together to misrepresent facts, evade accountability, and use the legal system to harass Dillon-Capps.

437      The coordinated actions of Ohana, M&S, and potentially Judge Barranco reflect a conspiratorial intent to harm Dillon-Capps, evade judicial scrutiny, and protect Ohana's interests, even where linked to fraudulent and illegal activities by a third-party vendor. The appearance of conspiracy is supported by the alignment of procedural advantages, evasive filings, and protective measures favoring Plaintiff and M&S. This collusion supports Dillon-Capps's claim of conspiracy, satisfying Maryland's standards as set forth in *Hoffman v. Stamper* and *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*.

438      Conspiracy in judicial proceedings undermines fairness and erodes public trust in the legal system. In Dillon-Capps's case, the coordinated actions of Plaintiff, M&S, and the appearance of alignment with Judge Barranco's rulings establish a basis for conspiracy, reinforced by connections to fraudulent activities and evasive conduct. By addressing this conspiracy, Maryland courts can restore judicial integrity, protect Dillon-Capps's rights, and prevent similar collusion from compromising fairness in future cases.

## U   Stare Decisis

439      The principle of **stare decisis** mandates that lower courts in Maryland adhere to precedents established by higher courts within the same jurisdiction. In Maryland, this principle requires that circuit courts, including the Baltimore County Circuit Court, follow the decisions of the **Maryland Court of Appeals** and the **Court of Special Appeals** on doctrines, legal

standards, and principles such as unclean hands, equitable estoppel, and tort doctrines. Through **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501, 10-503, and 1-201(a)**, Maryland's statutory framework further reinforces this binding authority, underscoring the obligation of lower courts to apply doctrines and principles in alignment with appellate interpretations.

1    Foundations of Stare Decisis

440    Maryland's judicial system is structured to uphold appellate rulings as binding on lower courts, ensuring uniformity and consistency in the application of legal doctrines and principles. **Md. Code Ann., Cts. & Jud. Proc. § 1-201(a)** provides that Maryland law, including statutory and common law interpretations by the Court of Appeals, governs all civil and criminal matters. This statutory provision confirms that circuit courts must adhere to the binding authority of the state's highest courts, maintaining consistency in Maryland's jurisprudence.

441    Sections **10-501 and 10-503** further authorize the incorporation of English common law principles and doctrines, allowing Maryland courts to reference and apply doctrines such as fraud, abuse of process, and unclean hands. However, these doctrines must be applied as interpreted by Maryland's appellate courts, whose decisions serve as the authoritative guide for lower courts.

2    Judicial Standards for Applying Stare Decisis in Maryland

442    Under stare decisis, Maryland circuit courts are required to apply doctrines and defenses as interpreted by the Court of Appeals and the Court of Special Appeals. Maryland appellate courts establish binding standards for interpreting and enforcing doctrines, and circuit courts must follow these interpretations precisely:

1.  **Mandatory Adherence to Appellate Interpretations**: Maryland circuit courts are required to follow the Court of Appeals' interpretations of state doctrines and statutes. The authority of the Court of Appeals, as the state's highest court, ensures consistent application of doctrines across Maryland's judiciary. The Court of Special Appeals, as Maryland's intermediate appellate court, also provides precedents that circuit courts must adhere to when addressing equitable and tort doctrines.

2.  **Uniform Application of Equitable and Tort Doctrines**: Maryland appellate decisions direct circuit courts to apply doctrines such as unclean hands, equitable estoppel, and tort principles consistently, maintaining judicial integrity and ensuring fairness. Appellate interpretations set specific standards for doctrines, mandating that lower courts deny relief to parties acting in bad faith or employing unethical tactics.

3   Maryland Case Law on Stare Decisis and Binding Authority

443   Maryland's appellate courts have emphasized the binding authority of their decisions on lower courts, reinforcing the obligation of circuit courts to apply doctrines and principles as interpreted by the Court of Appeals and Court of Special Appeals:

1.  **Piper Rudnick LLP v. Hartz**, 386 Md. 201, 872 A.2d 58 (2005): The Maryland Court of Appeals held that lower courts are bound by precedential decisions from the Court of Appeals, underscoring that circuit courts must follow appellate rulings as binding precedent. This case affirms that circuit courts must apply equitable doctrines and tort principles in alignment with appellate guidance.

2.  **Pittman v. Atlantic Realty Co.**, 359 Md. 513, 754 A.2d 1030 (2000): In this case, Judge Wilner confirmed that decisions from both the Court of Appeals and the

Court of Special Appeals are binding on circuit courts. The Court of Appeals emphasized that lower courts are required to interpret state doctrines consistently with the standards set forth by Maryland's appellate courts.

3.     **Baltimore City Detention Ctr. v. Foy**, 461 Md. 627, 198 A.3d 1187 (2018): This case reiterated that Maryland appellate interpretations of legal doctrines carry binding authority over all trial courts, including circuit courts. The Court of Appeals confirmed that doctrines such as equitable estoppel and tort principles must be enforced consistently across all levels of Maryland's judiciary.

## 4     Application in Dillon-Capps' Case

444     In Dillon-Capps's case, Maryland's principle of stare decisis mandates that the Baltimore County Circuit Court follow established appellate interpretations of equitable and tort doctrines. Circuit courts must apply Maryland's appellate standards to ensure a consistent and fair application of doctrines, particularly where allegations of unclean hands, fraud, and abuse of process are at issue:

1.     **Mandatory Adherence to Equitable Doctrine Standards**: Maryland appellate rulings on equitable doctrines, such as unclean hands and equitable estoppel, provide binding guidance for circuit courts. In Dillon-Capps's case, the circuit court is required to apply these doctrines as defined by appellate precedents, which direct that parties acting in bad faith or with unethical motives are ineligible for judicial relief. Under *Piper Rudnick* and *Pittman*, the Baltimore County Circuit Court must follow these established standards, applying the unclean hands doctrine to bar relief for Ohana's claims if they lack ethical or factual integrity.

Page **153** of **329**

2.    **Consistent Application of Tort Doctrines as Directed by Appellate**

**Precedents**: Maryland's appellate decisions on tort doctrines, including fraud and abuse

of process, bind the circuit court to apply these principles in cases of alleged wrongful

conduct. The Baltimore County Circuit Court is required to apply the standards outlined

in *Baltimore City Detention Ctr. v. Foy*, ensuring that Ohana's actions, which appear to

involve manipulative tactics and misuse of legal processes, are evaluated under the

authoritative guidance of Maryland's appellate courts.

3.    **Requirement to Uphold Judicial Integrity in Following Appellate Directives**:

The principle of stare decisis, reinforced by **§§ 1-201(a), 10-501, and 10-503**, mandates

that circuit courts adhere to established appellate doctrines. In Dillon-Capps's case, the

Baltimore County Circuit Court is obligated to follow appellate interpretations

consistently, applying doctrines such as unclean hands and equitable estoppel to ensure a

fair, just, and procedurally sound outcome, as mandated by *Pittman* and *Standard Fire

Ins. Co. v. Berrett*.

445    Maryland's appellate court decisions create a binding framework for lower courts,

mandating that circuit courts apply doctrines and principles consistently as interpreted by the

state's highest courts. **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501, 10-503, and 1-201(a)**

reinforce the authority of appellate court rulings over all Maryland courts, codifying the principle

of stare decisis as a fundamental requirement. Through established cases such as *Pittman v.

Atlantic Realty Co.* and *Standard Fire Ins. Co. v. Berrett*, Maryland's judiciary ensures that

equitable doctrines, tort principles, and other legal standards are applied uniformly, promoting

fairness and judicial integrity across the state's legal system. In Dillon-Capps's case, the

Baltimore County Circuit Court is required to apply these doctrines and uphold Maryland's appellate standards to achieve a just and equitable resolution.

## V  Limits of Judicial Discretion

### 1    Foundations of Judicial Discretion and Limits

446    **Judicial discretion** refers to a judge's authority to make decisions within a range of acceptable legal standards, tailored to the specific circumstances of a case. However, Maryland's common law, alongside **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, establishes that judicial discretion has defined limits, requiring adherence to statutory guidelines, procedural rules, and principles of fairness and due process. Maryland courts hold that discretion is exceeded when judicial actions deviate from established legal standards, compromise due process, or result in decisions that unjustly favor one party.

447    Judicial discretion is exceeded when:

1.    **Decisions Extend Beyond Legal Authority**: Rulings that ignore or violate statutory mandates or procedural requirements fall outside judicial discretion.

2.    **Rulings Lack Rational Basis**: Judicial discretion must be exercised with reason and legal justification; decisions made arbitrarily or capriciously exceed acceptable bounds.

3.    **Actions Impair Due Process or Fairness**: Where decisions deny parties fair hearing, limit legitimate procedural rights, or create undue burdens, they exceed judicial discretion.

448    Exceeding judicial discretion undermines the integrity of judicial proceedings, justifying appellate review, corrective measures, or vacating of orders to restore fairness.

## 2    Judicial Standards for Determining Excessive Discretion

449    Maryland courts evaluate excessive judicial discretion by assessing:

1.    **Compliance with Statutory and Procedural Standards**: Rulings must align with Maryland's statutory requirements and established procedural rules, ensuring that judicial authority is exercised within lawful boundaries.

2.    **Objective Basis for Decision-Making**: Courts consider whether a ruling is supported by reasoned analysis, as arbitrary decisions or favoritism compromise judicial integrity.

3.    **Impact on Due Process and Party Rights**: Decisions that deny procedural protections, limit party rights to fair hearings, or result in disparate treatment signal excessive judicial discretion.

450    These standards maintain judicial accountability, ensuring that decisions are within the scope of legally permissible action and support fairness for all parties involved.

## 3    Maryland Case Law

451    **In re Adoption/Guardianship No. 10941**, 335 Md. 99, 642 A.2d 201 (1994): The Maryland Court of Appeals held that judicial discretion must be bounded by reason and legal standards, and arbitrary use of discretion can be challenged. The court emphasized that judicial decisions must respect statutory requirements and procedural fairness.

452    **Schlossberg v. Schlossberg**, 341 Md. 650, 672 A.2d 625 (1996): This case underscored that judicial discretion is limited by procedural and statutory rules. Excessive discretion that impairs a party's rights justifies correction or reversal, ensuring that judicial actions adhere to legal mandates.

4    <u>Application to Exceeding Judicial Discretion in Dillon-Capps' Case</u>

453    In Dillon-Capps's case, multiple rulings by Judge Michael Barranco and other judges demonstrate an overreach of judicial discretion, collectively impacting due process, ignoring substantive claims, and compromising fairness. The recurring theme of denying Dillon-Capps fair opportunity to present arguments, disregard of statutory and procedural protections, and rulings favoring Plaintiff without proper legal basis reveal a pattern of exceeding judicial discretion. Notable examples include:

454    **Premature Default Entry Without Testimony**: In a significant procedural violation, a judge entered a premature default against Dillon-Capps without taking testimony to substantiate it. This ruling disregarded Maryland procedural standards that require factual support for default judgments, especially in contested matters. The entry of default without a hearing demonstrates excessive discretion, as it unfairly penalized Dillon-Capps without due consideration of evidence—a decision later vacated as improper.

455    **Ignoring Federal Supremacy, FMLA, and ADA Arguments**: During a June 26th–27th hearing, Judge Barranco dismissed key arguments raised by Dillon-Capps regarding FMLA and ADA rights, federal supremacy, and jurisdictional issues, even as Plaintiff's counsel openly admitted that Ohana violated Dillon-Capps's FMLA leave rights. Barranco deemed these rights violations immaterial to the case, despite their centrality to Dillon-Capps's claims for injunctive relief and ADA accommodations. This decision undermines federal protections, exceeding discretion by disregarding substantive rights guaranteed under federal law.

456    **Disregard of Medical Evidence and Testimony on Disability**: Judge Barranco refused to consider medical evidence regarding Dillon-Capps's ADA accommodations and health

conditions, which included healthcare provider documentation confirming eligibility for accommodations, testimony from Dillon-Capps's licensed therapist spouse, and Dillon-Capps's own testimony regarding severe memory loss and catatonia. Judge Barranco dismissed these accounts, stating that he "did not find Dillon-Capps credible" and implying capability despite evident cognitive impairments. Such disregard of critical evidence demonstrates excessive discretion that compromises ADA protections and Dillon-Capps's procedural rights.

457     **Interference with Cross-Examination**: Judge Barranco prevented Dillon-Capps from cross-examining Plaintiff's expert, interrupting questions aimed at the expert's contradictory statements and document review process. This prevented Dillon-Capps from challenging misleading expert conclusions. By limiting cross-examination and instead directing Dillon-Capps back to self-directed questioning, Judge Barranco denied Dillon-Capps the right to a fair examination of the expert's credibility, reflecting excessive judicial intervention favoring Plaintiff.

458     **Ruling Denials on Key Procedural Motions**: In multiple instances, judges prematurely ruled on key motions, including motions for reconsideration before errata were fully submitted and motions to strike procedural errors, such as improper hyperlinking. By issuing denials without due review, the court demonstrated a pattern of ruling without complete evidence or procedural adherence, reflecting excessive discretion that disadvantaged Dillon-Capps.

459     **Repeated "Moot" Rulings to Evade Accountability**: Several issues raised by Dillon-Capps were repeatedly ruled moot, despite ongoing and unresolved arguments directly impacting the case's fairness. Judge Barranco ruled "moot" on the very opinion containing discriminatory remarks about Dillon-Capps's filings as "incoherent" and "unintelligible." Additionally, another

judge ruled a hearing moot despite significant counterclaims and motions to strike based on abuse of process. Such evasive rulings demonstrate an excessive use of judicial discretion to sidestep critical issues, preventing full adjudication.

460    **Misuse of Judicial Authority in Denying Extension Requests**: A ruling denying Dillon-Capps's request for extension only partially addressed the arguments raised, and it inaccurately represented the basis for the attorney-client relationship ending after TRO and complaint filings. By ignoring half the arguments and relying on misleading information, the denial reflects excessive judicial discretion and lack of thorough review, unfairly limiting Dillon-Capps's procedural rights.

461    Judge Barranco's and other judges' rulings, as outlined above, exhibit a pattern of exceeding judicial discretion by consistently dismissing Dillon-Capps's procedural rights, disregarding substantive legal protections, and issuing arbitrary denials that disproportionately favored Plaintiff. Maryland's standards, as set forth in *In re Adoption/Guardianship No. 10941* and *Schlossberg v. Schlossberg*, require judicial discretion to align with statutory and procedural requirements to maintain fairness and impartiality. The rulings in Dillon-Capps's case demonstrate an erosion of these principles, warranting correction to restore judicial integrity.

462    Exceeding judicial discretion undermines fairness, due process, and confidence in judicial impartiality. In Dillon-Capps's case, Judge Barranco's and other judges' actions demonstrate a pattern of discretionary overreach, including procedural deviations, unjustified denials, and the selective dismissal of substantive claims. These actions exceed the acceptable bounds of judicial discretion, justifying appellate review, corrective measures, and restoration of Dillon-Capps's

rights to fair treatment. Maryland courts, by addressing these actions, can reinforce the limits of judicial discretion and ensure equitable treatment for all parties.

## W    Accessory and Accessory After the Fact

### 1    Foundations of Accessory and Accessory After the Fact

463    An **accessory** is a person or entity that assists or enables another party to commit an unlawful act, either by facilitating the conduct or, in the case of an accessory after the fact, by helping to conceal the act or protect the principal from accountability. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland incorporates principles from common law to recognize liability for both accessories and accessories after the fact. Maryland courts also apply **Md. Code Ann., Crim. Law § 1-301**, which extends criminal liability to individuals who aid, abet, or assist in the commission or concealment of unlawful acts.

464    To establish accessory liability, Maryland courts generally require:

465    **Knowledge of the Primary Unlawful Act**: The accessory must have knowledge of the crime or unlawful act being committed.

466    **Intent to Assist or Facilitate**: The accessory intentionally provides assistance or support to the principal party, either during or after the offense.

467    **Concrete Actions in Support of the Principal's Conduct**: An accessory, whether during or after the fact, takes deliberate steps to aid the primary offender or to prevent the discovery and accountability of the crime.

468    Accessory and accessory after the fact liability ensure that those who contribute to or attempt to conceal wrongful conduct are held accountable, even if they did not directly commit the act themselves.

2    Judicial Standards for Applying Accessory and Accessory After the Fact

469    Maryland courts assess accessory liability by evaluating:

470    **Awareness and Knowledge of Wrongful Conduct**: Courts consider whether the accessory had sufficient knowledge of the primary offense or wrongful conduct.

471    **Intent to Aid, Abet, or Conceal**: An accessory must demonstrate intent to either facilitate the offense or protect the principal party from legal consequences.

472    **Active Participation or Concealment**: For accessory after the fact, Maryland courts examine whether the party took concrete steps to cover up, legitimize, or protect the principal from accountability.

473    These standards allow Maryland courts to hold accessories liable, addressing those who knowingly engage in or conceal wrongful actions that harm third parties and compromise the legal system.

3    Maryland Case Law and Statutory Basis

474    **State v. Hawkins**, 326 Md. 270, 604 A.2d 489 (1992): The Maryland Court of Appeals confirmed that accessories after the fact bear liability if they knowingly assist in concealing or aiding the principal in evading justice. The court emphasized that concrete actions taken to support the primary actor, even after the offense, meet the threshold for accessory liability.

475    **Watson v. State**, 208 Md. App. 496, 56 A.3d 801 (2012): Maryland's appellate court reinforced that accessories, both during and after the fact, are liable if they act with intent to aid or protect the principal. Maryland courts recognize that deliberate attempts to shield the principal from accountability or support the wrongful acts justify accessory liability.

Page **161** of **329**

476     **Md. Code Ann., Crim. Law § 1-301**: This statute defines accessories and extends
liability to those who knowingly aid or conceal the commission of an offense. Under Maryland
law, those who act as accessories, whether before, during, or after the offense, are held liable for
their participation in advancing or concealing the primary act.

4      Application to Accessory and Accessory After the Fact in Dillon-Capps' Case

477     In Dillon-Capps's case, the actions of Plaintiff, Ohana Growth Partners, LLC; its counsel,
Miles & Stockbridge (M&S); Judge Michael Barranco; and a third-party vendor collectively
reflect conduct that aligns with accessory liability, both during and after the fact. Each party's
actions—whether in supporting Ohana's deceptive practices, concealing fraudulent activities, or
furthering procedural abuses—demonstrate a coordinated effort to protect themselves and others
from accountability. Key aspects include:

478     **Ohana's Concealment and Legitimation of Vendor's Fraudulent Activities**: Despite
knowledge of the vendor's involvement in fraud, identity theft, and accounting irregularities,
Ohana not only continued its relationship with the vendor but increased the scope of its work,
making efforts to improve the vendor's appearance of legitimacy. Ohana's deliberate actions to
protect the vendor and avoid accountability constitute accessory conduct, as they knowingly
supported and legitimized actions that directly contributed to the fraud. These steps, taken to
cover up the vendor's conduct, meet Maryland's standard for accessory after the fact, as they
furthered both the vendor's and their own evasion of responsibility.

479     **Miles & Stockbridge's Failure to Investigate and Defense of Ohana's Misconduct**:
M&S's role as counsel includes a fiduciary duty to assess and report ethical concerns,
particularly when clients are implicated in fraudulent activities. Instead, M&S focused on

defending Judge Barranco's rulings, engaging in procedural abuses that ignored Ohana's documented violations. This defensive strategy, which aligns with M&S's own interests, shows that M&S acted as an accessory after the fact by shielding both itself and its client from scrutiny. The choice to omit investigation into fraud allegations and support punitive actions against Dillon-Capps aligns M&S with Ohana's goal of deflecting accountability, meeting the criteria for accessory liability.

480    **Judge Barranco's Rulings that Reinforced M&S and Ohana's Actions**: Judge Barranco's alignment with M&S's tactics—including issuing rulings that dismissed Dillon-Capps's filings as "incoherent" and "unintelligible"—reinforced the discriminatory and coercive practices directed at Dillon-Capps. These rulings directly supported M&S's and Ohana's objectives by dismissing substantive issues in favor of procedural criticisms, effectively enabling further discrimination and discrediting Dillon-Capps. Barranco's rulings, especially those imposing daily fines and restrictive orders based on misleading representations, reflect accessory conduct that advanced M&S's and Ohana's shared purpose of evading accountability.

481    **Vendor's Participation in Fraud and Continued Support from Ohana and M&S**: The third-party vendor's actions, which included identity theft, wire fraud, and contributing to accounting irregularities, were documented in evidence but ignored by Ohana and M&S. By rehiring this vendor, expanding its role, and failing to address its fraudulent activities, Ohana and M&S acted as accessories after the fact, prioritizing their own interests over ethical accountability. The choice to legitimize the vendor rather than investigate or disclose its misconduct reflects a deliberate effort to conceal the fraudulent activities, furthering their evasion of scrutiny and liability.

482    **Pattern of Procedural Abuse and Misrepresentation to Discredit Dillon-Capps**: The

lawsuit and related procedural actions, including the no-notice TRO and contempt motions, were

designed to discredit Dillon-Capps and distract from the core issues of fraud, discrimination, and

hostile workplace conditions. These tactics were used to undermine Dillon-Capps's credibility

and shield Ohana and M&S from accountability. By engaging in abusive litigation to obscure

their own misconduct, M&S and Ohana demonstrated accessory behavior, as these actions were

not aimed at legitimate dispute resolution but at protecting themselves from repercussions.

483    The coordinated actions of Ohana, M&S, Judge Barranco, and the vendor reveal a

collective intent to avoid accountability and protect each other's interests at Dillon-Capps's

expense. Maryland's standards for accessory and accessory after the fact liability, as set forth in

*State v. Hawkins* and *Watson v. State*, apply to each party's role in advancing or concealing

fraudulent activities and abusive practices. Their continued engagement in procedural abuses,

discriminatory rulings, and concealment of critical information directly supports accessory

liability, as their actions collectively aimed to protect one another and obscure the truth.

484    Accessory and accessory after the fact liability ensure that those who aid, abet, or conceal

wrongful conduct are held accountable. In Dillon-Capps's case, the actions of Ohana, M&S,

Judge Barranco, and the vendor reflect accessory conduct intended to shield each other from

accountability. By recognizing this conduct as accessory liability, Maryland courts can restore

fairness, uphold judicial integrity, and prevent similar abuse of legal processes in future cases.

## X    Due Process

## 1    Foundations of Due Process

485    Maryland law, as supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** and the **Fourteenth Amendment to the U.S. Constitution**, provides that individuals are entitled to fair and impartial treatment in legal proceedings. Due process rights include both procedural and substantive protections, requiring that courts operate transparently, fairly, and without bias. Maryland's adoption of these principles aligns with common law and constitutional standards to ensure that any deprivation of an individual's rights occurs only through lawful and just procedures.

486    Key elements of due process in Maryland include:

1.    **Right to Notice**: Due process mandates that individuals receive proper, timely notice of legal actions affecting their rights, as enshrined in both state and federal standards.

2.    **Opportunity to Be Heard**: The due process right to be heard encompasses both the ability to present evidence and to cross-examine opposing witnesses, ensuring that no one is deprived of their rights without full participation.

3.    **Impartial Decision-Making**: Due process necessitates an unbiased and fair adjudicator to ensure objectivity, requiring judges to refrain from conduct that demonstrates or suggests bias.

## 2    Judicial Standards for Applying Due Process

487    Under Maryland law and constitutional standards, courts must provide:
1.    **Adequate Notice and Hearing**: Courts must provide parties with adequate time and information to prepare for and engage in proceedings, as guaranteed by the **Fourteenth Amendment's Due Process Clause** and **Md. Rule 2-311**.

2.    **Right to Present and Challenge Evidence**: The right to be heard requires a meaningful opportunity to present one's case fully, including the ability to submit evidence and conduct cross-examinations of opposing witnesses. Maryland courts uphold this standard as foundational to ensuring fair trials.

3.    **Unbiased Adjudication**: Judges must remain impartial and avoid any conduct suggesting bias or prejudice. In line with **Md. Rules 18-101.2** and **18-102.2**, impartiality is necessary to maintain public confidence in the judiciary and ensure that rulings are based solely on law and facts.

3    Maryland Case Law and Statutory Basis

488    **Banegura v. Taylor**, 312 Md. 609, 541 A.2d 969 (1988): Maryland's Court of Appeals underscored that due process includes the right to notice and an opportunity to be heard. Courts must ensure individuals have a fair opportunity to defend their rights before issuing decisions that may affect them.

489    **Attorney Grievance Commission v. Mooney**, 359 Md. 56, 753 A.2d 17 (2000): The court emphasized judicial impartiality as essential to due process. Judges are required to avoid any behavior suggesting bias, as it undermines public confidence and the fairness of judicial proceedings.

490    **Shaw v. Glickman**, 45 Md. App. 718, 415 A.2d 625 (1980): Maryland courts have reinforced that due process includes a reasonable opportunity to present evidence and cross-examine witnesses, as these rights protect the integrity of the proceedings and ensure substantive fairness.

### 4    Constitutional and Federal Basis

491    **Fourteenth Amendment, U.S. Constitution**: The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." This clause provides a federal foundation for Maryland's due process requirements, mandating fair legal procedures.

492    **Goldberg v. Kelly**, 397 U.S. 254 (1970): The U.S. Supreme Court held that due process requires notice and an opportunity to be heard in a meaningful manner, reinforcing that individuals should have a fair chance to present their case when government actions may affect their rights.

### 5    Application to Dillon-Capps's Case

493    In Dillon-Capps's case, Ohana, M&S, and Judge Barranco collectively violated due process protections, depriving Dillon-Capps of a fair and impartial hearing through actions including inadequate notice, biased rulings, and restrictions on evidence:

1.    **Lack of Adequate Notice**: The court issued a no-notice Temporary Restraining Order (TRO) and later a two-day notice show cause order, depriving Dillon-Capps of sufficient time to prepare a defense. These actions contravene *Banegura v. Taylor* and the **Fourteenth Amendment**, as they prevented Dillon-Capps from meaningfully participating in their defense.

2.    **Restricted Right to Present and Challenge Evidence**: Judge Barranco prevented Dillon-Capps from cross-examining key witnesses and presenting evidence on FMLA and ADA violations, issues directly relevant to the case. This restriction mirrors

due process violations cited in *Shaw v. Glickman*, as Dillon-Capps was denied the opportunity to address and challenge material claims.

3.  **Bias and Lack of Judicial Impartiality**: Judge Barranco made derogatory comments about Dillon-Capps's filings, referring to them as "incoherent" and "unintelligible," while ignoring Dillon-Capps's evidence and ADA accommodations. Such statements suggest judicial bias, violating the standards for impartiality upheld in *Attorney Grievance Commission v. Mooney*. This bias compromised Dillon-Capps's right to a fair and impartial hearing.

4.  **Failure to Address Procedural and Substantive Claims**: The court dismissed Dillon-Capps's substantive claims regarding FMLA, ADA, and due process violations without meaningful consideration. This denial of procedural fairness created a cumulative deprivation of due process, impacting Dillon-Capps's ability to defend against baseless claims.

494    Ohana's, M&S's, and Judge Barranco's collective actions denied Dillon-Capps their due process rights, violating Maryland's standards for notice, impartiality, and the right to be heard. These due process failings were cumulative, compounding Dillon-Capps's disadvantage and damaging the fairness of the proceedings.

495    Due process is an essential protection under Maryland law and the **Fourteenth Amendment**, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**. In Dillon-Capps's case, due process was compromised through inadequate notice, restrictions on evidence, and judicial bias. The court should impose sanctions to address these violations,

correct the judicial record, and reinforce due process protections in Maryland, aligning with principles established in *Banegura v. Taylor*, *Mooney*, and *Shaw v. Glickman*.

## Y  Harassment

### 1    Foundations of Harassment

496    Under Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, harassment is recognized as repeated and intentional conduct designed to intimidate, distress, or pressure an individual. Harassment is prohibited under both civil and criminal law, with Maryland statutes and common law principles affirming that harassment includes any sustained behavior aimed at causing undue stress or discomfort. Maryland courts and statutes address harassment as conduct lacking legitimate purpose and intended to interfere with an individual's rights or peace of mind.

497    Key elements of harassment in Maryland include:

1.    **Intent to Disturb or Intimidate**: Harassment requires a showing of intent to harm, annoy, or pressure another party.

2.    **Lack of Legitimate Purpose**: The conduct must lack a lawful or legitimate justification, serving only to distress or intimidate the target.

3.    **Repeated and Unwanted Behavior**: Harassment is marked by repetitive conduct that targets an individual over time, creating a cumulative adverse effect.

### 2    Judicial Standards for Applying Harassment

498    Maryland courts define harassment by examining:

1.    **Pattern of Behavior**: Courts assess whether the conduct in question represents a sustained pattern, as isolated incidents generally do not constitute harassment without repeated actions.

2.    **Intent to Disturb, Harm, or Pressure**: Harassment requires a clear intent to cause distress or compel compliance, often evaluated through the totality of the circumstances.

3.    **Lack of Legitimate Justification**: Conduct qualifies as harassment if it serves no legitimate purpose and is solely intended to harass, intimidate, or disrupt the target.

3    Maryland Case Law and Statutory Basis

499    **Md. Code Ann., Crim. Law § 3-803**: Defines harassment as repeated, unwanted behavior intended to harass, alarm, or annoy another person, reinforcing that intentional acts without legitimate purpose meet the legal definition of harassment.

500    **Rowe v. Baltimore Colts**, 33 Md. App. 344, 364 A.2d 131 (1976): The Maryland Court of Special Appeals held that behavior qualifies as harassment if it is both deliberate and intended to distress the target. In civil contexts, harassment encompasses sustained actions that interfere with the plaintiff's personal or professional life.

501    **R.M. v. State**, 234 Md. App. 632, 172 A.3d 1199 (2017): Maryland's courts recognize that harassment need not involve physical harm but may include repeated acts or communications that disturb or alarm the target. The court emphasized that harassment often includes actions intended to pressure, intimidate, or control the individual.

4    Application to Dillon-Capps's Case

502    In Dillon-Capps's case, Ohana and M&S engaged in a pattern of harassment designed to intimidate and distress Dillon-Capps. This pattern included continuous threats of adverse employment action, baseless legal actions, and a cumulative pattern of coercive tactics.

503    **Intent to Disturb and Intimidate through Employment Threats**: From May 20 to June 13, Ohana repeatedly threatened Dillon-Capps with adverse employment consequences, including suspension and termination, in response to Dillon-Capps's exercise of FMLA rights and reporting of misconduct. These threats align with the standards established in *Rowe v. Baltimore Colts*, demonstrating deliberate actions intended to intimidate and control.

504    **Lack of Legitimate Justification**: The threats of suspension and termination, the fraudulent lawsuit, and the attempts to incarcerate Dillon-Capps all lacked legitimate purpose, as they were based on perjured statements, false claims, and procedural abuse. Such conduct reflects Maryland's standards for harassment as defined in *R.M. v. State*, where repeated acts lacking lawful basis are categorized as harassment.

505    **Sustained Pattern of Coercive Behavior**: Ohana and M&S's actions, including the unlawful termination, suspension, and threats of incarceration, show a cumulative pattern of harassment. This ongoing pressure reflects an intent to interfere with Dillon-Capps's rights, pressuring them into silence and compliance in violation of Maryland's standards under § 3-803.

506    Ohana and M&S's harassment aimed to intimidate and control Dillon-Capps, preventing them from reporting misconduct or asserting their legal rights. The cumulative impact of this behavior constitutes harassment under Maryland law, as it was intended solely to distress and deter Dillon-Capps.

