| | |
|---|---|
| **OHANA GROWTH PARTNERS, LLC** | **IN THE** |
| *Plaintiff,* | **CIRCUIT COURT** |
| vs. | **FOR** |
| **RYAN DILLON-CAPPS** | **BALTIMORE COUNTY** |
| *Defendant.* | **CASE NO: C-03-CV-24-002264** |

## REPLY TO OPPOSITION TO DEFENDANT'S MOTION FOR EXPEDITED DISCOVERY

Defendant, Ryan Dillon-Capps ("Defendant" or "Dillon-Capps" or "RDC"), hereby replies to the Plaintiff Opposition to the Defendant's Motion for Expedited Discovery (the "Opposition") filed by Miles & Stockbridge, PC ("M&S") on behalf of the Plaintiff, Ohana Growth Partners, LLC ("Ohana" or "OGP") and states as follows:

## I  INCORPORATED HEREIN

1      Ryan Dillon-Capps incorporates and adopts by reference all factual averments, arguments, and documents contained in all of the Defendant's motions, affidavits, petitions, notices, amendments, exhibits, and other papers filed or submitted in this case, regardless of their current status (pending, denied, granted, or otherwise), pursuant to Md. Rule 2-303(d) ("Statements in a pleading or other paper of record may be adopted by reference in a different part of the same pleading or paper of record or in another pleading or paper of record."). This incorporation includes, but is not limited to, any filings made contemporaneously with or subsequent to this motion, ensuring that all submissions are considered as part of the record for purposes of this proceeding, in real time.

2    3 **Reservation of Rights:** The Defendant reserves the right to amend, withdraw, or

exclude any specific filing, document, or factual averment from this comprehensive

incorporation at any point, by submitting a formal notice or motion to the Court.

## II  INTRODUCTION

3    Since the commencement of this matter on June 14, 2024, Ohana and M&S have pursued

a lawsuit which the U.S. Supreme Court and MD Appellate courts would deny the claim of

equitable injunctive relief for.  Richard Hartman's tells the court in his Affidavit from June 14,

2024, on page 4:

> "Dillon-Capps claimed that Ohana's efforts to regain control of its own systems, MS 365 Account
> somehow amounts to retaliation against Dillon-Capps **for requesting family and medical leave**"

4    The Plaintiff's Opposition to Defendant's Motion for Expedited Discovery is cut from the

same cloth.  In it Ohana asks the Court to forget that this is still a lawsuit to which relief can not

be granted under the "unclean hands Doctrine," and nothing in the Opposition presents

arguments to establish a lawful basis for this lawsuit.

5    The only causes of action pending before the Court in this matter are as follows:

1.    Add Steven Frenkil as counsel on record, Frenkil, has been listed in the system as

a contact for the lawsuit since the commencement of action, included on all

communications between parties, and was named as a representative in negotiations.

2.    Add Holly Butler as counsel on record, Butler has been representing Ohana in

opposition to RDC since December 2023 under the false pretense of performing a Fraud

Investigation.

3.      Impose Sanctions on Ohana and M&S, their pursuit of the baseless claim has included fraud, abuse of the judicial system, obstruction, conspiracy to commit fraud, filing perjured statements, and several more reasons for sanctions.

4.      Disqualify M&S and bar them from ever representing Ohana or representing any party in litigation where Dillon-Capps is involved.

5.      Forward court findings to the BAR for review of M&S.

6.      Dismiss the lawsuit with Perjury and bar any party from engaging in another frivolous lawsuit from the events leading up to or since the commencement of action.

7.      Grand reciprocal relief that includes reciprocal relief that they were seeking as their costs and the $2500 per day fine in reciprocal relief that was being imposed on an individual per day basis against an invalid claim for relief that was ruled on in the same hearings that the Supremacy Clause was dismissed and arguments to it were prohibited.

6      Miles & Stockbridge is correct that a baseless lawsuit is one defined by a lawsuit to which there can be no relief granted.  Yet, it is still being pursued after 4 months, and it is frustrating that 15 years of work has been irrevocably damaged, Dillon-Capps has been irrevocably harmed physically and financially, and the pursuit of the lawsuit continues to incur additional emotional, physical, and financial harm to the Defendant.

7      The U.S. Supreme Court and the Maryland Appellate Courts agree with the Defenses position that this lawsuit is beneath consideration, worthless, and those individuals involved are deserving of scorn because they have ruled time and time again for over 70 years that there can be no equitable relief of any kind, including injunctive relief, for those who come with unclean hands.

## III  NO BASIS FOR LAWSUIT

### FMLA LAW

8    Under **29 U.S.C. § 2615(a)(1)**, it is unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. This means that employers are prohibited from interrupting or denying an employee's FMLA leave once it is granted.

9    **29 C.F.R. § 825.220** reinforces this, stating that employers cannot interfere with, restrain, or deny employees the rights provided by FMLA. Any effort to discourage an employee from using FMLA leave also constitutes interference.

10    **29 U.S.C. § 2615(a)(2)** specifically prohibits employers from retaliating against employees for taking FMLA leave. This includes actions such as demotion, job elimination, or imposing excessive work expectations during or immediately following FMLA leave

### UNCLEAN HANDS DOCTRINE

11    **Under the "unclean hands" doctrine,** the **affidavit containing the admission of violating FMLA leave rights** effectively bars **Ohana Growth Partners, LLC** from obtaining relief. This doctrine prohibits any party from seeking **equitable relief** if they have engaged in fraudulent or bad-faith conduct related to the issue at hand.

12    Keystone Driller Co. v. General Excavator Co., 290 U.S. 240 (1933):

The U.S. Supreme Court held that a party seeking relief in equity must come with "clean hands." In this case, Keystone's prior misconduct related to suppressing evidence affected the equitable relief sought, and the court denied the claim.  More Specifically, the U.S. Supreme Court **denied INJUNCTIVE RELIEF** because of unclean hands.

**Opinion by Justice George Sutherland:**

- *"The equitable powers of this court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.*

- *"He who comes into equity must come with clean hands, or he will be denied relief."*

13      Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945):

The Supreme Court reaffirmed that a party with unclean hands should not be entitled to equitable relief. Precision Instrument's fraudulent conduct regarding patents barred them from enforcing the patents.  Once again, the form of relief denied was **INJUNCTIVE RELIEF** and they were denied because of unclean hands.

**Opinion by Justice Hugo Black:**

- *"A court of equity acts only when and as conscience commands; and if the conduct of the plaintiff be offensive to the dictates of natural justice, then whatever may be the rights he possesses and however unqualified may be the right asserted by him, he will be held remediless in a court of equity."*

- *"The equitable powers of the court can never be exerted in behalf of one who has acted fraudulently or in bad faith relative to the matter in which he seeks relief."*

14      Smith v. Cessna Aircraft Co., 124 F.3d 1419 (11th Cir. 1997):

This case emphasized that the unclean hands doctrine is a defense to both equitable and certain legal claims if the plaintiff's conduct is directly related to the subject of the lawsuit.  The 11th

Circuit Court of Appeals went so far as to explicitly say that **INJUNCTIVE RELIEF** is a form

of equitable remedy, and unclean hands is grounds for denying this relief.

**Opinion by Judge Gerald Bard Tjoflat:**

- *"The doctrine of unclean hands precludes a plaintiff from obtaining relief in equity if the*
  *plaintiff's own conduct has been inequitable."*

- *"Injunctive relief is an equitable remedy, and the court will deny such relief to parties with*
  *unclean hands."*

## SUPREMACY CLAUSE

15    **Federal courts** hold supremacy in interpreting **federal law** and the **U.S. Constitution**,

which state courts are bound to follow under the **Supremacy Clause** of the **U.S. Constitution**

(Article VI, Clause 2).

16    **U.S. Constitution, Article VI, Clause 2 (Supremacy Clause):**

- *"This Constitution, and the Laws of the United States which shall be made in Pursuance*
  *thereof; and all Treaties made, or which shall be made, under the Authority of the United*
  *States, shall be the supreme Law of the Land; and the Judges in every State shall be bound*
  *thereby, any Thing in the Constitution or Laws of any State to the Contrary*
  *notwithstanding."*

17    This clause establishes that **federal law is supreme** over conflicting state laws, and state

courts must follow federal law when applicable.

18    **Martin v. Hunter's Lessee, 14 U.S. 304 (1816):**

The **U.S. Supreme Court**, in an opinion by **Justice Joseph Story**, held that **state courts** are obligated to follow the decisions of the **U.S. Supreme Court** on matters of federal law. The ruling reinforced the principle that state courts are part of the federal judicial system when interpreting federal laws.

**Opinion of Justice Joseph Story:**

- *"The Constitution of the United States was designed for the common and equal benefit of all the people of the United States; and ... the judicial power was granted for the same benign and salutary purposes."*

19    **Cooper v. Aaron, 358 U.S. 1 (1958)**:

The **U.S. Supreme Court** reaffirmed the supremacy of federal law over state law, stating that **state courts** and officials are bound by the Court's interpretation of the Constitution.

**Per Curiam Opinion:**

*"Article VI of the Constitution makes the Constitution the 'supreme Law of the Land.' In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as 'the fundamental and paramount law of the nation,' declared in* **Marbury v. Madison** *that 'It is emphatically the province and duty of the judicial department to say what the law is.'"*

## MARYLAND APPELLATE COURT

20    **However,** more than four months have passed, during which time **permanent physical harm** and **financial default** have occurred—actions taken in direct **defiance of the Supremacy Clause**.

21    Manown v. Adams, 328 Md. 463, 615 A.2d 611 (1992):

In this case, the court stressed that the unclean hands doctrine is meant to protect the judiciary, not the parties involved. The court stated:

Opinion of Judge Eldridge: *"The doctrine is not for the protection of the parties to a lawsuit, but rather, for the protection of the courts... judicial integrity is endangered when judicial powers are interposed to aid persons whose very presence before a court is the result of some fraud or inequity."*

22    Hicks v. Gilbert, 135 Md. App. 394, 762 A.2d 986 (2000):

The court affirmed the application of the unclean hand's doctrine, explaining that:

Opinion of Judge Eyler: *"The doctrine refuses to recognize or provide relief from the court for those guilty of unlawful or inequitable conduct pertaining to the matter in which relief is sought."*

23    In re Estate of Robert H. Watkins, Jr., No. 2612, 2019 Md. App.:

Five years ago - **Judge Eyler**, supported the **Chief Judge** of the **Orphans' Court, Judge Cartwright**, decision to deny injunctive relief because of unclean hands.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

24    Under **Maryland Rule 2-322(b)(2)** and **Federal Rule of Civil Procedure 12(b)(6)**, a case must be dismissed if the plaintiff fails to state a claim for which relief can be granted. This means the complaint must include sufficient factual allegations to support the legal claim. Simply put, if the plaintiff's complaint does not state a valid legal claim, the case cannot proceed.

25    **Maryland Case Law: Hoffman v. Stamper**, 385 Md. 1, 867 A.2d 276 (2005): The Maryland Court of Appeals reinforced the importance of alleging sufficient facts to support a

cause of action. If a plaintiff fails to provide enough detail in the allegations to support the claim,

the case is subject to dismissal under Rule 2-322.

26      **Federal Case Law: Ashcroft v. Iqbal**, 556 U.S. 662 (2009): The U.S. Supreme Court

held that a plaintiff must state a "plausible claim for relief" based on facts, not mere legal

conclusions. The Court emphasized that a complaint must include enough facts to raise the right

to relief above the speculative level.

27      **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007): The Court held that mere

conclusory statements or speculative claims are insufficient to survive a Rule 12(b)(6) motion.

The complaint must include factual content that makes the claim for relief plausible on its face.

## LACK OF LEGAL STANDING

28      **Standing** is a constitutional requirement that ensures a party has a legitimate interest in

the case. Without standing, the court lacks jurisdiction, and the case must be dismissed. The

plaintiff must show an actual injury that is concrete, traceable to the defendant's actions, and

likely to be redressed by the court.

29      **Maryland Case Law: Sugarloaf Citizens Ass'n, Inc. v. Dep't of Env't**, 344 Md. 271,

686 A.2d 605 (1996): The Maryland Court of Appeals reiterated the importance of standing,

noting that a plaintiff must have a direct, personal stake in the outcome of the litigation to

proceed with the claim.

30      **Federal Case Law: Lujan v. Defenders of Wildlife**, 504 U.S. 555 (1992): The U.S.

Supreme Court outlined the elements of standing—injury in fact, causation, and redressability. If

a plaintiff cannot establish standing, the court is compelled to dismiss the claim, as it lacks

subject matter jurisdiction.

## NO CLAIM FOR RELIEF WITHOUT LEGAL BASIS

31    A **claim must rest on a valid legal basis**, whether rooted in statutory law, common law,

or constitutional law. If no recognized cause of action supports the claim, it must be dismissed.

32    **Maryland Case Law: Shenker v. Laureate Educ., Inc.**, 411 Md. 317, 983 A.2d 408

(2009): The Maryland Court of Appeals dismissed a claim where the plaintiffs failed to allege

sufficient facts to support a recognized cause of action. The court noted that a valid legal theory

must support the claim for it to proceed.

33    **Federal Case Law:**

1.    **Conley v. Gibson**, 355 U.S. 41 (1957): Although later refined by **Twombly**, this

case originally stated that a complaint should not be dismissed unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of the claim that would entitle

them to relief. This principle remains a cornerstone of pleading standards.

2.    **Twombly**, 550 U.S. 544 (2007): Reinforced that speculative claims without a

legal basis should be dismissed at the pleading stage.

## LACK OF JURISDICTION

34    Courts require **subject matter jurisdiction** to hear a case. If the court lacks jurisdiction,

either because the claim falls outside its authority or the plaintiff lacks standing, it cannot

provide relief. This is true at both state and federal levels.

35      **Maryland Case Law: Thana v. Bd. of License Comm'rs for Charles Cnty., Md.**, 226

Md. App. 555, 130 A.3d 669 (2016): The Maryland Court of Special Appeals held that a court

must dismiss a case if it lacks jurisdiction, as it cannot grant relief on matters outside its

authority.

**Federal Case Law: Steel Co. v. Citizens for a Better Environment**, 523 U.S. 83 (1998): The

U.S. Supreme Court held that courts must resolve jurisdictional questions before proceeding to

the merits of a case. Without jurisdiction, the court cannot grant any form of relief.

## IV  FAILURE OF LEGAL OBLIGATIONS

36      The case at hand reveals a persistent failure by **Ohana Growth Partners, LLC** to meet

their legal obligations under both federal and state law, as well as industry-specific regulations.

These failures are central to the claim that **Ohana Growth Partners** comes before this court

with **unclean hands**, rendering their entire lawsuit **frivolous** and **illegitimate**. Both the **Affidavit**

**of Legal Obligations** and the **Affidavit of Bad Faith**, along with their supporting exhibits, detail

the extent to which Ohana has engaged in unethical, fraudulent, and retaliatory actions that

undermine their standing to seek any form of relief in this litigation. These failures demonstrate

clear violations of **PCI DSS compliance**, **federal data protection laws**, **state consumer**

**protection statutes**, and contractual obligations, all of which have been willfully disregarded in

a scheme to harass and retaliate against the defendant.


## VIOLATIONS OF PCI DSS COMPLIANCE

37      As outlined in the **Affidavit of Legal Obligations**, Ohana Growth Partners' failure to adhere to **PCI DSS v4.0 standards** is egregious and intentional. **PCI DSS** mandates strict compliance with several core requirements, including but not limited to:

1.      **Requirement 7**: Least privilege access controls—ensuring that individuals only have the access necessary for their role.

2.      **Requirement 10**: Logging and monitoring access to systems to prevent unauthorized modifications and security breaches.

38      The affidavit confirms that Ohana knowingly violated these requirements by failing to implement **proper access controls** and by allowing unauthorized individuals to access critical systems. These lapses exposed the company to potential data breaches, putting consumers' sensitive payment information at risk. Under **Maryland's Personal Information Protection Act (PIPA)** (Md. Code Ann. Com. Law § 14-3503(a)), businesses are legally obligated to secure personal data. **Ohana's disregard for these obligations** not only violates PCI DSS but also Maryland state law, further disqualifying them from seeking any relief based on equitable grounds.

## UNLAWFUL DELEGATION OF ROLES AND SECURITY MISMANAGEMENT

39      The **Affidavit of Bad Faith** highlights specific instances where **Glenn Norris**, **Ryan Brooks**, and **Richard Hartman** unlawfully delegated critical IT security roles without following established security protocols. These actions not only breached internal policies but violated **Maryland Criminal Law § 7-302(c)**, which prohibits the misuse of authorized access to computer systems. Ohana Growth Partners' management knowingly violated these laws by

refusing to provide clear instructions or justification for accessing key systems, all while retaliating against the defendant for upholding proper security standards.

40      Such blatant disregard for **least privilege principles** and unauthorized access to critical systems directly violated state and federal laws, including the **Computer Fraud and Abuse Act (CFAA)** and the **Gramm-Leach-Bliley Act (GLBA)**. This misconduct clearly demonstrates **unclean hands**, making any injunctive relief obtained by Ohana Growth Partners inherently unjust and void.

## BREACH OF CONTRACT AND FAILURE TO COMPLY WITH LEGAL OBLIGATIONS

41      The **Affidavit of Legal Obligations** and **Affidavit of Bad Faith** provide ample evidence that **Ohana Growth Partners** has continuously failed to meet their **contractual obligations**, specifically under the **Franchise Disclosure Documents (FDD)** and other legally binding agreements. The affidavits show how **PCI DSS v4 compliance requirements** were willfully ignored, placing the company in breach of both federal and state laws regarding data security.

42      Moreover, **Ohana's claim for injunctive relief** is based on incomplete and fraudulent documentation. As the affidavits note, the **contract presented by Ohana is missing critical sections**, rendering it unenforceable under **Maryland contract law**. Without a valid contract or evidence of actual harm, **Ohana's lawsuit has no merit** and was initiated in bad faith.

## RETALIATION AND ABUSE OF PROCESS

43      Both affidavits make clear that this lawsuit is not about protecting legitimate business interests but is part of a sustained effort to **retaliate** against the defendant for exposing

accounting irregularities and security violations. **Richard Hartman** and **Glenn Norris**'s actions, detailed in the affidavits, show a pattern of retaliation following the defendant's **FMLA leave**, in direct violation of federal law (**29 U.S.C. § 2615(a)(2)**) and Maryland state law.

44      **Ohana Growth Partners** has used the court system as a tool of harassment, engaging in **bad faith litigation** without substantial justification. As noted in **Garcia v. Folger Pratt Development, Inc.**, 155 Md. App. 634, 678 (2004), bad faith exists where a party litigates for the purpose of harassment or delay. Ohana's behavior falls squarely within this definition, as their claims are not only unsupported by the facts but are also contradicted by their own documentation and the testimony of their representatives.

## WHISLEBLOWER AND THE UNCLEAN HANDS DOCTRINE

45      The **unclean hands doctrine** is a well-established principle in both Maryland and federal courts, preventing a party from seeking relief when they have acted unethically or in bad faith. In **Manown v. Adams**, 328 Md. 463 (1992), the Maryland Court of Appeals affirmed that equitable relief is barred when the party seeking it has engaged in fraudulent or improper conduct related to the case. **Ohana's actions**—including their failure to comply with **PCI DSS**, misrepresentation of facts to the court, and retaliation against a whistleblower—clearly demonstrate **unclean hands**.

46      Similarly, in **Keystone Driller Co. v. General Excavator Co.**, 290 U.S. 240 (1933), the U.S. Supreme Court held that **injunctive relief** is not available to a party who has acted fraudulently. Ohana's entire lawsuit is based on misrepresentations, and their failure to disclose

material facts regarding **administrative control and access to critical systems** invalidates any claim for injunctive relief.

