# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS *Plaintiff,* vs. OHANA GROWTH PARTNERS, LLC *et al* *Defendants* | Civil Action No. **24-CV-3744** Hon. **Judge Hurson** |

## NOTICE OF URGENCY

Plaintiff, Ryan Dillon-Capps, respectfully submits this Notice of Urgency to bring to the Court's attention the immediate and time-sensitive nature of the pending Emergency Ex Parte Hearing file on December 27, 2024.

1      From my perspective, it seems that we share very similar views on the law and its application. My actions, words, and filings over the past year are something I could not have imagined undertaking just twelve months ago. However, while the content of the filings in my previous and current cases is significant, it represents a lesser concern compared to larger, highly sensitive issues that I feel compelled to inform you about as soon as possible. These matters require explanation to convey both their nature and the reasons for their sensitivity.

2      Additionally, I believe state-level negotiations should already be underway to restore and enhance public trust in a fair and equitable justice system. A 2019 study conducted in the European Union—the first of its kind—highlighted the broad-reaching consequences of a loss of trust in institutions, including the judicial system. The study revealed that such erosion of confidence contributes to rising crime rates and socioeconomic damage, underscoring the urgency of proactive measures to prevent such outcomes.

3      The severity of the harm I face should not be minimized or prolonged. When people hear the term "medical emergency," there is often a misconception that it exclusively involves calling 911 or trauma units to prevent immediate death. However, that is not an accurate understanding. A medical emergency is the necessity for intervention to prevent severe or life-threatening harm. The complexity of my situation underscores this definition. There are no studies—nor will there ever be—that can accurately calculate the likelihood of my survival, as no ethical study would knowingly expose subjects to a fatality rate that exceeds what is generally observed in critical situations, which terminate at approximately 20-40%.

4      This figure, however, does not represent a 20-40% risk today or tomorrow but reflects the cumulative risk before it can be assumed that I am no longer in danger of death from complications. Reaching such an assumption would take years. The stark reality is that there is no data to definitively determine my current risk, other than to state that it is above 20% and very likely exceeds 40%. To conceptualize this, one might imagine that I am slowly bleeding out—each minute without treatment brings me closer to an irreversible outcome. At some point, without timely intervention, the only possible result will be death.

5      I am in urgent need of immediate relief for several critical issues. First, I require the ability to hire a team to assist with litigation. Second, I must take steps to safeguard my life, including addressing medical and other essential needs. Third, it is imperative to prevent the repossession of my car. Fourth, immediate action is necessary to halt the default of other debts, as I am already two months in default. Without intervention, the situation will only worsen, further compounding the challenges I am facing.

6      I recognize that everyone, including myself, has limits. I have fulfilled my civil duties and made significant sacrifices for the betterment of others, often beyond my personal capacity.

However, it is now necessary for me to transition out of being the primary individual carrying this forward. This transition begins with an immediate ex parte hearing to take my testimony. I also respectfully request permission to notify a few observers of the hearing's time so they may attend and hear my testimony. While they will not participate in the proceedings, their presence will ensure that there is no distinction between the information provided to the court and what is accessible to these observers. This transparency is vital to maintaining trust and clarity as I take this step.

7       Here are several legal bases that support the request for ex parte testimony under seal. Courts have inherent authority to seal testimony to protect the fairness of proceedings and prevent prejudicial publicity, as established in **Sheppard v. Maxwell, 384 U.S. 333 (1966)**. This authority is particularly relevant in high-profile cases where intense media scrutiny could bias jurors or compromise impartiality, necessitating sealed proceedings to preserve the integrity of the judicial process.

8       Additionally, the **Whistleblower Protection Act** and similar statutes encourage the disclosure of wrongdoing by safeguarding the confidentiality of testimony. This protection is crucial when testimony reveals internal fraud, corruption, or illegal activities, as public disclosure could deter whistleblowers or expose them to retaliation.

9       Under **Federal Rule of Civil Procedure (FRCP) 65(b)**, courts may issue ex parte temporary restraining orders (TROs) without notice to the opposing party when immediate and irreparable harm is likely, and providing notice would exacerbate the harm. In such situations, sealing testimony is necessary to prevent harm or interference by the opposing party, ensuring that the relief sought is not undermined.

10      The handling of classified information also justifies sealed testimony in cases involving national security concerns. The **Classified Information Procedures Act (CIPA)** (18 U.S.C. App. III) governs such scenarios, authorizing courts to seal proceedings to prevent the public disclosure of sensitive government interests or classified materials.

11      Further, courts may seal testimony to protect a witness from threats, intimidation, or harm. This is consistent with the **All Writs Act (28 U.S.C. § 1651)**, **FRCP 26(c)**, and the court's inherent authority to ensure safety. Sealing testimony is particularly critical when the witness faces credible threats of physical harm or harassment, or in cases involving criminal organizations, sensitive law enforcement operations, or whistleblowers.

12      Case law further supports this approach. In **Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)**, the Supreme Court recognized the presumption of open court proceedings but allowed for exceptions when compelling interests outweigh public access. Similarly, in **Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978)**, the Court upheld the sealing of records or testimony to protect compelling interests such as confidentiality or safety. In **In re Cendant Corp., 260 F.3d 183 (3d Cir. 2001)**, the Court articulated specific factors for determining whether court documents or testimony should be sealed, emphasizing the importance of balancing competing interests.

13      These authorities collectively establish a robust legal foundation for requesting ex parte testimony under seal, ensuring that confidentiality, fairness, and safety are preserved while advancing the administration of justice.

14      **WHEREFORE,** I respectfully request that the Court:

1. Schedule an immediate ex parte hearing to take my testimony under seal, ensuring no delay in proceeding;
2. Issue rulings on any items or motions presently ready for resolution;
3. Permit a limited number of observers to attend the hearing for transparency purposes; and

4. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED

**January 3, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113