**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|   |   |
|---|---|
| RYAN DILLON-CAPPS, | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * Civil No. 24-3744-BAH |
| OHANA GROWTH PARTNERS, LLC, ET AL. | * |
| Defendants. | * |
|  | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Plaintiff Ryan Dillon-Capps ("Plaintiff") filed the above-captioned complaint pro se on December 27, 2024, along with a number of documents which have been docketed as motions including: (1) motion for leave to proceed in forma pauperis "with limited attorney designation," ECF 2; (2) "Complaint Integrated Appendix: State-Level Negotiations and Systemic Oversight Relief," ECF 3; (3) "Complaint Integrated Appendix: Interlocutory Partial Summary Judgement," ECF 4; (4) "Complaint Integrated Appendix: Conditional Permissive Joinder," ECF 5; and (5) "Complaint Integrated Appendix: Ex Parte Hearing," ECF 6.

The 29-page complaint includes as attachments the civil cover sheet, ECF 1-1, proposed summonses, ECF 1-2, proposed United States Marshal service of process forms, ECF 1-3, and the following documents: "Complaint Integrated Appendix: Pretext," ECF 1-4 (6 pages), "Complaint Integrated Appendix: Parties," ECF 1-5, "Complaint Integrated Appendix: Coverup," ECF 1-6, "Complaint Integrated Appendix: Counts," ECF 1-7; "Prefatory Appendix A: Table of Defendants," ECF 1-8, "Prefatory Appendix B: Cause of Action Table," ECF 1-9, "Memorandum of Law in Opposition to Immunity," ECF 1-10, a document which appears to be a resume of one

"Timothy A.," ECF 1-11, and what appears to be a list of exhibits, ECF 1-12. These documents, nearly all of which are typewritten by Plaintiff and are not exhibits themselves, total 265 pages. Plaintiff also filed two affidavits, ECF 7, and supplemental exhibits totaling over 2,000 pages, ECF 16. On January 3, 2025, Plaintiff filed a "Notice of Urgency," ECF 17, which appears to supplement the motion for an ex parte hearing, ECF 6.

The Court addresses each of the motions and the complaint below.

## I.    Motion to Proceed in Forma Pauperis With Limited Attorney Designation (ECF 2)

The motion to proceed in forma pauperis, to the extent it seeks to proceed without pre-payment of the filing fee, will be granted. The Court declines to designate Plaintiff a "limited attorney." First, the meaning of this designation is not clear. Second, under this Court's Local Rules, except in limited circumstances not applicable here, "only members of the Bar of this Court may appear as counsel in civil cases." Loc. R. 101.1(a).

## II.    Plaintiff Will Be Directed to File an Amended Complaint

As Plaintiff is proceeding in forma pauperis, section 1915(e)(2)(B) of 28 U.S.C. requires this Court to conduct an initial screening of this complaint and dismissal of any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020). The Court is mindful of its obligation to construe liberally a complaint filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up

questions never squarely presented"). Here, Plaintiff's complaint suffers a number of deficiencies which are described more fully below. Some of Plaintiff's claims will be dismissed, and Plaintiff will be directed to file an amended complaint that conforms with the directives herein.

In the "Complaint Integrated Appendix: Counts," Plaintiff lists twenty-two counts, most of which contain "sub-counts." *See* ECF 1-7. Plaintiff appears to number one hundred seventy-one (171) sub-counts. *See id.* at 71. The causes of action include violations of the Family and Medical Leave Act ("FMLA"), violations of the Americans with Disabilities Act ("ADA") and related employment claims, insurance fraud, constitutional violations brought under 42 U.S.C. § 1983 (for violations of the First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments), mail fraud, wire fraud, consumer protection violations under federal, Maryland, Washington, D.C., California, Washington, Tennessee, and Florida law, various conspiracy claims, and violations of the Norris-LaGuardia Act. *See generally id.*

The complaint stems from a now-closed state civil action (C-03-CV-24-002264) in the Circuit Court for Baltimore County. *See* ECF 1, at 2. From what the Court can piece together, it appears that Plaintiff's former employer, Ohana Growth Partners, LLC ("Ohana"), sought and obtained an injunction against Plaintiff relating to the employment contract. *See* ECF 1, at 2–3 ¶¶ 6 ("The lawsuit, filed on June 14, 2024, falsely stated that Ryan Dillon-Capps had refused a lawful order, and they were seeking injunctive relief because the refusal was a breach of employment agreement and a breach to duty of loyalty. Count III went so far as to say that refusal was in violation of criminal statute Md. Code Ann., Crim. Law., §7-302."); *id.* at 5 ¶ 17 (alleging that a TRO was issued on June 17, 2024, without notice to Plaintiff and that a preliminary injunction and civil contempt hearing was held soon thereafter); *id.* at 12–13 ¶ 50 (explaining that on June 14, 2024, Ohana, through counsel (Miles & Stockbridge), "filed the civil action against Ryan Dillon-

