IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS<br><br>*Plaintiff,*<br><br>vs.<br><br>OHANA GROWTH PARTNERS, LLC *et al*<br><br>*Defendants* | Civil Action<br><br>No. **24-CV-3744**<br><br>Hon. **Judge Hurson** |

## MOTION TO RECONSIDER PARTIAL DISMISSED CLAIMS ON 2025 JANUARY 8TH

1   Plaintiff, Ryan Dillon-Capps, respectfully moves this Honorable Court to reconsider its ruling of January 8, 2025, which partially dismissed claims in this matter. In support of this motion, Plaintiff states as follows:

### INTRODUCTION

2   On January 8, 2025, this Court dismissed certain claims based on:

   1.   The Rooker-Feldman Doctrine; and

   2.   Immunity.

3   Plaintiff respectfully asserts that the Court's application of the Rooker-Feldman Doctrine was erroneous because the underlying state court matter was voluntarily dismissed without prejudice, and no final judgment on the merits was issued in that case.

4   Plaintiff further contends that state immunity has been waived due to the presence of a case and controversy when the Family and Medical Leave Act (FMLA) claim was remanded to federal court.

5      Judicial immunity has been forfeited in this case because the state court proceeded to only adjudicate the claim in violation of the Norris-LaGuardia Act and completely lacked jurisdiction.

## LEGAL STANDARD

1.      Under [Rule 59(e)/Rule 60(b)], a motion for reconsideration may be granted to correct a clear error of law or to prevent manifest injustice. In *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993), the Fourth Circuit Court of Appeals explained that reconsideration is appropriate when:

    1.1    There has been an intervening change in controlling law;

    1.2    New evidence has become available that was not previously accessible; or

    1.3    There is a need to correct a clear error of law or fact, or to prevent manifest injustice.

2.      Plaintiff respectfully submits that the dismissal of claims in this case was based on a misunderstanding of both fact and law. Specifically, the Court made the following incorrect conclusions:

3.      The *Rooker-Feldman Doctrine* applies because:

    3.1    Plaintiff lost in state court;

    3.2    The state court issued a final judgment; and

    3.3    Plaintiff seeks redress for an injury allegedly caused by the state court's judgment itself.

4.      Plaintiff was not engaged in labor negotiations on behalf of themselves and other employees.

5.      The *Norris-LaGuardia Act* applies exclusively to federal courts.

6. The federal court lacked subject matter jurisdiction.

## ARGUMENT

### A  Rooker-Feldman Does Not Apply Without a Final Judgment

6      The *Rooker-Feldman* doctrine bars federal jurisdiction only when a plaintiff seeks relief for injuries caused by a state court judgment. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), Justice Ginsburg clarified:

> "The Rooker-Feldman doctrine... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

7      The Third Circuit in *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 166 (3d Cir. 2010), further elaborated on the doctrine's limitations, emphasizing two key requirements for its application:

> "(1) the federal plaintiff must complain of an injury caused by the state-court judgment; and (2) the federal plaintiff must seek federal court review and rejection of that judgment."

8      In this case, no adverse state court judgment exists because the underlying case was voluntarily dismissed without prejudice by *Ohana Growth Partners, LLC*. This dismissal occurred after significant litigation, during which the material claims and evidence increasingly favored Plaintiff. Dillon-Capps had filed motions to compel *Ohana* to produce evidence and subsequently sought judgment when *Ohana* failed to comply.

9      Any injunctions or penalties previously issued against Plaintiff were nullified upon the voluntary dismissal. This dismissal was granted after five months of litigation, during which Plaintiff filed answers, motions, and requests for judgment.

10      Applying *Rooker-Feldman* in this context is inconsistent with Supreme Court precedent and improperly denies Plaintiff the ability to litigate claims that were never adjudicated. It is

critical to note that all claims remained unresolved as the state court disregarded Plaintiff's counterclaims and answers. The voluntary dismissal resulted in zero claims being adjudicated or finalized, precluding the application of *Rooker-Feldman*.

### B  A Remanded New Case

11      With the case dismissed without prejudice, there is nothing to "remove" from the state court. Consequently, this action constitutes a new case, leaving no prior state court rulings for the federal court to reconsider, as no binding judgment exists.

12      Prior to dismissal, Judge Barranco explicitly informed Plaintiff that he was free to file the Family and Medical Leave Act (FMLA) case in federal court.

