## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS | Civil Action |
| *Plaintiff,* | No. **1:24-CV-3744** |
| vs. | |
| OHANA GROWTH PARTNERS, LLC *et al* | Hon. **Judge Hurson** |
| *Defendants* | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER PARTIAL DISMISSED CLAIMS ON 2025 JANUARY 8TH

### MOTION FOR RECONSIDERATION LEGAL STANDARD

1      There is no "motion for 'reconsideration' in the Federal Rules of Civil Procedure." *Bass v. United States Dep't of Agriculture, 211 F.3d 959, 962 (5th Cir. 2000).* Rather, if filed within ten days of the district court's judgment, such a motion is construed as filed pursuant to Rule 59(e). See id. Although Rule 59(e) currently allows for a timely response of 28 days as Rule 59, inclusive of subdivision (e), was amended in 2009 to permit additional time.

2      Plaintiff motion for reconsideration, filed on January 9, 2025, is governed by Rule 59(e) of the Federal Rules of Civil Procedure. A Rule 59(e) motion may be granted if the moving party demonstrates any of the following: (1) the judgment was based upon a manifest error of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) there is an intervening change in controlling law. See 11 CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995).[1]

3      Ryan Dillon-Capps respectfully seeks relief from the January 8, 2025, ruling, asserting that the judgment was based on a misunderstanding of the facts, circumstances, and evidence, leading to the misapplication of law. Finalizing this decision would result in a fundamentally unjust outcome that outweighs the potential harm of granting relief, as it would deny justice to the Plaintiff and an unknown number of others who have been, are being, and will continue to be adversely affected.


## MR. CHISHOLM'S FMLA CASE

4      Respectfully I ask, why do the lower courts allow the application of Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009) to FMLA cases like Mr. Chisholm?

5      The application of **Bell Atlantic Corp. v. Twombly**, 550 U.S. 554 (2007), and **Ashcroft v. Iqbal**, 556 U.S. 662 (2009), to FMLA cases like Mr. Chisholm's is fundamentally flawed. The Supreme Court in **Iqbal** specifically addressed claims against high-ranking officials under a **Bivens action**, requiring a clear connection between policy directives and specific unconstitutional actions by subordinates. In oral arguments, the Justices emphasized the necessity of this connection, even drawing a hypothetical about mice in coke bottles to illustrate

---

[1] Under Rule 4 of the Federal Rules of Appellate Procedures, a notice of appeal must be filed with the district court clerk within 30 days after entry of the judgement.  As provided in Federal Rule of Appellate Procedure 4(a)(4) the 30-day deadline will be tolled so that it runs the entry of the order disposing of the last of the motions under Rule 59  or 60. The Plaintiff shall hold a notice of interlocutory appeal under the belief that the timely filing qualifies to the application of equitable tolling

the inappropriate extension of liability to a CEO without a direct assertion that links the CEO because they are not directly involved.

6      Similarly, the **Twombly** decision focuses on requiring plausible allegations to move forward in antitrust litigation and does not apply wholesale to statutory rights cases like the FMLA. These precedents are tailored to contexts where speculative claims or insufficiently detailed allegations against distant parties would otherwise advance unnecessarily. Applying these rulings to cases involving direct interference with FMLA rights or retaliation—where the statute explicitly protects employees—is contrary to their intent and creates a manifest injustice.

7      To stretch the Twombly and Iqbal standards beyond their intended contexts undermines not only the specificity of these rulings but also the protections Congress enacted under the FMLA. A motion to dismiss under such circumstances misinterprets the applicable law and fails to respect the statutory guarantees that require employers to uphold employees' federally protected rights without interference or retaliation.

8      In **Ashcroft v. Iqbal**, the Justices explicitly acknowledged that claims alleging violations of rights must be allowed to proceed to discovery when there is a plausible connection between the alleged harm and the actions of those accused. While the Court refrained from making an official ruling on the need for discovery in all such cases—since the issue was not squarely before them—they noted that the claim against the Director of the FBI and Attorney General fell just short, primarily due to the limited context and nature of allegations related to their positions.

