**EXHIBIT 1**

| | |
|---|---|
| **OHANA GROWTH PARTNERS, LLC** | IN THE |
| *Plaintiff,* | CIRCUIT COURT |
| vs. | FOR |
| **RYAN DILLON-CAPPS** | BALTIMORE COUNTY |
| *Defendant.* | FILE NO.: C-03-CV-24-002264 |

### AFFIDAVIT OF RICHARD HARTMAN

I, RICHARD HARTMAN, being over the age of eighteen (18) and competent to testify, and having personal knowledge of the facts contained herein, state as follows:

1. I am, the Vice President of Human Resources for Ohana Growth Partners, LLC ("Ohana"), the Plaintiff in the above-captioned matter. In that capacity I have responsibility over Ohana's human resources functions.

2. Ohana is a Maryland limited liability company with its principal office located at 212 West Padonia Road, Timonium, Maryland 21093.

3. Ohana is a franchise division of Planet Fitness. Ohana owns and operates 78 Planet Fitness health clubs with over 500,000 members in Maryland, the District of Columbia, Tennessee, Florida, Washington state, and California.

4. Ohana has 1,472 employees, 712 of whom live in Maryland.

5. Ohana maintains a Microsoft 365 account (the "Ohana MS 365 Account"), through which it provides a full suite of software applications to the company's employees, including Microsoft Exchange for company email, Microsoft OneDrive and SharePoint for document management and storage, Microsoft Teams for videoconferencing, as well as other IT services. Ohana's Microsoft 365 Account also includes a subscription to Microsoft Azure, which provides Ohana the ability to deploy, operate and back up data created with those applications in the cloud.

6. Through an account with Internet domain registrar GoDaddy.com, Ohana maintains and administers registrations for over a dozen second level internet domain names, which are directed to websites and Ohana's Microsoft Exchange company email. (the "Ohana GoDaddy Account").

7. Since February 10, 2020, Ryan Dillon-Capps (*nee* Wagner), the Defendant in the above-captioned matter ("Dillon-Capps"), has been employed by Ohana as its Vice President of Information Technology. Attached as **Exhibit A** hereto is a true and correct copy of the Employment and Non-Disclosure Agreement entered between Dillon-Capps and Ohana as of January 9, 2020 (the "Dillon-Capps Employment Agreement"). As of at least June 2, 2024 Dillon-Capps asked to be referred to using plural pronouns.

8. Dillon-Capps reports to Glenn Norris, the Chief Financial Officer of Ohana ("Norris"). In that capacity, Norris provides Dillon-Capps with supervision and issues directives in connection with the operation of Ohana's software systems.

9. Ohana granted to Dillon-Capps, in their capacity as Vice President of Information Technology and so that they could perform requested job duties, "Global Admin" rights to the Ohana MS 365 Account, allowing them "almost unlimited access to [Ohana's] settings and most of its data." Because "[a] Global Admin may inadvertently lock their account and require a password reset, . . .[Microsoft] recommend[s] [Ohana] have at least either one more Global Admin." *See* https://learn.microsoft.com/en-us/microsoft-365/admin/add-users/about-admin-roles?view=o365-worldwide Additionally, it is important that more than one person have full administrative right in case one person holding them is unavailable or, as in this case, refuses to cooperate with company directives regarding the IT system owned by the company. In part for those reasons, Ohana had also provided Global Admin rights to Ryan Brooks of Baltimore

2

119447\000002\4859-0397-1784.v1

. Richard Hartman Affidavit #1 of 2    Page # 2 of 18    Exhibit SCD-5  [State Court Document File # 5 of 303] .

Consulting, an independent third-party contractor for Ohana that provides comprehensive IT services.

10.  On May 20, 2024, without authorization from Norris or other senior executives, Dillon-Capps severed and discontinued all administrative access to the Ohana MS 365 Account that had been held by other Ohana employees, as well as the Global Admin rights provided to Mr. Brooks. On six (6) separate occasions between May 21, 2024 and May 24, 2024, Dillon-Capps was sent express written directives to reinstate Mr. Brooks' administrative access. Since May 24, 2024, management sent Dillon-Capps separate written directives to provide full administrative rights to Justin Drummond, Ohana's President, to Victor Brick, Ohana's CEO, and to Norris, the CFO, in addition to Mr. Brooks. All these directives were disobeyed. Despite these repeated written express directives from Ohana's management, and in violation of Section 1 of the Dillon-Capps Employment Agreement, Dillon-Capps refused to instate full administrative rights to the Ohana MS 365 Account to Ohana's President, CEO, and CFO.

