# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS | Civil Action |
| *Plaintiff,* | No. **1:24-CV-3744** |
| vs. | |
| OHANA GROWTH PARTNERS, LLC *et al* | Hon. **Judge Hurson** |
| *Defendants* | |

AFFIDAVIT OF RYAN DILLON-CAPPS AMENDED COMPLAINT STATEMENT OF FACTS

I, Ryan Dillon-Capps, being over the age of eighteen (18) and competent to testify, and having personal knowledge of the facts contained herein, state as follows:

1       My name was legally changed by the Circuit Court of Baltimore County in 2023 from Ryan Anthony Wagner to Ryan Aurelius Dillon-Capps, and my gender was changed on my Birth Certificate to X by the State of Illinois in 2024.

2       On June 26th, 2024, associate Judge Michael S. Barranco of the Circuit Court of Baltimore County remanded my claim under the Family Medical Leave Act to federal court. *"if you contend that they're violating the law… you can pursue that claim either administratively or -- or by law. You can go down to federal court and file a – a, if there is such a private cause of action for violation of the FMLA".* See ECF 16-0, at 160.  The state case was civil action C-03-CV-24-002264 and nothing was adjudicated to final judgement because my employer's case was dismissed without prejudice on November 6th, 2024, and none of my other claims were acknowledged as counterclaims by the state court.

3       Richard Hartman's affidavit to the state court on June 14, 2024, was filed with the state pleading. At the top of page 4, the head of Human Resources for Ohana Growth Partner, LLC

says *"Somehow amounts to retaliation against Dillon-Capps for requesting family and medical leave."* See Id, at 157.

4        On June 26th, 2024, Robert Brennen from Miles & Stockbridge, P.C., said to Judge Barranco under oath *"The facts, which are established in the record that's already before the Court, and I don't think there's any dispute of it is, this concept that the -- a demand was made to, uh, the defendant on June 13th, an hour after he'd asked for -- for FMLA leave, uh, and we're forcing him to work"* See Id, at 159.

5        On January 4th, 2024, I requested FMLA leave via email to Richard Hartman, Glenn Norris, Justin Drummond, and Holly Drumheller Butler. "Dear HR, I am writing to inform you that I will be taking leave under the Family and Medical Leave Act (FMLA) for mental health reasons." *See* ECF 16-3, at 1-2.

6        On January 8th, 2024, Karen Debus provided me with FMLA Notice of Eligibility Form WH-381 that stated I was eligible for FMLA leave. See ECF 16-3, at 4. Ohana requested that my FMLA leave be supported by a certificate by a Health Care Provider for the Employee. See Id, at 5. I satisfied this request by returning WH-380-E after it had been completed by my health care professional on January 22, 2024, and March 12, 2024, and included a letter from my health care provider that Richard Hartman requested.   See Id, at 10-21.

7        I also filed with the Circuit Court of Baltimore County a letter from my Diagnosing Psychiatrist that was dated November 23, 2013, that said *"[Ryan Dillon-Capps] mental impairments are permanent.  Physical symptoms of his mental impairments…are episodic and recurring, they impair his major life activities when they are active….resulting in Ryan requiring additional treatment sessions and emergency medical care. Given the nature of his mental*

*impairments, [Ryan Dillon-Capps] needs reasonable accommodations under the ADA or the Rehabilitation Act of 1990 and its subsequent 2008 amendment."* See Id, at 22.

8      The interference of FMLA leave rights began within days of my request on January 4, 2024.  On January 10, 2024, Richard Hartman told me via text message that it was company policy to not allow work while on FMLA leave. See ECF 16-2, at 127. I took a screenshot of the last text which read *"When I say preclude, I mean our practice.  You are correct in that we cannot require you to work but it is not your choice to work while on leave.  Our Policy is to not allow work while on leave."*, and then I emailed him with the subject "Clarification of Text Message Requested." See ECF 16-3, at 8.

9      My email to Richard Hartman cited the Employee Handbook which showed that intermediary Family Medical Leave was supported by existing policy, and that the only restriction on working while on leave was that I was prohibited from working somewhere else while on leave. See Id, at 8-9.

10     They continued to try and apply more rigid polies on me versus other employees, such as Darren Koritzka who was an employee who reported to me and went on FMLA leave a prior year.  Additionally, there was an FMLA management training that I attended in 2024, and questions that were asked in the training received answers that further supported that my FMLA leave policies were more ridged than policies being applied to those in lower management and hourly roles.  Furthermore, policies they wanted to apply to my FMLA leave were more restrictive than what was applied to me before I went on FMLA leave.

11     After I went on FMLA leave, Glenn Norris assumed control over the IT Department and I I was given a different position without being notified of this change. I no longer had any

hiring/firing influence or power, I was not allowed to work under my own discretion, Ohana did not want me to perform IT work, and I did not have supervisory authority.

12      On Friday June 7, 2024, at 5:35 PM, I texted Justin Drummond and said *"I believe that I may have found a way for you to have access to a Global Admin account. Can you review the PCI DSS 4 documentation before 5 pm on Monday and talk with me on Tuesday?"* Justin Drummond received links to the PCI DSS 4 documentation and agreed to coordinate with me on Monday to receive Global Administrator access on Tuesday June 11, 2024. See ECF 16-0, at 42-43

13      On Monday and Tuesday, June 10th and 11th, 2024, Justin Drummond evaded satisfaction and said that he would meet with me the following week to receive Global Administrator access. See Id, at 44.

> **The Global Administrator access issue was resolved under the June 7, 2024, accord with Justin Drummond. Justin Drummond could have received access and then given access out as he saw fit.**

*14*      On June 11, 2024, I had a phone call with Glenn Norris and Justin Drummond where I repeated my request for Ohana Growth Partners, LLC contact information of their legal representation. See Id, at 12, 95, 96, 109.

*15*      On June 12, 2024, I emailed Richard Hartman, Glenn Norris, and Justin Drummond to inform them that I was using my intermittent FMLA leave for the day. *"I am taking FMLA time for leave."* See Id, at 115.

*16*      On June 13, 2024, at 7:12 AM, I emailed Glenn Norris, Richard Hartman, and Justin Drummond to inform them that I was using my intermittent FMLA leave for the day. *"I am going to be out for a few hours today and not sure when I will be back on. It depends on how*

*well things go today. @Glenn Norris @Richard Hartman @Justin Drummond This is FMLA".* See Id, at 14.

*17*    On June 13, 2024, at 9:01 AM Richard Hartman sent an email to me that said, *"Your communication yesterday about your need for FMLA time off, to which you are entitled, makes self-evident the reasons for the company's demand to have several Global Administrators."* The email also said that Glenn Norris demanded that *"[I] add Phil Leadore from [Hartman Executive Advisors] as a Global Administrator by 3 pm today."* See Id, at 26.

*18*    In addition to Justin Drummond, I had been trying to give Global Administrator access to Geoff VanMaastricht from Planet Fitness, Rolando Pedraza from CieloIT, and Karen Cepress of Ohana Growth Partners.  See ECF 16-2, at 88-92.

*19*    I attempted to reach Phil Leadore and Daniel Levitt from Hartman Executive Advisors twice on June 13, 2024, via email to provide them with Global Administrator access.  First at 11:48 AM and then 3:10 PM. See Id, at 81, 86.

*20*    I notified Richard Hartman that Glenn Norris' demand to work on June 13, 2024, was being accommodated at 12:02 PM and the email was sent to Richard Hartman, Karen Debus, Stacey Wittelsberger, C.Victor Brick, Lynne Brick, Terry Woods, Earl Ihle, and Glenn Norris. *"The email you sent today, June 13, 2024, demanding the addition of Global Administrators within a six-hour window under threat of insubordination charges, is not only inappropriate but also illegal. These actions constitute retaliation under the Family and Medical Leave Act (FMLA) and relevant Maryland state laws."* See ECF 16-0, at 20-21.

*21*    Glenn Norris and Richard Hartman retaliation against me had been extended to indirect retaliation by targeting Darren Koritzka, Mareann Piñera, and CieloIT employees, who were providing Help Desk as a service, with increased frequency since January 4th. This has turned

the situation into a labor dispute where I was negotiating for the employment conditions and terms of employment for all of us. I communicated this to Robert Brennen on June 18, 2024, *"There have been two formal written requests for your information because I want this to end. They persist, and when not targeting me, they go after Darren, Ann. and the help desk. Ann requested time off for mental health reasons yesterday. When I inquired about her well-being, she disclosed that she had experienced a panic attack but did not recognize it until she saw a doctor."* See ECF 16-2, at 101.

*22*     I pleaded with Robert Brennen to help us negotiate the end of the hostile working conditions impacting all of us *"I would greatly appreciate anything you could do to help us negotiate an end to this. The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone. it has been clearly documented in writing that they are also targeting Ann. Darren, and Cielo. There are more examples stretching back even further for all of us."* See Id.

*23*     Back on June 13, 2024, the timeline of events thus far has been:

    1.     My 7:12 AM FMLA leave notice;

    2.     Richard Hartman 9:01 AM email stating Glenn Norris was demanding I work;

    3.     My 11:48 AM email to Phil Leadore and Daniel Levett of HEA;

    4.     My 12:02 PM email to Richard Hartman, Karen Debus, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, Earl Ihle, and Glenn Norris.

24     At 2:05 PM, I followed up on the 12:02 PM email *"I am writing to outline the significant legal risks associated with the current handling of our internal investigation into fraud and hostile workplace claims. Additionally, I want to highlight the potential liabilities arising from*

*the actions of our third-party vendors, and to stress our duty to stop workplace harassment."* See ECF 16-0, at 17-20.

25     The email discussed several legal issues connected to employment and labor laws:

      1.       FMLA Interference and Retaliation;

      2.       Employers Duty to Stop Harassment;

      3.       Obligations to investigate reports of accounting fraud/irregularities;

      4.       Unauthorized use of my name/identity on official franchisor cyber security compliance forms;

      5.       Negligent hiring and supervision occurring from those responsible and connected with issues 1-4.

26     At the heart of this case my claims arise from employment and labor laws, and then the violations of law that arise from the defendants doing everything except abide by the law.