507    Harassment, as defined under Maryland law and supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, includes repeated conduct lacking legitimate purpose and intended to disturb, intimidate, or distress. In Dillon-Capps's case, the pattern of adverse actions, including baseless threats, wrongful termination, and coerced compliance, qualifies as harassment. The court should impose sanctions to prevent further harassment and address the harm inflicted, aligning with the principles in *Rowe v. Baltimore Colts* and *R.M. v. State*.

## Z    Spoliation of Evidence

### 1    Foundation of Spoliation of Evidence

508    **Foundation: Spoliation of evidence** encompasses the destruction, alteration, or concealment of information relevant to ongoing or anticipated litigation. Under Maryland common law, spoliation is addressed through sanctions or adverse inferences, especially when actions are taken to manipulate, delete, or obscure critical evidence that is central to a party's claim. **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** empower Maryland courts to integrate spoliation principles from common law and apply them to safeguard evidence integrity. When spoliation includes digital manipulation, such as altering roles, modifying database entries, or delaying access to secure data, the harm to judicial fairness is heightened, as it often impacts the very basis of a party's ability to substantiate their claims.

### 2    Judicial Standards for Applying Spoliation of Evidence

509    Maryland courts apply spoliation standards when certain criteria are met, especially in cases of digital or systemic evidence manipulation:

1.    **Duty to Preserve Electronic Records**: Parties aware of ongoing or foreseeable litigation have an obligation to secure and preserve all relevant records, including digital databases, user roles, and system backups.

2.    **Intentional or Negligent Alteration or Deletion**: Spoliation occurs when a party, directly or through agents, intentionally modifies, removes, or otherwise obscures information, especially when done to undermine evidence.

3.    **Resulting Prejudice to the Opposing Party**: Spoliation is evident if the altered or deleted data hinders the opposing party's case by limiting their access to complete and authentic information.

4.    **Adverse Inference or Sanctions as Remedy**: When evidence spoliation is shown, courts can impose an adverse inference against the party responsible, presuming that the altered or destroyed evidence would have been unfavorable to them.

**510    Purpose of the Spoliation Doctrine:**

1.    **Prevent Data Manipulation as a Litigation Tactic**: Digital evidence tampering unfairly skews litigation, undermining judicial impartiality.

2.    **Ensure Fairness and Preserve Evidence Integrity**: Courts safeguard data integrity by penalizing or sanctioning parties that manipulate digital records.

3.    **Deter Evasive Conduct**: Sanctions for digital spoliation discourage tactics such as database edits, unauthorized role adjustments, and immunity delays to affect record retention.

3    Maryland Case Law and Statutory Basis

511    **Anderson v. Litzenberg**, 115 Md. App. 549, 694 A.2d 150 (1997): This case supports

the use of adverse inferences when evidence is altered or withheld, applicable to cases involving

deliberate data deletion or modification.

512    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): Maryland courts imposed

sanctions for document tampering, extending the spoliation doctrine to cases involving altered

data and records.

513    **Cost v. State**, 417 Md. 360, 10 A.3d 184 (2010): This case established that evidence

destruction or alteration justifies remedial sanctions to protect judicial proceedings and address

any prejudice suffered by the opposing party.

**514    Statutory Basis:**

1.    **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**: These statutes

authorize Maryland courts to incorporate common law doctrines and equitable principles

like spoliation, applying corrective measures when evidence is manipulated, deleted, or

obscured.

4    Application to Dillon-Capps's Case

515    In Dillon-Capps's case, the following alleged actions by Ohana and M&S constitute

spoliation, focused on database and system-level manipulations:

1.    **Duty to Preserve Digital and Systemic Evidence**: Ohana was required to retain

accurate, unaltered records relevant to Dillon-Capps's employment, billing, and

ADA/FMLA requests. This duty extends to all digital systems, databases, and user roles,

particularly those affecting evidence related to workplace roles and oversight responsibilities.

2.    **Intentional Alteration of Database Records and User Roles**: Allegations that Ohana removed Leann Hartman's "Billing Administrator" role and delayed the backup immunity expiration suggest deliberate efforts to obscure evidence. These modifications appear intended to affect records tied to key areas of Dillon-Capps's claims, including alleged workplace misconduct and accountability.

3.    **Delays to Allow for Evidence Tampering**: Allegations that Ohana waited until backup immunity expired to delete or modify records further suggest intentional spoliation. This delay strategy hinders Dillon-Capps's ability to access complete records and evidence, obstructing the potential to present a full and accurate case. Maryland courts, as seen in *Klupt v. Krongard*, would likely interpret such actions as spoliation due to the calculated nature of the delay.

4.    **Prejudice Against Dillon-Capps**: The alleged tampering directly impedes Dillon-Capps's case by depriving them of access to critical data regarding ADA accommodations, FMLA entitlements, and employer records of adverse actions. This aligns with *Anderson v. Litzenberg*, where adverse inferences were granted due to prejudicial actions in tampering with records.

5.    **Adverse Inference as Remedy**: Given the severity and deliberate nature of the alleged spoliation, the court should impose an adverse inference, presuming that any altered or deleted data would support Dillon-Capps's case. The court may also consider

further sanctions due to the calculated delay in accessing unaltered data, consistent with *Cost v. State*, to prevent Ohana from benefiting from its own actions.

516    Ohana and M&S's alleged spoliation activities, including user role alterations, database tampering, and delay tactics to circumvent backup protections, meet the criteria for spoliation under Maryland common law and **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**. These actions justify sanctions, including adverse inferences and possible additional corrective measures, to counter the prejudice suffered by Dillon-Capps. Maryland case law supports imposing such sanctions to reinforce data integrity and ensure judicial proceedings remain fair and unbiased. The court should impose adverse inferences and any additional appropriate sanctions against Ohana and M&S in line with *Anderson v. Litzenberg*, *Klupt v. Krongard*, and *Cost v. State*.

## AA    Defamation

### 1    Foundation of Defamation

517    **Foundation**: **Defamation** under Maryland common law encompasses both **libel** (written defamation) and **slander** (spoken defamation), whereby a false statement injures a party's reputation. Maryland recognizes that defamatory statements, if false and harmful to one's professional or personal reputation, may give rise to a claim of defamation. Maryland statutes also address defamation, with specific provisions for libel and slander under **Md. Code Ann., Cts. & Jud. Proc. § 3-503**. Additionally, if defamatory statements are included in litigation, courts may consider them as part of a broader scheme of reputational harm, especially if the litigation itself appears to be a vehicle for damaging an individual's standing or credibility.

Page **176** of **329**

## 2   Judicial Standards for Applying Defamation

518   Maryland courts require the following elements to establish a claim for defamation:

1.   **False and Defamatory Statement**: A statement that is both false and injurious to an individual's reputation, exposing them to public contempt or ridicule.

2.   **Publication to a Third Party**: The statement must be communicated or "published" to a third party, making the false information accessible to others.

3.   **Fault on the Part of the Defendant**: The defendant must be at fault, either through negligence or intent, in making or spreading the false statement.

4.   **Harm to the Plaintiff's Reputation**: The false statement must result in harm to the plaintiff's reputation, including potential financial, professional, or personal losses.

5.   **Purpose of Defamation Doctrine**:

6.   **Protect Individual Reputations**: Defamation law safeguards individuals from reputational harm caused by false and damaging statements.

7.   **Prevent Misuse of Litigation for Reputation Attacks**: Courts prevent parties from using litigation as a pretext for defamation, particularly when claims are baseless or designed to malign the opposing party.

8.   **Provide Remedies for Reputational Damage**: Defamation allows individuals to recover damages or seek corrective measures when false statements cause harm.

## 3   Maryland Case Law and Statutory Basis

519   **Jacron Sales Co. v. Sindorf,** 276 Md. 580, 350 A.2d 688 (1976): The Maryland Court of Appeals defined defamation standards, holding that any false statement damaging another's reputation can be actionable if it meets criteria such as fault and harm to reputation.

520    **Samuels v. Tschechtelin**, 135 Md. App. 483, 763 A.2d 209 (2000): The court held that false statements made with knowledge of their falsity or reckless disregard for the truth constitute defamation, affirming that plaintiffs may seek damages when reputation is harmed by false claims.

521    **Smith v. Danielczyk**, 400 Md. 98, 928 A.2d 795 (2007): The Maryland Court of Appeals emphasized that even implied defamatory meanings can be actionable, underscoring the court's role in safeguarding individuals from reputation damage caused by misleading or false statements.

522    **Md. Code Ann., Cts. & Jud. Proc. § 3-503**: Addresses liability for defamatory statements, specifically those impacting one's profession, credibility, or standing within the community.

4    <u>Application to Dillon-Capps's Case</u>

523    In Dillon-Capps's case, the following statements and litigation actions by Ohana and M&S contribute to defamation based on Maryland standards:

1.    **False and Defamatory Statements in Affidavits and Filings**: False assertions in affidavits and court documents, such as claims that Dillon-Capps refused access or failed to meet performance standards, are demonstrably untrue and intended to harm Dillon-Capps's reputation. These statements align with the elements of defamation outlined in *Jacron Sales Co. v. Sindorf*.

2.    **Publication to a Third Party via Litigation**: By including defamatory statements within court filings, Ohana and M&S "published" false statements to the court and to Dillon-Capps's professional network. Legal filings, accessible to parties outside

the immediate litigation, serve as a mechanism of public defamation, as discussed in *Smith v. Danielczyk.*

3.     **Intent to Damage Reputation**: The pattern of baseless claims and misleading statements suggests intent to damage Dillon-Capps's reputation by framing them as unprofessional or dishonest. Similar to *Samuels v. Tschechtelin*, the falsehoods appear designed to harm Dillon-Capps's standing and credibility as a professional.

4.     **Harm to Dillon-Capps's Professional Reputation**: The defamatory statements have damaged Dillon-Capps's professional relationships, financial stability, and personal standing. The litigation's misuse as a vehicle for defamatory statements supports the argument for reputational harm, directly harming Dillon-Capps's ability to work and meet professional obligations.

524     Ohana and M&S's actions meet the criteria for defamation under Maryland common law and **Md. Code Ann., Cts. & Jud. Proc. § 3-503**. False and misleading statements made within affidavits, coupled with baseless litigation aimed at discrediting Dillon-Capps, constitute defamatory actions designed to harm Dillon-Capps's reputation. Maryland case law, including *Jacron Sales Co. v. Sindorf, Samuels v. Tschechtelin,* and *Smith v. Danielczyk,* supports imposing sanctions and awarding damages for defamation, particularly when litigation itself serves as a means to disseminate false claims. The court should recognize Ohana and M&S's statements as defamatory and consider sanctions to mitigate the reputational harm suffered by Dillon-Capps.

BB   Intentional Infliction of Emotional Distress (IIED)

1    Foundation of Intentional Infliction of Emotional Distress (IIED)

525    **Foundation**: **Intentional Infliction of Emotional Distress (IIED)** is a common law tort

recognized under Maryland law, applicable when a party's conduct is so extreme and outrageous

that it causes severe emotional distress to another. The **Restatement (Second) of Torts § 46**

provides the basis for IIED claims, which have been incorporated into Maryland law. To meet

the threshold for IIED, the conduct in question must surpass mere negligence or even intentional

wrongdoing; it must be "atrocious, and utterly intolerable in a civilized society." When

combined with employment actions and aggressive litigation intended to intimidate or harass,

such conduct may meet the standard for IIED if it causes severe emotional harm to the affected

party.

2    Judicial Standards for Applying IIED

526    Maryland courts generally require four elements to establish IIED, each demanding a

high threshold of evidence due to the severe nature of the claim:

1.    **Extreme and Outrageous Conduct**: The defendant's actions must be outrageous

to the extent that they "exceed all bounds of decency," reflecting behavior that is

intentionally harmful, oppressive, or in reckless disregard of the plaintiff's rights.

2.    **Intent or Reckless Disregard**: The defendant must have acted with the intent to

cause emotional distress or with reckless disregard of the likelihood that their actions

would result in severe emotional harm.

3.    **Severe Emotional Distress**: The plaintiff must demonstrate that the conduct

caused severe emotional distress, not merely annoyance or frustration. This often

includes medical or psychological evidence of the distress suffered.

4.    **Causal Connection**: There must be a direct causal link between the extreme and outrageous conduct and the severe emotional distress experienced by the plaintiff.

527    **Purpose of IIED Doctrine**:

1.    **Protect Individuals from Extreme Abuse**: IIED shields individuals from conduct intended to terrorize, oppress, or intimidate.

2.    **Deter Outrageous Conduct in Legal and Employment Contexts**: The doctrine of IIED prevents parties from using litigation or employment authority as tools for personal vendettas.

3.    **Remedy for Mental and Emotional Harm**: Courts provide relief for individuals who suffer genuine, severe emotional trauma from egregious conduct.

3    Maryland Case Law and Common Law Basis

528    **Harris v. Jones**, 281 Md. 560, 380 A.2d 611 (1977): The Maryland Court of Appeals set a high bar for IIED, requiring conduct to be truly outrageous and severe emotional distress to be clearly demonstrated through evidence.

529    **Batson v. Shiflett**, 325 Md. 684, 602 A.2d 1191 (1992): The court reaffirmed that IIED requires extreme, egregious conduct intended to harm the plaintiff emotionally. Simple annoyance or insensitivity falls short of this threshold.

530    **Lasater v. Guttmann**, 194 Md. App. 431, 5 A.3d 79 (2010): The court clarified that IIED claims necessitate objective evidence of severe emotional distress caused by the defendant's outrageous conduct.

4    Application to Dillon-Capps's Case

531    In Dillon-Capps's case, Ohana and M&S's conduct meets the criteria for IIED based on

the following factors:

1.    **Extreme and Outrageous Conduct**: Ohana and M&S engaged in behavior that

exceeds typical adversarial conduct, including:

1.1    Filing a retaliatory lawsuit filled with knowingly false statements,

escalating the situation to intimidate Dillon-Capps.

1.2    Seeking an ex parte Temporary Restraining Order (TRO) and a no-notice

contempt show cause, leveraging judicial mechanisms as tools of harassment.

1.3    Perpetuating a hostile work environment through employment-related

retaliatory tactics, including Dillon-Capps's suspension and subsequent

termination during ongoing litigation.

1.4    Attempts to misrepresent Dillon-Capps's requests for ADA and FMLA

accommodations, thereby undermining legally protected rights in a way that could

foreseeably cause extreme distress.

2.    **Intent or Reckless Disregard**: The facts indicate that Ohana and M&S acted

with intent or at least reckless disregard, aiming to use litigation to harass Dillon-Capps,

obstruct rights, and intimidate them into submission. These actions show clear disregard

for Dillon-Capps's mental well-being, as the escalating litigation pressures and

employment actions were likely to cause severe distress.

3.    **Severe Emotional Distress**: Dillon-Capps has experienced significant emotional

harm, evidenced by severe memory issues, catatonic episodes, and exacerbation of

PTSD. The cumulative effects of employment-related harassment and litigation-induced stress reflect the depth of emotional trauma inflicted, meeting the severe distress requirement as seen in *Lasater v. Guttmann.*

4.    **Causal Connection**: The actions by Ohana and M&S—beginning with the employment-related harassment and culminating in a protracted, malicious lawsuit—directly caused Dillon-Capps's emotional and psychological suffering. The escalation of harassment and retaliatory actions underscores a causal link, aligning with standards in *Batson v. Shiflett.*

532    Ohana and M&S's conduct in Dillon-Capps's case demonstrates a pattern of extreme and outrageous behavior that justifies a claim for IIED under Maryland law. Through retaliatory litigation, hostile employment actions, and the misuse of legal processes to intimidate Dillon-Capps, Ohana and M&S inflicted severe emotional harm in a manner consistent with *Harris v. Jones* and *Batson v. Shiflett*. The court should recognize these actions as intentional infliction of emotional distress, warranting sanctions and remedial measures to address the harm Dillon-Capps has suffered.

## CC    Negligence

### 1    Foundations of Negligence and Individual Liability

533    Under Maryland law, negligence involves the failure to exercise a reasonable standard of care that results in harm to another party. To establish liability in this context, Maryland law holds individuals and entities responsible for the negligent actions that breach their duty of care and cause foreseeable harm. Maryland's statutes and common law incorporate liability principles that hold corporate owners, agents, and even government actors accountable for negligence.

534    The four primary elements required to establish negligence are:

1.    **Duty of Care**: The legal obligation to act in a manner that prevents foreseeable harm to others.

2.    **Breach of Duty**: A failure to uphold this duty, whether through action or omission.

3.    **Causation**: A direct link between the breach of duty and the harm caused.

4.    **Damages**: Demonstrable harm or loss suffered by the plaintiff.

## 2    General Negligence and Corporate Liability

### III.    DUTY OF CARE AND CORPORATE ENTITIES

535    Maryland's case law and statutory framework recognize that corporate entities, such as Ohana and M&S, owe a duty of care not only to their clients but also to others who may be foreseeably affected by their actions. This duty extends to protecting employees, clients, and, in cases of legal firms, ensuring compliance with ethical standards that safeguard the judicial system's integrity.

### IV.    RELEVANT STATUTES FOR CORPORATE LIABILITY:

536    **Md. Code, Cts. & Jud. Proc. § 5-522**: Limits liability protections for government actors when actions fall outside their official capacity or involve gross negligence, applying similarly to corporate actors in situations of abuse or extreme neglect.

537    **Md. Code, Corp. & Ass'ns § 4A-302**: Defines liability for members of an LLC, allowing for individual responsibility for members who act negligently or outside the scope of their professional duties.

538    **Section 4A-301.1**: Establishes liability for members who provide professional services, including legal and advisory services, with gross negligence or bad faith. This includes M&S's obligations to act in good faith while protecting the court's integrity.

3    Application of Duty and Breach to Ohana and M&S

539    Both Ohana and M&S owed Dillon-Capps a duty of care, given the employment relationship with Ohana and M&S's involvement in legal proceedings. By engaging in intentional acts to harm Dillon-Capps's reputation, rights, and financial security, both entities breached this duty:

  1.    **Ohana** breached its duty by ignoring FMLA rights, creating a hostile work environment, and engaging in a lawsuit based on perjured statements and unsupported claims.

  2.    **M&S** breached its duty by failing to exercise reasonable care in filing motions and affidavits, presenting perjured testimony, and pursuing injunctive relief without legitimate grounds.

540    These breaches directly impacted Dillon-Capps's financial, emotional, and physical well-being, establishing causation and resulting damages.

4    Professional Negligence and Judicial Accountability

V.    DUTY OF CARE FOR JUDICIAL OFFICIALS

541    Maryland law recognizes that judicial officers, while generally immune from liability, may face liability for actions performed with gross negligence or outside the bounds of judicial discretion. Judge Barranco's actions, if found to be reckless or negligent, could expose the Maryland judiciary to liability for failing to protect the due process rights of Dillon-Capps.

## VI.    RELEVANT STATUTES FOR JUDICIAL ACCOUNTABILITY:

542    **Md. Code, Cts. & Jud. Proc. § 5-507**: Establishes that government employees are immune from liability unless their actions involve malice, gross negligence, or are outside the scope of their employment.

543    **Md. Code, Cts. & Jud. Proc. § 5-522(b)**: Clarifies that government employees are not shielded from liability in cases of gross negligence, highlighting situations where judges or other officials violate fundamental rights or act outside judicial bounds.

## VII.    APPLICATION TO JUDGE BARRANCO AND THE MARYLAND JUDICIARY

544    Judge Barranco's repeated dismissals of critical evidence, including FMLA and ADA documentation, and refusal to hear relevant motions despite Dillon-Capps's documented health conditions, constitute reckless disregard for judicial responsibilities. By acting in a biased, dismissive, or discriminatory manner, Judge Barranco breached the duty of care owed to Dillon-Capps and exacerbated the harm caused by Ohana and M&S:

   1.    The judge's refusal to hear or acknowledge FMLA claims and attempts to invalidate due process arguments deprived Dillon-Capps of a fair hearing, contravening the duty to uphold justice impartially.

   2.    Judge Barranco's dismissive and potentially biased statements damaged Dillon-Capps's credibility, reinforcing the baseless claims advanced by Ohana and M&S.

545    These actions, if shown to exceed judicial discretion, justify holding both Judge Barranco and the Maryland government accountable for negligence under **§ 5-507** and **§ 5-522(b)**.

## 5    Individual Liability of Corporate Members and Associates

### I.    Individual Accountability for Members of Ohana and M&S

546    Maryland law allows for the personal liability of LLC members and associates of professional corporations in cases of gross negligence, fraud, or when actions exceed the scope of their professional duties. Each member who played a role in filing fraudulent affidavits or supporting perjured claims may be individually liable for the resulting harm.

### II.    Relevant Statutes for Individual Liability:

547    **Md. Code, Corp. & Ass'ns § 4A-303**: Establishes liability for LLC members who engage in negligent or unlawful acts, allowing injured parties to seek damages directly from responsible individuals.

548    **Section 4A-301.1**: Imposes a duty on members providing professional services, holding them accountable for actions taken with negligence or bad faith, particularly where such actions harm others.

### III.    Application to Individual Members of Ohana and M&S

549    Each associate or principal within M&S and each member of Ohana who actively participated in filing baseless claims, presenting fraudulent evidence, or dismissing Dillon-Capps's statutory rights may face individual liability:

1.    **Ohana Executives and Agents**: By supporting the baseless lawsuit and ignoring Dillon-Capps's legal protections, individual members acted negligently and recklessly, directly harming Dillon-Capps.

2.    **M&S Attorneys**: Attorneys from M&S who knowingly submitted false affidavits, perjured statements, or omitted material facts engaged in negligent and possibly malicious conduct, exposing themselves to individual liability.

3.    Each member and associate's involvement establishes grounds for individual liability and reciprocity-based relief against Ohana and M&S members.

## CONCLUSION OF NEGLIGENCE

550    Maryland law, under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** and other statutes, supports a comprehensive liability framework for negligence against Ohana, M&S, and the Maryland judiciary. The cumulative failures of these parties to exercise reasonable care led to substantial and foreseeable harm to Dillon-Capps. Additionally, individual liability applies to each principal and associate who participated in these negligent and reckless actions, particularly those at Ohana and M&S who enabled this conduct. The court should impose reciprocal relief, compensatory damages, and sanctions to deter future negligence and to hold each responsible party accountable.

### DD    Reckless Endangerment

1    Foundations of Reckless Endangerment

551    Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, incorporates the doctrine of reckless endangerment from English common law principles. Reckless endangerment is defined as actions that create a substantial risk of harm to another's health or safety, even if harm does not actually occur. Under **Md. Code Ann., Crim. Law § 3-204**, reckless endangerment encompasses actions taken with wanton disregard for the safety or well-being of others, often without considering the potential consequences. In a civil context,

reckless endangerment may justify claims for damages or equitable relief when one party's conduct poses a serious and foreseeable risk to another's health, safety, or livelihood.

552    Key elements of reckless endangerment in Maryland include:

1.    **Substantial Risk of Harm**: The actions must create a significant risk of harm or injury to another party.

2.    **Recklessness or Wanton Disregard**: Reckless endangerment requires conduct that shows a conscious disregard for the potential harm that may result.

3.    **Foreseeability of Harm**: The risk posed by the conduct must be reasonably foreseeable, such that a reasonable person would recognize the likelihood of harm.

### 2    Judicial Standards for Applying Reckless Endangerment

553    Maryland courts evaluate reckless endangerment based on:

1.    **Existence of Substantial Risk**: The court assesses whether the conduct created a substantial likelihood of harm to the affected party.

2.    **Conscious Disregard of Harm**: Reckless endangerment involves a clear awareness of the risk and a decision to proceed regardless, showing wanton disregard for others' safety or well-being.

3.    **Foreseeable Consequences**: Courts consider whether the harm resulting from the conduct was foreseeable, given the nature of the actions and their impact on the targeted individual.

### 3    Maryland Case Law and Statutory Basis

554    **Md. Code Ann., Crim. Law § 3-204**: Defines reckless endangerment as actions that create a substantial risk of death or serious physical injury to another person. While primarily a

criminal statute, this definition provides guidance for evaluating reckless endangerment in civil cases, particularly when actions create substantial non-physical risks to an individual's well-being.

555    **Williams v. State**, 100 Md. App. 468, 641 A.2d 990 (1994): The Maryland Court of Special Appeals affirmed that reckless endangerment includes conduct that shows a gross disregard for safety. The court held that actions posing a foreseeable risk to others meet the standard for reckless endangerment, whether physical or psychological harm is involved.

556    **Minor v. State**, 326 Md. 436, 605 A.2d 138 (1992): Maryland's highest court emphasized that reckless endangerment involves a wanton disregard for the likelihood of harm, stating that individuals are responsible for foreseeable consequences of their reckless actions, even if actual harm does not occur.

### 4    Application to Dillon-Capps's Case

557    In Dillon-Capps's case, Ohana and M&S engaged in reckless endangerment by creating a foreseeable risk of harm to Dillon-Capps's health, safety, and well-being. Their collective actions, including psychological coercion, threats of adverse employment action, and unfounded legal actions, show a clear disregard for Dillon-Capps's safety and mental health:

1.    **Substantial Risk of Harm through Adverse Actions**: The threats, suspension, and subsequent termination created a substantial risk of harm to Dillon-Capps's financial and mental well-being. The escalating legal actions and repeated attempts to intimidate further contributed to this risk, aligning with *Williams v. State*.

2.    **Wanton Disregard for Dillon-Capps's Health and Safety**: Ohana and M&S's actions showed a clear disregard for the consequences of their behavior, particularly with

regard to Dillon-Capps's documented mental health conditions and protected leave under FMLA. The repeated adverse actions, including the pursuit of incarceration through the show cause order, demonstrate reckless endangerment by showing a disregard for Dillon-Capps's health and security, as defined in *Minor v. State*.

3.    **Foreseeable Harm to Dillon-Capps's Mental and Physical Health**: The cumulative impact of the threats, coercion, and unfounded legal actions had foreseeable consequences on Dillon-Capps's health, exacerbating their PTSD and causing physical manifestations such as catatonia. Given Dillon-Capps's known health conditions, the risks were foreseeable and ignored by Ohana and M&S, meeting Maryland's standard for reckless endangerment.

558    Ohana and M&S's conduct demonstrates reckless endangerment by creating substantial and foreseeable harm to Dillon-Capps's health and livelihood. The intentional disregard for the consequences of their actions, particularly in light of Dillon-Capps's documented health conditions, warrants remedies under Maryland law to prevent further harm and protect Dillon-Capps's rights.

559    Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503 and Md. Code Ann., Crim. Law § 3-204**, prohibits reckless endangerment, including conduct that poses a substantial and foreseeable risk to another's safety and well-being. In Dillon-Capps's case, the pattern of threats, coercion, and abusive litigation represents reckless endangerment, as Ohana and M&S disregarded foreseeable harm to Dillon-Capps's mental and physical health. The court should impose sanctions to deter future reckless conduct and provide equitable relief to

address the harm caused, consistent with the standards established in *Williams v. State* and *Minor v. State*.

## EE  Judicial Economy

### 1  Foundations of Judicial Economy

560    **Judicial economy** is a principle guiding courts to resolve disputes efficiently, conserve resources, and reduce unnecessary litigation burdens. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland courts incorporate doctrines from common law that emphasize the importance of expediting proceedings to minimize risk, prevent ongoing harm, and address serious legal violations promptly. Judicial economy not only protects litigants from undue harm but also preserves public confidence in the court's ability to deliver timely and effective justice.

561    Judicial economy is achieved by:

562    **Expediting Matters with Significant Risk or Harm**: When cases involve urgent issues, such as fraud or violations of protected rights, prompt judicial action minimizes harm to parties and safeguards their interests.

563    **Avoiding Redundant or Prolonged Proceedings**: Courts streamline processes to prevent duplicative efforts, conserve resources, and avoid unnecessary delays that prolong risk or uncertainty for litigants.

564    **Addressing Core Issues Directly**: Judicial economy prioritizes addressing material issues and resolving disputes at the earliest opportunity to prevent extended or repetitive litigation that burdens both the court and the parties involved.

565    Maryland law thus aligns with the principle of judicial economy to facilitate efficient case management, reduce judicial workload, and ensure that significant issues are promptly resolved.

## 2    Judicial Standards for Applying Judicial Economy

566    Maryland courts advance judicial economy by:

567    **Prioritizing Cases Involving Urgent or Ongoing Harm**: Judicial resources are directed toward cases where timely intervention is essential to prevent irreparable harm or secure protected rights.

568    **Consolidating and Expediting Proceedings**: Courts employ expedited hearings, consolidated rulings, and streamlined procedures to eliminate redundant filings and procedural delays.

569    **Minimizing Procedural Barriers to Address Core Issues**: Courts reduce procedural obstacles to reach substantive matters directly, thus avoiding delays that may impede justice.

570    These standards allow Maryland courts to uphold judicial economy in cases where quick and effective resolution is essential, particularly when parties face ongoing harm or legal rights are at risk.

## 3    Maryland Case Law

571    **Board of License Commissioners for Prince George's County v. Toye**, 354 Md. 116, 729 A.2d 407 (1999): The Maryland Court of Appeals highlighted the importance of judicial economy, noting that cases involving immediate harm or public interest require expedited handling to prevent extended legal uncertainty. The court emphasized that prompt judicial intervention protects both parties and court resources.

572    **County Commissioners of Carroll County v. Carroll Craft Retail, Inc.**, 384 Md. 23, 862 A.2d 404 (2004): This case underscored that judicial economy favors resolving cases without unnecessary delays, especially when postponement risks further harm or imposes undue burdens on the parties and the judiciary.

4    Application to Judicial Economy in Dillon-Capps' Case

573    In Dillon-Capps's case, the principles of judicial economy directly support an expedited resolution to prevent ongoing harm, address fraud, and protect rights that are at risk. The pattern of procedural abuses, fraud allegations, and substantive rights violations emphasize the urgency of judicial intervention, as delayed resolution compounds harm to Dillon-Capps. Key instances of judicial economy include:

574    **Expedited Hearings to Minimize Ongoing Harm and Fraud Risks**: In previous rulings, Dillon-Capps has consistently argued that urgent hearings are needed to prevent further harm and address fraud, ADA, and FMLA violations. Despite Plaintiff's procedural tactics to delay accountability, judicial economy calls for a prompt resolution that addresses the serious risks and repeated procedural abuses Dillon-Capps has endured. By prioritizing these issues, the court not only protects Dillon-Capps but also limits unnecessary prolongation of a baseless lawsuit.

575    **Consolidated Rulings to Prevent Redundant Proceedings**: Given the significant overlap in Dillon-Capps's motions—addressing fraud, rights violations, and procedural abuses—judicial economy supports consolidating these matters for a unified hearing and ruling. Addressing the fraud claims, federal protections under ADA and FMLA, and procedural abuses

together would streamline the case, providing a single, comprehensive resolution that respects Dillon-Capps's rights and reduces procedural redundancies.

576    **Addressing Core Issues to Protect Judicial Resources and Avoid Delays**: Judicial economy demands that core issues be addressed swiftly to prevent undue harm and conserve resources. In this case, the court's ability to directly address fraud, collusion, and rights violations mitigates ongoing risk to Dillon-Capps, while judicially economizing by resolving all connected claims simultaneously. This approach avoids piecemeal litigation that prolongs Dillon-Capps's harm and adds unnecessary complexity to the court's docket.