## MARYLAND CRIMINAL LAW VIOLATIONS

47      In addition to the egregious violations of **PCI DSS standards** and federal laws, **Ohana Growth Partners, LLC** and its representatives have breached multiple **Maryland state laws**, further supporting the argument for dismissal and severe sanctions. These violations extend beyond security failures, involving **fraudulent practices**, **misrepresentation**, and the deliberate obstruction of legal and regulatory compliance efforts. The following Maryland laws provide clear legal grounds for criminal liability and civil penalties, while also reinforcing the application of the **unclean hands doctrine** to disqualify Ohana from seeking relief.

### FAILURE TO IMPLEMENT REASONABLE SECURITY PROCEDURES (MD. CODE, COM. § 14-3503(B))

48      Under **Md. Code, Com. § 14-3503(b)**, businesses in Maryland are required to implement and maintain reasonable security procedures to protect the personal information of their clients and customers. For companies like **Ohana Growth Partners**, this obligation specifically includes adherence to **PCI DSS v4** standards, which are industry-mandated regulations for safeguarding cardholder data. Despite these legal obligations, Ohana knowingly and willfully violated critical **PCI DSS requirements**, failing to secure sensitive data, allowing unauthorized system access, and refusing to maintain proper security protocols.

49      **Violation**: Ohana's failure to implement reasonable security measures as required by § 14-3503(b) places them in direct violation of Maryland law. The company's failure to secure personal information and protect it against unauthorized access underscores their **unclean hands**

in this litigation. Their persistent refusal to comply with security requirements makes their entire

lawsuit **frivolous** and **malicious**, further justifying **dismissal with prejudice** and severe

**sanctions**.

## DECEPTIVE TRADE PRACTICES – MISREPRESENTATION OF COMPLIANCE (MD. CODE, COM. § 13-301(9))

50      **Md. Code, Com. § 13-301(9)** prohibits **deceptive trade practices**, which include

making false or misleading statements about compliance with legal or industry standards. Ohana

Growth Partners has engaged in exactly this type of deception by **falsely claiming compliance**

**with PCI DSS standards** while simultaneously demanding actions that directly **violate those**

**standards**. By requiring system administrators to implement security practices that contradict

established PCI DSS protocols, Ohana misrepresented their compliance with critical data

protection regulations.

51      Ohana's conduct constitutes a clear violation of **§ 13-301(9)** by falsely representing their

adherence to PCI DSS while engaging in practices that undermine those very standards. These

deceptive practices further support the application of the **unclean hands doctrine**, as Ohana has

not only misled the court but has also engaged in fraud against regulators and the public. This

deceitful conduct provides further grounds for **dismissal** and **sanctions**, including referral for

civil penalties under Maryland consumer protection laws.

## EXCEEDING AUTHORIZED ACCESS TO COMPUTER SYSTEMS (MD. CODE ANN., CRIM. LAW § 7-302)

52      **Md. Code Ann., Crim. Law § 7-302** prohibits accessing or using computer systems

beyond the scope of one's authorized access, particularly when done to facilitate fraud or

obstruct compliance. While **Glenn Norris** and **Ryan Brooks** maintain **ownership** of Ohana

Growth Partners, this ownership does not grant them the right to override security protocols or engage in actions that **violate legal obligations**. Norris's refusal to answer direct questions about requested system access, and his deliberate interference with compliance efforts, made it legally impossible for Ohana Growth Partners to meet PCI DSS requirements. This conduct violates § 7-302 by exceeding authorized access for fraudulent purposes.

53      By knowingly exceeding authorized access and preventing the company from complying with **PCI DSS** standards, **Glenn Norris** and **Ryan Brooks** violated **Md. Code Ann., Crim. Law § 7-302**. Their actions not only undermine the integrity of the business's security systems but also represent a breach of **criminal law**. These actions reinforce Ohana's **unclean hands**, supporting the argument that the court should **dismiss this case with prejudice**, impose **severe sanctions**, and refer the matter to law enforcement for potential criminal prosecution.

## CONCLUSION: SYSTEMIC VIOLATIONS OF MARYLAND LAW

54      The actions of Ohana Growth Partners, LLC, particularly involving unauthorized access, misrepresentation, and failure to comply with mandated security standards, represent systemic violations of Maryland criminal and consumer protection laws. Their conduct breaches Md. Code, Com. §§ 14-3503(b) and 13-301(9), as well as Md. Code Ann., Crim. Law § 7-302, by exceeding authorized access for fraudulent purposes. These breaches of legal obligations demonstrate Ohana's unclean hands, which disqualify them from seeking any form of equitable relief.

55      In addition to violating Maryland law, **Ohana's actions** constitute clear **bad faith litigation**. The affidavits detail a pattern of **malicious and frivolous litigation**, with fraudulent claims, retaliatory conduct, and violations of state and federal laws reflecting an ongoing **abuse**

**of process**. Under **Maryland Rule 1-341**, severe sanctions are warranted to hold **Ohana Growth Partners** and their counsel, **Miles & Stockbridge**, accountable for their intentional misconduct.

56    Given the **egregious nature** of these actions, the court should take the following steps to ensure justice is served and the integrity of the judicial process is upheld:

1.    **Dismiss** this case **with prejudice**, as **Ohana's unclean hands** and **bad faith** render **their claims meritless**.

2.    Impose **severe sanctions**, including **monetary penalties**, to deter further abuse of the legal process.

3.    Consider a **referral for criminal investigation** based on **violations of Maryland's criminal statutes**.

57    These actions are necessary to address **Ohana's grievous misconduct** and to prevent further misuse of the courts. The **unclean hands doctrine** unequivocally bars them from seeking any relief, and continuing this lawsuit would only reward their **malicious and frivolous tactics**.

## V ENTHUSIASTIC LEGAL COMPLIANCE

58    **Ohana Growth Partners, LLC** has repeatedly alleged that **Ryan Dillon-Capps** refused to comply with company directives, particularly regarding the transfer of administrative access to its IT systems. However, these allegations are demonstrably false and misrepresent the actual events. The affidavits provided in support of **Dillon-Capps'** defense—**Affidavit of Legal Obligation, Affidavit of Bad Faith, Affidavit of Unauthorized Contractual Modifications**, and **Affidavit of Plaintiff's Abusive Use of the Judicial System**—collectively establish that **Dillon-Capps** acted in full **good faith** and complied with all legal obligations, security

standards, and contractual duties to the extent possible within the constraints placed upon him by **Ohana's** own failure to act in good faith.

## COMPLIANCE WITH PCI DSS AND SECURITY PROTOCOLS

59      A key element of **Dillon-Capps' compliance** stems from his role as **PCI Compliance Officer**. His actions were in strict adherence to **PCI DSS v4** standards, which are not merely guidelines but are codified as legal obligations under **Md. Code, Com. § 14-3503(b)**. This law mandates the implementation of **reasonable security procedures**—procedures that Dillon-Capps was tasked with upholding, including the **least privilege access controls** outlined in **PCI DSS Requirement 7**. When **Glenn Norris** refused to answer basic questions such as, "What is the access for?" it rendered it impossible for **Dillon-Capps** to grant unrestricted access without violating PCI DSS requirements. **Ohana's failure to provide necessary information constituted estoppel**, as detailed in the affidavits, thereby blocking Dillon-Capps from fulfilling the request.

## GOOD FAITH EFFORTS AND SOLUTIONS PROVIDED

60      Despite **Ohana's refusal** to provide clear instructions or necessary details, **Dillon-Capps** made **multiple good faith attempts** to accommodate their requests. These efforts are meticulously documented in the **Affidavit of Plaintiff's Abusive Use of the Judicial System**. On **June 7, 2023**, Dillon-Capps even proposed a solution that would grant **Justin Drummond** the necessary access without compromising PCI DSS standards. Instead of acting in good faith, **Ohana** canceled meetings, refused to communicate, and created an environment of escalating hostility.

61    Further, **Dillon-Capps** was in full compliance with the **Franchise Disclosure Documents (FDD)**, which also mandate adherence to PCI standards. Any alleged failure to provide access was not due to **Dillon-Capps' refusal**, but rather due to **Ohana's deliberate obfuscation** and **manipulation** of the process. This is confirmed in the **Affidavit of Unauthorized Contractual Modifications**, where the evidence shows that **Ohana** attempted to enforce incomplete contracts while simultaneously ignoring PCI compliance and contractual obligations.

## LEGAL FRAMEWORK FOR REFUSAL OF UNLAWFUL REQUESTS

62    **Ohana's claims** hinge on the false premise that **Dillon-Capps refused access**. However, **Maryland law** provides strong protections for individuals who are required to refuse unlawful or improper directives. Under **Md. Code, Com. § 13-301(9)**, it is illegal for a business to engage in **deceptive practices**, including making requests that conflict with compliance obligations and then claiming non-compliance when those requests are lawfully refused. **Ohana's insistence** on bypassing PCI requirements, coupled with their subsequent accusations of refusal, falls squarely within the prohibited conduct under this statute.

## ESTOPPEL AND FRAUDULENT CONDUCT BY OHANA

63    The affidavits also establish that **Ohana Growth Partners**, through their conduct, engaged in **estoppel**, barring them from claiming any refusal. On **June 12, 2024**, **Hartman Executive Advisors (HEA)** was granted access yet failed to respond to multiple offers from **Dillon-Capps** to finalize the process. **Ohana's refusal to engage** demonstrates bad faith and

malicious intent to fabricate a refusal. This fraudulent conduct aligns with the principles of

estoppel, preventing them from seeking relief for actions they willfully obstructed.

## COMMITMENT TO LEGAL OBLIGATIONS AND ACCESS COMPLIANCE

64    Contrary to **Ohana's false narrative**, **Dillon-Capps** has demonstrated **enthusiastic legal compliance**. His role required strict adherence to both **PCI DSS** and **company policy**, and his actions reflect a commitment to **legal obligations**—a stark contrast to the retaliatory and bad faith litigation engaged in by **Ohana Growth Partners**. This enthusiastic compliance, well-documented in affidavits, serves as a strong counter to any claims of refusal. It proves that **Ohana's litigation is based on fraudulent allegations**, as **Dillon-Capps** consistently provided lawful alternatives and engaged in **good faith efforts** to meet **PCI DSS and contractual standards**.

## CONCLUSION: OHANA AND MILES & STOCKBRIDGE'S LAWSUIT IS A CONFESSION

65    The lawsuit filed by **Ohana Growth Partners, LLC**, and their counsel, **Miles & Stockbridge**, is nothing more than a **repackaging of their own legal and ethical violations**. Their claims of **breach of contract** and **failure of duty** are, in fact, **confessions** of how they themselves have violated numerous contracts and failed in their duty to protect the sensitive data of Maryland residents. By falsely accusing **Ryan Dillon-Capps** of misconduct, they are attempting to deflect from their own **misrepresentation** of PCI DSS compliance and their deliberate actions to undermine it.

66      **Ohana Growth Partners** has not only misrepresented their adherence to **PCI DSS v4 standards**, but they have also taken **deliberate actions** to **violate these standards**, all while refusing to provide a legitimate answer to the basic question of **what the access was for**. These violations directly breach their contractual obligations, including those outlined in the **Franchise Disclosure Documents (FDD)**, and also violate their duty to protect customer data under **Md. Code, Com. § 14-3503(b)**.

67      Their **lawsuit is a confession** of these breaches. By claiming that **Dillon-Capps** failed in his duties, they are admitting that it was **Ohana's own actions** that violated both state law and **PCI DSS standards**. The **criminal statute—Md. Code Ann., Crim. Law § 7-302**—is also applicable to them for their **unauthorized access** and misuse of computer systems. Ohana's failure to comply with their own legal obligations shows that their claims are a **sham** meant to distract from their **own liability**.

68      **Ohana's strategy** is clear: they have **repackaged their own violations**, accusing **Dillon-Capps** of the very misconduct they committed. By falsely alleging **breach of contract** and **failure of duty**, they are attempting to shift blame for their own legal and ethical failures. This lawsuit is not a legitimate claim, but a **fabrication** designed to manipulate the court and **silence the Defendant** before the truth could be heard.

69      Throughout the litigation, **Ohana and Miles & Stockbridge** have taken every opportunity to prevent the Defendant from being heard, spinning a **web of lies** in an attempt to convince the court that the **opposite** of the truth has occurred. They have deliberately obstructed access to key information and misrepresented facts to disguise their own **non-compliance** and **fraudulent conduct**.

70     The **unclean hands doctrine** prevents any party from seeking relief when they have acted in bad faith. **Ohana's lawsuit** is not just a breach of duty and contract, but a confession of their own **criminal conduct**. Their violation of **PCI DSS standards**, misrepresentation of compliance, and refusal to answer critical questions about system access clearly fall within **Md. Code Ann., Crim. Law § 7-302** (unauthorized access). By using this lawsuit to deflect attention from their own illegal actions, **Ohana** has confirmed their **unclean hands**, disqualifying them from seeking any form of equitable relief.

71     This lawsuit is not only baseless but a **direct admission** of **Ohana Growth Partners' own breaches** of legal, contractual, and ethical obligations. They have accused the Defendant of exactly what they themselves are guilty of. This court must recognize that **Ohana and Miles & Stockbridge's lawsuit is their confession**, and therefore:

    1.     **Dismiss this case with prejudice**, as **Ohana's unclean hands** and **bad faith** make their claims entirely without merit.

    2.     Impose **severe sanctions**, including **monetary penalties**, to deter further abuse of the legal system.

    3.     Consider a **referral for criminal investigation**, based on **Ohana's violations** of Maryland's criminal and consumer protection laws.

72     Allowing this litigation to continue would only serve to reward **Ohana's malicious and unethical conduct**. Their attempts to deflect responsibility through false accusations cannot stand, and the court must take decisive action to uphold justice.

## VI    A CASE BUILT ON FALSEHOODS AND PERJURY

73      From the very beginning, the claims brought forward by **Ohana Growth Partners, LLC**, supported by their counsel **Miles & Stockbridge**, have been grounded in falsehoods and deliberate misrepresentations. **Justin Drummond**, President of Ohana, and **Richard Hartman** have engaged in a pattern of **perjury**—providing knowingly false statements under oath in an attempt to shift blame onto **Ryan Dillon-Capps** and obscure **Ohana's own violations**. The **Affidavit of Bad Faith** and the **Affidavit of Plaintiff's Abusive Use of the Judicial System** dismantle these false claims, exposing a malicious strategy aimed at manipulating the court. The following sections detail the key perjurious statements made by **Drummond** and **Hartman**, and how these lies form the foundation of **Ohana's** lawsuit.

### JUSTIN DRUMMOND – PRESIDENTIAL PERJURY & ESTOPPEL

74      **Justin Drummond** falsely asserted that **Ryan Dillon-Capps** failed to provide updates on the request to grant **Hartman Executive Advisors (HEA)** access to the necessary systems. However, the affidavits make it clear that **Dillon-Capps** not only provided consistent updates but actively **pleaded with Drummond** to assist in getting a response from **HEA** to facilitate access. The **Affidavit of Bad Faith** shows that **Dillon-Capps** made every effort to comply with the HEA access request, even going above and beyond his duties by asking for help in resolving the matter.

75      **Intentional Ignorance**: Despite these efforts, **Drummond intentionally ignored Dillon-Capps' updates**, choosing instead to promote a false narrative of non-compliance. This was a deliberate act to manipulate the court and misrepresent the facts surrounding HEA access, constituting **perjury**.

## FALSE CLAIM OF NO COMPLIANCE FOR HEA

76      Drummond further alleged that **Dillon-Capps** failed to comply with HEA requests. However, **text messages from June 13, 2024**, reveal that **Dillon-Capps** was not only in full compliance but was also **eager to grant access** as demonstrated moment by moment breakdown of the June 13th text messages in the **Deposition Request for Agents of Ohana Growth Partners**. Dillon-Capps repeatedly asked **Drummond** for assistance in reaching **HEA** to ensure the access was provided. This behavior demonstrates more than compliance—it reflects **enthusiastic willingness** to comply, which is the opposite of a refusal.

77      **HEA's Role in Estoppel**: The affidavits show that **HEA** deliberately engaged in **estoppel**, preventing Dillon-Capps from satisfying their access request. By ignoring Dillon-Capps' communications and refusing to cooperate, **HEA** created a situation in which compliance was impossible, and **Drummond's false claims** only served to further this obstruction.

## FALSE CLAIM OF NON-COMPLIANCE WITH PRESIDENTIAL REQUEST

78      Drummond also claimed that **Dillon-Capps** failed to comply with requests made by company leadership, specifically the President himself. This claim is demonstrably false. **Dillon-Capps** made documented **good faith efforts** to comply with these requests, despite **Ohana's refusal** to provide basic information necessary to lawfully execute his duties.

79      **June 7, 2024 Solution**: On June 7, 2024, **Drummond accepted a proposed solution** by Dillon-Capps, which would have resolved the access issue. However, Drummond then engaged in **estoppel**, preventing Dillon-Capps from fulfilling the request. The **text message exchanges** on **June 13, 2024**, further reveal that while **Dillon-Capps was asking for help to reach HEA,**

Drummond never once asked for access during their multi-hour conversation. Instead, Drummond perpetuated the false narrative of non-compliance.

## PERJURY THROUGH FALSE STATEMENTS

80    These **false statements** made by **Justin Drummond** are not just misrepresentations but **acts of perjury**, designed to portray **Ryan Dillon-Capps** as non-compliant and obstructive. In reality, **Dillon-Capps** was fully compliant, and it was **Ohana Growth Partners** that failed to provide the necessary support and information to facilitate compliance. Drummond's **perjurious claims** were calculated to deceive the court and shift the blame for **Ohana's violations of security protocols** onto Dillon-Capps

## RICHARD HARTMAN – FALSE CLAIMS REGARDING PERSONNEL RECORDS AND SYSTEM ACCESS

81    **Richard Hartman** falsely claimed that **Ryan Dillon-Capps** severed access to personnel records, implying that Dillon-Capps was obstructing the company's ability to manage its Human Resources records. However, the **Affidavit of Legal Obligations** establishes that this claim is categorically false. **Hartman**, as the administrator of the **HRIS system (Paycom)**, held full administrative control over personnel records. The **IT Department**, led by Dillon-Capps, had **no administrative access** to this system. **Hartman's statement** was not just inaccurate but a deliberate attempt to shift responsibility and mislead the court about who controlled access to these sensitive systems.

## FALSE HEA COMPLIANCE CLAIM

82     Hartman's claims regarding **Hartman Executive Advisors (HEA)** compliance were also riddled with falsehoods. He alleged that **Dillon-Capps** denied compliance with the **cease-and-desist order**, when, in fact, the documented communication shows that Dillon-Capps was clearly making good faith effort to comply. The **Affidavit of Bad Faith** reveals that Hartman deliberately misrepresented the context of the messages to frame Dillon-Capps' compliance as a denial. Hartman made no attempt to clarify the situation before losing control in response to the **2:05 PM email** on **June 13, 2024**, where he lashed out at an unrelated employee. His actions reflect not only a calculated attempt to deceive but also **retaliatory behavior** triggered by his own loss of control.

## FALSE STATEMENT ABOUT ACCESS AT 2:05 PM

83     One of **Hartman's most egregious perjuries** is his claim that he had **no email or system access** at **2:05 PM** on **June 13, 2024**. The affidavits clearly establish that Hartman had full access to the email system and IT network at that time. His claim of being unable to receive the **2:05 PM email** is patently false and was intended to mislead the court regarding his **awareness of critical communications**. The affidavits further reveal that **15 minutes after the 2:05 PM email**, Hartman retaliated against another employee, reflecting someone who was not only fully in control but actively engaging in **retaliatory actions**. His outburst before the **3:00 PM deadline**, demonstrates a pattern of **retaliation and deception**.