Capps seeking temporary, preliminary, and permanent injunctive relief under the pretext that the Plaintiff refused to provide Global Administrator rights to their employer"). During the pendency of that action, Plaintiff was subject to "a punitive contempt fine of $2,500 per day" and a "show cause order seeking incarceration," which Plaintiff contends is emblematic of "a deliberate pattern of misconduct" and a "systematic effort to suppress valid claims." ECF 1, at 5 ¶¶ 18–19. Plaintiff contends that the state suit was brought in retaliation for taking leave under the FMLA and that the defendants, including Ohana, Ohana employees, opposing counsel, and the court staff and judges, conspired to continue violating Plaintiff's FMLA and other rights. *See* ECF 1, at 14–17 ¶¶ 50–62; *id.* at 15, ¶ 56 (accusing defendants, including opposing counsel and state court judges, of "interfer[ing] with FMLA leave, den[ying] ADA accommodations, violat[ing] federal prohibitions on injunctive orders, def[ying] federal supremacy, violat[ing] appointment doctrine, breach[ing] consumer protection laws in Washington D.C., Maryland, Washington, California, Florida, and Tennessee, violat[ing] federal injunctive prohibitions, interfere[ing] with the Plaintiff's FMLA leave, and violat[ing] Ryan Dillon-Capps['s] 1st, 5th, 6th, 8th, 9th, 13th, and 14th Amendment rights[, and t]urning a civil lawsuit into a series of systemic human rights abuses that induced dissociative episodes and dissociative amnesia"). Plaintiff contends that the lawsuit and "the state court's continued assertion of jurisdiction over this matter was unlawful [under the Norris-LaGuardia Act], constituting a fundamental overreach." ECF 1, at 3 ¶ 8. The suit was voluntarily dismissed sometime in October or November 2024. *See* ECF 1-5, at 18 ¶ 98, at 21 ¶ 116.

Plaintiff names as defendants their former employer (Ohana), several Ohana employees and supervisors, several judges of the Circuit Court for Baltimore County, the Clerk of the Circuit Court for Baltimore County, opposing counsel in the state action, and the heads of two professional

ethics bodies. *See generally* ECF 1-5. As described below, Plaintiff will be directed to file an amended complaint that does not include the allegations over which this Court does not have jurisdiction and for which Plaintiff has not stated a claim for relief. The amended complaint should not name as defendants those who are immune from suit.

A. Quasi-Appeal of the State Action: The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars federal courts from sitting "in direct review of state court decisions." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983) (quoting *Atlantic Coast Line R. Co. v. Brotherhood. of Locomotive Engineers*, 398 U.S. 281, 296 (1970)). The following requirements must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (noting that the second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim). If applicable, the federal court lacks subject-matter jurisdiction over the federal plaintiff's claims and the claims must be dismissed. *See Feldman*, 460 U.S. at 476; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp*, 544 U.S. at 280 (2005)).

This doctrine also prohibits a district court from reviewing constitutional claims that are "inextricably intertwined" with a state court decision. *Shooting Point, LLC v. Cumming*, 368 F.3d

379, 383 (4th Cir. 2004) (citations omitted). "A federal claim is 'inextricably intertwined' with a state court decision if 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)); *see also Curley v. Adams Creek Assocs.*, 409 F. App'x 678, 680 (4th Cir. 2011) (holding that *Rooker-Feldman* precluded subject matter jurisdiction over plaintiff's claim that the state court violated her due process rights by failing to give her notice before disposing of real property owned by her); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (holding that a federal claim is "inextricably intertwined" where "in order to grant the federal . . . relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual") (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)).