13      In *Lapides v. Board of Regents of Univ. System of Ga.*, 535 U.S. 613, 624 (2002), the Supreme Court unanimously held that the removal of a case to federal court constitutes a voluntary invocation of the federal court's jurisdiction sufficient to waive a state's Eleventh Amendment immunity. Justice Kennedy, in concurrence, explained *that "once the States know or have reason to expect that removal will constitute a waiver, then it is easy enough to presume that an attorney authorized to represent the State can bind it to the jurisdiction of the federal court (for Eleventh Amendment purposes) by the consent to removal."* See also *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 397 (1998) (Kennedy, J., concurring).

14      Unlike *Lapides*, this case does not involve purely state-law issues. Oral arguments in *Lapides* focused on the principle of case and controversy, which also applies here. The Supreme Court's unanimous ruling in *Lapides* affirms that the removal of an FMLA claim to federal court constitutes a waiver of state immunity. A state cannot selectively choose which claims to remove; the entire case, including claims against the state, is removed as part of the case and controversy.

15   The voluntary dismissal by *Ohana Growth Partners, LLC* ensured that no claims were adjudicated, leaving a clean slate with no final or interlocutory judgments to appeal.

16   The removal of the FMLA case to federal court constitutes a voluntary waiver of state immunity. This waiver was executed by an attorney authorized to represent the state and bind it to federal jurisdiction. As recorded on page 56 of the June 26th hearing transcript, Judge Barranco explicitly stated to Plaintiff, *"You can go down to federal court and file a, if there is such a private cause of action for violation of the FMLA."* This statement is summarized on page 161 of Exhibit 100.

### C   Norris-LaGuardia Act

17   The Norris-LaGuardia Act unequivocally applies to both federal and state courts, as evidenced by its explicit language stating "or of any State" since its inception in 1932. Codified at 29 U.S.C. §§ 101–115, the Act defines a "labor dispute" under 29 U.S.C. § 113(c) as:

> "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

18   The Act applies to this case due to the definitions under 29 U.S.C. § 113(a) and (b), which state:

> "A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation."

19   In this context, the Plaintiff, Dillon-Capps, explicitly communicated a desire to negotiate the terms and conditions of employment for Darren Koritzka, Ann Pinera, and employees of Cielo IT (a vendor influenced by Ohana's actions), as well as for himself. These negotiations were initiated during the same week the lawsuit was filed. Dillon-Capps made this clear to Glenn

Norris and Justin Drummond and reiterated it in emails sent to Miles & Stockbridge after the case was filed. The sole condition stated in these negotiations was the establishment of fair and appropriate work conditions for Koritzka, Pinera, and Cielo IT employees.

20      Dillon-Capps also maintained communications with the affected individuals as the state court case progressed. For example:

21      Darren Koritzka engaged Dillon-Capps when Ohana made a post-termination offer.

22      Ann Pinera sought Dillon-Capps' advice on proceeding, and Dillon-Capps followed up to inquire about their progress during the litigation.

23      These actions reflect the IT Department's active engagement in their federally protected labor rights.

24      Section 104(d) of the Act reinforces these protections by stating:

> "By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State."

25      Furthermore, Section 104 prohibits courts—both state and federal—from issuing restraining orders or injunctions in any case involving or growing out of a labor dispute to restrict participants from engaging in lawful actions related to that dispute:

> "No Court [inclusive of part d – state or federal] shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts."

26      The Norris-LaGuardia Act (NLA) establishes strict limitations on a court's ability to infringe upon an employee's labor rights. A court may only intervene under a narrow set of circumstances, the most significant being the presence of explicit threats. Section 105 further underscores that even if an individual engages in acts outlined in Section 104 while simultaneously participating in unlawful or conspiratorial conduct, the court is still barred from

exercising jurisdiction. Even in cases of alleged noncompliance or after all reasonable efforts to settle disputes have been made, Section 108 reaffirms that the court remains barred from exercising jurisdiction.

27      Section 102 of the NLA articulates a public policy favoring individuals exercising their labor rights. This provision emphasizes the public interest in protecting employees' rights to organize, negotiate, and engage in other lawful labor activities.

28      A court may only claim jurisdiction under the NLA when there are explicit threats of unlawful acts, and only if the party against whom the threat is made explicitly requests intervention. Jurisdiction is permissible solely when there is no other option for providing protection, and all other alternatives have been exhausted.

29      In this case, no threats were made by Dillon-Capps. At no point did any party assert that Dillon-Capps engaged in or made any threatening statements. *Ohana Growth Partners, LLC* failed to identify a specific harm or articulate how any generalized future harm was likely to occur as a result of Dillon-Capps' actions. Instead, *Ohana* presented hypothetical arguments, speculating that Dillon-Capps "could" harm the company at some unspecified time in the future. These speculative claims were thoroughly debunked within the first two weeks of litigation and remained unsupported by evidence throughout the five-month litigation period. *Ohana* offered no counterarguments or substantiating evidence to support its claims.