9      Lower courts, however, have distorted the **Iqbal** standard, applying it inversely and establishing a nearly insurmountable pre-discovery barrier for certain litigants. This misapplication effectively contradicts the Supreme Court's guidance and results in an unconstitutional barrier to relief. For example, under FMLA's **50/75 rule**, how is an hourly

employee reasonably expected to know the employment records of other employees to assert compliance with this rule pre-discovery? Denying discovery or dismissing such cases prematurely based on information not accessible to plaintiffs creates an unjust standard that violates the foundational principles of justice.

10    This practice contravenes the 200-year-old precedent established in **Marbury v. Madison**, 5 U.S. (1 Cranch) 137 (1803), which underscored the judiciary's duty to ensure that rights and protections afforded to individuals are upheld. Any law, rule, or judicial opinion that impedes an individual's ability to address and remedy violations of their rights is inherently unconstitutional. The rights protected under the FMLA are no exception, and judicial barriers that undermine access to justice cannot stand.

11    The facts of Mr. Chisholm's case, as established in **ESF 5-1** of case **1:24-CV-01924-SAG**, include the acknowledgment in **Footnote 1** that Ohana assumes the factual allegations in the complaint to be true for the purposes of their motion to dismiss. However, the memorandum from Judge Gallagher improperly applies the **Twombly** and **Iqbal** standards in contradiction to Mr. Chisholm's assertions, which include:

1.    Mr. Chisholm was on FMLA leave.

2.    He requested the leave and communicated it as timely as was reasonably possible given the circumstances.

3.    His manager called him twice during his leave, interfering with his FMLA-protected rights.

4.    When he refused to comply with unlawful demands to work during his FMLA leave, he was terminated.

12      Furthermore, Ohana's own argument inadvertently supports Mr. Chisholm's version of events beyond the general acceptance of his allegations for the purpose of their motion. Specifically, the manager's statement that Mr. Chisholm "couldn't take this much time off" implicitly confirms that the leave had been approved. In similar workplace environments, it is a universally understood truth that managers do not object to the duration of time being taken off unless the leave was already approved and scheduled. If the leave were unapproved, without notice, or if Mr. Chisholm had simply failed to appear for scheduled shifts, such a complaint would not arise.

13      No arguments or evidence have been presented to contradict Mr. Chisholm's assertion that his leave was both approved and FMLA-protected, further validating his allegations and undermining the propriety of the motion to dismiss.

14      The memorandum in support of the motion to dismiss (**ESF 5-1**) at page 2 reiterates Mr. Chisholm's allegations, which, when viewed liberally and in accordance with FMLA standards, demonstrate that Mr. Chisholm has two distinct claims for FMLA leave:

1.      To care for a terminally ill family member.

2.      To address his own mental health issues arising from the circumstances.

15      Critically, what is absent from the record is any indication that Ohana requested documentation to substantiate Mr. Chisholm's need for FMLA leave. Upon Mr. Chisholm's notice that he was personally suffering from what could qualify as a serious health condition under the FMLA, the legally correct response, if Ohana intended to challenge his eligibility, would have been to formally request documentation. **FMLA regulations, codified at 29 C.F.R. § 825.305(a), (b), and (d),** establish that the burden for initiating a certification request lies with the employer:

**(a):** "An employer must give notice of a requirement for certification each time a certification is required."

**(b):** "The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so."

**(d):** "If an employer requires a medical certification or recertification, the employer must provide the employee with the appropriate notice... Failure to do so may constitute interference with the employee's FMLA rights."

16      Mr. Chisholm satisfied his notification requirement under **29 C.F.R. § 825.302(c)** by

providing verbal notice sufficient to make Ohana aware of his need for FMLA leave, including

the anticipated timing and duration. The regulation explicitly states:

> "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."

17      Furthermore, Mr. Chisholm was under no obligation to affirmatively assert his FMLA

rights or explicitly mention the FMLA. **29 C.F.R. § 825.303(b)** confirms:

> "The employee need not expressly assert rights under the FMLA or even mention the FMLA to meet his or her obligation to provide notice."