11.  In their capacity as Vice President of Information Technology, Dillon-Capps acquired sole administrative control over the Ohana GoDaddy Account.

12.  On June 13, 2024, at 9:01 a.m. I sent an email to Dillon-Capps directing them to provide the Global Administrator rights over the Ohana MS 365 Account to Phil Leadore, of Hartman Executive Advisors, an established Maryland-based independent IT consulting firm which Ohana engaged to assist Ohana with IT matters, and to do so by 3 pm that day. The subject of my email was "Acknowledgment Required." At 11:57 a.m. Mr Dillon-Capps responded with an email with the subject "Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist." Copied on the email were, among other Ohana executives, Ohana's President, Justin Drummond. It was clear from the message that Dillon-Capps was refusing to comply with my

directive to grant Global Admin rights to Mr. Leodore. Dillon-Capps claimed that Ohana's efforts to regain control of its own systems, MS 365 Account somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave. Attached as **Exhibit B** hereto is a true and correct copy of the June 13, 2024 email exchange. Dillon-Capps failed to comply with the directive by 3 p.m. As a result Dillon-Capps continues to maintain and exercise exclusive administrative rights to the Ohana Microsoft 365 Account and administrative control of the Ohana GoDaddy Account.

13. As of 2:05 p.m. on June 13, 2024 I was unable to send or receive emails through my Ohana company email account. At 5 p.m. on June 13, 2024 I attempted to log into the Ohana Microsoft Teams account and was unable to do so. Given that Dillon-Capps is the only person currently possessing Global Admin rights it is clear to me that Dillons-Capps used those rights to lock me out of Ohana's computer systems and email. My inability, caused by Dillon-Capps, to communicate with any of Ohana's 1,472 employees or to access any of Ohana's personnel records has effectively rendered it impossible for me to perform in my critical role as Vice President of Human Resources for the company.

14. At 8:45 p.m. on June 13, 2024, at the direction of Ohana President Justin Drummond, I sent an email, to Dillon-Capps, using my personal email account, to which I attached a letter advising Dillon-Capps of the immediate suspension of his employment with Ohana. Dillon-Capps responded with an email stating that he did not recognize my authority as Vice President of Human Resources to suspend Dillon-Capps' employment, and falsely claimed that Dillon-Capps was acting upon the authority of Ohana President Justin Drummond. Attached as **Exhibit C** hereto is a true and correct copy of that email exchange and a copy of the suspension notice letter that was attached to my email.

4

119447\000002\4859-0397-1784.v1

. Richard Hartman Affidavit #1 of 2        Page # 4 of 18        Exhibit SCD-5  [State Court Document File # 5 of 303] .

15. Without administrative rights to the Ohana Microsoft 365 account, Ohana is unable to manage any of its Microsoft 365 software applications and related data. So long as Dillon-Capps continues to hold exclusive Global Admin rights to the Ohana MS 365 Account, and by extension Ohana's employee email accounts and data, those accounts and data are vulnerable to disruption by Dillon-Capps. So long as Dillon-Capps continues to hold exclusive administrative control over the Ohana GoDaddy Account, the direction of Ohana's registered domain names to Ohana's company email and websites are at risk.

16. Even a temporary disruption of the Ohana MS 365 Account and/or the Ohana GoDaddy Account would result in tremendous disruption of Ohana's business operation and irreparable harm to Ohana. Given Dillon-Capps refusal to act as directed by his supervisors and other behavior, Ohana believes that, in the absence of a Court Order directing Dillon-Capps to immediately provide the Global Administrator rights to Phil Leadore there is a significant risk that Dillon-Capps will take action to disrupt Ohana's software systems and business operations and to destroy or corrupt Ohana's data.