      1.       Accounting Irregularities were reported on October 16, 2023.

      2.       Hostile Work Environment was reported in November 2023.

      3.       Fraudulent use of my name/identity and fabricated emails were reported in December 2023.

27     I went on FMLA leave because Ohana Growth Partner's hostile and retaliatory response to these reports at the end of 2023 had caused my PTSD to become significantly worse and I began experiencing daily panic attacks. Then they continued to double down on illegal conduct for six months until on June 13, 2024, at 2:20 PM Richard Hartman crossed the line by placing Darren Koritzka on a leave of absence. This was only 15 minutes after the 2:05 PM email that said *"We are preparing to take the next steps to ensure that these issues are addressed properly. We do not require a member of ownership to agree with the facts as presented, but we do expect*

*acknowledgment that we will be speaking with an attorney about the items disclosed here and potentially other items that have not yet been disclosed. We need assurance that you will come to the table in good faith."* We, as in the collective bargaining plural, were engaged in a labor dispute because Glenn Norris and Richard Hartman had escalated the events into a collective labor dispute. See Id, at 20.

At 2:20 PM, Darren Koritzka immediately contacted me, and in a later follow up phone call Darren Koritzka told me that Richard Hartman handed him the letter then said, "it's like a paid vacation". See Id, at 27-29.

At 2:21 and 2:22 PM, I individually texted Justin Drummond, C. Victor Brick, and Lynne Brick the leave of absence letter given to Darren Koritzka. See Id, at 32-33.

At 2:29 PM, I asked Mareann Piñera to finish out the day working from home because I was worried about her safety. See Id, at 30-31, 45.

28      At 2:46 PM and then at 2:48 PM, I sent two emails to Justin Drummond, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, and Earl Ihle with the subject header "*CRITICAL! READ ME NOW!! Rich Hartman Critical Situation!"* and stated *"Rich Hartman suspended Darren…In response to this situation, I have instructed my team members to go home immediately for their safety and well-being… I am sending my wife to another location and am working on having security arrive at my home immediately. In addition to these steps, Rich Hartman's account has been disabled, and all his sessions have been revoked to prevent any further unauthorized actions."* See Id, at 15-17.

29      At 3:29 PM, I sent a group text to Justin Drummond, C. Victor Brick, and Lynne Brick that said, *"I need someone to acknowledge they are on it and getting Rich to calm down or something".* Followed by *"I am worried for my safety and my wife, I am sending her to safety*

*and silence is not assuring me that anyone is on this"* at 3:32 PM. Then at 3:43 PM texted

*"Michael and Ryan were notified to make decisions for [Brick Bodies] and I directed them to*

*seek guidance from you 3 and chuck"* with the next text message at 3:52 PM as *"I have to*

*assume I am alone because Beyer, Gerber, and Glenn are not people I can trust at this time.*

*Please Confirm! Don't leave me as the most senior executive to make decisions for Ohana"* See

*Id, at 39.*

30      Finally, at 4:06 PM I get a response from Justin Drummond in the group chat *"Ryan,*

*please know we appreciate your concern for the well-being of the company, but the company's*

*request has been that you immediately instate the admin rights for Mr. Leadore and our owners*

*will accept whatever consequences that may follow.",* and I responded *"Mr Leodore is*

*unresponsive"* at 4:07 PM, *"same with [Mr] Levett"* at 4:07 PM. *"Darren is not even involved*

*in the investigations. This is far beyond reasonable"* at 4:09 PM, *"I am acting like we have a*

*man with nothing to lose who saw [the 2:05 PM email] and is dangerous".* At 4:10 PM, *"[it's]*

*[erratic] behavior".* At 4:10 PM, *"I need to assume that [Richard Hartman's] actions are*

*indicating that [Richard Hartman]* believes he is at risk and that is [dangerous]."* Victor Brick

replies with *"Justin is the president of the company and has complete authority to handle this*

*situation".* See Id, at 39-40.

31      I texted Justin Drummond directly at 4:15 PM *"call? talk? Please?"* and he texted back

"I am not in good cellular service location. I cannot answer the phone". I asked Justin

Drummond to help me reach Phil Leadore and Daniel Levett who had remained unresponsive. At

4:25 PM Justin Drummond said, "The company is working with professionals to handle this

situation, We will update you shortly". At 4:25 PM I texted Justin Drummond "I have said over

and over again that I want help, I emailed them at the start of this and begged them to help us",

"they won't respond". Between 4:26 and 4:29 PM, I updated Justin Drummond on my efforts to reach Phil Leadore and Daniel Levett by forwarding my emails to him. At 4:30 PM my text was "I want them to be backup right [now]." See Id, at 48-49. See ECF 16-2, at 86.

32      I believe that through discovery we will find that during this text conversation Justin Drummond was having a conversation with Richard Hartman, and that my texts to Justin Drummond were interfering with his attempt to access Teams on his phone as my text messages popped up. Richard Hartman's Affidavit states *"At 5 p.m. on June 13, 2024 I attempted to log into the Ohana Microsoft Teams account and was unable to do so."* See ECF 23-5, at 4.  Justin Drummond's text message at 5:06 PM, *"Ryan you have laid out your allegations and claims. You do not need to continue to text me all of this.  As stated before we are working with professionals and will be in touch".* At 5:18 PM, *"Ryan Please stop with all these texts."* See ECF 16-0, at 56, 60.

33      The 5:18 PM text is the last communication from Justin Drummond before his email at 9:54 PM that said, *"I incorporate into this email Rich Hartman's email to you today notifying you of your suspension and hereby confirm that you were suspended upon receipt of that email. Please follow fully the directives in that suspension notification. I also hereby confirm that you have been directed by me to immediately comply with Rich Hartman's email of 9:01 am this morning by immediately adding Phil Leadore from HEA as a Global Administrator."* See ECF 16-2, at 94.

34      Victor Brick's last messages to me was via text and it was prayer hands at 4:14 PM which was in response to my text in the group chat "*understood and all my well wishes for all of you, I will ask my mom to pray for all of you mahalo*" and then again at 7:59 PM in response to

*"'I will pray without ceasing for Vicki [B]rick and you and Caroline like I always do' from my mom"* See Id, at 41. See 16-2, at 94.

35      After the 9:01 AM demand email that interfered with my FMLA leave rights, Richard Hartman's next message to me was at 8:48 PM when he emails me to suspended me. None of the other Defendants communicated to me that day, and Richard Hartman's emails and letter informing me that I was suspended said that I was suspended because *This is due to [my] insubordination and failure to comply with directives from supervisors, described in part to you in the email sent to you earlier today, and continuing since you received the email. The suspension is without pay."* and the letter instructed me to remove my possession of company IT equipment, to do no work on behalf of the company, and to not access the company Microsoft 365 cloud systems and services, which include my work email -- during the period I was suspended. *"During this period of suspension, [I was] relived of all [my] duties and not authorized to work on behalf of the company or have any electronic, internet, physical, or other access to or connection with any company property or systems, including but not limited to company IT systems and equipment."* See ECF 16-2, at 93, 95. I complied with Ohana's request by removing my access to equipment and systems and stopped using my work email.

---

**Justin Drummond evaded receiving Global Administrator Access, mislead me into believing it would be satisfied the following week. Then Glenn Norris introduced Phil Leadore from Hartman Executive Advisors, and Phil Leadore never responded to my attempts to reach him even after Justin Drummond told me to wait for them to respond. The next thing I know I am suspended, and then the following day they file a lawsuit against me on June 14, 2024, at 12:18 PM.**

---

36      Robert S. Brennen, Steven D. Frenkil, and Victoria K Hoffberger from Miles &

Stockbridge P.C. filed the Complaint on June 14, 2024. See ECF 23-1, at 10.

37      I emailed Miles & Stockbridge P.C. on December 20, 2023, at 2:28 PM from

ryan@mxt3.com, seeking legal representation on legal issues related to employment law,

whistleblower protections, defamation, and stated that I was concerned that the *"meeting*

*scheduled for tomorrow afternoon [that] could include retaliation for a recently filed HR*

*complaint as well as retaliation against me for being a whistleblower"*. I provided my personal

mobile phone number, email address, and mailing address. Steven D Frenkil replied to

ryan@mxt3.com a few hours later at 5:11 PM to inform me that Miles & Stockbridge P.C. had a

conflict of interest.  See ECF 16-14, at 1-2.

38      Holly Drumheller Butler texted me on December 22, 2023, at 10:52 AM *"Good morning,*

*Mr. [Dillon-Capps]. My name is Holly Butler; I am an attorney with the law firm of Miles &*

*Stockbridge. I have been engaged by Obama Growth Partners to conduct an independent*

*investigation relating to your recent allegations regarding potential violations of the law."* See

ECF 16-0, at 1.

39      This is referred to as the Fraud Investigation, and it was initiated because of two

discovered acts of fraud by Andrew Dinh of Onsite Solutions, Inc in November and December

2023:

> 1.      Andrew Dinh emailed Kristen Seiler, William "Bill" Flax, Breyana Long, and me
>
> on September 21, 2021, at 5:01 PM a signed contract for San Bruno CityNet Services
>
> (Internet) by William "Bill" Flax on September 4, 2020.  Then Andrew Dinh emailed
>
> Joshua "Josh" Beyer and William "Bill" Flax at 5:31 PM on September 21, 2021 that
>
> appeared to contain an email from May 25, 2021, at 12:25 PM  that said I was

unresponsive to an email on March 18, 2021, at 10:43 AM and contained an unsigned

copy of the same San Bruno CityNet Services contract.  Forensic analysis of the meta

data of the email showed that the March dated emails were part of the body of the email

and were fabricated to look like real emails. See ECF 16-0, at 101-104.