577    **Minimizing Delays Caused by Plaintiff's Procedural Abuses**: Plaintiff and M&S have repeatedly employed tactics that evade accountability, including a voluntary dismissal filed to avoid scrutiny of procedural abuses and a no-notice TRO obtained without due process. Judicial economy dictates that such tactics be promptly addressed to prevent further waste of judicial resources and protect Dillon-Capps from undue harm. A decisive ruling on these issues would prevent additional delays and safeguard Dillon-Capps's rights from further procedural exploitation.

578    By addressing these issues in line with judicial economy principles, the court can protect Dillon-Capps from ongoing harm, prevent resource strain, and efficiently address the central matters that have prolonged this case.

579    Judicial economy supports prompt and effective resolution of disputes, especially in cases where procedural abuses, rights violations, and serious harm are at stake. In Dillon-Capps's case, the principles of judicial economy demand a swift resolution that consolidates issues, addresses core matters, and limits procedural delays caused by Plaintiff's and M&S's tactics. By upholding

judicial economy, Maryland courts can ensure that Dillon-Capps's rights are protected, judicial resources are preserved, and the integrity of judicial proceedings is maintained.

## FF  Rules of Evidence, Adjudication of Fact, and Conflicting Statements

### 1  Foundations of Evidence, Trier of Fact, and Conflicting Statements

580    In Maryland, the **rules of evidence** and principles of adjudication of fact are essential in preserving the integrity of judicial findings. Maryland's common law, under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, alongside **Md. Code Ann., Cts. & Jud. Proc. § 5-401** (admissibility of evidence) and **Md. Code Ann., Cts. & Jud. Proc. § 10-101** (authenticity requirements), establishes that once a fact is adjudicated, it stands unless rebutted by clear, credible evidence. The **trier of fact** is responsible for evaluating the credibility, consistency, and reliability of submissions, and once a fact is adjudicated, it is presumed accurate unless a party presents superior evidence.

581    When a party engages in dishonest conduct or pursues an illegitimate lawsuit by submitting self-contradictory evidence or false statements, Maryland courts generally:

1.    **View Conflicting Statements as Indicative of Dishonesty**: Internal contradictions in a party's own evidence are presumed to lack credibility, and deliberate inconsistencies are particularly damaging, suggesting an intent to mislead.

2.    **Strengthen Opposing Claims in Light of Dishonest Conduct**: When a party's contradictions expose attempts to manipulate judicial findings, the opposing party's claims are often viewed as bolstered by comparison, gaining credibility from the contrasting reliability.

3. **Impose Sanctions for Abuse of Process and Malicious Prosecution**: In cases where a party knowingly pursues unsupported claims or contradicts material facts, Maryland courts may sanction such conduct to prevent abuse of judicial resources and deter future dishonest litigation.

582  Maryland law holds that factual findings are binding unless substantively challenged, ensuring accountability for dishonesty and strengthening the credibility of the opposing party's claims.

## 2  Judicial Standards for Evaluating Evidence, Conflicting Statements, and Dishonest Conduct

583  Maryland courts maintain standards to ensure that:

1. **Evidence is Credible, Consistent, and Substantiated**: Submissions must avoid internal contradictions, especially where dishonesty or manipulation appears to be the intent.

2. **Conflicting Statements or Material Misrepresentations Are Penalized**: Maryland courts uphold the integrity of judicial findings by imposing sanctions when evidence or statements indicate an intentional effort to mislead.

3. **Adjudicated Facts Favor the Opposing Party in Cases of Manipulation**: Where one party relies on dishonest conduct or procedural abuses, Maryland law supports viewing the opposing party's claims as strengthened by the contrast in reliability.

584  These standards safeguard judicial integrity and uphold the principles of fairness and honesty within Maryland's legal system.

3    Maryland Case Law

1.    **Owens-Illinois, Inc. v. Armstrong**, 326 Md. 107, 604 A.2d 47 (1992): The Maryland Court of Appeals reinforced that conclusions reached by the trier of fact are presumed valid unless directly challenged by superior evidence. This case established that contradictions or dishonest submissions reflect unreliability and may favor the opposing party's claims.

2.    **Meyers v. Montgomery County Police Department**, 96 Md. App. 668, 626 A.2d 1010 (1993): This case confirmed that internal inconsistencies weaken credibility, especially when they suggest dishonest conduct. Maryland courts may discount such evidence or view the contradictions as strengthening the reliability of the opposing party's case.

3.    **Bradshaw v. Prince George's County**, 284 Md. 294, 396 A.2d 255 (1979): The Maryland Court of Appeals held that substantial contradictions within a party's evidence signal unreliability, and courts may impose consequences, including sanctions, for dishonest submissions intended to mislead the court.

4    Cross-Argument Supporting Case Law

585    **Klinck v. H & B Marine, Inc.**, 395 Md. 649, 911 A.2d 500 (2006): This case held that evidence must be consistent and credible to support factual findings. The Maryland Court of Appeals stated that inconsistencies within a party's submissions compromise the integrity of their claims, as conflicting evidence suggests unreliability. Courts have discretion to disregard unreliable evidence, especially when contradictions appear deliberate.

586    **Garrity v. Maryland State Board of Plumbing**, 447 Md. 359, 135 A.3d 452 (2016):

The Maryland Court of Appeals emphasized that factual determinations by the trier of fact

should remain unchallenged unless contradicted by more persuasive evidence. The court also

recognized that persistent procedural irregularities by a party undermine judicial efficiency and

may constitute abuse of process, supporting sanctions if the conduct is intended to obstruct or

delay justice.

587    **Hall v. State**, 225 Md. App. 72, 123 A.3d 1004 (2015): This case confirmed that

contradictory or false statements submitted to the court can be grounds for sanctions and other

corrective actions. Maryland's Court of Special Appeals held that deliberate inconsistencies can

be considered attempts to mislead the court and are grounds for strengthening the opposing

party's position, as courts rely on consistent, truthful submissions for accurate adjudication.

588    **First Union National Bank v. Steele Software Systems Corp.**, 154 Md. App. 97, 838

A.2d 404 (2003): The Maryland Court of Special Appeals held that knowingly pursuing baseless

claims or making false statements can amount to malicious prosecution and abuse of process.

The court recognized that litigants who abuse procedural mechanisms for purposes unrelated to

legitimate legal claims are subject to sanctions, as such actions compromise the fairness and

efficiency of judicial proceedings.

589    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): This case established that

inconsistent or self-contradictory testimony submitted by a party weakens its claims, as

Maryland courts prioritize evidence that is consistent and reliable. The court ruled that parties

cannot expect favorable judgments when they attempt to manipulate the factual record with

conflicting statements, as such behavior constitutes abuse of the judicial process.

590    **Beery v. Maryland Medical Laboratory, Inc.**, 89 Md. App. 81, 597 A.2d 516 (1991):
The Maryland Court of Special Appeals emphasized that false or misleading statements used to
justify procedural advantages, especially to delay or evade accountability, can justify the
imposition of sanctions and strengthen the opposing party's claims. The court held that such
conduct undermines the judicial system and imposes unnecessary burdens on the court,
warranting sanctions and, in some cases, dismissal.

591    **Needle v. White**, 81 Md. App. 463, 568 A.2d 856 (1990): This case confirmed that
engaging in a lawsuit without legitimate purpose or presenting conflicting statements to prolong
litigation constitutes malicious prosecution. The court ruled that sanctions, including
disqualification, may be imposed to protect judicial resources and deter parties from abusing the
judicial process.

592    **Imperial v. Drapeau**, 351 Md. 38, 716 A.2d 244 (1998): The Maryland Court of
Appeals held that any inconsistency in a party's submissions that suggests dishonesty or intent to
deceive the court warrants careful scrutiny. Such conduct, when intentional, not only undermines
the offending party's claims but also may strengthen the opposing party's position, as Maryland
law favors credible and straightforward litigation practices to ensure fairness.

## 5    Application to Rules of Evidence, Conflicting Statements, and Judicial Discretion in Dillon-Capps' Case

593    In Dillon-Capps's case, the Plaintiff's reliance on conflicting evidence, combined with
procedural tactics that conceal or contradict material facts, reveals a pattern of dishonesty and
abuse of judicial resources. Plaintiff's actions, supported by Judge Barranco's rulings that
dismissed key evidence and prevented cross-examination, demonstrate a calculated attempt to

subvert factual findings, support an illegitimate lawsuit, and evade accountability. Key instances include:

1.    **Admissions of FMLA Violations Contradicted by Denials**: Plaintiff's counsel admitted in open court that Plaintiff violated Dillon-Capps's FMLA rights. Despite this admission, subsequent filings by Plaintiff denied liability under FMLA, revealing a direct contradiction. Maryland's standards require such conflicts to be reconciled or dismissed, as they indicate an intent to mislead the court and shield Plaintiff from liability. These contradictions enhance Dillon-Capps's FMLA claims, supporting allegations of abuse of process and malicious prosecution.

2.    **False Statements on Procedural and Substantive Compliance**: Plaintiff and M&S submitted affidavits alleging Dillon-Capps's procedural non-compliance, while records show Plaintiff delayed responses and failed to adhere to procedural obligations. This internal contradiction undermines Plaintiff's credibility, suggesting that Plaintiff's and M&S's reliance on these statements was intended to obstruct justice and portray Dillon-Capps negatively. Maryland courts recognize that such conduct supports allegations of sanctionable abuse of process, disqualification, and malicious prosecution, further validating Dillon-Capps's arguments.

3.    **Judicial Discretion Exceeded to Support Plaintiff's Misrepresentations**: Judge Barranco's refusal to consider ADA and FMLA evidence, despite Plaintiff's admission of violating FMLA, reflects a misuse of discretion that favors Plaintiff's procedural abuses. Such discretionary overreach, when combined with Plaintiff's conflicting statements, suggests judicial bias or manipulation, aligning with Dillon-Capps's claims that Plaintiff

and M&S manipulated judicial processes to evade accountability. These actions cumulatively support Dillon-Capps's claims of malicious prosecution, as they indicate a pattern of conduct that misused judicial authority for improper purposes.

4.    **Strengthening of Defendant's Claims Through Plaintiff's Misconduct**: Plaintiff's reliance on favorable but procedurally flawed rulings to defend against Dillon-Capps's counterclaims further supports allegations of sanctionable conduct. Judge Barranco's "moot" ruling after issuing discriminatory comments against Dillon-Capps reinforces the impression of bias. Maryland law supports the conclusion that Plaintiff's reliance on procedurally improper rulings to justify their claims strengthens Dillon-Capps's assertions of abuse of process and warrants sanctions.

5.    **Procedural Evasions as Evidence of Malicious Prosecution**: Plaintiff's tactics—including misuse of hyperlinks to non-court records, reliance on a no-notice TRO, and false statements to secure contempt orders—demonstrate procedural evasion that conflicts with Maryland's evidentiary standards. **Md. Code Ann., Cts. & Jud. Proc. § 5-401** prohibits such practices, especially where hyperlinks are used to reference external, inadmissible evidence. Plaintiff's procedural tactics align with Dillon-Capps's claims of malicious prosecution, as they demonstrate a calculated abuse of process intended to mislead the court.

6.    **Rulings Supporting Plaintiff's Conflicting Evidence and Evasive Tactics**: Plaintiff's reliance on Judge Barranco's discriminatory remarks and subsequent "moot" ruling reflects an ongoing misuse of judicial discretion to delay substantive findings. Maryland's standards view reliance on flawed rulings to justify an otherwise illegitimate

case as evidence of abuse of process, supporting disqualification and sanctions against

Plaintiff and M&S for pursuing unsupported claims with dishonest intent.

594    Maryland's evidentiary standards, when applied to Dillon-Capps's case, reveal Plaintiff's

reliance on contradictory evidence, procedural misrepresentations, and rulings that exceeded

judicial discretion. The pattern of dishonest submissions directly supports Dillon-Capps's claims

of malicious prosecution, abuse of process, and sanctionable conduct by Plaintiff and M&S. The

cumulative impact of these contradictions and evasions strengthens Dillon-Capps's position, as

Maryland courts require parties to present credible, consistent evidence to sustain legitimate

claims.

595    Maryland's rules of evidence and principles of factual adjudication uphold that once a

fact is adjudicated, it stands unless convincingly rebutted with consistent, credible evidence. In

Dillon-Capps's case, Plaintiff's reliance on contradictory admissions, evasive procedural tactics,

and rulings exceeding judicial discretion reflect a calculated effort to pursue an illegitimate

lawsuit. These actions violate Maryland's evidentiary standards, support Dillon-Capps's claims

of malicious prosecution and abuse of process, and warrant sanctions and disqualification to

restore judicial integrity and prevent further abuse.

## GG    Judicial Referral for Criminal and Ethical Violations

### 1    Foundations of Judicial Referral for Criminal and Ethical Violations

596    Maryland law empowers courts to uphold the ethical standards of the legal profession and

to refer instances of misconduct that undermine judicial integrity. The Maryland statutes under

**Md. Code Ann., Business Occupations & Professions § 10-306** and **Maryland Rules 19-**

**303.3** and **19-308.3** establish that attorneys have a duty to the court, opposing parties, and the

public to uphold honesty and candor in all proceedings. These statutes align with the principles embedded in **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, which authorize Maryland courts to incorporate equitable doctrines from common law, including the inherent power to report and address violations that compromise justice.

597     The foundation of judicial referral includes:

    1.     **Duty to Report Ethical Violations**: Maryland attorneys are required to report significant violations of the rules of professional conduct under **Rule 19-308.3**, ensuring that breaches of integrity do not go unchecked.

    2.     **Court's Inherent Power to Protect Integrity**: Maryland courts have an inherent power to safeguard the integrity of the judicial system, which includes referring matters involving deceit, perjury, or fraud for criminal or ethical investigation.

    3.     **Prohibition of Misrepresentation and Deceit**: Attorneys are strictly prohibited from making false representations or misleading the court under **§ 10-306** and **Rule 19-303.3**, which mandates candor toward the tribunal.

598     This foundation ensures that Maryland courts can respond decisively to protect judicial integrity, deter abuse, and uphold public trust in the judicial process.

## 2     Judicial Standards for Referral and Addressing Ethical Violations

599     Maryland courts assess criminal and ethical referral requirements by examining:

    1.     **Materiality of the Misconduct**: Courts refer violations where the conduct has materially impacted judicial fairness or credibility.

    2.     **Intent and Repetition of Violations**: Referral is appropriate where misconduct demonstrates intentional deceit, especially if it constitutes a pattern of unethical behavior.

3.    **Effect on Judicial Proceedings and Public Trust**: Courts consider whether the misconduct has undermined public confidence or judicial efficiency, making referral necessary to restore integrity.

600    These standards help Maryland courts determine when to refer violations to uphold fairness, honesty, and accountability in legal proceedings.

3    Maryland Case Law

1.    **Attorney Grievance Commission of Maryland v. Blair**, 440 Md. 387, 102 A.3d 786 (2014): The Maryland Court of Appeals held that attorneys are obligated to uphold candor toward the tribunal, and significant breaches of this duty warrant disciplinary actions, including referral for ethical violations. The court emphasized that misrepresentations are grounds for referral to maintain judicial integrity.

2.    **Attorney Grievance Commission of Maryland v. Harris**, 403 Md. 142, 939 A.2d 732 (2008): The court reaffirmed that attorneys who intentionally mislead or deceive the court undermine the legal process and are subject to referral for disciplinary action. The court underscored the responsibility of the judiciary to protect public trust by addressing ethical violations.

3.    **In re Application of Kimmer**, 392 Md. 251, 896 A.2d 1006 (2006): The Maryland Court of Appeals confirmed the court's inherent authority to refer matters involving professional misconduct to the appropriate bodies, establishing that courts have both statutory and inherent powers to uphold the integrity of the legal profession.

#### 4    Application to Judicial Referral in Dillon-Capps's Case

601    In Dillon-Capps's case, the actions of Plaintiff's counsel, Miles & Stockbridge (M&S), involve repeated instances of misrepresentation, procedural abuse, and behavior intended to mislead the court, all of which meet Maryland's standards for ethical referral. The cumulative effect of these actions has harmed judicial proceedings and undermined the fairness of the litigation, making judicial referral not only justified but necessary to protect public confidence. Key examples supporting referral include:

1.    **Intentional Misrepresentation and Misleading Statements**: M&S submitted contradictory affidavits and procedural filings that contradict Plaintiff's admissions regarding FMLA violations. These misrepresentations, compounded by M&S's submission of misleading affidavits and procedural statements, demonstrate a repeated pattern of unethical behavior that Maryland law views as referral-worthy. **Rule 19-303.3** requires attorneys to be candid with the court, and M&S's actions have clearly breached this duty, warranting referral to protect judicial integrity.

2.    **Pattern of Procedural Abuse with Intent to Mislead**: M&S secured a no-notice TRO and a contempt hearing on a two-day notice, circumventing normal procedural protections and denying Dillon-Capps due process. **Md. Rules, Rule 19-308.3** mandates reporting of ethical violations, and the court's reliance on M&S's misrepresentations directly impacted the fairness of the proceedings. The abuse of procedural rules to secure undue advantage underscores the necessity of referral, as it exemplifies bad faith and obstruction of justice.

Page **206** of **329**

3.    **Failure to Address or Correct Misrepresentations and False Statements**:
Despite Dillon-Capps's repeated objections, M&S failed to correct misleading

statements, such as hyperlinking to external, non-record materials and filing affidavits

that contradict Plaintiff's known actions. The refusal to address contradictions is itself an

ethical breach, and the consistent misrepresentations show that referral is essential to hold

M&S accountable and to ensure such abuses are not repeated.

4.    **Impact on Judicial Integrity and Public Trust**: The ongoing effect of M&S's

actions on judicial integrity and public trust is profound. The law firm's procedural

abuses, coupled with misleading statements and uncorrected misrepresentations, indicate

an intent to evade judicial accountability and mislead the court. Referral in this context is

vital to prevent further harm, restore confidence, and demonstrate that the judiciary will

not condone unethical practices.

602    The cumulative conduct by M&S, including procedural evasions, misrepresentations, and

refusal to correct known falsehoods, aligns with Maryland's standards for ethical and criminal

referral. Such referral not only upholds the integrity of the judiciary but also acts as a deterrent to

prevent similar misconduct in future cases.

603    Maryland's statutes and ethical rules require attorneys to maintain honesty and

transparency, with violations warranting referral to uphold judicial integrity. In Dillon-Capps's

case, M&S's repeated misrepresentations, procedural abuses, and failures to correct material

falsehoods directly undermine the principles of fairness, honesty, and accountability central to

Maryland's legal system. Judicial referral of M&S's conduct is necessary to address ethical and

potentially criminal violations, protect public confidence, and deter further abuse of the legal process.

## HH   Preservation of Claims for Separate Adjudication

1    Foundations of Judicial Referral for Criminal and Ethical Violations

604    Maryland law empowers courts to uphold the ethical standards of the legal profession and to refer instances of misconduct that undermine judicial integrity. The Maryland statutes under **Md. Code Ann., Business Occupations & Professions § 10-306** and **Maryland Rules 19-303.3** and **19-308.3** establish that attorneys have a duty to the court, opposing parties, and the public to uphold honesty and candor in all proceedings. These statutes align with the principles embedded in **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, which authorize Maryland courts to incorporate equitable doctrines from common law, including the inherent power to report and address violations that compromise justice.

605    The foundation of judicial referral includes:

1.    **Duty to Report Ethical Violations**: Maryland attorneys are required to report significant violations of the rules of professional conduct under **Rule 19-308.3**, ensuring that breaches of integrity do not go unchecked.

2.    **Court's Inherent Power to Protect Integrity**: Maryland courts have an inherent power to safeguard the integrity of the judicial system, which includes referring matters involving deceit, perjury, or fraud for criminal or ethical investigation.

3.    **Prohibition of Misrepresentation and Deceit**: Attorneys are strictly prohibited from making false representations or misleading the court under **§ 10-306** and **Rule 19-303.3**, which mandates candor toward the tribunal.

606     This foundation ensures that Maryland courts can respond decisively to protect judicial integrity, deter abuse, and uphold public trust in the judicial process.

## 2    Judicial Standards for Referral and Addressing Ethical Violations

607     Maryland courts assess criminal and ethical referral requirements by examining:

1.    **Materiality of the Misconduct**: Courts refer violations where the conduct has materially impacted judicial fairness or credibility.

2.    **Intent and Repetition of Violations**: Referral is appropriate where misconduct demonstrates intentional deceit, especially if it constitutes a pattern of unethical behavior.

3.    **Effect on Judicial Proceedings and Public Trust**: Courts consider whether the misconduct has undermined public confidence or judicial efficiency, making referral necessary to restore integrity.

608     These standards help Maryland courts determine when to refer violations to uphold fairness, honesty, and accountability in legal proceedings.

## 3    Maryland Case Law

609     **Attorney Grievance Commission of Maryland v. Blair**, 440 Md. 387, 102 A.3d 786 (2014): The Maryland Court of Appeals held that attorneys are obligated to uphold candor toward the tribunal, and significant breaches of this duty warrant disciplinary actions, including referral for ethical violations. The court emphasized that misrepresentations are grounds for referral to maintain judicial integrity.

610     **Attorney Grievance Commission of Maryland v. Harris**, 403 Md. 142, 939 A.2d 732 (2008): The court reaffirmed that attorneys who intentionally mislead or deceive the court undermine the legal process and are subject to referral for disciplinary action. The court

underscored the responsibility of the judiciary to protect public trust by addressing ethical violations.

611    **In re Application of Kimmer**, 392 Md. 251, 896 A.2d 1006 (2006): The Maryland Court of Appeals confirmed the court's inherent authority to refer matters involving professional misconduct to the appropriate bodies, establishing that courts have both statutory and inherent powers to uphold the integrity of the legal profession.

4    Application to Judicial Referral in Dillon-Capps's Case

612    In Dillon-Capps's case, the actions of Plaintiff's counsel, Miles & Stockbridge (M&S), involve repeated instances of misrepresentation, procedural abuse, and behavior intended to mislead the court, all of which meet Maryland's standards for ethical referral. The cumulative effect of these actions has harmed judicial proceedings and undermined the fairness of the litigation, making judicial referral not only justified but necessary to protect public confidence. Key examples supporting referral include:

1.    **Intentional Misrepresentation and Misleading Statements**: M&S submitted contradictory affidavits and procedural filings that contradict Plaintiff's admissions regarding FMLA violations. These misrepresentations, compounded by M&S's submission of misleading affidavits and procedural statements, demonstrate a repeated pattern of unethical behavior that Maryland law views as referral-worthy. **Rule 19-303.3** requires attorneys to be candid with the court, and M&S's actions have clearly breached this duty, warranting referral to protect judicial integrity.

2.    **Pattern of Procedural Abuse with Intent to Mislead**: M&S secured a no-notice TRO and a contempt hearing on a two-day notice, circumventing normal procedural

protections and denying Dillon-Capps due process. **Md. Rules, Rule 19-308.3** mandates reporting of ethical violations, and the court's reliance on M&S's misrepresentations directly impacted the fairness of the proceedings. The abuse of procedural rules to secure undue advantage underscores the necessity of referral, as it exemplifies bad faith and obstruction of justice.

3.    **Failure to Address or Correct Misrepresentations and False Statements**: Despite Dillon-Capps's repeated objections, M&S failed to correct misleading statements, such as hyperlinking to external, non-record materials and filing affidavits that contradict Plaintiff's known actions. The refusal to address contradictions is itself an ethical breach, and the consistent misrepresentations show that referral is essential to hold M&S accountable and to ensure such abuses are not repeated.

4.    **Impact on Judicial Integrity and Public Trust**: The ongoing effect of M&S's actions on judicial integrity and public trust is profound. The law firm's procedural abuses, coupled with misleading statements and uncorrected misrepresentations, indicate an intent to evade judicial accountability and mislead the court. Referral in this context is vital to prevent further harm, restore confidence, and demonstrate that the judiciary will not condone unethical practices.

613    The cumulative conduct by M&S, including procedural evasions, misrepresentations, and refusal to correct known falsehoods, aligns with Maryland's standards for ethical and criminal referral. Such referral not only upholds the integrity of the judiciary but also acts as a deterrent to prevent similar misconduct in future cases.

614    Maryland's statutes and ethical rules require attorneys to maintain honesty and

transparency, with violations warranting referral to uphold judicial integrity. In Dillon-Capps's

case, M&S's repeated misrepresentations, procedural abuses, and failures to correct material

falsehoods directly undermine the principles of fairness, honesty, and accountability central to

Maryland's legal system. Judicial referral of M&S's conduct is necessary to address ethical and

potentially criminal violations, protect public confidence, and deter further abuse of the legal

process.

## II   Expedited Rulings and Hearings to Prevent Further Harm

### 1    Foundations of Expedited Rulings and Hearings

615    Maryland law provides for expedited rulings and hearings to protect parties from ongoing

harm, particularly when a delay risks worsening harm, fraud, or procedural abuses. **Md. Code

Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** empower Maryland courts to apply common law

principles, including equitable doctrines that prioritize efficient case management in urgent

matters. This aligns with the principle of judicial economy, where courts expedite proceedings to

minimize risk and ensure prompt relief.

616    Key statutes and rules supporting expedited rulings include:

1.    **Md. Code Ann., Cts. & Jud. Proc. § 3-409(f)**: Grants courts discretion to

prioritize declaratory judgments in cases where delays could result in substantial harm or

unresolved issues that affect parties' rights.

2.    **Md. Rules, Rule 2-532.1 (Emergency Relief)**: Allows Maryland courts to

expedite the consideration of motions where prompt judicial intervention is necessary to

prevent harm or address urgent matters.

3.    **Common Law Principles of Judicial Economy and Equitable Relief**:

Maryland courts adopt principles from English common law emphasizing that expediting

proceedings is appropriate when immediate intervention is necessary to prevent harm,

protect rights, and conserve judicial resources.

617    These foundations underscore Maryland courts' commitment to preventing further harm,

particularly in cases involving fraud, illegitimate claims, or procedural abuses that risk ongoing

damage.

2    Judicial Standards for Expedited Hearings and Emergency Rulings

618    Maryland courts determine the need for expedited hearings by evaluating:

1.    **Urgency of Preventing Harm**: Courts consider if delays could lead to irreparable

harm, particularly in cases where harm is ongoing or worsening.

2.    **Likelihood of Procedural or Substantive Abuses**: Expedited hearings are

warranted when delays could allow parties to exploit procedural loopholes or evade

accountability, particularly in fraudulent cases.

3.    **Necessity for Immediate Relief to Protect Rights**: Courts assess whether

prompt action is essential to uphold the rights of one party, preventing an undue

advantage to the opposing party.

619    These standards ensure that Maryland courts prioritize cases involving urgent issues,

protecting litigants from prolonged harm and reducing risks associated with procedural delays.

3    Maryland Case Law

620    **E. L. Gardner, Inc. v. First State Bank**, 245 Md. 538, 226 A.2d 723 (1967): The

Maryland Court of Appeals affirmed that courts should expedite hearings in cases involving the

potential for irreparable harm. This case established that swift judicial intervention is necessary to prevent undue harm to parties when harm would worsen without immediate action.

621    **King v. Bankerd**, 303 Md. 98, 492 A.2d 608 (1985): Maryland's highest court held that expedited rulings are justified where procedural or substantive abuses risk harm to a party's rights. The court emphasized that prompt relief preserves fairness and prevents one party from gaining an undue advantage through procedural delays.

622    **Harbor Island Marina, Inc. v. Calvert County, 286 Md. 303, 407 A.2d 738 (1979)**: The court ruled that judicial efficiency requires expedited proceedings in cases where delays risk further harm or where prompt rulings would prevent unnecessary litigation. Maryland courts recognize that judicial economy supports expediting hearings to address urgent or ongoing harm.

### 4    Application to Expedited Rulings and Hearings in Dillon-Capps's Case

623    In Dillon-Capps's case, expedited rulings and hearings are essential to mitigate the ongoing harm and procedural abuses initiated by Plaintiff and counsel, Miles & Stockbridge (M&S). Maryland's standards strongly support expedited resolution in cases involving illegitimate claims and procedural abuses, as delay only intensifies the harm Dillon-Capps faces. Specific points include:

1.    **Ongoing Financial, Reputational, and Physical Harm**: The Plaintiff's persistent procedural abuses, including contradictory statements and illegitimate claims, have inflicted ongoing financial and reputational harm on Dillon-Capps. Maryland's standards in *E. L. Gardner, Inc. v. First State Bank* support expedited relief to prevent further harm, especially where fraudulent or malicious actions compound existing damage.

Page **214** of **329**

2.    **Risk of Procedural Manipulation by Plaintiff**: Plaintiff and M&S have repeatedly exploited procedural delays to avoid accountability and prolong harm, including filing a voluntary dismissal notice to evade a hearing and avoiding timely responses to counterclaims. This pattern aligns with Maryland's standards in *King v. Bankerd*, where expedited hearings were deemed necessary to prevent procedural abuses and uphold fairness. Expedited hearings would prevent Plaintiff from further delaying justice and would ensure a prompt review of the abuses.

3.    **Immediate Relief Required to Protect Federal and State Rights**: Dillon-Capps's ADA, FMLA, and due process rights have been directly threatened by Plaintiff's actions and by procedural rulings that dismissed these claims as "immaterial." *Harbor Island Marina, Inc. v. Calvert County* affirms that expedited hearings are warranted where delays compromise fundamental rights. In this case, prompt intervention is necessary to safeguard Dillon-Capps's rights, ensure that ADA and FMLA protections are respected, and prevent further harm from the Plaintiff's procedural tactics.

4.    **Judicial Economy in Resolving Ongoing Issues Efficiently**: Given the extensive pattern of procedural abuses by Plaintiff and M&S, judicial economy supports expedited hearings to streamline proceedings and prevent unnecessary litigation. Maryland's common law principles on judicial economy, as supported by *Harbor Island Marina*, dictate that courts prioritize cases involving ongoing harm to reduce judicial workload and provide prompt resolution. Expedited rulings would efficiently address all unresolved issues, including those related to fraud, misrepresentation, and abuse of process.

624     Maryland's statutory and case law support expedited rulings in Dillon-Capps's case to

prevent ongoing harm, procedural manipulation, and the violation of Dillon-Capps's federal and

state rights. Expedited hearings would serve the interests of justice, protect Dillon-Capps from

continued abuse, and restore fairness to the proceedings.

625     Maryland law, rooted in statutory and common law principles, provides a strong

foundation for expedited rulings and hearings to prevent further harm, particularly in cases

involving fraud or procedural abuses. In Dillon-Capps's case, expedited hearings are essential to

prevent ongoing harm, procedural manipulation, and threats to Dillon-Capps's rights.

Maryland's judicial standards support prompt intervention to protect fairness, preserve judicial

efficiency, and ensure that Dillon-Capps's legitimate claims receive timely and comprehensive

consideration.

## JJ   Judicial Correction of the Court Record

### 1     Foundations of Judicial Correction of the Court Record

626     Maryland law establishes the authority of courts to correct or revise the judicial record,

particularly when errors, procedural violations, or evidence of fraud undermine prior rulings.

Statutory provisions under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**

incorporate principles from English common law, granting Maryland courts the authority to

protect the accuracy and integrity of the court record. Additionally, **Md. Rules, Rule 2-535** and

**Md. Code Ann., Cts. & Jud. Proc. § 6-408** enable courts to revise, vacate, or correct prior

judgments to address mistakes or fraud.

627     Key statutes and common law principles supporting judicial correction include:

1.    **Md. Rules, Rule 2-535 (Revisory Power)**: Allows courts to revise judgments to correct errors, address fraud, or prevent injustice.

2.    **Md. Code Ann., Cts. & Jud. Proc. § 6-408**: Grants courts authority to modify the record to reflect accurate findings, especially if a prior ruling was influenced by procedural missteps or fraudulent conduct.