## FALSE HYPERLINK CLAIM

84     Hartman's perjury extends to his claims regarding a **hyperlink** that he pieced together from **fragments of a quote** in an attempt to misrepresent the content of the referenced website.

His manipulation of the quote and the hyperlink was designed to deceive the court into believing the website said the opposite of its actual content. This deliberate misrepresentation is not just an error in interpretation but a willful act of perjury, intended to bolster his false narrative and mislead the court about key facts.

## DANIEL LEVETT – EXPERT CONFESSION OF OHANA'S FRAUD

85     Throughout this litigation, **Ohana Growth Partners, LLC** and their counsel, **Miles & Stockbridge**, have presented a case built on **falsehoods** and **perjurious statements**, all in an effort to manipulate the court and hide their own failures. The affidavits of **Justin Drummond** and **Richard Hartman** are full of inconsistencies and demonstrably false claims. One critical document—the **Affidavit of Daniel Levett**—highlights the deception at the heart of this lawsuit.

## FALSE CLAIMS REGARDING ADMINISTRATOR ACCESS

86     A central claim made by **Ohana Growth Partners** is that they were unable to access their **Global Administrator accounts**, necessitating the **injunctive relief** they sought. However, the **Affidavit of Daniel Levett** directly contradicts this narrative. In his affidavit, **Levett** confirmed that he was able to work with an existing administrator—**the Help Desk Manager**— who had full access to the **Global Administrator accounts**. This completely undermines **Ohana's claim** that they had no access to their systems and that Dillon-Capps was obstructing them.

87     **Levett's Admission**: Levett inadvertently admitted that **Ohana Growth Partners** always had access to the accounts through their administrators, proving that the basis for **injunctive relief** was false. The affidavit reveals that they not only had administrative access but

that they actively used it to verify information on **June 26, 2024**. Therefore, **Ohana's claims** of

needing court intervention were fabricated .

## PERJURY AND INCONSISTENT STATEMENTS

88    The **Affidavit of Daniel Levett** is just one example of **Ohana's contradictory claims**.

Throughout the proceedings, **Ohana** has shifted its narrative—first claiming that there were **no**

**administrators**, then asserting that **Dillon-Capps refused access**, only to later confirm that

**Levett** and the **Help Desk Manager** successfully accessed the necessary accounts. This shifting

narrative is further evidence of the **perjury** and manipulation employed by **Ohana Growth**

**Partners** to mislead the court.

89    **Contradiction**: At various points in the case, **Ohana** claimed that different individuals

(including **Glenn Norris** and **Richard Hartman**) were responsible for controlling the accounts.

Yet, when these claims were scrutinized, the evidence showed that the accounts were always

accessible, and there was no obstruction by **Dillon-Capps** .

## ESTOPPEL AND NO JUSTIFICATION FOR INJUNCTIVE RELIEF

90    The **Affidavit of Daniel Levett** inadvertently supports the legal principle of **Estoppel**,

which prevents **Ohana Growth Partners** from seeking **relief** based on a situation they

themselves created. By confirming that the **Help Desk Manager** had access to the accounts all

along, **Levett's affidavit** proves that **Ohana's claim for injunctive relief** was baseless.

**Ohana's refusal** to respond to multiple emails seeking to clarify the situation amounts to

**Estoppel**, barring them from obtaining relief for issues they caused by their own inaction.

91    **Levett's Confession**: In the affidavit, **Levett** unwittingly exposes the fact that **Ohana**

was never locked out of their accounts and could have resolved the matter without court

intervention. This fact discredits their claims for relief, further supporting **Dillon-Capps'**

**defense**.

## THE BROADER PATTERN OF PERJURY AND MANIPULATION

92      The **false statements** made by **Drummond** and **Hartman** are not isolated incidents but

are part of a broader effort by **Ohana Growth Partners** and **Miles & Stockbridge** to distort the

facts and manipulate the legal process. The affidavits prove that these individuals knowingly lied

under oath, making their testimony an intentional misrepresentation of the truth to gain a legal

advantage.

93      These actions are **clear violations of Maryland's perjury laws (Md. Code Ann., Crim.**

**Law § 9-101**), and their willingness to present false statements to the court further solidifies the

**unclean hands** argument. Ohana's lawsuit is **founded in perjury**, and their use of perjured

testimony to support their claims disqualifies them from seeking any form of equitable relief.

## CONCLUSION: THE ENTIRE LAWSUIT IS BUILT ON LIES

94      This lawsuit, constructed on a foundation of **perjurious statements** from **Justin**

**Drummond** and **Richard Hartman**, should not be allowed to proceed. The affidavits presented

in this case prove beyond doubt that both individuals deliberately lied under oath to mislead the

court, covering up **Ohana Growth Partners' own violations** of **PCI DSS standards**, company

policies, and legal obligations. These falsehoods were not accidental or minor; they were part of

a **deliberate campaign to deceive** the court and manipulate the legal process in favor of **Ohana**.

95      **Justin Drummond** falsely claimed non-compliance by **Dillon-Capps**, despite text

messages and communications showing enthusiastic efforts to grant access to **HEA**. **Richard**

**Hartman** falsely asserted that **Dillon-Capps severed access** to personnel records, and his claims regarding compliance and system access at 2:05 PM on **June 13, 2024**, were equally perjurious. These false statements are violations of **Maryland's perjury laws** (**Md. Code Ann., Crim. Law § 9-101**) and are clear examples of **unclean hands**.

96    The perjury committed by **Drummond** and **Hartman** invalidates **Ohana's claims** and disqualifies them from seeking **any form of equitable relief**. This lawsuit, based entirely on lies and manipulation, is the epitome of bad faith litigation. As such, the court should:

    1.    **Dismiss the case with prejudice**, as **Ohana's unclean hands** render their claims entirely without merit.

    2.    Impose **severe sanctions**, including **monetary penalties**, to deter future perjury and abuse of the judicial process.

    3.    Consider a referral for criminal investigation, based on the perjury and fraud committed by Ohana Growth Partners and their representatives.

97    Allowing this lawsuit to continue would not only reward **Ohana's malicious behavior** but would also undermine the integrity of the court. **Ohana Growth Partners** has used the judicial system as a weapon, but their case—founded in **perjury**—must be swiftly and decisively rejected.

## VII    OBSTRUCTION, ATTEMPTED FALSE IMPRISONMENT, CONFLICTING ORDERS, IIED, AND WITNESS TAMPERING

98    The lawsuit pursued by Ohana Growth Partners, LLC, in conjunction with Miles & Stockbridge, has not only been built on perjury but also includes a pattern of obstruction, false imprisonment attempts, and intentional infliction of emotional distress (IIED). Further, actions

taken by Ohana suggest possible witness tampering, all of which contribute to the overall bad faith and unethical conduct in this case.

## OBSTRUCTION OF ACCESS TO COURT RECORDS

99    The exhibits attached to the affidavits include an email from **Robert Brennen**, legal counsel for **Ohana**, which clearly demonstrates **obstruction** of the **Defense's access to court transcripts**. In this email, Brennen applied improper conditions to the release of the transcript to the Defense, thereby restricting **Ryan Dillon-Capps' ability to access** vital records crucial to his defense. This obstruction, as documented in the **Affidavit of Bad Faith**, was a deliberate attempt to limit the Defense's access to information, further evidencing **bad faith litigation tactics**.

100    By manipulating access to critical legal documents, **Ohana Growth Partners** and their counsel have acted in direct opposition to **due process** rights and have sought to prevent the Defense from adequately preparing for proceedings. Such conduct not only undermines the fairness of the legal process but also demonstrates a **deliberate effort** to obscure the truth.

## ATTEMPTED FALSE IMPRISONMENT

101    The **Second Show Cause Order**, which included the possibility of **incarceration**, was issued as part of a **baseless and fraudulent lawsuit**. The demand for **incarceration** in a matter lacking legal merit constitutes an **attempt at false imprisonment**. By pursuing incarceration as a remedy in a **frivolous lawsuit**, **Ohana Growth Partners** and **Miles & Stockbridge** demonstrated a malicious intent to imprison **Ryan Dillon-Capps** without cause, thereby violating his legal rights.

102     This attempted use of the legal system to unjustly threaten imprisonment, as outlined in the affidavits, is a gross abuse of judicial processes and represents another example of **unclean hands** on the part of **Ohana**. The court must recognize that such actions—threatening imprisonment in a case rooted in **perjury and deceit**—constitute **attempted false imprisonment**, which is not only unethical but also a violation of Dillon-Capps' constitutional rights.

## CONFLICTING ORDERS AND IMPOSSIBLE COMPLIANCE

103     The **Suspension Letter**, **Temporary Restraining Order (TRO)**, and **Show Cause Orders** issued in this case all demand that **Dillon-Capps** take actions within the **same systems** from which he had been **prohibited from accessing or using**. The contradictory nature of these orders made **compliance legally impossible**.

104     For example:
1.     The **TRO** prevented **Dillon-Capps** from using specific IT systems while simultaneously demanding that he take actions within those same systems.

2.     The **Show Cause Orders** similarly required compliance in areas where **Dillon-Capps** had no ability to act due to the **TRO's restrictions**.

105     The result of these **conflicting orders** was the creation of a **legal trap** designed to position **Dillon-Capps** in continuous non-compliance, regardless of his efforts to fulfill court directives. Such legal entrapment is not only a form of procedural abuse but also demonstrates **malicious intent** to expose Dillon-Capps to punitive actions despite his **inability to comply**. This is a direct violation of his rights under due process and further underscores the **bad faith litigation** engaged in by **Ohana Growth Partners**.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

106    The continued pursuit of this **fraudulent lawsuit**, in combination with the **obstruction**, **attempted false imprisonment**, and **conflicting orders**, has resulted in significant **emotional, physical, and financial harm** to **Ryan Dillon-Capps**. The affidavits detail how the relentless pressure, baseless accusations, and threat of incarceration have caused severe emotional trauma.

107    **Ohana's actions**, driven by **retaliation** and **malice**, were clearly intended to cause harm to Dillon-Capps. Their goal was not to resolve legitimate business concerns but to punish and harass him for exposing **security violations** and **accounting irregularities** within the company. These actions constitute **intentional infliction of emotional distress (IIED)** under **Maryland law**, and the court should consider this harm when determining **sanctions** and other remedies.

## POTENTIAL WITNESS TAMPERING: RANDAL ROMES' AFFIDAVIT

108    The **Affidavit of Randal Romes** raises significant concerns about **witness tampering**. In his affidavit, Romes stated that he was provided with a letter to **Judge Truffer**, which contained no citations to **PCI DSS requirements** directed at **Ohana Growth Partners**. This is highly suggestive of tampering, as Romes' affidavit appears to have been influenced or manipulated to reflect a narrative beneficial to **Ohana**.

109    This manipulation of a witness's statement, especially in the context of compliance-related issues, points to potential **witness tampering**. **Ohana Growth Partners**, by distorting the facts and attempting to influence **Romes' testimony**, further demonstrates their **unclean hands** in this litigation. Witness tampering is a serious offense, and the court should carefully review this issue to determine if further investigation is warranted.

## CONCLUSION: MALICIOUS LITIGATION DESIGNED TO CAUSE HARM

110    The actions taken by **Ohana Growth Partners** and their counsel **Miles & Stockbridge** throughout this litigation—including **obstruction of access**, **attempted false imprisonment**, **conflicting court orders**, and possible **witness tampering**—demonstrate a clear pattern of **malicious litigation** designed to cause **emotional, physical, and financial harm** to **Ryan Dillon-Capps**.

111    This lawsuit is not a good-faith attempt to resolve legitimate business disputes but rather an orchestrated effort to **abuse the legal system**, manipulate court processes, and harass the defendant. These actions are part of a larger scheme to **obstruct justice**, undermine the truth, and create a false narrative of non-compliance.

112    The court must:

    1.    **Dismiss this case with prejudice**, recognizing **Ohana's bad faith litigation** and **unclean hands**.

    2.    Impose **severe sanctions** on **Ohana Growth Partners** and **Miles & Stockbridge** for their abusive and unethical conduct.

    3.    Consider a referral for criminal investigation into the potential witness tampering, obstruction of justice, and attempted false imprisonment committed during the course of this litigation.

113    The continued pursuit of this fraudulent lawsuit only serves to harm the judicial process and must be brought to a swift and decisive end.

## VIII   RECIPROCAL RELIEF AND ATTORNEY'S FEES – A PRECEDENT FOR A BETTER MARYLAND

114    In this case, **Ohana Growth Partners LLC** has employed the judicial system as a weapon, filing a fraudulent lawsuit based on **perjury**, **misrepresentation**, and **manipulation**. Their conduct threatens not only the integrity of this case but also the broader **Maryland legal system**, which must protect against such abuses. The principle of **reciprocal relief** not only addresses the immediate harm caused to **Ryan Dillon-Capps** but also serves a larger purpose: establishing a **precedent** that deters future fraudulent lawsuits in Maryland. The imposition of reciprocal penalties and attorney's fees will contribute to a **stronger legal system** for all Marylanders, safeguarding the courts from being misused by parties acting in **bad faith**.

115    The arguments supporting reciprocal penalties and attorney's fees are derived from both the Memorandum of Law in Support of Reciprocal Penalties and the Memorandum of Law for Reciprocal Attorney's Fees and are amplified by the need for Maryland to set a clear precedent against fraudulent litigation practices.

116    In this case, **Ohana Growth Partners LLC** sought daily penalties and extensive legal fees from **Ryan Dillon-Capps** based on false claims and bad-faith litigation. However, the evidence presented has clearly demonstrated that **Ohana**, through its agents and counsel, engaged in fraudulent conduct and abused the judicial process. The principle of **reciprocal relief**—grounded in equity and fairness—provides a robust framework for ensuring that those responsible for **fraudulent lawsuits** face the same consequences they sought to impose on others.

117    The arguments supporting reciprocal penalties and attorney's fees are drawn from both the **Memorandum of Law in Support of Reciprocal Penalties** and the **Memorandum of Law**

**for Reciprocal Attorney's Fees**, which together establish the legal and equitable basis for shifting the financial burden onto Ohana Growth Partners and their counsel.

## RECIPROCAL PENALTIES FOR BAD FAITH LITIGATION

118    As outlined in the **Memorandum of Law in Support of Reciprocal Penalties**, **Ohana's fraudulent claims** and bad-faith litigation tactics merit severe penalties. **Maryland Rule 1-341** grants courts the authority to impose **sanctions** when a party acts without justification or in bad faith, both of which have been conclusively demonstrated here. **Ohana's own IT consultant, David Levett**, confirmed that they already had administrative access to the systems in question, yet **Ohana** proceeded to mislead the court.

119    **Reciprocal Penalties Doctrine**: The court should impose daily penalties on **Ohana & M&S**, equivalent to those they sought against **Dillon-Capps** ($2,500 per day). These penalties serve as a necessary **deterrent** against future bad-faith litigation and ensure that **Ohana & M&S** bears the financial consequences of their misconduct.

## RECIPROCAL ATTORNEY'S FEES

120    The **Memorandum of Law for Reciprocal Attorney's Fees** further argues that **Maryland courts** have the authority to award **attorney's fees** to a prevailing defendant in cases involving **fraudulent lawsuits**, even in the absence of a specific statute. **Ohana's lawsuit**— based on **perjury**, **misrepresentation**, and **procedural abuse**—fits squarely within Maryland's existing framework for awarding attorney's fees under **Rule 1-341**.

121    **Fraudulent Lawsuits as Abuse of Process**: Fraudulent lawsuits are an abuse of the judicial process, and Maryland courts have a strong policy against such behavior. By awarding

reciprocal attorney's fees, the court ensures that **Ohana and M&S**, not **Dillon-Capps**, bears the cost of defending against baseless and malicious claims.

## EQUITY AND JUDICIAL EFFICIENCY

122    Both memoranda emphasize the need for **equity** and the protection of judicial efficiency. Allowing **Ohana** to escape the consequences of their actions would not only be unjust but would also undermine the integrity of the judicial process. **Reciprocal relief** ensures that **Ohana** and their counsel, **Miles & Stockbridge**, are held accountable for their attempts to misuse the court system for retaliatory purposes.

## CONCLUSION: RECIPROCAL RELIEF AND ATTORNEY'S FEES ARE ESSENTIAL

123    Given the overwhelming evidence of **Ohana's fraudulent conduct**, the imposition of **reciprocal penalties** and **attorney's fees** is not only appropriate but necessary to restore fairness and integrity to the legal process. **Ohana's** bad-faith litigation tactics, including filing false claims and misleading the court, have caused significant financial, emotional, and reputational harm to **Dillon-Capps**. The court should impose:

1.    **Daily penalties** equivalent to those sought by **Ohana** ($2,500 per day) as a deterrent against future misconduct.

2.    **Reciprocal attorney's fees** to ensure that **Dillon-Capps** is not burdened with the costs of defending against a fraudulent lawsuit.

124    By holding **Ohana Growth Partners** and their counsel accountable, the court will send a clear message that **bad-faith litigation** will not be tolerated, and those who misuse the legal system will face significant consequences.

## IX  OVER FOUR MONTHS OF CONSEQUENCES

## RULE 11 SANCTIONS FOR FRIVOLOUS FILINGS: ANCHORED IN UNCLEAN

### HANDS DOCTRINE

125    The **unclean hands doctrine** serves as the foundation of the **Defendant's primary argument** for dismissal and sanctions. **Ohana Growth Partners LLC**, through its representatives—most notably **Richard Hartman**—commenced this litigation with **unclean hands**, effectively **invalidating** their claims from the moment this lawsuit was filed. In **Richard Hartman's affidavit**, he admits on **page 4** to **violating the Family and Medical Leave Act (FMLA)**, a federal labor law designed to protect employees from retaliation for taking medical leave. This admission of illegal conduct by **Ohana's leadership** fundamentally undermines their entire legal standing and renders their claims **moot** under the doctrine of **unclean hands**.

## UNCLEAN HANDS DOCTRINE AS A BAR TO EQUITABLE RELIEF

126    The **unclean hands doctrine** is a well-established principle in both **federal** and **Maryland law**, preventing a party from seeking **equitable relief** when they themselves have acted unethically or in bad faith regarding the issue at hand. **Ohana's lawsuit** is built on false claims, perjury, and the **violation of FMLA rights**, disqualifying them from seeking any form of relief. From the very beginning, **Richard Hartman's affidavit** reveals a confession of **retaliation against Dillon-Capps** for requesting family and medical leave, a clear **violation of federal law**. This admission proves that **Ohana's hands were unclean** from the outset, making their entire case invalid.

  1.    **Legal Precedent**: In **Keystone Driller Co. v. General Excavator Co., 290 U.S. 240 (1933)**, the **U.S. Supreme Court** held that a party cannot obtain equitable relief if

they have acted unethically in relation to the subject of the lawsuit. This principle applies here, as **Ohana's FMLA violations** disqualify them from seeking relief.

2.    **Maryland Application**: In **Manown v. Adams**, 328 Md. 463, 615 A.2d 611 (1992)**\*\***, the **Maryland Court of Appeals** affirmed that parties with **unclean hands** are barred from seeking equitable remedies. **Hartman's admission** of retaliation violates both **FMLA** and **Maryland labor laws**, reinforcing that **Ohana's claims** should be dismissed.

## RULE 11 SANCTIONS AMPLIFIED BY UNCLEAN HANDS DOCTRINE

127    Building on the **unclean hands doctrine, Ohana's subsequent filings** over the course of four months were not only **frivolous** but also submitted in **bad faith** to harass **Dillon-Capps** and obscure the fact that **Ohana's leadership** had already **violated federal law**. Every document filed in support of their fraudulent claims only serves to compound their **unclean hands** and further justify **Rule 11 sanctions**.