In other words, *Rooker-Feldman* applies "when the federal action 'essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Davis v. Durham Mental Health Devel. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 388 (M.D.N.C. 2004) (quoting *Plyler*, 129 F.3d at 733). "[T]he key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Willner v. Frey*, 243 F. App'x 744, 747 (4th Cir. 2007) (quoting *Davani*, 434 F.3d at 718). "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). Plaintiff, of course, retains the ability to exercise their appellate rights in the

6

state court system. *See Jordahl*, 122 F.3d at 202 ("[T]he [*Rooker-Feldman*] doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals."). Even if Plaintiff did not raise these issues in the state proceeding, the Court still lacks jurisdiction to hear them now under the *Rooker-Feldman* doctrine. "[E]ven if a claim is not presented to a state court, or by inference is not ruled upon [even if presented], a plaintiff is not entitled to bring that claim in federal court if the claim was one that should have been brought in the state court." *Guess v. Board of Medical Examiners*, 967 F.2d 998, 1003 (4th Cir. 1992) (citing *Feldman*, 460 U.S. at 483 n.16); *see also Edmonds v. Clarkson*, 996 F. Supp. 541, 548 (E.D. Va.), *aff'd*, 165 F.3d 910 (4th Cir. 1998).

Plaintiff attempts to frame the factual allegations as amounting to a vast conspiracy to violate their constitutional rights orchestrated by their former employer, opposing counsel, the Circuit Court for Baltimore County, its staff and judges, and bar counsel. *See, e.g.*, ECF 1, at 16 ¶ 59 ("After County Administrative Judge Robinson Jr., Director of Investigations Bernstein, Bar Counsel Degonia II, and Judges Stringer and Mayer learned that the harm induced exceeded what the Plaintiff could recover from and without relief would function as a death sentence; The conspirators efforts focused on ensuring the Plaintiff cannot seek or obtain relief by obstructing avenues for potential redress. . . ."); *id.* at 18 ¶ 71 ("There is no question that from the moment the lawsuit was filed Ohana Growth Partners, LLC, Miles & Stockbridge, P.C., Circuit Court of Baltimore County, and Baltimore County Office of the Clerk for the Circuit Court were violating federal rights, protections, statutes, and supremacy."); *id.* at 20 ¶ 75 ("Every single piece of paper from the opposing party in litigation, every letter of every word from adjudication or magisterial decision, and every minute of every day since the commencement of action on June 14, 2024, is a

7

violation of one or more of the Plaintiff's constitutional and federal rights and protections."). However, Plaintiff essentially disputes the state court's imposition of the preliminary injunction and subsequent rulings. *See* ECF 1, at 19 ¶ 70 ("Every ruling by the circuit court judges exceeded the bounds of their judicial discretion because every ruling judge unanimously supported the employer's position in an employment dispute filed as an injunction."), *id.* ¶ 72 ("The ruling judges ruled in favor of a case without proper purpose. The court record stands as a body of evidence reflecting bias against the Plaintiff and favoritism toward the law firm and employer."); *id.* at 23 ¶ 90 ("If every filing lacks a proper purpose, then every ruling in their favor is equally without a proper purpose. This means every filing and ruling—essentially, anyone other than Ryan Dillon-Capps who has taken action in, on, or around this lawsuit—has violated one or more fundamental rights or legal principles."). Asking the Court to review those rulings violates the *Rooker-Feldman* doctrine.

Plaintiff alleges violation of their First Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights stemming from the initial TRO hearing, preliminary injunction and contempt hearings, and subsequent rulings of the state court. *See, e.g.,* ECF 1, at 5 ¶¶ 17–20. Fundamentally, Plaintiff contests the state court's granting of the preliminary injunction against them and the contempt rulings that followed. Accordingly, "[d]etermination of plaintiff's claims in [their] favor and awarding the relief [they] seek[] would necessarily require this court to find that the [state] court proceedings were conducted in an improper manner, produced an improper result, or both." *Carter v. Dep't of Health and Human Servs*, No. 18-cv-116, 2018 WL 2994818, at *4 (E.D.N.C. May 21, 2018). As such, the Court concludes that the *Rooker-Feldman* doctrine applies to the claims asserted by Plaintiff stemming from the state court rulings, and this Court lacks subject matter jurisdiction over them. *See Hairston v. Jackson,* No. 20-cv-174, 2021 WL