30      The NLA applies to state courts, and the state court in this case had no basis to believe it possessed proper jurisdiction under the Act. The state court's misstep appears to stem from a misunderstanding or misinterpretation of the NLA, specifically its applicability to state courts. The state court may have erroneously proceeded on the assumption that the case was a straightforward dispute involving an alleged employment contract violation and a supposed

breach of a duty of loyalty. However, both allegations, as well as the additional claim of a criminal violation, were predicated on Dillon-Capps' refusal to comply with an order.

31    Even if there had been a refusal to comply with an order, and even assuming arguendo that the order was lawful, the Norris-LaGuardia Act (NLA) explicitly prohibits state or federal courts from issuing temporary, preliminary, or permanent injunctions without satisfying specific statutory criteria. These criteria were entirely absent in this case. Moreover, the lawsuit itself was filed explicitly as a request for injunctive relief, as evidenced by the pleadings and filings. There was no substantive argument made beyond the unsupported allegation of a refusal to comply with a lawful order.

32    From the moment the lawsuit was filed, the state court lacked jurisdiction under the NLA. In *Stump v. Sparkman*, 435 U.S. 349, 357 (1978), Justice White stated:

> "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"

33    Judge Barranco's conduct in this case underscores the "clear absence of all jurisdiction." Judge Barranco summarily dismissed all other possible arguments made by the Plaintiff, stating:

> "The Court has jurisdiction over the claim, so that's not an argument, I'm just telling you right now."

34    Judge Barranco's own statements indicate that the only claim the state court intended to adjudicate was the injunctive relief claim—squarely involving a labor dispute. This action persisted through December, nearly a month after the case was granted a voluntary dismissal and two weeks after *Ohana Growth Partners, LLC* and *Miles & Stockbridge* filed their notice of dismissal.

35    The state court's refusal to adjudicate Plaintiff's counterclaims further exemplifies its lack of jurisdiction. By choosing to rule exclusively on a claim it was federally barred from

adjudicating under the NLA, the court operated in the clear absence of jurisdiction. Ultimately, the only recognized claim—the injunctive relief claim—was dismissed without prejudice at the request of the state Plaintiff, leaving no adjudicated claims in the case.

36   Actions taken by a judge outside the scope of their jurisdiction, such as issuing orders in matters where the court lacks subject-matter or personal jurisdiction, are not protected by judicial immunity. As the state court lacked jurisdiction from the outset, any rulings or actions taken in this case fall outside the protections afforded by judicial immunity.

### D   Non-Judicial Acts

37   The actions alleged in this case, including intentional interference with filings and administrative misconduct, are not judicial acts. These actions are administrative or procedural in nature and fall outside the scope of judicial immunity.

38   In *Forrester v. White*, 484 U.S. 219, 227 (1988), Justice O'Connor explained:

> "Administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts. In contrast, the decisions at issue in this case—the demotion and discharge of Forrester—are not themselves judicial or adjudicative acts."

39   **Application**: Administrative actions, such as improperly handling filings or engaging in misconduct unrelated to the adjudication of cases, do not qualify as judicial acts. As such, these actions are not protected by judicial immunity.

### E   Claims Against Clerks and Judicial Staff

40   Judicial immunity does not extend to clerks and other judicial staff when they perform administrative functions that violate procedural or constitutional rights.

41   In *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432–34 (1993), Justice Stevens clarified:

> "When judicial immunity is extended to officials other than judges, it is because their judgments are functional equivalents of those made by the judge. When a court clerk files or refuses to file a document with the court, they are performing an administrative task not entitled to quasi-judicial immunity."

42      **Application**: Clerks and judicial staff involved in the handling of filings or administrative procedures are not protected by judicial or quasi-judicial immunity when their actions violate constitutional or procedural rights. Improper interference with filings, failure to perform administrative duties, or other procedural misconduct falls outside the scope of immunity protections and may give rise to liability.

### F   Injunctive Relief

43      Plaintiff seeks injunctive relief to address ongoing violations of federal law, which is not barred by judicial immunity.

44      In *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), Justice Blackmun clarified:

> "Judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity. Congress, in enacting § 1983, intended to reach unconstitutional actions by all state and federal actors, including judges."

45      **Application**: Plaintiff's request for injunctive relief, targeting ongoing constitutional violations by judicial defendants, is permissible under § 1983 and is not subject to the protections of judicial immunity. Such relief seeks to remedy violations of federal law that continue to harm Plaintiff and the public welfare.