18      By failing to request documentation, Ohana waived its ability to challenge the validity of

Mr. Chisholm's leave. Any subsequent interference with or retaliation against his FMLA-

protected leave constitutes a violation of his statutory rights. Ohana's failure to comply with the

procedural requirements under FMLA regulations is itself actionable interference, as defined

under **29 U.S.C. § 2615(a)(1).**

19      Ohana Growth Partners, LLC has failed to assert a substantive claim or defense against

Mr. Chisholm's allegations. Instead, through their motion to dismiss, they accepted and

effectively agreed to the factual allegations that substantiate Mr. Chisholm's claim. In contrast to

the state court proceedings, I filed, which included a motion for a **Directed Verdict** based on the

merits of adjudicated facts and a mandatory ex parte hearing under Maryland law, Ohana has

chosen to misapply Supreme Court precedent inappropriately and out of context. If Ohana did not wish to agree to the factual allegations asserted by Mr. Chisholm, they should not have done so through their filing.

20    As the case stands, it appears that Mr. Chisholm has effectively prevailed in his FMLA claim. Ohana has accepted as true the core facts of the case:

    1.    Mr. Chisholm was on FMLA leave.

    2.    His manager interfered with his leave.

    3.    Ohana retaliated against Mr. Chisholm for taking FMLA leave by terminating his employment.

21    Additionally, the **Affidavit of Ryan Dillon-Capps in Support of Motion to Reconsider Partial Dismissed Claims on January 8, 2025,** to which I incorporate herein by reference, further supports Mr. Chisholm's claim. The affidavit demonstrates that:

    1.    The Perry Hall location and Mr. Chisholm's position as a Fitness Trainer qualify under the FMLA's **50/75 rule**.

    2.    Mr. Chisholm was employed full-time and satisfied the required hours threshold for eligibility.

22    Ohana's contradictory assertions are inherently inconsistent. On one hand, they argue that Mr. Chisholm taking two of the twelve weeks of FMLA leave was an undue burden; on the other, even if they suggest he worked insufficient hours to qualify. Such a conflicting positions undermine their credibility and reinforce Mr. Chisholm's claim.

23    Moreover, as noted in the affidavit, the position and location in question were part of larger discussions within Ohana that referenced Mr. Chisholm's employment indirectly (by

position and location) with a sufficient evidentiary standard to establish a high probability of his individual qualification under the FMLA.

24      Together, the acceptance of facts, the affidavit, and the record establish that Ohana Growth Partners, LLC meets the employer thresholds, the Perry Hall location satisfies the FMLA's location requirements, and Mr. Chisholm himself qualifies under the FMLA's provisions. These facts, when taken together, demonstrate that Mr. Chisholm's complaint satisfies the standard for stating a claim upon which relief can be granted.

25      Finally, Judge Gallagher's order granting Mr. Chisholm 60 days from November 18, 2024—ending on January 17, 2025—provides an opportunity to ensure procedural fairness. If Your Honor grants the request for relief to appoint counsel for me, grants the conditional Joinder for Mr. Chisholm's, and permits Mr. Chisholm to make use of court-appointed counsel, this will help restore at least one of Mr. Chisholm's rights by enabling him to move forward and seek relief in a fair and just manner.

## LEGAL STANDARD – RIGHT TO SEEK RELIEF

26      Under the Family and Medical Leave Act (FMLA), individuals have a clear and enforceable right to seek relief for violations of their federally protected leave entitlements. **29 U.S.C. § 2615(a)(1)** prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the FMLA. Additionally, **29 U.S.C. § 2615(a)(2)** prohibits retaliation against employees who oppose practices made unlawful under the FMLA. Employees may file civil actions to recover damages or equitable relief under **29 U.S.C. § 2617(a)**, which provides remedies for violations, including compensation for lost wages, benefits, interest, and appropriate equitable relief such as reinstatement or promotion.