**I SOLEMNLY DECLARE AND AFFIRM UNDER PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE CONTENTS OF THE FOREGOING PAPER AND EXHIBITS THERETO ARE TRUE.**

Date: June 14, 2024

DocuSigned by:
*Richard Hartman*
9BBC0655212B4D9...
Richard Hartman

5

119447\000002\4859-0397-1784.v1

. Richard Hartman Affidavit #1 of 2   Page # 5 of 18   Exhibit SCD-5  [State Court Document File # 5 of 303] .



|RYAN WAGNER|
|---|
|VICE PRESIDENT OF INFORMATION TECHNOLOGY|
|EMPLOYMENT AND NON-DISCLOSURE AGREEMENT|
|2/10/2020|

This Employment and Non-Disclosure Agreement (the "Agreement") is entered into as of this 9th day of January 2020, by and between PF Growth Partners, LLC (the "Company"), and Ryan Wagner (the "Associate") (the Company and the Associate are collectively referred to herein as the "Parties").

Whereas, the Company and the Associate desire to enter into this Agreement that specifically set forth the terms and conditions of the employment relationship between the Parties and to specify certain non-disclosure and other obligations of Associate;

Now, therefore, in consideration of the Company's continued employment of Associate, the mutual agreements and representations of the Parties, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree, represent, and warrant as follows:

1. **Position**: The Associate is employed in the position of Vice President of Information Technology and shall faithfully and diligently perform all duties incident to that position as set forth in the position description to be provided to him/her and other duties as may be assigned by management from time to time. Associate agrees that the Company may change the duties or his/her position and that the terms of this Agreement will continue to apply after such change. Associate shall devote his/her entire time and attention to the business of the Company and use his/her best efforts to perform the duties in an efficient, trustworthy and businesslike manner. The position is classified as exempt from the overtime pay requirements of federal and state wage and hour laws.

2. **Salary, Benefits and Other Matters**: See attached Compensation Addendum.

3. **At-Will Employment**: The Associate acknowledges that he/she is an at-will employee. This Agreement is not an employment agreement for any definite term. Neither this Agreement, nor any other statement, act, nor representation by or on behalf of the Company, or any person or entity affiliated with the Company, shall change the at-will nature of the employment relationship between the Parties or constitute or be construed as a commitment to employ the Associate for any term. Each of the Parties reserves the right to terminate the employment relationship at any time and for any reason, with or without cause or advance notice. Further, the Company reserves the right to modify or terminate this Agreement in its discretion for any reason with advance written notice to the Associate.

4. **Non-Solicitation**: During the term of Associate's employment, Associate agrees not to solicit any employee or member of the Company on behalf of themselves or any other business enterprise to work, be employed, consult, or perform services, nor shall Associate induce any employee or member associated with the Company to terminate or breach an employment, membership or other relationship with the Company. During the one (1) year period immediately following the end of Associate's employment, Associate agrees not to solicit any employee or member of the Company on behalf of themselves or any other business enterprise for the purpose of competing with the Company in an area of business in which, at the time of the solicitation, the Company is engaged or had contracted to become engaged during that one year period, nor shall Associate induce any employee or member associated with the Company to terminate or breach an employment, membership or other relationship with the Company. The Associate further agrees not to provide employee or member information to third parties for the purpose of soliciting.

5. **Agreement to Not Disclose Confidential Information and Trade Secrets**: Employee acknowledges that he/she will have access to and knowledge of, and will use confidential business information of the Company. Employee further acknowledges that he/she will have access to and knowledge of, and will have contact with customers, vendors, suppliers, contractors, and others doing business with the Company. Accordingly, both during and after the term of this Agreement, Associate shall preserve and protect the confidentiality of, and not disclose to any third party without the Company's express consent, nor shall the Associate use for the

7. **Non-Disparagement**: Associate shall not make any disparaging, negative, or uncomplimentary statements, whether private or public, regarding the Company, including but not limited to any affiliated companies, the Company's officers and directors, and the Company's services and products. This obligation shall continue after the termination of this Agreement.

8. **Conflict of Interest:** The Associate must never allow themselves to be placed in a position where their personal interests are in conflict (or could be in conflict) with the interests or business of the Company. Associate must avoid any situation or activity that compromises, or may compromise, their judgment or ability to act in the best interest of the Company. Examples include: selling vitamins or supplements to members and employees as a side business; selling training or other services to members as a side business. The Company's policy on conflict of interest can be found in greater detail in the Associate handbook.