2.      On October 23, 2023, Andrew Dinh filed the Planet Fitness new club Cyber

Security and In Media Presale Information compliance documentation online, and Geoff

VanMaastricht emailed Andrew Dinh asking him to confirm that the Low Voltage

Installer was CieloIT as the compliance documentation stated.  Andrew Dinh replied to

Geoff VanMaastricht and said *"Sorry, CieloIT is the IT Company supporting Ohana*

*Growth partners.  Onsite Solutions Inc will be doing the installation on the new build on*

*behalf of the ownership group."* See ECF 16-7, at 65-67.

        On November 30, 2023, I asked Geoff VanMaastricht if he could send me some

of the other compliance forms that have been previously completed. Geoff VanMaastricht

sent me a small selection of previously completed Ohana Growth Partner, LLC Planet

Fitness new club Cyber Security and In Media Presale Information compliance

documents. The selection included multiple years of new club compliance forms that

were completed by various people. The Wheaton, MD (PF Club ID 3375) and San Bruno,

CA (PF Club ID 2638) showed my name and email address as the person who submitted

the Planet Fitness new club Cyber Security and In Media Presale Information compliance

documentation online. However, I never completed these or any other new club Cyber

Security and In Media presale compliance documents, and never authorized anyone to

use my name/identity. See Id, at 73-75, 100-102.

- Gallery Place, DC (PF Club ID 135): Non-Certified Vendor (Onsite Solutions, Inc.) by Bill Flax. See Id, at 76-78.

- Monrow, WA (PF Club ID 3022): Non-Certified Vendor (Onsite Solutions, Inc.) by Andrew Dinh. See Id, at 79-81.

- Parkland, FL (PF Club ID 3254): Non-Certified Vendor (Onsite Solutions, Inc.) by Andrew Dinh. See Id, at 82-84.

- Takoma Park, MD (PF Club ID 3799): CieloIT by Andrew Dinh. However, Onsite Solutions, Inc. did Takoma Park Low Voltage. See Id, at 85-87

- Marysville, WA (PF Club ID 3804): Non-Certified Vendor (Onsite Solutions, Inc.) by Andrew Dinh. See Id, at 88-90.

- Delray Beach, FL (PF Club ID 3311):  Cielo IT by Eduardo Garcia. See Id, at 91-93.

- Ellicott City, MD (PF Club ID 08076): CieloIT by Eduardo Garcia.  However, Onsite Solutions, Inc. did the Low Voltage Installation, and I do not believe that Eduardo Garcia completed this. See Id, at 94-96.

- Lake Stevens, WA (PF Club ID 4119): Non-Certified Vendor (Onsite Solutions, Inc.) by Andrew Dinh. See Id, at 97-99.

40    The fraud investigation began in December 2023, and I asked for Ohana Growth Partners, LLC to get an independent third-party investigator.  Holly Drumheller Butler introduced herself as being that independent third-party investigator. I accused Holly Drumheller Butler in March of 2024 of not following any standard procedure. I said that she was overly focused on me personally being involved which was contrary to the intention of the independent third-party investigation and she was interfering with my ability to meet other demands from Glenn Norris while also being able to use any of my intermittent FMLA leave.

41      A week later Karen Debus and Richard Hartman emailed me to inform me that the

Hostile Workplace Investigation from my November 2023 report was closed with no supporting

findings.  I responded to Karen Debus, Glenn Norris, Justin Drummond, and Richard Hartman

by telling them *"I've consistently offered a witness and detailed information regarding an*

*August 3, 2021, incident reported by Shannon Anderson against Josh Beyer, involving verbal*

*abuse and intimidation."* I confirmed with Shannon Anderson before writing that email that no

one had ever reached out to him about this incident, and he confirmed that since complaining

directly to Glenn Norris on or around August 3, 2021 that I was the only person who has since

asked him about it.  See ECF 16-0, at 76-77.

42      After making my accusations in March 2024, Holly Drumheller Butler had no further

communication with me until June 5, 2024, when she responded to my 8 AM email requesting

Miles & Stockbridge P.C. representation status of Ohana Growth Partners, LLC. Holly

Drumheller Butler replied refusing to confirm representation status and directing me to ask

Ohana Growth Partners, LLC. Holly Drumheller Butler email from June 5, 2024, at 2:19 PM:  *"I*

*do not divulge the names of my clients or the extent of my representation of them"* My June 5,

2024, 2:24 PM email said  *"I need to clarify whether you are still representing Ohana Growth*

*Partners"*… *"Could you please confirm if you are currently acting as the legal counsel for*

*Ohana Growth Partners"*. Holly Drumheller Butler Replied on June 5, 2024, at 2:29 PM:  *"if you*

*have questions –whether about legal representation or otherwise, I recommend you direct them*

*to the company. I will not be responding further".* See Id, at 93-94.

43      Richard Hartman emailed me the closure of the Fraud Investigation on June 5, 2024, at

2:29 PM citing nothing illegal was found. See Id, at 105.  I responded through a series of emails

from June 6-10 to Richard Hartman, Justin Drummond, Stacey Wittelsberger, C. Victor Brick,

Lynne Brick, Terry Woods, Earl Ihle, and Glenn Norris with the first email on June 5, 2024, at

3:49 PM recapping the hostile workplace investigation, unauthorized use of my name to attest

compliance documentations, accounting irregularities, and fabricated/altered emails and

documents. See Id, 98-105. The rest of the emails from June 6-10, 2023, were inclusive of Holly

Drumheller Butler. See ECF  16-7, at 103-114.

44      On June 10, 2024, at 4:11 PM, Glenn Norris setup a meeting with Curtis Krawets from

Alaris Equity Partners, Mike Ervin from Alaris Equity Partners, Richard Hartman, Steven D.

Frenkil, and Justin Drummond.  The meeting was scheduled for 2:30 to 2:50 PM on June 11,

2024. See ECF 16-0, at 107. On June 11, 2024, at 9:28 AM Glenn Norris setup a meeting with

Andrew Dinh that was scheduled for 3:30 to 4:00 PM on June 11, 2024. See Id, at 108.

45      With the complaint filed on June 14, 2024, Robert S. Brennen, Stephen D. Frenkil, and

Victoria K. Hoffberger filed to the Circuit Court of Baltimore County a Certificate of Notice

Regarding Motion for Temporary Restraining Order as the legal representation for Ohana

Growth Partners, LLC. Miles & Stockbridge P.C. said "*in accordance with Maryland Rule 15-

504(b), that on June 14, 2024 at 11:49 a.m. [Robert Brennen] transmitted an email to Defendant

Ryan Dillon-Capps at ryan.dilloncapps@ohanagp.com to which I attached copies of the

Plaintiff's Complaint, Motion for Temporary Restraining order and Preliminary Injunction,

Memorandum of Law in support of that motion and proposed Temporary Restraining Order, and

in which I advised Defendant of Plaintiff's intention to seek immediate action from the Court on

Plaintiff's Motion for a Temporary Restraining Order.*" See ECF 23-9, at 1.

46       On June 17, 2024 at 9:13 AM, Robert Brennen emailed ryan.dilloncapps@ohanagp.com

and said *"we have been advised by Judge DeSimone's Chambers that the Court will hear

Ohana's Motion or a Temporary Restraining Order this morning as soon as possible after I*

*arrive at the courthouse, which ought to be in about 35 minutes."* See ECF 16-14, at 6.  Since June 14, 2024, I was not accessing my work email, ryan.dilloncapps@ohanagp.com, and no attempt was made to reach me at ryan@mxt3.com or my personal mobile number despite Miles & Stockbridge P.C. and Ohana Growth Partners, LLC having both of them.

47      The pleading on June 14, 2024, contained the Complaint, Memorandum of Law in Support of the Temporary Restraining Order and Preliminary Injunction, Motion for Temporary Restraining Order and Preliminary Injunction, Affidavit of Richard Hartman as Exhibit 1, Affidavit of Justin Drummond as Exhibit 2, and Floor Notes of 1998 House Bill 0925 as Exhibit 3.  Ohana Growth Partner, LLC civil action claim had the following three counts:

     1.      Count I: "[I] repeated[ly] refused to comply with Ohana's directives to provide Global Admin rights to Mr. Leadore and others violate[d] Section I of the Dillon-Capps Employment Agreement, which require[d] that [I] "faithfully and diligently perform… duties as may be assigned by management from time to time."

     2.      Count II: [I] repeated[ly] refused to comply with Ohana's directives to provide Global Admin rights to Mr. Leadore and others violate[d] [my] duty of loyalty to Ohana as their employer.

     3.      Count III: MD. CODE ANN., CRIM. LAW., §7-302(g) entitled Ohana to bring a civil action against me because Ohana suffered a specific and direct injury because of the Defendant's violation of MD. CODE ANN., CRIM. LAW., §7-302(c).  Claiming *"[I] deprived Ohana of the right to control Ohana's property, to wit, the Ohana MS 365 Account and the Ohana GoDaddy Account and has created a risk of imminent and irreparable harm to Ohana."* See ECF 23-1, at 9.

48      In addition to there never being any refusal, Ohana had not mentioned GoDaddy prior to the lawsuit being filing and Ohana always had control over their MS365 Account through their IT Department which distributed administrative roles across multiple people, including multiple Help Desk agents, Dante Martinez, Mareann Piñera, Darren Koritzka, LeeAnn Hartman, Justin Drummond, and myself. Between June 27, 2024 and July 2, 2024, Daniel Levett worked with Dante Martinez who had multiple administrative roles which included Exchange Administrator and User Administrator. Dante Martinez and Daniel Levett did a shared screen teams' session on June 27th, and together they confirmed the GA.breakglass and null.backup Global Administrator accounts were excluded from multi-factor authentication requirements. *"all of the existing Global Admin accounts set up in the system are expressly excluded from multifactor authentication Conditional Access policies"*. See ECF 16-15, at 40.

49      Daniel Levett concludes his affidavit by saying "[I], or anyone else, could likely access the Null Backup account without any multifactor authentication whatsoever and would only need the password for the account. See Id, at 62. Daniel Levett stated "[Dante Martinez] then used his exchange Admin rights to provide my dan.levett@ohanagp.com account the ability to access and search the Defendant Ryan Dillon-Capps email mailbox", "and initiated a password reset of any account associated with the Defendant Dillon-Capps Ohana email account, ryan.wagner@ohanagp.com.  That request resulted in my being sent a link for resetting the password for such an account." See Id, at 58-59.