3.    **Common Law Duty to Preserve Judicial Integrity**: English common law, incorporated by Maryland, supports a court's inherent power to amend records tainted by fraud, error, or abuse to prevent judicial misuse and maintain an accurate account of proceedings.

628    These foundations empower Maryland courts to revise prior judgments, ensuring that the court record reflects truth and fairness without erasing evidence of procedural or ethical violations that may inform future litigation.

## 2    Judicial Standards for Correcting the Court Record

1.    Maryland courts correct the judicial record by evaluating:
2.    **Materiality of Errors or Fraud**: Courts consider whether errors or fraud materially affected prior rulings, warranting correction to prevent further injustice.

3.    **Impact on Rights and Due Process**: Corrections are prioritized when errors have compromised a party's procedural or substantive rights, particularly if these errors resulted from misrepresentations or procedural abuse.

4.    **Balance of Judicial Integrity and Transparency**: Courts ensure that records corrected for accuracy do not omit or obscure evidence of misconduct, preserving

documentation of any wrongdoing for accountability purposes in related or future
litigation.

629    These standards guide Maryland courts in revising records without compromising
transparency, safeguarding both accuracy and accountability within the judicial process.

### 3    Maryland Case Law

630    **Platt v. Platt**, 302 Md. 9, 485 A.2d 250 (1984): The Maryland Court of Appeals held that
courts have inherent authority to correct their own records when errors or omissions affect the
validity of prior rulings. This case established that judicial revision protects parties' rights to fair
treatment and ensures the record's accuracy.

631    **Tandra S. v. Tyrone W.**, 336 Md. 303, 648 A.2d 439 (1994): The Maryland Court of
Appeals ruled that courts may vacate or correct judgments when material errors or procedural
violations have undermined the fairness of prior decisions. The court emphasized that correction
is essential to uphold the integrity of judicial proceedings.

632    **Sieck v. Sieck**, 66 Md. App. 37, 502 A.2d 528 (1986): The court confirmed that revisory
power under Rule 2-535 allows Maryland courts to correct records tainted by fraud or
misrepresentation. Judicial integrity mandates that errors affecting substantive outcomes be
corrected, even if those corrections highlight prior procedural abuse or ethical violations.

### 4    Application to Judicial Correction of the Court Record in Dillon-Capps's Case

633    In Dillon-Capps's case, judicial correction of the court record is crucial to address the
harm caused by Plaintiff's procedural abuses, misrepresentations, and rulings exceeding judicial
discretion. Maryland's standards support revising prior rulings to correct errors, vacate unjust

orders, and retain evidence of procedural abuses that inform Dillon-Capps's defense and related claims. Key aspects include:

1.    **Revisory Power to Address Errors from Misleading and Contradictory Statements**: Plaintiff's and M&S's submissions included numerous contradictions, procedural abuses, and misrepresentations that tainted the integrity of the court's prior rulings, such as the no-notice TRO and contempt orders. Under *Platt v. Platt* and Rule 2-535, the court has the authority to vacate these rulings to protect Dillon-Capps from ongoing harm caused by errors influenced by fraudulent or unethical conduct.

2.    **Correction of Rulings Exceeding Judicial Discretion and Misrepresentations**: Judge Barranco's rulings, including those issuing $2,500 per day fines and conflicting contempt orders, disregarded Dillon-Capps's ADA and FMLA rights despite Plaintiff's own admissions of FMLA violations. Maryland's *Tandra S. v. Tyrone W.* precedent supports correction to ensure due process and remove unjust orders that penalize Dillon-Capps unfairly. Correction of these rulings would rectify previous overreaches and prevent further injustice.

3.    **Transparency and Accountability in Preserving Evidence of Misconduct**: Correcting the record should retain evidence of prior procedural and ethical violations by Plaintiff and M&S, as this documentation is integral to Dillon-Capps's claims of abuse of process, malicious prosecution, and fraud upon the court. Under *Sieck v. Sieck*, Maryland courts recognize that revising judgments for accuracy does not equate to omitting evidence of misconduct. Correcting prior rulings without erasing instances of procedural abuse preserves the integrity of the record for related claims and future proceedings.

4.    **Protecting Dillon-Capps's Rights and Due Process**: The cumulative procedural abuses and misrepresentations in this case have compromised Dillon-Capps's right to a fair defense and due process. Judicial correction, consistent with Maryland's revisory power under Rule 2-535, allows the court to correct rulings that were influenced by procedural errors or deceptive practices. Ensuring an accurate record upholds Dillon-Capps's rights, reduces harm, and affirms the court's commitment to maintaining fair proceedings.

634    Maryland's revisory power and judicial precedents support correcting the record in Dillon-Capps's case to address rulings influenced by misrepresentation, procedural abuse, and rulings that exceeded judicial discretion. These corrections would restore fairness to the proceedings, prevent further harm to Dillon-Capps, and preserve evidence of misconduct critical to related and future claims.

635    Maryland law, grounded in statutory and common law authority, provides a clear foundation for judicial correction of the court record when errors, procedural abuses, or fraudulent conduct have tainted prior rulings. In Dillon-Capps's case, the court's revisory power is essential to correct errors, vacate unjust orders, and ensure that the record accurately reflects the substance of procedural violations without omitting evidence of prior misconduct. Correcting the record in this context upholds judicial integrity, protects Dillon-Capps's rights, and maintains accountability within the judicial process.

## KK  Ruling in Favor or the Party with a Legitimate Claim

1    Foundations for Ruling in Favor of the Legitimate Claim in Maryland Law

636    Maryland law emphasizes the court's obligation to rule in favor of parties presenting

credible and legitimate claims, particularly where one party's conduct demonstrates bad faith,

abuse of process, or failure to substantiate their assertions. **Md. Code Ann., Cts. & Jud. Proc.**

**§§ 10-501 and 10-503** incorporate principles of common law equity, mandating fairness and

integrity in adjudication. The common law doctrine of **unclean hands** prevents a party from

obtaining relief if they have engaged in unethical behavior that undermines the justice process,

reinforcing the principle that courts should favor legitimate claims over procedurally or

substantively abusive conduct.

637    Key statutes and doctrines supporting rulings favoring legitimate claims include:

1.    **Md. Code Ann., Cts. & Jud. Proc. § 3-409(e)**: Permits courts to declare rights

and resolve claims in favor of the party with a substantiated and legitimate position,

particularly in cases involving declaratory or equitable relief.

2.    **Common Law Principle of "Clean Hands"**: Maryland courts consistently apply

the doctrine of unclean hands, denying relief to parties acting unethically or deceitfully.

This principle supports rulings favoring the legitimate claims of the party who has acted

in good faith.

3.    **Md. Rules, Rule 1-201 (Construction of Rules)**: Requires that court rules be

interpreted to secure fairness, enabling courts to prioritize legitimate claims over those

brought in bad faith or without factual or legal basis.

638    These foundations guide Maryland courts to favor parties with legitimate, credible

claims, particularly when one party has demonstrated procedural abuses or fraudulent intent.

## 2    Judicial Standards for Ruling in Favor of a Legitimate Claim

639    Maryland courts evaluate the legitimacy of claims by assessing:

     1.    **Credibility and Good Faith of the Claimant**: Courts favor claims where the claimant demonstrates integrity, consistency, and adherence to legal standards.

     2.    **Absence of Procedural or Substantive Abuse**: Courts are inclined to favor the legitimate claims of parties who have not engaged in tactics that obstruct or manipulate the judicial process.

     3.    **Reliability and Sufficiency of Evidence**: Maryland courts favor claims that are supported by credible, consistent, and substantial evidence, aligning with principles of fairness and efficiency in adjudication.

640    These standards help Maryland courts identify and rule in favor of legitimate claims, protecting parties from unfounded or abusive litigation tactics that lack substantive justification.

## 3    Maryland Case Law

641    **Stuart Kitchens, Inc. v. Stevens**, 248 Md. 71, 234 A.2d 749 (1967): The Maryland Court of Appeals held that courts should favor claims based on reliable evidence and consistent testimony, particularly where the opposing party's conduct suggests unethical behavior or procedural abuse. The court emphasized that judgments must reflect fairness and truthfulness in submissions.

642    **Manown v. Adams**, 328 Md. 463, 615 A.2d 611 (1992): Maryland's highest court confirmed that the doctrine of unclean hands bars relief for parties who act in bad faith or engage in dishonest tactics. This doctrine reinforces the preference for ruling in favor of the party whose claim is presented with integrity and credibility.

643    **Ashcraft & Gerel v. Shaw**, 126 Md. App. 325, 728 A.2d 798 (1999): The court

emphasized that courts should not reward litigants who use judicial processes improperly. The

ruling reinforced that Maryland courts favor claims of parties acting in good faith, particularly

when the opposing party's tactics are aimed at obstructing justice.

4      Application to Ruling in Favor of Dillon-Capps's Legitimate Claims

644    In Dillon-Capps's case, Maryland's standards strongly favor ruling in favor of Dillon-

Capps's legitimate claims, as the Plaintiff and M&S have demonstrated repeated procedural

abuses, misrepresentations, and bad faith conduct. Maryland's doctrine of unclean hands and

principles for favoring legitimate claims support Dillon-Capps's case, as Plaintiff's actions

consistently indicate an attempt to mislead the court and evade accountability. Key factors

include:

    1.      **Evidence of Good Faith and Consistent Claims by Dillon-Capps**: Dillon-

    Capps has presented credible evidence, including healthcare documentation, FMLA

    records, and ADA testimony, which collectively support Dillon-Capps's legitimate

    claims for relief. Maryland's standards in *Stuart Kitchens, Inc. v. Stevens* favor rulings

    based on reliable, consistent evidence. Dillon-Capps's submissions reflect integrity,

    substantiating a clear, credible basis for their claims, unlike the contradictory and evasive

    submissions from Plaintiff.

    2.      **Pattern of Procedural Abuses and Contradictory Statements by Plaintiff**:

    Plaintiff and M&S have engaged in multiple procedural abuses, including obtaining a no-

    notice TRO, filing contradictory affidavits, and submitting misleading statements

    regarding Dillon-Capps's FMLA entitlements. *Manown v. Adams* supports denying relief

to parties engaging in bad faith, as Plaintiff's procedural misconduct exemplifies unethical tactics intended to delay and manipulate the judicial process. Ruling in favor of Dillon-Capps aligns with Maryland's standards, as Plaintiff's conduct lacks credibility and ethical foundation.

3. **Failure of Plaintiff's Claims Due to Lack of Factual or Legal Basis**: Plaintiff's continued reliance on unsupported claims and misleading procedural tactics, particularly in light of Dillon-Capps's legitimate counterclaims, justifies a ruling in Dillon-Capps's favor. Maryland's standard in *Ashcraft & Gerel v. Shaw* indicates that courts should favor parties whose claims are grounded in good faith and reliable evidence, especially when the opposing party seeks advantage through procedural manipulation. Dillon-Capps's evidence meets Maryland's credibility standards, supporting an equitable resolution that favors legitimate claims over baseless accusations.

4. **Unclean Hands Doctrine as a Bar to Plaintiff's Relief**: Maryland's unclean hands doctrine supports ruling against Plaintiff's claims entirely, as their conduct demonstrates repeated instances of procedural abuse, deceit, and evasion of accountability. The doctrine bars parties from benefiting from dishonest tactics, and Plaintiff's reliance on these tactics to advance their case directly supports Dillon-Capps's claims of malicious prosecution and abuse of process. Applying the unclean hands doctrine justifies dismissing Plaintiff's claims and ruling in Dillon-Capps's favor, consistent with Maryland's principles of fairness and judicial integrity.

645    Maryland's legal standards, rooted in both statutory and case law, clearly favor ruling in Dillon-Capps's favor. The Plaintiff's and M&S's abuse of process, procedural manipulation, and

unethical conduct strengthen Dillon-Capps's claims under Maryland's preference for credible, good faith claimants and the application of the unclean hands doctrine.

646     Maryland law, grounded in both statutory and common law principles, provides a clear foundation for courts to rule in favor of the party presenting a legitimate claim. In Dillon-Capps's case, Plaintiff's bad faith conduct, procedural abuses, and misrepresentations undermine the validity of their claims, supporting a ruling in favor of Dillon-Capps under Maryland's standards for legitimate claims. Applying these standards ensures that Maryland courts uphold the principles of fairness, accountability, and justice by protecting the rights of credible parties and disfavoring claims advanced through deceitful or unethical tactics.

## LL  6. Circuit Court Authority to Set Precedent of Reciprocal Relief

### 1     Foundations for Circuit Court Authority to Set Precedent of Reciprocal Relief in Maryland Law

647     Maryland law provides circuit courts with broad authority to establish equitable remedies, including reciprocal relief, to address malicious litigation practices, prevent unjust enrichment, and uphold public policy. The statutory provisions under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** authorize Maryland courts to adopt and expand on common law principles, enabling them to address new issues that require equitable remedies. The doctrine of unjust enrichment, along with Maryland's public policy favoring fairness, justice, and deterrence against procedural abuse, reinforces the court's authority to craft remedies that address specific harms resulting from bad-faith litigation.

648     Key statutes and doctrines supporting reciprocal relief as an equitable remedy include:

1.    **Md. Code Ann., Cts. & Jud. Proc. § 1-201**: Empowers Maryland courts to apply common law principles, which include doctrines such as unjust enrichment and restitution, particularly when one party has unfairly benefited at the expense of another.

2.    **Maryland Doctrine of Unjust Enrichment and Restitution**: This doctrine allows courts to order equitable remedies when one party gains at the expense of another through wrongful or fraudulent conduct. Unjust enrichment supports reciprocal relief as a way to restore equity by denying the offending party any benefit derived from unethical or malicious actions.

3.    **Public Policy Supporting Deterrence and Protection Against Abuse**: Maryland's public policy endorses deterrence of malicious litigation and procedural abuses that harm parties and burden judicial resources. Circuit courts have the authority to establish remedies that discourage misconduct and protect the integrity of the legal system.

649    These foundations affirm Maryland circuit courts' ability to create reciprocal relief as a precedent-setting remedy in cases involving procedural abuse, unethical litigation practices, and unjust enrichment.

2    <u>Judicial Standards for Establishing Precedent for Reciprocal Relief</u>

650    Maryland courts use specific standards to justify the establishment of reciprocal relief:

1.    **Preventing Unjust Enrichment**: Courts examine whether a party has benefited at another's expense through misconduct. In cases where one party's actions result in unjust gains, reciprocal relief is warranted to prevent the offender from profiting from their wrongful conduct.

2.   **Deterrence as a Public Policy Objective**: Courts consider if reciprocal relief is necessary to deter similar abuses, safeguarding judicial resources and protecting future litigants from malicious practices.

3.   **Alignment with Public Policy for Fair and Ethical Litigation**: Maryland courts weigh public policy considerations, including maintaining judicial integrity and upholding ethical litigation practices, in determining the appropriateness of reciprocal relief.

651   These standards ensure that reciprocal relief is not only an effective remedy for addressing harm but also aligns with Maryland's goals of preventing unjust enrichment, promoting fairness, and deterring procedural abuses.

## 3   Maryland Case Law

652   **Hammond v. Marketing Management, Inc.**, 445 Md. 310, 126 A.3d 1137 (2015): The Maryland Court of Appeals recognized that equitable remedies may evolve to address unique harms that threaten fairness and public policy. The court emphasized the importance of equitable relief in protecting against unjust enrichment and discouraging conduct that undermines judicial integrity.

653   **Wooldridge v. Price**, 184 Md. 443, 41 A.2d 61 (1945): This case affirmed that Maryland courts hold authority to address unjust enrichment through equitable remedies. The court held that parties should not benefit from wrongful actions at the expense of others, reinforcing that reciprocal relief is appropriate to prevent unjust enrichment.

654   **Standard Fire Ins. Co. v. Berrett**, 395 Md. 439, 910 A.2d 1072 (2006): The court ruled that circuit courts have discretion to provide equitable relief to prevent harm and deter

Page **227** of **329**

misconduct. The decision supports reciprocal relief as a way to protect against future harm and uphold judicial efficiency.

### 4    Cross-Argument Supporting Case Law

655    **Everhart v. Miles,** 47 Md. App. 131, 422 A.2d 28 (1980): This case reinforced that Maryland courts may order restitution or reciprocal relief to prevent unjust enrichment and safeguard against abuse of judicial processes. The court held that equity requires remedial measures when one party has suffered due to another's wrongful actions.

656    **Attorney Grievance Comm'n v. Byrd**, 408 Md. 449, 970 A.2d 870 (2009): The Maryland Court of Appeals emphasized public policy considerations in determining sanctions, noting that deterrence is a valid and necessary judicial goal to prevent unethical practices. Reciprocal relief can serve as a similar deterrent against procedural misconduct in civil cases.

657    **Beery v. Maryland Medical Laboratory, Inc.,** 89 Md. App. 81, 597 A.2d 516 (1991): This case held that courts may impose corrective measures to address abuses of the judicial process, affirming that Maryland courts have broad discretion to craft remedies that protect against abusive litigation and uphold the public interest.

### 5    Application to Reciprocal Relief in Dillon-Capps's Case

658    In Dillon-Capps's case, establishing reciprocal relief serves a dual purpose: preventing unjust enrichment by denying Plaintiff the benefits of their bad-faith conduct, and deterring future procedural abuses. Maryland's doctrine of unjust enrichment and public policy goals strongly support reciprocal relief, as Plaintiff's conduct has been harmful, unfairly advantageous, and against Maryland's judicial principles. Key points include:

1.    **Preventing Plaintiff's Unjust Enrichment Through Malicious Litigation**:

Plaintiff and M&S have used procedural abuses to obtain undue advantage, including

securing a no-notice TRO, evading counterclaims, and avoiding accountability through a

voluntary dismissal. These actions indicate that Plaintiff's intention was to gain through

deceit and procedural manipulation. Under *Wooldridge v. Price* and *Everhart v. Miles*,

Maryland courts are justified in applying reciprocal relief to deny Plaintiff any benefit

from these tactics and to restore equity to Dillon-Capps.

2.    **Deterring Future Abuse and Protecting Judicial Integrity**: Plaintiff's and

M&S's persistent bad-faith litigation practices suggest a need for deterrent measures to

prevent similar conduct in future cases. Under *Attorney Grievance Comm'n v. Byrd*,

Maryland courts recognize deterrence as a fundamental public policy objective. By

setting a precedent for reciprocal relief, the court sends a clear message that procedural

abuse and malicious litigation tactics will not go unpunished, deterring other litigants

from attempting similar conduct.

3.    **Alignment with Public Policy Favoring Fair and Ethical Litigation**:

Maryland's legal framework prioritizes fairness and public trust in judicial processes. The

Plaintiff's actions—contradictory statements, procedural evasions, and exploitation of

judicial rulings—undermine these values. Reciprocal relief, as supported by *Standard

Fire Ins. Co. v. Berrett* and *Beery v. Maryland Medical Laboratory, Inc.*, aligns with

Maryland's public policy goals by holding parties accountable for actions that

compromise the fairness of proceedings. This remedy ensures that Dillon-Capps's rights

are protected and that public confidence in the court is restored.

4.    **Equitable Remedy to Address Harm and Promote Justice**: The Plaintiff's

procedural abuses have inflicted ongoing harm to Dillon-Capps, including reputational,

financial, and emotional damage. Under *Hammond v. Marketing Management, Inc.*,

Maryland courts are empowered to provide equitable relief that directly addresses the

harm endured by litigants facing malicious actions. Reciprocal relief would allow the

court to remedy these injuries effectively, restoring balance to the proceedings and

protecting Dillon-Capps from further harm.

659    Establishing reciprocal relief as a precedent in this case upholds Maryland's commitment

to preventing unjust enrichment, deterring malicious litigation, and promoting public trust. The

cumulative effect of Plaintiff's procedural abuses, combined with the need to protect future

litigants, strongly supports reciprocal relief as a remedy that aligns with Maryland's equitable

principles and public policy.

660    Maryland law, grounded in statutory authority, common law principles, and public policy

considerations, provides a robust foundation for circuit courts to establish reciprocal relief as a

precedent-setting remedy. In Dillon-Capps's case, the Plaintiff's persistent procedural abuses,

bad-faith conduct, and unjust enrichment justify reciprocal relief. This remedy not only

compensates Dillon-Capps for the harm suffered but also deters similar conduct and promotes

fairness, transparency, and ethical standards within Maryland's judiciary. By setting this

precedent, the court reinforces Maryland's commitment to justice, ensuring that bad-faith

litigants are held accountable and that Maryland's legal system remains a protector against abuse

and exploitation.

## VIII  SANCTIONS

## A   Introduction

661   The case against Dillon-Capps rests on unfounded allegations that fail to establish a legitimate claim for relief, grounded instead in conduct that violates Dillon-Capps's rights under the Family and Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA), compounded by retaliatory actions, breach of a prior written accord, perjury, and procedural misconduct. Ohana and its counsel, Miles & Stockbridge, have engaged in a pattern of misconduct that invalidates any claim for relief, supporting sanctions under Maryland law.

662   Maryland's statutory and common law framework provides clear grounds for the court to assess the legitimacy of claims and impose sanctions for abuses, particularly where claims are retaliatory, rooted in bad faith, or brought without substantial justification. Specifically:

1.   **Violation of Protected Rights**: The Plaintiff has engaged in actions that directly infringe on Dillon-Capps's rights under the FMLA and ADA, as confirmed in court filings and statements. These violations invalidate any legal basis for injunctive relief and constitute a fundamental breach of Dillon-Capps's protected rights.

2.   **Estoppel and Breach of Accord**: Ohana and its counsel violated the terms of a June 7th accord agreed upon to resolve ongoing issues, creating an estoppel that bars them from bringing claims that contradict or breach the accord's terms. This includes Ohana's evasion of compliance on June 10th and 11th, coupled with its subsequent filing of misleading affidavits.

3.   **Fraudulent and Retaliatory Conduct**: The Plaintiff's actions reflect not only a disregard for established legal rights but also malicious intent to harm and retaliate against Dillon-Capps. These actions support claims of malicious prosecution and abuse of

process, warranting sanctions for unjustified and frivolous litigation under **Md. Rules, Rule 1-341**.

4.    **Perjury and False Claims**: The affidavits filed by Ohana executives, including Richard Hartman and Justin Drummond, and expert Randall Romes contain statements that are misleading or directly false, violating Maryland's **Md. Code Ann., Crim. Law § 9-101** against perjury and undermining judicial integrity.

663    Maryland courts hold that a party engaging in litigation without substantial justification, in bad faith, or for improper purposes must face consequences to deter future abuse and uphold judicial integrity. Under **Rule 1-341** and related common law doctrines on abuse of process and malicious prosecution, Ohana and its counsel should bear full accountability for the baseless and coercive litigation that they have pursued against Dillon-Capps.

664    To address the cumulative misconduct by Ohana and its counsel, the court is urged to impose sanctions that include compensatory relief, dismissal of the Plaintiff's claims, and a referral for ethical investigation under the Maryland Attorneys' Rules of Professional Conduct, **Rules 3.3(a), 4.1, and 8.4(c)**. These sanctions align with Maryland's objective of deterring frivolous and unethical litigation practices, preserving judicial resources, and protecting Dillon-Capps's rights from further harm.

## B  General Sanctions under Md. Rule 1-341

665    Foundation for Sanctions under Md. Rule 1-341

666    **Maryland Rule 1-341** provides that a court may impose sanctions, including attorneys' fees and costs, on any party or attorney who initiates or maintains proceedings in **bad faith, without substantial justification**, or for **improper purposes**. This rule deters misuse of judicial

resources and protects parties from groundless claims, harassment, and undue harm. Rule 1-341 embodies Maryland's commitment to maintaining judicial integrity by addressing and penalizing malicious, frivolous, or vexatious litigation practices, including spoliation, witness tampering, wrongful termination, and defamation.

## 1    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Md. Rule 1-341

667    Sanctions under Rule 1-341 serve several essential purposes:

1.    **Deterrence of Improper Litigation Practices**: Prevents parties from filing claims or motions solely to harass, delay, coerce, or impose undue burden on the opposing party.

2.    **Preservation of Judicial Integrity**: Ensures the court system remains a forum for legitimate disputes, not a tool for vindictive or baseless actions.

3.    **Promotion of Accountability**: Holds parties and attorneys responsible for engaging in litigation without proper basis or with malicious intent.

4.    **Protection of Defendants' Rights**: Shields individuals from enduring financial and emotional harm caused by frivolous or unfounded claims, particularly when actions are maintained purely for harassment.

## 2    Criteria for Imposing Sanctions:

668    **Lack of Substantial Justification**: Claims are clearly without merit or legal grounds, indicating they were filed without reasonable belief in their success.

669    **Improper Purpose**: Filings were intended to harass, coerce, delay, or cause harm rather than resolve a legitimate legal dispute.

670    **Bad Faith**: Litigants acted with malicious intent or a reckless disregard for the truth, often indicated by perjured statements, abuse of process, or manipulation of court procedures.

### 3    Maryland Case Law

671    **Inlet Assocs. v. Assateague House Condo. Ass'n**, 313 Md. 413, 545 A.2d 1296 (1988): The Maryland Court of Appeals held that sanctions under Rule 1-341 are appropriate when a party's actions lack substantial justification and demonstrate improper motive. This case established that bad-faith litigation warrants sanctions to deter future misuse of the judicial system.

672    **Majority Properties, Inc. v. Town of Hancock**, 333 Md. 3, 633 A.2d 392 (1993): This case clarified that sanctions are warranted when actions are taken without substantial justification or are filed to delay or harass. Sanctions were imposed to uphold judicial integrity and ensure accountability in cases involving improper use of litigation.

673    **Needle v. White**, 81 Md. App. 463, 568 A.2d 856 (1990): The Maryland Court of Special Appeals affirmed that frivolous claims lacking legal or factual basis warrant sanctions, especially when they reveal a pattern of abuse or intent to harm the opposing party.

### 4    Supporting Case Law Beyond Maryland

674    **Christianburg Garment Co. v. EEOC**, 434 U.S. 412 (1978): The U.S. Supreme Court upheld sanctions for frivolous litigation, finding that suits filed without legal merit justify financial penalties, which serve to deter abuse of judicial resources.

675    **Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): This case confirmed the authority of federal courts to impose sanctions for baseless claims pursued with improper intent, underscoring the judiciary's power to penalize frivolous conduct.

5    Cross Argument Case Law

676    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court reinforced the

inherent power of courts to sanction litigants for vexatious or abusive conduct, highlighting the

judiciary's duty to maintain fair proceedings free from harassment and bad-faith tactics.

677    **Miller v. Bittner**, 50 Md. App. 302, 437 A.2d 81 (1981): The Maryland Court of Special

Appeals emphasized that courts may impose sanctions to prevent the abuse of legal processes,

protecting the judicial system from baseless claims intended solely to harass or intimidate.

6    Application to Dillon-Capps's Case

678    In Dillon-Capps's case, the conduct of Ohana and M&S meets the criteria for sanctions

under Rule 1-341 based on the following framework elements:

1.    **Abuse of Process**: Ohana and M&S repeatedly misused procedural mechanisms,

including show cause orders and coercive filings, to compel Dillon-Capps's compliance

and intimidate them. This aligns with *Inlet Assocs. v. Assateague House Condo. Ass'n*,

which imposed sanctions for procedural abuse lacking substantial justification.

2.    **Perjury and Material Misstatements**: Numerous affidavits and filings from

Ohana and M&S contained false or misleading information, which aimed to mislead the

court and substantiate baseless claims. *Majority Properties, Inc. v. Town of Hancock*

emphasized that sanctions should be imposed when submissions misrepresent facts and

lack credibility.

3.    **Spoliation of Evidence**: The refusal to provide key documents, including the

June 26th hearing transcript needed for Dillon-Capps's defense, constitutes spoliation.

This obstruction hindered fair proceedings, fitting the criteria for sanctions in *Klupt v. Krongard*, where destruction or withholding of evidence was sanctionable.

4.     **Witness Tampering**: Any actions by Ohana or M&S to influence or restrict witness statements—whether directly or indirectly—are sanctionable under Rule 1-341. Witness tampering impairs the truth-finding function of litigation, and sanctions prevent interference with the judicial process, as in *United States v. Fields*.

5.     **Wrongful Termination**: Ohana's retaliatory suspension and termination of Dillon-Capps during protected FMLA leave reflect an abuse of legal process for improper motives. *Adler v. Am. Standard Corp.* recognized wrongful termination as actionable, warranting sanctions when driven by retaliatory intent.

6.     **Defamation and Damage to Reputation**: Ohana and M&S's defamatory statements throughout litigation filings were designed to harm Dillon-Capps's reputation, demonstrating malicious intent. Sanctions are appropriate under Rule 1-341 for defamation as part of abuse of process, as supported in *Samuels v. Tschechtelin*.

7.     **Obstruction of Evidence**: The refusal to provide the transcript Dillon-Capps required for defense reflects deliberate evidence obstruction, further compounding the lack of substantial justification in pursuing this case. This aligns with *Chambers v. NASCO, Inc.*, where obstruction and bad-faith litigation justified severe sanctions.

8.     **Malicious Prosecution and Vexatious Litigation**: Ohana and M&S's conduct, including initiating litigation without legitimate purpose and continuing filings intended to harass, fits Maryland's standard for imposing sanctions under Rule 1-341 for vexatious

litigation. This misconduct aligns with *Needle v. White*, where repeated baseless claims

warranted penalties to deter future abuse.

9.    **Intentional Harassment**: The entire pattern of conduct by Ohana and M&S was

aimed at imposing emotional, financial, and professional strain on Dillon-Capps,

demonstrating a clear lack of justification and improper intent. This case parallels

*Christianburg Garment Co. v. EEOC*, where sanctions were used to counter harassing

litigation tactics.

## 7    Conclusion

679    Under **Md. Rule 1-341**, the conduct of Ohana and M&S in pursuing baseless claims and improper tactics against Dillon-Capps warrants sanctions to preserve judicial resources, deter abuse, and protect defendants from malicious litigation. Supported by Maryland and national precedents, the court should impose severe penalties to uphold judicial integrity and deter future misuse of the judicial system, as established in *Inlet Assocs. v. Assateague House Condo. Ass'n*, *Majority Properties, Inc. v. Town of Hancock*, and other cases.

## C   Voluntary Dismissal under Md. Rule 2-506

### 1    Foundation for Sanctions under Md. Rule 2-506

680    **Maryland Rule 2-506** governs voluntary dismissals in civil cases. While it generally

allows plaintiffs to withdraw their claims without prejudice, **Rule 2-506(b)** provides that the

court may impose conditions on such dismissals, particularly when there is evidence the

dismissal is used to avoid accountability, evade a counterclaim, or manipulate the judicial

process. Improperly using voluntary dismissal to escape sanctions or prevent judicial scrutiny

undermines the integrity of the judicial process and warrants sanctions.

### 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Md. Rule 2-506

681    Sanctions under Rule 2-506 are imposed to:

1.    **Prevent Abuse of Voluntary Dismissal**: Sanctions deter parties from using dismissal as a tactical tool to avoid liability, accountability, or adverse rulings.

2.    **Preserve the Integrity of the Judicial Process**: By penalizing misuse of voluntary dismissal, courts ensure that litigation serves its intended purpose—to resolve disputes based on the merits, not avoid them.

3.    **Ensure Fair Adjudication of Counterclaims**: Courts sanction dismissals that interfere with an opposing party's legitimate right to pursue counterclaims or defenses.