128    **Federal Rule 11** and **Maryland Rule 1-311** require attorneys and parties to certify that their filings are grounded in **law** and **fact**. Yet, **Ohana's filings** are based on misrepresentations, including **false claims** about system access, non-compliance, and administrative actions. These filings are compounded by **Richard Hartman's** admission of FMLA violations, which alone should have **disqualified them from initiating this lawsuit**. Each filing adds to a cumulative pattern of frivolous litigation, warranting severe **sanctions**.

1.    **Frivolous Filings**: **Ohana's claims of non-compliance**, which form the basis of their lawsuit, are undermined by the very fact that their actions constituted **illegal**

**retaliation**. **Richard Hartman's admission** of FMLA violations invalidates the entire premise of the lawsuit, making every filing **frivolous** and without merit.

2.    **Sanctions Sought**: Given the **frivolous nature** of each filing, **Ohana** and their counsel, **Miles & Stockbridge**, should be sanctioned under **Rule 11**. These sanctions should include **monetary penalties**, dismissal with prejudice, and referral for further investigation into potential criminal violations, including perjury.

### THE ROLE OF PERJURY AND BAD FAITH IN STRENGTHENING THE CASE FOR SANCTIONS

129    **Ohana's bad faith conduct** is further evidenced by the **perjury** committed by **Justin Drummond** and **Richard Hartman**, as detailed in the **Affidavit of Perjury** and **Affidavit of Bad Faith**. These false statements were made to shift the blame for **Ohana's security and compliance failures** onto **Dillon-Capps**, despite the fact that **Ohana's leadership** had already violated **FMLA protections**. This pattern of **bad faith filings** is precisely the type of conduct that **Rule 11 sanctions** are designed to punish.

### SANCTIONS SOUGHT UNDER RULE 11 AND UNCLEAN HANDS DOCTRINE

130    Because **Ohana's lawsuit** was fundamentally flawed from its inception due to their **unclean hands**, the following sanctions are appropriate:

1.    **Dismissal of all claims with prejudice**, as **Ohana's** violation of **FMLA** bars them from seeking any equitable relief under the **unclean hands doctrine**.

2.    **Monetary penalties** for each **frivolous filing** under **Rule 11** and **Maryland Rule 1-311**, imposed on both **Ohana** and their counsel, **Miles & Stockbridge**, for knowingly filing false and harassing claims.

3.    **Referral for criminal investigation** into the **perjury and FMLA violations** committed by **Ohana's representatives**, specifically **Richard Hartman** and **Justin Drummond**, as their actions involve both fraudulent litigation and violations of federal law.

## CONCLUSION: UNCLEAN HANDS DOCTRINE DISQUALIFIES OHANA FROM SEEKING RELIEF

131    From the moment this lawsuit was filed, **Ohana Growth Partners LLC** acted with **unclean hands**. **Richard Hartman's admission** of violating **FMLA protections** on **page 4 of his affidavit** disqualifies **Ohana** from seeking any equitable relief and invalidates the legal grounds for their claims. Every filing made after that admission has only compounded their misconduct, making each one **frivolous**, **retaliatory**, and deserving of **Rule 11 sanctions**.

132    By dismissing this case with prejudice, imposing **severe sanctions**, and initiating an investigation into **Ohana's fraudulent actions**, the court will uphold the principles of **justice** and deter future misuse of the legal system by parties who attempt to **litigate in bad faith** while knowingly violating **federal labor laws**.

## LEGAL STANDARD

133    The imposition of sanctions for **frivolous filings** and **bad-faith litigation** is grounded in both **federal law** and **Maryland law**, which grant courts the authority to punish parties that misuse the judicial process. **Federal Rule of Civil Procedure 11** and **Maryland Rule 1-311** require that all documents submitted to the court be **well-grounded in law and fact**, and not filed for improper purposes such as **harassment, delay**, or **needlessly increasing litigation costs**. Courts have consistently held that parties who engage in bad-faith litigation tactics, such

as submitting false or frivolous claims, may be sanctioned. These sanctions can include **fines**, **dismissal of claims**, and other punitive measures designed to deter further abuse of the legal system.

## I.    CHAMBERS V. NASCO, INC., 501 U.S. 32 (1991)

134    In **Chambers v. NASCO, Inc.**, the **U.S. Supreme Court** affirmed the court's **inherent authority** to impose sanctions on parties that engage in **bad-faith litigation practices**. In this case, the defendant had repeatedly filed meritless motions and engaged in tactics designed to **delay** the litigation, **obstruct justice**, and force the opposing party to incur unnecessary legal fees. The **Supreme Court** held that when a party files repeated **frivolous filings** without legitimate grounds for relief, the court may impose sanctions, even beyond the scope of **Rule 11**.

1.    **Chambers** affirmed that the court's inherent power to punish parties for abusing the legal process is **essential** to preserving the integrity of the judicial system. This case underscores that courts can use **sanctions** to protect the judicial process from being manipulated for **improper purposes**, including harassment and delay.

## II.    KLUPT V. KRONGARD, 126 MD. APP. 179, 728 A.2D 727 (1999)

135    In **Klupt v. Krongard**, the **Maryland Court of Special Appeals** upheld sanctions against a plaintiff for filing **frivolous claims**. The case involved a plaintiff who pursued legal action despite the **lack of a factual or legal basis** for the claims being made. The court ruled that sanctions were appropriate when a party continues to file meritless claims without legal justification, and especially when the litigation serves no purpose other than to harass or delay the opposing party.

.     .

1.      The **Klupt** decision reinforces the principle that **legal claims** must be grounded in

both **fact and law**, and that **persistent litigation** without a proper foundation will result

in sanctions. This ruling highlights the court's authority to punish parties who exploit the

judicial system for **improper purposes**, such as **personal vendettas**, **retaliation**, or

**financial gain** through legal harassment.

III.    APPLICATION OF LEGAL STANDARD IN THE PRESENT CASE

136     In the current case, every single filing by **Ohana Growth Partners, LLC** and their

counsel, **Miles & Stockbridge**, over the past four months is unfounded, frivolous, and made

with the **intent to harass** and **retaliate** against **Ryan Dillon-Capps**. These filings, as shown in

the **Affidavit of Bad Faith** and **Affidavit of Perjury**, were based on **false claims** and **perjured**

**testimony**, with no legitimate legal or factual basis. The **admission by Richard Hartman** that

**Ohana violated FMLA protections** on page 4 of his affidavit invalidates their entire legal

standing. Despite this, **Ohana** continued to file claims, misrepresent facts, and submit documents

designed to **obscure the truth** and force **Dillon-Capps** into further litigation.

1.      **Frivolous Filings**: Each filing made by **Ohana** during this four-month period was

made in bad faith. The claims of **non-compliance** with PCI DSS standards, **system**

**access**, and **administrative control** were all based on fabrications, and **Ohana's**

**leadership** engaged in **deliberate obstruction** by refusing to provide accurate

information. These filings were intended to cause financial, emotional, and reputational

harm to **Dillon-Capps**, not to resolve a legitimate legal dispute.

2.      **Cumulative Impact of Frivolous Filings**: The cumulative impact of multiple

frivolous filings strengthens the case for **severe sanctions**. As the court in **Klupt**

emphasized, **persistent meritless claims** increase the burden on both the opposing party and the court. In this case, **Dillon-Capps** has been forced to defend against fraudulent and retaliatory claims, causing unnecessary financial and emotional distress.

IV.    COURT'S AUTHORITY TO IMPOSE SANCTIONS

137    Under **Rule 11** and **Maryland Rule 1-311**, the court has the authority to impose **sanctions** for each instance of a **frivolous filing** or **bad-faith litigation**. This includes the power to:

1.    **Impose monetary fines** on **Ohana Growth Partners** and their counsel, **Miles & Stockbridge**, for their repeated and baseless filings.

2.    **Dismiss all claims with prejudice**, as **Ohana's lawsuit** is predicated on **fraudulent claims**, **perjured testimony**, and **admitted violations of federal law**, specifically **FMLA protections**.

3.    **Refer the matter for criminal investigation**, given the evidence of **perjury**, **obstruction**, and **fraudulent representations** made by **Ohana** and their legal team.

138    The court's power to sanction not only serves to punish **bad-faith litigation** but also acts as a **deterrent** to future misuse of the judicial system. By imposing sanctions, the court protects the integrity of the judicial process and ensures that **frivolous claims** do not further waste court resources or inflict undue harm on innocent parties.

## CONCLUSION

139    The legal standard for imposing **Rule 11 sanctions** is clear: parties must certify that their filings are grounded in **fact and law**, and if they fail to do so, the court has the authority to impose severe penalties. **Ohana Growth Partners**, through **Miles & Stockbridge**, has filed

frivolous claims and misleading documents for the sole purpose of harassing Dillon-Capps. These actions, compounded by the admission of FMLA violations, render Ohana's lawsuit frivolous and abusive from the outset.

The court should:

    1.    Impose monetary penalties on Ohana Growth Partners and Miles & Stockbridge for their repeated violations of Rule 11.

    2.    Dismiss the case with prejudice, recognizing the bad faith and unclean hands of Ohana Growth Partners.

    3.    Refer the matter for criminal investigation, given the evidence of perjury, fraud, and FMLA violations.

140    In doing so, the court will uphold the principles of justice, deter future bad-faith litigation, and restore integrity to the judicial process.

## ABUSE OF PROCESS

141    Abuse of process occurs when a party uses the legal system for improper purposes, such as to harass, delay, or extort another party, rather than pursuing a legitimate legal claim. While a lawsuit or legal filing may be technically valid, if the underlying intent behind the use of legal proceedings is improper, it constitutes abuse of process. This can include actions such as using litigation to force an unjust settlement, increase costs for the opposing party, or achieve goals unrelated to the case's legal merits. Each filing made with an improper purpose is considered an independent act of abuse of process and can give rise to sanctions or damages.

142    In this case, **Ohana Growth Partners LLC**, with the assistance of their counsel **Miles & Stockbridge**, has weaponized the judicial system to **harass** and **financially burden Ryan Dillon-Capps**. Over the course of four months, they have repeatedly filed **meritless claims**, relied on **perjured testimony**, and engaged in **bad-faith litigation practices**. The filings are not aimed at pursuing legitimate legal relief but rather at **retaliating** against Dillon-Capps for exposing their internal violations, including **violations of FMLA protections**, as admitted by **Richard Hartman** in his affidavit.

## LEGAL STANDARD FOR ABUSE OF PROCESS

143    The elements of **abuse of process** are well-established in **Maryland law**, and courts have consistently recognized that the misuse of the legal system for **illegitimate purposes** warrants **sanctions** or **damages**.

I.    WALKER V. AMERICAN SECURITY CORP., 237 MD. 80, 205 A.2D 302 (1964)

144    In **Walker v. American Security Corp.**, the **Maryland Court of Appeals** defined **abuse of process** as the use of legal proceedings for a purpose other than that which the process was designed to achieve. The court made clear that even if the legal filing is **technically valid**, the process is **abused** if it is used for an **illegitimate purpose**, such as to harass, delay, or extort the opposing party. **Walker** sets forth that the underlying **intent** behind the use of the legal process is the key factor in determining whether abuse has occurred.

    1.    In **Walker**, the plaintiff used a valid legal mechanism but with the improper intent to harm the defendant financially, leading the court to find that **abuse of process** had occurred. The **Maryland Court of Appeals** concluded that legal actions brought with

ulterior motives, or for a purpose other than resolving legitimate legal disputes, would be considered an **abuse of process**.

II.    APPLICATION OF LEGAL STANDARD IN THE PRESENT CASE

145    **Ohana Growth Partners** has used this lawsuit as a tool for **retaliation**, not to seek legal resolution, but to burden **Dillon-Capps** with **financial strain**, **emotional distress**, and **reputational damage**. Despite having **no legitimate claims**, as evidenced by **Richard Hartman's admission** of violating **FMLA rights** and the **fraudulent filings** submitted by **Ohana's representatives**, they have continued to misuse the legal system. This constitutes **abuse of process** under **Maryland law**.

1.    **Improper Purpose**: The primary motive behind **Ohana's lawsuit** is **retaliation** for **Dillon-Capps' exposure** of internal violations. Rather than pursuing a valid legal remedy, **Ohana** is seeking to inflict harm on Dillon-Capps through continuous and **frivolous filings**. This pattern of behavior mirrors the improper use of legal process seen in **Walker**.

2.    **Separate Acts of Abuse**: Each filing submitted by **Ohana** over the course of the litigation, whether regarding system access, personnel records, or non-compliance, has been designed to create **unnecessary costs** for **Dillon-Capps**. Courts have found that when a party makes **repeated filings** for an improper purpose, each filing constitutes an independent act of **abuse of process**.

### III.    CONSEQUENCES OF ABUSE OF PROCESS

146    Courts have the authority to impose **sanctions** or award **damages** for **abuse of process**, particularly when it results in **financial harm** or an **undue burden** on the defendant. In this case, **Dillon-Capps** has faced significant **financial loss**, as well as emotional and reputational damage, due to **Ohana's continuous abuse** of the legal system. The improper use of the judicial process to delay resolution and force a settlement constitutes an abuse of process for which **Ohana** and their counsel must be held accountable.

1.    **Financial Harm**: As a direct result of **Ohana's abuse of process**, **Dillon-Capps** has incurred significant legal fees, emotional distress, and other costs associated with defending against **frivolous claims**. The improper intent behind **Ohana's filings** has created an **undue burden** on the defendant, warranting severe **sanctions** and **damages**.

2.    **Undue Burden on Judicial Resources**: The continued filing of meritless claims has also placed an undue burden on the judicial system, requiring the court to devote time and resources to handling claims that have no legal basis. By filing claims designed to harass and delay, **Ohana** has wasted valuable court resources, further justifying the imposition of **sanctions**.

### IV.    SANCTIONS SOUGHT FOR ABUSE OF PROCESS

147    Given the **persistent abuse** of the judicial system by **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**, the court should impose the following sanctions:

1.    **Monetary sanctions** for each filing made with an **improper purpose**, designed to retaliate against **Dillon-Capps** or delay the litigation without a legitimate legal basis.

2.    **Dismissal of all claims with prejudice**, as the lawsuit has been shown to be

**retaliatory**, based on **perjury**, and designed solely to harass.

3.    **Referral for further investigation** into the role of **Ohana's representatives** in

filing **fraudulent claims** and using the legal system as a tool for **extortion** and

**retaliation**.

## CONCLUSION

148    **Ohana Growth Partners LLC's** continued litigation, despite the lack of a legitimate

claim, is a clear case of **abuse of process**. By using the court system for **improper purposes**,

including retaliation, harassment, and inflicting financial harm, **Ohana** has misused the judicial

process in violation of **Maryland law**.

149    The court should impose **severe sanctions** to prevent further **abuse of process** and to

ensure that **Ohana** and their counsel, **Miles & Stockbridge**, are held accountable for their

actions. **Monetary damages** should be awarded to **Dillon-Capps** for the undue financial burden

placed on him, and all claims should be **dismissed with prejudice**.

## VEXATIOUS LITIGATION AND PATTERN OF MISCONDUCT

150    **Vexatious litigation** occurs when a party persistently files **meritless lawsuits** or

continues to pursue claims that **cannot be granted relief**, for the purpose of **harassing** the

opposing party, **delaying proceedings**, or otherwise **abusing the legal process**. This pattern of

conduct places an **undue burden** on the courts, the opposing party, and the judicial system as a

whole. In this case, **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**,

have engaged in **vexatious conduct** from the outset, filing **meritless claims** based on **falsehoods**

and **perjured testimony** in an effort to delay the proceedings and **financially drain** the defendant, **Ryan Dillon-Capps**.

151    Over the course of the last **four months**, it has become abundantly clear that **Ohana's claims lack any legitimate basis**. The **foundational claim of the lawsuit**—that **Dillon-Capps obstructed access to the Global Administrator accounts**—has been exposed as **fraudulent**. The evidence, including the **Affidavit of Daniel Levett**, demonstrates that **Ohana always had access to these accounts**. The fact that **Ohana** persisted in their litigation despite having full knowledge of this fact shows that this case was filed and pursued in bad faith, with no objective other than to **harass**, **delay**, and **exert financial pressure** on **Dillon-Capps**.

## LEGAL STANDARD FOR VEXATIOUS LITIGATION

152    Courts have the authority to impose **severe sanctions** when a party engages in **vexatious litigation**, including barring the party from filing future claims without prior judicial approval. The purpose of these sanctions is to protect both the **judicial system** and the **opposing party** from the continued burden of **frivolous filings**.

### I.    SAFIR V. U.S. LINES, INC., 792 F.2D 19 (2D CIR. 1986)

153    In **Safir v. U.S. Lines, Inc.**, the **Second Circuit** established the factors courts should consider when determining whether litigation is **vexatious**. These factors include:

1.    The **party's motive** for pursuing the lawsuit.

2.    Whether the claims are **legitimate** or **meritless**.

3.    Whether the **litigation imposes an undue burden** on the opposing party.

4.    Whether the filings have **prolonged the litigation unnecessarily**.

154    In **Safir**, the court ruled that when litigation is pursued with **improper motives**, such as

harassment or delay, and when the claims are clearly without merit, the litigation becomes

**vexatious**, and the court is justified in imposing sanctions to prevent further abuse of the legal

process.

    1.    In this case, **Ohana's persistence** in filing groundless claims, despite knowing

    they lacked any factual or legal basis, reflects their **improper motive** to harass and

    impose financial and emotional strain on **Dillon-Capps**. The **Safir standard** supports the

    conclusion that **Ohana's litigation** is vexatious and warrants severe sanctions.

II.    TUCKER V. WOOLERY, 99 MD. APP. 295, 637 A.2D 482 (1994)

155    In **Tucker v. Woolery**, the **Maryland Court of Special Appeals** held that **repeated,**

**groundless litigation** is an abuse of the judicial process and warrants **severe sanctions**. The

court noted that when a party files claims that are **frivolous** and lacks merit, and when the

repeated filings serve no legitimate purpose other than to **prolong litigation** or **harass the**

**opposing party**, the court has the authority to impose significant penalties, including **injunctive**

**relief** to prevent future filings without judicial oversight.

    1.    The **Tucker** case illustrates the **Maryland courts' stance** on **vexatious litigation**.

    Here, **Ohana's meritless filings** have caused significant harm to **Dillon-Capps**, not only

    by delaying the resolution of the case but by also **increasing legal costs** and causing

    **emotional distress**. Each filing has further prolonged the litigation without serving any

    legitimate legal purpose, echoing the vexatious conduct condemned in **Tucker**.

### III.    APPLICATION TO THE PRESENT CASE

156    The facts of this case demonstrate a clear and ongoing pattern of vexatious litigation by
Ohana Growth Partners and their counsel, Miles & Stockbridge. The foundational claim that
Dillon-Capps obstructed access to the Global Administrator accounts has been shown to be false,
as the Affidavit of Daniel Levett proves that Ohana always had access to these accounts, contrary
to the claims made in their filings. Despite this, Ohana continued to pursue the lawsuit for the
purpose of harassing and financially harming Dillon-Capps.

1.    **Improper Motives**: The persistence of **Ohana** in filing false claims despite the
clear evidence that they had full access to the accounts reflects a deliberate attempt to
**delay the proceedings** and force **Dillon-Capps** into a position where he would either be
**financially drained** or pressured into a settlement. These improper motives are the very
essence of **vexatious litigation**.