8

1087471, at *2 (N.D. W. Va. Mar. 22, 2021) (finding the *Rooker-Feldman* doctrine precluded the court from hearing plaintiff's claims because plaintiff asked the federal court to review and reject the family court's judgment); *Burke v. Superior Ct. of Keene, N.H.*, No. 12-cv-85, 2013 WL 319341, at *3 (E.D.N.C. Jan. 2, 2013), *report and recommendation adopted*, No. 12-cv-85, 2013 WL 323334 (E.D.N.C. Jan. 28, 2013) (dismissing complaint alleging the entry of a divorce decree and child support order without proper notice to plaintiff in light of the *Rooker–Feldman* doctrine); *Pannell v. North Carolina*, No. 23-cv-12, 2024 WL 4853311, at *5 (E.D.N.C. Nov. 6, 2024) (dismissing complaint alleging corruption and unethical behavior throughout the course of divorce proceeding in state court based on *Rooker-Feldman* doctrine); *Hinson-Gribble v. Purvis*, No. 16-cv-845, 2017 WL 9487214, at *4 (E.D.N.C. Mar. 30, 2017), *report and recommendation adopted*, No. 16-cv-845, 2017 WL 2226567 (E.D.N.C. May 22, 2017) (refusing to consider injuries allegedly resulting from improprieties in state divorce proceedings in light of *Rooker-Feldman* doctrine). "To the extent Plaintiff seeks to challenge the state court rulings or enforce such rulings, his remedy lies in the state appellate courts and not in this federal court." *See Millholland v. Abbeville Cnty*, No. 20-cv-4368, 2021 WL 260420, at *3 (D.S.C. Jan. 5, 2021) (citing *Moore v. Commonwealth of Va. Dep't of Soc. Servs.*, No. 15-cv-515, 2016 WL 775783, at *4 (E.D. Va. Feb. 25, 2016), *report and recommendation adopted*, No. 20-cv-4368, 2021 WL 252585 (D.S.C. Jan. 26, 2021).

For these reasons, the Court lacks jurisdiction over Plaintiff's claims contesting the rulings in the state action. Those claims must therefore be dismissed.

B. Judicial Immunity

Further, Plaintiff's claims against the state court judges must be dismissed under the doctrine of judicial immunity. Judges "are not liable to civil actions for their judicial acts,"

including under § 1983, "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fisher*, 13 Wall. 335, 351 (1872)); *see also Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White*, 484 U.S. 219, 226–27 (1988). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity can only be overcome if the suit is for a judge's non-judicial acts, or the judge, acting in the course of their judicial duties, "acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 357 (quoting *Bradley*, 13 Wall. at 351).

Throughout the complaint, Plaintiff asserts that the state court acted without jurisdiction because its injunction (and all subsequent rulings) violated the Norris-LaGuardia Act. *See, e.g.*, ECF 1, at 5 ¶ 20 ("The lawsuit's unlawful and jurisdictionally prohibitory nature, stemming from violations of the Norris-LaGuardia Act (NLA), voids any claim of immunity."). The Norris-LaGuardia Act "was designed primarily to protect working men in the exercise of organized, economic power, which is vital to collective bargaining." *Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R. Co.*, 353 U.S. 30, 40 (1957); *see also Boys Markets, Inc. v. Retail Clerks Union, Loc. 770*, 398 U.S. 235, 250 (1970) (explaining that the Norris-LaGuardia Act was enacted in response to a time when "federal courts generally were regarded as allies of management in its attempt to prevent the organization and strengthening of labor unions; and in this industrial struggle the injunction became a potent weapon that was wielded against the activities of labor groups"). While the Norris-La Guardia Act's applicability here is otherwise doubtful as the underlying injunction

10

does not concern organized labor, it plainly does not apply to the state court that issued the rulings. The language of the statute makes clear that it applies only to *federal* courts. *See* 29 U.S.C. § 104 (forbidding a "court of the United States" from issuing certain injunctions); *id.* § 113 ("The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia."). For this reason alone, the injunction (and subsequent rulings) did not violate the Norris-LaGuardia Act, so Plaintiff's contention that the state court acted outside its jurisdiction is without merit.