### SUMMARY

46      The dismissal of claims against the judicial defendants on the grounds of immunity was improper for the following reasons:

47      **Clear Absence of Jurisdiction**: The case was conducted in a clear absence of jurisdiction. Actions taken without subject-matter or personal jurisdiction cannot be shielded by judicial immunity, as established in *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

48      **Administrative Acts Are Not Judicial**: The alleged acts of interference with filings and administrative misconduct are not judicial acts. Such actions are administrative or procedural in nature and fall outside the scope of judicial immunity, per *Forrester v. White*, 484 U.S. 219, 227 (1988).

49      **Injunctive Relief for Ongoing Federal Law Violations**: Injunctive relief for ongoing violations of federal law is not barred by judicial immunity. As emphasized in *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), § 1983 allows relief against unconstitutional actions by judicial officers. Testimony under seal is critical to understanding the scope and implications of the violations alleged. Without this testimony and the opportunity for Plaintiff to respond to questions, critical elements of the case remain misunderstood.

50      This case does not stem from a dissatisfaction with prior rulings; the Plaintiff arguably prevailed in the state case, with no standing judgments against them. Additionally, costs remain owed by the dismissing party, *Ohana Growth Partners, LLC*. While Plaintiff could request federal intervention to enforce state court costs, such efforts are unnecessary unless testimony leads to the Court declining to pursue broader remedies, such as appointing a special master or engaging in systemic negotiations.

51      **Quasi-Judicial Immunity Does Not Extend to Administrative Functions**: Quasi-judicial immunity does not protect clerks or staff when performing administrative functions that violate procedural or constitutional rights. Such actions are actionable under § 1983, as established in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432–34 (1993). Attempts to

strategically divide claims and immunity protections contradict principles of fairness and justice, undermining constitutional protections.

52      **Bounds v. Smith**, 430 U.S. 817, 821 (1977): Justice Thurgood Marshall emphasized the necessity of providing meaningful access to courts for indigent individuals:

> "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them. This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial."

53      This precedent underscores that the denial of access to necessary resources for the exercise of constitutional rights is impermissible, regardless of economic constraints.

54      **Tennessee v. Lane**, 541 U.S. 509, 533–34 (2004): Justice John Paul Stevens addressed the Due Process Clause's requirement for meaningful access to judicial proceedings, stating:

> "The Due Process Clause also requires the States to afford certain civil litigants a 'meaningful opportunity to be heard' by removing obstacles to their full participation in judicial proceedings."

55      This principle highlights the obligation of courts to eliminate barriers that prevent individuals from fully participating in judicial processes.

56      **Boddie v. Connecticut**, 401 U.S. 371, 380–381 (1971):

Justice John Marshall Harlan II articulated the constitutional limitations on imposing financial barriers to fundamental rights, stating:

> "A statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question,"

57      and further,

> "To interpose any financial consideration between an indigent and the exercise of a fundamental constitutional right is to deny that individual equal protection of the laws."

58      This decision reaffirms that financial considerations cannot lawfully obstruct an individual's exercise of fundamental constitutional rights.

59      Your Honor, I accept full responsibility for any lack of clarity or organization in my presentation, which may have contributed to a misunderstanding of the true nature of this case. I deeply regret any confusion and recognize the Court's challenge in discerning the substantive issues within the structure I employed due to my circumstances.

60      This case is not a routine or isolated matter. I respectfully request the opportunity to present a more comprehensive account of the facts. To ensure transparency, I also request permission to invite 1–4 observers to attend the proceedings solely as passive observers.

61      Before the Court renders a final decision on the motion for reconsideration, I ask to submit ex parte testimony. I believe this testimony will provide essential clarity and depth, enabling the Court to reach a fully informed ruling. Should the Court require any additional filings after testimony, I am prepared to comply.

62      This case represents an unprecedented and significant matter, not the result of error or hyperbole. I respectfully ask the Court to allow me to substantiate my claims beyond written submissions.

63       I seek the opportunity to present my arguments and evidence in full and to be thoroughly challenged. Direct engagement would help ensure the complex, sensitive issues are clearly understood. The Court's questions and feedback would allow me to adjust or clarify as needed.

64      My sole objective is for the Court to reach a fully informed decision, regardless of the outcome. I also ask the Court to consider the unique circumstances of this matter, particularly that, as a pro se defendant in the state case, I prevailed despite all procedural rulings favoring the opposing party—a fact that merits further inquiry.

65    I submit this request in the interest of justice and fairness, with full faith in this Court's dedication to both principles.

RESPECTFULLY SUBMITTED

**January 9, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113