27    The enforcement mechanisms outlined in the statute are further supported by the regulatory framework under **29 C.F.R. § 825.400(a)**, which explicitly grants employees the right to bring private actions in court if their FMLA rights are violated. Judicial precedents also reinforce this right, with cases such as **Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721 (2003)** and **Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002)** highlighting the FMLA's role in protecting employees' substantive rights and ensuring access to the courts for redress of violations. Together, these statutes, regulations, and cases underscore the statutory and constitutional right of employees to seek relief for FMLA violations.

28    This right is further reinforced by constitutional protections, including the **First Amendment's Petition Clause**, which safeguards individuals' ability to seek redress for grievances, and the **Fourteenth Amendment's Due Process Clause**, which guarantees a meaningful opportunity to enforce legal rights. Judicial precedent, such as **Tennessee v. Lane, 541 U.S. 509 (2004)**, underscores the fundamental nature of court access in securing relief for rights violations.

29    Together, these provisions affirm that employees have an unequivocal right to access the judicial system to hold employers accountable for FMLA violations and secure redress for harm caused by unlawful practices.

30    The right to seek relief for a federally protected right, such as those under the Family and Medical Leave Act (FMLA), is a cornerstone of constitutional and statutory law. The **Supremacy Clause of the U.S. Constitution (Article VI, Clause 2)** establishes that federal laws, such as the FMLA, take precedence over conflicting state laws, rules, or judicial opinions.

31    Any attempt to implement a law, rule, or opinion in a manner that deprives an individual of the right to seek relief for a federally protected right is unconstitutional under the **First**

**Amendment's Petition Clause**, which guarantees the right to petition the government, including courts, for redress of grievances.

32      Furthermore, the **Fourteenth Amendment's Due Process Clause** prohibits action that denies individuals meaningful access to justice or undermines federally protected rights. Case law such as **Boddie v. Connecticut, 401 U.S. 371 (1971)**, **Tennessee v. Lane, 541 U.S. 509 (2004)**, and **Haywood v. Drown, 556 U.S. 729 (2009)** reinforces that procedural barriers or interpretations of law that obstruct the right to seek relief for federal rights violate constitutional protections. These principles affirm that the judicial system must remain open and unobstructed for individuals to enforce their federally protected rights, including those under the FMLA, and that any court action to the contrary is constitutionally invalid.

## FEDERAL COURTS ROLE IN STATE-LEVEL VIOLATIONS

33      Your Honor has raised two critical questions: (1) whether this Federal Court possesses the authority to "essentially take over the Maryland Judiciary," and (2) whether the standing of a litigant as **Pro Se** is a materially relevant factor in this determination.

34      To the first question, the answer is unequivocally **yes**. It is not merely an authority this Court possesses but a **duty** under federal law. Federal courts are tasked with safeguarding against violations of federally protected rights by state actors, and this responsibility extends to ensuring the uniform application of federal law. The federal judiciary's authority under the **Supremacy Clause** does not require an explicit private right of action to intervene. In **Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320 (2015)**, the Supreme Court affirmed that federal courts have the inherent authority to enjoin state actions that contravene federal law, even when no explicit private right of action exists. This authority stems from the federal courts' role as guardians of constitutional and statutory rights.

35     Thus, even if my claim were dismissed, this Court would remain duty-bound to act to prevent state actors from violating federally protected rights. This principle removes the necessity of addressing the second question regarding a litigant's **Pro Se** status because the duty to intervene exists independently of any specific litigant.

36     Nonetheless, the relevance of this principle ties directly to a statement made in the memorandum, specifically at 17 of the ruling memorandum (**ESF 18**), which asserts: "Nor do Plaintiff's allegations raise a plausible claim that such a drastic remedy is warranted here." Respectfully, this conclusion is incorrect, as I will demonstrate by breaking the issue into key elements for further consideration.