9. **Injunctive Relief:** In the event of a breach or threatened breach of this Agreement, the Parties acknowledge and agree that the Company will suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement. The Associate expressly waives any requirement based on any statute, rule of procedure, or other source, that the Company post a bond as a condition of obtaining any of the above described remedies. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company at law or in equity for such breach or threatened breach, including the recovery of damages from Associate.

10. **Attorneys' Fees:** In any judicial or non-judicial proceeding or enforcement action relating to any of the provisions of this Agreement in which the Company prevails, the Company shall be entitled to recover its reasonable attorneys' fees, together with all other costs and expenses incurred in connection with such proceeding or action.

11. **Binding Effect; Assignment**: This Agreement shall inure to the benefit of and be binding upon the Company, and its successors and assigns, and upon Associate and his/her heirs, next-of-kin, personal representatives and legal guardians. Associate hereby acknowledges and agrees that the Company has entered into this Agreement with Associate due to the unique and personal nature of the services to be rendered by Associate hereunder. Associate hereby acknowledges and agrees that Associate shall have only the right without the consent of the Company to assign Associate's right to receive any of the payments earned by Associate under this Agreement, but shall not have the right to delegate or assign any of Associate's duties or obligations under this Agreement. The Company shall have the right, without first obtaining the consent of Associate, to assign its rights under this Agreement and to delegate any of its obligations, liabilities and duties under this Agreement to another person or entity.

12. **Amendment; Waiver**: This Agreement may not be amended, modified or supplemented in whole or in part except by a written instrument making express reference to this Agreement and executed by both Parties. No waiver of any provision of this Agreement shall be valid unless in writing, making express reference to this Agreement, and signed by the Party against whom enforcement of such waiver is sought. The failure of either Party at any time to insist upon strict performance of any provision of this Agreement shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same provision at any future time.

13. **Pay Period, Pay Dates and Pay Corrections**: Pay periods generally end on the 5th and the 20th of every month, and the corresponding pay dates generally occur on the 15th and the 1st of every month. The Company is committed to following the requirements of the Fair Labor Standards Act and state law as they relate to the payment of wages to exempt and non-exempt employees. The Company prohibits improper deductions from the pay of its employees. If you believe the Company has improperly deducted wages from your pay, you should make a written inquiry to your manager, stating the date(s) of the improper deduction(s), the amount that was improperly deducted, the reason(s) given for the deduction and a statement of why the deduction was improper. Similarly, if you believe you have not been properly paid for all hours worked, you should submit a written inquiry to your manager detailing the amounts you believe were not properly paid. Upon receipt of an inquiry as described above, the Company will conduct a prompt investigation. If the Company determines that improper deductions were made from your pay, or that you were not properly paid for

all hours worked, it will take appropriate remedial action and will reimburse you for any amounts improperly deducted or unpaid. No retaliation will be tolerated against any employee for making an inquiry under this policy or for assisting or participating in any related investigation.

14. **Governing Law**: This Agreement shall be governed by the laws of the State of Maryland without regard to its choice of law or conflict of law provisions.

15. **Waiver of Jury Trial; Jurisdiction/Venue**: THE PARTIES AFFIRMATIVELY WAIVE THEIR RIGHT TO A JURY TRIAL ON ANY ACTION, SUIT, PROCEEDING, OR CLAIM ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT. Any disputes arising out of or in any way connected with this Agreement shall be resolved in the courts of Baltimore County, Maryland or the United States District Court in Maryland, and the Parties elect and waive any objection to the laying of jurisdiction in such courts in the event of such litigation.

16. **Confidentiality**: The Associate understands and acknowledges that this Agreement, the information contained herein and any attachments or addendums hereto are confidential, and the terms of this Agreement are subject to change based on revisions to the compensation structures, policies and practices and decisions of the Company.

17. **Resignation:** Should the Associate decide to leave PF Growth partners, LLC., it is requested that you offer three (3) weeks' notice to help distribute your current duties and provide training and shadowing at the direction of management. The nature of the Associates position is a unique one to the organization and responsible for considerable operational components. Therefore, we appreciate as much notice as possible, over and above the standard 2 weeks' notice. However, in order to be eligible for payment of any unused vacation payment upon resignation, we are requiring 3 weeks written notice for this position as opposed to the standard 2 weeks' notice required in the Associate Handbook. This agreement supersedes that section of the handbook for this position. The Company may at its sole discretion provide you with pay in lieu of notice.