> **Daniel Levett's affidavit demonstrates that Dante Martinez, Help Desk Manager for Ohana Growth Partners, and the supporting Help Desk agents could, at any time, use their Exchange and User Administrative access to request a password reset for Global Administrator accounts and then access the corresponding Global Administrator email account to complete the reset.**

.    2025-02-06

> **Accordingly, Ohana Growth Partners, LLC has always maintained full access to its Global Administrator accounts.**

50    On June 17, 2024, at 10:50 AM associate Judge Marc DeSimone Jr. Granted the Temporary Restraining Order that said I was ordered to *"A. [Access and Use Ohana's Microsoft 365 Account to] provide Global Administrative Rights for Ohana's Microsoft 365 Account to Phil Leadore of Hartman Executive Advisors and cease and desist the use of any of access to or use of Ohana's Microsoft 365 Account and related applications, including Ohana's email systems. B. [Access and Use Ohana's GoDaddy Account to] provide Administrative Rights for Ohana's GoDaddy Account to Phil Leadore of Hartman Executive Advisors and cease and desist the use of any of access to or use of Ohana's GoDaddy Account and related Internet domain name registrations."* Judge DeSimone Jr. order assigned a bond *"in the nominal amount of $1.00 (one dollar)."* Judge DeSimone Jr. order stated, *"this TRO shall remain in effect for ten (10) days from the date [June 17, 2024].", "[Ryan Dillon-Capps] or any other person affected by this TRO may move to dissolve or modify this TRO on two (2) days' notice to the Plaintiff".* Judge DeSimone Jr. granted the TRO based on the following findings: *"[1] The requested TRO is necessary: (i) to prevent imminent and irreparable harm to Ohana, for which there are no adequate remedies at law and (ii) to maintain the status quo until a full adversarial hearing on Ohana's concurrent Motion for a Preliminary Injunction; [2] Ohana is likely to succeed on the merits of its claims against Ryan Dillon-Capps ("Dillon-Capps"); [3] The irreparable harm that would befall Ohana absent the requested TRO would far outweigh any potential harm to the Defendant should the injunction be granted; [4] Entry of this TRO serves the public interest in enforcing valid contracts."* See ECF 23-8, at 1-2.

51    Associate Judge Marc DeSimone Jr. had the following fact set when he made this ruling:

1.      The Employment Contract provided to the court by Richard Hartman is missing

pages, including the entirety of section 6.  See ECF  23-5, at 6-7.

2.      The email sent at 9:01 AM on June 13, 2024, by Richard Hartman, said *"Glenn*

*[Norris] has signed an agreement on behalf of OGP with Hartman Executive Advisors*

*(HEA) and demands that you add Phil Leadore from HEA as a Global Administrator by 3*

*pm today."* See ECF 23-5, at 14.

On June 14, 2024, Justin Drummond affirmed  *"At my direction, on June 13,*

*2024, at 9:01 Ohana's Vice President of Human Resources, Richard Hartman, sent an*

*email to Dillon-Capps directing them to provide the Global Administrator rights over the*

*Ohana MS 365 Account to Phil Leadore, of Hartman Executive Advisors"*. See ECF 23-

6, at 2.

On June 14, 2024, Richard Hartman affirmed *"It was clear from the message that*

*Dillon-Capps was refusing to comply with **my** directive to grant Global Admin rights to*

*Mr. Leodore." See* ECF *23-5, at 2-3.*

3.      Richard Hartman's affidavit changed the words and meaning of the webpage

https://learn.microsoft.com/en-us/microsoft-365/admin/add-users/about-admin-

roles?view=o365-worldwide from *"[Microsoft] recommend[s] [Ohana] have at least a*

*Privileged Authentication administrator in the event a Global administrator is locked out*

*of their account."* to *"[Microsoft] recommend[s] [Ohana] have at least either one more*

*Global Admin."* See ECF 23-5, at 2. So did the complaint. See ECF 23-1, at 3. So did the

Memorandum in Support of Ohana Growth Partners' Motion for Temporary Restraining

Order and Preliminary Injunction. See ECF 23-4, at 3.

4.      The Civil Action was filed as Injunctive Relief. See ECF 23-2, at 1.  The issue at

the pleading described was that an employee was refusing an order from his supervisor,

*"[I] [had] request[ed] family and medical leave"*, I *"was entitled to [FMLA leave]"*, and

then I sent a cease and decease email asserting my rights to not have my FMLA leave

interfered with by Richard Hartman sending me a demand to work letter at 9:01 AM.

See ECF 23-5, at 4, 12.

5.      There had been no notice given to me because I had been suspended without pay

on June 13, 2024, and had no access to my work email. See Id, at 18. The Certificate of

Notice Regarding Motion for Temporary Restraining Order stated the method of notice

was my work email. See ECF 23-9, at 9.

6.      The proposed Temporary Restraining Order were impossible to legally comply

with because they had conflicting orders to do and not do.  See ECF 23-8, at 1-2.

---

**Associate Judge Marc DeSimone Jr. provided equitable relief in the form of Injunctive
Relief with conflicting orders in an employment and labor dispute that he knew:**

- **Richard Hartman affirmed I was entitled to FMLA leave;**
- **Richard Hartman and Glenn Norris interfered with my FMLA leave;**
- **I asserted my rights to use FMLA leave and to not have it interfered with;**
- **Richard Hartman and Justin Drummond had conflicting statements from the 9:01
  AM email on who was responsible for demand;**
- **The employment contract filed to the court was a digital PDF file missing pages
  from the middle of the document which included an entire section;**
- **No notice was given to me before issuing the Temporary Restraining Order.**

---

52      Phil Leadore has never responded to any message that I sent him, and on June 26th and

27th the person I was directed to provide access to was changed to Randall Romes. See ECF 16-

15, at 40. June 26th was the hearing date scheduled for the Preliminary Injunction.  On June 21,

2024, it also became the hearing on Civil Contempt for violating the Temporary Restraining

Order and a second day was added to the hearing process by associate Judge Michael S. Barranco.

53    I was notified of the active Temporary Restraining Order after Robert Brennen emailed ryan@mxt3.com at 10:29 PM on June 17, 2024. See ECF 16-14, at 8.  I asked Robert Brennen how I was to logistically comply with the TRO that had conflicting orders that told me I can't access the system. *"Can someone elaborate how to comply with the order to give access to Mr. Leadore? Logistically speaking, with sincerity, can someone provide a breakdown of how this would occur?"* and Robert Brennen said, *"I will provide you with instructions how you can comply with the Order".* See Id, at 10.

54    On June 18, 2024, at 8:39 AM, Robert Brennen sent me technical instructions that did not address the logistical issue from the conflicting orders and said that if I didn't comply with the Temporary Restraining Order by 12 p.m. today then *"Ohana will have no choice but to file additional papers with the Court seeking to have [me] held in contempt of the order and will ask that the court take up the issue of contempt during the hearing on June 26th"* See Id, at 11.

55    Associate Judge Keith Truffer received a letter from me on June 18, 2024, at 1:18 PM that I *"request[ed] immediate judicial intervention regarding [the] Temporary Restraining Order (TRO) and Preliminary Injunction that conflict[ed] with legal and compliance obligations"* and *"1. clarification and potential modification of the TRO and Preliminary Injunction to ensure compliance with PCI standards without subjecting me to contempt of court. 2. Protection against retaliation for exercising my FMLA rights. 3. Adequate time to secure new legal representation to address these urgent maters."*

56    I immediately notified Robert Brennen of the letter to the Judge Truffer and asked, *"please allow time for the judge to review."* See ECF 16-4, at 15. The letter to Judge Truffer

2025-02-06

included the June 7, 2024, accord and other documentation highlighting the legal issues, and I told Robert Brennen *"At no point did anyone say I was suspended, and I believed Rich was dangerous for hours. I sent my wife away, I sent Ann home, and I reached out to two senior directors for backup before someone responded to me.  I would greatly appreciate anything you can do to help **us** negotiate an end to this.  The only condition that is not acceptable is that anyone is left unprotected, and in the last 30 days alone, it has been clearly documented in writing that they are also targeting Ann, Darren, and Cielo.  There are more examples stretching back even further for all of us.  Thank you for your attention to this matter.  I am doing the best I can, and technically since I said I would tell them when I was back, my FMLA leave is still active.  If they believe something else to be true, please inform [Ohana] that as a result of the escalated hostility, I will be on FMLA leave until further notice.  The statement about there being no other administrators is incorrect.  LeeAnn continues to hold the role of Billing Administrator, and the support team continues to hold the privileged role of User Administrator. Since Darren was removed, there has been some gaps in Azure administration.  I would like to provide this access to Dante Martinez, who is the Help Desk Manager.  The gap in understanding what the Global Administrator role does underscores how their statements do not qualify as expert testimony."* See ECF 16-0, at 123-124.

57    Next communication comes from Robert Brennen, Victoria Hoffberger, and Steven D. Frenkil and says, *"A copy of the attached was just filed with the Clerk of the Circuit Court for Baltmore County."* See 16-14, at 18.  Attached is the first Petition to Show Cause and For Constructive Civil Contempt that reaffirms the notice less nature of the TRO *"On June 17, 2024 at 10:50 a.m., the Court (DeSeimone J[r].) granted the Motion for a TRO.","At 11:24 a.m., Defendant was personally served with hard copies of the Complaint, Summons, and Motion for*

*TRO."*  The petition goes on to say that I was attempting to comply *"At 6:41 p.m., Defendant emailed Phil Leadore asking him to confirm that he was still interested in receiving administrative access", "At 9:59 p.m., Defendant emailed Ohana's counsel requesting guidance for how they should comply with the TRO"*. See ECF 16-15, at 3.