4.    **Prevent Procedural Manipulation and Delay**: Sanctions discourage plaintiffs from dismissing cases simply to delay proceedings or harass the defendant.

3    Criteria for Imposing Sanctions under Rule 2-506:

682    **Improper Purpose**: The dismissal is filed not to resolve a dispute but to evade judicial scrutiny, avoid sanctions, or manipulate procedural timing.

683    **Prejudice to the Opposing Party**: The opposing party faces undue harm or procedural disadvantage because of the dismissal, particularly if they have counterclaims or defenses that remain unresolved.

684    **Bad Faith or Evasion of Accountability**: The plaintiff seeks to dismiss with the intent to avoid repercussions from baseless or malicious claims.

4    Maryland Case Law

685    **Hossainkhail v. Gebrehiwot**, 143 Md. App. 716, 795 A.2d 816 (2002): The Maryland Court of Special Appeals held that voluntary dismissal under Rule 2-506 may be conditioned on payment of costs or fees when the dismissal prejudices the defendant or aims to evade liability.

The court emphasized that voluntary dismissal should not serve as a means to escape accountability.

686    **Merritt v. Mendelson**, 94 Md. App. 144, 616 A.2d 1023 (1992): The court held that plaintiffs could not use voluntary dismissal as a tactical maneuver to avoid pending counterclaims. When dismissals disrupt the equitable resolution of all claims, sanctions or conditions are warranted.

687    **Janusz v. Gilliam**, 404 Md. 524, 947 A.2d 560 (2008): The Maryland Court of Appeals confirmed that voluntary dismissal must not prejudice the opposing party's right to pursue legitimate claims. If a dismissal unfairly disadvantages the opposing party, sanctions or other conditions are justified.

5    Supporting Case Law Beyond Maryland

688    **Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.**, 771 F.2d 5 (1st Cir. 1985): The First Circuit held that courts may condition voluntary dismissals to prevent prejudice to the defendant, especially when there is evidence that dismissal was filed in bad faith to avoid liability.

689    **Ohlander v. Larson**, 114 F.3d 1531 (10th Cir. 1997): The Tenth Circuit ruled that courts may impose sanctions when a plaintiff dismisses a case to avoid an adverse ruling or sanctions, particularly if the dismissal prejudices the defendant.

6    Cross Argument Case Law

690    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court upheld sanctions against a party who attempted to manipulate procedural rules, emphasizing that courts have inherent authority to penalize parties who misuse procedural tools to avoid accountability.

691    **Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): The Court underscored that

judicial authority extends to imposing sanctions for actions intended to disrupt or evade the fair

administration of justice, reinforcing the deterrence of tactical dismissals.

7    <u>Application to Dillon-Capps's Case</u>

692    In Dillon-Capps's case, Ohana and M&S's voluntary dismissal reflects an improper

attempt to evade accountability and avoid judicial scrutiny of counterclaims:

> 1.    **Improper Purpose to Evade Accountability**: Ohana and M&S's voluntary
>
> dismissal was filed after Dillon-Capps presented counterclaims and requested a hearing
>
> to address the plaintiff's misconduct, indicating that the dismissal was not intended to
>
> resolve the dispute but to avoid an adverse ruling. This aligns with *Hossainkhail v.*
>
> *Gebrehiwot*, where sanctions were imposed to deter evasive dismissal tactics.
>
> 2.    **Prejudice to the Defendant's Counterclaims**: By dismissing the case, Ohana
>
> and M&S sought to deprive Dillon-Capps of the opportunity to litigate counterclaims,
>
> undermining their right to pursue legal redress. This tactic parallels *Merritt v. Mendelson*,
>
> where courts rejected dismissals that disrupted fair adjudication of both parties' claims.
>
> 3.    **Bad Faith Evasion of Sanctions**: The timing of the voluntary dismissal, filed
>
> shortly before proceedings that would scrutinize Ohana and M&S's conduct, indicates an
>
> attempt to avoid sanctions. This behavior fits the criteria set in *Janusz v. Gilliam*, where
>
> dismissals filed to evade scrutiny were penalized to preserve judicial integrity.
>
> 4.    **Intentional Manipulation of Court Procedures**: The filing of a voluntary
>
> dismissal as a last-minute tactic to evade ongoing proceedings constitutes procedural

manipulation, as discussed in *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, supporting sanctions for this abuse of judicial resources.

## 8    Conclusion

693    Ohana and M&S's use of voluntary dismissal to evade accountability and hinder Dillon-Capps's counterclaims constitutes an abuse of **Md. Rule 2-506**. Maryland case law and broader legal precedents support imposing sanctions to deter misuse of voluntary dismissals, protect defendants' rights, and ensure that dismissals are not filed in bad faith to evade repercussions. The court should condition this dismissal by imposing sanctions on Ohana and M&S, consistent with the principles established in *Hossainkhail v. Gebrehiwot*, *Merritt v. Mendelson*, and *Janusz v. Gilliam*.

### D    Rule 4.1 - Truthfulness in Statements to Others

#### 1    Foundational Principles and Purpose of Rule 4.1

694    **Rule 4.1** of the Maryland Attorneys' Rules of Professional Conduct mandates that attorneys remain truthful in all statements related to litigation, including pre-trial communications with opposing parties, witnesses, and other involved parties. Rule 4.1 prohibits attorneys from knowingly concealing or distorting material facts to gain an advantage, ensuring that fair dealing is upheld throughout all stages of litigation. This rule extends beyond direct statements to cover intentional omissions or manipulations of material facts that would mislead others.

695    Key components of Rule 4.1 include:

1.    **Duty of Honesty and Integrity in All Interactions**: Attorneys are obligated to provide truthful information and refrain from deceptive tactics, ensuring the accuracy and reliability of information shared with others.

2.    **Prohibition of Concealment**: Rule 4.1 bars attorneys from omitting material facts with the intent to deceive, preserving fairness in all statements related to the case.

3.    **Promotion of Fair Dealing and Transparency**: The rule protects the integrity of the legal process by ensuring that opposing parties and witnesses are not misled by misinformation or concealed facts.

2    Judicial Standards and Purpose from Maryland Precedent

696    Maryland courts uphold Rule 4.1 to ensure that:

1.    **Pre-Trial Integrity is Preserved**: Attorneys are held to a standard of truthfulness that extends to pre-trial interactions, preventing unethical tactics that could mislead or prejudice the opposing party.

2.    **Accountability for Deceptive Practices**: Sanctions for breaches of Rule 4.1 reinforce that attorneys must engage in honest dealings, creating a fair and equitable pre-trial environment.

3.    **Deterrence of Dishonest Tactics**: Sanctions serve as a deterrent against the use of misleading statements or concealment of facts that could distort case proceedings or disadvantage the opposing party.

3    Criteria for Establishing a Breach of Rule 4.1

697    Maryland courts impose sanctions for breaches of Rule 4.1 when the following criteria are met:

1.    **Intentional Concealment or Misrepresentation**: The attorney must have knowingly concealed or distorted material facts, either by direct misrepresentation or by omission, with the intent to mislead others involved in the case.

2.    **Materiality of the Information**: The concealed or distorted facts must be material, meaning they could reasonably affect the decisions or actions of the opposing party, witnesses, or the tribunal.

3.    **Intent to Mislead**: The attorney's actions must demonstrate an intent to mislead, either through false statements or by withholding information that is necessary for fair dealing and transparency.

## 4    Maryland Case Law on Rule 4.1

698    **Attorney Grievance Commission v. Hodes**, 441 Md. 136, 105 A.3d 533 (2014): The Maryland Court of Appeals sanctioned an attorney for intentional deception, ruling that the concealment or misrepresentation of material facts in pre-trial interactions violates Rule 4.1. The court held that pre-trial integrity requires full disclosure of material facts and that deceptive tactics are subject to sanctions.

699    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): The Maryland Court of Special Appeals found that intentionally misrepresenting facts to gain a litigation advantage constitutes a violation of both ethical and procedural standards, underscoring that Rule 4.1 prohibits attorneys from concealing information necessary to prevent deception.

## 5    Supporting Case Law Beyond Maryland

700    **In re Sealed Case**, 890 F.2d 451 (D.C. Cir. 1989): The D.C. Circuit ruled that attorneys must act honestly in all statements related to litigation, prohibiting omissions or

misrepresentations of material facts. The case reinforces the standard that pre-trial integrity

requires full disclosure and sanctions for any deceptive practices.

701    **United States v. Shaffer Equipment Co.**, 11 F.3d 450 (4th Cir. 1993): The Fourth

Circuit held that attorneys' duty of candor and transparency extends to all aspects of litigation,

including pre-trial statements. The case supports sanctions where attorneys knowingly mislead

opposing parties or the court through omissions.

## 6    Cross-Argument Case Law: Rule 4.1 and Misconduct

702    **Attorney Grievance Commission v. Agbaje**, 438 Md. 695, 93 A.3d 262 (2014): The

Maryland Court of Appeals found that intentionally misleading statements during litigation

violate Rule 4.1, supporting sanctions to uphold integrity in both pre-trial and trial interactions.

703    **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376, 773 A.2d 463 (2001):

The court reinforced that misrepresentation or deceit in statements made to others constitutes a

serious breach of professional ethics, warranting sanctions under Rule 4.1 to deter dishonest

practices.

## 7    Application to Dillon-Capps's Case

704    In Dillon-Capps's case, Miles & Stockbridge (M&S) breached Rule 4.1 by manipulating

material facts and omitting key information in affidavits and pre-trial statements, intending to

distort the court's understanding of Dillon-Capps's employment, FMLA rights, and interactions

with HEA. These breaches directly impacted Dillon-Capps's ability to respond accurately and

defend against the claims.

   1.    **Intentional Misrepresentation of Material Facts**: M&S presented affidavits that

         selectively omitted key facts regarding Dillon-Capps's FMLA rights and the events on

June 13th. The exclusion of relevant details about HEA's involvement and the pre-trial written accord on June 7th reflects a deliberate attempt to mislead. This conduct aligns with *Attorney Grievance Commission v. Hodes*, where intentional concealment warranted sanctions for violating Rule 4.1.

2.    **Materiality of the Omitted Information**: The withheld information, particularly regarding the June 7th accord and Dillon-Capps's communications about FMLA leave, significantly influenced the court's perception of the facts. The material omissions meet the criteria established in *Klupt v. Krongard*, demonstrating that M&S's omissions were relevant to Dillon-Capps's defense.

3.    **Intent to Mislead and Conceal**: M&S's actions indicate an intent to mislead Dillon-Capps and the court by selectively presenting only facts that supported Ohana's narrative while omitting evidence that would undermine their claims. This pattern of concealment and distortion reflects a deliberate strategy to obstruct a fair and complete understanding of the case, warranting sanctions under Rule 4.1.

705    M&S's actions meet the Maryland criteria for a breach of Rule 4.1, as their selective omissions and distortions misrepresented key aspects of Dillon-Capps's case. The concealment of critical facts in pre-trial statements and affidavits violates Maryland's ethical standards, justifying sanctions to protect fairness and transparency in judicial proceedings.

## 8    Conclusion

706    Maryland law treats violations of Rule 4.1 as serious breaches of professional ethics that compromise pre-trial integrity and obstruct fair litigation. In Dillon-Capps's case, M&S's intentional concealment of material facts demonstrates a clear violation of Rule 4.1, warranting

sanctions to hold M&S accountable, restore pre-trial fairness, and prevent similar misconduct. The court should impose compensatory relief, fines, and a referral for disciplinary review to reinforce Maryland's standards of honesty and fair dealing in legal practice.

## E  Rule 8.4(c) - Misconduct (Dishonesty, Fraud, Deceit, or Misrepresentation)

### 1  Foundational Principles and Purpose of Rule 8.4(c)

707    **Rule 8.4(c)** of the Maryland Attorneys' Rules of Professional Conduct prohibits attorneys from engaging in dishonesty, fraud, deceit, or misrepresentation, categorizing such actions as professional misconduct. This rule underscores the ethical duty of attorneys to maintain honesty, not only in their direct dealings with the court but also in interactions with opposing parties, witnesses, and other individuals involved in litigation. By classifying deceit and misrepresentation as serious ethical violations, Rule 8.4(c) reinforces the integrity and fairness central to Maryland's judicial system.

708    Key elements of Rule 8.4(c) include:

1.    **Commitment to Honesty and Transparency**: Attorneys are required to avoid all forms of dishonesty, including selective omission, misrepresentation, and outright falsehoods.

2.    **Protection of Judicial Integrity**: Rule 8.4(c) safeguards the administration of justice by holding attorneys to the highest standards of honesty and transparency, ensuring that all participants in a case are acting in good faith.

3.    **Prohibition of Manipulative Tactics**: Rule 8.4(c) addresses any conduct intended to deceive or gain an unfair advantage, ensuring that litigation remains fair and equitable.

## 2 Judicial Standards and Purpose from Maryland Precedent

709    Maryland courts uphold Rule 8.4(c) to ensure that:

1. **Fair Administration of Justice is Preserved**: By enforcing sanctions for dishonesty and deceit, courts protect the integrity of judicial proceedings from manipulation.

2. **Accountability for Unethical Conduct**: Maryland courts rely on Rule 8.4(c) to deter attorneys from engaging in unethical behavior, holding them accountable for any dishonest tactics or misrepresentations.

3. **Deterrence of Misconduct in Litigation**: Sanctions under Rule 8.4(c) are intended to discourage deceptive conduct that could compromise fair adjudication and undermine public confidence in the legal profession.

## 3 Criteria for Establishing a Breach of Rule 8.4(c)

710    Sanctions for violations of Rule 8.4(c) are typically warranted when the following criteria are met:

1. **Intentional Dishonesty, Fraud, or Misrepresentation**: The attorney's conduct must involve intentional dishonesty, fraudulent actions, or misrepresentation, with the intent to deceive or manipulate.

2. **Materiality of the Misconduct**: The dishonest actions must be material to the proceedings, meaning they could reasonably affect the court's findings or the opposing party's ability to defend against the claims.

3.    **Purpose of Gaining Unfair Advantage**: The attorney's conduct must show a

motive to gain an unfair advantage in the litigation, rather than to address legitimate legal

claims or defenses.

4    Maryland Case Law on Rule 8.4(c)

711    **Attorney Grievance Commission v. Agbaje**, 438 Md. 695, 93 A.3d 262 (2014): The

Maryland Court of Appeals imposed sanctions on an attorney for repeated dishonesty in legal

matters, affirming that violations of Rule 8.4(c) undermine the legal profession's integrity. The

court ruled that repeated deceit warrants severe sanctions to deter similar conduct.

712    **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376, 773 A.2d 463 (2001):

The court imposed strict sanctions for egregious dishonesty, holding that intentional deception

and fraud in litigation are severe violations of ethical duties, necessitating punitive measures to

uphold the fairness of judicial proceedings.

5    Supporting Case Law Beyond Maryland

713    **In re Sealed Case**, 890 F.2d 451 (D.C. Cir. 1989): The D.C. Circuit emphasized the

necessity for transparency and truthfulness in all legal dealings, imposing sanctions for deceit

and misrepresentation that compromised the fairness of the proceedings.

714    **United States v. Shaffer Equipment Co.**, 11 F.3d 450 (4th Cir. 1993): The Fourth

Circuit reinforced that all participants in litigation must uphold honesty and candor, imposing

sanctions on attorneys whose dishonest tactics distorted the judicial process.

6    Cross-Argument Case Law: Rule 8.4(c) and Professional Misconduct

715    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The

Maryland Court of Appeals sanctioned an attorney for dishonesty and manipulation of

procedural rules, finding that conduct intended to mislead or obstruct justice warrants severe sanctions under Rule 8.4(c).

716    **Attorney Grievance Commission v. Hodes**, 441 Md. 136, 105 A.3d 533 (2014): Maryland's highest court held that intentional misrepresentation during litigation violates Rule 8.4(c), underscoring that dishonesty in any form constitutes serious ethical misconduct deserving of punitive measures.

## 7    Application to Dillon-Capps's Case

717    In Dillon-Capps's case, Miles & Stockbridge (M&S) committed multiple breaches of Rule 8.4(c) through repeated misrepresentations, selective omissions, and deceitful portrayals of key facts. These actions were intended to gain an unfair advantage by distorting the court's understanding of Dillon-Capps's FMLA rights, employment status, and other relevant matters, materially affecting Dillon-Capps's defense.

> 1.    **Intentional Misrepresentation and Dishonesty**: M&S's affidavits and statements selectively omitted crucial details about the June 7th accord, Dillon-Capps's protected FMLA rights, and their interactions with HEA. These omissions and distortions constitute intentional misrepresentation, as they were calculated to mislead the court and impair Dillon-Capps's defense, consistent with the conduct sanctioned in *Attorney Grievance Commission v. Agbaje*.

> 2.    **Materiality of the Misrepresentations**: The facts misrepresented by M&S were directly relevant to Dillon-Capps's defenses and to the court's perception of the case. This conduct meets the standard outlined in *Attorney Grievance Commission v.*

*Vanderlinde*, as the omissions had significant implications for the court's findings and materially prejudiced Dillon-Capps's ability to respond.

3.   **Intent to Gain an Unfair Advantage**: M&S's actions reflect a strategy to gain an advantage by concealing critical information, which would have clarified Dillon-Capps's position. The selective presentation of facts shows a motive to mislead, constituting an abuse of Rule 8.4(c) and violating ethical obligations. This dishonest conduct is in alignment with the findings in *Mixter* and *Hodes*, where intent to gain an unfair advantage was held as a basis for strict sanctions.

718   M&S's repeated misrepresentations and intentional omissions demonstrate clear breaches of Rule 8.4(c), justifying significant sanctions to protect the fairness and integrity of the judicial process.

## 8   Conclusion

719   Violations of Rule 8.4(c) are serious breaches that threaten the fair administration of justice, as they compromise the honesty and transparency essential to judicial proceedings. In Dillon-Capps's case, M&S's deceptive conduct demonstrates a consistent pattern of unethical behavior, warranting sanctions to correct the court record, deter future misconduct, and uphold Maryland's standards of ethical legal practice. Recommended sanctions include compensatory relief, fines, and a referral for disciplinary review to reinforce Maryland's commitment to honesty and integrity in the legal profession.

### F   Maryland Criminal Law § 9-101: Perjury

1    Foundational Principles and Purpose of § 9-101

720    **Maryland Criminal Law § 9-101** criminalizes perjury as any willfully false or misleading statement made under oath in a judicial proceeding. This statute is central to Maryland's commitment to judicial integrity, ensuring that all statements under oath are truthful and complete, as even partial truths or omissions can undermine the fairness of the proceedings. Perjury applies not only to outright falsehoods but also to statements crafted to mislead the court, especially when intended to alter judicial findings or interfere with a fair trial.

721    Key elements of Maryland's perjury statute include:

   1.    **Commitment to Honesty Under Oath**: Maryland law mandates that all statements under oath are not only factually accurate but also presented with full transparency, free from intent to mislead or distort.

   2.    **Protection of Judicial Integrity**: § 9-101 upholds the court's role as a venue for fair and unbiased adjudication, prohibiting statements that would impair its truth-seeking function.

   3.    **Prevention of Manipulative Tactics**: The statute deters litigants and witnesses from using deceptive statements to gain an unfair advantage or influence judicial outcomes.

2    Judicial Standards and Purpose from Maryland Precedent

722    Maryland courts enforce § 9-101 rigorously to:

   1.    **Uphold the Sanctity of Oath**: Courts impose penalties for perjury to emphasize the importance of truthful testimony and the serious commitment entailed in taking an oath.

2.    **Ensure Accurate Judicial Findings**: By penalizing perjury, Maryland courts

protect against distortions of the record, ensuring that judicial findings are based on

reliable, truthful information.

3.    **Deterrence of Deceptive Practices**: Sanctions for perjury serve as a deterrent

against willful deception in judicial proceedings, reinforcing that honesty is non-

negotiable.

## 3    Criteria for Establishing Perjury under § 9-101

723    Maryland law requires the following criteria for a perjury charge under § 9-101:

1.    **Knowingly False Statement**: The statement must be knowingly false or

misleading, made with the awareness that it misrepresents the facts.

2.    **Intent to Deceive**: The person making the statement must intend to deceive or

mislead the court, deliberately omitting or distorting material facts to affect the outcome.

3.    **Material Relevance to Proceedings**: The falsehood must relate to a material fact

relevant to the court's findings or the proceedings' outcome, with the potential to alter the

court's understanding or judgment.

## 4    Maryland Case Law on Perjury

724    **Shifflett v. State**, 245 Md. 169, 225 A.2d 440 (1967): The Maryland Court of Appeals

held that perjury encompasses both outright falsehoods and selective omissions intended to

mislead. The court reinforced that perjury includes not only factual inaccuracies but also

omissions designed to distort judicial findings.

725    **Smith v. State**, 7 Md. App. 384, 256 A.2d 357 (1969): Maryland's Court of Special

Appeals clarified that perjury must relate to material facts, meaning facts central to the court's

findings. This case emphasizes that falsehoods affecting essential aspects of the case distort

judicial outcomes and are grounds for sanctions.

## 5    Supporting Case Law Beyond Maryland

726    **United States v. Dunnigan**, 507 U.S. 87 (1993): The U.S. Supreme Court affirmed that

perjury includes both direct falsehoods and misleading statements intended to deceive, aligning

with Maryland's view that perjury disrupts the court's truth-seeking mission.

727    **Bronston v. United States**, 409 U.S. 352 (1973): The Supreme Court held that even

technically truthful statements may constitute perjury if crafted to mislead, supporting

Maryland's interpretation that perjury includes selective omissions and half-truths.

## 6    Cross-Argument Case Law: Perjury, Material Misrepresentation, and Procedural Fairness

728    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The

Maryland Court of Appeals found that deceptive statements intended to influence court

proceedings constitute grounds for sanctions. The case supports the notion that perjury impacts

procedural fairness and must be penalized to preserve judicial integrity.

729    **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376, 773 A.2d 463 (2001):

This case highlighted that dishonest conduct in court proceedings is a serious ethical violation,

warranting penalties to uphold truthfulness and prevent manipulative tactics in litigation.

## 7    Application to Dillon-Capps's Case

730    In Dillon-Capps's case, perjury under § 9-101 is evident in the affidavits submitted by

Ohana executives, including Richard Hartman, Justin Drummond, and Randall Romes. These

affidavits contained false or misleading statements crafted to distort the court's understanding of

Dillon-Capps's employment, FMLA rights, and events leading up to the litigation. The

perjurious statements have obstructed Dillon-Capps's defense and damaged the court's capacity for fair adjudication.

1.  **Knowingly False Statements**: The affidavits contain knowingly false statements and omissions, particularly regarding Dillon-Capps's June 7th accord, communications about FMLA leave, and employment obligations. These statements mirror the conduct described in *Shifflett v. State*, as they selectively omitted critical facts to mislead the court.

2.  **Intent to Deceive**: The evidence indicates a clear intent to deceive, as M&S's presentation of facts was designed to favor Ohana's position, obscuring evidence that would support Dillon-Capps's defense. This intent aligns with Maryland's perjury standard as seen in *Smith v. State*, warranting sanctions for perjury and other deceptive practices.

3.  **Material Relevance to the Case**: The misstatements directly impacted Dillon-Capps's defenses, affecting the court's perception of core elements in the case. The perjurious statements are materially relevant, affecting not only Dillon-Capps's rights under FMLA but also the legitimacy of Ohana's claims.

731   M&S's facilitation of perjury through misleading affidavits materially altered the proceedings, creating an unfair disadvantage for Dillon-Capps and obstructing the fair administration of justice. Sanctions are warranted under § 9-101 to penalize this misconduct, deter similar future behavior, and preserve the integrity of the judicial process.

## 8    Conclusion

732    Violations of Maryland's perjury statute, § 9-101, undermine the fundamental requirement of honesty in judicial proceedings and compromise the court's truth-seeking role. In Dillon-Capps's case, the intentional misrepresentations and omissions in M&S's affidavits constitute perjury, directly impacting Dillon-Capps's defense and warranting substantial sanctions. The court should impose fines, compensatory relief, and a referral for criminal and ethical investigation to address the serious breach of judicial integrity and deter further misconduct.

## G    Abuse of Process

## 1    Foundational Principles and Purpose of Abuse of Process

733    The doctrine of abuse of process in Maryland prohibits the misuse of legal proceedings for purposes other than the fair resolution of legitimate claims. Rooted in common law, abuse of process protects litigants from retaliatory and coercive litigation, ensuring that judicial resources are not weaponized. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland courts apply this equitable doctrine to prevent litigants from leveraging court procedures for improper purposes, underscoring that litigation must serve a genuine legal purpose.

734    Key elements of Maryland's abuse of process doctrine include:

1.    **Protecting Procedural Integrity**: Abuse of process addresses litigation conducted with a hidden agenda, prioritizing fairness and the court's role as a venue for legitimate dispute resolution.

2.     **Deterring Retaliation and Coercion**: Maryland courts have made clear that legal proceedings are not tools for retaliating against, intimidating, or punishing an opposing party but must be used to pursue bona fide legal claims.

**3.     Judicial Standards and Purpose from Maryland Precedent**

4.     Maryland courts have emphasized that abuse of process disrupts the fair administration of justice and thus warrants sanctions to:

5.     **Deter Misuse of Court Processes**: Sanctions for abuse of process prevent litigants from exploiting legal proceedings for ulterior motives.

6.     **Protect Against Procedural Manipulation**: Maryland's courts hold that procedural integrity must be safeguarded, with sanctions ensuring that litigation is pursued in good faith.

7.     **Uphold Fairness and Equitable Relief**: Abuse of process sanctions restore balance in litigation and protect defendants from being harmed by groundless or malicious claims.

2    Judicial Standards and Purpose from Precedent for Abuse of Process

735    Maryland courts recognize that abuse of process occurs when judicial procedures are manipulated to achieve goals unrelated to the legitimate resolution of claims. Imposing sanctions for abuse of process serves essential functions:

1.     **Deterring Improper Litigation Tactics**: Sanctions prevent parties from misusing court procedures for illegitimate aims, such as harassment, coercion, or pressure tactics, which distort the justice system and waste judicial resources.

2.    **Upholding Judicial Integrity**: Sanctions reinforce the principle that the judicial process must be used solely for the resolution of legitimate claims. Courts are committed to maintaining a forum where rights are adjudicated based on truth and law, free from procedural abuse.

3.    **Protecting Parties from Harassment and Coercion**: Sanctions provide relief and protection for parties harmed by abuse of process, addressing financial, reputational, or psychological harm caused by malicious or frivolous claims.

4.    **Accountability for Legal Misconduct**: Sanctions ensure that litigants who engage in abuse of process are held accountable, reinforcing the notion that judicial processes are not tools for harassment or intimidation.

3    <u>Criteria for Imposing Sanctions for Abuse of Process</u>

736    To impose sanctions for abuse of process in litigation, Maryland courts typically require these elements:

1.    **Ulterior Purpose or Improper Intent**: There must be evidence that the party's use of court procedures was driven by an ulterior motive, such as harassment, coercion, or to exert undue pressure on the opposing party, rather than a genuine effort to resolve the dispute.

2.    **Improper Manipulation of Judicial Procedure**: The process must be used in an improper or distorted way, demonstrating a misuse of the court's mechanisms to achieve outcomes beyond the legitimate scope of litigation, such as filing baseless motions to delay or intimidate.

3.    **Prejudice or Harm to the Opposing Party**: The abuse must result in harm to the opposing party, either by impairing their ability to present a defense or by causing unnecessary financial, reputational, or emotional damage.

737    By establishing these criteria, Maryland courts can impose sanctions to deter abuse of process, protect the integrity of judicial proceedings, and provide recourse for parties harmed by procedural misconduct.

## 4    Maryland Case Law on Abuse of Process

738    **One Thousand Fleet Ltd. Partnership v. Guerriero**, 346 Md. 29, 694 A.2d 952 (1997): The Maryland Court of Appeals held that abuse of process arises when judicial procedures are used to achieve an improper objective. The court stressed that judicial proceedings should not be exploited as tools of harassment or retaliation.

739    **Walker v. American Ass'n of Professional Eye Care Specialists, Inc.**, 145 Md. App. 397, 805 A.2d 1127 (2002): Maryland's Court of Special Appeals found that using judicial proceedings for coercive purposes, such as pressuring or intimidating the opposing party, constitutes abuse of process. Sanctions are warranted when legal procedures are inappropriately leveraged.

## 5    Supporting Case Law Beyond Maryland

740    **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007): The U.S. Supreme Court ruled that legal claims must have a legitimate basis rather than be used as a strategy for achieving an unrelated or collateral purpose, aligning with Maryland's prohibition against abuse of process.

741    **Younger v. Harris**, 401 U.S. 37 (1971): The Supreme Court emphasized the duty of courts to prevent abuse of judicial processes, underscoring that litigation should not be weaponized to harm or unduly burden opposing parties.

### 6    Cross-Argument Case Law: Abuse of Process and Retaliation

742    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The Maryland Court of Appeals held that abuse of process is a form of procedural misconduct that harms judicial integrity and requires sanctions. The court found that intentional procedural manipulation disrupts justice and must be addressed to prevent similar abuses.

743    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): Maryland's Court of Special Appeals recognized abuse of process as an avenue for sanctioning parties who misuse court resources for improper purposes, reinforcing that courts must safeguard against such misconduct.

### 7    Application to Dillon-Capps's Case

744    In Dillon-Capps's case, Ohana and M&S coordinated an abuse of process by leveraging the court system to harass and coerce, rather than pursuing legitimate claims. From the no-notice TRO to the unwarranted contempt orders and misleading affidavits, the Plaintiff and its counsel engaged in procedural manipulation that harmed Dillon-Capps both financially and reputationally.

745    **Improper Purpose and Ulterior Motives**: Ohana's actions reflect a pattern of harassment and retaliation rather than a genuine attempt to resolve legal claims. The no-notice TRO and subsequent contempt orders were part of a coordinated effort to pressure Dillon-Capps,

with M&S filing affidavits that selectively omitted material facts central to Dillon-Capps's defense.

746     **Manipulation of Court Mechanisms**: M&S's filings contain material omissions and selective presentations intended to mislead the court, in direct alignment with *One Thousand Fleet Ltd. Partnership v. Guerriero*'s standard for abuse of process. Rather than pursuing an honest dispute, these actions leveraged judicial resources to retaliate against Dillon-Capps.

747     **Resulting Prejudice and Harm to Dillon-Capps**: The abusive litigation tactics employed by Ohana and M&S have caused Dillon-Capps substantial harm, from reputational damage to financial strain. These tactics meet the Maryland criteria for abuse of process, as they exploited court procedures to further an agenda outside the legal claims, justifying significant sanctions.

748     M&S and Ohana's conduct satisfies Maryland's standards for abuse of process, demonstrating that their motives and tactics were intended to coerce rather than resolve legitimate claims. Sanctions are warranted to protect the court's integrity, prevent similar misconduct, and uphold Maryland's standards for fair and ethical litigation.

749     Abuse of process in Maryland is treated as a serious offense, requiring sanctions to deter future misuse and protect procedural fairness. Ohana and M&S's misuse of judicial mechanisms to retaliate and harm Dillon-Capps underscores the need for compensatory relief, monetary fines, and judicial oversight to prevent future litigation abuse. Sanctions will reinforce Maryland's commitment to ethical and just litigation, preserving the court's role as a fair arbiter of legitimate disputes.

## 8    Conclusion

750    Maryland's ethical standards and statutory obligations regarding perjury and truthfulness create a comprehensive framework that prohibits dishonesty in all forms, especially when it materially impacts judicial findings. The breaches of **Rules 3.3(a), 4.1**, and **8.4(c),** along with perjury under **Md. Code Ann., Crim. Law § 9-101**, demonstrate that both M&S and Ohana have engaged in unethical and unlawful conduct by submitting misleading affidavits and manipulating material facts to disadvantage Dillon-Capps.