2.    **Prolonging Litigation**: Each filing made by **Ohana** over the course of four
months has prolonged the litigation unnecessarily. Rather than resolving the dispute,
**Ohana**'s filings have introduced false claims, **perjured testimony**, and misleading
statements, all designed to increase the complexity of the case and exhaust **Dillon-Capps'**
resources. The **cumulative effect** of these filings clearly demonstrates a pattern of
vexatious conduct, which justifies the imposition of severe sanctions.

### SANCTIONS SOUGHT FOR VEXATIOUS LITIGATION

157    Given the ongoing **vexatious litigation** pursued by **Ohana Growth Partners**, the court
should impose the following sanctions to protect both the judicial system and **Dillon-Capps**
from further abuse:

1.      **Monetary sanctions** for each filing that was made with the improper motive of

**harassment** or **delay**, including those based on **false claims** of administrative access and

compliance.

2.      **Dismissal of all claims with prejudice**, as the **false and perjured testimony**

used to support these claims renders the entire lawsuit meritless.

3.      **Injunctive relief barring further filings**: The court should issue an order

preventing **Ohana Growth Partners** and **Miles & Stockbridge** from filing any further

claims without prior judicial approval, to prevent continued **abuse of the judicial**

**system**.

4.      **Referral for criminal investigation**: The perjured statements and false claims

submitted by **Ohana** and their representatives should be referred for **criminal**

**investigation**, as their conduct goes beyond mere litigation tactics and constitutes

**fraudulent behavior**.

CONCLUSION

158     The actions of **Ohana Growth Partners LLC** and **Miles & Stockbridge** over the past

four months constitute a clear pattern of **vexatious litigation**. Each filing has been made with the

intent to **harass**, **delay**, and **financially harm Dillon-Capps**, rather than to pursue legitimate

legal claims. This pattern of misconduct has wasted valuable judicial resources and caused

significant harm to the defendant.

**The court should:**

1.    Impose **monetary sanctions** for each meritless filing made with improper

motives.

2.    **Dismiss the case with prejudice**, recognizing that the lawsuit was filed and

pursued in **bad faith**.

3.    Issue an **injunctive order** barring **Ohana** and their counsel from filing further

claims without prior judicial approval.

4.    **Refer the matter for criminal investigation** to address the fraudulent conduct

and perjury committed by **Ohana** and their representatives.

159    By imposing these sanctions, the court will protect the integrity of the judicial process

and ensure that **vexatious litigation** of this kind is not tolerated.

## CONTEMPT OF COURT

160    When a party continues to file **frivolous motions** in the face of clear evidence that the

case is **fraudulent** and **baseless**, this constitutes **litigation misconduct**. Such conduct not only

**wastes judicial resources** but also **violates the court's authority**, undermining the integrity of

the legal system. The court has the power to impose **civil and criminal contempt sanctions** to

stop parties from engaging in **misconduct** that disobeys court orders or continues to manipulate

the legal process.

161    In this case, **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**,

have engaged in persistent **litigation misconduct** by filing **frivolous motions** over a four-month

period, despite overwhelming evidence that their claims are fraudulent and lack any legal or

factual basis. Each filing further contributes to their pattern of bad-faith litigation and

demonstrates a blatant disregard for the court's authority. Such misconduct must be addressed with **severe sanctions** to protect the judicial process and prevent further abuse.

## LEGAL STANDARD FOR LITIGATION MISCONDUCT AND CONTEMPT OF COURT

162    The court has the authority to impose sanctions for **litigation misconduct** and **contempt of court** when a party knowingly engages in bad-faith litigation tactics, disobeys court orders, or acts to delay or disrupt the judicial process. **Contempt sanctions** are designed to be **coercive** and **punitive**, ensuring that parties adhere to the proper use of legal proceedings and do not abuse the system.

### I.    INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA V. BAGWELL, 512 U.S. 821 (1994)

163    In International Union, United Mine Workers of America v. Bagwell, the U.S. Supreme Court affirmed that courts have the inherent authority to impose both civil and criminal contempt sanctions when a party engages in litigation misconduct or disobeys court orders. The Court held that when a party's actions amount to misuse of the legal process, courts may impose escalating sanctions—including fines, imprisonment, or other coercive measures—to stop further misconduct.

> 1.    In **Bagwell**, the party engaged in a pattern of disobedience and frivolous conduct, prompting the court to issue escalating penalties in the form of **coercive fines** and **imprisonment** to ensure compliance with court orders and to protect the judicial process from further harm.

2.     The **Bagwell** case highlights the **broad authority** of courts to **sanction litigation misconduct** and protect the integrity of the legal system by issuing sanctions that escalate in severity if the misconduct continues.

## II.   APPLICATION OF LEGAL STANDARD IN THE PRESENT CASE

164     In the present case, **Ohana Growth Partners LLC** and **Miles & Stockbridge** have consistently engaged in **litigation misconduct** by filing **frivolous motions** and continuing to pursue **baseless claims**, despite the clear evidence presented through the **Affidavits of Bad Faith**, **Perjury**, and **Daniel Levett** proving that their claims are **fraudulent**. This persistent filing of meritless motions is not just an abuse of the legal process but a violation of the court's authority.

1.     **Continued Frivolous Filings**: Over the course of **four months**, **Ohana** has submitted multiple **frivolous motions** based on false assertions about **system access**, **compliance**, and **non-existent Global Administrator accounts**. Despite knowing that their claims were meritless, **Ohana** persisted in filing documents designed to **delay proceedings** and **harass Dillon-Capps**. Each filing represents a separate act of **litigation misconduct**, which should be treated as **contempt of court** under the standards set forth in **Bagwell**.

2.     **Violation of Court Authority**: By continuing to file **frivolous motions**, **Ohana** has **disobeyed the court's inherent authority** to oversee a fair and efficient judicial process. The repeated abuse of the court's resources reflects a **disregard for the legal system**, which warrants escalating penalties, including fines and other coercive measures to stop further misconduct.

## III.   ESCALATING SANCTIONS FOR CONTEMPT AND MISCONDUCT

165    Under **Bagwell**, the court has the authority to impose **escalating sanctions** for **litigation misconduct** and **contempt of court**. In this case, the court should consider imposing the following sanctions to address the persistent abuse of the legal process:

    1.    **Monetary fines** for each frivolous filing submitted by **Ohana** and **Miles & Stockbridge**. These fines should escalate with each additional filing to deter future misconduct and ensure that **Ohana** faces the financial consequences of their abuse.

    2.    **Imprisonment** or **coercive sanctions** for continued violations. If **Ohana** and their counsel continue to engage in **litigation misconduct**, the court should consider imprisonment as a means of halting further abuse of the judicial system.

    3.    **Referral for criminal contempt**: The court may refer **Ohana's representatives** and their counsel for **criminal contempt proceedings** if the misconduct persists, ensuring that their actions are held to the highest standard of legal accountability.

## IV.   PATTERN OF LITIGATION MISCONDUCT

166    The **cumulative effect** of **Ohana's frivolous filings** demonstrates a clear **pattern of misconduct**, which has caused significant harm to **Dillon-Capps** and has placed an undue burden on the judicial system. Each filing was intended to **delay the resolution** of the case, increase **litigation costs**, and **exhaust the resources** of the defendant. **Ohana's** refusal to cease this **pattern of misconduct** should lead to the imposition of severe **sanctions**, including **contempt penalties**.

1.    **Financial Harm**: The continuous filing of baseless motions has imposed

significant financial strain on **Dillon-Capps**, who has been forced to defend against

**fraudulent claims** at great expense. The court should impose **monetary fines** on **Ohana**

and their counsel to compensate for the financial harm caused by their actions.

2.    **Emotional and Reputational Damage**: The ongoing **litigation misconduct** has

also caused emotional distress and reputational harm to **Dillon-Capps**. The court has a

responsibility to address the **non-financial harms** caused by **Ohana's bad faith**

**conduct**, further justifying the imposition of **coercive sanctions**.

## V.    SANCTIONS SOUGHT FOR LITIGATION MISCONDUCT

167    Given the **persistent litigation misconduct** by **Ohana Growth Partners** and their

counsel, **Miles & Stockbridge**, the court should impose the following sanctions to halt further

abuse of the legal process:

1.    **Escalating monetary fines** for each instance of frivolous filing, to deter further

misconduct and ensure **Ohana** faces the financial consequences of their actions.

2.    **Imprisonment or coercive sanctions** if the misconduct continues, as authorized

under **Bagwell**, to ensure compliance with court orders and to protect the judicial process

from further abuse.

3.    **Referral for criminal contempt** for continued violations, to hold **Ohana** and

their representatives accountable for their deliberate abuse of the court's resources.

## CONCLUSION

168    The ongoing **litigation misconduct** by **Ohana Growth Partners LLC** and their counsel constitutes a clear violation of the court's authority and an abuse of the judicial process. Their persistent filing of **frivolous motions** serves no legitimate legal purpose and is designed solely to **delay** the proceedings, **harass Dillon-Capps**, and **waste judicial resources**. The court has the authority under **Bagwell** to impose escalating sanctions, including fines, imprisonment, and criminal contempt proceedings, to stop this abuse.

**The court should:**

1.    Impose **monetary fines** for each frivolous filing submitted by **Ohana** and **Miles & Stockbridge**.

2.    Consider **imprisonment or coercive sanctions** if the misconduct persists, in accordance with the court's inherent authority to protect the judicial process.

3.    Refer the matter for **criminal contempt proceedings** to address the continued violation of court orders and the ongoing abuse of the legal system.

169    By imposing these sanctions, the court will protect the integrity of the judicial system and ensure that **litigation misconduct** of this nature is not tolerated.

## IMPOSING SANCTIONS FOR BAD-FAITH LITIGATION

170    Courts possess **inherent authority** to impose sanctions on parties or attorneys who engage in **bad-faith litigation tactics**, even when such conduct is not explicitly addressed by procedural rules like **Rule 11**. This inherent power is essential for maintaining the integrity of the judicial system, ensuring that parties do not abuse the legal process to pursue **frivolous claims**, cause **unnecessary delays**, or otherwise **manipulate the court** for improper purposes.

171    **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**, have engaged

in a pattern of **bad-faith litigation**, filing **meritless claims** and **frivolous motions** for the

purpose of **harassment**, **delaying proceedings**, and **forcing financial hardship** on the

defendant, **Ryan Dillon-Capps**. Despite clear evidence of the **fraudulent nature of their**

**claims**—including admissions from **Richard Hartman** regarding **FMLA violations**—they have

continued to abuse the legal process, showing a blatant disregard for the ethical and professional

standards required of litigants. Such bad-faith conduct justifies the imposition of **serious**

**sanctions**, including **fines**, **dismissal of the case**, and **preclusion from filing further claims** in

this matter.

## LEGAL STANDARD FOR SANCTIONS IN BAD-FAITH LITIGATION

172    The **inherent authority** of courts to sanction parties for **bad-faith conduct** is a well-

established principle in both federal and state law. Courts are empowered to punish parties who

abuse the judicial process through conduct that violates **ethical standards** or undermines the

integrity of the judicial system, even if such conduct is not explicitly covered by formal

procedural rules.

### I.   ROADWAY EXPRESS, INC. V. PIPER, 447 U.S. 752 (1980)

173    In **Roadway Express, Inc. v. Piper**, the **U.S. Supreme Court** upheld the inherent power

of courts to impose sanctions on parties or attorneys who engage in **bad-faith conduct**. The

Court emphasized that while **Rule 11** and other formal rules provide mechanisms for sanctioning

improper conduct, courts retain **inherent authority** to sanction parties outside of those rules

when their behavior threatens the integrity of the legal system. In particular, the Court noted that

**bad-faith litigation tactics**, such as **filing frivolous claims**, **delaying litigation**, or engaging in

**abusive discovery practices**, could justify significant sanctions, including **fines**, **attorney's fees**, and **dismissal of claims**.

1. In **Roadway Express**, the plaintiff's attorneys engaged in **delay tactics** and **frivolous motions** designed to obstruct the judicial process. The Court's ruling affirmed that **courts must have the power** to sanction such conduct in order to protect the judicial system from abuse and ensure that parties who engage in **bad faith** face appropriate consequences.

## II. BLANTON V. EQUITABLE BANK, NAT. ASS'N, 542 F. SUPP. 1112 (D. MD. 1982)

174    In Blanton v. Equitable Bank, the Maryland District Court sanctioned a party for bad-faith litigation tactics, reaffirming that courts have inherent power to punish abusive litigation practices. The case involved a party that filed groundless motions and used frivolous arguments to delay the proceedings and burden the opposing party. The court found that such tactics were a clear abuse of the judicial process, warranting sanctions even though the conduct was not specifically covered by formal rules such as Rule 11.

1. The **Blanton** case highlights the **Maryland court's willingness** to punish parties who engage in **bad-faith litigation**, emphasizing that the courts' **inherent authority** extends to all forms of misconduct that disrupt the fair administration of justice. Sanctions in **Blanton** included both **monetary fines** and **preclusion from further filings** in the case.

### III.    APPLICATION TO THE PRESENT CASE

175    **Ohana Growth Partners** and their counsel, **Miles & Stockbridge**, have demonstrated a

clear pattern of **bad-faith litigation** through their continued filing of **meritless claims** and

**frivolous motions**. These filings, which span a **four-month period**, are not grounded in law or

fact and serve no legitimate purpose other than to **harass Dillon-Capps**, cause **unnecessary**

**delays**, and force him to expend significant financial resources in defending against fraudulent

claims.

    1.    **Improper Motive**: The **bad-faith motivation** behind **Ohana's filings** is clear.

    The lawsuit is based on false assertions about **Global Administrator accounts**, with

    **Ohana** and their counsel knowingly pursuing claims that were unsupported by the

    evidence. Despite the **admission of FMLA violations** by **Richard Hartman**, **Ohana**

    persisted in filing **meritless motions**, with the clear intent to **delay proceedings** and

    force a settlement through litigation fatigue.

    2.    **Pattern of Frivolous Filings**: Over four months, **Ohana** submitted multiple

    motions, each designed to prolong the litigation and force **Dillon-Capps** into a defensive

    posture, despite the lack of legal or factual support for their claims. Each of these motions

    constitutes **bad-faith conduct**, warranting escalating sanctions to prevent further misuse

    of the court's resources.

### IV.    ESCALATING SANCTIONS FOR BAD-FAITH LITIGATION

176    The court's **inherent power** to sanction **bad-faith litigation** allows for the imposition of

penalties that escalate in severity to deter future misconduct. In this case, the court should

consider the following sanctions to address the **persistent bad-faith conduct** of **Ohana Growth Partners** and **Miles & Stockbridge**:

1.    **Monetary fines** for each meritless filing made with bad-faith motivations. These fines should be substantial enough to deter **Ohana** and their counsel from engaging in further litigation misconduct.

2.    **Dismissal of the case with prejudice**: Given the **fraudulent nature** of **Ohana's claims**, and the continued abuse of the legal system through bad-faith filings, the court should dismiss the lawsuit in its entirety, with prejudice, to prevent any further litigation on these meritless claims.

3.    **Preclusion from further filings**: The court should impose an order barring **Ohana** and their counsel from filing any further motions or claims in this matter without prior judicial approval, to ensure that the judicial process is not further abused.

4.    **Attorney's fees**: The court should award **Dillon-Capps** attorney's fees for the costs incurred in defending against these **bad-faith claims**, ensuring that he is compensated for the financial harm caused by **Ohana's misconduct**.

V.    PRECEDENT FOR SANCTIONS IN BAD-FAITH LITIGATION

177    Both **Roadway Express** and **Blanton** set clear precedent for courts to exercise their **inherent authority** to impose **sanctions** on parties that engage in **bad-faith litigation practices**. By filing **frivolous claims** over an extended period, **Ohana Growth Partners** has abused the legal process, demonstrating a pattern of conduct that warrants **severe penalties** to protect both the defendant and the judicial system from further harm.

## CONCLUSION

178     **Ohana Growth Partners LLC** and **Miles & Stockbridge** have engaged in a sustained campaign of **bad-faith litigation**, using the court system to harass, delay, and inflict financial hardship on **Dillon-Capps**. The court possesses **inherent authority** to impose sanctions in response to this misconduct, as established by **Roadway Express** and **Blanton**.

179     The court should:

1.     Impose **monetary fines** for each instance of bad-faith filing submitted by **Ohana** and their counsel.

2.     **Dismiss the case with prejudice**, recognizing that the lawsuit is based on **fraudulent claims** and **meritless arguments**.

3.     Issue an order barring **Ohana** from filing further motions or claims in this matter without prior judicial approval, to prevent continued abuse of the legal process.

4.     Award **attorney's fees** to **Dillon-Capps**, compensating him for the costs incurred as a result of **Ohana's bad-faith litigation**.

180     By imposing these sanctions, the court will uphold the integrity of the judicial process and ensure that parties who engage in **bad-faith conduct** face appropriate consequences.

## RULE 41(B) DISMISSAL FOR FAILURE TO PROSECUTE

181     **Federal Rule of Civil Procedure 41(b)** and its **Maryland counterpart (Rule 2-507)** empower courts to **dismiss a case** for **failure to prosecute** or when a party engages in conduct that prevents the case from moving forward in a productive manner. This rule is designed to protect the judicial process from being misused by parties who file **frivolous claims** or repeatedly engage in procedural misconduct that delays the resolution of the case. When a party

fails to prosecute their case in good faith, dismissal—particularly **dismissal with prejudice**—becomes warranted.

182     In this case, **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**, have engaged in a pattern of **procedural misconduct** and **frivolous filings** that demonstrate their failure to move the case forward in a **meaningful or productive way**. Over a four-month period, they have submitted **meritless motions** and continued to litigate despite having no legal or factual basis for their claims. This conduct constitutes a **failure to prosecute**, and the court should exercise its authority to dismiss the case under **Rule 41(b)** or **Maryland Rule 2-507**.

## LEGAL STANDARD FOR DISMISSAL UNDER RULE 41(B)

183     **Federal Rule 41(b)** allows for the **involuntary dismissal** of a case when a party fails to prosecute or comply with the rules of procedure. This includes situations where a party engages in **frivolous litigation** or repeatedly fails to move the case forward in a substantive way. Similarly, **Maryland Rule 2-507** provides for dismissal when a party **fails to advance the case**, such as by filing **meritless motions** without addressing the core issues of the case.

### I.     LINK V. WABASH R.R. CO., 370 U.S. 626 (1962)

184     In **Link v. Wabash R.R. Co.**, the **U.S. Supreme Court** held that a court may dismiss a case for **failure to prosecute** under **Rule 41(b)** without a motion by the defendant. The Court emphasized that the power to dismiss for failure to prosecute is inherent in a court's ability to manage its docket and ensure the efficient administration of justice.

1.     **Link** affirmed that courts must have the ability to dismiss cases where a party engages in conduct that prevents the case from moving forward, such as **filing frivolous**

claims or **failing to pursue the case in good faith**. This ruling supports dismissal where a plaintiff repeatedly obstructs progress through procedural misconduct.

## II. POWELL V. BRESLIN, 430 MD. 52, 59 A.3D 531 (2013)

185    In **Powell v. Breslin**, the **Maryland Court of Appeals** reiterated the court's authority under **Rule 2-507** to dismiss cases for **failure to prosecute**. The case involved a party who failed to move the case forward, instead engaging in **procedural delays** by filing **oppositions** and **motions** without addressing the substantive issues of the case. The court ruled that such conduct amounted to a **failure to prosecute**, justifying dismissal under Maryland Rule 2-507.

1.    **Powell** makes clear that parties cannot delay the progress of a case by filing motions or oppositions that do not advance the case toward resolution. When a party files **meritless claims** or engages in **repeated procedural misconduct**, dismissal under Rule 2-507 is appropriate.