Quasi-judicial immunity also protects the Clerk of the Circuit Court for Baltimore County. "Absolute immunity 'applies to all acts of auxiliary court personnel that are basic and integral part[s] of the judicial function.'" *Jackson v. Houck,* 181 F. App'x 372, 373 (4th Cir. 2006) (quoting *Sindram v. Suda,* 986 F.2d 1459, 1461 (D.C. Cir. 1993)); *see also Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) ("[A] court clerk is generally entitled to quasi-judicial immunity." (citing *Briscoe v. LaHue,* 460 U.S. 325, 334–35 (1983))); *Jarvis v. Chasanow*, 448 F. App'x 406 (4th Cir. 2011). "This formulation 'enables the immunity to operate where the need for liability in damages is low and the need for a backstop to judicial immunity high.'" *Jackson*, 181 F. App'x at 373 (quoting *Sindram*, 986 F.2d at 1461). Plaintiff's claims against the Clerk appear to stem from the deficiency notices issued in the underlying state case. *See* ECF 1-5, at 22–24; ¶¶ 119–130. These are the kinds of quasi-judicial actions within the purview of judicial immunity. "Courts have consistently held that a 'clerk or deputy clerk's receipt and processing of a litigant's filings are part and parcel of the process of adjudicating cases.'" *Sibley v. Roberts*, 224 F. Supp. 3d 29, 37 (D.D.C. 2016) (quoting *Sibley v. United States Supreme Court*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011)), *aff'd,* 696 F. App'x 526 (D.C. Cir. 2017); *see also Reddy v. O'Connor*, 520 F. Supp. 2d 124, 130

11

(D.D.C. 2007) (finding a court clerk absolutely immune from suit where allegations included that the clerk failed to docket plaintiff's filings); *Fuller v. Harris*, 258 F. Supp. 3d 204, 207 (D.D.C. 2017) (collecting cases); *McCoy v. Berkeley Cnty. Clerk of Ct.*, No. 8:17-CV-3323-JFA-JDA, 2018 WL 8335332, at *3 (D.S.C. Sept. 21, 2018), *report and recommendation adopted*, No. 8:17-CV-3323-JFA, 2019 WL 2177418 (D.S.C. May 20, 2019).

Judicial immunity protects the judge defendants, including Judge DeSimone Jr., Judge Truffer, Judge Barranco, Judge Alexander, Budge Battista, Judge Mayer, Judge Stringer, and Judge Robinson Jr., and the Clerk of Court, defendant Julie Ensor, from this action. They must be dismissed as defendants.

C. Bar Counsel and the Maryland Commission for Judicial Disabilities

Plaintiff brings claims against Tanya C. Bernstein, Director and Investigative Counsel for the Maryland Commission on Judicial Disabilities, and Thomas DeGonia II, as Bar Counsel for the Attorney Grievance Commission. While the causes of actions asserted against each is unclear, Plaintiff appears to allege that each failed to investigate the complaints Plaintiff made against the defendant judges and counsel. *See* ECF 1-5, at 20–22, ¶¶ 105–118. However, there is no general right to an investigation of a complainant's grievances. *See Ross*, 493 F. App'x at 406 (citing *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1568 (10th Cir. 1993)) (finding frivolous claims against the Maryland Attorney Grievance Commission for failure to investigate plaintiffs' claims); *Doyle*, 998 F.2d at 1568 ("Fairly analyzed, [the plaintiff's] argument is that the Federal Constitution imposes a duty on the defendants to do various things *for* him (investigate and process his grievance, somehow help him alter state court judgments by filing a formal disciplinary complaint against a lawyer, prevent perjurious statements in court, and so on), or *to* someone else (investigate and/or commence disciplinary proceedings against a lawyer). Substantive due process

rights do not remotely relate to such claims."); *Sattler v. Johnson,* 857 F.2d 224, 227 (4th Cir. 1988) (holding that crime victims do not have a constitutional right to a criminal prosecution). Plaintiff's claims against Tanya C. Bernstein, Director and Investigative Counsel for the Maryland Commission on Judicial Disabilities, and Thomas DeGonia II, as Bar Counsel for the Attorney Grievance Commission, for failure to investigate Plaintiff's complaints must be dismissed.

D.  State of Maryland

Under the Eleventh Amendment of the United States Constitution, a state, its agencies, and its departments are immune from citizen suits in federal court absent state consent or congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Maryland has not waived such immunity for claims of constitutional violations brought under § 1983. *See Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020). In contrast, the Eleventh Amendment does not generally bar a request for prospective injunctive relief, *id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974)), but "to avoid an Eleventh Amendment bar to suit on this basis, the complaint must be lodged against a state official, and it must 'alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective,'" *id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff appears to seek to hold the State of Maryland liable for damages for the alleged violations of Plaintiff's federal statutory and constitutional rights. *See* ECF 1, at 29 ¶ 3 ("Without the State of Maryland, [the defendants] would have been unable to accomplish life threatening harm, reputational destruction, and financial ruin. Therefore, the State of Maryland should immediately pay for all monetary relief and everyone else should become a debtor to the State of Maryland."); ECF 1-5, at 25 ¶ 137 ("The widespread negligence and complicity of Maryland's judicial officers, court staff, commissions, and administrative entities reflect a systemic pattern of