## PRO SE STANDING

37     The court system has 2 tiers of access.  Those with the privileges afforded to them because of socio-economic standing to afford quality representation, and the have nots that predominately start or end as Pro Se litigants.  I believe that I can argue and win the eventual supreme court case on the topic of Pro Se rights, but that is not why I am here today.  So instead, I offer up an alternative argument that is aligned with the shared philosophy of Judge Richard Poster (Ret.) and Judge Roy B Dalton Jr. who have both tried to improve the resources for pro se litigants.

　　1.     Show me where the law says that Pro Se litigants do not deserve access to relief?

　　2.     Show me where the law says that Pro Se litigants have a higher burden of proof?

　　3.     Show me where the law says that Pro Se litigants should be prioritized after represented litigants?

38     And the list need not continue because Your Honor knows better than I that in practicality there is a difference between the litigant who files six dozen cases asserting that the government is poisoning them and "they know" and while at face value it appears unfair the

broader question is to ask what is fairness?  Is it fair that a class action suit against an airline that killed 129 passengers from negligent maintenance practices has a 3-year waitlist or is it fair and right for justice that the Judiciary doesn't immediately assume we have to shut down the entire power grid because "that is how they poison us."

39      There are alternatives that don't deprive someone of a legitimate claim for which relief can be granted solely because they are Pro Se because there are the Robert Kearns who took on Ford and Chrysler over patent litigation which every non-patent attorney that I have ever met has a very high opinion about the type of person it takes to be a patent attorney because of its complexity and jargon that almost form a different language. Additionally, there are those like Philip Daniel Love,  who if Your Honor has not read his Petition to the Honorable Justice John Roberts then I highly recommend it because there is no finer legal writing and because of him the law is better for it. See *In re Love*, 140 S. Ct. 313 (2019)

40      If the argument for deprioritizing **pro se** litigants is rooted in judicial economy and the need to ensure fair and swift justice, then where is the justification for limiting access solely to represented litigants? Such a distinction risks disproportionately impacting protected classes and perpetuating inequities tied to socio-economic standing.

41      What about a **tiered system** or another approach that applies fair and reasonable standards without disproportionately affecting marginalized groups? This Court has the authority to pilot such a system in this case. A distinction could be made that affords litigants like **Philip Daniel Love** or **Robert Kearns** equal access to justice as though they were represented by counsel.

42      Consider potential accommodations:

- **Access to e-filing systems**, reducing logistical barriers for **pro se** litigants.

- **Simplified subpoena processes**, enabling effective case preparation.

- **Opportunities to ask questions during testimony**, a critical component of fair trial procedure.

43    In **Robert Kearns's** patent litigation, his handling of witness testimony was pivotal to his success. A lawyer, lacking Kearns's intimate knowledge of the invention, might have lost the case. His direct engagement with the testimony underscores the importance of granting **pro se** litigants opportunities to participate meaningfully in their own cases. See *Kearns v. Ford Motor Co.*, 203 U.S.P.Q. 884 (E.D. Mich. 1978); *Kearns v. Chrysler Corp.*, 32 F.3d 1541 (Fed. Cir. 1994); *Kearns v. General Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996).

44    Kerns and Love remind us that representation is not sole determinant of merit or justice. Your Honor has the power to create a framework for ensuring **pro se** litigants like me are afforded equal access to justice. Let this case serve as a pilot for a system that respects the contributions and rights of all litigants, regardless of representation. This is not about lowering standards but about ensuring fairness and equity—essential pillars of our legal system.

## LEGAL STANDARD – AUTHORITY TO PILOT PRO SE DESIGNATION (FORMERLY IDENTIFIED AS A LIMITED ATTORNEY DESIGNATION)

45    Federal judges have inherent authority to manage proceedings within their courts to ensure fairness and justice. This authority extends to implementing procedural innovations, such as a pilot Pro Se designation program, tailored to address specific challenges in individual cases.

46    The judiciary's inherent powers, affirmed in **Chambers v. NASCO, Inc., 501 U.S. 32 (1991)**, provide judges with discretion to craft measures that enhance the equitable administration of justice. In **Link v. Wabash R.R. Co., 370 U.S. 626 (1962)**, the Supreme Court recognized that federal judges possess broad discretion to manage proceedings, ensuring

efficiency and fairness, particularly for parties who may face systemic disadvantages, such as Pro Se litigants.