18. **Severance:** If, within 15 months of the execution of this employment agreement, the Associate is separated from the Company without Cause (as defined in Section 18 (a) of this Agreement), the Associate shall be entitled a one time payment equal to Four (4) weeks base salary (as defined in the Compensation Addendum of this Agreement)

   a. For the purposes of this Agreement, "Cause" means any of the following:
      i. the wrongful appropriation for Associate's own use or benefit of property or money entrusted to Associate by the Company or its direct or indirect subsidiaries,
      ii. the conviction or granting of a Probation Before Judgment (or similar such finding or determination if not by a Maryland court) of a crime involving moral turpitude, deceit, or fraud,
      iii. Associate's continued willful disregard of Associate's duties and responsibilities hereunder after written notice of such disregard and the reasonable opportunity to correct such disregard,
      iv. Associate's continued violation of a Company policy after written notice of such violations (such policy may include policies as to drug or alcohol abuse) and the reasonable opportunity to cure such violations,
      v. any willful misconduct or gross negligence of Associate, which directly causes or is (in the reasoned opinion of the Company's legal counsel) reasonably likely to jeopardize or have a material adverse effect on the Company or the Company's financings; or
      vi. the continued insubordination of Associate and/or Associate's repeated failure to follow the reasonable directives of Company executives after written notice of such insubordination or the failure to follow such reasonable directives.

19. **Severability**: Each term and provision of this Agreement shall be considered severable. If any provision contained herein is held to be void, illegal or unenforceable, such illegality or unenforceability shall not affect

any of the other provisions herein, and the remaining provisions of this Agreement will continue to be given full force and effect. If any provision of this Agreement is construed to be unenforceable or unreasonable, the covenants herein shall be reduced and enforceable in their modified form to the maximum extent permitted by applicable law.

20. **Entire Agreement**:   This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether oral or written, between the Parties with respect to the subject matter hereof.

**AGREED UPON BY:**

_Ryan Wagner_
Associate: Print Name

_Jan 8, 2020_
Date

_Ryan_
Associate: Signature

_Jan 8, 2020_
Date

_G.J.G._
Supervisor: Signature

_1-10-20_
Date



| | RYAN WAGNER<br>VICE PRESIDENT OF INFORMATION TECHNOLOGY<br>COMPENSATION ADDENDUM<br>2/10/2020 |
|---|---|

**Base Salary:** $ 110,000 / Year.

**KPI Bonus:** Up to $1,000 / Month paid as a percentage based on KPI score.

**Annual Bonus:** Up to $3,000 per year if annual financial and operational goals are exceeded.
*(Plan and dollar amounts subject to change at any time)*

**Phone/Internet Reimbursement:** Up to $150 / per month. Reimbursement requested through online portal.

**Benefits:**
- Company benefits as described in the associate handbook are
- Health club membership.
- Participatory 401K plan based on plan requirements.
- Conventions and professional education-on agreed upon basis.
- Approved business expense reimbursements for club promotion.

**Start Date:** Your first day of this agreement is 2/10/2020.

**AGREED UPON BY:**

Ryan Wagner                                   Jan 8, 2020
Associate: Print Name                         Date

Ryan                                          Jan 8, 2020
Associate: Signature                          Date

Rich. G.                                      1-10-20
Supervisor: Signature                         Date

**From:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Sent:** Thursday, June 13, 2024 12:03 PM
**To:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>; Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Re: Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman  Silly Forms I will try this again with the form corrected

I hope this message finds you well.
I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.
**Illegal Directives and Retaliatory Actions**
The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

1. **Family and Medical Leave Act (FMLA) Violations**:
    1. Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.
2. **Maryland Retaliation Laws**:
    1. According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**
Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives**: Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats**: Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.
**Notification of Request for Confirmation**
Please be aware that I have requested Hartman Executive Advisors, including Phil Leadore and Dan Levett , to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.