58      The petition also incorrectly applies the law *"Directing that, pursuant to Rule 16-206(c)(2)(A), the alleged contemnor, Ryan Dillon-Capps, file an answer to this Petition for Constructive Civil Contempt within ten (10) days of the service of the Court's Order"* with the footnote *"There is a Preliminary Injunction hearing scheduled for June 26, 2024. While less than ten ( I 0) days from the date of this filing, in order to promote judicial efficiency, Ohana requests that Dillon-Capps show cause as to why they should not be held in contempt at this hearing."* Md. Rule 16-206(c)(2)(A) says *"(A) the time within which any answer by the alleged contemnor shall be filed, which, absent good cause, may not be less than ten days after service of the order;"*. The correct applicable citation for scheduling is Md. Rule 16-206(c)(2) which reads ***"The scheduled hearing date shall allow a reasonable time for the preparation of a defense and may not be less than 20 days after the prehearing conference."*** *See* ECF 16-15, at 6.

59      Associate Judge Keith Truffer denied my request pursuant to Md. Rule 15-504(f) which states *"**(f) Modification or Dissolution.** A party or person affected by the order may apply for modification or dissolution of the order on two days' notice to the party who obtained the temporary restraining order, or on such shorter notice as the court may prescribe. The court shall proceed to hear and determine the application at the earliest possible time. The party who obtained the temporary restraining order has the burden of showing that it should be continued."* and granted Ohana's Petition for Show Cause order and Constructive Civil Contempt on June 21, 2024. Setting the Show Cause Hearing to June 26th, 2024, at 9 am.  The

Denial of my request and Granting of Ohana's request were filed in the same envelope/docket to the court.  See ECF 16-5, at 8-10.

> **Judge Truffer had received additional evidence that continued to show the unfavorable and unlawful position of Ohana's case, and yet Judge Truffer:**
>
> • **<u>Denied</u> my right to seek to modify or dissolve under 15-504(f) and through Judge DeSimone Jr.'s order granting me two days to move to dissolve or modify the TRO;**
> • **Deprived me of the prehearing conference and also the legally required minimum of 20 days to prepare for the show cause hearing.**

60      On June 24, 2024, at 6:58 PM, Robert Brennen notified me that my motion had been denied and that a show cause petition had been filed, granted, and that the hearing would be in roughly 38 hours.  See 16-14, at 23. The attachment to that email named 1942_001.pdf is the first two pages of the letter filed to Judge Truffer and the order granting the petition to show cause. See ECF 16-15, at 12-14.

61      On June 25, 2024, Ohana Growth Partners, LLC and Miles & Stockbridge P.C. filed the affidavit of Randall Romes without a signature. See ECF 16-5, at 22. Then Robert Brennen, Steven Frenkil, and Victoria Hoffberger emailed Lauren Prinkey, Judicial Assistant to the Honorable Keith R. Truffer, a version signed by adobe certificate and Lauren Prinkey replied to them saying *"Judge Truffer addressed this matter during Chambers duties."* See ECF 16-14, at 38. See ECF 16-15, at 34.  All other affidavits are signed by Docusign, and Randall Romes affidavit contains copy and pasted statements, sentences, and entire paragraphs from Richard Hartman's affidavit.  Including the Microsoft website and its changed wording quote.  See ECF 16-15, at 32.

62      When I inquired to Mr. Romes on June 27, 2024, during cross examination, as to clarify his affidavit I was immediately interrupted by Judge Barranco after saying *"To clarify your -- your affidavit, I just want to make sure I understood it correctly. You did not read any statements*

*or e-mails that have any of my analysis with regulation codes attachment; is that correct, you did not see –".* See ECF 23-12, at 49.

63 That was my second question, the first question asked Randall Romes to challenge the premise made by Miles & Stockbridge P.C. and the Court that I should know the configuration of the accounts on June 26 and 27.  Randall Romes agreed with me that I had no way of knowing the current state of the accounts since I no longer was accessing the system. Randal Romes agreed that the premise stated by the Plaintiff and Court was incorrect and I was correct. Question: *"So, if everything I said is true, erm, then, it would be, in fact, impossible for me to know the state of those accounts right now which, erm, I would have to be able to access the system to know; is that correct?"* See ECF 23-12, at 47. Randall Romes Answer: *"If -- if he has no access to the system now he has no way to speak to the access of other systems in this account right now."* See Id, at 48. I was not permitted to ask any more questions to Randall Romes. The substantive litigation for two days was litigated by Judge Barranco on behalf of Ohana Growth Partners, LLC and Miles & Stockbridge P.C.  The law firm barely spoke during the proceedings.

64 Judge Barranco started by asking if we have had a chance to talk about it.  Robert Brennen performed the I don't know shrug and I said, "*I did ask if we could talk about it"* See ECF 23-11, at 4.

65 Judge Barranco said he viewed the FMLA issue as a separate issue and during the June 26, 2024, hearing Judge Barranco remanded my FMLA claim to the federal court saying, *"You can go down to federal court and file a -- a, if there is such a private cause of action for violation of the FLMA"* See ECF 23-11, at 56.

66 Miles & Stockbridge engaged for a brief moment while talking to Judge Barranco on June 26, 2024, when Judge Barranco asked Robert Brennen why they couldn't just ask Microsoft

to do something. Robert Brennen said that Microsoft's lawyers said *"if [a court order] is issued they will – they will process it"* See Id, at 78. Instead of issuing a court order directing Microsoft to make whatever changes Ohana Growth Partner, LLC wanted to make Judge Barranco scheduled a second day of hearings and said that if I don't present to the Court on June 27, 2024, the password and key fob that, I did not have, that I would be in contempt of court. *"Mr. Dillon-Capps, how long would it take you to go get the fob and find the passwords"* See Id, at 79. *"All right. Well, I am going to hold the defendant in contempt. He can purge the contempt by providing what the defendant (sic) needs within 24 hours."* See Id, at 81. The following day Judge Barranco issued a fine of $2500 per day, *"For every 24-hour period that passes after the date and time this Order without the defendant's full compliance, he's going to incur a fine of $2500, and he can purge the contempt by complying with the order."* See ECF 23-12, at 58. Judge Barranco continued to say, *"he's in contempt of my orders and, uh, there's going to be a fine imposed of $2500 for every 24-hour period"*. Followed by *"So that's, I think I've made sufficient findings on all of this. But, uh, but anyway, if there's some other way to, erm, for you to get access that you can work out with Microsoft, let me know."* See Id, at 60

67    Judge Barranco on June 26, 2024, said, *"I can fine him, and I can give him an ability to purge, but I'm not – you haven't asked that he be jailed, nor would I do.",* but on July 3, 2024 Ohana filed a second Petition to show cause for civil contempt seeking incarceration and Judge Barranco granted the petition then scheduled the hearing for August 7, 2024 at 1:00 PM without a prehearing conference. *"in addition to the fees ordered on June 27, 2024, Plaintiff now is seeking incarceration"* See ECF 16-15, at 52. See ECF 16-5, at 17. Daniel Levett affidavit demonstrating Ohana Growth Partners, LLC has other administrators with access to the Global Administrator accounts was filed with the Petition seeking incarceration.

68      Judge Barranco on June 26, 2024, said *"what concern is that of – yours as to whether or not the plaintiff is in compliance with FTC regulations or not?"* in respond to me sating that there is a contractual obligation to *"maintain PCI compliance standards"*. I then responded *"Uh, because what they're asking me to do is to violate PCI Compliance."* and Judge Barranco replied *"No, it's what the Court had ordered you to do"* See ECF 23-11, at 16. This was part of my argument in a Motion to Dismiss on the grounds of federal supremacy on June 26, 2024, which included Judge Barranco asking "*without putting you at risk, if you believe you're at risk? There's got to be a workaround, so what is –"* and I replied *"Oh, there is.  There's  -- there's been plenty of opportunities provided, erm –".* Judge Barranco asked *"what's the workaround?"* and I said *"Oh, any – any of them that I suggested and offered them.  So, for example, on there was actually – Justim Drummond, would actually already have access on Monday, if he had simply met with me on Monday as we had planned"* See Id, at 18-19.

69      On June 27, 2024,  Judge Barranco said *"All right. Go ahead. Tell me – tell me what you want to, and otherwise I'm going to sign the order."* and I said *"Sure, Erm, so there's, uh, I want to have a motion for, erm, continuance because –"* which was interrupted by Judge Barranco saying  *"Denied."* See ECF 23-12, at 15.  I was never allowed to fully articulate my Motions to Dismiss on June 26th , nor my Motion for Continuance on Juneb 27th.

70      The transcripts for June 26th and 27th were provided to me by Miles & Stockbridge P.C. and the June 27th transcript truncates Caroline Dillon-Capps testimony.  I asked Caroline Dillon *"has there been any indication that like the – the things that I do in this courtroom have been not at home."* and the transcript says Caroline Dillon-Capps entire response to the question was *"No, it's been true to what's been going on at home for ever, weeks".* SeeId, at 53.  However, the actual response given provided details of Caroline Dillon-Capps observations, and it was during

a particularly emotional part of her testimony that I began to cry a little and said "I'm sorry" to myself, but the version of the transcript that was provided to me by Miles & Stockbridge P.C. omits almost her entire answer. Other discrepancies exist, and one such example is that the transcript shows Robert Brennen saying *"Your Honor, I can assure the Court that, uh, my client and I are pulling out all the stops"... "And covering all bases in an effort to resolve this".* However, the actual statement was a declaration that they are going to ~"do anything to win this" See 23-12. At 60.

71      My first question to Caroline Dillon-Capps was *"Erm, has everything I said about being erratic, erm, memory loss, uh, moments of cognition, erm, not there, erm, has – have you observed that to be true"* and her answer was *"Yes"* See Id, at 58. Despite me informing the court that I had experienced memory issues since the evening of June 17, 2024, Judge Barranco on June 26th and 27th had me sworn under oath and forced me to give testimony. On June 27, 2024, Judge Barranco said *"if Mr. Dillon-Capps is to be believed ... that he doesn't currently have any access and can't find the key fob, if that's to be believed, and the Court ... does believe that he doesn't have it in his possession here to present to you, that part I do believe."* See Id, at 61. Judge Barranco continues in the next paragraph and says *"As to whether or not he exercised, uh, due. Due diligence to, uh, and -- and all reasonable efforts, and that's really the key here is, I don't believe the defendant in -- in my view he said contradictory things, and it's not because of any, erm, uh, kind of mental inability to do it, it just seems like it's a selective ability, uh, to comply or not to comply."* See Id.