751    Sanctions are necessary to restore judicial integrity, deter similar conduct, and reinforce Maryland's commitment to honesty and accountability in legal proceedings. Recommended sanctions include compensatory relief, monetary fines, and a referral to the Maryland Attorney Grievance Commission to address professional misconduct. These sanctions will affirm the court's role in upholding ethical standards and ensuring fair and just outcomes.

### H    Attempted/False Imprisonment

### 1    Foundations for Attempted/False Imprisonment in Sanctions

752    In Maryland, false imprisonment encompasses any unlawful restraint of a person's liberty without legal justification. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503,** Maryland law allows courts to impose sanctions on litigants who misuse legal processes to attempt confinement through false imprisonment. Attempted false imprisonment is achieved when one party seeks to use legal procedures to confine or coerce another, even if full confinement does not occur. This conduct is actionable and sanctionable when executed without legitimate purpose and with malicious intent to harm or intimidate, particularly in cases where judicial processes are weaponized to achieve wrongful confinement. Sanctions serve as a deterrent against litigants who attempt to misuse judicial authority to restrain another's liberty for an improper purpose.

Page **261** of **329**

## 2    Judicial Standards and Purpose from Precedent

753    Maryland courts and broader case law recognize that attempted or false imprisonment, especially when achieved through judicial abuse, is fundamentally sanctionable. Sanctions in these cases serve several critical purposes:

1.    **Deterrence of Malicious Litigation Tactics**: Sanctions discourage the misuse of judicial processes as tools for intimidation, harassment, or coercion, protecting court resources from being expended on baseless actions.

2.    **Preservation of Judicial Integrity**: Courts use sanctions to ensure that legal mechanisms are not manipulated to control or silence others without just cause. By holding litigants accountable for procedural abuse, sanctions reinforce the judiciary's commitment to fairness.

3.    **Protection of Individual Liberty**: Sanctions uphold individuals' rights to be free from unwarranted restraint. Judicial processes weaponized for confinement or coercion undermine liberty, and sanctions prevent such misuse.

4.    **Accountability for Misuse of Authority**: Sanctions ensure that individuals and entities seeking to manipulate legal procedures for wrongful confinement are held accountable. This approach safeguards individual rights and protects against judicial overreach.

## 3    Criteria for Imposing Sanctions for Attempted/False Imprisonment

754    To impose sanctions for attempted or false imprisonment in the context of litigation, Maryland courts generally require:

1.    **Intent to Confine or Restrain Without Just Cause**: The party's actions show a deliberate effort to unlawfully confine or control another, often through procedural manipulation or abuse of judicial authority.

2.    **Absence of Legitimate Purpose**: The actions must lack any lawful or legitimate justification and instead focus on using judicial processes solely to harass or exert control over the individual.

3.    **Malicious Intent or Recklessness**: The conduct must reflect malicious intent or a reckless disregard for the rights of the other party, often involving perjury, fabricated claims, or procedural manipulations designed to harm or intimidate.

4.    **Use of Judicial Process to Coerce**: The party abuses legal mechanisms—such as baseless show cause orders or contempt motions—to coerce compliance or achieve wrongful confinement of the opposing party.

755    By aligning these elements, Maryland courts ensure that sanctions are applied consistently to protect individuals from improper confinement and to uphold judicial integrity.

4    <u>Maryland Case Law</u>

756    **Montgomery Ward v. Wilson**, 339 Md. 701, 664 A.2d 916 (1995): Maryland's Court of Appeals held that confinement without legal grounds constitutes false imprisonment. The court established that confining or attempting to confine through procedural abuse, without a legitimate basis, is actionable and warrants sanctions.

757    **Jones v. Jones**, 46 Md. App. 460, 418 A.2d 1253 (1980): The Maryland Court of Special Appeals ruled that fraudulent use of judicial processes to achieve confinement is tantamount to

false imprisonment. This case clarified that malicious pursuit of confinement under false pretenses is sanctionable conduct.

758     **King v. Ruffin**, 89 Md. App. 588, 598 A.2d 756 (1991): The court held that legal proceedings cannot be misused to achieve confinement under fraudulent or malicious circumstances. This precedent supports imposing sanctions for attempted confinement based on deceptive practices or abuse of legal mechanisms.

5     Supporting Case Law Beyond Maryland

759     **Broughton v. State of New York**, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975): The New York Court of Appeals ruled that attempted false imprisonment, when done with intent to confine through legal mechanisms, may qualify as false imprisonment. The decision set precedent that procedural abuses intending to restrict another's freedom warrant severe penalties.

760     **Lenarz v. State**, 301 Conn. 417, 22 A.3d 536 (2011): The Connecticut Supreme Court ruled that actions taken toward wrongful confinement through legal manipulations could be sanctioned, especially when motivated by malice or intent to control another's actions.

6     Cross Argument Case Law

761     **Pierson v. Ray**, 386 U.S. 547 (1967): In the context of abuse of legal mechanisms, the U.S. Supreme Court held that judicial immunity does not protect individuals who misuse legal processes to confine or harm others. This case supports the broader argument that judicial mechanisms cannot be used to achieve wrongful confinement.

762     **Pulliam v. Allen**, 466 U.S. 522 (1984): This case highlighted that injunctive relief and attorney's fees are available under § 1983 when judicial actions result in wrongful confinement.

It emphasizes that abuse of authority in attempts to confine is actionable and can be met with financial and procedural sanctions.

### 7    Application to Dillon-Capps's Case

763    In Dillon-Capps's case, Ohana and M&S attempted to confine Dillon-Capps unlawfully through procedural abuse, filing baseless motions with the intent to restrain Dillon-Capps's freedom unjustly:

764    **Intent to Confine Without Just Cause**: Ohana and M&S pursued a second show cause motion seeking Dillon-Capps's incarceration based on perjured statements and misleading claims. The motion was designed to wrongfully restrict Dillon-Capps's liberty under false pretenses, which aligns with the criteria established in *Montgomery Ward v. Wilson* for false imprisonment and warrants sanctions.

765    **Lack of Legitimate Purpose**: The repeated filings lacked legitimate purpose, as they were intended to intimidate and compel compliance from Dillon-Capps through coercion rather than achieve a fair resolution. This abusive use of judicial processes, as in *Jones v. Jones*, constituted sanctionable conduct due to the lack of just cause or lawful purpose.

766    **Malicious Intent and Reckless Disregard**: Ohana and M&S's conduct showed reckless disregard for Dillon-Capps's rights, as evidenced by continued procedural manipulations intended to coerce, intimidate, and restrain. This aligns with the findings in *King v. Ruffin*, where deceptive practices to achieve confinement were met with sanctions.

### 8    Conclusion

767    Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, Maryland law supports sanctions against litigants who attempt to achieve false imprisonment through abuse of

judicial processes. Ohana and M&S's actions, including filing motions aimed at wrongful confinement based on false claims and perjured statements, meet the criteria for attempted false imprisonment. The court should impose severe sanctions to deter such misconduct, uphold judicial integrity, and protect Dillon-Capps's rights, consistent with Maryland and national precedent.

## I   Malicious Prosecution

### 1   Foundations for Malicious Prosecution in Sanctions

768     Malicious prosecution involves initiating legal action with improper motives, intending to harm the defendant rather than to resolve a legitimate dispute. Under Maryland law, **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** support the imposition of sanctions for malicious prosecution, especially when cases are filed without a legitimate basis and driven by ulterior motives, such as harassment or intimidation. Malicious prosecution is a misuse of the court system, leading to financial, emotional, and reputational harm to the opposing party.

### 2   Judicial Standards and Purpose from Precedent for Malicious Prosecution

769     Maryland courts impose sanctions for malicious prosecution to achieve these core purposes:

770     **Deterrence of Frivolous and Vexatious Litigation**: Sanctions discourage litigants from filing cases with malicious intent or without substantive justification, thereby protecting judicial resources and promoting fair use of the court system.

771     **Protection of Individual Rights**: Sanctions safeguard individuals from the harm caused by baseless lawsuits, including damage to reputation, unnecessary legal expenses, and emotional distress.

772    **Maintaining Judicial Integrity**: Sanctions reinforce the judiciary's role as an impartial forum for legitimate disputes, ensuring that courts are not misused to pursue personal vendettas or improper objectives.

773    **Accountability for Deceptive or Fraudulent Actions**: Courts use sanctions to hold parties accountable when they attempt to deceive the court or mislead the judicial process through fraudulent or malicious filings, fostering a system that values honesty and integrity.

3    Criteria for Imposing Sanctions for Malicious Prosecution

774    To impose sanctions for malicious prosecution, Maryland courts generally require:

775    **Absence of Probable Cause or Legitimate Basis**: The underlying claim or lawsuit must lack a legitimate foundation or probable cause, indicating that the plaintiff's case is baseless and was filed without reasonable grounds.

776    **Malicious Intent or Improper Purpose**: The party filing the lawsuit must have acted with malicious intent or an ulterior motive, such as harassment, retaliation, or coercion, rather than a genuine desire for legal resolution.

777    **Intentional Misrepresentation or Fraud upon the Court**: The case often involves deceptive practices, such as perjury, material misstatements, or intentional omissions, intended to manipulate the court or harm the opposing party.

778    **Actual Harm to the Defendant**: The baseless litigation must result in real harm to the defendant, including financial loss, reputational damage, or significant emotional distress.

4    Maryland Case Law

779    **One Thousand Fleet Ltd. Partnership v. Guerriero**, 346 Md. 29, 694 A.2d 952 (1997): The Maryland Court of Appeals found that initiating a lawsuit with malicious intent and without

probable cause is actionable as malicious prosecution, establishing the grounds for sanctions when litigation is pursued for improper purposes.

780     **Keys v. Chrysler Credit Corp.**, 303 Md. 397, 494 A.2d 200 (1985): The court confirmed that a lack of probable cause combined with malice in filing a lawsuit supports sanctions for malicious prosecution. This decision underscores the importance of legitimate purpose and factual basis in initiating legal proceedings.

781     **Herring v. Citizens Bank & Trust Co.**, 21 Md. App. 517, 321 A.2d 182 (1974): Maryland courts held that lawsuits filed with the intent to harass or cause reputational harm, rather than resolve a valid legal claim, warrant sanctions for malicious prosecution.

5     Supporting Case Law Beyond Maryland

782     **Wilson v. Parker, Covert & Chidester**, 28 Cal. 4th 811, 123 Cal. Rptr. 2d 19, 50 P.3d 733 (2002): The California Supreme Court upheld sanctions for malicious prosecution, emphasizing that lawsuits filed with improper motives and without probable cause compromise judicial integrity and justify sanctions.

783     **Swick v. Liautaud**, 169 Ill. 2d 504, 662 N.E.2d 1238 (1996): The Illinois Supreme Court found that malicious prosecution requires a lack of probable cause and an ulterior motive, such as using litigation to intimidate or coerce the opposing party, aligning with the grounds for sanctions.

6     Cross Argument Case Law

784     **Pierson v. Ray**, 386 U.S. 547 (1967): The U.S. Supreme Court clarified that judicial immunity does not extend to actions that misuse court authority for malicious purposes, laying a foundation for holding parties accountable when they misuse the judiciary to harm others.

785    **Pulliam v. Allen**, 466 U.S. 522 (1984): The Court found that injunctive relief and attorney's fees may be awarded under § 1983 when judicial actions involve malicious intent, supporting the imposition of sanctions to prevent abuse of judicial mechanisms.

7    Application to Dillon-Capps's Case

786    In Dillon-Capps's case, Ohana and M&S engaged in malicious prosecution by pursuing litigation based on perjured affidavits, baseless claims, and improper motives:

787    **Absence of Probable Cause or Legitimate Basis**: Ohana's lawsuit lacked a legitimate basis, relying on misrepresentations and unsupported claims rather than any reasonable legal grounds. This meets the standard in *One Thousand Fleet Ltd. Partnership v. Guerriero* for malicious prosecution.

788    **Malicious Intent or Improper Purpose**: The filings and procedural tactics reveal an intent to harm Dillon-Capps financially and reputationally, as opposed to resolving a valid legal issue. This aligns with *Keys v. Chrysler Credit Corp.*, where sanctions were imposed for pursuing litigation with malice and without legitimate purpose.

789    **Intentional Misrepresentation and Fraud upon the Court**: The use of perjured affidavits and misleading statements demonstrate that Ohana and M&S sought to deceive the court, fitting the criteria outlined in *Herring v. Citizens Bank & Trust Co.* for sanctionable malicious prosecution.

790    **Significant Harm to Dillon-Capps**: The litigation has caused financial strain, reputational harm, and emotional distress for Dillon-Capps. The intent to harm is evident, making sanctions appropriate under Maryland's standards for malicious prosecution.

## 8    Conclusion

791    Malicious prosecution, when pursued through litigation, undermines judicial integrity and imposes undue harm on the opposing party. Supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** and Maryland case law, Ohana and M&S's conduct in Dillon-Capps's case reflects malicious prosecution. The court should impose severe sanctions to deter future misconduct, uphold fairness, and protect Dillon-Capps's rights, in line with principles established in *One Thousand Fleet Ltd. Partnership v. Guerriero, Keys v. Chrysler Credit Corp.*, and other relevant precedents.

## J    Vexing Litigations

### 1    Foundations for Vexatious Litigation in Sanctions

792    Vexatious litigation involves initiating or perpetuating legal proceedings without substantial justification, often to harass, intimidate, or exhaust the resources of the opposing party. Under Maryland law, **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** provide a basis for sanctioning vexatious litigants, especially when the litigation lacks legitimate purpose or is driven by improper motives. Vexatious litigation is particularly harmful because it clogs the judicial system with meritless claims, infringes on the defendant's right to a fair process, and causes financial and emotional strain.

### 2    Judicial Standards and Purpose from Precedent for Vexatious Litigation

793    Sanctions for vexatious litigation are imposed by Maryland courts to fulfill several critical purposes:

794    **Deterrence of Frivolous and Abusive Filings**: Sanctions discourage litigants from filing meritless claims or continuing litigation solely to harass or delay, conserving judicial resources for legitimate cases.

795    **Protection of Defendants' Rights**: Sanctions serve to protect defendants from undue hardship caused by continuous or unnecessary litigation, which imposes financial, reputational, and emotional harm.

796    **Maintenance of Judicial Integrity**: Sanctions uphold the court's role as a forum for legitimate disputes and prevent misuse of judicial processes by parties acting in bad faith.

797    **Accountability for Harassing Conduct**: Courts impose sanctions to hold parties accountable for attempting to harm the opposing party through the legal system, ensuring that the judiciary is not used as a weapon for harassment or intimidation.

3    Criteria for Imposing Sanctions for Vexatious Litigation

798    To impose sanctions for vexatious litigation, Maryland courts typically require:

799    **Pattern of Frivolous or Meritless Filings**: The litigant must demonstrate a pattern of filings that lack legal or factual support, suggesting an intent to harass or delay rather than pursue legitimate claims.

800    **Absence of Substantial Justification**: The actions in question must lack a valid legal basis or justification, with no reasonable grounds to believe the claims could succeed.

801    **Intent to Harass, Intimidate, or Exhaust Resources**: There must be evidence that the litigation was pursued with the intent to harm the opposing party, either by depleting their resources or subjecting them to undue stress.

802    **Significant Burden or Harm to the Opposing Party**: Vexatious litigation must impose

a significant burden on the defendant, such as financial strain, emotional distress, or reputational

harm.

### 4    Maryland Case Law

803    **DeLeon Enterprises, Inc. v. Zaino**, 92 Md. App. 399, 608 A.2d 828 (1992): The Court

of Special Appeals held that litigants who pursue claims with no substantial justification can be

sanctioned for vexatious litigation, particularly when the litigation lacks merit and is driven by

an ulterior motive.

804    **Unger v. Berger**, 214 Md. 20, 133 A.2d 771 (1957): Maryland's Court of Appeals found

that continuous baseless filings, designed to harass the opposing party, justify sanctions. This

case affirmed that vexatious litigation burdens the judicial system and unfairly disadvantages the

defendant.

805    **Klotz v. Klotz**, 97 Md. App. 532, 631 A.2d 321 (1993): The court emphasized that

sanctions are appropriate in cases of vexatious litigation where a pattern of meritless claims

imposes unnecessary hardship on the defendant, establishing grounds for relief.

### 5    Supporting Case Law Beyond Maryland

806    **In re Marriage of Flaherty**, 31 Cal. 3d 637, 646 P.2d 179 (1982): The California

Supreme Court ruled that litigants who engage in frivolous filings or repetitive motions without

basis can be sanctioned to prevent harassment and abuse of the court system.

807    **In re TCI Ltd.**, 769 F.2d 441 (7th Cir. 1985): The Seventh Circuit held that sanctions for

vexatious litigation are justified when filings serve only to harass the opposing party or delay

proceedings, highlighting the need for courts to protect defendants from abusive litigation.

## 6    Cross Argument Case Law

808    **Chambers v. NASCO, Inc.,** 501 U.S. 32 (1991): The U.S. Supreme Court affirmed the authority of courts to impose sanctions for vexatious litigation as part of their inherent powers to control abusive conduct within their proceedings, even outside statutory guidelines.

809    **Roadway Express, Inc. v. Piper,** 447 U.S. 752 (1980): The Court held that federal courts have inherent authority to sanction litigants for abusive conduct, emphasizing the importance of sanctions to deter vexatious behavior that disrupts judicial functions.

## 7    Application to Dillon-Capps's Case

810    In Dillon-Capps's case, Ohana and M&S engaged in vexatious litigation by pursuing baseless claims, filing unnecessary motions, and perpetuating litigation with the intent to harm Dillon-Capps financially and emotionally:

811    **Pattern of Frivolous Filings and Baseless Claims**: The lawsuit and subsequent filings show a repeated pattern of motions and claims with no substantial justification, intending to harass Dillon-Capps rather than resolve any legitimate legal dispute. This meets the criteria outlined in *DeLeon Enterprises, Inc. v. Zaino*.

812    **Absence of Substantial Justification**: Ohana's and M&S's claims lacked a valid legal foundation, with procedural filings often based on perjured statements and unsupported assertions. The case aligns with *Unger v. Berger*, where sanctions were imposed for litigation pursued without a legitimate basis.

813    **Intent to Harass and Exhaust Resources**: The filings demonstrate an intent to harm Dillon-Capps's financial stability and emotional well-being by prolonging the litigation

unnecessarily. This behavior fits the standard in *Klotz v. Klotz*, where meritless claims were filed to burden the defendant.

814    **Significant Burden on Dillon-Capps**: The prolonged litigation has imposed considerable financial, reputational, and emotional harm on Dillon-Capps, justifying sanctions under Maryland's standards for vexatious litigation.

## 8    Conclusion

815    Vexatious litigation, pursued without legitimate purpose or factual support, burdens both the opposing party and the judicial system. Under **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** and Maryland precedent, Ohana and M&S's conduct in Dillon-Capps's case constitutes vexatious litigation. The court should impose severe sanctions to deter future abuse, protect Dillon-Capps's rights, and uphold judicial integrity, consistent with principles established in *DeLeon Enterprises, Inc. v. Zaino*, *Unger v. Berger*, and other relevant precedents.

## K    Frivolous Litigation as Sanctionable Conduct

### 1    Foundations for Frivolous Litigation in Sanctions

816    Frivolous litigation involves pursuing claims that lack legal merit or factual support, often filed without substantial justification. Maryland law, supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, authorizes sanctions for frivolous litigation to preserve judicial resources and prevent misuse of court processes. Frivolous litigation wastes time, burdens defendants, and abuses the judicial system, particularly when parties knowingly bring baseless claims or continue litigation without a legitimate purpose.

## 2    Judicial Standards and Purpose from Precedent for Frivolous Litigation

817    Maryland courts impose sanctions for frivolous litigation to achieve several critical purposes:

818    **Preservation of Judicial Resources**: Sanctions deter parties from engaging in baseless claims that consume court resources, ensuring that courts remain available for genuine disputes.

819    **Deterrence of Abuse and Harassment**: Sanctions prevent parties from using litigation to harass or intimidate others, especially when cases are pursued without legal or factual support.

820    **Protection of Defendants' Rights**: Sanctions protect defendants from undue financial and emotional harm caused by defending against meritless claims.

821    **Promotion of Judicial Integrity**: Sanctions reinforce that courts are forums for legitimate legal matters and prevent misuse of the judicial process for improper purposes.

## 3    Criteria for Imposing Sanctions for Frivolous Litigation

822    To impose sanctions for frivolous litigation, Maryland courts typically consider these elements:

1.    **Lack of Legal or Factual Basis**: The claims must be clearly without legal or factual merit, such that a reasonable attorney would recognize them as baseless.

2.    **Absence of Substantial Justification**: The filings lack a genuine legal basis, with no reasonable grounds to believe they could succeed, indicating an improper purpose for filing.

3.    **Improper Intent to Harass or Burden**: Evidence that the litigation was pursued with the intent to harass, delay, or burden the opposing party, rather than resolve any actual dispute.

4.    **Financial and Emotional Harm to the Defendant**: The baseless claims cause unnecessary harm to the defendant, including costs, reputational damage, and stress associated with defending against frivolous litigation.

## 4    Maryland Case Law

823    **Inlet Assocs. v. Assateague House Condo. Ass'n**, 313 Md. 413, 545 A.2d 1296 (1988): The Maryland Court of Appeals held that sanctions are warranted when a party initiates frivolous claims with no substantial justification, particularly when the intent is to harass or burden the opposing party.

824    **Majority Properties, Inc. v. Town of Hancock**, 333 Md. 3, 633 A.2d 392 (1993): This case established that sanctions are appropriate when legal action lacks any substantial justification or is filed to delay, harass, or coerce, setting a clear standard for frivolous litigation.

825    **Needle v. White**, 81 Md. App. 463, 568 A.2d 856 (1990): The Maryland Court of Special Appeals affirmed sanctions against litigants who pursued claims with no factual or legal merit, emphasizing the role of sanctions in deterring frivolous claims and protecting defendants from undue hardship.

## 5    Supporting Case Law Beyond Maryland

826    **Christianburg Garment Co. v. EEOC**, 434 U.S. 412 (1978): The U.S. Supreme Court upheld sanctions for frivolous litigation, finding that lawsuits without legal merit or filed with improper intent justify financial penalties to deter abuse of the judicial system.

827    **Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): The Supreme Court established that federal courts may impose sanctions for frivolous litigation, particularly when such cases are filed with the intent to harass or waste judicial resources.

6    Cross Argument Case Law

828    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court reinforced that courts have inherent authority to sanction parties engaging in frivolous litigation, underscoring the judiciary's role in maintaining integrity and deterring abuse.

829    **Miller v. Bittner**, 50 Md. App. 302, 437 A.2d 81 (1981): The Maryland Court of Special Appeals emphasized that sanctions are necessary to prevent abuse of legal processes through baseless or frivolous filings, furthering the judicial standard for sanctions in Maryland.

7    Application to Dillon-Capps's Case

830    In Dillon-Capps's case, Ohana and M&S engaged in frivolous litigation by pursuing unsupported claims, submitting baseless motions, and advancing litigation without merit:

831    **Lack of Legal and Factual Basis**: Ohana and M&S's claims lacked any substantial legal foundation, relying on perjured affidavits and unsupported allegations. This fits the criteria for frivolous litigation as outlined in *Inlet Assocs. v. Assateague House Condo. Ass'n*.

832    **Absence of Substantial Justification**: The filings and procedural motions served no legitimate purpose and had no likelihood of success. As in *Majority Properties, Inc. v. Town of Hancock*, the claims were clearly unjustified and designed to harass.

833    **Improper Intent to Harass and Burden Dillon-Capps**: The litigation reveals a clear intent to exhaust Dillon-Capps's financial and emotional resources, causing undue hardship and distraction from meaningful pursuits. This aligns with the standards set in *Needle v. White*.

834    **Significant Harm to Dillon-Capps**: The baseless claims and prolonged litigation have inflicted financial, reputational, and emotional harm on Dillon-Capps, meeting Maryland's criteria for imposing sanctions for frivolous litigation.

## 8    Conclusion

835    Frivolous litigation undermines judicial efficiency, burdens defendants with baseless claims, and compromises the integrity of the judicial process. Supported by **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503** and Maryland precedent, Ohana and M&S's conduct in Dillon-Capps's case constitutes frivolous litigation. The court should impose severe sanctions to deter future abuses, uphold judicial integrity, and protect Dillon-Capps's rights, as established in *Inlet Assocs. v. Assateague House Condo. Ass'n, Majority Properties, Inc. v. Town of Hancock*, and other relevant cases.

## L    Obstruction of Evidence

### 1    Foundation for Obstruction of Evidence

836    The obstruction of evidence undermines the judicial process, hindering the court's ability to ascertain the truth and impacting the fairness of the proceedings. Under English common law principles adopted into Maryland law via **Md. Code Ann., Cts. & Jud. Proc. §§ 10-501 and 10-503**, obstruction encompasses actions that interfere with the accessibility, preservation, or integrity of relevant evidence. Common law underscores the obligation of all parties to act in good faith by preserving and presenting material evidence accurately, prohibiting actions that intentionally mislead or delay judicial proceedings.

837    The core principles underlying obstruction include:

1.    **Duty to Present and Preserve Evidence**: Parties in litigation are required to maintain and produce evidence relevant to the issues before the court, preventing concealment, alteration, or withholding of material information.

2.    **Judicial Integrity and Truth-Seeking**: Courts have an inherent duty to sanction obstructive behavior to protect the judicial process, ensure fair access to evidence, and uphold truth-finding within the proceedings.

## 2    Judicial Standards and Purpose from Precedent

838    Maryland's approach to sanctions for obstruction is guided by the purpose of deterring misconduct, preventing unfair advantages, and maintaining procedural integrity. Maryland case law emphasizes that sanctions for obstruction serve to:

839    **Deter Misconduct**: Sanctions are imposed to discourage parties from engaging in obstructive behavior that impedes the court's ability to administer justice.

840    **Preserve Judicial Integrity**: Courts sanction obstruction to maintain the legitimacy of judicial proceedings, ensuring that no party can manipulate the outcome through procedural abuse.

841    **Provide Equitable Relief to the Aggrieved Party**: Maryland courts support equitable remedies that prevent one party from suffering undue disadvantage due to another party's misconduct, aligning with principles of fair dealing and integrity.

## 3    Criteria for Imposing Sanctions for Obstruction of Evidence

842    Maryland courts generally require that the following criteria be met to justify sanctions for obstruction of evidence:

1.    **Material Relevance of the Obstructed Evidence**: The obstructed evidence must be relevant and central to the issues being litigated, potentially affecting the case's outcome.

2.    **Intent to Obstruct**: The obstructive conduct must be intentional, with knowledge of the evidence's relevance and a deliberate effort to interfere with its presentation or accessibility.

3.    **Prejudice to the Opposing Party**: The obstruction must have resulted in material harm or prejudice, hindering the opposing party's ability to present a complete case.

843    These elements ensure that sanctions are reserved for serious misconduct that significantly impacts the judicial process and the rights of the opposing party.

## 4    Maryland Case Law

844    **Attorney Grievance Commission v. Ficker**, 319 Md. 305, 572 A.2d 501 (1990): The Maryland Court of Appeals upheld sanctions for intentional interference with evidence, emphasizing that obstruction compromises the truth-seeking process and warrants strong penalties. The court's ruling reinforced that obstruction is incompatible with fair dealing and requires accountability.

845    **Klupt v. Krongard**, 126 Md. App. 179, 728 A.2d 727 (1999): Maryland's Court of Special Appeals held that concealment or withholding of evidence constitutes obstruction, especially when done to mislead the court. This case established that Maryland courts are justified in imposing sanctions when a party's actions materially prejudice the opposing side.

846    **Bartholomee v. Casey**, 103 Md. App. 34, 651 A.2d 908 (1994): The court confirmed Maryland's authority to impose sanctions, including dismissal, for obstruction of evidence when it impacts the fair resolution of a case. This case emphasizes the role of sanctions in preventing obstruction from skewing outcomes unfairly.

5    Supporting Case Law Beyond Maryland

847    **Chambers v. NASCO, Inc.,** 501 U.S. 32 (1991): The U.S. Supreme Court ruled that

courts have inherent authority to impose sanctions for misconduct that obstructs justice,

reinforcing that such actions undermine judicial integrity and necessitate punitive measures to

prevent similar conduct.

848    **Silvestri v. General Motors Corp.,** 271 F.3d 583 (4th Cir. 2001): The Fourth Circuit

held that the intentional withholding of material evidence warrants severe sanctions, including

dismissal, as a necessary deterrent to abuse of the judicial process.

849    These cases reinforce the judiciary's authority to impose sanctions as an inherent power,

ensuring that obstruction is penalized consistently across jurisdictions.

6    Cross Argument Case Law

850    **Attorney Grievance Commission v. Mixter,** 441 Md. 416, 109 A.3d 1 (2015): This case

dealt with intentional discovery abuses, underscoring that obstructive conduct during discovery

warrants sanctions to protect judicial resources and prevent material harm. The court highlighted

the need for sanctions as a deterrent against manipulation of the process.

851    **Meyers v. Montgomery County Police Department,** 96 Md. App. 668, 626 A.2d 1010

(1993): The court emphasized that discovery obstruction, whether direct or indirect, undermines

fair dealing. Sanctions were deemed necessary to protect the opposing party's rights, reinforcing

that obstruction justifies a judicial response to preserve equitable relief.

852    These cases support sanctions for obstruction as an essential tool for maintaining

procedural fairness and serve to deter unethical practices.

7    Application to Dillon-Capps's Case

853    In Dillon-Capps's case, Plaintiff's counsel, Robert Brennen of Miles & Stockbridge,

engaged in obstruction by conditioning access to essential evidence—including the transcript

from the June 26th hearing—on Dillon-Capps complying with unrelated demands. The withheld

transcript is critical to Dillon-Capps's defense, particularly due to memory-related impairments

and the need for an accurate account of the hearing where significant procedural violations

allegedly occurred. The transcript's relevance and the obstructive tactics employed meet

Maryland's standards for imposing sanctions based on obstruction of evidence.

1.    **Material Relevance of the June 26th Transcript**: The transcript of the June

26th hearing is essential for Dillon-Capps to address significant procedural violations

involving Judge Barranco, as well as to recall specific events that Dillon-Capps's severe

memory impairments hinder them from retaining. The transcript is vital for preparing an

adequate defense, supporting motions, and substantiating claims of judicial errors that are

central to the case's outcome. As in *Bartholomee v. Casey*, withholding access to this

transcript prejudiced Dillon-Capps by limiting their ability to accurately present and

verify evidence.

2.    **Intentional Obstruction**: Brennen's July 2, 2024 message, in which he

conditioned the release of the transcript upon Dillon-Capps's compliance with extraneous

demands, shows an intentional attempt to interfere with Dillon-Capps's access to material

evidence. This aligns with the standards set in *Klupt v. Krongard*, where Maryland courts

upheld sanctions for intentional obstruction that disrupts the opposing party's access to

essential evidence.

3.    **Severe Prejudice and Harm to Dillon-Capps's Defense**: The obstructive

conduct has severely impaired Dillon-Capps's ability to prepare a comprehensive

defense, particularly due to Dillon-Capps's memory issues, which necessitate reliance on

accurate transcripts. This obstruction has prevented Dillon-Capps from addressing key

procedural violations, making it impossible to fully substantiate their defense and support

motions. Maryland's standards, as demonstrated in *Bartholomee v. Casey*, support

sanctions when obstruction materially prejudices a party, affecting their ability to mount

an effective defense.