## III. APPLICATION TO THE PRESENT CASE

186    In the current case, **Ohana Growth Partners LLC** has demonstrated a persistent **failure to prosecute** by filing **frivolous claims** and engaging in **procedural misconduct** for over four months. Despite the **admission of FMLA violations** by **Richard Hartman** and the evidence proving the fraudulent nature of their claims—such as the **Affidavit of Daniel Levett** showing that **Ohana had access to the Global Administrator accounts**—Ohana has continued to file **meritless motions** that do not advance the case in a meaningful way. This conduct mirrors the behavior seen in **Link** and **Powell**, where dismissal was warranted due to the **failure to move the case forward**.

1.    **Frivolous Filings**: Ohana's continued filing of **meritless claims** regarding system access, compliance, and non-existent administrative issues reflects a deliberate effort to **delay the case**. By failing to address the central issues and instead relying on **frivolous motions, Ohana** has failed to prosecute the case in good faith.

2.    **Procedural Misconduct**: The four-month period of **repeated procedural misconduct**, including false claims and perjured testimony, further justifies dismissal. Ohana's actions have **wasted court resources** and caused **significant harm** to **Dillon-Capps**, who has been forced to defend against fraudulent claims with no legal merit.

## IV.    GROUNDS FOR DISMISSAL UNDER RULE 41(B) AND MARYLAND RULE 2-507

187    The court has clear grounds to **dismiss the case** under **Rule 41(b)** and **Maryland Rule 2-507** due to **Ohana's failure to prosecute**. Their conduct over the last four months demonstrates a complete disregard for the judicial process and an unwillingness to move the case forward in a meaningful way. Each filing has been made with the intent to **delay proceedings**, rather than to resolve the legal dispute, which amounts to a **failure to prosecute**.

1.    **Dismissal with Prejudice**: Given the **fraudulent nature of Ohana's claims**, the court should dismiss the case with prejudice to prevent further abuse of the legal process. **Ohana's bad-faith litigation tactics**, including their failure to prosecute the case in good faith, warrant the **most severe penalty**—dismissal with prejudice.

2.    **Involuntary Dismissal**: As established in **Link**, the court can dismiss the case on its own motion without requiring **Dillon-Capps** to file for dismissal. The court's **inherent authority** to manage its docket and prevent further **procedural abuse** supports the involuntary dismissal of the case under Rule 41(b).

## V.    SANCTIONS FOR FAILURE TO PROSECUTE

188    In addition to dismissal, the court should consider imposing sanctions for **Ohana's failure to prosecute**. The repeated filing of **frivolous motions** over the course of four months has caused **significant financial and emotional harm** to **Dillon-Capps** and has wasted valuable judicial resources. Sanctions could include **monetary penalties** for each instance of frivolous filing, as well as an award of **attorney's fees** to compensate **Dillon-Capps** for the costs incurred in defending against these meritless claims.

### CONCLUSION

189    The pattern of frivolous filings and procedural misconduct demonstrated by Ohana Growth Partners LLC and their counsel, Miles & Stockbridge, constitutes a clear failure to prosecute under Federal Rule 41(b) and Maryland Rule 2-507. For over four months, Ohana has failed to move the case forward in a meaningful or productive way, relying instead on meritless motions that have caused unnecessary delays and inflicted financial harm on Dillon-Capps.

**The court should:**

1.    **Dismiss the case with prejudice** under **Rule 41(b)** and **Maryland Rule 2-507**, as Ohana has failed to prosecute the case in good faith.

2.    Impose **monetary sanctions** for each frivolous filing made by **Ohana** and their counsel.

3.    Award **attorney's fees** to **Dillon-Capps** to compensate him for the costs incurred as a result of Ohana's failure to prosecute the case in a meaningful way.

190    By imposing these sanctions and dismissing the case, the court will protect the integrity of the judicial process and ensure that **parties who engage in bad-faith litigation** face appropriate consequences.

## X   FINAL CONCLUSION

191    For over four months, **Ohana Growth Partners, LLC** and their counsel, **Miles & Stockbridge**, have engaged in a **persistent pattern of bad-faith litigation**, filing **frivolous claims** and pursuing **meritless motions**. These actions have not only imposed significant **financial, emotional, and reputational harm** on the defendant, **Ryan Dillon-Capps**, but have also wasted valuable **court resources**. Most critically, **Richard Hartman's admission** of violating **FMLA rights** invalidates the very foundation of this lawsuit from its commencement, barring **Ohana** from seeking any equitable relief under the **unclean hands doctrine**.

192    Each of **Ohana's filings** represents an act of **misconduct**, warranting escalating sanctions under **Rule 11**, **abuse of process**, and **contempt of court**. The continued litigation in light of these clear admissions of bad faith underscores the need for swift and decisive action by the court.

### A   Motion to Dismiss with Prejudice for a June 13th Worth of Reasons

193    This case, initiated by **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**, is built entirely on **frivolous claims**, **perjury**, and **bad-faith litigation**. Since the lawsuit's inception, **Ohana** has engaged in repeated procedural misconduct, knowingly submitted false evidence, and continued to file meritless motions with the primary intent of harassing the defendant, **Ryan Dillon-Capps**, rather than seeking legitimate legal relief.

194     The lawsuit is fundamentally flawed from its commencement, rooted in **Richard**

**Hartman's admission of violating FMLA rights** on page 4 of his affidavit, which provides

grounds for immediate dismissal under the **unclean hands doctrine**. Further, Ohana's sustained

use of the judicial system for improper purposes over the last four months represents a clear

abuse of process, warranting **dismissal with prejudice** and severe **sanctions**.

195     Here are the **eight primary grounds** supporting the **dismissal with prejudice**:

1       <u>Unclean Hands Doctrine – Invalidating the Lawsuit</u>

196     The cornerstone of Ohana's misconduct lies in their **admitted violation of FMLA**

**rights**, as reflected in **Richard Hartman's affidavit**. Under the **unclean hands doctrine**, parties

who engage in unlawful or unethical behavior cannot seek equitable relief from the court.

Hartman's admission of illegal retaliation against **Dillon-Capps** disqualifies **Ohana** from

pursuing this lawsuit from the outset, making any request for injunctive relief or equitable

remedy legally void.

197     **Keystone Driller Co. v. General Excavator Co.**, 290 U.S. 240 (1933) emphasized that

**equitable relief** is barred for parties with unclean hands.

198     This case should therefore be dismissed, and **Ohana** should be prohibited from receiving

any equitable remedy.


2       <u>Bad-Faith Litigation – Four Months of Frivolous Filings</u>

199     Since the filing of this lawsuit, **Ohana Growth Partners** has engaged in a pattern of

**bad-faith litigation**, including filing **frivolous motions** and submitting **false evidence**. These

actions demonstrate **Ohana's intent** to delay proceedings and inflict financial and emotional

harm on **Dillon-Capps** rather than pursuing legitimate legal claims.

200    **Rule 11 sanctions** are appropriate here, as Ohana's repeated actions violate the rule's

requirement that filings be grounded in **law and fact**.

### 3    Failure to Prosecute – No Substantive Progress in Four Months

201    Despite filing multiple motions and oppositions, **Ohana** has **failed to prosecute the case**

**in good faith**. The continuous submission of meritless motions, all aimed at delaying the

litigation, constitutes **failure to prosecute** under **Federal Rule 41(b)** and **Maryland Rule 2-507**.

This prolonged inaction, combined with **Ohana's** bad-faith conduct, has caused significant harm

to **Dillon-Capps** and wasted valuable court resources.

202    **Link v. Wabash R.R. Co.**, 370 U.S. 626 (1962) allows for dismissal when a party fails

to meaningfully move the case forward.

### 4    Abuse of Process – Intent to Harass and Delay

203    **Ohana** has used the judicial system not to resolve a legitimate dispute but to harass and

delay, making this a clear case of **abuse of process**. Every filing was designed to burden the

defendant financially, emotionally, and reputationally. Courts have consistently held that such

behavior constitutes **abuse of process**, warranting both dismissal and **sanctions**.

204    **Walker v. American Security Corp.**, 237 Md. 80 (1964) established that using legal

proceedings for improper purposes constitutes abuse.

### 5    Fraudulent and Perjurious Claims

205    The foundation of **Ohana's lawsuit** is based on **fraudulent claims** and **perjured**

**testimony**. **Richard Hartman** and **Justin Drummond** made knowingly false statements under

oath, including claims about system access and compliance. The evidence—including **Daniel**

**Levett's affidavit**—directly contradicts these assertions, proving that **Ohana** had administrative access all along, invalidating their claim for relief.

206    Fraud and perjury are **serious violations**, and the court cannot allow claims built on such misconduct to proceed.

## 6    Criminal Violations – Perjury, Fraud

207    **Ohana** and its representatives have engaged in criminal violations, including **perjury**, **fraud**, and potentially **witness tampering**. The **Affidavit of Randal Romes** suggests that Ohana manipulated witness testimony to further their fraudulent claims. The court should refer these matters for **criminal investigation** to hold the responsible parties accountable.

208    Maryland's perjury statute (Md. Code Ann., Crim. Law § 9-101) directly applies to Ohana's fraudulent conduct.

## 7    Failure to State a Valid Claim – Rule 12(b)(6)

209    Even aside from the ethical misconduct, **Ohana** has **failed to state a claim for relief** under **Federal Rule 12(b)(6)**. Their central allegation—lack of access to critical systems—has been proven false. Without a valid legal basis, their claims must be dismissed.

210    **Ashcroft v. Iqbal**, 556 U.S. 662 (2009) emphasized that **plausible claims** must be based on **facts**, not mere assertions.

## 8    Judicial Economy – Preventing Further Waste of Court Resources

211    Allowing **Ohana's** baseless lawsuit to continue would waste court resources and reward **bad-faith litigation**. Judicial economy demands the **immediate dismissal** of this case to prevent further exploitation of the court system.

## 9    Vexatious Litigation

212    **Ohana Growth Partners LLC** has continuously pursued **meritless and retaliatory claims,** knowing that their lawsuit was based on falsehoods. This persistent filing of **frivolous motions** over a **four-month** period, without any legitimate basis for relief, has caused **undue harm** to the defendant and wasted **judicial resources**.

213    **Legal Precedent**: In **Safir v. U.S. Lines, Inc.,** the court outlined factors to determine **vexatious litigation**, including **motive** and the **merit** of claims. Ohana's **fraudulent claims** fit squarely within these factors, and they have used the courts to harass **Ryan Dillon-Capps**.

214    The court should issue an **injunction** barring Ohana from filing further claims without judicial approval to prevent **future abuse** after they dismiss with prejudice.

## 10    Intentional Infliction of Emotional Distress (IIED)

215    The intentional and retaliatory nature of **Ohana's litigation** has caused significant **emotional** and **physical harm** to **Dillon-Capps**, resulting in **severe emotional distress**. Ohana's deliberate actions, including using litigation as a weapon, have caused **mental and financial exhaustion**.

216    **Maryland Law**: The **IIED** tort under **Maryland law** provides a basis for damages when actions are **deliberate** and **malicious**. Ohana's behavior, specifically the **false imprisonment attempts** and **harassing litigation**, fits this definition – along with the basis to dismiss with prejudice

## 11    Pattern of Fraud and Misrepresentation

217    Ohana's entire lawsuit is based on **fraudulent claims** and **perjured statements,** particularly by **Richard Hartman** and **Justin Drummond**. The **Affidavit of Daniel Levett**

proves that **Ohana** had the necessary **Global Administrator access**, contradicting their central claim. This fraud constitutes a **complete lack of factual basis** for the lawsuit.

218    **Legal Grounds**: **Federal Rule 12(b)(6)** requires dismissal when the plaintiff **fails to state a valid claim**. Since the lawsuit is built on **fabrications**, it should be dismissed with prejudice

## 12    Violation of the Supremacy Clause

219    Ohana's admitted violation of **FMLA protections** undermines the legal foundation of their lawsuit. This directly violates the **Supremacy Clause** of the **U.S. Constitution**, which precludes any relief for parties acting in violation of **federal law**. Ohana has attempted to shift the blame for their own illegal retaliation.

220    **Legal Precedent**: In **Cooper v. Aaron**, the **U.S. Supreme Court** reinforced the principle that **federal law** overrides state actions, barring relief to violators like **Ohana**, and resulting in the court dismissing of this case with prejudice.

## 13    Witness Tampering

221    **Ohana** and **Miles & Stockbridge** are implicated in **witness tampering**, as demonstrated by the **Affidavit of Randal Romes**, which suggests that testimony was manipulated to advance **Ohana's false claims**. This type of misconduct, aimed at falsifying evidence, strikes at the heart of the judicial process and must not be tolerated. Witness tampering alone provides sufficient grounds for **dismissal with prejudice** and referral for **criminal investigation**.

222    **Legal Standard**: Witness tampering is both a **criminal act** and a **clear ethical violation**, warranting **severe sanctions** and dismissal.

## SUMMARY AND CONCLUSION

223    Based on the facts presented and the evidence supporting **Ohana's bad-faith conduct**, there are now **13 independent grounds** for dismissing this case with prejudice:

1. **Unclean Hands Doctrine – Invalidating the Lawsuit**
   - **Ohana's admission** of **FMLA violations** renders them ineligible to seek any form of equitable relief under the **unclean hands doctrine**.

2. **Bad-Faith Litigation – Four Months of Frivolous Filings**
   - **Ohana's repeated meritless filings** and use of the court system for retaliatory purposes over the past four months justify dismissal under **Rule 11** sanctions.

3. **Failure to Prosecute – No Substantive Progress**
   - Despite multiple filings, **Ohana** has **failed to advance** the case substantively, amounting to **failure to prosecute** under **Rule 41(b)** and **Maryland Rule 2-507**.

4. **Abuse of Process – Intent to Harass and Delay**
   - **Ohana's filings** were not designed to resolve legitimate claims but to harass and delay, constituting **abuse of process**.

5. **Fraudulent and Perjurious Claims**
   - **Ohana's lawsuit** is built on **falsehoods** and **perjured testimony**, particularly by **Richard Hartman** and **Justin Drummond**, invalidating their claims.

6. **Criminal Violations – Perjury, Fraud**
   - **Ohana** and its representatives engaged in **criminal violations**, including **perjury** and **fraud**, justifying dismissal and **criminal referral** for investigation.

7. **Failure to State a Valid Claim – Rule 12(b)(6)**

    o  **Ohana's central claims** are based on provably false assertions, failing to meet the standard for a valid legal claim under **Rule 12(b)(6)**.

8. **Judicial Economy – Preventing Further Waste of Court Resources**

    o  Allowing **Ohana's baseless lawsuit** to continue would waste **judicial resources** and reward **bad-faith litigation**, violating the principle of **judicial economy**.

9. **Vexatious Litigation**

    o  **Ohana** engaged in **vexatious litigation**, pursuing **meritless claims** to harass **Dillon-Capps** over the four-month period. Dismissal with prejudice is essential to prevent further abuse.

10. **Intentional Infliction of Emotional Distress (IIED)**

- **Ohana's retaliatory actions** were designed to cause **emotional and physical harm** to **Dillon-Capps**, leading to **severe emotional distress**.

11. **Pattern of Fraud and Misrepresentation**

- **Ohana's entire lawsuit** is built on **fraudulent claims** and **perjured statements**, undermining the factual basis for the lawsuit.

12. **Violation of the Supremacy Clause**

- **Ohana's violation** of **federal FMLA law** disqualifies them from seeking relief under the **Supremacy Clause**, making their claims invalid from the start.

13. **Witness Tampering**

- **Ohana** and their counsel engaged in **witness tampering**, as evidenced by **Randal Romes' affidavit**, warranting **dismissal with prejudice** and **criminal referral**.

224    The overwhelming evidence of **fraud**, **perjury**, **retaliatory litigation**, and **witness tampering** leaves no doubt that this case was pursued in **bad faith** from the very beginning. The court must act decisively to:

    1.    **Dismiss this case with prejudice**, preventing **Ohana** from seeking any further claims.

    2.    **Impose severe sanctions** on **Ohana** and **Miles & Stockbridge** for their **bad-faith litigation** and **procedural misconduct**.

    3.    **Refer the matter for criminal investigation** due to **perjury**, **fraud**, and **witness tampering** throughout these proceedings.

225    The dismissal with prejudice is necessary to protect the integrity of the court, uphold **judicial economy**, and deter future abuse of the legal system. The **13 grounds** presented are not only legally sound but also essential for ensuring **justice** and **fairness** in this case.

## B    Motion to Disqualify Miles & Stockbridge for Ethical Violations and Misconduct

226    The **disqualification of Miles & Stockbridge** as counsel for **Ohana Growth Partners LLC** is not only warranted but essential to uphold the integrity of this court and the legal system. From the outset of this litigation, **Miles & Stockbridge** has knowingly engaged in **bad-faith litigation**, submitted **false affidavits**, and perpetuated **fraudulent claims**. Their actions, which have misled this court and caused significant harm to the defendant, **Ryan Dillon-Capps**,

represent a clear violation of their ethical duties under both the **Maryland Rules of Professional Conduct** and **federal standards** governing attorney conduct.

227    The evidence overwhelmingly supports the conclusion that **Miles & Stockbridge** have actively facilitated **perjury**, obstructed the judicial process, and engaged in a sustained effort to prevent the defendant from receiving a fair trial. Their participation in the submission of **fraudulent evidence**, including **false statements** by **Richard Hartman** and **Justin Drummond**, constitutes a **breach of ethical duties** and raises serious questions about their fitness to continue as legal counsel in this case.

## 1    Active Participation in Bad-Faith Litigation

228    **Miles & Stockbridge** knowingly pursued **frivolous claims** and filed **baseless motions** designed to harass and delay. Over the course of four months, their filings were intended not to seek justice but to obstruct the judicial process and retaliate against **Dillon-Capps** for his lawful actions in exposing **Ohana's internal violations**, including their **FMLA** violations. Under **Rule 11** and the **unclean hands doctrine**, **Miles & Stockbridge**'s actions justify severe sanctions, including **disqualification**.

## 2    Submission of False Evidence and Perjury

229    The law firm submitted **perjured affidavits** from **Hartman** and **Drummond**, knowingly presenting **false testimony** to this court. Their failure to correct these falsehoods and their continued reliance on **fraudulent statements** represent a **willful breach** of their **duty of candor** toward the court, in violation of **Model Rule of Professional Conduct 3.3**. This violation of basic ethical duties undermines the legitimacy of the entire legal process.

Page **79** of **109**

### 3     Conflict of Interest and Ethical Breaches

230     By participating in the **fraudulent claims** of **Ohana**, **Miles & Stockbridge** created a clear **conflict of interest**. Their representation of a client engaged in illegal actions—including **perjury** and **witness tampering**—renders them incapable of upholding their obligations to both their client and the court. The court should also consider **waiving the attorney-client privilege** between **Ohana** and **Miles & Stockbridge**, as their communications may reveal further unethical conduct.

### 4     Witness Tampering and Obstruction of Justice

231     Evidence suggests that **Miles & Stockbridge** engaged in **witness tampering**, particularly regarding **Randal Romes' affidavit**, which showed signs of influence or manipulation. By obstructing the presentation of truthful evidence, **Miles & Stockbridge** not only violated ethical standards but engaged in actions that could warrant **criminal investigation**. Their role in presenting **fraudulent claims** constitutes **obstruction of justice** and further supports their **disqualification**.

### 5     Breach of Ethical Standards under Maryland Law

232     Under **Maryland's Rules of Professional Conduct**, attorneys must act in a manner that upholds the integrity of the legal process. **Miles & Stockbridge** failed to do so by facilitating a lawsuit based on **perjury**, **fraud**, and **misrepresentation**. The court should refer **Miles & Stockbridge** for an **ethical review** by the **Maryland State Bar** to determine the appropriate level of **disciplinary action**.