corruption that ties liability directly to the State."). The claim for damages is barred by Eleventh Amendment sovereign immunity. And while Plaintiff repeatedly references "ongoing violations," these allegations are conclusory and Plaintiff's central complaints stem from past actions taken during the pendency of the state action, which has now concluded. *See, e.g.*, ECF 1-5, at 26 ¶ 145 ("The plaintiff made extensive efforts to notify Maryland officials and agencies of ongoing violations through formal submissions, email correspondence, and detailed documentation of procedural failures. Despite these efforts, filings were obstructed, ignored, or dismissed, often under pretextual deficiency notices or mootness declarations."); ECF 1-10, at 9 ¶ 6 ("The Plaintiff's claims under federal civil rights statutes and constitutional protections necessitate federal oversight to rectify ongoing harm. Injunctive relief is essential to restoring compliance with federal law and ensuring accountability for the Defendants' egregious violations."). Thus, Plaintiff has not plausibly alleged ongoing violations of federal law that can be properly redressed through prospective injunctive relief and would permit this action to proceed against the State of Maryland. Accordingly, the State of Maryland must be dismissed as a defendant.

E. Conspiracy Claims

Plaintiff alleges both federal and state conspiracy claims against all the defendants. Under federal law, the "'[Racketeer Influenced and Corrupt Organizations Act (RICO)] provides a private right of action for treble damages to [a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions." *Brown v. Registrar of Deeds for Cleveland Cnty.*, No. 1:24-CV-00283-MR-WCM, 2024 WL 4896698, at *4 (W.D.N.C. Nov. 26, 2024) (additional internal quotation marks omitted) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008)); *see also* 18 U.S.C. § 1964(c). A civil RICO claim includes: "(1) conduct [causing injury to business or property]; (2) of an enterprise; (3) through a pattern; (4) of racketeering

14

activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011)

(citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Plaintiff also appears to allege

a conspiracy in violation of 42 U.S.C. § 1985 and 18 U.S.C. § 241.  As an initial matter, 18 U.S.C.

§ 241 is a federal criminal statute that does not create a private right of action.  *See McKenzie-El*

*v. Internal Revenue Serv.*, Civ. No. ELH-19-1956, 2020 WL 902546, at *15 (D. Md. Feb. 24,

2020) ("The sections of Title 18 cited by plaintiff [18 U.S.C. §§ 241 and 242] do not create a

private right of action.  Nor do they unambiguously provide plaintiff with either a private right or

remedy."); *Turner v. Beal*, No. 18-cv-100, 2018 WL 10156104, at *2 (E.D. Va. Oct. 12, 2018),

*aff'd*, 748 F. App'x 565 (4th Cir. 2019).  The Fourth Circuit has explained:

> To state a claim for conspiracy to deny equal protection of the laws under section
> 1985(3), a plaintiff must plausibly allege:
>
>> (1) a conspiracy of two or more persons, (2) who are motivated by a specific
>> class-based, invidiously discriminatory animus to (3) deprive the plaintiff
>> of the equal enjoyment of rights secured by the law to all, (4) and which
>> results in injury to the plaintiff as (5) a consequence of an overt act
>> committed by the defendants in connection with the conspiracy.

*Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022) (quoting *Simmons v. Poe*, 47 F.3d

1370, 1376 (4th Cir. 1995)).

In Maryland, a civil conspiracy claim is "a combination of two or more persons by an

agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish

an act not in itself illegal, with the further requirement that the act or the means employed must

result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (citing

*Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)).  Maryland courts have "held

consistently that civil conspiracy 'is not a separate tort capable of independently sustaining an

award of damages in the absence of other tortious injury to the plaintiff.'" *Mackey v. Compass

Mktg., Inc.*, 892 A.2d 479, 494 (2006) (quoting *Hoffman*, 867 A.2d at 290).

Upon reviewing the complaint and all of its attachments, the Court concludes that Plaintiff's allegations that the defendants, including their former employer, state court judges and staff, opposing counsel, and professional ethics bodies conspired against plaintiff resulting in adverse rulings in the state case do not plausibly rise to the level of asserting a conspiracy claim under any of the federal statutes or state common law doctrines asserted. As such, these claims will be dismissed.