47    Additionally, under **Rule 83(b)** of the Federal Rules of Civil Procedure, judges may regulate practice in their courts by adopting procedures consistent with federal law. A pilot program for a Pro Se designation with enhanced access, such as streamlined filing, subpoena assistance, or direct questioning of witnesses, falls squarely within this authority. Furthermore, **Rule 16(a)** supports active judicial management to streamline proceedings and eliminate unnecessary barriers, particularly when addressing inequities faced by Pro Se litigants.

48    Precedents like **Tennessee v. Lane, 541 U.S. 509 (2004)** reinforce the judiciary's duty to ensure meaningful access to justice for all individuals, especially those disadvantaged by systemic limitations. While this proposal is limited to a single case, its purpose aligns with the federal judiciary's broader mandate to innovate and address disparities within its procedural framework.

49    This Court, sitting in the District of Maryland, has both the discretion and the responsibility to adopt measures that improve access to justice within the scope of this case. By piloting a Pro Se designation, the Court can create a tailored approach that ensures fairness while upholding its role as a steward of justice.

LEGAL STANDARD – PRECLUSION
REMANDED AND THE WAIVING OF STATE IMMUNITY

50    I won't repeat the leading argument in the motion in full, but the central element is that the standard set forth in **Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002)** establishes the following:

    1.    State judges are viewed as attorneys representing the state and are authorized to remand a case to the federal courts.

2.      The act of remanding any claim to the federal courts is treated as the state itself

remanding the claim.

3.      The act of remanding the claim constitutes a voluntary waiver of the state's

immunity.

4.      The state cannot selectively choose which claims it wishes to remand and which it

does not. The only options available are to remand no claims or to remand all claims

covered by the "case and controversy."

51      Therefore, Judge Barranco, acting on behalf of the State of Maryland, has the authority to

remand the FMLA case to the federal court. However, under the **Lapides** standard, the State of

Maryland cannot argue that only the FMLA claim was remanded. The act of remanding any

claim constitutes a voluntary waiver of the state's immunity for all claims within the "case and

controversy."

CLEAR ABSENCE OF ALL JURISDICTION

52      The second part of the motion's argument is that the standard set forth in *Stump v.*

*Sparkman,* 435 U.S. 349,356 (1978) is that Judicial Immunity does not apply when the Judges

act in clear absence of all jurisdictions.  This bar is met because the Norris-LaGuardia Act, and

my family photo album includes the people who were heavily involved in in the fight for labor

rights throughout the 30s, 40s, and 50s.  I respectfully assert that while Federal Courts might be

what the history books wrote down, the law and my former family members didn't forget about

the state courts too.  I will similarly not repeat the entirety of the argument already made in the

motion, but instead summarize the key elements:

1.      29 U.S. Code § 104 is a list of specific acts that are jurisdictionally prohibited

from restraining orders or injunctions.  Subdivision (d) is where it says it is

jurisdictionally prohibited to seek injunctive relief in a labor dispute and it ends with "or

of any State;" I assure the court that this language dates back to 1932 because state Judges were just as prone to the conduct we see today as they were back then.

2.      Subdivision (a) was not explicitly quoted in the motion so I will quote it here, and to remove any applicable doubt the heinous behavior that was asserted by Ohana Growth Partners, LLC was that I was refusing to a lawful order by my supervisor.

"Ceasing or refusing to perform any work or to remain in any relation of employment;"

3.      Subdivision (c) overlaps with the insurance, pay, and access to benefits which is already asserted against Ohana.

4.      Section 107 outlines the standard required and as already started in the Motion none of the requirements occurred or were asserted.

53      Exhibit 100 at 117 is the Civil Case Information Sheet where type of case says, "Injunctive Relief". Id at 124 the second to last paragraph reads "I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo. There are more examples stretching back even further for all of us." This is from an email dated June 18th at 5:30 PM to Robert Brennen and is one example of the on-going efforts to negotiate terms and conditions of employment for multiple employees.