**Request for Confirmation**
**Please confirm in writing by 1:30 pm EST** that you have **received this cease and desist notice** and that you **will comply with its terms**. Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly.
Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

<ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png>

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Ryan Dillon-Capps <Ryan.DillonCapps@ohanagp.com>
**Sent:** Thursday, June 13, 2024 11:57 AM
**To:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>; Justin Drummond <Justin.Drummond@ohanagp.com>; Stacey Wittelsberger (ESC) <srector@exeterstreetcapital.com>; C. Victor Brick <Victor@ohanagp.com>; Lynne Brick B.S.N. M.A. <lynne@ohanagp.com>; Terry Woods (Planet Fitness) <Terry.Woods@ohanagp.com>; Earl Ihle <Earl.Ihle@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>
**Subject:** Immediate Response to Rich Hartman Addressing Illegality and Cease and Desist

@Rich Hartman
I hope this message finds you well.
I am writing to formally address and respond to the recent directives and communications that have raised significant legal and ethical concerns.
**Illegal Directives and Retaliatory Actions**
The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws. Specifically:

119447\000002\4859-6575-5591.v1

. Richard Hartman Affidavit #1 of 2    Page # 12 of 18    Exhibit SCD-5  [State Court Document File # 5 of 303]  .

1. **Family and Medical Leave Act (FMLA) Violations**:
    1. Under 29 U.S.C. § 2615(a), it is unlawful for an employer to retaliate against an employee for exercising their rights under the FMLA. The directives and threats issued in your email are clear acts of retaliation against me for taking FMLA leave.
2. **Maryland Retaliation Laws**:
    1. According to Md. Code Ann., Lab. & Empl. § 3-801 et seq., retaliation against employees for reporting workplace violations or exercising their rights is prohibited. Your actions have created a hostile work environment and have directly undermined my professional responsibilities.

**Cease and Desist Demand**
Effective immediately, I demand that you cease and desist from any further retaliatory actions and coercive threats. This includes, but is not limited to, the following:

1. **Retaliatory Directives**: Any orders or demands that threaten disciplinary action or undermine my role and responsibilities.
2. **Coercive Threats**: Any communications that use threats of insubordination or other punitive measures as a means of compliance.

Failure to comply with this cease and desist demand will leave me with no option but to pursue all available legal remedies to protect my rights and ensure a safe and fair working environment.
**Notification of Request for Confirmation**
Please be aware that I have requested Hartman Executive Advisors, including [specific names], to confirm their qualifications and involvement in the PCI DSS v4 review. Ownership have been included in this communication thread to ensure full transparency and oversight.
**Request for Confirmation**

## Please confirm in writing by 1:30 pm EST that you have **received this cease and desist notice** and that you **will comply with its terms**. Failure to provide this confirmation will be taken as a refusal to comply, and I will proceed accordingly. Thank you for your immediate attention to this serious matter.

This message may include text created with the help of natural language processing.

<Outlook-3tuj510b.png>  Book time to meet with me


**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**

<ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png>

office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

119447\000002\4859-6575-5591.v1

. Richard Hartman Affidavit #1 of 2                    Page # 13 of 18                    Exhibit SCD-5  [State Court Document File # 5 of 303]  .

**"Culture eats strategy for breakfast"**

---

**From:** Rich Hartman <Rich.Hartman@ohanagp.com>
**Sent:** Thursday, June 13, 2024 9:01 AM
**To:** Ryan Dillon-Capps <Ryan.Wagner@ohanagp.com>
**Cc:** Karen Debus <karen.debus@ohanagp.com>
**Subject:** Acknowledgement Required

Ryan,
You have received repeated and multiple demands from your supervisor, the company president, and the owner of Ohana Growth Partners (OGP) since May 21, 2024 to add them and other individuals as Global Administrators. You have repeatedly refused and failed to obey these directives.  Such conduct constitutes insubordination which violates Section 1 of your January 8, 2020 Employment and Non-Disclosure Agreement requiring that you "faithfully and diligently perform . . . duties as may be assigned by management from time to time." In addition, the refusals violate Section 6.1 of the Ohana Associates Handbook ("Standards of Conduct") which prohibits the "failure to follow lawful instructions of a supervisor."

There are countless reasons why a company should have several Global Administrators, whether being tied up in business meetings, vacations, leaves of absence, or other activities that cause a single Global Administrator to be unavailable.  Your communication yesterday about your need for FMLA time off, to which you are entitled, makes self-evident the reasons for the company's demand to have several Global Administrators.

Glenn has signed an agreement on behalf of OGP with Hartman Executive Advisors (HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3 pm today.  We also instruct you to hold off on any major updates or changes to the system until HEA has had a chance to evaluate Ohana's IT systems.