72       Judge Barranco continues to say *"I'm not saying that you might not suffer from some mental health conditions. I think that it may be pretty clear that you do, by your refusal to comply with this order"* See ECF 23-12, at 63. My mental health professional's completed

forms and letters were provided to the court with my letter to Judge Truffer, and Caroline Dillon-Capps expert first-hand testimony, as a licensed therapist, confirmed everything I was saying to be true and accurate about my mental health condition. However, Judge Barranco continued on in the next paragraph by saying *"but I don't have any assessment from your mental health provider. Erm, I've hear [Caroline Dillon-Capps'] say that she's observed some things in the past couple of weeks, but that to me doesn't mean that you're not – you're not lucid and capable, and even if it's sporadic, of not complying with the order".* See Id, at 63-64. Judge Barranco's opinion of my disability continued to be repeated by Miles & Stockbridge P.C. as a finding that I was found not believable by Judge Barranco.

73      On October 23, 2024, Judge Barranco wrote a 1-page opinion that said, *"[my] motion is entirely incoherent and unintelligible"* See ECF 16-5, at 51. Judge Barranco's opinion was on a filing that cited civil rights and other violations of my rights and protections in the June 26th and 27th hearing.

74      On June 26, 2024, at 3:08 PM, I emailed Fallyn, L. Allman, Judicial Assistant to the Honorable Michael S. Barranco,  asking for a copy of the transcript from June 26th. *"I am writing to request a transcript of the June 26, 2024, hearing in Ohana Growth Partners, LLC v Ryan Dillon-Capps, Case No. C-03-CV-24-002264. Judge Michael S. Barranco presided over this hearing. I understand that we left there only a few hours ago, but I struggle to remember everything said. I think I tried to explain this in court, but my ability to advocate for myself is limited in high-conflict "live" interactions.  It would be of tremendous help if I get a copy of the transcript so I have something to reference regarding what was said...Leaving me unsure as to the proper procedure for obtaining the transcript. I am really sorry to burden you, but this was the first hearing that I had advanced notice of, and even while I write this email, I feel like I can*

*recall less and less of what happened.  Any assistance on how to obtain the transcript would be very helpful."* Even though Miles & Stockbridge P.C. had already requested and paid for the transcript my request was forwarded to Sharon L. Elligson, from the Digital Recording Office of the Circuit Court of Baltimore County.  Sharon L. Elligson email from June 27, 2024, at 7:33 AM saying that for $25.00 a link could be emailed directly to me of the audio or that the 79-minute hearing could be transcribed with a very rough starting estimate around $300.00.  See ECF 16-6, at 13-14.

75      I emailed Robert Brennen asking for the hearing transcript on June 28, 2024, at 4:17 PM, "*my wife said you asked for a transcript during court yesterday.  Do you have a transcript of any of the last two hearings?  Could you email them to me?"* See ECF 16-14, at 44.  I received the June 27, 2024, hearing transcript from Robert Brennen on July 1, 2024, at 8:27 AM.  See Id.

76      On July 2, 2024, at 4:18 PM, I emailed Robert Brennen saying *"Thank you for the 27th. I show in the filings that there is one for the 26th. Do you have the one from the 26th?"* This was before I had access to the court records and could only see an entry on the record that indicated transcripts were on the court record.  Since then, the transcripts have been removed from the court record. See ECF 16-1, at 9-104.  Robert Brennen responded to my July 2, 2024, 4:18 PM email with *"The filings also show that you now owe Ohana $12,500 in fines. Have you paid any of that? I think I can get authority to provide the transcript that Ohana paid for if you provide me the password for administrative control of Ohana's Go Daddy account, which Ohana also paid for."* See ECF 16-14, at 45. On September 28, 2024, at 11:03 PM I emailed Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duvall *"This will be our final request for the transcript from June 26th, and we will not allow any further obstruction. This request is also expanded to reaffirm your obligation to provide us with all materials in your possession,*

*including the exhibit released to you, any hearing notes, and any other documents directly or indirectly related to this case. For any materials you believe are protected under attorney-client privilege, please provide a privilege log"* Miles & Stockbridge P.C. responded on September 30, 2024, at 9:49 AM with the June 26, 2024, hearing transcript and nothing else.  See 16-14, at 65. Jessica Duvall filed her Entry of Appearance on July 23, 2024, at 12:24 PM. See ECF 16-1, at 3.

77      On July 8, 2024, at 7:22 AM Robert Brennen emailed me *"As of 2 p.m. yesterday you have accrued $25000 in fines as a result of your continuing contempt of the Court's June 27th Preliminary Injunction."* and on July 15, 2024, at 9: 10 AM emailed me saying *"Ohana has succeeded in regaining Global Admin rights in its Microsoft 365 tenant and has disabled access via your account"…"failure to transfer administrative control of that account and thus subject to daily fines of $2,500 (which, as of yesterday afternoon amount to $42,500)"* See ECF 16-14, at 50-51.

78      On July 17, 2024, at 6:32 AM Robert Brennen emailed me *"between 8 and 8:30 this morning you will receive a text message from GoDaddy…to reset the password on the Ohana GoDaddy account".* See Id, at 52.  The text message from Robert Brennen at 6:26 AM said *"Between 8 and 8:30 this morning you will receive a text message from GoDaddy … to reset the password on the Ohana GoDaddy account. The text will communicate a numerical code needed to authenticate the reset request. You should immediately send the code to me … If you comply we will file a notice with the Court confirming that your contempt has ended and that the August 7th hearing, for the purposes of determining whether you should be incarcerated in the Baltimore County Detention Center, should be canceled. If you fail to comply, this text, and my earlier texts providing you easy opportunities to end your contempt, will be presented to the Court on August 7th and you will have an opportunity to explain to Judge Barranco why you*

*refused this easy solution and why you should not be jailed without access to your cellphone and other devices until you are ready to comply."* I saw the text message in time to respond to the 8:13 AM code being sent from GoDaddy and provided it to Robert Brennen without delay.  See ECF 16-0, at 140-141.

**Judge Barranco litigated while presiding over proceedings that denied my due process rights, imposed escalating fines based on false premises, and enforced an unlawful contempt ruling over administrative access I did not control. On June 24, 2024, I was notified that my motion had been denied, a show cause petition had been granted, and a hearing was scheduled with only 38 hours' notice, violating my right to adequate time to prepare a defense. Ohana Growth Partners, LLC and Miles & Stockbridge P.C. submitted an unsigned affidavit, later replaced with a digitally signed version, containing fabricated and copy-pasted statements from another affidavit, raising serious concerns of fraudulent misrepresentation to the court.**

**During cross-examination on June 27, 2024, I was denied the right to challenge this affidavit when Judge Barranco interrupted my questioning and prohibited further inquiry. Judge Barranco remanded my FMLA claim to federal court while simultaneously imposing a $2,500 daily fine for alleged noncompliance with a court order that I was physically unable to comply with. My requests for transcripts were obstructed, and the versions provided were altered to misrepresent key testimony, violating my right to an accurate record for appeal.**

**On July 3, 2024, Ohana Growth Partners, LLC escalated its abuse of judicial process by filing a second show cause petition seeking my incarceration, which**

**Judge Barranco granted without a prehearing conference, violating fundamental due process protections. Despite Ohana regaining administrative access to the disputed accounts on July 15, 2024, fines continued to accrue unlawfully. On July 17, 2024, I fully complied with a password reset request, yet opposing counsel continued leveraging contempt proceedings to coerce compliance beyond the court's lawful authority, raising constitutional concerns under the Supremacy Clause, due process, and protections against excessive fines and punitive enforcement.**

79    In July and October 2024, Clerk Julie Ensor interfered with my ability to file evidence to the Circuit Court of Baltmore County changing form CC-DC-094 with her own reasons for obstructing my access to petition the court. See ECF16-1, at 1-7.  Her edited forms included the following custom reasons that she created to mark my exhibits as deficient, rejected, or stricken:

1.      *"Since two Notices Regarding Restricted Information were filed for two Exhibits, each Exhibit must be submitted as its own pdf"*. See ECF 16-5, at 45.

2.      *"Other: Omnibus – must file one proposed order per opposition to motion"* See Id, at 43.

3.      *"Box 1 or BOX 2 must be checked on the Notice Regarding Restricted Information. If Box 1 is checked, a sub box must be checked indicating the type of information that is included on the restricted document. If Box 2 is checked, a redacted and unredacted copy of the restricted document must be submitted.*" The boxes in question had a sub box selected to clearly indicate what was selected. See Id, at 34, 41.

4.      *"... Supporting Exhibits can not be in the same file as the motion".*  There were no exhibits, only screenshots. See Id, at 37.

80      On July 30, 2024, Ohana Growth Partners, LLC terminated my employment and Richard Hartman emailed me the termination letter that stated *"This letter is to notify you that your employment with Ohana Growth Partners (the "Company") is being terminated effective immediately"* and stated that my termination demanded that I adhere to the provisions of my January 8, 2020 employment agreement regarding *"Non-solicitation (Section 4), Agreement to Not Disclose Confidential Information and Trade secrets (Section 5), Work Product (Section 6), and Non-Disparagement (Section 7)"* connected to *"(1) the Company or any affiliate, entity, or person associated with the Company, or (2) investors in the Company, or (3) Brick Bodies Fitness Services, Jnc. ("BBFSI") or any affiliate, entity, or person associated with BBSFl (collectively, the "Companies.")."* Effectively acting to bar me, Mareann Piñera, Darren Koritzka, and CieloIT from continuing to engage in our protection labor rights to organize. See ECF 16-0, at 142. On August 2, 2024, Richard Hartman emailed Darren Koritzka a severance offer citing the same 4, 5, 6, and 7 sections. The "Confidential Severance Agreement, General Release, and Waiver" offered Darren Koritzka $3150 in exchange for Darren Koritzka to agree not to sue, be part of any civil action, and if they were brought into class action against Ohana Growth Partners, LLC that they would remove themselves at the earlier possible time. The letter stated that the reason for Darren Koritzka's termination was *"the result of a department review and subsequent restructuring."* See Id, at 146, 148.