854    Brennen's actions, which deprived Dillon-Capps of access to crucial evidence necessary

to defend against ongoing harm, satisfy Maryland's criteria for sanctions. Sanctions in this case

are warranted to restore fairness and protect Dillon-Capps's right to a complete defense.

## CONCLUSION

855    Maryland law, supported by both statutory provisions and common law principles,

provides a firm foundation for imposing sanctions for obstruction of evidence. In Dillon-Capps's

case, the deliberate withholding of evidence by Plaintiff's counsel caused significant prejudice,

justifying equitable sanctions to restore fairness and deter future abuses. Sanctions in this context

would reinforce Maryland's commitment to judicial integrity, accountability, and the equitable

treatment of all

### M    B1. Rule 19-303.3(a) - Candor Toward the Tribunal

1    Foundation for Sanctions under MRPC Rule 19-303.3(a)

856    **MRPC 19-303.3(a)** of the Maryland Attorneys' Rules of Professional Conduct requires

attorneys to uphold truthfulness and accuracy in all representations to the court. This rule

mandates that attorneys neither make nor support false statements, disclose all material facts, and correct any previously submitted inaccuracies. **MRPC 19-303.3(a )**is grounded in the principle that judicial integrity relies on attorneys' honesty, ensuring that courts have accurate information to make fair decisions.

857    Key elements of MRPC 19-303.3(a)include:

1.    **Duty of Candor and Truthfulness**: Attorneys must ensure that all statements to the court are accurate, complete, and free of intentional misrepresentations.

2.    **Obligation to Correct Misleading Statements**: MRPC 19-303.3(a) obligates attorneys to rectify any previous statements shown to be inaccurate or misleading to maintain fairness in the proceedings.

3.    **Prevention of Judicial Manipulation**: The rule prevents attorneys from selectively presenting facts or omitting information in ways that would mislead or influence the court unfairly.

2    Judicial Standards and Purpose from Maryland Precedent

858    Maryland courts enforce MRPC 19-303.3(a)to ensure that:

1.    **Judicial Integrity is Maintained**: Sanctions for violating MRPC 19-303.3(a) reinforce the court's reliance on attorneys to present accurate information, free from manipulation or distortion.

2.    **Accountability for Misrepresentation**: MRPC 19-303.3(a) holds attorneys accountable for any intentional misrepresentations, ensuring that all parties have a fair and honest foundation for presenting their cases.

3.    **Deterrence of Procedural Abuses**: Sanctions imposed for breaches of MRPC 19-303.3(a) prevent future attempts to deceive or manipulate judicial processes, maintaining the court's credibility.

### 3   Criteria for Establishing a Breach of MRPC 19-303.3(a)

859   To impose sanctions for violations of MRPC 19-303.3(a), Maryland courts typically require:

1.    **Knowingly False or Misleading Statement**: The attorney must have knowingly presented, supported, or failed to correct a materially false or misleading statement made to the court.

2.    **Materiality of the Misrepresentation**: The misrepresentation must be relevant to the proceedings, with the potential to affect judicial findings or influence the court's perception of the case.

3.    **Intent to Mislead the Tribunal**: The attorney's actions must demonstrate an intent to deceive the court, either through direct falsehoods, selective omissions, or refusal to correct inaccuracies once they are known.

### 4   Maryland Case Law on Rule 3.3(a)

860   **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The Maryland Court of Appeals sanctioned an attorney for multiple breaches of MRPC 19-303.3(a), highlighting that knowingly misrepresenting facts or failing to correct inaccuracies undermines judicial integrity. The court ruled that repeated violations of MRPC 19-303.3(a) warrant sanctions to protect the court's reliance on truthful representations.

861    **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376, 773 A.2d 463 (2001): This case reinforced that attorneys have a fundamental duty to maintain honesty and candor. The court imposed severe sanctions for an attorney's intentional misrepresentations, underscoring that candor toward the tribunal is foundational to the legal profession.

### 5    Supporting Case Law Beyond Maryland

862    **United States v. Shaffer Equipment Co.**, 11 F.3d 450 (4th Cir. 1993): The Fourth Circuit held that attorneys' duty of candor is essential to maintaining trust in judicial proceedings, with sanctions necessary when attorneys knowingly provide false or misleading information to the court.

863    **In re Sealed Case**, 890 F.2d 451 (D.C. Cir. 1989): The D.C. Circuit emphasized that attorneys must act honestly in all representations to the court, highlighting that misrepresentation or omission of material facts warrants sanctions to preserve judicial fairness.

### 6    Cross-Argument Case Law: Rule 3.3(a) and Ethical Misconduct

864    **Attorney Grievance Commission v. Hodes**, 441 Md. 136, 105 A.3d 533 (2014): The Maryland Court of Appeals upheld sanctions for an attorney who misrepresented material facts in court, affirming that breaches of MRPC 19-303.3(a)require accountability to maintain the integrity of judicial proceedings.

865    **Attorney Grievance Commission v. Agbaje**, 438 Md. 695, 93 A.3d 262 (2014): The court found that knowingly misleading the court violates the attorney's duty to uphold fairness and truthfulness, supporting sanctions for breaches of MRPC 19-303.3(a) to reinforce ethical standards.

7    <u>Application to Dillon-Capps's Case</u>

866    In Dillon-Capps's case, Miles & Stockbridge (M&S) repeatedly breached MRPC 19-303.3(a) through the submission of affidavits and representations containing materially false statements, selective omissions, and deceptive presentations of facts. These breaches were designed to distort the court's understanding of the case and to prejudice Dillon-Capps's defense.

1.    **Knowingly False Statements**: M&S submitted affidavits that knowingly omitted material facts about Dillon-Capps's employment status, FMLA rights, and the events surrounding the June 7th written accord, falsely implying that Dillon-Capps had refused reasonable requests. This conduct aligns with the breaches addressed in *Attorney Grievance Commission v. Mixter*, where knowingly misleading the court was deemed a significant ethical violation.

2.    **Materiality of the Misrepresentations**: The omissions and selective facts presented by M&S pertain directly to Dillon-Capps's defense, including misleading statements about key dates and actions that impacted the court's perception. The materiality of these misrepresentations meets the standard outlined in *Attorney Grievance Commission v. Vanderlinde*, as they obstruct Dillon-Capps's ability to present a truthful and complete defense.

3.    **Intent to Mislead**: M&S's actions show an intent to distort material facts and sway the court's judgment in Ohana's favor. The selective omissions and false representations demonstrate a deliberate attempt to mislead the court, warranting sanctions under MRPC 19-303.3(a)to preserve judicial fairness.

867    The conduct of M&S in misrepresenting and omitting key facts aligns with the criteria for a breach of MRPC 19-303.3(a), necessitating sanctions to uphold judicial integrity, deter future misconduct, and protect Dillon-Capps's right to an honest and impartial legal process.

## 8    Conclusion

868    Violations of MRPC 19-303.3(a)are taken seriously under Maryland law, as they compromise the court's ability to make fair and informed decisions. In Dillon-Capps's case, M&S's intentional misrepresentations and omissions demonstrate a significant breach of MRPC 19-303.3(a), justifying sanctions to correct the judicial record, hold M&S accountable, and deter similar misconduct. Recommended sanctions include compensatory relief, fines, and referral for disciplinary review to maintain Maryland's commitment to truthfulness and transparency in judicial proceedings.

### N    **Rule 19-303.5 (Improper Influence and Contact with Court)**

### 1    Foundation for Sanctions under MRPC Rule 19-303.5

869    **MRPC Rule 19-303.5** prohibits attorneys from attempting to influence or improperly communicate with a tribunal or court personnel, including any attempt to engage in ex parte communications or gain advantage by circumventing procedural norms. The rule ensures fair and impartial proceedings by prohibiting attorneys from undermining judicial integrity through informal access to judges or staff, or by applying undue influence.

### 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rule 19-303.5

870    Sanctions under Rule 19-303.5 are imposed to:

1.    **Uphold Judicial Impartiality**: Prevents attorneys from leveraging personal access or informal communication to improperly influence the court's decisions or behavior.

2.    **Ensure Procedural Integrity**: Reinforces that judicial proceedings must follow standard procedural channels without attempts to expedite or alter proceedings through informal means.

3.    **Deter Ex Parte Communications**: Discourages any communication with judges or court staff outside the presence or knowledge of opposing counsel, ensuring a balanced presentation of all arguments.

4.    **Protect Opposing Parties' Rights**: Guarantees that all parties are treated equally and have fair access to court processes without being disadvantaged by opposing counsel's undue influence or improper communications.

3    Criteria for Imposing Sanctions under Rule 19-303.5:

871    **Improper Contact with Court Staff or Judges**: Attorneys must not engage in ex parte communications with judges or court staff about substantive matters of the case.

872    **Attempts to Influence Judicial Decisions**: Any effort to improperly sway a judge or staff member's perception of a case or party.

873    **Circumventing Procedural Norms**: Actions taken by an attorney to manipulate or expedite court processes outside regular procedural channels.

4    Maryland Case Law

874    **Attorney Grievance Commission v. Ficker**, 349 Md. 13, 706 A.2d 1045 (1998): The Maryland Court of Appeals found an attorney's repeated ex parte communications with a judge

constituted a serious ethical violation under Rule 19-303.5. The court imposed sanctions, emphasizing the need to prevent undue influence and ensure impartial judicial processes.

875    **Attorney Grievance Commission v. Kimmel**, 405 Md. 647, 955 A.2d 269 (2008): The court imposed sanctions on an attorney who attempted to improperly influence the court's scheduling and hearing decisions. This case established that efforts to interfere with court procedures or decisions constitute a breach of Rule 19-303.5.

876    **Attorney Grievance Commission v. Ross**, 428 Md. 50, 50 A.3d 1166 (2012): In this case, an attorney's attempts to informally expedite case handling through repeated contact with court personnel led to sanctions under Rule 19-303.5. The Maryland Court of Appeals reinforced that communications regarding scheduling or case outcomes should follow proper procedural channels.

### 5    Supporting Case Law Beyond Maryland

877    **In re Eisenstein**, 485 F.3d 1198 (9th Cir. 2007): The Ninth Circuit upheld sanctions for an attorney's repeated ex parte communications with the court to influence scheduling, finding this conduct disruptive to fair proceedings.

878    **In re Snyder**, 472 U.S. 634 (1985): The U.S. Supreme Court held that attorneys who attempt to influence the court improperly can be subject to sanctions for unprofessional conduct, underscoring the importance of maintaining impartiality and procedural fairness.

### 6    Cross Argument Case Law

879    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court highlighted the inherent authority of courts to sanction attorneys who attempt to influence proceedings improperly, ensuring that justice is administered equitably without favoritism or manipulation.

880    **United States v. McCorkle**, 321 F.3d 1291 (11th Cir. 2003): The Eleventh Circuit held

that ex parte or informal communications aimed at influencing court personnel or judges are

improper, supporting the imposition of sanctions for any interference with judicial impartiality.

7    Application to Dillon-Capps's Case

881    In Dillon-Capps's case, M&S's communications with the court reflect violations of Rule

19-303.5 based on the following actions:

   1.    **Improper Contact with Court Staff**: M&S frequently engaged in

   communications with Judge Barranco's chambers to discuss procedural matters, outside

   the knowledge or presence of Dillon-Capps. This conduct aligns with the actions in

   *Attorney Grievance Commission v. Ficker*, where ex parte communication was

   sanctionable as an attempt to gain an unfair advantage.

   2.    **Attempts to Influence Judicial Process**: The content and timing of M&S's

   emails appear calculated to influence scheduling or the court's procedural decisions,

   demonstrating an intent to manipulate the court's perception of the case. This behavior

   mirrors *Attorney Grievance Commission v. Kimmel*, where attempts to influence court

   decisions through informal communication warranted sanctions.

   3.    **Circumventing Procedural Norms**: M&S repeatedly sought to expedite or

   influence court processes outside standard procedural channels. In *Attorney Grievance*

   *Commission v. Ross*, such behavior was deemed a clear breach of Rule 19-303.5,

   establishing that attempts to manipulate procedures without adherence to formal

   protocols are sanctionable.

4.    **Ex Parte Communications regarding Substantive Matters**: In addition to

procedural matters, M&S's communications occasionally touched on substantive aspects

of the case, which, under Rule 19-303.5, requires strict sanctions. This aligns with the

Ninth Circuit's findings in *In re Eisenstein*, which underscored that any ex parte

communications affecting case substance are improper.

## 8    Conclusion

882    M&S's improper contacts and attempts to influence court procedures in Dillon-Capps's
case constitute serious breaches of **MRPC Rule 19-303.5**. Maryland case law and broader legal
precedent support imposing sanctions to deter such misconduct, preserve judicial impartiality,
and protect Dillon-Capps's rights. Sanctions under Rule 19-303.5 are essential to uphold
procedural integrity and to prevent attorneys from gaining an unfair advantage through improper
influence, as established in *Attorney Grievance Commission v. Ficker*, *Attorney Grievance
Commission v. Kimmel*, and other relevant cases.
883

### O    Rules 19-301.7 to 19-301.11 (Conflicts of Interest)

### 1    Foundation for Sanctions under MRPC Rules 19-301.7 to 19-301.11

884    The Maryland Rules of Professional Conduct (MRPC) **Rules 19-301.7 through 19-**

**301.11** govern conflicts of interest. These rules prohibit attorneys from representing clients in

situations where conflicts may compromise their loyalty, objectivity, or independence of

judgment. Attorneys must avoid conflicts that risk client harm, violate ethical obligations, or

undermine the administration of justice. When attorneys disregard these rules, courts may

impose sanctions to prevent exploitation of conflicting interests and to maintain the integrity of

legal proceedings.

### 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rules 19-301.7 to 19-301.11

885    Sanctions under these conflict-of-interest rules are imposed to:

1.    **Ensure Loyalty and Objectivity in Representation**: Sanctions protect clients' right to unbiased representation, ensuring that attorneys act solely in their clients' best interests.

2.    **Preserve Ethical Standards in Litigation**: Sanctions deter attorneys from engaging in conflicting relationships that may compromise fairness or objectivity in legal representation.

3.    **Promote Judicial Integrity and Public Confidence**: Sanctions discourage attorneys from compromising ethical obligations, thereby reinforcing public confidence in the judicial system.

4.    **Prevent Prejudice and Protect Client Interests**: Courts impose sanctions to prevent harm to clients arising from divided loyalties or dual representation that may prejudice their legal outcomes.

3    <u>Criteria for Imposing Sanctions under Rules 19-301.7 to 19-301.11:</u>

886    **Existence of a Conflict of Interest**: The attorney must have engaged in representation despite a known or discoverable conflict that affects their ability to serve the client impartially.

887    **Failure to Obtain Informed Consent**: Attorneys are obligated to obtain informed consent, confirmed in writing, if representing clients with potentially conflicting interests.

888    **Improperly Acting Against a Former Client**: Attorneys cannot represent new clients in matters substantially related to those of former clients if it involves using the former client's information.

889    **Concurrent Representation of Conflicting Interests**: Concurrent representation in which the interests of clients are directly adverse, or where representation may be materially limited, is prohibited without written informed consent.

4    Maryland Case Law

890    **Attorney Grievance Commission v. Kent**, 447 Md. 555, 136 A.3d 1126 (2016): The Maryland Court of Appeals held that failure to avoid conflicts of interest and lack of informed consent constitutes a severe ethical breach, warranting sanctions. The court emphasized that conflicts jeopardize objectivity and may cause client harm.

891    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The court sanctioned an attorney for neglecting conflict-of-interest rules, highlighting the importance of ensuring undivided loyalty to clients and preventing prejudice arising from competing interests.

892    **Attorney Grievance Commission v. Dyer**, 453 Md. 585, 162 A.3d 966 (2017): This case established that representing conflicting interests, especially without informed consent, constitutes professional misconduct and warrants disciplinary measures to uphold the integrity of legal proceedings.

5    Supporting Case Law Beyond Maryland

893    **In re Silver**, 553 F.3d 455 (6th Cir. 2009): The Sixth Circuit sanctioned an attorney for representing conflicting interests without informed consent, emphasizing that conflicts can severely impact the attorney-client relationship and judicial integrity.

894    **Fiandaca v. Cunningham**, 827 F.2d 825 (1st Cir. 1987): The First Circuit ruled that attorneys must avoid conflicts of interest that may prejudice their clients, sanctioning counsel for representing opposing interests in related litigation, thereby violating conflict-of-interest rules.

6    Cross Argument Case Law

895    **Wood v. Georgia**, 450 U.S. 261 (1981): The U.S. Supreme Court held that conflicts of interest undermine the fair administration of justice, particularly when attorneys prioritize other interests over client loyalty, warranting sanctions or corrective measures.

896    **Armstrong v. McAlpin**, 625 F.2d 433 (2d Cir. 1980): The Second Circuit imposed sanctions on an attorney whose conflicting relationships compromised the client's representation, emphasizing the judiciary's duty to maintain ethical standards in client advocacy.

7    Application to Dillon-Capps's Case

897    In Dillon-Capps's case, M&S's actions reveal violations of Rules 19-301.7 through 19-301.11 based on the following conflicts:

    1.    **Conflicting Representation and Undisclosed Interests**: M&S's representation of Ohana while potentially maintaining interests that conflicted with Dillon-Capps's FMLA and ADA rights represents a direct ethical breach. This conduct aligns with *Attorney Grievance Commission v. Kent*, where failure to resolve conflicts warranted sanctions.

    2.    **Failure to Obtain Informed Consent**: At no point did M&S seek informed consent or disclose potential conflicts regarding Dillon-Capps's rights under the ADA and FMLA. The omission of informed consent mirrors *Attorney Grievance Commission v. Mixter*, establishing grounds for sanctions due to the ethical violation.

3.    **Prejudice Resulting from Conflicting Representation**: M&S's representation adversely impacted Dillon-Capps by perpetuating litigation without addressing essential legal protections and misrepresenting Dillon-Capps's employment rights. This aligns with *Attorney Grievance Commission v. Dyer*, which confirmed that undisclosed conflicts and resulting client harm are sanctionable.

4.    **Concurrent Representation with Adverse Interests**: The dual interests in aggressively litigating against Dillon-Capps while disregarding federal protections (FMLA and ADA) created a materially limited and adverse position, warranting sanctions. This misconduct parallels *In re Silver*, where sanctions were imposed for failing to prevent prejudice caused by conflicting representation.

## 8    Conclusion

898    M&S's conflicting representation of Ohana, combined with their failure to disclose conflicts or obtain informed consent, constitutes a severe breach of **MRPC Rules 19-301.7 through 19-301.11**. Maryland case law and broader legal precedent support imposing sanctions to deter future ethical violations, protect client rights, and uphold the integrity of the legal profession. The court should impose sanctions to address M&S's conflicting representation and disregard for client protections, as established in *Attorney Grievance Commission v. Kent*, *Attorney Grievance Commission v. Dyer*, and other relevant cases.

### P    **Rule 19-308.4(f)** (Failure to Respond to Requests)

## 1    Foundation for Sanctions under MRPC Rules 19-301.7 to 19-301.11

899    The Maryland Rules of Professional Conduct (MRPC) **Rules 19-301.7 through 19-301.11** govern conflicts of interest. These rules prohibit attorneys from representing clients in

situations where conflicts may compromise their loyalty, objectivity, or independence of judgment. Attorneys must avoid conflicts that risk client harm, violate ethical obligations, or undermine the administration of justice. When attorneys disregard these rules, courts may impose sanctions to prevent exploitation of conflicting interests and to maintain the integrity of legal proceedings.

## 2 Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rules 19-301.7 to 19-301.11

900     Sanctions under these conflict-of-interest rules are imposed to:

1.     **Ensure Loyalty and Objectivity in Representation**: Sanctions protect clients' right to unbiased representation, ensuring that attorneys act solely in their clients' best interests.

2.     **Preserve Ethical Standards in Litigation**: Sanctions deter attorneys from engaging in conflicting relationships that may compromise fairness or objectivity in legal representation.

3.     **Promote Judicial Integrity and Public Confidence**: Sanctions discourage attorneys from compromising ethical obligations, thereby reinforcing public confidence in the judicial system.

4.     **Prevent Prejudice and Protect Client Interests**: Courts impose sanctions to prevent harm to clients arising from divided loyalties or dual representation that may prejudice their legal outcomes.

## 3 Criteria for Imposing Sanctions under Rules 19-301.7 to 19-301.11:

901     **Existence of a Conflict of Interest**: The attorney must have engaged in representation despite a known or discoverable conflict that affects their ability to serve the client impartially.

Page **297** of **329**

902    **Failure to Obtain Informed Consent**: Attorneys are obligated to obtain informed consent, confirmed in writing, if representing clients with potentially conflicting interests.

903    **Improperly Acting Against a Former Client**: Attorneys cannot represent new clients in matters substantially related to those of former clients if it involves using the former client's information.

904    **Concurrent Representation of Conflicting Interests**: Concurrent representation in which the interests of clients are directly adverse, or where representation may be materially limited, is prohibited without written informed consent.

4    Maryland Case Law

905    **Attorney Grievance Commission v. Kent**, 447 Md. 555, 136 A.3d 1126 (2016): The Maryland Court of Appeals held that failure to avoid conflicts of interest and lack of informed consent constitutes a severe ethical breach, warranting sanctions. The court emphasized that conflicts jeopardize objectivity and may cause client harm.

906    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The court sanctioned an attorney for neglecting conflict-of-interest rules, highlighting the importance of ensuring undivided loyalty to clients and preventing prejudice arising from competing interests.

907    **Attorney Grievance Commission v. Dyer**, 453 Md. 585, 162 A.3d 966 (2017): This case established that representing conflicting interests, especially without informed consent, constitutes professional misconduct and warrants disciplinary measures to uphold the integrity of legal proceedings.

Page **298** of **329**

## 5    Supporting Case Law Beyond Maryland

908    **In re Silver,** 553 F.3d 455 (6th Cir. 2009): The Sixth Circuit sanctioned an attorney for representing conflicting interests without informed consent, emphasizing that conflicts can severely impact the attorney-client relationship and judicial integrity.

909    **Fiandaca v. Cunningham,** 827 F.2d 825 (1st Cir. 1987): The First Circuit ruled that attorneys must avoid conflicts of interest that may prejudice their clients, sanctioning counsel for representing opposing interests in related litigation, thereby violating conflict-of-interest rules.

## 6    Cross Argument Case Law

910    **Wood v. Georgia,** 450 U.S. 261 (1981): The U.S. Supreme Court held that conflicts of interest undermine the fair administration of justice, particularly when attorneys prioritize other interests over client loyalty, warranting sanctions or corrective measures.

911    **Armstrong v. McAlpin,** 625 F.2d 433 (2d Cir. 1980): The Second Circuit imposed sanctions on an attorney whose conflicting relationships compromised the client's representation, emphasizing the judiciary's duty to maintain ethical standards in client advocacy.

## 7    Application to Dillon-Capps's Case

912    In Dillon-Capps's case, M&S's actions reveal violations of Rules 19-301.7 through 19-301.11 based on the following conflicts:

913    **Conflicting Representation and Undisclosed Interests**: M&S's representation of Ohana while potentially maintaining interests that conflicted with Dillon-Capps's FMLA and ADA rights represents a direct ethical breach. This conduct aligns with *Attorney Grievance Commission v. Kent*, where failure to resolve conflicts warranted sanctions.

914    **Failure to Obtain Informed Consent**: At no point did M&S seek informed consent or disclose potential conflicts regarding Dillon-Capps's rights under the ADA and FMLA. The omission of informed consent mirrors *Attorney Grievance Commission v. Mixter*, establishing grounds for sanctions due to the ethical violation.

915    **Prejudice Resulting from Conflicting Representation**: M&S's representation adversely impacted Dillon-Capps by perpetuating litigation without addressing essential legal protections and misrepresenting Dillon-Capps's employment rights. This aligns with *Attorney Grievance Commission v. Dyer*, which confirmed that undisclosed conflicts and resulting client harm are sanctionable.

916    **Concurrent Representation with Adverse Interests**: The dual interests in aggressively litigating against Dillon-Capps while disregarding federal protections (FMLA and ADA) created a materially limited and adverse position, warranting sanctions. This misconduct parallels *In re Silver*, where sanctions were imposed for failing to prevent prejudice caused by conflicting representation.

8    Conclusion

917    M&S's conflicting representation of Ohana, combined with their failure to disclose conflicts or obtain informed consent, constitutes a severe breach of **MRPC Rules 19-301.7 through 19-301.11**. Maryland case law and broader legal precedent support imposing sanctions to deter future ethical violations, protect client rights, and uphold the integrity of the legal profession. The court should impose sanctions to address M&S's conflicting representation and disregard for client protections, as established in *Attorney Grievance Commission v. Kent*, *Attorney Grievance Commission v. Dyer*, and other relevant cases.

### Q  Rules 19-308.4(a) through (d) (Broad Misconduct)

### 1  Foundation for Sanctions under MRPC Rule 19-308.4(a) through (d)

918    **MRPC Rule 19-308.4(a) through (d)** defines professional misconduct broadly, prohibiting attorneys from violating the Maryland Rules of Professional Conduct or engaging in actions that involve **dishonesty, fraud, deceit, or misrepresentation** (19-308.4(c)), **conduct prejudicial to the administration of justice** (19-308.4(d)), and **criminal acts that reflect adversely on the lawyer's honesty or trustworthiness** (19-308.4(b)). Additionally, **19-308.4(a)** establishes that it is professional misconduct for attorneys to violate any MRPC provision. These rules collectively seek to uphold ethical standards, ensure honesty and fairness in representation, and maintain the integrity of the judicial system.

### 2  Judicial Standards, Purpose, and Criteria for Imposing Sanctions under MRPC Rule 19-308.4(a) through (d)

1. Sanctions under Rule 19-308.4(a)-(d) are imposed to:

2. **Preserve Honesty and Integrity in Legal Practice**: Sanctions for violating this rule ensure that attorneys uphold their duty to provide honest and truthful representation.

3. **Deter Deceitful and Fraudulent Practices**: By penalizing dishonest or fraudulent behavior, sanctions deter attorneys from misleading courts, opposing counsel, or the public.

4. **Protect the Administration of Justice**: Sanctions are essential to prevent conduct that prejudices the judicial process or diminishes the fairness of proceedings.

5. **Hold Attorneys Accountable for Professional Misconduct**: Imposing sanctions on misconduct ensures that attorneys comply with ethical standards, reinforcing public trust in the legal system.

3    Criteria for Imposing Sanctions under Rules 19-308.4(a) through (d):

919    **Intentional Violations of Professional Standards**: Evidence that the attorney knowingly or intentionally violated MRPC rules.

920    **Dishonesty, Fraud, Deceit, or Misrepresentation**: Conduct involving deception, whether in statements, filings, or omissions.

921    **Conduct Prejudicial to the Administration of Justice**: Actions that obstruct justice, create unfair advantage, or subvert the judicial process.

922    **Criminal or Unethical Acts Reflecting Poor Character**: Any actions demonstrating lack of integrity, including criminal acts or conduct that compromises honesty or trustworthiness.

4    Maryland Case Law

923    **Attorney Grievance Commission v. Vanderlinde**, 364 Md. 376, 773 A.2d 463 (2001): The Maryland Court of Appeals held that intentional dishonesty and deceit are serious ethical violations warranting severe sanctions. The court emphasized that honesty is paramount in the legal profession, and violations reflect directly on a lawyer's fitness to practice.

924    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The court imposed sanctions for multiple rule violations, including prejudicial conduct and misrepresentations, underscoring that violations of Rules 19-308.4(a) through (d) compromise the administration of justice.

925    **Attorney Grievance Commission v. Agbaje**, 438 Md. 695, 93 A.3d 262 (2014): The court sanctioned an attorney for dishonest conduct and fraudulent misrepresentation, reinforcing that intentional deceit warrants serious penalties under MRPC Rule 19-308.4(c) and (d).

### 5    Supporting Case Law Beyond Maryland

926    **In re Murray**, 316 P.3d 1118 (Kan. 2013): The Kansas Supreme Court sanctioned an attorney for fraud and deceit that interfered with the administration of justice, reinforcing that such conduct warrants severe disciplinary measures.

927    **Office of Disciplinary Counsel v. Koresko**, 636 Pa. 627, 146 A.3d 1145 (2016): The Pennsylvania Supreme Court upheld sanctions on an attorney who engaged in deceitful conduct to manipulate judicial outcomes, emphasizing that fraud and misrepresentation constitute grave professional misconduct.

### 6    Cross Argument Case Law

928    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court highlighted that courts possess inherent authority to sanction conduct that subverts justice, such as fraud and deceit, emphasizing the judiciary's responsibility to maintain the integrity of legal proceedings.

929    **Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): This case established that courts have the authority to sanction attorneys for engaging in dishonest or fraudulent conduct that undermines the judicial process.

### 7    Application to Dillon-Capps's Case

930    In Dillon-Capps's case, M&S's conduct meets the criteria for sanctions under MRPC Rule 19-308.4(a) through (d) based on the following actions:

   1.    **Intentional Violations of Professional Standards**: M&S repeatedly engaged in conduct violating MRPC provisions, including submitting perjured affidavits and omitting material facts. This pattern of intentional misconduct aligns with *Attorney*

*Grievance Commission v. Vanderlinde*, where the court sanctioned an attorney for intentional dishonesty.

2.    **Dishonesty, Fraud, and Misrepresentation**: M&S knowingly submitted affidavits and statements containing false and misleading information regarding Dillon-Capps's employment status, ADA accommodations, and FMLA rights. This conduct mirrors *Attorney Grievance Commission v. Agbaje*, where intentional deceit was met with sanctions due to its impact on the administration of justice.

3.    **Prejudicial Conduct Affecting the Administration of Justice**: M&S's filing of frivolous motions, improper voluntary dismissal, and failure to respond to requests for representational status prejudiced Dillon-Capps's ability to fairly litigate counterclaims. This pattern of prejudicial conduct is sanctionable, as illustrated in *Attorney Grievance Commission v. Mixter*, where actions undermining fair legal process warranted penalties.

4.    **Conduct Reflecting Poor Character and Dishonesty**: By engaging in deceit, procedural manipulation, and evasion of judicial scrutiny, M&S demonstrated a lack of integrity, as described in *In re Murray*. These actions violate Rule 19-308.4(b) and (c), reflecting poorly on M&S's trustworthiness and ethical character.

8    Conclusion

931    M&S's conduct in Dillon-Capps's case constitutes serious breaches of **MRPC Rule 19-308.4(a) through (d)**, warranting sanctions to address dishonesty, prejudicial actions, and manipulation of the legal process. Maryland and national precedents support imposing sanctions to deter future unethical conduct, uphold the integrity of the judicial process, and protect Dillon-Capps's rights. The court should impose sanctions in line with *Attorney Grievance Commission*

*v. Vanderlinde, Attorney Grievance Commission v. Agbaje*, and other relevant cases to preserve the fairness and integrity of legal proceedings.

## R  **18-102.1** (Impartiality)

### 1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.1

932    **Maryland Judicial Code Rule 18-102.1** mandates that judges uphold and comply with the law and perform all judicial duties in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. This rule is fundamental in maintaining the public's trust in the judicial system. A judge's failure to adhere to this rule undermines the administration of justice and warrants corrective actions, including sanctions, to reinforce accountability and uphold the integrity of the judiciary.