## 6    Disqualification to Preserve Judicial Integrity

233    The court has a duty to maintain the integrity of the judicial system. Allowing **Miles &**
**Stockbridge** to continue as counsel in this matter would further compromise the fairness and
transparency of these proceedings. Their **disqualification** is essential to ensuring that the
defendant receives a fair trial and that the judicial process is not further abused by their **bad-**
**faith actions**.

## DISQUALIFICATION OF MILES & STOCKBRIDGE IS NECESSARY

234    The facts overwhelmingly show that **Miles & Stockbridge** have breached their ethical
duties and engaged in **fraudulent litigation practices**. Their involvement in **perjury, witness**
**tampering**, and the filing of **frivolous claims** disqualifies them from continuing as counsel for
**Ohana Growth Partners LLC**. The court must act decisively to:

1.    **Disqualify Miles & Stockbridge** as counsel for **Ohana Growth Partners LLC**.

2.    **Refer the firm for ethical review** by the **Maryland State Bar**.

3.    **Waive attorney-client privilege** to allow for the full discovery of their
participation in the **fraudulent conduct**.

4.    **Refer for criminal investigation** regarding **perjury, witness tampering**, and
**obstruction of justice**.

235    **Disqualification** is not only justified but essential to preserving the integrity of these
proceedings and ensuring that justice is served.

## C    Motion for A Better Maryland with Reciprocal Relief

236    **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**, have engaged in a baseless lawsuit rooted in **fraud**, **perjury**, and **deliberate misrepresentation**. Despite the clear evidence that **Ohana** already had administrative access to the systems in question—evidence confirmed through **David Levett's testimony**—they falsely claimed that **Ryan Dillon-Capps** was non-compliant. These fraudulent claims were not brought in pursuit of justice but were aimed at **weaponizing the court system** to financially cripple **Dillon-Capps** in retaliation for his lawful actions, including exercising his rights under **FMLA** and **ADA**.

237    Furthermore, **Ohana** and their counsel sought to impose severe financial penalties on **Dillon-Capps**, demanding daily fines of **$2,500 per day** for alleged non-compliance, knowing full well that their claims were fabricated. This blatant attempt to manipulate the judicial process for personal and retaliatory gain demands **reciprocal relief**—imposing on **Ohana** the very penalties and costs they sought to unjustly inflict on **Dillon-Capps**.

1    Reciprocal Penalty of $2,500 Per Day Per Person for 13 Key Individuals

238    **Ohana** initially sought to impose a **$2,500 daily penalty** on **Dillon-Capps** based on false claims of non-compliance and obstructed access. Given that these accusations have been thoroughly debunked by the facts, it is both equitable and just that the same **$2,500 daily penalty** be imposed on **Ohana** for each of the 13 individuals involved in advancing these fraudulent claims.

239    The following individuals played direct roles in perpetuating this fraudulent litigation and should each be subject to the **$2,500 per day penalty**:

1. Glenn Norris
2. Victor Brick
3. Richard Hartman

4. Justin Drummond
5. Ryan Brooks
6. David Levett
7. Randall Romes
8. Robert Brennen
9. Steven Frenkil
10. Holly Butler
11. Kim Edwards
12. Jessica Duvall
13. Victoria Klein

240    For each day since the **false claims** were filed, these individuals should collectively bear

the **$2,500 daily penalty** that they sought to unjustly impose on **Dillon-Capps**. The **financial**

**burden** they attempted to inflict through procedural abuse and lies should now be **reciprocally**

**applied** to them.

2    Reciprocal Relief for All of Ohana and Miles & Stockbridge's Legal Costs

241    In addition to the penalties, **Ohana** and **Miles & Stockbridge** sought to use litigation as a

weapon of **financial destruction**, making unjust demands for **legal fees**, **costs**, and **fines** based

on fabricated claims. These costs were not sought to remedy legitimate harm but to punish

**Dillon-Capps** for exercising his legal rights. As such, the same **reciprocal relief** should now

apply to **Ohana** and their counsel.

242    The court should impose reciprocal financial liability on **Ohana** and **Miles &**

**Stockbridge** for:

1.    All **legal fees** and **costs** they sought to recover from **Dillon-Capps**, despite the

fraudulent basis of their lawsuit.

2.    The **full legal expenses** of **Miles & Stockbridge**, billed while advancing a

fabricated case, should now be borne entirely by **Ohana**.

243    Under **Deleon Enterprises, Inc. v. Zaino**, Maryland law permits the recovery of attorney's fees when litigation is pursued in bad faith. In this case, **Ohana** and their counsel sought **unjust enrichment** through a lawsuit based on false premises. Therefore, they should be held financially responsible for all reciprocal costs, including their own counsel's fees, which were incurred while advancing fraudulent and retaliatory claims.

244    **Reciprocal relief** is the **most equitable remedy**. Since **Ohana** falsely pursued litigation and demanded penalties grounded in **falsehoods**, they should bear the **total cost** of all legal expenses they sought to impose on **Dillon-Capps**. This includes covering their own counsel's fees, as these were incurred to further fraudulent claims.

### 3    Establishing a Critical Precedent for Maryland

245    Granting **reciprocal relief** in this case serves a crucial public interest by establishing a **precedent** for all litigants in **Maryland**. When bad-faith litigants attempt to **misuse the court system** to harass or financially harm others, they should face **equivalent penalties**. The court must be empowered to **reciprocate the costs and penalties** that bad-faith litigants seek to impose on others.

**By granting reciprocal relief, this court will:**

1.    **Protect the integrity of Maryland's judicial system**, signaling that Maryland courts will not tolerate parties who file **frivolous lawsuits** based on lies and procedural gamesmanship.

2.    **Deter future misuse** of the court system by ensuring that litigants who abuse the legal process face the **same financial and legal burdens** they sought to impose on others.

3.    **Promote fairness and justice** by ensuring that no party can exploit the legal process for **retaliatory purposes** without being held accountable for the harm they cause.

## 4    Public Policy Justifications for Reciprocal Relief

246    Ensuring Judicial Integrity and Deterring Frivolous Litigation

The integrity of the judicial system depends on the court's ability to distinguish between legitimate claims and those brought for improper purposes. By granting reciprocal relief, this court will establish a critical precedent that sends a strong message to future litigants: Fraudulent lawsuits brought in bad faith will result in significant financial consequences.

1.    **Judicial resources are finite.** If courts allow **frivolous litigation** to proceed without strong sanctions, it creates a **ripple effect** that not only harms the immediate parties but also **clogs the legal system**, delaying justice for those with legitimate claims. **Reciprocal penalties** of $2,500 per day per person will dissuade future litigants from misusing the judicial process as a weapon.

247    **Preserving Access to Justice for All Litigants**

Frivolous litigation not only burdens the courts but also **prevents access to justice** for other parties with valid claims. By imposing significant **financial penalties** on **Ohana** and their counsel, this court will protect the **accessibility of the courts**, ensuring that individuals and businesses are not dissuaded from pursuing **legitimate claims** due to fear of **retaliatory lawsuits**.

1.    **Garay v. Overholtzer** demonstrates that when litigation is used for **harassment or retaliation**, sanctions are necessary to **restore fairness**. In this case, **Dillon-Capps** was targeted for exercising his **FMLA** and **ADA** rights. Reciprocal relief will not only

compensate him but also **restore equity** by holding those who weaponized the courts

accountable.

248    Establishing Maryland as a Forum Free from Legal System Abuse

The court's decision here has the power to set an important precedent for Maryland. By granting

reciprocal relief, this court will signal that Maryland courts are not venues for frivolous or

retaliatory litigation. This will deter future bad actors and protect Maryland's legal environment,

ensuring it remains a forum for legitimate disputes.

## RECIPROCAL RELIEF IS THE ONLY JUST REMEDY

249    The actions of **Ohana Growth Partners LLC** and their counsel, **Miles & Stockbridge**,

have been shown to be **fraudulent** and **unjustifiable**. Their demands for **$2,500 daily penalties**

and recovery of **legal fees** were based on **fabricated claims** designed to punish **Dillon-Capps**

for defending his rights. The reciprocal application of these penalties and costs is **not only**

**equitable** but **necessary** to **restore balance** and **protect the judicial system** from further abuse.

**Accordingly, this court should:**

1.    Impose daily penalties of $2,500 per day per person on each of the 13 individuals

involved in Ohana's fraudulent litigation, retroactive to the date of the initial claims.

2.    Require Ohana Growth Partners LLC and Miles & Stockbridge to bear all legal

costs and fees that they sought to impose on Dillon-Capps, ensuring that the financial

burden of their bad-faith litigation is fully reciprocated.

3.    Establish a precedent for Maryland courts that will deter future litigants from

using the legal system as a weapon of harassment and financial harm, ensuring that

parties acting in bad faith face severe reciprocal consequences.

250     This **reciprocal relief** will not only compensate for the harm caused but will safeguard **Maryland's judicial system** from future abuse.

### D    Motion to Impose Sanctions not Sanction Fraudulent Lawsuits

251     List of Potential Causes for Sanctions Against Ohana Growth Partners and Miles & Stockbridge:

### 1    Fraud and Perjury

252     Ohana Growth Partners, LLC, and their representatives, Richard Hartman and Justin Drummond, deliberately provided false testimony under oath regarding system access and compliance. These falsehoods were made to intentionally mislead the court, constituting perjury in violation of Maryland's perjury statute (Md. Code Ann., Crim. Law § 9-101).

### 2    Abuse of Process

253     The lawsuit filed by Ohana Growth Partners, LLC was not intended to resolve a legitimate legal dispute but instead was wielded as a tool for harassment and delay. The repeated filing of meritless claims, designed to impose financial and emotional burdens on the defendant, constitutes clear abuse of process.

### 3    Bad-Faith Litigation

254     For over four months, Ohana Growth Partners engaged in bad-faith litigation by filing frivolous motions and advancing fraudulent claims. These actions were pursued with the intent to retaliate against the defendant, in violation of Federal Rule 11 and Maryland Rule 1-341, both of which prohibit filings unsupported by proper legal and factual grounds.

## 4    Obstruction of Evidence

255    Miles & Stockbridge deliberately obstructed the defendant's access to critical evidence,

particularly the transcript from the June 26, 2024 hearing. By imposing improper conditions on

its release, they prevented the defendant from obtaining key documents essential to his defense,

violating Rule 3.4(a) on fairness in evidence.

## 5    Unclean Hands Doctrine

256    Richard Hartman's explicit admission in his affidavit of violating FMLA rights

irrevocably disqualifies Ohana Growth Partners from seeking any form of equitable relief. The

unclean hands doctrine bars any party from obtaining relief when their conduct in connection

with the case has been fraudulent or unethical.

## 6    Conspiracy to Commit Fraud

257    Ohana Growth Partners, LLC, and their counsel, Miles & Stockbridge, conspired to

submit false claims and misrepresentations in court. They jointly created and relied upon

fraudulent documentation to support a meritless lawsuit. This collaboration to knowingly present

false information is a violation of ethical and legal standards, fully warranting sanctions.

## 7    Obstruction of Justice

258    Ohana Growth Partners and their counsel deliberately obstructed justice by withholding

key evidence and manipulating witness testimony. Their actions, including potential witness

tampering and refusal to release crucial transcripts, violated the integrity of the judicial process

and impaired the defendant's ability to mount an effective defense.

## 8    False Imprisonment (Attempted)

259    Ohana Growth Partners wrongfully attempted to use judicial sanctions to incarcerate Ryan Dillon-Capps by pursuing fraudulent claims. The Second Show Cause Order, which threatened imprisonment without legal merit, constitutes a clear attempt at false imprisonment under the guise of judicial authority.

## 9    Fraudulent Lawsuit

260    The lawsuit initiated by Ohana Growth Partners was entirely fraudulent, relying on false allegations that Dillon-Capps obstructed access to critical systems. David Levett's affidavit unequivocally demonstrated that Ohana had full access to these systems, making their claims baseless and fraudulent. This blatant misuse of the judicial system demands sanctions for filing a fraudulent lawsuit.

## 10    Vexatious Litigation

261    Ohana Growth Partners engaged in a sustained pattern of vexatious litigation, filing frivolous motions and baseless claims with the sole intent of harassing and financially crippling Ryan Dillon-Capps. This conduct reflects a gross misuse of the legal system, fully justifying sanctions to deter such abuse in the future.

## 11    Reckless Endangerment and Negligence

262    Ohana Growth Partners, LLC, and Miles & Stockbridge recklessly exposed Ryan Dillon-Capps to significant emotional, financial, and physical harm by pursuing a baseless lawsuit and engaging in continuous bad-faith litigation. Their reckless disregard for the truth and the consequences of their actions demonstrates negligence and reckless endangerment, fully justifying sanctions.

## 12    Legal Malpractice

263    Miles & Stockbridge committed legal malpractice by knowingly filing and pursuing

frivolous claims on behalf of Ohana Growth Partners. Their conduct violated their professional

duty to ensure that their legal representations were truthful and factually supported. This breach

of ethical obligations under the Maryland Rules of Professional Conduct demands sanctions,

including potential disqualification.

## 13    Estoppel

264    Ohana Growth Partners engaged in conduct that prevented Dillon-Capps from fulfilling

his legal obligations while accusing him of non-compliance. This created a legal estoppel,

barring them from claiming any failure on Dillon-Capps' part, as they intentionally obstructed

his ability to comply. This manipulation of the legal process further justifies sanctions.

## 14    Intentional Infliction of Emotional Distress (IIED)

265    The malicious and retaliatory tactics employed by Ohana Growth Partners and Miles &

Stockbridge caused severe emotional distress to Ryan Dillon-Capps. Their deliberate misuse of

the legal system, including false imprisonment threats and bad-faith litigation, justifies punitive

sanctions under the claim of Intentional Infliction of Emotional Distress (IIED).

## 15    Judicial Economy

266    Ohana's continuous misuse of the court system has wasted valuable judicial resources

and significantly delayed justice. Their filing of meritless claims and engagement in bad-faith

litigation has imposed unnecessary strain on the court. Sanctions are necessary to preserve

judicial economy and prevent further waste of resources.

### 16    Witness Tampering

267    Ohana Growth Partners and Miles & Stockbridge are implicated in potential witness

tampering, specifically regarding the manipulation of Randal Romes' affidavit. While the

evidence is circumstantial, it suggests that Ohana may have influenced or altered testimony to

support their false claims. Witness tampering is a serious violation that undermines the integrity

of the judicial process and justifies severe sanctions if substantiated.

### 17    Criminal Violations – Perjury and Fraud

268    In addition to civil misconduct, Ohana Growth Partners and its representatives committed

potential criminal violations, including perjury and fraud. By submitting false affidavits and

knowingly advancing fraudulent claims, they violated Maryland criminal statutes, warranting

referral for criminal investigation. These violations reinforce the need for significant sanctions in

the current civil proceedings.

### 18    Contempt of Court

269    Ohana Growth Partners and their counsel engaged in repeated contempt of court by

disobeying court orders and continuing to file frivolous motions and fraudulent claims. Their

blatant disregard for the court's authority and the judicial process constitutes contempt, justifying

sanctions, including fines or imprisonment, to halt their ongoing misconduct.

### 19    Failure to State a Valid Claim – Rule 12(b)(6)

270    Ohana Growth Partners failed to state a valid legal claim, as their allegations were

grounded in falsehoods. The claim regarding lack of access to systems was conclusively

disproven by the affidavit of David Levett. Without a valid legal basis, their lawsuit should have

been dismissed at an early stage, and their pursuit of this baseless case warrants sanctions under Rule 12(b)(6).

## 20    Violation of the Supremacy Clause

271    Ohana Growth Partners' admitted violation of the Family and Medical Leave Act (FMLA) directly undermines their legal standing. Federal law, as established by the Supremacy Clause of the U.S. Constitution, preempts state actions that conflict with federal statutes. Ohana's violation of federal law bars them from seeking equitable relief, fully justifying sanctions.

## 21    Malicious and Bad-Faith Defamation Claims

272    Ohana Growth Partners and their representatives made defamatory statements during litigation, falsely accusing Ryan Dillon-Capps of misconduct. These defamatory claims were made in bad faith as part of their retaliatory strategy, damaging Dillon-Capps' reputation. This malicious defamation further justifies sanctions.

## 22    False Imprisonment (Attempted)

273    Ohana Growth Partners attempted to falsely imprison Dillon-Capps by pursuing baseless judicial orders, including the Second Show Cause Order, which threatened incarceration based on fraudulent claims. This misuse of judicial authority for wrongful purposes constitutes an attempted false imprisonment and warrants severe sanctions.

## 23    Vexatious Litigation – Retaliatory in Nature

274    The entire lawsuit filed by Ohana Growth Partners was retaliatory in nature, aimed at harassing Dillon-Capps for exposing their internal misconduct, including violations of the Family and Medical Leave Act (FMLA). This pattern of vexatious litigation was intended to

punish rather than resolve legitimate disputes, fully justifying sanctions and dismissal with prejudice.

## 24    Failure of Legal Obligations – PCI DSS Compliance

275    Ohana Growth Partners failed to meet their legal obligations, including compliance with PCI DSS standards. Affidavit evidence shows that their failure to secure sensitive data and adhere to legal standards was central to their retaliatory actions against Dillon-Capps. This reckless disregard for legal obligations justifies sanctions.

## 25    Breach of Contract and Fraudulent Contract Claims

276    Ohana's lawsuit is built on fraudulent contract claims. Their reliance on incomplete or misrepresented contracts, coupled with their bad-faith litigation, constitutes a breach of contract under Maryland law. These fraudulent contract claims, pursued in bad faith, warrant sanctions and dismissal of their case.

### E    Motion to Vacatur the Temporary Restraining Order

277    The Temporary Restraining Order (TRO) and Preliminary Injunction obtained by Ohana Growth Partners, LLC were secured through fraudulent claims, perjured statements, and bad-faith litigation. The basis of their claims was entirely fraudulent, as proven by David Levett's affidavit, which clearly disproves Ohana's central allegations, particularly regarding system access. Furthermore, Ohana's conduct—including Richard Hartman's admission of violating the Family and Medical Leave Act (FMLA)—bars them from seeking any equitable relief under the doctrine of unclean hands.

278    Ohana's bad-faith conduct, marked by FMLA violations and compounded by perjury and obstruction of evidence, disqualifies them from maintaining any injunctive relief. The wrongful

imposition of judicial restraints on Dillon-Capps' rights and business activities, based on

knowingly false claims and a fraudulent foundation, compels the immediate vacatur of the TRO

and Preliminary Injunction. To allow these fraudulently obtained orders to stand would be a

miscarriage of justice and a blatant abuse of the judicial process.

**279    Therefore, the Temporary Restraining Order and Preliminary Injunction must be
vacated in their entirety, with prejudice.**

280    Ohana's fraudulent actions in securing the TRO, through perjured statements and

deliberate misrepresentations, alongside their disqualification from relief due to FMLA

violations, fully justify vacatur. The evidence provided by Daniel Levett not only exposes the

baselessness of their claims but confirms that the TRO was unjustly obtained through fraud and

false testimony.

281    The court must acknowledge both Ohana's violation of FMLA and their reliance on

fraudulent claims and perjured statements, invalidating their entitlement to any injunctive relief.

To preserve the integrity of the judicial process, the TRO should be vacated, with clear

recognition of the fraudulent and unethical means by which it was secured.

**282    Accordingly, the Temporary Restraining Order should be vacated immediately,
with the court explicitly noting that it was obtained through perjured statements,
misrepresentation, and barred by unclean hands due to FMLA violations.**

### F    Motion for Injunction to Prevent Future Abuse of Court Process

283    Given the egregious and sustained abuse of the judicial process by Ohana Growth

Partners, LLC, and Miles & Stockbridge, it is necessary to issue an injunction that goes beyond

this case alone. Ohana and their counsel have engaged in vexatious litigation, knowingly filed

fraudulent claims, and acted in bad faith, all with the intent to harass and harm Ryan Dillon-Capps. Their conduct has not only undermined this specific case but poses an ongoing threat to the judicial system if left unchecked.