F. Remaining Claims and Amended Complaint

The Court is unable to tease apart the remaining claims against the remaining defendants. As such, Plaintiff will be directed to file an amended complaint that does not include the causes of action or defendants the Court dismisses herein. To be clear, the Court makes no finding as to the viability of any remaining claims. Plaintiff is reminded that the amended complaint will replace the current complaint. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)) (noting that amended pleadings supersede original ones except for the limited purpose of appellate review of claims dismissed in original complaint that were not included in amended complaint).

Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, each "allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court's Local Rules also require that "[a]ny pleading that states a claim for relief shall set forth each count separately and provide a clear statement of the supporting facts for each count." Loc. R. 103.1(c) (D. Md. 2023). Local Rule 103 also limits complaints to forty (40) pages in length. Loc. R. 103.1(d).

16

Accordingly, Plaintiff's amended complaint must comply with these rules and include all allegations (as limited by herein) against each of the defendants they name so that the amended complaint stands alone as the sole complaint in this case.

### III.    "Complaint Integrated Appendix: State-Level Negotiations and Systemic Oversight Relief" (ECF 3)

In this motion, Plaintiff seeks an order mandating "daily state-level negotiations between the Plaintiff and representatives of [the Maryland Attorney General's Office, the Supreme Court of Maryland, Judiciary Oversight Committees, Office of the Inspector General, and Office of the Maryland State Prosecutor]," appointing a special master to investigate the Maryland Judiciary, removing a number of state judges and clerks from their judicial appointments and positions, "[a]ssign[ing] a temporary County Administrative Judge, Count Clerk for Baltimore County, Bar Counsel, and Director of Investigations or require approval for such appointments by the Court," and "halt[ing] [all] nonemergency maintenance" of the Maryland Judicial Information Systems and direct the Maryland Judiciary to "preserve all records." ECF 3, at 3–4.

Plaintiff has not pointed the Court to any authority (and the Court seriously doubts any exists) that would permit this Court, at the request of a pro se litigant, to essentially take over the Maryland Judiciary. Nor do Plaintiff's allegations raise a plausible claim that such a drastic remedy is warranted here. Plaintiff is not the first and surely not the last litigant to come away from contentious litigation unhappy. Regardless, Plaintiff's remedy does not lie in federal oversight of the state court system.

### IV.    "Complaint Integrated Appendix: Interlocutory Partial Summary Judgement [sic]" (ECF 4)

In the "Complaint Integrated Appendix: Interlocutory Partial Summary Judgement," Plaintiff appears to take issue with the state action plaintiffs' (who are defendants here) voluntary

dismissal of the state case. *See* ECF 4, at 3 ("In conclusion, the timeline of filings and procedural actions, as detailed in Exhibit 110, conclusively demonstrates that the Defendants were provided sufficient notice and opportunity to respond. Their voluntary dismissal following months of delays and procedural stalling further emphasizes their intent to evade accountability. Based on these findings, the Court should determine that the requirements for adequate notice have been met and grant interlocutory partial summary judgment for the Plaintiff.").

While the precise relief sought in this motion from *this* Court is difficult to discern, it will be denied as premature to the extent it seeks summary judgment in this action and will be denied under the *Rooker-Feldman* doctrine to the extent it seeks to appeal the state court's dismissal of the state action and declination to rule on the motion in that case.

**V.      "Complaint Integrated Appendix: Conditional Permissive Joinder" (ECF 5)**

In the "Complaint Integrated Appendix: Conditional Permissive Joinder," Plaintiff references *Chisholm v. Ohana Growth Partners, LLC*, Civ. No. 24-1924-SAG, an FMLA action filed by a former employee of Ohana, as a fitness trainer at one of Ohana's Planet Fitness franchise locations. *See* ECF 5; *see also* ECF 1, in Civ. No. 24-1924-SAG. In that case, Judge Gallagher granted Ohana's motion to dismiss, and the case was closed on November 18, 2024. *See* ECFs 22 and 23 in Civ. No. 24-1924-SAG. Plaintiff here "requests a conditional permissive joinder of Chisholm as a co-Plaintiff, subject to the Court's approval and Chisholm's consent." ECF 5, at 3.