54      Even now I am engaging in protected labor dispute conduct because I am asking the court to help in the alternative dispute resolution process with Ohana Growth Partners, LLC for the purposes of addressing the terms, conditions, policies, benefits, and treatment of their employees. My EEOC complaint states that I want to ensure the EEOC is aware of the working conditions by Ohana Growth Partners, LLC so that when they walk into every future mediation they known

for their conduct because it will help the working conditions for those employees, and similarly I was asking for relief from the state court so that when Ohana Growth Partners, LLC wanted to file a lawsuit they had to seek permission because their court record reflects their abuse of the judicial system toward employees.

55      Your Honor, this is the definition of a labor dispute from the definitions stated in 29 U.S. Code § 113, and since this was the only claim they acknowledged as a claim that they were going to adjudicate this leaves no room for debate.  Since June 14, 2024, the very moment the court case was entered onto the docket seeking Injunctive relief with Ohana stating they were doing this because I refused a lawful order, and they wanted the court to force me to do it there is no doubt that this is clearly a labor dispute they filed it as a labor dispute and they filed it seeking injunctive relief.  I didn't even need to make the argument because the case itself was pleaded and filed explicitly as a labor dispute seeking injunctive relief in violation of the Norris-LaGuardia Act under 29 U.S. Code § 104 (d) that jurisdictionally prohibits the state court from claiming jurisdiction in this exact situation.

56      The second part of the motion's argument relies on **Stump v. Sparkman, 435 U.S. 349, 356 (1978)**, which holds that judicial immunity does not apply when judges act in clear absence of all jurisdictions. This standard applies here due to the jurisdictional prohibitions of the **Norris-LaGuardia Act**. The key elements are:

57      **29 U.S.C. § 104 Prohibits Injunctions in Labor Disputes**: Subdivision (d) explicitly bars courts, including state courts, from issuing injunctions in labor disputes. This prohibition applies to courts "of the United States or of any State" and reflects the Act's intent to prevent judicial interference in labor disputes in all courts.

58    **Subdivision (a) Protects Refusal to Work**: It prohibits injunctions against employees for "ceasing or refusing to perform any work or to remain in any relation of employment."  I have provided evidence supporting this, such as Exhibit 100 at 117 the Civil Cover sheet that shows the case was filed as and seeking Injunctive Relief.  Id at 124 is an email to Robert Brennen dated June 18th at 5:30 PM that documents active labor negotiations occurring about the conditions and terms of employment.  There are emails asking to negotiate with Ohana legal representation, and arguments made in the state filings.

59    **Subdivision (c) Includes Benefits and Employment Terms**: Claims involving insurance, pay, and access to benefits are explicitly protected under Subdivision (c), further reinforcing this case's labor dispute status because Ohana withheld access to my paid leave, pay, and through fraud also the insurance that I and my wife relied on.  There is a lot of applicable arguments on benefits, pay, and insurance that are already made in the pleading.

60    **29 U.S.C. § 107 Standards Not Met**: Section 107 sets specific requirements for granting injunctive relief in labor disputes. These standards were neither met nor asserted, confirming the lack of jurisdiction.

61    **Continued Protected Conduct:** I am still engaged in protected labor dispute activity by seeking alternative dispute resolution to address employment conditions at Ohana Growth Partners, LLC. My EEOC complaint highlights their workplace practices to inform mediation and improve employee conditions, and the act of seeking joinder could result in reinstatement for Mr. Chisholm or Koritzka if that is what they wanted to do because both of them have that right under their claims.

62    **Labor Dispute Definition** This case meets the definition of a labor dispute under **29 U.S.C. § 113**. Ohana filed the case seeking injunctive relief based on claims that I refused a

lawful order, explicitly identifying it as a labor dispute. This violates **29 U.S.C. § 104(d)**, which bars state court jurisdiction in such cases.