We have evaluated the multitude of reasons for your refusal to obey management's directives.  We are not looking to debate these reasons any further, rather we require a simple acknowledgment that you will follow the directive or not and then do so immediately by 3:00 pm today. Failure to acknowledge this directive and to add Phil Leadore as a Global Administrator by 3:00 pm today will require the company to take appropriate action.

**Rich Hartman**
**VP of People and Culture**
**Ohana Growth Partners, LLC**

119447\000002\4859-6575-5591.v1

<ohanagrowthpartnersfinallogo_7fa8dba2-2909-40ee-839a-12ba06da3de6.png>

office 410-252-8058 x114
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

119447\000002\4859-6575-5591.v1

. Richard Hartman Affidavit #1 of 2   Page # 15 of 18   Exhibit SCD-5  [State Court Document File # 5 of 303]  .

From: **Ryan Dillon-Capps** <Ryan.DillonCapps@ohanagp.com>
Date: Thu, Jun 13, 2024 at 9:01 PM
Subject: Re: Ohana - Suspension
To: Rich & LeeAnn <richnlee@gmail.com>, Glenn Norris <glenn@ohanagp.com>, Karen Debus <karen.debus@ohanagp.com>, Rich Hartman <Rich.Hartman@ohanagp.com>
Cc: Justin Drummond <Justin.Drummond@ohanagp.com>

@Rich Hartman, I am writing to follow up to your attempt to submit a suspension letter to me. Given the current circumstances and the ongoing investigation, I do not recognize your authority to issue a suspension at this time. This matter has been discussed with Victor, Lynne, and Justin.  Lynne and Victor have empowered Justin with full authority to handle this situation. We have reviewed the scope of the situation in detail, and it is clear that any such actions must be halted immediately.
Please refrain from any further attempts to issue suspensions or take similar actions until this matter is fully resolved.

This message may include text created with the help of natural language processing.

 Book time to meet with me

**Ryan Dillon-Capps**
**Vice President of IT**
**Ohana Growth Partners, LLC**


office 410-252-8058 x109
212 W. Padonia Rd
Timonium, MD 21093

www.planetfitness.com

**"Culture eats strategy for breakfast"**

---

**From:** Rich & LeeAnn <richnlee@gmail.com>
**Sent:** Thursday, June 13, 2024 8:47 PM
**To:** Ryan Dillon-Capps <ryan.dilloncapps@ohanagp.com>; Glenn Norris <glenn@ohanagp.com>; Karen Debus <karen.debus@ohanagp.com>
**Subject:** Ohana - Suspension

119447\000002\4880-9673-2104.v1

> Some people who received this message don't often get email from richnlee@gmail.com. Learn why this is important

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ryan,

I am sorry to have to send this to you via my personal email account but since you have disabled my office email account this will have to suffice. I will also put a physical copy of this letter in the mail tomorrow. It will be directed to your address on file: 1334 Maple Avenue Essex, MD 21221. If this is not the correct address, please advise and provide the correct address.

Please find attached an official copy of your suspension from Ohana Growth Partners pending further notice.

Sincerely,

Rich Hartman
Vice President of Human Resources
Ohana Growth Partners, LLC.

119447\000002\4880-9673-2104.v1

. Richard Hartman Affidavit #1 of 2     Page # 17 of 18     Exhibit SCD-5  [State Court Document File # 5 of 303]  .

DocuSign Envelope ID: EC0B4CC1-E1D5-41A2-A727-A12E5CCBBF1D



Ohana Growth Partners, LLC
212 W. Padonia Rd.
Timonium, MD 21093

June 13, 2024

Dear Ryan,

Effective immediately, June 13, 2024, you are suspended from your employment with Ohana Growth Partners until further notice. This is due to your insubordination and failure to comply with directives from superiors, described in part to you in the email sent to you earlier today, and continuing since you received the email. The suspension is without pay. During the suspension, you will continue to have access to your medical benefits.

During this period of suspension, you are relieved of all of your duties and are not authorized to work on behalf of the company or have any electronic, internet, physical, or other access to or connection with any company property or systems, including but not limited to company IT systems and equipment. In addition, you are not authorized to enter any company facility.

You will be notified in writing of any further changes.


Sincerely,

*[signature]*

Rich Hartman
VP of People and Culture