81      Section 5 of the agreement reads as follows:

*(a) In consideration for Ohana's execution of this Agreement and the undertakings of Ohana set forth in this Agreement (including, but not limited to, Ohana's agreement to provide the Severance Pay described in Section 3 herein), Darren Koritzka, to the maximum extent permitted by applicable law, forever waives, releases, and discharges Ohana Growth Partners, LLC, Brick*

*Bodies Fitness Services, Inc., The John W. Brick Mental Health Foundation, Alaris Equity Partners USA Inc., and Down Under Growth Partners, LLC (collectively, the "Releasees") from all claims, complaints, lawsuits, causes of action, administrative charges, grievances, compensation, agreements, damages, judgments, attorney's fees, and liabilities (collectively, "Claims") that Darren had, now has, or may have in the future against any or all of the Releasees, arising from the beginning of time through the date that Employee signs this Agreement. Darren Koritzka agrees that this is a general release and waiver.*

*(b) Employee agrees that the Claims released and waived in this Agreement shall include, but are not limited to, those enforceable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.; the Civil Rights Acts of 1866 and 1991; the Rehabilitation Act of 1973; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Equal Pay Act, 29 U.S.C. § 206(4) et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Genetic Information Nondiscrimination Act; the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq.; the Occupational Safety and Health Act of 1970; all Maryland, Baltimore County, and other Maryland local government laws against discrimination; as well as all tort and contract claims, and any claim under any federal, state, local, or foreign law, statute, regulation, ordinance, or order, or under the common law of the United States or any of the states, territories, or possessions thereof, including but not limited to the state of Maryland, and all claims arising out of Ohana's policy or practice. Darren Koritzka agrees that this general release and waiver expressly includes Employee's termination from employment.*

*(c) With respect to any claim that is not subject to the foregoing release, Employee further waives and gives up any right to become, and promises not to consent to become, a member of*

*any class or collective action, or otherwise participate in any putative or certified class, collective, or multiparty action or proceeding in a case in which claims are asserted against Ohana or any of the Releasees that are related in any way to Employee's employment, wages or compensation, or the termination of Employee's employment. If, without Employee's prior knowledge and consent, Employee is made a member of a class in any proceeding, Employee agrees to opt out of the class at the first opportunity.*

*(d) By signing this Agreement, Employee also expressly acknowledges and represents that Employee (i) has suffered no injuries or occupational diseases arising out of or in connection with Employee's employment with Ohana; (ii) has received all wages to which Employee was entitled as an employee of Ohana; (iii) has received all leave to which Employee was entitled under the Family and Medical Leave Act of 1993 ("FMLA"); and (iv) is not currently aware of any facts or circumstances constituting a violation of the FMLA or the Fair Labor Standards Act ("FLSA").*

*(e) Except as provided in Paragraph 4(f) below, Employee agrees not to file, join in, or prosecute any lawsuits against Ohana or any of the other Releasees concerning any matter, act, occurrence, or transaction that arose on or before the date Employee signs this Agreement. Employee expressly represents that as of the date that Employee signs this Agreement, Employee has not filed any claims, complaints, lawsuits, causes of action, administrative charges, or grievances against Employer or any of the other Releasees.*

*(f) The Parties expressly acknowledge and agree that the General Release and Waiver set forth in this Agreement shall exclude: (1) the rights and obligations contained in or provided under this Agreement; (2) any right or entitlement that a party is not allowed by applicable law to waive or release; (3) any claim that may arise only after the Effective Date of this Agreement;*

*(4) Employee's right to challenge the validity and enforceability of the Agreement's release of*

*claims under the Age Discrimination in Employment Act of 1967, as amended; and (5) any right*

*a party has to report, file, cooperate in, or participate in a charge, investigation, or proceeding*

*with the Equal Employment Opportunity Commission, the U.S. Department of Labor, the*

*National Labor Relations Board, or other federal, state, or local government agencies*

*("Government Agencies"), including by providing, without advance notice to Ohana, documents*

*or other information about Ohana that Employee has lawfully obtained, lawfully possesses, and*

*is not otherwise prohibited by law from disclosing and that are relevant to the duties of those*

*Government Agencies. Employee acknowledges that should any Government Agencies or third*

*parties pursue any claims on Employee's behalf, Employee, to the fullest extent permitted by law,*

*waives the right to any individual monetary recovery in connection with any such claims covered*

*by the release and waiver herein.*

*(g) Employee acknowledges that the Severance Pay that Employee will receive is in addition to*

*the benefits Employee would otherwise be entitled to receive and that Employee accepts such*

*payments in full satisfaction of any claims that Employee has waived in this Agreement.*

See Id, at 151.

82    Furthermore, the terms of the offer stated that Darren Koritzka was expected to work for

free for the next two months whenever Ohana Growth Partners, LLC wanted him to and to

*"promptly disclose to Ohana the substance of [his] planned testimony"* if he is *"compelled by*

*legal process to appear or participate in any non-criminal proceedings that involves or is*

*brought against Ohana"* and for those two months he has to *"cooperate fully and completely*

*with Ohana and its legal counsel and respond to questions truthfully with respect to any internal*

*inquiry or investigation, any federal, state, or local agency investigation, and/or any legal*

*proceeding involving Ohana."*. Additionally, Darren Koritzka must make himself available to

aid in the *"defense of any pending or potential claims against Ohana"*. See Id, at 153. To the

best of my knowledge, Darren Koritzka did NOT sign the agreement and the text message that I

received from Darren Koritzka indicated that Ohana Growth partners responded to him not

signing the agreement by withholding the payout of his remaining paid leave.

83      On August 20, 2024, at 11:44 AM I received an email saying that Robert Brennen,

Jessica Duvall, Steven Frenkil, and Victoria Hoffberger filed a Request for Entry of Default. See

ECF 16-14, at 55. See ECF 16-15, at 69-70. Associate Judge Andrew M. Battista granted and

ordered an order of default on August 20, 2024, at 2:54 PM without taking any testimony to

support the allegations of the complaint. Julie Ensor filed the Notice of Default Order on August

21, 2024. See ECF 16-5, at 24-25. Senior Judge Patrick Stringer granted my motion to vacate

the Order of Default entered on 8/21/2024 on October 10, 2024, because the order of default was

filed and granted prematurely which exceeded judicial discretion See Id, at 29.

84      On September 25, 2025, I filed a Motion to Strike Plaintiff's Opposition to Defendant's

Motion to Vacate Order of Default. It was denied by Senior Judge Patrick Stringer as *"Motion is*

*Moot. The court vacated the order of default by order dated 10/10/24"* The motion was filed

with a 120-page affidavit of legal obligation and 707-pages of exhibits. See ECF 16-12. The

Exhibits included PCI DSS Scan Report Executive Summaries showing that I was the person

named on the reports as responsible for PCI Compliance. PCI DSS Compliance Standards

official documentation that was in effect from May 20 to June 13. Communications showing

Glenn Norris, Justin Drummond, Joshua Beyer, and others had consistently followed my

directives as PCI Compliance Officer for Ohana Growth Partners, LLC to maintain PCI

Compliances. Pages from the Planet Fitness Franchise Disclosure Document (FDD) that showed

Ohana Growth Partners, LLC was contractually obligated to maintain PCI DSS Compliance with two separate contracts for each of the jurisdictions that they operate in.  Ohana Growth Partners, LLC operate Planet Fitness Clubs in Washington, California, Tennessee, Florida, Washington DC, and Maryland and the PCI Compliance violation in question involved their centralized management of authentication of their iPads which were used in presales and in-club.  The affidavit clearly established that Glenn Norris refusal to provide a reason for the access prevented access from being granted while adhering to least privileged access requirements.  During the June 26th hearing, I cited FTC v Wyndam Worldwide Corp. as analogous to the current situation because Wyndham was found liable because they had failed to follow least privileged access which resulted in the breach.  See ECF 23-11, at 32.

85      Associate Judge Stacey Mayer ruled my Motion to Vacate Show Cause Order of June 21, 2024, as "Moot. Plaintiff withdrew petition for Constructive Civil Contempt on August 20, 2024, at 8:24 PM.  Associate Judge Stacey Mayer Denied my motion to Vacate Temporary Restraining Order on August 20, 2024, at 8:00 PM. See Id, at 27. On November 15, 2024, Senior Judge Patrick Stringer ruled on a different motion to vacate the TRO as *"Moot.  The TRO expired after ten days, and the case has been dismissed by the Plaintiff."* See Id, at 61.

86      Senior Judge Patrick Stringer Denied my Motion to Dismiss for Insufficiency of Service of Process on September 17, 2024. See Id, at 28.

87      On September 23, 2024, I filled Affidavit of Plaintiff's Abusive Use of the Judicial System and with it as Exhibit A was Ohana's Complaint with every part that I was not in agreement with redacted.  Below is a screenshot of what page 3 looks like, and this combined with the numerous preliminary motions filed is a fully formed answer of Ohana Growth Partners, LLC Complaint.

██████████████████████████████████████

████████

10.    Through an account with Internet domain registrar GoDaddy.com, Ohana

maintains████████ registrations for ███████████████ domain ████ s,

████ █ ████ █ ████ ████ █████ ████ ████ ████

████████████

11.    Since February 10, 2020, Ryan Dillon-Capps (*nee* Wagner), the Defendant in the

above-captioned matter ("Dillon-Capps"), has been employed by Ohana ████ ███████

████████████ ████████ Ohana and Dillon-Capps executed an Employment

and Non-Disclosure Agreement (the "Dillon-Capps Employment Agreement"). ████████

███████████████████████

12.    Dillon-Capps reports to Glenn Norris, the Chief Financial Officer of Ohana

("Norris"). In that capacity, Norris provides Dillon-Capps with supervision and issues directives

██████████████████.