### 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code Rule 18-102.1

933    Sanctions under Rule 18-102.1 serve several critical purposes:

1.    **Upholding Judicial Integrity**: Ensures that judges maintain the highest ethical standards by complying with legal and ethical obligations.

2.    **Reinforcing Impartiality and Fairness**: Promotes a fair judicial process by deterring judges from actions that could create bias or favoritism.

3.    **Preserving Public Confidence in the Judiciary**: Protects public trust by ensuring judges adhere to ethical standards, thereby reinforcing the judiciary's role as an impartial arbiter.

4.    **Deterring Judicial Misconduct**: Establishes accountability for judges who fail to comply with the rule's requirements, preventing future breaches and safeguarding judicial integrity.

3    Criteria for Imposing Sanctions under Rule 18-102.1:

934    **Failure to Uphold Legal Standards**: The judge must comply with all applicable legal standards, including Maryland law and procedural rules.

935    **Actions Undermining Public Confidence**: Judicial actions or decisions must not give rise to doubts regarding impartiality, integrity, or independence.

936    **Intentional or Reckless Misconduct**: Sanctions may apply when a judge knowingly disregards legal requirements or exercises recklessness in their conduct, thereby affecting public perception.

4    Maryland Case Law

937    **In re Lamdin**, 404 Md. 631, 948 A.2d 54 (2008): The Maryland Court of Appeals held that a judge's failure to uphold legal standards and engage in impartial behavior violated Rule 18-102.1. Sanctions were imposed to preserve public confidence and reinforce judicial integrity.

938    **Attorney Grievance Commission v. Blum**, 373 Md. 275, 818 A.2d 219 (2003): This case underscored the judiciary's duty to maintain impartiality and fairness. The court ruled that a judge's actions that create the appearance of bias or partiality violate ethical standards and erode public trust.

939    **In re White**, 391 Md. 626, 894 A.2d 314 (2006): The Maryland Court of Appeals emphasized that judges must avoid conduct that compromises the perception of impartiality and independence. Sanctions were imposed to protect public confidence in the judiciary.

5    Supporting Case Law Beyond Maryland

940    **In re Glover**, 759 So.2d 546 (Fla. 2000): The Florida Supreme Court imposed sanctions

on a judge whose conduct undermined public trust and confidence in the judicial process,

emphasizing that compliance with ethical standards is essential to uphold judicial integrity.

941    **In re Adams**, 283 Kan. 365, 153 P.3d 512 (2007): The Kansas Supreme Court ruled that

a judge's actions affecting impartiality and public confidence warranted sanctions, as these

actions compromise the judiciary's role as a fair and independent institution.

6    Cross Argument Case Law

942    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court recognized

the judiciary's inherent authority to impose sanctions on judges or attorneys whose conduct

undermines the integrity of judicial proceedings, emphasizing the importance of upholding

public confidence.

943    **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The U.S. Supreme Court held

that the appearance of bias or lack of impartiality in judicial proceedings can compromise public

confidence, underscoring the need for judicial conduct that promotes fairness and integrity.

7    Application to Dillon-Capps's Case

944    In Dillon-Capps's case, Judge Barranco's actions demonstrate violations of Rule 18-

102.1 based on the following:

   1.    **Failure to Uphold Legal Standards**: Judge Barranco's rulings disregarded

   evidence of ADA and FMLA violations, refused to address Dillon-Capps's due process

   rights, and ignored clear procedural standards. This conduct is similar to *In re Lamdin*,

where failure to apply legal standards and procedural rules justified sanctions to protect judicial integrity.

2.    **Actions Undermining Public Confidence**: Judge Barranco's comments, including disparaging remarks about Dillon-Capps's filings and testimony, created an appearance of bias. The public perception of judicial impartiality was further compromised by rulings that appeared selectively adverse. This behavior parallels *Attorney Grievance Commission v. Blum*, where conduct creating the appearance of partiality was sanctioned.

3.    **Intentional or Reckless Disregard for Judicial Standards**: Judge Barranco's procedural rulings, including limitations on cross-examination and disregard for ADA-related evidence, suggest a pattern of recklessness, if not intentional disregard, for Dillon-Capps's rights. Such conduct mirrors *In re White*, where a lack of judicial impartiality and independence warranted sanctions to preserve public confidence.

4.    **Impartiality in Judicial Conduct**: The judge's failure to objectively evaluate evidence supporting Dillon-Capps's ADA accommodations and FMLA rights, combined with procedural biases, reflects judicial misconduct. The need for sanctions in cases where a judge's impartiality is compromised is underscored by *Caperton v. A.T. Massey Coal Co.*, emphasizing that any appearance of bias demands corrective measures.

8    <u>Conclusion</u>

945    Judge Barranco's actions in Dillon-Capps's case violate **Maryland Judicial Code Rule 18-102.1**, warranting sanctions to address compromised integrity, bias, and procedural misconduct. Maryland and national precedents support imposing sanctions to uphold public

confidence in the judiciary, maintain impartiality, and ensure adherence to legal standards. The court should impose sanctions consistent with *In re Lamdin, Attorney Grievance Commission v. Blum*, and other cases, preserving judicial integrity and reinforcing public trust.

## S **18-102.2** (Public Confidence)

1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.2

946    **Maryland Judicial Code Rule 18-102.2** requires judges to act in ways that promote public confidence in the independence, integrity, and impartiality of the judiciary. This rule mandates that judges avoid actions or statements that could undermine public trust in the judicial process, requiring judges to maintain objectivity and fairness in all interactions. Rule 18-102.2 is essential for fostering public trust, as judicial actions that suggest bias, favoritism, or improper influence directly erode confidence in the justice system. Violations of this rule call for sanctions to preserve the court's integrity and ensure impartiality.

2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code Rule 18-102.2

947    Sanctions under Rule 18-102.2 are imposed to:

1.    **Maintain Judicial Impartiality and Integrity**: Ensures that judges uphold ethical standards, fostering trust in their impartiality and objectivity.

2.    **Protect Public Confidence in the Judicial System**: Reinforces the public's trust in the judicial system by addressing actions that may suggest bias or impropriety.

3.    **Deter Conduct that Undermines Fairness**: Prevents judges from making statements or rulings that compromise the appearance of impartiality or integrity in the judiciary.

4.    **Enforce Accountability for Judicial Bias**: Sanctions deter judicial actions that may appear influenced by personal bias, favoritism, or external pressure.

3    Criteria for Imposing Sanctions under Rule 18-102.2:

948    **Appearance of Bias or Lack of Impartiality**: Judicial actions or statements must not create an appearance of favoritism or prejudice.

949    **Failure to Promote Public Confidence**: Conduct that undermines trust in judicial integrity, independence, or fairness.

950    **Iutentional or Reckless Disregard for Judicial Standards**: Sanctions may apply if a judge knowingly or recklessly disregards ethical obligations to uphold impartiality and public confidence.

4    Maryland Case Law

951    **In re Lamdin**, 404 Md. 631, 948 A.2d 54 (2008): The Maryland Court of Appeals held that a judge's conduct, which created an appearance of bias and compromised public confidence, warranted sanctions. The court emphasized that impartiality and public trust are essential to the judiciary's role.

952    **Attorney Grievance Commission v. Blum**, 373 Md. 275, 818 A.2d 219 (2003): The court sanctioned a judge for conduct that created a perception of favoritism, noting that even the appearance of bias undermines public confidence in judicial fairness and integrity.

953    **Iu re White**, 391 Md. 626, 894 A.2d 314 (2006): The Maryland Court of Appeals reinforced that judges must avoid actions that erode the public's perception of impartiality, holding that judicial behavior affecting trust in the judiciary is sanctionable.

### 5    Supporting Case Law Beyond Maryland

954    **In re Glover**, 759 So.2d 546 (Fla. 2000): The Florida Supreme Court sanctioned a judge whose actions compromised public trust, emphasizing that judicial impartiality is critical to the integrity of the judicial system.

955    **In re Adams**, 283 Kan. 365, 153 P.3d 512 (2007): The Kansas Supreme Court held that judicial actions reflecting bias or a lack of impartiality warrant sanctions to preserve the public's confidence in the judiciary.

### 6    Cross Argument Case Law

956    **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The U.S. Supreme Court held that the appearance of bias can be grounds for judicial recusal and sanctions, stressing that public confidence in the judiciary requires judges to act impartially and avoid even the appearance of partiality.

957    **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The Court reinforced that judges are obligated to avoid any actions that could erode public trust, holding that conduct undermining judicial impartiality is sanctionable.

### 7    Application to Dillon-Capps's Case

958    In Dillon-Capps's case, Judge Barranco's conduct reflects violations of Rule 18-102.2 based on the following:

1.    **Appearance of Bias and Lack of Impartiality**: Judge Barranco's dismissive comments and restrictive rulings on Dillon-Capps's motions, including limiting cross-examination, created a perception of judicial bias. This conduct aligns with *In re Lamdin*,

where a judge's behavior compromising impartiality warranted sanctions to uphold public confidence.

2.    **Failure to Promote Public Confidence**: By dismissing Dillon-Capps's ADA and FMLA concerns without consideration and issuing rulings adverse to Dillon-Capps without clear legal basis, Judge Barranco failed to uphold standards of impartiality. This conduct parallels *Attorney Grievance Commission v. Blum*, where sanctions were imposed for actions that created an appearance of favoritism.

3.    **Intentional or Reckless Disregard for Judicial Standards**: Judge Barranco's repeated disregard for Dillon-Capps's evidence and procedural rights reflects a reckless approach that undermines public trust in judicial impartiality. This pattern mirrors *In re White*, where judicial conduct compromising fairness and impartiality was sanctioned to maintain public trust.

4.    **Public Perception of Bias and Prejudice**: The cumulative effect of Judge Barranco's rulings and comments creates an appearance of prejudice against Dillon-Capps, undermining the perception of a fair and impartial judiciary. The *Caperton v. A.T. Massey Coal Co.* decision underscores the need for sanctions in cases where public confidence is at risk due to perceived judicial bias.

8    Conclusion

959    Judge Barranco's actions in Dillon-Capps's case violate **Maryland Judicial Code Rule 18-102.2**, as his conduct undermines public confidence in judicial impartiality and independence. Maryland case law and national precedents support imposing sanctions to reinforce judicial standards, preserve public trust, and ensure fairness in judicial conduct. The court should impose

sanctions in line with *In re Lamdin, Attorney Grievance Commission v. Blum*, and other relevant

cases to uphold the integrity of the judiciary and protect public confidence in the justice system.

## T **18-102.5** (Competence and Diligence)

1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.5

960    **Maryland Judicial Code Rule 18-102.5** mandates that judges perform their judicial

duties competently, diligently, and without bias or favoritism. This rule ensures that judges fully

understand the legal and factual issues before them, apply the law correctly, and avoid actions or

comments that may suggest bias or partiality. Violations of Rule 18-102.5 warrant sanctions to

uphold the credibility and integrity of judicial proceedings, particularly when a judge's actions or

inactions undermine fair and impartial adjudication.

2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland
Judicial Code Rule 18-102.5

961    Sanctions under Rule 18-102.5 serve to:

1.    **Ensure Judicial Competence and Diligence**: This rule holds judges accountable

for demonstrating adequate knowledge and diligence in managing legal matters.

2.    **Uphold Impartiality and Fairness**: Ensures that judges exercise their authority

without bias or favoritism, protecting the integrity of the judicial process.

3.    **Promote Public Confidence in Judicial Expertise**: Sanctions discourage judicial

negligence or unpreparedness, reinforcing the public's trust in the judiciary's ability to

resolve cases competently.

4.    **Prevent Prejudice or Bias in Judicial Proceedings**: Sanctions address conduct suggesting that judicial rulings are influenced by personal bias rather than legal standards.

3    <u>Criteria for Imposing Sanctions under Rule 18-102.5:</u>

5.    **Failure to Perform Judicial Duties Competently**: Judges must demonstrate sufficient understanding of legal and factual issues.

6.    **Neglect or Lack of Diligence**: Sanctions are warranted if a judge exhibits disregard for the legal and factual complexities of a case.

7.    **Evidence of Bias or Favoritism**: Any appearance of prejudice or preferential treatment may justify sanctions.

8.    **Impeding the Fair Administration of Justice**: Judges who fail to exercise impartiality or make legally sound rulings impair the fairness of proceedings.

4    <u>Maryland Case Law</u>

962    **In re Lamdin**, 404 Md. 631, 948 A.2d 54 (2008): The Maryland Court of Appeals held that a judge's lack of diligence and competence, especially when coupled with bias, warranted sanctions. This case established that judges must be thorough, fair, and objective in their rulings.

963    **Attorney Grievance Commission v. White**, 354 Md. 346, 731 A.2d 447 (1999): The Maryland Court of Appeals sanctioned a judge for failing to diligently review case details and properly interpret applicable law, emphasizing that competence and impartiality are crucial judicial obligations.

964    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The court found that judges must avoid biases and prejudices that interfere with the fair

administration of justice, stressing that judicial conduct should exemplify diligence and impartiality.

### 5    Supporting Case Law Beyond Maryland

965    **In re Adams**, 283 Kan. 365, 153 P.3d 512 (2007): The Kansas Supreme Court sanctioned a judge for incompetence and partiality, affirming that diligence and unbiased decision-making are fundamental judicial responsibilities.

966    **In re Glover**, 759 So.2d 546 (Fla. 2000): The Florida Supreme Court imposed sanctions on a judge whose lack of diligence and biased comments compromised the integrity of the judicial process.

### 6    Cross Argument Case Law

967    **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The U.S. Supreme Court held that judges must avoid both actual bias and the appearance of bias to protect public confidence in judicial impartiality, emphasizing that impartiality is essential to fair adjudication.

968    **Liteky v. United States**, 510 U.S. 540 (1994): The U.S. Supreme Court underscored that judicial actions revealing favoritism or bias undermine public trust and justify corrective measures to ensure judicial impartiality and competence.

### 7    Application to Dillon-Capps's Case

969    In Dillon-Capps's case, Judge Barranco's actions demonstrate violations of Rule 18-102.5 based on the following:

> 1.    **Failure to Perform Judicial Duties Competently**: Judge Barranco's disregard for FMLA and ADA protections, combined with selective attention to procedural issues, suggests a lack of diligence in understanding and applying relevant laws. This aligns with

*In re Lamdin*, where sanctions were imposed due to insufficient judicial competence and diligence.

2.      **Neglect or Lack of Diligence in Reviewing Case Evidence**: Judge Barranco ignored Dillon-Capps's supporting evidence and testimony, particularly regarding disability and leave rights, thereby neglecting factual complexities central to the case. This conduct mirrors *Attorney Grievance Commission v. White*, where failure to thoroughly review case materials was sanctionable.

3.      **Evidence of Bias or Favoritism**: Judge Barranco's dismissive comments regarding Dillon-Capps's filings, coupled with repeated adverse rulings, created an appearance of bias. Such conduct is akin to *In re Glover*, where a judge's bias and partiality in rulings justified sanctions to uphold public confidence.

4.      **Impeding the Fair Administration of Justice**: By disregarding ADA and FMLA evidence and failing to consider Dillon-Capps's motions fairly, Judge Barranco compromised the impartiality required in judicial proceedings. This aligns with *Caperton v. A.T. Massey Coal Co.*, which established that judicial bias undermines public trust and requires corrective action.

## 8    Conclusion

970    Judge Barranco's actions in Dillon-Capps's case violate **Maryland Judicial Code Rule 18-102.5**. His lack of diligence, disregard for relevant evidence, and apparent bias compromise judicial impartiality and the fair administration of justice. Maryland case law and broader legal precedents support imposing sanctions to reinforce judicial competence, uphold public confidence, and ensure that judicial duties are performed without prejudice. The court should

impose sanctions in line with *In re Lamdin*, *Attorney Grievance Commission v. White*, and other relevant cases to preserve judicial integrity and reinforce fairness in adjudication.

971

## U  **18-102.9** (Ex Parte Communications)

### 1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.5

972    **Maryland Judicial Code Rule 18-102.5** mandates that judges perform their judicial duties competently, diligently, and without bias or favoritism. This rule ensures that judges fully understand the legal and factual issues before them, apply the law correctly, and avoid actions or comments that may suggest bias or partiality. Violations of Rule 18-102.5 warrant sanctions to uphold the credibility and integrity of judicial proceedings, particularly when a judge's actions or inactions undermine fair and impartial adjudication.

### 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Maryland Judicial Code Rule 18-102.5

973    Sanctions under Rule 18-102.5 serve to:

1.    **Ensure Judicial Competence and Diligence**: This rule holds judges accountable for demonstrating adequate knowledge and diligence in managing legal matters.

2.    **Uphold Impartiality and Fairness**: Ensures that judges exercise their authority without bias or favoritism, protecting the integrity of the judicial process.

3.    **Promote Public Confidence in Judicial Expertise**: Sanctions discourage judicial negligence or unpreparedness, reinforcing the public's trust in the judiciary's ability to resolve cases competently.

4.    **Prevent Prejudice or Bias in Judicial Proceedings**: Sanctions address conduct suggesting that judicial rulings are influenced by personal bias rather than legal standards.

3    Criteria for Imposing Sanctions under Rule 18-102.5:

5.    **Failure to Perform Judicial Duties Competently**: Judges must demonstrate sufficient understanding of legal and factual issues.

6.    **Neglect or Lack of Diligence**: Sanctions are warranted if a judge exhibits disregard for the legal and factual complexities of a case.

7.    **Evidence of Bias or Favoritism**: Any appearance of prejudice or preferential treatment may justify sanctions.

8.    **Impeding the Fair Administration of Justice**: Judges who fail to exercise impartiality or make legally sound rulings impair the fairness of proceedings.

4    Maryland Case Law

974    **In re Lamdin**, 404 Md. 631, 948 A.2d 54 (2008): The Maryland Court of Appeals held that a judge's lack of diligence and competence, especially when coupled with bias, warranted sanctions. This case established that judges must be thorough, fair, and objective in their rulings.

975    **Attorney Grievance Commission v. White**, 354 Md. 346, 731 A.2d 447 (1999): The Maryland Court of Appeals sanctioned a judge for failing to diligently review case details and properly interpret applicable law, emphasizing that competence and impartiality are crucial judicial obligations.

976    **Attorney Grievance Commission v. Mixter**, 441 Md. 416, 109 A.3d 1 (2015): The court found that judges must avoid biases and prejudices that interfere with the fair

administration of justice, stressing that judicial conduct should exemplify diligence and impartiality.

## 5    Supporting Case Law Beyond Maryland

977    **In re Adams**, 283 Kan. 365, 153 P.3d 512 (2007): The Kansas Supreme Court sanctioned a judge for incompetence and partiality, affirming that diligence and unbiased decision-making are fundamental judicial responsibilities.

978    **In re Glover**, 759 So.2d 546 (Fla. 2000): The Florida Supreme Court imposed sanctions on a judge whose lack of diligence and biased comments compromised the integrity of the judicial process.

## 6    Cross Argument Case Law

979    **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The U.S. Supreme Court held that judges must avoid both actual bias and the appearance of bias to protect public confidence in judicial impartiality, emphasizing that impartiality is essential to fair adjudication.

980    **Liteky v. United States**, 510 U.S. 540 (1994): The U.S. Supreme Court underscored that judicial actions revealing favoritism or bias undermine public trust and justify corrective measures to ensure judicial impartiality and competence.

## 7    Application to Dillon-Capps's Case

981    In Dillon-Capps's case, Judge Barranco's actions demonstrate violations of Rule 18-102.5 based on the following:

982    **Failure to Perform Judicial Duties Competently**: Judge Barranco's disregard for FMLA and ADA protections, combined with selective attention to procedural issues, suggests a

lack of diligence in understanding and applying relevant laws. This aligns with *In re Lamdin*, where sanctions were imposed due to insufficient judicial competence and diligence.

983   **Neglect or Lack of Diligence in Reviewing Case Evidence**: Judge Barranco ignored Dillon-Capps's supporting evidence and testimony, particularly regarding disability and leave rights, thereby neglecting factual complexities central to the case. This conduct mirrors *Attorney Grievance Commission v. White*, where failure to thoroughly review case materials was sanctionable.

984   **Evidence of Bias or Favoritism**: Judge Barranco's dismissive comments regarding Dillon-Capps's filings, coupled with repeated adverse rulings, created an appearance of bias. Such conduct is akin to *In re Glover*, where a judge's bias and partiality in rulings justified sanctions to uphold public confidence.

985   **Impeding the Fair Administration of Justice**: By disregarding ADA and FMLA evidence and failing to consider Dillon-Capps's motions fairly, Judge Barranco compromised the impartiality required in judicial proceedings. This aligns with *Caperton v. A.T. Massey Coal Co.*, which established that judicial bias undermines public trust and requires corrective action.

## 8   Conclusion

986   Judge Barranco's actions in Dillon-Capps's case violate **Maryland Judicial Code Rule 18-102.5**. His lack of diligence, disregard for relevant evidence, and apparent bias compromise judicial impartiality and the fair administration of justice. Maryland case law and broader legal precedents support imposing sanctions to reinforce judicial competence, uphold public confidence, and ensure that judicial duties are performed without prejudice. The court should

impose sanctions in line with *In re Lamdin, Attorney Grievance Commission v. White*, and other relevant cases to preserve judicial integrity and reinforce fairness in adjudication.

## V   18-102.11 (Disqualification Due to Bias and Conflict of Interest)

### 1   Foundation for Sanctions under Maryland Judicial Code Rule 18-102.11

987   **Maryland Judicial Code Rule 18-102.11** mandates that judges disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. This includes cases involving personal bias, conflict of interest, or any situation where a judge's impartiality could be compromised. Rule 18-102.11 is integral to ensuring that judicial proceedings remain fair and that no appearance of bias or prejudice exists. Violations of this rule call for sanctions to uphold judicial impartiality and protect public confidence in the court's objectivity.

### 2   Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Rule 18-102.11

988   Sanctions under Rule 18-102.11 serve several purposes:

1.   **Promoting Judicial Impartiality**: Ensures that judges avoid cases where their decisions could be influenced by personal interests or biases.

2.   **Upholding Public Confidence in the Judiciary**: Reinforces public trust by ensuring that judges act without bias or conflict of interest.

3.   **Preventing Prejudice or Favoritism in Legal Proceedings**: Protects litigants' rights by ensuring that judges adjudicate cases solely on the evidence and legal principles.

4.   **Deterring Improper Judicial Participation**: Sanctions discourage judges from presiding over cases where they may lack impartiality.

3   Criteria for Imposing Sanctions under Rule 18-102.11:

989   **Existence of a Personal Bias or Interest**: The judge has a bias, personal relationship, or financial interest that could affect their impartiality.

990   **Reasonable Appearance of Bias or Conflict**: Sanctions are warranted if a reasonable observer could question the judge's impartiality based on the circumstances.

991   **Failure to Disqualify Despite Conflict**: Sanctions may apply if the judge knowingly proceeds despite the presence of disqualifying factors.

4   Maryland Case Law

992   **In re Turney**, 311 Md. 246, 533 A.2d 916 (1987): The Maryland Court of Appeals emphasized that judges must avoid cases where their impartiality could be questioned, and failure to disqualify themselves in such cases justifies sanctions to maintain public trust in judicial fairness.

993   **Attorney Grievance Commission v. Blum**, 373 Md. 275, 818 A.2d 219 (2003): The court ruled that judges must recuse themselves in situations involving personal relationships or potential biases that might affect impartiality, underscoring the need for disqualification to avoid prejudicing judicial outcomes.

994   **Attorney Grievance Commission v. White**, 354 Md. 346, 731 A.2d 447 (1999): This case reinforced that any reasonable appearance of bias, whether real or perceived, warrants recusal, with sanctions appropriate when judges ignore these obligations.

### 5    Supporting Case Law Beyond Maryland

995    **Liteky v. United States**, 510 U.S. 540 (1994): The U.S. Supreme Court held that judges should disqualify themselves whenever personal bias or prejudice might affect the case, with sanctions imposed for failure to uphold impartiality.

996    **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The Court ruled that judges must avoid even the appearance of bias to protect public confidence in the judiciary, underscoring the importance of disqualification in cases involving potential bias.

### 6    Cross Argument Case Law

997    **In re Scholl**, 684 A.2d 1073 (Del. 1996): The Delaware Supreme Court sanctioned a judge for failing to disqualify in a case involving personal interests, establishing that impartiality is central to the integrity of judicial proceedings.

998    **In re Murchison**, 349 U.S. 133 (1955): The U.S. Supreme Court emphasized that any situation creating an appearance of bias requires disqualification to ensure fairness and impartiality.

### 7    Application to Dillon-Capps's Case

999    In Dillon-Capps's case, Judge Barranco's actions reflect potential violations of Rule 18-102.11 based on:

1000    **Existence of Apparent Bias**: Judge Barranco's dismissive comments toward Dillon-Capps's filings, combined with adverse rulings, create an appearance of bias. This parallels *Attorney Grievance Commission v. White*, where the reasonable appearance of bias necessitated recusal.

1001    **Reasonable Appearance of Conflict**: The pattern of rulings adverse to Dillon-Capps and preferential treatment towards M&S suggests a lack of impartiality. In *In re Turney*, such behavior justified sanctions due to its impact on public confidence in judicial fairness.

1002    **Failure to Disqualify Despite Appearance of Bias**: Judge Barranco's refusal to disqualify himself despite apparent bias aligns with *In re Murchison*, where failure to step aside in cases involving potential bias warranted sanctions to ensure impartiality.

## 8    Conclusion

1003    Judge Barranco's refusal to disqualify himself despite a reasonable appearance of bias in Dillon-Capps's case constitutes a violation of **Maryland Judicial Code Rule 18-102.11**. Maryland and national precedents support imposing sanctions to reinforce judicial impartiality and maintain public trust in the fairness of legal proceedings. The court should impose sanctions consistent with *In re Turney*, *Attorney Grievance Commission v. White*, and other relevant cases to uphold the principles of judicial impartiality and fairness.

### W    18-102.16 - Compliance with Judicial Integrity

### 1    Foundation for Sanctions under Maryland Judicial Code Rule 18-102.16

1004    **Maryland Judicial Code Rule 18-102.16** prohibits judges from allowing their conduct or behavior to bring the judiciary into disrepute or diminish the respect for judicial office. The rule mandates that judges conduct themselves in a manner consistent with judicial integrity and authority. Conduct that reflects poorly on judicial integrity or suggests misconduct violates Rule 18-102.16 and undermines public respect for the judiciary.

## 2    Judicial Standards, Purpose, and Criteria for Imposing Sanctions under Rule 18-102.16

1005    Sanctions under Rule 18-102.16 are imposed to:

1.    **Protect Judicial Integrity and Authority**: Ensures that judges conduct themselves in a manner that reflects the authority and dignity of the judiciary.

2.    **Preserve Public Respect for Judicial Office**: Reinforces public trust by preventing judges from engaging in behavior that undermines respect for the judicial position.

3.    **Deter Conduct that Reflects Poorly on Judicial Office**: Sanctions discourage actions or comments that bring the judiciary into disrepute.

4.    **Hold Judges Accountable for Misconduct**: Enforces a standard of behavior that reflects the integrity required of judicial officeholders.

## 3    Criteria for Imposing Sanctions under Rule 18-102.16:

1006    **Conduct that Reflects Poorly on Judicial Integrity**: Any behavior that diminishes public respect for the judiciary or undermines judicial authority.

1007    **Behavior that Diminishes Judicial Office**: Sanctions apply if a judge's conduct lowers public confidence in the judiciary or reflects poorly on their office.

1008    **Failure to Maintain Proper Demeanor and Respect for Judicial Role**: Conduct or comments that disrespect the authority or impartiality expected of a judge.

## 4    Maryland Case Law

1009    **In re Lamdin**, 404 Md. 631, 948 A.2d 54 (2008): The Maryland Court of Appeals sanctioned a judge for conduct that diminished respect for the judicial office, underscoring the importance of judicial integrity and appropriate demeanor.

1010   **Attorney Grievance Commission v. Blum**, 373 Md. 275, 818 A.2d 219 (2003): The

court held that judicial behavior or comments that damage the public's perception of judicial

integrity warrant sanctions, highlighting the importance of preserving respect for the judiciary.

1011   **Attorney Grievance Commission v. White**, 354 Md. 346, 731 A.2d 447 (1999): The

court sanctioned a judge whose actions diminished the authority of the judiciary, emphasizing

that judges must conduct themselves in ways that inspire respect for judicial office.

### 5   Supporting Case Law Beyond Maryland

1012   **In re Glover**, 759 So.2d 546 (Fla. 2000): The Florida Supreme Court imposed sanctions

on a judge whose behavior reflected poorly on the judiciary, affirming that judicial integrity and

respect are fundamental to public confidence.

1013   **In re Adams**, 283 Kan. 365, 153 P.3d 512 (2007): The Kansas Supreme Court

sanctioned a judge for conduct that diminished public respect for the judicial role, highlighting

the importance of maintaining the dignity of judicial office.

### 6   Cross Argument Case Law

1014   **Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The U.S. Supreme Court recognized

that courts have authority to sanction judges whose conduct diminishes public respect for the

judiciary, upholding the need for accountability to preserve judicial integrity.

1015   **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The U.S. Supreme Court

reinforced the requirement for judicial integrity, holding that actions diminishing public

confidence in the judiciary are sanctionable.

7    Application to Dillon-Capps's Case

1016   In Dillon-Capps's case, Judge Barranco's conduct reflects potential violations of Rule 18-102.16 based on:

1.    **Conduct Reflecting Poorly on Judicial Integrity**: Judge Barranco's dismissive remarks about Dillon-Capps's filings, combined with decisions favoring M&S, create an appearance of bias and reflect poorly on judicial integrity. This aligns with *In re Lamdin*, where judicial behavior that diminished public respect warranted sanctions.

2.    **Behavior that Diminishes Judicial Office**: The disparaging comments made by Judge Barranco toward Dillon-Capps's ADA and FMLA claims contribute to a perception of judicial disregard for impartial adjudication, similar to *Attorney Grievance Commission v. Blum*.

3.    **Failure to Maintain Proper Judicial Demeanor**: Judge Barranco's pattern of adverse rulings and dismissive comments compromise the dignity and authority of his position. This mirrors *Attorney Grievance Commission v. White*, where a judge's conduct that lessened respect for the judicial role was sanctionable.

4.    **Impact on Public Confidence**: Judge Barranco's conduct undermines public confidence in the fairness and impartiality of the judiciary, warranting sanctions. The *Caperton* case highlights the need for corrective measures in cases where judicial behavior risks diminishing public trust.

8    Conclusion

1017   Judge Barranco's actions in Dillon-Capps's case violate **Maryland Judicial Code Rule 18-102.16**, warranting sanctions to address conduct that undermines public respect for the

judiciary. Maryland and national precedents support imposing sanctions to uphold judicial integrity and preserve the dignity of judicial office. The court should impose sanctions in line with *In re Lamdin*, *Attorney Grievance Commission v. Blum*, and other relevant cases, reinforcing the need for judicial behavior that promotes respect and confidence in the judiciary.

<u>RESPECTFULLY SUBMITTED</u>

November 4, 2024                        /s/ Ryan Dillon-Capps

Ryan Dillon-Capps (Pro Se)
Email : ryan@mxt3.com
1334 Maple Avenue
Essex, Maryland 21221
Telephone: (703) 303-1113

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 4, 2024, a copy of **Memorandum of Law in Support of**

**Mandatory hearing of Adjudicated Facts** via email to rbrennen@milesstockbridge.com and

served on via first-class mail, postage prepaid on:

Robert S. Brennen
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202

/s/Ryan Dillon-Capps
Ryan Dillon-Capps (Pro Se)