284    Therefore, the court should issue an injunction barring Ohana Growth Partners, LLC, and Miles & Stockbridge from filing any further claims or motions not only in this case but also in any future litigation involving Ryan Dillon-Capps, without prior judicial approval.

**This injunction should extend to the following:**

1.    **In this case**: No further claims or motions may be filed without explicit court approval, to prevent continued vexatious filings.

2.    **In any future litigation against Ryan Dillon-Capps**: Ohana and their counsel must seek judicial approval before filing any new lawsuits or motions involving Dillon-Capps to prevent harassment through legal abuse.

3.    **In any representation involving litigation with Dillon-Capps**: Should Miles & Stockbridge or any other representative of Ohana pursue litigation related to Dillon-Capps, judicial oversight is required to ensure the integrity of the court system.

4.    **For all new lawsuits filed by Ohana**: Given the extent of the misconduct in this case, judicial approval should be required for Ohana Growth Partners to file any new lawsuits against any party, to prevent further misuse of the court system.

285    This expanded injunction is necessary to protect both Dillon-Capps and the broader judicial system from future abuse. Ohana and their counsel have demonstrated a pattern of bad-faith litigation, perjury, and fraudulent conduct, justifying this broad preventative measure.

Without such judicial oversight, they pose a serious risk of continuing their vexatious and abusive practices.

286    Accordingly, the court should issue a broad injunction requiring judicial approval before Ohana Growth Partners, LLC, and Miles & Stockbridge can file any further legal actions— whether in this case, in future litigation involving Ryan Dillon-Capps, or in any new lawsuits they seek to initiate.

### G    Referral for Criminal & Ethical Investigation

287    Based on a comprehensive review of the document and relevant Maryland criminal statutes, here is a **comprehensive list of potential criminal violations** that could be referred for investigation based on the conduct of Ohana Growth Partners, LLC, their representatives (including Richard Hartman, Glenn Norris, Victor Brick, and Justin Drummond), and their counsel:

### 1    Perjury (Md. Code Ann., Crim. Law § 9-101)

288    **Key Violations**: Ohana representatives, particularly Richard Hartman and Justin Drummond, provided false statements under oath regarding system access and compliance. These knowingly false statements amount to perjury.

### 2    Fraud (Md. Code Ann., Crim. Law § 8-101)

289    **Key Violations**: Ohana Growth Partners engaged in fraudulent conduct by knowingly filing false claims in court, including fabricating allegations about the defendant obstructing access to critical systems. Their intent to mislead the court and gain an unjust advantage makes this a clear case of fraud.

3    Witness Tampering (Md. Code Ann., Crim. Law § 9-305)

290    **Key Violations**: Evidence suggests that Ohana, through its representatives or counsel, manipulated or influenced Randal Romes' affidavit to support their false claims. This constitutes witness tampering, as it involves an attempt to obstruct the presentation of truthful testimony.

4    Obstruction of Justice (Md. Code Ann., Crim. Law § 9-306)

291    **Key Violations**: By withholding critical evidence, particularly the transcript from the June 26, 2024 hearing, and engaging in misleading actions to block discovery efforts, Ohana and their counsel actively obstructed justice, hindering the defendant's ability to defend himself effectively.

5    False Imprisonment (Md. Code Ann., Crim. Law § 3-701)

**Key Violations**: Ohana's efforts to pursue baseless judicial sanctions that included threats of incarceration against the defendant through fraudulent claims amount to attempted false imprisonment under Maryland law.

6    Conspiracy to Commit Fraud (Md. Code Ann., Crim. Law § 8-107)

292    **Key Violations**: Ohana Growth Partners, along with their legal counsel, conspired to create and submit false claims, misrepresentations, and fraudulent documentation to the court. This conspiracy involved multiple parties working together to knowingly deceive the judicial system.

7    Computer Fraud – Exceeding Authorized Access (Md. Code Ann., Crim. Law § 7-302)

293    **Key Violations**: There is evidence that Ohana and its agents engaged in unauthorized access or manipulation of computer systems, violating data security protocols and state laws.

This violation, in conjunction with their other actions, reinforces the need for criminal investigation.

## 8    Deceptive Trade Practices – Misrepresentation of Compliance (Md. Code Ann., Com. Law § 13-301(9))

294    **Key Violations**: Ohana falsely represented their compliance with PCI DSS and other legal standards while engaging in practices that violated those standards. This constitutes a deceptive trade practice, designed to mislead both the court and opposing parties.

## 9    FMLA Violations (29 U.S.C. § 2615)

295    **Key Violations**: Ohana admitted to violating the Family and Medical Leave Act (FMLA), constituting a federal offense. This violation not only impacts civil liability but further disqualifies them from equitable relief under the unclean hands doctrine.

## 10    Retaliation (29 U.S.C. § 2615(a)(2))

296    **Key Violations**: Ohana's litigation against Dillon-Capps, including the false claims and threats of legal action, was in retaliation for his exercise of rights under the FMLA. Such retaliatory conduct is prohibited under federal law and warrants investigation.

## 11    Forgery (Md. Code Ann., Crim. Law § 8-601)

297    **Key Violations**: If any documents submitted to the court were falsified, including affidavits or other official filings, this could constitute forgery. The manipulation of evidence or documents to mislead the court would qualify as a violation of forgery statutes.

### 12    Perverting the Course of Justice (Obstruction of Legal Process) (Md. Code Ann., Crim. Law § 9-306)

298    **Key Violations**: Beyond simple obstruction, Ohana's actions—including submitting

fraudulent claims, manipulating evidence, and withholding documents—can be viewed as an

attempt to pervert the course of justice by corrupting legal proceedings and misleading the court.

### 13    Submission of False Documents to the Court (Md. Code Ann., Crim. Law § 8-606)

299    **Key Violations**: Ohana Growth Partners, through their legal counsel, may have

submitted false or fraudulent documents to the court as part of their litigation strategy. This

includes any forged or knowingly false affidavits, contracts, or compliance documents.

### 14    Fraudulent Misrepresentation (Md. Code Ann., Crim. Law § 8-103)

300    **Key Violations**: Ohana repeatedly made false statements regarding Dillon-Capps'

conduct, system access, and other crucial matters to deceive both the court and third parties, such

as service providers or technical experts. This pattern of fraudulent misrepresentation reinforces

their criminal liability.

### 15    Coercion (Md. Code Ann., Crim. Law § 3-701 et seq.)

301    **Key Violations**: If Ohana or their representatives used threats of legal action or

incarceration (through false claims) to coerce Dillon-Capps into compliance with unlawful

demands, it could constitute coercion, especially if these threats were used to force actions that

violate his rights.

### 16    Defamation (Md. Code Ann., Crim. Law § 10-402)

302    **Key Violations**: In pursuing their fraudulent claims, Ohana made defamatory statements about Dillon-Capps' professional conduct and integrity. If these false allegations were knowingly made to harm his reputation, both civil and criminal defamation claims could be pursued.

### 17    Malicious Prosecution (Civil, but with Criminal Implications)

303    **Key Violations**: Ohana's litigation was based on false claims, pursued with the intent to harm Dillon-Capps rather than resolve legitimate disputes. While traditionally a civil claim, in cases of malicious prosecution rooted in fraudulent or criminal behavior, criminal penalties may also be sought.

### 18    Unlawful Retaliation (29 U.S.C. § 215(a)(3) - FLSA Retaliation)

304    **Key Violations**: Besides violating the FMLA, Ohana Growth Partners may have violated the Fair Labor Standards Act (FLSA) if they engaged in retaliation for asserting legal rights regarding working conditions, including time off or workplace complaints. This falls under unlawful retaliation against an employee for engaging in protected activities.

### 19    Criminal Conspiracy (Md. Code Ann., Crim. Law § 1-202)

305    **Key Violations**: If Ohana Growth Partners, Miles & Stockbridge, and their representatives worked together to fabricate evidence, coordinate perjury, or interfere with legal proceedings, this could constitute criminal conspiracy. Criminal conspiracy exists when two or more people agree to commit an unlawful act and take steps toward completing it.

20    Subornation of Perjury (Md. Code Ann., Crim. Law § 9-102)

306    **Key Violations**: This offense occurs when one party induces another to commit perjury.

If Ohana's legal counsel or representatives encouraged others, such as witnesses or employees,

to provide false testimony, this would constitute subornation of perjury.

21    Fraudulent Use of Legal Process (Md. Code Ann., Crim. Law § 9-302)

307    **Key Violations**: The misuse of judicial processes for improper purposes, such as

harassing or harming Dillon-Capps, could fall under this statute. Ohana's repeated filing of

fraudulent claims and requests for judicial sanctions with no legitimate basis may violate this

statute.

22    Extortion (Md. Code Ann., Crim. Law § 3-701 et seq.)

308    **Key Violations**: If Ohana's actions or threats—such as their attempts to use false claims

to force Dillon-Capps into financial harm, a settlement, or cooperation—were intended to

wrongfully obtain money, property, or services, they may have committed extortion. The use of

legal threats based on fraudulent premises can constitute extortion if done to obtain an unfair

advantage.

23    False Pretenses (Md. Code Ann., Crim. Law § 8-103)

309    **Key Violations**: Ohana Growth Partners may have violated this statute by obtaining court

orders or judicial actions under false pretenses. Their fraudulent representations to the court

about system access and Dillon-Capps' conduct may fit the legal definition of false pretenses.

24    Attempt to Obtain Property by Deception (Md. Code Ann., Crim. Law § 8-301)

310    **Key Violations**: Ohana's attempts to extract legal fees, penalties, or settlements from

Dillon-Capps based on fraudulent legal claims may qualify as an attempt to obtain property by

deception. If they sought financial compensation or other benefits through deception, this offense would apply.

### 25    Contempt of Court (Inherent Judicial Power)

311    **Key Violations**: Though not necessarily a criminal statute, contempt of court can be pursued if Ohana and its counsel disobeyed court orders, violated procedural rules, or engaged in conduct that undermined the judicial process. This includes failure to comply with discovery obligations, obstructing legal proceedings, or defying court instructions.

### 26    Racketeering (Potential Federal RICO Violation)

312    **Key Violations**: If Ohana's fraudulent actions and use of the court system represent a broader pattern of unlawful activity, this could potentially fall under the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1961). Although typically used in organized crime cases, RICO can apply to businesses or legal entities engaged in an ongoing pattern of fraudulent behavior, including filing meritless lawsuits as part of a scheme to defraud.

### 27    Obstruction of Federal Statutory Rights (18 U.S.C. § 245)

313    **Key Violations**: Ohana's retaliation and obstruction of Dillon-Capps' rights under federal laws like the FMLA and potentially the Americans with Disabilities Act (ADA) could be seen as an obstruction of federally protected rights, triggering criminal liability under this statute.

### 28    Civil Rights Violations (42 U.S.C. § 1983)

314    **Key Violations**: If Ohana, acting under color of law, deprived Dillon-Capps of his federally protected rights (such as retaliation for taking FMLA leave), there could be civil rights claims that also involve potential criminal investigations, especially if this conduct was egregious or retaliatory in nature.

29    Intimidation or Coercion to Prevent Testimony (Md. Code Ann., Crim. Law § 9-303)

315    **Key Violations**: If there was any attempt to intimidate, coerce, or otherwise interfere with witnesses, including attempts to prevent testimony or cooperation with legal proceedings, this could qualify as a criminal offense under Maryland law.

30    Intentionally Withholding or Destroying Evidence (Spoliation of Evidence)

316    **Key Violations**: If Ohana or their counsel deliberately withheld or destroyed critical evidence, including emails, transcripts, or documents relevant to the discovery process, this could be pursued as evidence tampering or spoliation of evidence, which may have criminal implications.

31    Malicious Use of Process (Md. Code Ann., Crim. Law § 9-306)

317    **Key Violations**: Ohana's intent in filing this lawsuit appears to be based on retaliation, fraud, and harassment rather than a legitimate claim. Maryland recognizes malicious use of legal process when a party knowingly uses legal proceedings for improper purposes, causing harm to another party.

32    Civil Conspiracy

318    **Key Violations**: While this is often a civil claim, Ohana Growth Partners and their counsel, Miles & Stockbridge, could be liable for civil conspiracy if they worked together to commit wrongful acts such as perjury, fraud, or witness tampering. This could also be the basis for sanctions or disqualification of counsel. Criminal conspiracy (addressed earlier) could be pursued if criminal intent is proven, but the civil counterpart reinforces the coordinated effort to abuse legal proceedings.

### 33    Fraudulent Inducement

319    **Key Violations**: If Ohana Growth Partners induced Dillon-Capps or third parties into

agreements, settlements, or actions based on fraudulent claims or misrepresentations, this could

constitute fraudulent inducement. This may apply to any contracts or negotiations affected by

their false representations.

### 34    Failure to Maintain Proper Recordkeeping (PCI DSS Violations)

320    **Key Violations**: If Ohana violated PCI DSS standards, particularly by failing to maintain

proper access logs, audit trails, or other records, they may be in violation of federal and state data

security laws. This can have serious legal consequences, especially in cases involving consumer

data protection, where breaches of standards can lead to both civil and criminal penalties.

### 35    Violation of Federal Trade Commission (FTC) Regulations

321    **Key Violations**: The Federal Trade Commission enforces regulations concerning

deceptive business practices and data security. If Ohana's actions involved deceptive practices

related to system access or customer data security (such as non-compliance with PCI DSS), they

could face enforcement under FTC laws, including fines and possible referral for criminal

prosecution depending on the scope of the misconduct.

### 36    Antitrust Violations (Potential Market Manipulation)

322    **Key Violations**: If Ohana's litigation or other actions were part of an attempt to

undermine Dillon-Capps' business operations or manipulate market conditions (e.g., by

disrupting competitors through litigation abuse), antitrust laws could be implicated. While this

would require evidence of broader anti-competitive behavior, it is worth considering if their

actions had any market-related motivations.  Glenn Norris, Justin Drummond, and Richard

Hartman had first hand knowledge of my business and it's intentions as they were given an opportunity to benefit from a reduced version of one of the solutions custom built for them.

37    Unauthorized Practice of Law (Md. Code Ann., Bus. Occ. & Prof. § 10-601)

323    **Key Violations**: If any of Ohana's representatives, not licensed to practice law, gave legal advice, submitted filings, or otherwise engaged in legal activities, this would constitute the unauthorized practice of law. This could be relevant if non-attorney employees of Ohana improperly took on legal roles during the proceedings.

38    Breach of Fiduciary Duty

324    **Key Violations**: If Ohana's leadership, such as Richard Hartman or Justin Drummond, owed fiduciary duties to Dillon-Capps in any prior professional capacity, and their actions violated those duties (e.g., by filing fraudulent claims or manipulating business dealings), this could form the basis for both civil and criminal liability. Breaches of fiduciary duty often tie into fraud and misrepresentation claims.

39    Retaliatory Discharge or Employment Discrimination

325    **Key Violations**: Beyond FMLA retaliation, if Dillon-Capps was terminated or discriminated against in other ways due to his exercise of legal rights (such as whistleblowing or filing workplace complaints), this could constitute retaliatory discharge or employment discrimination under state or federal laws like the Americans with Disabilities Act (ADA) or Title VII of the Civil Rights Act.

40    Federal Wire Fraud (18 U.S.C. § 1343)

326    **Key Violations**: If any fraudulent communications were transmitted across state lines via electronic means (e.g., emails, phone calls, or digital filings), this could potentially rise to the

level of federal wire fraud. Given the nature of modern litigation and communication, wire fraud is a possible avenue for federal investigation.

### 41    Mail Fraud (18 U.S.C. § 1341)

327    **Key Violations**: If any fraudulent materials were sent through the U.S. Postal Service or other mail carriers, this could fall under federal mail fraud statutes. Misleading court filings, notices, or other fraudulent communications sent by mail could trigger federal criminal charges.

### 42    Unlawful Retention of Property

328    **Key Violations**: If Ohana Growth Partners improperly retained any of Dillon-Capps' property or assets through fraudulent means, this could amount to theft by deception or conversion. This might involve company property, intellectual property, or financial assets wrongfully withheld.

### 43    Consumer Protection Violations (Md. Code Ann., Com. Law §§ 13-101 et seq.)

329    **Key Violations**: If Ohana's actions involved deceptive practices that harmed consumers or third parties, such as false claims about their compliance with industry standards or misrepresentations about their legal standing, Maryland's consumer protection laws could be implicated.

### 44    Ethical Violations for Attorneys (ABA Model Rules of Professional Conduct)

**Key Violations**: Miles & Stockbridge, as legal counsel, may face professional discipline for violating ethical rules, including engaging in fraudulent litigation, failing to disclose material facts, and obstructing justice. These violations may result in disbarment, suspension, or other disciplinary actions. The rules implicated include:

1.      Rule 3.3: Candor toward the tribunal

2.      Rule 3.4: Fairness to opposing party and counsel

3.      Rule 4.1: Truthfulness in statements to others

## 45      Fraudulent Litigation as an Ongoing Enterprise (Potential State RICO Charges)

330    **Key Violations**: If there is evidence that Ohana's fraudulent litigation is part of a larger
pattern of illegal activity, such as using litigation to extract settlements or financial gain from
multiple parties, state-level RICO (Racketeer Influenced and Corrupt Organizations Act) charges
may be applicable. These charges could apply if Ohana engaged in a pattern of fraudulent
lawsuits to achieve business gains.

## REMINDER OF THIS CAUTIONARY TALE

331    The breadth of potential criminal and civil violations highlights the serious legal and
ethical breaches committed by Ohana Growth Partners, LLC, and their counsel, Miles &
Stockbridge, including perjury, fraud, conspiracy, retaliation, and abuse of legal processes. A
thorough criminal investigation could uncover even more misconduct, especially if these actions
are indicative of a broader, systemic pattern of fraudulent activity. Furthermore, Miles &
Stockbridge, particularly Holly Drumheller Butler, Robert Brennen, and Steven Frenkil, may
face significant professional repercussions for their active role in facilitating these fraudulent
claims.

332    As I previously stated regarding Onsite Solutions, Inc., the facts and evidence presented
to Ohana, and M&S were not circumstantial they were verified with a confession in writing.
Holly Drumheller Butler, from Miles & Stockbridge, PC, was tasked with conducting a fraud
investigation but instead used it as a pretext to assist Ohana Growth Partners in fabricating a

fraudulent basis for terminating Ryan Dillon-Capps. This lawsuit emerged as a desperate attempt to cover up their missteps.

333    To date, no proper investigation into the true nature of Ohana's misconduct has been conducted. The actions of both the Plaintiff and the law firm compel further inquiry to determine whether their conduct reflects the standard operating procedure or if it reveals deeper, more pervasive wrongdoing.

<u>RESPECTFULLY SUBMITTED</u>

October 23, 2024                                    <u>/s/ Ryan Dillon-Capps</u>

                                                   Ryan Dillon-Capps (Pro Se)
                                                   Email : ryan@mxt3.com
                                                   1334 Maple Avenue
                                                   Essex, Maryland 21221
                                                   Telephone: (703) 303-1113

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 23, 2024, a copy of **Reply to Opposition to Defendant's**

**Motion for Expedited Discovery** via email to rbrennen@milesstockbridge.com and served on via

first-class mail, postage prepaid on:

      Robert S. Brennen
      Miles & Stockbridge P.C.
      100 Light Street
      Baltimore, Maryland 21202

                                                   <u>/s/Ryan Dillon-Capps</u>
                                                   Ryan Dillon-Capps (Pro Se)