Federal courts uniformly do not allow pro se litigants to represent others, even their own children. *See Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005); *Wenger v. Canastota Central Sch. Dist.*, 146 F.3d 123, 124 (2d Cir. 1998), *overruled on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Devine v. Indian River Sch. Bd.*, 121 F. 3d 576, 581-82 (11th Cir. 1997), *overruled on other grounds by Winkelman*, 550 U.S. 516 (2007);

18

*Johns v. San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). This prohibition is designed to protect the interests of the litigants from being compromised by one who lacks the legal training necessary to adequately protect them. It also recognizes that lay persons are not bound by the same ethical obligations placed upon lawyers. *See Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 172 (E.D. Va. 1994).

Judge Gallagher has already dismissed Chisholm's complaint, Chisholm does not appear to know of Plaintiff's suit or request for joinder, and Plaintiff, as a pro se litigant, may not represent Chisholm. As such, Plaintiff's motion is denied.

## VI.    "Complaint Integrated Appendix: Emergency Ex Parte Hearing" (ECF 6)

The Court construes Plaintiff's "Complaint Integrated Appendix, Emergency Ex Parte Hearing," ECF 6, as supplemented by the "Notice of Urgency," ECF 17, as a motion for a temporary restraining order ("TRO"). TROs are governed by Federal Rule of Civil Procedure 65. Under that rule:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> > (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> > (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The purpose of a TRO is to 'preserve the status quo only until a preliminary injunction hearing can be held.'" *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 431 (D. Md. 2024) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999)). Preliminary injunctions and TROs are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). They are not "awarded

as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren,* 553 U.S. 674, at 689–90 (2008)). To succeed on a motion for a preliminary injunction or TRO, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cnty.,* 722 F.3d 184, 188 (4th Cir. 2013) (alteration in original) (citing *Winter,* 555 U.S. at 20).

Plaintiff's motion fails because Plaintiff has not provided the procedural prerequisites under Rule 65(b)(1). *See Womack v. Freedom Mortg.,* Civ. No. GJH-19-3182, 2019 WL 13401859, at *1 (D. Md. Nov. 13, 2019) (denying TRO for failure to comply with Fed. R. Civ. P. 65(b)(1)'s requirements); *TFFI Corp. v. Williams,* Case No. AW–13–1809, 2013 WL 6145548, at *3 (D. Md. Nov. 20, 2013) (same)). Further, the motion is devoid of any factual allegations that would support a finding that Plaintiff has met any of the four required factors, nor can the Court glean that Plaintiff has met this burden based on the allegations submitted with the other documents. As such, Plaintiff's request for an emergency ex parte hearing is denied.

## VII.    Conclusion

The Court recognizes that based on Plaintiff's submissions, the past year has undoubtedly been a stressful time in Plaintiff's life. Nothing in this opinion is intended to minimize that fact. In particular, the affidavit of Plaintiff's spouse, ECF 7-1, contains troubling details regarding Plaintiff's wellbeing, which the Court will not repeat here but has thoroughly reviewed. That affidavit also highlights many of Plaintiff's positive attributes, including that Plaintiff "has always been the person that others turn to in their darkest moments—a steady and reliable presence when no one else is there." *Id.* at 4. Separate and apart from this litigation, the Court encourages Plaintiff to seek assistance from licensed professionals, who are much better equipped than the courts to

help those in Plaintiff's situation and are better suited to assist Plaintiff in addressing the concerns

Plaintiff's spouse eloquently and empathetically describes.

For the reasons stated herein, it is this 8th day of January, 2025, by the United States

District Court for the District of Maryland, hereby ORDERED that:

(1) Plaintiff's motion to proceed in forma pauperis and for designation as limited attorney, ECF 2, is GRANTED insofar as Plaintiff seeks waiver of prepayment of the filing fee but otherwise DENIED;

(2) Plaintiff's motions at ECFs 3, 4, 5, and 6 are DENIED;

(3) Defendants Judge DeSimone Jr., Judge Truffer, Judge Barranco, Judge Alexander, Budge Battista, Judge Mayer, Judge Stringer, and Judge Robinson Jr., Julie Ensor, and the State of Maryland are DISMISSED;

(4) Plaintiff is DIRECTED to file an amended complaint that complies with the directives of this memorandum and order by January 31, 2025;

(5) Plaintiff IS FOREWARNED that failure to comply with this Order in the time specified will result in dismissal of this case without further notice; and

(6) The Clerk SHALL PROVIDE a copy of this memorandum and order to Plaintiff.


/s/

Brendan A. Hurson
United States District Judge