63    **Your Honor,** my employer admitted to violating FMLA leave and retaliation, they file a case that is the definition of is a labor dispute seeking injunctive relief, and then the state's first direct interaction with me results in them voluntarily waiving state immunity for the entirety of the case and controversy while simultaneously asserting that they are going to solely adjudicate only the claim which lacks jurisdiction.  The date was June 26$^{th,}$ and the case was 12 days old, and at no point did the situation get better for any of the defendants.

EFFECT OF DISMISSAL WITHOUT PREJUDICE

64    The final element of preclusion concerns the state court proceedings, where hundreds of counts were filed. Under Maryland rules governing voluntary dismissal, my consent would have been required for a dismissal without prejudice.  If the state court were to acknowledge the answer and counterclaims as an answer and counterclaims and allowed the dismissal without consent it would also trigger a review.  Additionally, I had litigated the state plaintiff into a position where further filings by them would almost certainly become additional sanctions.

65    With no way to achieve a favorable judgement for the state plaintiff that wouldn't immediately be overturned and prompt an investigation, and no way to dismiss or adjudicate my claims without locking the state plaintiff into the litigation and prompting an investigation, these defendants pretended that they were not claims and therefore no trial, dismissal, or verdict was ever made on any of my claims.

66    This sequence has left all claims unaddressed. No arguments have been made against them, effectively constituting acceptance of the claims. Following the dismissal, I filed a notice of intent to preserve the record for federal court and sought to have costs assessed inclusive of all my expenses. Predictably, the response included efforts to alter court records, enabling the circuit

court to claim judicial immunity while obfuscating the fraud committed. Additional alterations have been detected since the filing in federal court, though verification is pending. However, we have captured sufficient data for future analysis.

67      The state chose to waive immunity and adjudicate in complete absence of jurisdiction. They further ignored the counterclaims I filed, leaving them viable and open for pursuit, as they were neither explicitly waived nor dismissed, except for the FMLA claim voluntarily remanded to federal court. This is consistent with precedent set forth in **Allied Products Corp. v. Lakeland Prod. Credit Ass'n, 870 F.2d 1343, 1346 (7th Cir. 1989)**, **Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004)**, and **Schnabel v. Lui, 302 F.3d 1023, 1038 (9th Cir. 2002)**.

68      Under **Maryland Rule 2-506**, dismissals without prejudice do not resolve the merits of claims, and counterclaims survive unless explicitly addressed or dismissed. As detailed in **Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary (4th ed.)**, this principle ensures that counterclaims remain actionable by this court.

## RICO AND OTHER UNCERTAINTIES

69      Your Honor, I hope I have adequately addressed the root cause of the misunderstanding that appears to have contributed to the inclusion of RICO and § 1983 claims in the memorandum. To clarify, I fully understand that § 1983 and RICO are procedural vehicles, not standalone claims for relief. The criminal elements listed under RICO provide the foundational acts required to establish RICO conduct but do not themselves constitute the claim for relief.

70      Under RICO, the harm includes:

1. **Property harm.**

2. **Harm to MXT3 LLC.**

3. **Reputational harm**, which intertwines my personal reputation with that of the business.

71     I acknowledge there may be deficiencies in how the claims from the state case have been integrated into this matter. Without reviewing those pages as part of the claims left open for federal adjudication, the MXT3 claims and others may inadvertently be overlooked. I trust that once the underlying issues have been clarified, the misunderstanding that affects these additional claims will also be resolved without requiring further elaboration.

72     If that assumption is incorrect, I respectfully request the Court's guidance on where clarification is needed. I am operating with severely limited resources and will address any additional concerns with urgency. I also hope the Court will grant an ex parte hearing for testimony under seal to address these matters promptly. The delay caused by this misunderstanding has persisted for weeks, compounding the harm. I stand ready to provide further written submissions or revisions as necessary to resolve this matter efficiently.

<u>RESPECTFULLY SUBMITTED</u>

| January 13, 2025 | | 1334 Maple Avenue |
| | | Essex, Maryland 21221 |
| /s/ Ryan Dillon-Capps | | ryan@mxt3.com |
| **Ryan Dillon-Capps** | | 703-303-1113 |