13.    █████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████ ██ ████████████████████

████████████████████████████

████████████████████████████

████████████████████████████



3

Exhibit A
Affidavit of Plaintiff's Abuse of The Judicial System

2025-02-06

88      An amended affidavit was filed on October 28, 2024, and with it was a comment-based

line by line answer as Exhibit B. See ECF 16-1, at 7.  See ECF 16-8, at 215-226. Except for the

Vacate of Default Order and Judge Finifter's ruling to grant the hearing, which was later ruled

moot, everything else I filed was denied or ignored entirely.  To get around this I began filing my

Amended filings as a separate filing titled "Amended" and stated it was a second filing if the

motion to amend was denied.  This way what I filed would still be docketed.

89      On October 15, 2024, I filed a Motion to Strike Bad Faith Filings that moved the state

court to strike Ohana Growth Partners, LLC misleading affidavits,  fraudulent evidence, and

misrepresentations of facts.  To Disqualify Miles & Stockbridge, P.C. from further representation

of Ohana Growth Partners, LLC.  Impose sanctions against Miles & Stockbridge, P.C. and

dismiss the Plaintiff's lawsuit with prejudice because it lacked legal merit, failed to present

evidence supporting their claims, and was born of an improper retaliatory motive.  Senior Judge

Stringer denied this motion on November 6, 2024. See 16-5, at 50.

90      On October 8, 2024, I filed a Motion for Urgent hearing to Address Violation of

Constitutional Rights and Rule 1-201.  After Clerk Ensor impeded my efforts to file this with the

Affidavit of Financial Urgency and it's attached evidence, I filed three separate motions that

Clerk Julie Ensor also attempted to impede the filing of that requested an administrative judge

hearing on Clerk Julie Ensor's unlawful interference with my filings. Associate Judge Michael J.

Finifter was filling in for County Administrative Judge Robinson Jr. and ruled on my Third

Request for Administrative Hearing on October 11, 2024 *"Clerk: Please submit Defendant's*

*'Motion For Urgent Hearing to Address Violation of Constitutional Rights and Rule 1-201', filed*

*10/8/2024, to Motions Judge for ruling"* See ECF 16-15, at 39. Judge Patrick Stringer ruled

*"Denied as moot. Plaintiff has filed a Voluntary Dismissal of this case"* on October 28, 2024. I

filed Request to Reconsider Enforcement of Administrative Judge Ruling Entered on October 11, 2024, and Administrative Judge Robinson on November 7th said *"Denied...a voluntary dismissal was filed recently, and that the case is closed."* See ECF 16-5, at 54. My Motion to Strike the Notice of Voluntary Dismissal was Denied on November 18, 2024, by Senior Judge Stringer. See Id, at 67.

91    On and before October 23, 2024, I filed seeking reciprocal relief, dismiss Ohana Growth Partners, LLC complaint with prejudice, disqualify Miles and Stockbridge P.C., injunctive relief to prevent further abuse from Ohana, referral from the court on criminal and ethical violations against Ohana Growth Partners, LLC and Miles and Stockbridge P.C. , early expedited and to compel production of discovery that had still not been produced, In Limine to exclude claims statements and affirmations not supported by evidence, injunctive relief to restore lost pay due to financial urgency, and to allow me to represent MXT3 LLC in its joint claim. See ECF 16-1, at 5-6.  My Answer and Counterclaims were not recognized as an answer nor counterclaims with around a dozen filings never receiving any acknowledgement outside of them being entered onto the docket.  This includes my motion for directed verdict. See Id, at 7.

92    On October 24, 2024, at 8:53 AM, Ohana Growth Partners, LLC and Miles & Stockbridge P.C. filed a Notice of Voluntary Withdrawal that in its entirety said the following *"Plaintiff, Ohana Growth Partners, LLC., by its undersigned attorneys, and pursuant to MD Rule 2-506(a), hereby gives notice of the dismissal, without prejudice, of the above captioned matter."*  This was accepted by Senior Judge Patrick Stringer on November 2, 2024, and entered onto the court record on November 6, 2024, despite Md. Rule 2-506(a) stating *"(a) By Notice of Dismissal or Stipulation. Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of*

*the claim without leave of court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) a stipulation of dismissal signed by all parties to the claim being dismissed".* I never signed a stipulation of dismissal. Judge Patrick Stringer's ruling said *"GRANTED. Case is Dismissed."* See Id, at 55.

93      Senior Judge Patrick Stringer Denied my Motion to Add Counsel to Record on October 23, 2024, saying *"Denied, each party has a right to choose its own counsel."* See Id, at 32. However, on November 6, 2024, the court record was updated to add Steven D. Frenkil who had been omitted from the court record despite being on the filings. See ECF16-1, at 9, 28. On November 6, 2024, Senior Judge Patrick Stringer ruled my Motion for Disqualification of Counsel as "Moot. Case is Dismissed." See Id, at 46. However, between December 3, 2024, and January 11, 2025, the court record was updated so that no one is listed as the legal representatives of Ohana Growth Partners, LLC.

*94*      I filed a Motion to Compel to move *"the Court to adjudicate the matters properly"* and Administrative Judge Robinson Denied this motion on November 6th because *"Ohana Growth Partners recently filed a notice of voluntary dismissal pursuant to MD Rule 2-506(a)."* See Id, at 56.

*95*      Judge Stringer *"Denied as moot. Case has been dismissed"* my Motion to Compel Production to Support Claims at Hearing on November 15, 2024, and my Deposition Request for Agents of Ohana Growth Partners was *"Denied as moot. Case has been dismissed."* Judge Stringer ruled "Moot. Case has been dismissed" on November 15, 2024, on my Motion to Dismiss with prejudice for a June 13th Worth of Reasons. See Id., at 62-64.

*96*      Associate Judge Stacey Mayer denied my request for a prehearing conference to discuss injunctive relief on November 6th at 4:04 PM.  See Id, at 68.  Judge Mayer denied my Request

for Mandatory Judicial Notice Hearing on Material Facts "pursuant to Maryland Rule 5-201(b), (d), and (e) on November 26, 2024, at 1:27 PM stating *"the case is no longer at issue"* despite subdivision (e) and (f) of Md Rule 5-201 saying *"(e) Opportunity to Be Heard. Upon timely request, a party is entitled to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. (f)Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding."* See Id, at 69.

*97*    On October 4, 2024, at 12:02 AM, I emailed the Attorney Grievance Commission and filed a complaint. See ECF 16-6, at 34-37.  County Administrative Judge Dennis Robinson Jr. then updated his schedule so that he was not working at the Circuit Court of Baltimore County for the following week.  I believe that County Administrative Judge Dennis Robinson Jr. met with Thomas DeGonia II, Bar Counsel for the Office of the Bar Counsel, and Tanya C. Bernstein, Director of Investigative Counsel for the Maryland Commission on Judicial Disabilities, during the week of October 7 – October 11, 2024,and they formally agreed to coverup what had and was occurring in Circuit Court for Baltimore County Civil Action C-03-CV-24-002264.

*98*    On October 11, 2024, Tanya Bernstein sent a letter via USPS to me that mirrors the language that Judges Robinson Jr, Stringer, and Mayer began using the following week, and I believe their shared language, procedural denial of hearings, and procedural use of moot is reflective of County Administrative Judge Robinson Jr. returning to the Circuit Courthouse for Baltimore County and formally bringing Senior Judge Patrick Stringer and Associate Judge Stacey Meyer into the conspiracy to deprive me of my first amendment right to petition, fourteenth amendment right to due process, and with the objective goal to coverup the numerous

violations of my rights, protections, and the law that had occurred and were necessary to occur in order to accomplish this goal. See Id, at 31. See ECF 16-5, at 54, 56, 57, 58, 65.

*99*     In addition to the shared language following the conspiracy summit, I used the probing method to create a baseline of response and then I used later probes to separate out those who were collaborating with the Circuit Court of Baltimore County Judges.  This process further confirms the supporting conspiratory connections between Thomas DeGonia II, Tanya Bernstein, Dennis Robinson, Patrick Stringer, Stacey Mayer, and Julie Ensor.  I contacted many agencies and individuals in Maryland Judiciary and Government while attempting to obtain aid, and with precision I was able to direct a probe to different individuals and agencies. The only positive hits to the repeatable matching conditions of the baseline occurred when the probes were sent to Thomas DeGonia II and Tanya Bernstein and those probes had a matched response 100% of the time.  See ECF 16-6, at 32-33, 38-41.

*100*     Throughout the proceedings all these individuals have used email systems that cross state lines and the United States Postal Service to perpetuate their violations of the law. One of the most egregious examples of this involves the withholding of my COBRA insurance information which contained in the packet health plan coverage, name, and pricing information.  See ECF 16-4, at 13.  The first page of the packet has the letter dated November 07, 2024, but further down the page it says, *"You're getting this notice because your coverage under the Plan will end on 09/30/2024\* due to:"* See Id.  I was terminated on July 30, 2024, and COBRA packets are shipped out with a 60-day window.  A few pages later it reads *"If elected, COBRA continuation coverage will begin on 10/01/2024",* which lines up with the 90-day coverage period of the ending insurance plan.  See Id, at 11. I believe that Richard Hartman modified my address so that the COBRA package would be sent to him at the Ohana Growth Partners, LLC office.  He then

held the COBRA package, which denied me of my right to obtain COBRA coverage in

prescribed period, and then he altered the letter to modify the heading date to November 07,

2024, before he then mailed it out to me using USPS. See Id, at 7.

### DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that
the contents of the foregoing affidavit and all accompanying exhibits are true and correct to
the best of my knowledge.

February 6, 2025                                                    1334 Maple Avenue
                                                                   Essex, Maryland 21221
            /s/ Ryan Dillon-Capps                                  ryan@mxt3.com
            **Ryan Dillon-Capps**                                  703-303-1113