## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN DILLON-CAPPS | Civil Action |
| *Plaintiff,* | No. **1:24-CV-3744** |
| vs. | |
| OHANA GROWTH PARTNERS, LLC *et al* | Hon. **Judge Hurson** |
| *Defendants* | |

---

### AFFIDAVIT OF RYAN DILLON-CAPPS IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF DENIAL OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED REVIEW

---

I, Ryan Dillon-Capps, being over the age of eighteen (18) and competent to testify, and having personal knowledge of the facts contained herein, state as follows:

I submit the following Statement of Facts in support of the emergency motion for reconsideration for TRO and PI. The facts set forth below are material to the issues before the Court and are presented in an objective manner to aid in the fair and just resolution of this dispute.

### DRAMATIS PERSONAE

1      Richard Hartman is the Vice President of HR at Ohana Growth Partners, LLC and Brother-In-Law of Victor Brick

2      Glenn Norris is the CFO at Ohana Growth Partners, LLC

3      Justin Drummond is the President at Ohana Growth Partners, LLC

4      Karen Debus is an HR Generalist at Ohana Growth Partners, LLC

5      Stacey Wittelsberger is an Equity Owner of Ohana Growth Partners, LLC

6      C. Victor Brick is the Co-Majority Equity Owner and CEO at Ohana Growth Partners, LLC

7      Lynne Brick is the Co-Majority Equity Owner and former President at Ohana Growth Partners, LLC

8       Terry Woods is an Equity Owner of Ohana Growth Partners, LLC

9       Earl Ihle is an Equity Owner of Ohana Growth Partners, LLC

10      Joshua Beyer is the CDO at Ohana Growth Partners, LLC and former Vice-President of

Development at Planet Fitness.

11      Josh Gerber is the former CMO at Ohana Growth Partners, LLC

12      William "Bill" Flax is the Director of Construction at Ohana Growth Partners, LLC and

Father of Jared Flax

13      Jared Flax is the Manager of Development Project Managers at Ohana Growth Partners,

LLC and Son of Bill Flax

14      Karen Cepress is the Director of Member Services at Ohana Growth Partners, LLC

15      Rolando Pedraza is the Director in charge of the Help Desk for Ohana Growth Partners,

LLC and works for Cielo IT.

16      Geoff VanMaastricht oversees the PCI Compliance program at Planet Fitness

17      Holly Butler is a Principal Attorney at Miles & Stockbridge P.C.

18      Robert S. Brennen is a Principal Attorney at Miles & Stockbridge P.C.

19      Steven D. Frenkil is a Principal Attorney at Miles & Stockbridge P.C.

20      Victoria K. Hoffberger is an Associate Attorney at Miles & Stockbridge P.C.

21      Phil Leadore is an Executive IT Advisor at Hartman Executive Advisors

22      Daniel J. Levett is a Senior Director of Workforce Solutions at Hartman Executive

Advisors

23      Marc DeSimone Jr. is an Associate Judge for the Circuit Court of Baltimore County

24      Patrick Stringer is a Senior Judge for the Circuit Court of Baltimore County

25      Dennis M. Robinson Jr. is the County Administrative Judge for the Circuit Court of

Baltimore County

26      Michael J. Finifter is the Chief Associate Judge for the Circuit Court of Baltimore County

27      Judith Ensor is the County Clerk for the Circuit Court of Baltimore County

28      Darren Koritzka is the former IT Coordinator at Ohana Growth Partners, LLC

29      Ryan Dillon-Capps (previously Wagner) is the former Vice-President of IT at Ohana

Growth Partners, LLC

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
2025-02-17                    Page # 2 of 58

## JUNE 13, 2024: FMLA STATUS

30      **Requested:** On January 4, 2024, Ryan Dillon-Capps formally requested intermittent FMLA leave by sending an email to Richard Hartman, Glenn Norris, Justin Drummond, and Holly Butler.  See ECF 16-3, at 1-2.

31      **Eligible:** On January 8, 2024, Karen Debus provided FMLA Notice of Eligibility Form WH-381 to Ryan Dillon-Capps to inform him that he was considered a key employee and as defined under the FMLA his FMLA leave could not be denied. See ECF 16-3, at 4-7.

32      **Health Care Provider Certification:** Ryan Dillon-Capps' health care provider completed FMLA health care provider certification form WH-380-E on January 22, 2024 (See ECF 16-3, at 10-13) and March 12, 2024 (See ECF 16-3, at 18-21)

33      **Health Care Provided Letter:** Ryan Dillon-Capps health care provider a letter to Richard Hartman in response to his request for additional information on January 31, 2024.  (See ECF 16-3, at 17)

34      **Approved/Active Status:** On June 13, 2024, at 9:01 AM, Richard Hartman validates via email to Ryan Dillon-Capps that he is in good standing with his approved FMLA leave and has FMLA Leave available to use: *"FMLA time off, to which you are entitled"*. See ECF 23-5, at 14.

| FACT |
|---|
| Ryan Dillon-Capps was approved and in good standing with available Intermittent FMLA leave, to which he was entitled by law, on June 13, 2024. |

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review

2025-02-17                                                      Page # 3 of 58

ADA

35      Ryan Dillon-Capps' health care provider completed FMLA health care provider

certification form WH-380-E on January 22, 2024 (See ECF 16-3, at 10-13) and March 12, 2024

(See ECF 16-3, at 18-21)

36      The health care provider stated on the form that because of Ryan Dillon-Capps condition

he would need to be given the reasonable accommodation of working from home. See ECF 16-3,

at 20.

37      On June 13, 2024, at 9:01 AM, Richard Hartman validates via email to Ryan Dillon-

Capps that he is in good standing with his approved FMLA leave and has FMLA Leave available

to use: "FMLA time off, to which you are entitled". See ECF 23-5, at 14.

38      **Denial of Reasonable Accommodation:** Richard Hartman emailed Ryan Dillon-Capps

on June 13, 2024, at 9:01 AM demanding that he returns to work and complete the work request

by June 13, 2024, at 3 PM, and if Ryan Dillon-Capps does not complete the task by 3 PM that it

will result in adverse employment consequences.  See ECF 23-5, at 14.

39      **Denial of Reasonable Accommodation:** On July 30, 2024, While Ryan Dillon-Capps

was on FMLA Leave, having roughly six weeks of FMLA leave remaining, and while the legal

proceedings were still on-going, Richard Hartman terminated Ryan Dillon-Capps.

| FACT |
|------|
| Ohana Growth Partners, LLC granted Ryan Dillon-Capps reasonable accommodation to work from home |
| Ohana Growth Partners, LLC interference of FMLA leave is a denial of a reasonable accommodation |

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
2025-02-17                                                    Page # 4 of 58

## FMLA INTERFERANCE SINCE JUNE 13, 2024

40    **Notice:** Ryan Dillon-Capps notified Richard Hartman, Glenn Norris, and Justin Drummond via emailed on June 13, 2024, at 7:12 AM that he was taking the day off and using FMLA leave.  See ECF 16-0, at 14.

41    **Interference:** Richard Hartman emailed Ryan Dillon-Capps on June 13, 2024, at 9:01 AM demanding that he returns to work and complete the work request by June 13, 2024, at 3 PM, and if Ryan Dillon-Capps does not complete the task by 3 PM that it will result in adverse employment consequences.  See ECF 23-5, at 14.

**42**    **Notice:** On June 18, 2024, at 5:30 PM, Ryan Dillon-Capps informed Robert Brennen, instructing him to convey to Ohana Growth Partners, LLC, that he was still on FMLA leave and would remain on FMLA leave until further notice. See ECF 16-14, at 20.

43    **Interference:** On July 30, 2024, While Ryan Dillon-Capps was on FMLA Leave, having roughly six weeks of FMLA leave remaining, and while the legal proceedings were still on-going, Richard Hartman terminated Ryan Dillon-Capps.

| **FACT** |
|---|
| Richard Hartman knew that Ryan Dillon-Capps was entitled to FMLA leave and had received notice on June 13, 2024, from Ryan Dillon-Capps.  Two hours later Richard Hartman used a coercive threat to intentionally interfere with Ryan Dillon-Capps' FMLA leave. |
| Ohana Growth Partners, LLC interference of Ryan Dillon-Capps FMLA leave had prevented the use of any FMLA leave hours since January. |

Ohana Growth Partners, LLC knew that Ryan Dillon-Capps was entitled to FMLA leave and had received notice on June 18th, 2024, through their legal counsel. Richard Hartman terminated Ryan Dillon Capps and intentionally interfering with Ryan Dillon-Capps FMLA leave.

<u>JUNE 13, 2024: FMLA RETALIATION</u>

**44**    **Protected Activity:** On June 13, 2024, at 12:03 PM, Ryan Dillon-Capps responded to Richard Hartman with a cease-and-desist email, asserting his right to use his FMLA leave without interference or retaliation. The email informs Richard Hartman that Ryan Dillon-Capps has complied with the work demand, waiting for the other party to reply, and requested Richard Hartman confirm receipt of the notice by 1:30 PM. See ECF 23-5, at 11-12.

**45**    **Notice:** On June 13, 2024, at 2:05 PM, with no response from Richard Hartman, Ryan Dillon-Capps replies to the email thread with the coercive threat and cease and desist email and adds Ohana Growth Partners, LLC owners requesting them to intervene and stop Richard Hartman's on-going interference of Ryan Dillon-Capps FMLA leave and hostile workplace harassment against himself and other employees also engaged in the labor dispute. See ECF 16-0, at 19.

**46**    **Retaliation:** On June 13, 2024, at 2:20 PM, Richard Hartman places Darren Koritzka, another employee engaged in the labor dispute against Ohana Growth Partners, LLC, on a leave of absence in retaliation to the 2:05 PM email. See ECF 16-0, at 27. Darren Koritzka told Ryan Dillon-Capps that Richard Hartman said "it's like a paid vacation" when handing him the notice.

**47**    **Retaliation:** On June 13, 2024, at 8:47 PM, Richard Hartman continued the retaliation by suspending Ryan Dillon-Capps without pay. See ECF 23-5, at 16-18.

| FACTS |
|---|
| Ryan Dillon-Capps and Darren Koritzka were two employees involved in a labor dispute on June 13, 2024 |
| Richard Hartman received the 2:05 PM email and 15 minutes later he placed Darren Koritzka on a leave of absence in retaliation |
| Richard Hartman's suspension of Ryan Dillon-Capps was retaliation |
| Ryan Dillon-Capps did not receive active pay post suspension |
| Ryan Dillon-Capps submitted paid leave through Paycom during the lawsuit and it was denied as part of the on-going retaliation |

## FMLA RETALIATION SINCE JUNE 13, 2024

**48**    **Retaliation:** On June 14, 2024, at 12:18 PM, Ohana Growth Partners, LLC, by its undersigned counsel of Miles & Stockbridge P.C., filed a retaliatory and fraudulent lawsuit supported by perjured statements against Ryan Dillon-Capps.  See ECF 23-1, at 1.

**49**    **Protected Activity:** On June 18, 2024, at 5:30 PM, Ryan Dillon-Capps informed Robert Brennen, instructing him to convey to Ohana Growth Partners, LLC, that he was still on FMLA leave and would remain on FMLA leave until further notice. See ECF 16-14, at 20.

**50**    **Retaliation:** On July 30, 2024, While Ryan Dillon-Capps was on FMLA Leave, having roughly six weeks of FMLA leave remaining, and while the legal proceedings were still on-going, Richard Hartman terminated Ryan Dillon-Capps with a notice threatening another lawsuit if Ryan Dillon-Capps didn't:

1.      Comply with the non-disparagement clause to coerce Ryan Dillon-Capps into cease speaking negatively against them in the court proceedings;

2.      Work-product clause and Agreement to Not Disclose Confidential Information and Trade Secrets to coerce Ryan Dillon-Capps into cease filing evidence they were considering work products that showed the fraudulent nature of the lawsuit and violations of the law;

3.      Non-Solicitation clause to coerce Ryan Dillon-Capps into ceasing collective bargaining efforts in the labor dispute;

 See ECF 16-0, at 142-143.

51     **Retaliation:** On August 2, 2024, Richard Hartman terminated Darren Koritzka citing his position has been eliminated with a notice telling Darren Koritzka he needs *"carefully review and fully comply with each and every obligation"* for same clauses as Ryan Dillon-Capps notice. See ECF 16-0, at 146-147.  Darren Koritzka is offered a severance package of $3,150 in exchange for:

1.      Darren waiving of all legal and administrative claims against Ohana Growth Partners, LLC;

2.      Darren informing Ohana Growth Partners, LLC if he is made aware of any investigations against Ohana by any state or federal agency;

3.      Darren informing Ohana Growth Partners, LLC if he is called to testify against Ohana and to provide them with what he was going to say;

4.      Darren leaving any class action lawsuit against Ohana Growth Partners, LLC as soon as possible;

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 8 of 58

2025-02-17

5.        Darren cooperation with Ohana Growth Partners, LLC legal representatives to support Ohana's position in litigation, for the next two months;

6.        Darren working for free, as requested by Ohana Growth Partners, LLC, for the next two months;

See ECF 16-0, at 148-156.

52    **Retaliation:** After discussing the offer with Ryan Dillon-Capps, Darren said he declined the offer. Darren Koritzka told Ryan Dillon-Capps that in retaliation to his denial Ohana Growth Partners, LLC withheld paying out his leave and underpaying him.

| FACTS |
|---|
| Richard Hartman's termination of Ryan Dillon-Capps was retaliation |
| Richard Hartman's termination of Darren Koritzka was retaliation |
| Richard Hartman intended to coerce Ryan Dillon-Capps |
| Richard Hartman retaliated against Darren Koritzka for not signing away his rights and agreeing to do things that at face value are unethical and likely unlawful. |
| Ryan Dillon-Capps was not paid for his accumulated paid leave as is customary for Ohana Growth Partners, LLC |
| Ryan Dillon-Capps termination was inclusive of his medical benefits |

## CASE REMANDED TO FEDERAL COURT

**53**      Ryan Dillon-Capps successfully defended himself and the court dismissed Ohana Growth

Partners, LLC case on November 2, 2024, and docketed the ruling on November 6, 2024. See

ECF 16-5, at 55.

**54**      The state court remanded Ryan Dillon-Capps claims to federal court. See ECF 16-0, at

160.

| FACT |
|:---:|
| Ryan Dillon-Capps claims come to the U.S. District Court for the District of Maryland remanded by the Circuit Court of Baltimore County with no claims adjudicated by the state court. |

## FRAUDULENT LAWSUIT

55      On May 24, 2024, at 9:27 PM, Ryan Dillon-Capps created an account and reached out to

Geoff VanMaastricht to provide him with Global Administrator access.  See ECF 16-2, at 88.

Geoff VanMaastricht later declined, twice, to receive access.

56      On June 6, 2024, at 6:00 PM, Ryan Dillon-Capps emails Rolando Pedraza to inquire if he

would be available to meet to become a holder of a Global Administrator emergency account.

They plan is to meet at the end of the following week on June 13-14, 2024. See ECF 16-2, at 89.

57      On June 7, 2024, at 5:35 PM, Ryan Dillon-Capps texted Justin Drummond to arrange for

Justin Drummond to receive Global Administrator access, and Justin Drummond agreed to

receive access on October 10-11, 2024. See ECF 16-0, at 42-43.

58      On June 7, 2024, at 5:29 PM, Ryan Dillon-Capps contacts Karen Cepress to inquire if she

would be available to meet on Monday or Tuesday to become a holder of a Global Administrator

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 10 of 58

2025-02-17

emergency account. See ECF 16-2, at 91.  Karen Cepress replies on June 11, 2024, at 11:48 AM, and Ryan Dillon-Capps replies later that day at 6:54 PM to say that he would sync with Karen Cepress later in the week.  See ECF 16-2, at 91.

59      On June 10, 2024, at 1:17 PM via text message (See ECF 16-0, 44) and then again on June 11, 2024, at 7:45 PM, through Microsoft Teams chat, Justin Drummond delayed receiving Global Administrator access. Telling Ryan Dillon-Capps that he would be traveling from tomorrow until the end of the week; indicating that he would be available the following week to receive Global Administrator access.  See ECF 16-2, at 92.

60      Richard Hartman emailed Ryan Dillon-Capps on June 13, 2024, at 9:01 AM demanding that he immediately come off FMLA leave to give Phil Leadore Global Administrator access by June 13, 2024, at 3 PM, and if Ryan Dillon-Capps does not complete the task by 3 PM that it will result in adverse employment consequences.  See ECF 23-5, at 14.

61      Ryan Dillon-Capps complies, attempting to provide Global Administrator access to Phil Leadore and Daniel Levett; Ryan Dillon-Capps emails both on June 13, 2024, at 11:48 AM, (See ECF 16-2, at 81) and again at 3:10 PM. See ECF 16-2, at 86. Phil Leadore and Daniel Levett never respond to receive Global Administrator access. Glenn Norris, Justin Drummond, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, and Earl Ihle are included in the 11:48 AM email.  Ryan Dillon-Capps forwards the 3:10 PM email to Justin Drummond at 4:26 PM.  See ECF 16-2, at 86.

62      Ryan Dillon-Capps replies to Richard Hartman's email on June 13, 2024, at 12:03 PM, and informs him that Ryan Dillon-Capps has reached out to Phil Leadore and Dan Levett and is waiting for them to reply. The  email is also sent to Karen Debus, Justin Drummond, Stacey

Wittelsberger, C. Victor Brick, Lynne Brick, Terry Woods, Earl Ihle, and Glenn Norris.  See ECF 23-5, at 11.

63      On June 13, 2024, at 4:25 PM, Ryan Dillon-Capps informed Justin Drummond via text message that Phil Leadore and Daniel Levett are unresponsive, and then forwards the email to Justin Drummond.  Ryan Dillon-Capps tells Justin Drummond that he wishes they would respond and is eager to provide them with Global Administrator access.  See ECF 16-0, at 48-49.

64      On June 13, 2024, at 5:06 PM, Justin Drummond replies to Ryan Dillon-Capps text messages and says Phil Leadore and Daniel Levett will be in touch.  See ECF 16-0, at 56.

65      On June 13, 2024, between 5:07 and 5:08 PM, Ryan Dillon-Capps request Justin Drummond to contact Phil Leadore and Daniel Levett and ask them to respond so that they can get started with setting up their accounts and giving them Global Administrator access.  See ECF 16-0, at 57.

66      On June 13, 2024, at 5:18 PM, the next and final text message from Justin Drummond is sent to Ryan Dillon-Capps, and Justin Drummond requests that Ryan Dillon-Capps stop texting him.  See ECF 16-0, at 60.

67      On June 13, 2024, at 8:47 PM, Richard Hartman notifies Ryan Dillon-Capps via email that he is suspended without pay.  See ECF 23-5, at 16-18.

68      Ryan Dillon-Capps forwards the email to Justin Drummond believing Richard Hartman actions are unsanctioned at 9:00 PM on June 13, 2024. (Exhibit shows 8 PM due to Justin Drummond's time zone difference) See ECF 23-6, at 5-6.

69      Justin Drummond responds to the email thread at 9:54 PM on June 13, 2024, and confirms that Ryan Dillon-Capps is suspended without pay. Repeating Richard Hartman's reason as Ryan Dillon-Capps had failed to reach Phil Hartman and provide him with Global

Administrator access.  A complete contradiction to the entirety of events for the day. (Exhibit shows 8:54 PM due to Justin Drummond's time zone difference) See ECF 23-6, at 5.

70      On June 14, 2024, at 12:18 PM,  Robert S. Brennen, Steven D. Frenkil, and Victoria K. Hoffberger filed a lawsuit on behalf of Ohana Growth Partners, LLC against Ryan Dillon-Capps. See ECF 23-1.

71      The lawsuit was filed to the Circuit Court of Baltimore County under the case category Equity: Injunctive Relief.  See ECF 23-2.

72      The Richard Hartman (See ECF 23-5) and Justin Drummond (See ECF 23-6) provided affidavits that were included with the complaint.  Both affidavits, the complaint (See ECF 23-1), memorandum (See ECF 23-4), and motion for temporary restraining order and preliminary injunction (See ECF 23-3)  repeat the same lies about Ryan Dillon-Capps refusing to provide access to Justin Drummond and Phil Leadore.  It is the basis for the entire fraudulent lawsuit.

| FACTS |
|---|
| Richard Hartman and Justin Drummond knew Ryan Dillon-Capps promptly complied and had tried to reach Phil Leadore multiple times |
| Ryan Dillon-Capps updated Justin Drummond that Phil Leadore was unresponsive and requested assistance from Justin Drummond |
| Justin Drummond told Ryan Dillon-Capps that Phil Leadore would reply, but Phil Leadore never replied |

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 13 of 58

2025-02-17

| |
|---|
| Ryan Dillon tried to give Global Administrative access to Justin Drummond only days before, and Justin Drummond intentionally evaded so he would not have access |
| Ryan Dillon-Capps was in the process of giving Global Administrator access to Karen Cepress and Rolando Pedraza.  This is why Ohana Growth Partners, LLC had to move forward with the pretext;  before they received access |
| Justin Drummond could have given Phil Leadore, or anyone else, Global Administrator access if he had received access |
| Global Administrative Access is nothing more than a pretext |
| Ryan Dillon-Capps suspension and the lawsuit had nothing to do with Global Administrative access |
| Richard Hartman and Justin Drummond provided perjured statements under oath to the Circuit Court of Baltimore County |
| Prior to the lawsuit, no one requested access to the Go Daddy account |

## NO NOTICE EX PARTE TEMPORARY RESTRAINING ORDER

73     On December 20, 2023, at 2:29 PM, Ryan Dillon-Capps emailed Miles & Stockbridge P.C. seeking legal representation from his personal email address and provides his personal mobile number.  Steven D. Frenkil replied December 2023, at 5:11 PM and informed Ryan Dillon-Capps that Miles & Stockbridge has a conflict of interest.  See ECF 16-14, at 1-2.

74      On December 22, 2023, between 10:52 AM and 1:46 PM, Holly Drumheller Butler and Ryan Dillon-Capps had their first conversation via text message to Ryan Dillon-Capps personal mobile number. See ECF 16-0, at 1-3.

75      Since 2020, Ohana Growth Partners, LLC HRIS system, Paycom, has contained Ryan Dillon-Capps personal email address and mobile phone number.

76       Victor Brick last  text message to Ryan Dillon-Capps was on June 13, 2024, at 7:59 PM. See ECF 16-0, at 41.

77      Justin Drummond last text message to Ryan Dillon-Capps was on June 13, 2024, at 5:18 PM. See ECF 16-0, at 60

78      Ryan Dillon-Capps made first contact with Glenn Norris via his personal email address in 2019. As Ryan Dillon-Capps supervisor, Glenn Norris has emailed Ryan Dillon-Capps personal email address and called and texted his personal mobile number many times since then.  Glenn Norris texted Ryan Dillon-Capps during litigation on July 3, 2024, at 12:47 PM. See ECF 16-0, at 137.

79      Richard Hartman arranged for interviews and new hire processes in 2019 by emailing, calling, and texting Ryan Dillon-Capps personal email and mobile number.  Richard Hartman subsequently texted and called Ryan Dillon-Capps many times since then, and Human Resources has used the information in Paycom to transmit emails to Ryan Dillon-Capps personal email address many times.

80       Ryan Dillon-Capps work number/extension forwarded directly to Ryan Dillon-Capps personal mobile number, and the work number and extension were displayed in his signature. See ECF 23-5, at 16.

81      On June 13, 2024, at 8:47 PM, Richard Hartman notifies Ryan Dillon-Capps via email

that he is suspended without pay and instructs Ryan Dillon-Capps to cease using all company

systems, which includes his company email address.  See ECF 23-5, at 16-18.

82      On June 14, 2024, at 11:49 AM, Robert Brennen emailed Ryan Dillon-Capps work email

address. See ECF 16-14, at 3.

83      On June 14, 2024, at 12:18 PM, Robert Brennen, Steven Frenkil, and Victoria Hoffberger

only provided Ryan Dillon-Capps work email address to the court and certified to the court that

they had attempted to notify Ryan Dillon-Capps via his work email address on June 14, 2024, at

11:49 AM.  See ECF 23-9.

84      The email and notice directing Ryan Dillon-Capps to stop using his company email

address was filed as an attached exhibit to Richard Hartman's affidavit by Robert Brennen,

Steven Frenkil, and Victoria Hoffberger on June 14, 2024, at 12:18 PM to the Circuit Court of

Baltimore County as part of the original filing. See ECF 23-5.

85      Richard Hartman's affidavit also contains an inadvertent admission of intentionally

violating Ryan Dillon-Capps FMLA leave rights:  *"somehow amounts to retaliation against*

*Dillon-Capps for requesting family and medical leave"* See ECF 23-5, at 4.

86      Richard Hartman's affidavit contains the email from 9:01 AM from Richard Hartman

where he explicitly states that Ryan Dillon-Capps is entitled to FMLA leave. See ECF 23-5, at

14.

87      Richard Hartman's affidavit contains the cease-and-desist email where Ryan Dillon-

Capps is exercising his protected rights. See ECF 23-5, at 12-13.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 16 of 58

88      Richard Hartman's affidavit states that Ryan Dillon-Capps was refusing to comply (See ECF 23-5, at 4), and also contains the email response which explicitly stated Ryan Dillon-Capps had complied and was waiting on Phil Leadore (See ECF 23-5, at 12-13).

89      Richard Hartman's affidavit states that the email from 9:01 AM to Ryan Dillon-Capps contains a directive that he was issuing to Ryan Dillon-Capps (See ECF 23-5, at 3-4), and this contradicted the email attached as an exhibit to his affidavit which stated Glenn Norris was issuing the directive. See ECF 23-5, at 14.

90      Richard Hartman's affidavit states that Microsoft recommends Ohana have one more Global Admin and provides a hyperlink to a Microsoft webpage that says Microsoft recommends having as few global administrators as possible.  Additionally, the words that Richard Hartman was quoting contained fragmented language and when matched to the webpage it says that Microsoft recommends using a Privileged Authentication Administrator role instead of the Global Administrator role. See ECF 23-5, at 2.

91      Richard Hartman's affidavit contains an employment contract as an exhibit which was claimed by Richard Hartman to be Ryan Dillon-Capps employment contract, and the employment contract submitted goes from Section 5 to section 7 with section 5 ending with the word "the".  See ECF 23-5, at 6-7.

92      Richard Hartman's affidavit states that at 2:05 PM exactly he lost his ability to send or receive Microsoft hosted company email, and the affidavit contradicts itself in the next sentence when Richard Hartman stated he lost access to the exact same Microsoft account at 5 pm.  See ECF 23-5, at 4.

93      Richard Hartman's affidavit states that Ryan Dillon-Capps replied to the 8:47 PM suspension email by telling Richard Hartman that he was acting upon the authority of Justin

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 17 of 58

2025-02-17

Drummond (See ECF 23-5, at 4), but the attached email contradicts the affidavit and shows that Ryan Dillon-Capps said that Justin had been empowered by Lynne and Victor and said nothing akin to what Richard Hartman's affirmed.  See ECF 23-5, at 16.

94      Justin Drummond's affidavit was also filed with the pleadings on June 14, 2024 and stated that he was responsible for the directive issued by Richard Hartman at 9:01 AM on June 13, 2024, (See ECF 23-6, at 6) and this contradicted Richard Hartman's affidavit and the email attached as an exhibit to Richard Hartman's affidavit.  All 3 of them saying a different person was responsible for the 9:01 AM directive.

95      Justin Drummond's affidavit states that Richard Hartman lost access to his Microsoft account at 2:05 and in the same sentence lost it at 5 pm. See ECF 23-6, at 2.  The contradiction and singular account/system is explicitly stated in Justin Drummonds affidavit on the following page: *"Ohana MS 365 Account, and by extension Ohana's employee email."* See ECF 23-6, at 2.

96      Justin Drummond's affidavit also repeats the same contradiction about Ryan Dillon-Capps reply to the 8:47 PM email. See ECF 23-6, at 2-3.

97      On June 17, 2024, at 9:13 AM, Robert Brennen emailed Ryan Dillon-Capps work email address and stating he would arrive at the Circuit Court for Baltimore County in 35 minutes for a Temporary Restraining Order hearing with Judge DeSimone [Jr.].  See ECF 16-14, at 3.

98       On June 17, 2024, at 10:07 AM, Robert Brennen emailed Ryan Dillon-Capps work email address and stated he was in the courtroom and about to be heard on the ex parte TRO motion.

99      On June 17, 2024, at 10:50 AM, Judge DeSimone Jr. granted the Ex Parte TRO, set a one-dollar bond, and signed the proposed order which directed Ryan Dillon-Capps to cease and desist  the use of Ohana's systems and email.  It also directed Ryan Dillon-Capps to do the

opposite and to access the system for the purpose of providing Phil Leadore access. See ECF 16-5, at 3-4.

| FACTS |
|---|
| Prior to the lawsuit, Ohana Growth Partners, LLC and Miles & Stockbridge P.C., had used Ryan Dillon-Capps personal email and mobile phone number to communicate with him. |
| No one attempted to notify Ryan Dillon-Capps via his personal email address or mobile phone number |
| Ohana Growth Partners, LLC and Miles & Stockbridge P.C. did not want  Ryan Dillon-Capps to receive notice |
| There is no court record of what was said in the Ex Parte TRO hearing |
| There is no statement of actualized harm; only speculative harm |
| The evidence showed that Ryan Dillon-Capps was entitled to FMLA leave and was exercising his protected FMLA rights |
| The evidence showed that Ryan Dillon-Capps had complied and there was no refusal |
| The court record showed that Richard Hartman and Justin Drummond had committed perjury |

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 19 of 58

2025-02-17

| The court record showed that Robert Brennen, Steven Frenkil, and Victoria Hoffberger had knowingly filed perjured statements |
| --- |
| Judge DeSimone Jr. issued an Ex Parte TRO with conflicting orders |
| Judge DeSimone Jr. issued an Ex Parte TRO where the certificate and evidence conclusively showed that Ryan Dillon-Capps did not receive notice |
| Judge DeSimone Jr. granted an Ex Parte TRO only supported by perjured statements |
| Judge DeSimone Jr. granted equitable injunctive relief knowing the employer had unclean hands |

## COUNSEL ON RECORD

100    On December 20, 2023, at 2:29 PM, Ryan Dillon-Capps emailed Miles & Stockbridge P.C. seeking legal representation from his personal email address and provides his personal mobile number.  Steven D. Frenkil replied December 2023, at 5:11 PM and informed Ryan Dillon-Capps that Miles & Stockbridge has a conflict of interest.  See ECF 16-14, at 1-2.

101    On December 22, 2023, between 10:52 AM and 1:46 PM, Holly Drumheller Butler and Ryan Dillon-Capps had their first conversation via text message to Ryan Dillon-Capps personal mobile number. See ECF 16-0, at 1-3. For three months Ryan Dillon-Capps and Holly Drumheller Butler interacted with each other with Holly Drumheller Butler representing Ohana Growth Partners, LLC.

102    On June 5, 2024, Holly Butler responded to Ryan Dillon-Capps email inquiring of Miles & Stockbridge P.C. was still the legal representatives of Ohana Growth Partners, LLC in an

attempt to negotiate employment terms and conditions for himself and others who had become

engaged in a labor dispute with Ohana Growth Partners, LLC.  Holly Butler denied to provide an

answer, and directed Ryan Dillon-Capps to obtain the information from Ohana Growth Partners,

LLC.  See ECF 16-0, at 93-96.

103    On June 14, 2024, at 12:18 PM,  Robert S. Brennen, Steven D. Frenkil, and Victoria K.

Hoffberger filed a lawsuit on behalf of Ohana Growth Partners, LLC against Ryan Dillon-Capps.

See ECF 23-1.  Steven D. Frenkil is listed on all subsequent filings, was receiving case

notifications, and reading the filings.  See ECF 16-15.

104    On July 23, 2024, at 12:24 PM, Jessica Duvall filed Entry of Appearance, and it was

docketed as 17319514. See ECF 16-1, at 3.

105    As of September 28, 2024, Steven D. Frenkil and Holly Drumheller Butler were still not

shown on the Court Record as legal counsel for Ohana Growth Partners, LLC. See ECF 16-1, at

9.

106    On October 3, 2024, at 1:01 PM, Ryan Dilon-Capps filed to have Holly Drumheller

Butler and Steven D. Frenkil added to Ohana Growth Partners, LLC Counsel of Record. See

ECF 16-5, at 32.

107    On October 11, 2024, Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica

Duvall filed an opposition to the motion to not add Holly Butler and Steven Frenkil – even

though Stven Frenkil's name is listed as an attorney filing the opposition.  See ECF 16-15, at

100.

108    On October 23, 2024, Senior Judge Patrick Stringer denied the motion stating "each party

has a right to choose its own counsel.  The ruling was docketed on October 24, 2024.  See ECF

16-5, at 32.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 21 of 58
2025-02-17

109     On October 15, 2024, at 3:24 PM, Ryan Dillon-Capps filed a motion to disqualify Miles & Stockbridge as counsel for Ohana Growth Partners, LLC. Judge Stringer ruled it moot because the case was dismissed on November 6, 2024.  It was docketed on November 6, 2024.  See ECF 16-5, at 46.

110     On the evening of November 8, 2024, Steven D. Frenkil was silently added to the Court Record at the same time the Case Status was updated to closed.  See ECF 16-1, at 28.

111     Between December 5 and January 11,2024, Miles & Stockbridge P.C. was completely removed as legal counsel on record without notice.  See screenshot below labeled as Figure COR:1.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review

2025-02-17                                        Page # 22 of 58

**Figure COR:1**



### INSURANCE FRAUD

112    On July 30, 2024, Ryan Dillon-Capps was terminated by Richard Hartman. See ECF 16-0, at 142-143.

113    On November 2, 2024, Ohana Growth Partners, LLC case was dismissed by the Circuit Court for Baltimore County.  The Ruling was docketed on November 6, 2024.  See ECF 16-5, at 55.

114    In November 2024, Ryan Dillon-Capps and Caroline Dillon-Capps received via USPS his Cobra Continuing Coverage packet. See ECF 16-4, at 7-19.

115    The header date on the benefits package states November 07, 2024. See ECF 16-4, at 10.

116     The body of the same page says coverage under the Plan will end on 09/30/2024 due to end of employment. See ECF 16-4, at 10.

117     The qualified beneficiaries are stated as Ryan Dillon-Capps and Caroline Dillon-Capps. See ECF 16-4, at 11.

118     The packet stats that if COBRA coverage is elected coverage will begin on October 01, 2024. See ECF 16-4, at 11.

119     Previously selected plans, available plans, and their costs are provided.  See ECF 16-4, at 13.

120     The packet states that Ryan Dillon-Capps and Caroline Dillon-Capps have 60-days from the date of termination to respond to be eligible for COBRA coverage.  See ECF 16-4, at 14.

121     The packet states that Ryan Dillon-Capps and Caroline Dillon-Capps will lose their right to COBRA coverage if they do not respond within the 60-days after termination. See 16-4, at 17.

| FACTS |
| :---: |
| When the original pages are lined up the text on the page with the November 07, 2024, date is shifted slightly over from all the other pages |
| Excluding the November 07, 2024, date, all the other dates and information aligns with a termination date of July 30, 2024, per standard COBRA procedures |
| Richard Hartman is the Head of Human Resources and Administrator of the HRIS, Paycom, system where employee addresses and contact information are stored |

| |
|---|
| Richard Hartman terminated Ryan Dillon-Capps |
| Ohana Growth Partners, LLC Human Resource department is responsible for administering the benefits |
| Someone with access redirected the packet to another address so that Ryan Dillon-Capps and Caroline Dillon-Capps would not receive their COBRA benefits package when it was mailed |
| Ryan Dillon-Capps and Caroline Dillon-Capps were deprived of their right to elect COBRA coverage |
| Someone with access to the redirected packet opened the confidential packet that was mailed out to the redirect address. |
| Someone with access to the redirected packet printed out a new page with the changed heading date of November 07, 2024 |
| The altered page then replaced the original one and it was mailed out via USPS |

## NOTICES

122     On June 26, 2024, Judge Barranco remanded Ryan Dillon-Capps claims to federal court. See ECF 16-0, at 160.

123     On November 2, 2024, Judge Stringer dismissed Ohana Growth Partners, LLC claims, and the ruling was docketed on November 6, 2024.  See ECF 16-5, at 55.

124     On November 1, 2024, Ryan Dillon-Capps provided notice to Ohana Growth Partners, LLC through their legal counsel of his intention to seek Injunctive Relief. See ECF 32-2, at 1-7.

125    On November 1, 2024, Ryan Dillon-Capps provided notice to Ohana Growth Partners, LLC through their legal counsel of his intention to seek a hearing, which could be Ex Parte, to review the evidence and adjudicate the facts of the case with the Court. See ECF 32-2, at 8-15.

126    On November 1, 2024, Ryan Dillon-Capps provided notice to Ohana Growth Partners, LLC through their legal counsel of his intention to seek Judgement against them. See ECF 16-40.

127    On November 7, 2024, Ryan Dillon-Capps provided notice to Ohana Growth Partners, LLC through their legal counsel of his intention to file his claim in the United Stated District Court for the District of Maryland. See ECF 32-2, at 62-65.

128    On December 27, 2024, Ryan Dillon-Capps filed his remanded case to the United Stated District Court for the District of Maryland. See ECF 1-0.

| FACTS |
|---|
| Ryan Dillon-Capps is the state court victor after successfully defending himself |
| All Ryan Dillon-Capps claims remain unadjudicated and remanded to federal court. |
| Ohana Growth Partners, LLC has received notice of the lawsuit, injunctive relief, evidentiary hearing to adjudicate the facts (inclusive of ex parte notice), and that Ryan Dillon-Capps is seeking judgement against Ohana Growth Partners, LLC |

UNPAID COMPENSATION

**129**    On June 13, 2024, at 8:47 PM, Richard Hartman suspended Ryan Dillon-Capps without pay. See ECF 23-5, at 16-18.

130     On July 30, 2024, Richard Hartman terminated Ryan Dillon-Capps, and did not pay out his unpaid leave. See ECF 16-0, at 142-143.

131     Ohana Growth Partners, LLC completed their refinancing in Q3 2024, and paid out an additional bonus.  Ryan Dillon-Capps was deprived of his $100,000 bonus. See screenshot below labeled as Figure UC:1.

**Figure UC:1**

| Employee Bonuses | | 145% Medicare Tax | SS 6.2% Tax | Total |
|---|---|---|---|---|
| Justin D | President | 750,000 | 10,875.00 | N/A | 760,875 |
| Josh G | CMO | 500,000 | 7,250.00 | N/A | 507,250 |
| Josh B | CDO | 200,000 | 2,900.00 | N/A | 202,900 |
| Matt N | VP Finance | 150,000 | 2,175.00 | N/A | 152,175 |
| Rich H | HR | 150,000 | 2,175.00 | N/A | 152,175 |
| Alyson Ratcliffe | Operations | 150,000 | 2,175.00 | N/A | 152,175 |
| Bill Flax | | 100,000 | 1,450.00 | N/A | 101,450 |
| Karen | Data Analytic | 100,000 | 1,450.00 | N/A | 101,450 |
| Andrew P | | 100,000 | 1,450.00 | N/A | 101,450 |
| Ryan Wagner | | 100,000 | 1,450.00 | N/A | 101,450 |
| Merrill Brick | | 100,000 | 1,450.00 | 6,200.000 | 107,650 |
| Sara Cheek | | 100,000 | 1,450.00 | 6,200.000 | 107,650 |
| Merlowe | | 50,000 | 725.00 | 3,100.000 | 53,825 |
| Leeann | | 50,000 | 725.00 | 3,100.000 | 53,825 |
| Brian Chang | | 10,000 | 145.00 | 620.000 | 10,765 |
| Jared Flax | | 10,000 | 145.00 | 620.000 | 10,765 |
| Jeremy Snoot | | 10,000 | 145.00 | 620.000 | 10,765 |
| 9 Regionals – $10,000 each | | 90,000 | 1,305.00 | 5,580.000 | 96,885 |
| 75 GMS – $1k each | | 75,000 | 1,087.50 | 4,650.000 | 80,738 |
| 2 Marketing Assts – $500 each | | 1,000 | 14.50 | 62.000 | 1,077 |
| 20 Office Staff – $1000 each | | 20,000 | 290.00 | 1,240.000 | 21,530 |
| 50 AGMs – $500 each | | 25,000 | 362.50 | 1,550.000 | 26,913 |
| 6 FTSMs – $1000 each | | 6,000 | 87.00 | 372.000 | 6,453 |
| Reduction | | (800,000) | | | (800,000) |
| **Total** | | **2,047,000** | **41,282** | **33,914** | **2,122,196** |
| | | | % of Equity Value | | 1.0% |

132     Ohana Growth Partners, LLC did not pay out Ryan Dillon-Capps leave as is customary for the company.  On July 1, 2024, Ohana Growth Partners, LLC final pay stub to Ryan Dillon-Capps shows he had 50.47 Vacation, 16.00 Floating Holiday, and 11.00 Mental Well Being Hours to pay out.  Representing an underpayment of 77.47 Hours or approximately one full pay period of pay worth roughly $5,508.92. See screenshot below. See screenshot below labeled as Figure UC:2.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 27 of 58

2025-02-17

**Figure UC:2**

| Employee Benefits, Allowances, and Other | Current Period | Year To Date | YTD Taken | Available |
|---|---|---|---|---|
| Employer Medical Contribution * | 621.39 | 7456.68 | *Memo Only | |
| Health Savings Match * | 20.00 | 240.00 | *Memo Only | |
| Floating Holiday Hours | 0.00 | 16.00 | 0.00 | 16.00 |
| Mental Well Being Hours | 0.00 | 11.00 | 0.00 | 11.00 |
| Sick Full Time Hours | 0.00 | 40.00 | 8.00 | 32.00 |
| Vacation Hours | 0.00 | 114.47 | 64.00 | 50.47 |

133    Ohana Growth Partners, LLC was supposed to pay Ryan Dillon-Capps $5,688.83 per pay

period (twice per month). See ECF-16-2, at 184. On July 1, 2024, Ohana Growth Partners, LLC,

final pay stub to Ryan Dillon-Capps shows he had been paid $60,506.18 for 11 pay periods.

Representing a $2070.95 underpayment of base pay.

Ohana Growth Partners, LLC was supposed to pay Ryan Dillon-Capps $1,100 every

month for his KPI bonus. On July 1, 2024, Ohana Growth Partners, LLC final paystub to Ryan

Dillon-Capps showed he had been paid $2,780.00 of his monthly KPI Bonus.  Representing a

$3,820.00 underpayment of monthly KPI Bonus. See screenshot below labeled as Figure UC:3.

**Figure UC:3**

| | Rate Hours / Units | Current Period | Year To Date |
|---|---|---|---|
| **Earnings** | | | |
| Regular | | 2655.05 | 60506.18 |
| Sick - Salary | | 0.00 | 525.10 |
| Vacation | | 0.00 | 4200.82 |
| Bonus - KPI Bonus | | 0.00 | 2780.00 |

134    Ohana Growth Partners, LLC applies annual raises to the August 1 paycheck. From 2022

to 2023, Ryan Dillon-Capps base pay went up 10% from 124,120.00 to 136,532.00.  Monthly

Bonus went up by 10% from 1,000 to $1,100.  Annual Bonus went up 100% from $6,000 to

$12,000.  Monthly Phone reimbursement stayed at $150.00 per month.  See ECF 16-2, at 183-

184.

## FACTS

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
2025-02-17                                    Page # 28 of 58

| |
|---|
| On July 1, 2024, Ryan Dillon-Capps had been underpaid by $11,399.87 intentionally as part of on-going retaliation |
| Using the same rate of increase, Ryan Dillon-Capps 2024 base pay is $150,185.20.  Monthly Bonus is $1,210.00 ($14,520). Annual Bonus is $24,000.00.  Monthly Phone reimbursement is 150.00($1,800).  Total Compensation: $190,502.20 (not including holiday and the other 1-2 bonus') |
| Excluding the extra bonus' this is roughly $7,937.59 per pay period, and there have been roughly 16 pay periods since June 13, 2024.  Representing $138,401.31 in unpaid wages. |
| The Holiday Bonus would have been another 10-20k(middle point is 15k), plus the 100k refinancing bonus.  Representing $253,401.31 in unpaid compensation as of February 15, 2024. |
| At an annual 6% interest rate, far less the interest rate Ryan Dillon-Capps has been applied to his debt: $10,136.05 is added to make it $263,537.36 |
| If statutory double from FMLA is applied: $527,074.72 |
| If statutory treble is applied under Maryland Wage: $790,612.09 |

## PHYSICAL HARM

135     In 2013, Ryan Dillon-Capps was diagnosed by Maguy Destin-Jeanty, MD, with his physical symptoms impairing his major life activities and requiring emergency medical care at

times; Necessitating reasonable accommodations under the ADA, Rehabilitation Act of 1990, and its subsequent 2008 Amendment.  See ECF 16-3, at 22.

136     In December 2013, Ryan Dillon-Capps acquired a service dog which completed specialized training in April of 2014. See ECF 16-3, at 3.

137     From April 2014 until October 2019, Ryan Dillon-Capps relief on his service dog, Bumi, 24/7.

138     In October 2019, Ryan Dillon-Capps began transitioning away from requiring Bumi full time, and by the time Ryan Dillon-Capps moved to Maryland to started work for Ohana Growth Partners, LLC in February 2020 (See ECF 23-5, at 2) he was able to function throughout the workday without his service dog.

139     By the time COVID restrictions were being lifted more broadly in 2021, Ryan Dillon-Capps was able to travel for work without his service dog.  When Bumi passed away in December 2022, Ryan Dillon-Capps was no longer in need of a service dog, medication, or regular treatment sessions.

140     Ryan Dillon-Capps success at work had resulted in Ohana Growth Partners, LLC IT Department successfully achieving all desired supported metrics for the first time in the company's history. See screenshots taken from a slide show presentation below and labeled as Figure PH:1, PH:2, PH:3, PH:4, PH:5, PH:6, PH:7.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 30 of 58

2025-02-17

**Figure PH:1**



**Figure PH:2**

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 31 of 58

2025-02-17

**Figure PH:3**



**Figure PH:4**



Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
2025-02-17                                    Page # 32 of 58

**Figure PH:5**



The second most statistically significant factor

# Ticket Volume

**Figure PH:6**



Help Desk Support via Teams results significantly improves accessibility

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
2025-02-17                                            Page # 33 of 58



**Figure PH:7**

141    Ryan Dillon-Capps and Glenn Norris had been actively negotiating the terms of his promotion to the C-suite with compensation going to $507,200.00.  Other C-level executives had already been notified of the pending promotion and other employees knew that Ryan Dillon-Capps and the IT Department were about to be taking on more responsibility for the company. See screenshots of email to Glenn Norris on November 9, 2023, at 3:40 PM with the 15-Month Budge Analysis and figures of negotiated compensation from the last negotiation showing labeled as PH:8, PH:9.

**Figure PH:8**

| From: | Ryan Wagner |
|---|---|
| Sent: | Thursday, November 9, 2023 3:40 PM |
| To: | Glenn Norris; Justin Drummond |
| Subject: | 15 Month Budget & analysis |
| Attachments: | Q4_2023-2024 15 Month Analysis.xlsx |

**Figure PH:9**

| Chief Support Officers (CSO): IT Operations (ITO) Business Intelligence (BI) Facilities,Equipment, Repairs, and Maintenance (FERM) | $150,000.00 | $500,000.00 | Base Shown KPI, Bonus', and Vested Capital Gain Returns not included 30k Sign-on bonus not included |
|---|---|---|---|
| Phone Reimbursement | $ 1,800.00 | $ 4,200.00 | I had to add international dialing plan to reach support that was on hours for Takoma Park, and I will need to have additional coverage and cost added when I am traveling overseas. |
| Internet Reimbursement | $ - | $ 3,000.00 | I provided internet to Takoma Park, and in addition to a set of full time hours at the office - I also put in as much and more time remotely. |
| | $151,800.00 | $507,200.00 | $ | 355,400.00 |

142    All that changed after October 16, 2024, when Ryan Dillon-Capps discovered accounting irregularities and reported it to Glenn Norris.  Two months later, on December 21,  2023 Ryan Dillon-Capps requested time off with a request for a 3rd party investigator to investigate two more fraudulent discoveries.  That time off turned into the January 4, 2024, FMLA request.  See ECF 16-2, at 1-2.

143    Holly Butler of Miles & Stockbridge P.C. was identified by Justin Drummond and herself as being that 3rd party investigator. See ECF 16-0, at 1.

144    On December 22, 2023, between 10:52 AM and 1:46 PM, Holly Drumheller Butler and Ryan Dillon-Capps had their first conversation via text message to Ryan Dillon-Capps personal mobile number. See ECF 16-0, at 1-3. For three months Ryan Dillon-Capps and Holly Drumheller Butler insisted that Ryan Dillon-Capps be directly involved with the investigation instead of using the Help Desk and other IT department resources.  Resulting in Ryan Dillon-Capps unable to make use of his FMLA leave and keep up with the requests being made by Glenn Norris and going through roughly 30 terabytes of data for Holly Butler.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 35 of 58
2025-02-17

145     Ryan Dillon-Capps health care provider completed the health care portion of the FMLA

certification form, WH-381-E, on January 22, 2024 (See ECF 16-3, at 10-13) and March 12,

2024, (See ECF 16-3, at 18-21).   In it the health care provider states that Ryan Dillon-Capps

condition is exacerbated by direct contact with individuals at work who are creating hostile

interactions and contributing to the hostile environment at work.  The healthcare provider is

speaking about the sudden emergency of hostility from Glenn Norris, since the October 16

accounting irregularities were reported, and Richard Hartman, since the November hostile

workplace report against Joshua Beyer (CDO), Josh Gerner (CMO), Bill Flax, and Jared Flax.

The November report was filed after a sudden reemergence of inappropriate conduct from the

reported individual which began shortly after the October 16, 2024, report to Glenn Norris.  See

ECF 16-3, at 1.

146     The working from home accommodation requested by the health care provider is stated

as a necessary reasonable accommodation to mitigate the impact of the hostile workplace.  See

ECF 16-3, at 20.

147     Richard Hartman required additional information from the health care provider, and the

January 31, 2024, letter from the health care provider stated that the intermittent FMLA leave is

specifically for flare-ups and would not require a consistently reduced work schedule.  See ECF

16-3, at 17.

148     Richard Hartman and Glenn Norris continued to create a hostile work environment and

escalating the harassment, retaliation, and interference throughout 2024.  At the end of May

2024, the pretext for the state civil action began with coercive threats from Richard Hartman,

Glenn Norris, and Victor Brick to create the illusion of Ryan Dillon-Capps refusing to comply

with Ohana Growth Partners, LLC.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 36 of 58

149    Richard Hartman and Glenn Norris levied their position to enlist others into contributing to their retaliatory efforts, some of them had no idea what they were doing.  Their retaliatory harassment against me were also directed against other members of the IT Department including Darren Koritzka and members of the Help Desk, and during the weeks leading up to June 13, 2024, had become an endless barrage that required endless vigilance from Ryan Dillon-Capps to redirect their efforts back toward himself and shield the other employees as much as possible.

150    Unaware of the pretext on June 7, 2024, Justin Drummond agreed to receive Global Administrator access on June 10-11, 2024.  See ECF 16-0, at 42-44.

151    On June 10, 2024, at 1:17 PM via text message (See ECF 16-0, 44) and then again on June 11, 2024, at 7:45 PM, through Microsoft Teams chat, Justin Drummond delayed receiving Global Administrator access. Telling Ryan Dillon-Capps that he would be traveling from tomorrow until the end of the week; indicating that he would be available the following week to receive Global Administrator access.  See ECF 16-2, at 92.

152    After the coercive threats began in May 2024, Ryan Dillon-Capps configured his mobile number to notify people that all calls would be recorded before it would allow the call to proceed, and Ryan Dillon-Capps would notify callers a second time that the call was recorded. Glenn Norris was upset, but it prevented him from continuing his abusive behavior unchecked by calling Ryan Dillon-Capps. On June 11, 2024, at 12:00 PM, Ryan Dillon-Capps offered Glenn Norris and Justin Drummond an unrecorded phone call to move forward a resolution on the remaining labor dispute because Ryan Dillon-Capps had believed that the pretext had been resolved when Justin Drummond agreed to the accord and was expecting Justin Drummond to receive access later that day. See ECF 16-0, at 12-13.

153    Glenn Norris, Justin Drummond, and Ryan Dillon-Capps had their final phone call a little

after 3 PM on June 11, 2024. During the phone call, Ryan Dillon-Capps asked for the following

terms:

1.    The contact information of their legal counsel to facilitate the negotiations of the

labor dispute.

2.    That the only terms non-negotiable are that all hostilities directed toward Darren

Koritzka, Ann Pinera, and the Cielo IT based Help Desk team would cease immediately

3.    The final terms of the negotiations needed to ensure favorable employment terms

and conditions for all 3.

4.    That Cielo IT's financial obligations to Ohana Growth Partners, LLC could not

result in premature termination of their agreement and subsequent collection of the

difference.

154    Ryan Dillon-Capps was effectively offering to resign under reasonable circumstances in

exchange for the favorable outcome of the others in the labor dispute, and Ryan Dillon-Capps

told Glenn Norris and Justin Drummond that months of increased hostility, which had become a

hellish nightmare, was about to exceed what Ryan Dillon-Capps could reasonably endure.

Explicitly telling Glenn Norris and Justin Drummond that his health was being adversely

affected by their actions over the last few weeks and that his condition had worsened because of

it.  An Affidavit from Caroline Dillon that was filed to the state court, states that Ryan Dillon-

Capps began experiencing catatonic episodes at the end of May in response to the increased

hostility and had begun discussing hospitalization. See ECF 16-2, at 175-178.  Those

conversations being a driving force behind Ryan Dillon-Capps offer.  The affidavit was filed to

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 38 of 58

the state court on July 1, 2024 with an incorrectly dated page of the signature for July 29, 2024 instead of June 29, 2024.

155    Ryan Dillon-Capps left that meeting believing that both Glenn Norris and Justin Drummond agreed and that the labor dispute was nearing an end.  Ryan Dillon-Capps repeated this belief and the summarized terms to Robert Brennen on June 18, 2024, at 5:30 PM, when Ryan Dillon-Capps requested that Robert Brennen help negotiate an end to the dispute.  See ECF 16-14, at 20.

156    After Phil Leadore cancelled the meeting with Ryan Dillon-Capps that was scheduled for June 12, 2024, Ryan Dillon-Capps emailed the newly introduced Phil Leadore on June 12, 2024, at 12:48 PM to try and re-engage with him to provide him with access. See ECF 16-2, at 82

157    Phil Leadore responded to Ryan Dillon-Capps on June 12, 2024, at 1:28 PM, stating that Glenn Norris would reach out to Ryan Dillon-Capps shortly.  See ECF 16-2, at 82.  This was the last time Phil Leadore or Daniel Levett ever responded to or contacted Ryan Dillon-Capps.

158    Richard Hartman emailed Ryan Dillon-Capps on June 13, 2024, at 9:01 AM demanding that he immediately come off FMLA leave to give Phil Leadore Global Administrator access by June 13, 2024, at 3 PM, and if Ryan Dillon-Capps does not complete the task by 3 PM that it will result in adverse employment consequences.  See ECF 23-5, at 14. The email stated it was from Glenn Norris, but Glenn Norris was not CCed on the email.

159    Ryan Dillon-Capps was in favor of Phil Leadore receiving access, and complied with the coercive demand, and then notified Richard Hartman and Glenn Norris that he was waiting on Phil Leadore to respond. See ECF 23-5, at 11-12.

160     Believing that Justin Drummond and the other owners would intervene to stop Richard Hartman and Glenn Norris, Ryan Dillon-Capps followed up at 2:05 PM on June 13, 2024, urging them to act. See ECF 16-0, at 17-20.

161     Darren Koritzka sent Ryan Dillon-Capps a text message at 2:20 PM showing a letter that he had been place on absence by Richard Hartman, and Darren Koritzka took that as he was being let go. See ECF 16-0, at 27.

162     Even if Glenn Norris issued the demand at 9:01 AM on June 13, Ryan Dillon-Capps believed Richard Hartman was retaliating against the 2:05 PM and viewed his actions as extreme because it was directed at what Ryan Dillon-Capps viewed as the first person he saw involved in the labor dispute.  The act of someone who was not in control of themselves and representing a dangerous situation to other employees, his wife, and himself.  This is further supported by prior incidents where Richard Hartman responded with disregard for decorum and reflected a lack of self-control.  However, those prior situations were limited to an inappropriate email, and this was reflective of escalating hostility involving direct contact with employees who had nothing to do with his coercive demands.  Darren Kortizka's only connection was that he was involved in the labor dispute, and in the office when Richard Hartman lost control.

163     At 2:22 PM on June 13, 2024, Ryan Dillon-Capps texted Victor Brick and Lynne Brick a copy of the picture showing the letter given to Darren Koritzka. See CF 16-0, at 32-33.

164     At 2:29 PM on June 13, 2024, Ryan Dillon-Capps texted Mareann Pinera to inquire about her safety and then directed her to go work from home for the day.  See ECF 16-0, at 30-31

165     On June 13, 2024, at 2:48 PM, Ryan Dillon-Capps emailed Justin Drummond, Stacey Wittelsberger, C. Victor Brick, Lynne Brick, Terry Wood, and Earl Ihle to inform them of

Richard Hartman's retaliation to the 2:05 PM email by providing the letter Darren Koritzka had received.

166     Starting at 3:29 PM through 3:52 PM on June 13, 2024, Ryan Dillon-Capps attempted to reach

167     At 4:03 PM, on June 13, 2024, Ryan Dillon-Capps started a group text with Karen Cepress and Allyson Ratliff.  Notifying them of what had occurred to have other senior management personnel involved because Justin Drummond, Victor Brick, and Lynne Brick were unresponsive.  Allyson Ratliff had also reported individuals in the Development Department only months apart from Ryan Dillon-Capps, and Ryan Dillon-Capps believed that Allyson Ratliff had also experienced an inappropriate and hostile respond to her complaint. Both are well respected veteran employees and directors at Ohana Growth Partners, LLC. See ECF 16-0, at 34-38.

168     From 3:12 PM until 5:49 PM on June 13, 2024, Ryan Dillon-Capps rapidly messages Justin Drummond who repeats that everything will be okay and taken care of and that I should wait because it is being taken care of.  See ECF 16-0, at 45-64.

169     From 4:07 PM until 4:14 PM, Ryan Dillon-Capps had a group chat text with Victor Brick, Lynne Brick, and Justin Drummond.  Victor Brick, at 4:13 PM on June 13, 2024, empowered Justin Drummond to resolve the issue. See ECF 16-0, at 40.  After the text conversation with Justin Drummond, Ryan Dillon-Capps messaged Victor Brick an update at 7:19 PM to let him know that his mother was praying for Vicki Brick, Victor's sick adult daughter.  Victor Brick replies at 7:59 PM with prayer hands.  This is the last message from Victor Brick.  See ECF 16-0, at 41

170    The next message comes from Richard Hartman on June 13, 2024, at 8:47 PM with a notice of suspension without pay for Ryan Dillon-Capps.

171    At 9:01 PM on June 13, 2024, Doubting the legitimacy of the email and viewing it as clear evidence of Richard Hartman's instability hours after the first retaliatory act, Ryan Dillon-Capps responds and adds Justin Drummond to the email thread; believing that Justin Drummond would respond to stop Richard Hartman. See ECF 23-5, at 16.

172    Justin Drummond responds at 9:54 PM (shown by time zone difference as 8:54 PM) on June 13, 2024, and endorses the suspension in complete contradiction to everything else that had occurred. See ECF 23-6, at 5.

173    Ryan Dillon-Capps believing that Richard Hartman had levied is status as Brother-In-Law to Victor Brick and perhaps aided by Glenn Norris was fearful that later that night or over the weekend Richard Hartman would realize that his actions would have consequences and decide to take actions against Ryan Dillon-Capps with his wife, Caroline Dillon-Capps, potentially caught in the middle. Ryan Dillon-Capps and Caroline Dillon-Capps fled from their home and stayed in a hotel, and then changed hotels the next day. See ECF 16-7, 8-9.

174    Staying away from their home until they came home under cover of darkness on Sunday Night.  Ryan Dillon-Capps grabbing something in the dark from the door to unlock it and get in with his hands full of their bags they had packed.  The next morning, on Monday June 17, 2024 Ryan Dillon-Capps was relieved to see the mysterious object was from a process server because a fraudulent lawsuit, at the time, was considered to be far safer than Richard Hartman on his doorstep with a gun.

175    Ryan Dillon-Capps immediately contacted the process server who served Ryan Dillon-Capps at 11:24 AM on June 17, 2024. (See ECF 23-10, at 1)  34 Minutes AFTER Judge

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 42 of 58

2025-02-17

DeSimone Jr. granted the no notice ex parte temporary restraining order at 10:50 AM. (See ECF 16-5, at 3-4)

176    Unaware of the already issued TRO, in relief Ryan Dillon-Capps was able to get restful some sleep after days of worrying about his family's safety, and waking up hours later to go through the paperwork that was served.  Discovering that Miles & Stockbridge P.C. was representing Ohana Growth Partners, LLC (See ECF 23-1, at 10) despite Holly Butlers refusal to confirm representation on June 5, 2024. See ECF 16-0, at 93-96.

177    On June 17, 2024, Ryan Dillon-Capps emailed Robert Brennen and shortly after Robert Brennen responded to the email at around 10:30 PM on June 17, 2024.  Forwarding the never received emails sent to Ryan Dillon-Capps work email and informing Ryan Dillon-Capps that there was an active Temporary Restraining Order against him.  See ECF 16-14, at 3-9.

178    At 10:29 PM on June 17, 2024, Noticing the conflicting orders of the Temporary Restraining Order, Ryan Dillon-Capps asked Robert Brennen to provide instructions on how to logistically comply with an order that directed Ryan Dillon-Capps to continue to not access a system to which the orders also directed him to access the same system. See ECF 16-14, at 10.

179    Robert Brennen responded at 10:33 PM on June 17, 2024, telling Ryan Dillon-Capps that he would provide instructions.  See ECF 16-14, at 10.

180    Ryan Dillon-Capps acquired legal representation the previous week, and forwarded what was emailed to him by Robert Brennen to his attorney.  Ryan Dillon-Capps attorney had then experienced a death in the family at the end of the week, overlapping the events resulting in the suspension, lawsuit, and now active TRO.  The lawsuit filing was in complete contradiction to the truth that Ryan Dillon-Capps had told the attorney, and the presence of the TRO caused the attorney to decide he didn't want to represent what was incorrectly perceived to be a lying client.

Resulting in the newly acquired attorney, Andrew Dansicker, emailing Ryan Dillon-Capps at midnight between June 17-18, 2024, to inform him that he decided to return the retainer fee. Citing that due to the death in his family, a national conference next week, and the fact that Ryan Dillon-Capps has been served with papers for a TRO was not going to be something he could handle. See ECF 16-2, at 164.

181     Shortly after that email, Ryan Dillon-Capps experienced his first dissociative episode. Caroline Dillon-Capps found Ryan Dillon-Capps hiding under a table, hiding, and repeatedly saying that they were safe under there. Expressing confusion if this was real or a dream, and asking his wife if she was a ghost. Repeating the same questions to her, and then asking her why she was saying the same thing when she responded to the repeated question. See ECF 16-2, at 176.

182     As the Circuit Court case went on, Ryan Dillon-Capps symptoms continued to get worse. At times realizing that days had passed where Ryan Dillon-Capps had no comprehensible memory of that had happened in 4, 5, and even 9 day stretches at a time.

183     The catatonia became life threatening one night when Ryan Dillon-Capps body temperature dropped rapidly, indicating that the catatonia had worsened into malignant catatonia. Constituting a medical emergency (See ECF 7-1, at 1-2), Caroline Dillon-Capps was unsure what to do because Ohana Growth Partners, LLC had deprived them of their financial base, medical insurance, and if Ryan Dillon-Capps were to be hospitalized then the result would certainly been a lost lawsuit in the state court.

184     Struggling to litigate against severe panic attacks (See ECF 7-1, at 2) and delirium and acute disorientation (See ECF 7-1, at 3), Ryan Dillon-Capps would forgo sleep, good, and other basic needs (See ECF 7-1, at 4) to utilize the time where he could continue the litigation efforts.

Caroline Dillon-Capps noticed exposed wounds on Ryan Dillon-Capps chest, stomach, arms and shoulders that Ryan Dillon-Capps would pick at (See ECF 7-1, at 3). Often unaware that he was doing it Caroline Dillon-Capps would need to physically intervene to redirect and stop the excoriation (skin picking). See ECF 7-1, at 3.

185     Now exceeding 8 months of litigation, Caroline Dillon-Capps has spent nearly that entire time as a full-time care giver for Ryan Dillon-Capps. Emotionally drained, and no longer seeing other patients, in the last month, because it was too difficult to remain focused at work, maintain her own well-being, and care for Ryan Dillon-Capps. See ECF 7-1, at 3.

186     Malignant Catatonia, formerly called lethal catatonia, (See 28-3, at 1) comes with the risk of fatality because it affects autonomic function and other critical body functions (See 28-3, at 3) that present an on-going threat to which Ryan Dillon-Capps could suffer from and die suddenly without any substantial amount of notice or ability to seek emergency treatment. While treatment can improve Ryan Dillon-Capps situation rapidly (see 28-3, at 3) the risk of complications from comorbid conditions (see ECF 28-3, at 3), will present a life-threatening risk for years and necessitates treatment without delay or hinderance (see ECF 28-3, at 2-3). A situation that can not be remedied until relief and resolution from the Court addressing the equally life altering catastrophic harm experienced by the financial default.

## FINANCIAL DEFAULT

**187**     On June 13, 2024, at 8:47 PM, Richard Hartman continued the retaliation by suspending Ryan Dillon-Capps without pay. See ECF 23-5, at 16-18.

188     On August 20, 2024, at 10:58 AM, Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duval filed a Request for Entry of Default against Ryan Dillon-Capps on behalf of Ohana Growth Partners, LLC. See ECF 16-15, at 69.

189     On August 20, 2024, at 2:54 PM, Judge Battista granted the request and entered an order of default against Ryan Dillon-Capps without taking supporting testimony.  It was docketed on August 21, 2024, at 12:43 PM. See ECF 16-5, at 24.

190     On August 20, 2024, at 5:05 PM,  Ryan Dillon-Capps filed his opposition to Request for Entry of Order of Default.  See ECF 16-1, at 3.  It argued that applicable preliminary motions had been filed by Ryan Dillon-Capps and the time to file an answer had been automatically extended.

191     On August 26, 2024, at 11:40 PM, Ryan Dillon-Capps filed a Motion to Dismiss for insufficient service/notice before issuing the TRO, and subsequent denial to have a hearing on the TRO. See ECF16-1, at 3.  (See Section on No Notice Ex Parte Temporary Restraining Order for additional information.)

192     On September 9, 2024, Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duvall filed an Opposition to Ryan Dillon-Capps motion to dismiss and argued:

1.      The motion was filed late, which is shown to be invalid in the subsequent granting to vacate the default order on the grounds of automatic extension had moved the time to answer.

2.      No answer had been given and therefore Ryan Dillon-Capps waived the right to file such a motion,  legally irrelevant as the motion is mandatory to file before an answer.

3.      Ryan Dillon-Capps was given personal service which included a certificate of notice regarding the TRO, an invalid argument because personal service occurred after the issuance of the TRO.

See ECF 16-15, at 81-86.

193     On September 17, 2024, Judge Stringer denied Ryan Dillon-Capps motion to dismiss, and it was docketed the same day.  See ECF 16-5, at 28.

194     On September 20, 2024, at 11:56 PM, Ryan Dillon-Capps filed a motion to vacate the order of default.  See ECF 16-7, at 6.  It repeated the arguments set forth in the opposition to the request.

195     On September 23, 2024, Robert Brennen, Steven Frenkil, Victoria Hoffberger, and Jessica Duvall filed opposition to Ryan Dillon-Capps motion to vacate. See ECF 16-15, at 89-92.

196     On September 25, 2024, at 6:13 AM, Ryan Dillon-Capps filed a motion to strike the opposition to vacate because it contained perjured statements and legally irrelevant arguments that were also inflammatory and improper. See ECF 16-5, at 30.

197     On October 4, 2024, Ryan Dillon-Capps filled the Affidavit of Harm and notified the Circuit Court of Baltimore County of eminent financial default.  Citing it had been 45 days since Ryan Dillon-Capps had filed a motion in opposition to the request for entry of default order. See ECF 16-7, at 6.

198     On October 7, 2024, at 12:06 PM, Ryan Dillon-Capps filed Affidavit of Financial Urgency, unredacted exhibits, redacted exhibits, and form MDJ008 notice of restricted information as docket 18307794.  See ECF 16-1, at 4. See screenshot below labeled as Figure FD:1, FD: 2.

**Figure FD:1**

☐  1.  **RESTRICTED DOCUMENT - The entire document is not subject to inspection.**
☐  **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*
☒  **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*

**Figure FD:2**

That information consists of  <u>Aggregate of Financial Standing and Creditworthiness</u>
                                                    (Give a description of the information and not the actual restricted information.)
The information is made confidential by Rule(s)  <u>MD Gen. Prov. § 4-336</u>  or by court order dated _____

199     On October 8, 2024, at 7:12 AM, Clerk Ensor marked the unredacted exhibits and the form as deficient citing that a box was not checked.  There was no ambiguity as a box was clearly selected which indicated the basis, and below included the information and applicable rule. See screenshot below labeled as Figure FD:1, FD: 2,  FD:3, and FD:4.

**Figure FD:3**

| |
|---|
| 3rd Circuit |
| C-03-CV-24-002264 |
| Ohana Growth Partners, LLC vs. Ryan Dillon-Capps |
| 10/7/2024 12:06 PM EST |
| 10/8/2024 7:12 AM EST |
| Box 1 or 2 must be checked on the notice |
| Deficient Filing |
| affidavit-financial-urgency-mdj008 |
| EFileAndServe |
| Ryan Dillon-Capps |
| |

**Figure FD:4**

MDJ-008 (Rev. 06/2023)
Deficient per Rule 20-203(d). Unless corrected, not a valid pleading or paper

200    On August 8, 2024, at 9:54 AM, Ryan Dillon-Capps refiled the unredacted exhibit, affidavit, form with the checkbox marked, and a motion for urgent hearing on constitutional rights to review Ensor's on-going interference on Ryan Dillon-Capps filing evidence. See ECF 16-1, at 4. The Circuit Court for Baltimore County record has since been updated so that the second form submitted has been replaced by the first form filed.

201    From October 8 to 10, 2024, Clerk Ensor marked deficient two more filings seeking an administrative judge hearing (See ECF 16-1, at 4; ECF 16-5, at 33-38) before Ryan Dillon-Capps forwarded the already filed third request to the administrative judge's desk.  Including marking filings deficient that had the screenshots integrated directly into the motion as a figure and labeled clearly but blocking them on the basis that the figures were not permitted to be filed inside the motion. See ECF 16-5, at 37.

202    Judge Finifter was filling in for Judge Robinson Jr. and granted the motion on October 10, 2024; directing the clerk to submit the October 8th motion for an urgent hearing to address the violations of constitutional rights and Md. Rule 1-201 to a motions judge for ruling.  The ruling was docketed on October 11.  See ECF 16-5, at 39.

203    On October 15, 2024, at 3:24 PM, Ryan Dillon-Capps filed to a motion for injunctive relief due to the financial urgency (See ECF 16-5, at 49), and a motion to expedite the hearing from Judge Finifter's order.  The Motion to expedite the urgent hearing granted by Judge Finifter on October 10, 2024, was denied on October 16, 2024.  See ECF 16-5, at 47-48.

204    Obstructed Financial Exhibits had additional exhibits, notable by the dates on the exhibits, added before filing with the Court. See ECF 16-7, at 132-198.

205    Stringer granted the motion and vacated the order of default on October 10, 2024.  The order was docketed on October 16, 2024.  See ECF 16-5, at 29.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 49 of 58
.    2025-02-17

206    On October 17, 2024, at 10:55 AM, Ryan Dillon-Capps filed to request enforcement of Judge Finifter's ruling and to have the hearing scheduled. See ECF 16-5, at 54.

207    On October 24, 2024, at 5:43 PM, Judge Finifter reversed his position and ruled to strike the evidence marked deficient by Ensor in the October 8th, 2024, filing. See ECF 16-5, at 41.

208    On October 28, 2024, Judge Stringer ruled the motion for the urgent hearing that Judge Finifter granted as Moot because the Plaintiff had filed to voluntarily dismiss their case, and it was docketed on October 29, 2024.  See ECF 16-5, at 53.

209    On November 6, 2024, Judge Stringer granted the voluntary dismissal of Ohana Growth Partners, LLC case, and denied Ryan Dillon-Capps motion for a hearing on injunctive relief due to financial urgency. See ECF 16-5, at 49.

210    On  November 7, 2024, Judge Robinson Jr. denied the motion to requesting enforcement of Judge Finifters Ruling citing the claim of the clerk marking those rulings deficient and that Judge Finifter had granted the hearing request was factually incorrect; adding that the court had granted Ohana Growth Partners, LLC dismissal and the case was closed.  See ECF 16-5, at 54.

211    On February 17, 2024, Ryan Dillon-Capps vehicle is being assigned for repossession. See screenshot below labeled as Figure FD:5

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review

2025-02-17

Page # 50 of 58

**Figure FD:5**

**Account Ending In:** 57401
**Vehicle:** 2017 Chrysler 300
**Total Amount Due:** $1,077.00
**Regular Payment Amount:** $359.00

Ryan,

Your account is past due.

**Payment is needed on or before 02/17/2025 to prevent your
vehicle from being assigned for repossession.**

We may be able to help you avoid this if you're currently
experiencing a financial hardship. Contact us at 800-967-8526 to
discuss your options, or log in to your account at Bridgecrest.com to
make a payment.

212    Ryan Dillon-Capps primary checking account is facing closure because of a negative

balance. See screenshot below labeled as Figure FD:6

**Figure FD:6**

Unfortunately, your account has a negative balance — please make a deposit
right away to avoid having your account closed.

213    Ryan Dillon-Capps electric is at risk of being disconnected.  See screenshot below

labeled Figure FD:7.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 51 of 58

2025-02-17

**Figure FD:7**

To avoid late payment charges or termination, please remit payment as soon as possible. To view this payment or submit another payment online, please sign in to your BGE online account .

Please note that any payment made after the indicated due date, or for less than the total amount due, may result in your service being disconnected.

214    Ryan Dillon-Capps, Caroline Dillon-Capps, and his disabled brother and elderly mother's

mobile service is overdue and at risk of being disconnected.  See screenshot below labeled

Figure FD:8.

**Figure FD:8**

Past Due Amount: **$337.94**
Total Amount Due: $337.94
Account Number: 4974
Date:         02/04/2025

Hello,

This is a friendly reminder that your wireless bill is now due. If you've already paid or made a payment arrangement, then you're all set. To check your balance or to make or schedule a payment today:

215    Ryan Dillon-Capps revolving credit accounts are being closed.  See screenshot below

labeled Figure FD:9.

**Figure FD:9**

Change:        Account Closed

Company:       CITICARDS CBNA

Reported by:   Experian

**FACTS**

After Judge Battista granted a premature default order, Ryan Dillon-Capps filed opposition the same day, but it remained active for 57 days before it was vacated because it exceeded judicial discretion.

It was only vacated after Ryan Dillon-Capps began escalating the issue and raising the alarm to numerous agencies.

Ryan Dillon-Capps answered Ohana Growth Partners, LLC complaint by motion, including the submission of an Affidavit which provided a line-by-line response of what was accepted and denied, before Ohana Growth Partners, LLC  filed to Voluntarily Dismiss their case.

Ohana Growth Partners, LLC ceased substantive litigation in June; Confirming in July that they had not needed Ryan Dillon-Capps because they were able to access the Global Admin accounts on their own.

Financial Default was completely avoidable and their absence of adjudication toward their own claim during the months where default occurred and progressed demonstrates the purposeful intention to inflict financial harm

Ryan Dillon-Capps had filed counter claims including motions seeking injunctive relief, sanctions, reciprocal relief, declaratory relief, and judgement against Ohana Growth Partners, LLC.

Clerk Ensor obstructed evidence from being entered and from hearings from being entered onto the docket.

In every instance where Clerk Ensor acted to obstruct filings, Ryan Dillon-Capps eventually got the exhibits and other filings onto the record. Not because the filing changed, but because other factors influenced the situation.

After Judge Finifter granted a hearing, Ryan Dillon-Capps redirected counterclaims to be adjudicated during the hearing, requested depositions, requested discovery to compel Ohana Growth Partners, LLC and Miles & Stockbridge P.C. to produce evidence or be held accountable for their ethical and legal violations

Ohana Growth Partners, LLC filed to voluntarily dismiss the day after the counterclaims were filed and directed to be adjudicated at the granted hearing.

After Robinson Jr returned from meeting with DeGonia II and Bernstein, the Court began changing the court record, ruling moot or otherwise denying filings to prevent adjudication of Ryan Dillon-Capps claims, and granted the voluntary dismissal.

Preventing Ryan Dillon-Capps from petitioning the state court for redress and due process violations are responsible for causing the financial defaulting to worsen to catastrophic levels

## CREDIT RATING COLLAPSE

216    On June 7, 2024, Ryan Dillon-Capps credit score with Equifax was 746, and by October the score had dropped to 651. See ECF 16-7, at 133.

**217**    On June 13, 2024, at 8:47 PM, Richard Hartman continued the retaliation by suspending Ryan Dillon-Capps without pay. See ECF 23-5, at 16-18.

218    Data captured in October 2024, after expending most of the available credit and facing default, the supporting evidence showed that Ryan Dillon-Capps had a 100% payment history, no derogatory marks, and only 1 hard inquiry.  See ECF 16-7, at 150.

219    Ryan Dillon-Capps had used savings to pay for an expensive wedding in April 2024.  The lack of income and the high cost of litigation forced Ryan Dillon-Capps to rely on credit more quickly than he would have had otherwise.  Forcing Ryan Dillon-Capps revolving and debt unrelated to assets to soar to $194,996. See ECF 16-7, at 134.

220    In November, the effects of financial default caused Ryan Dillon-Capps credit score to drop down to 597.  See ECF 16-7, at 154.

221    In December, the effects of financial default caused Ryan Dillon-Capps credit score to drop down to 477. See ECF 16-7, at 198.

222    On February 6, 2024, a day before the motion seeking injunctive relief with the Court, the effects of the financial default caused Ryan Dillon-Capps credit score to drop down to 389. See ECF 25-0, at 5.

223    10 Days later, on February 16, 2024, the effects of financial default have caused Ryan Dillon-Capps credit score to drop down to 355 . See screenshot below labeled as Figure CRC:1.

**Figure CRC:1**



SUMMARY STATEMENT

224    I hope that the Court can see from this affidavit that nothing which has been previously

asserted is exaggerated and better understands the critical importance of an evidentiary hearing

to address any further misunderstandings.  As the Court has stated on January 8, 2024, I have

provided over 2,000 pages of evidence, (See ECF 18-0, at 1) and while this affidavit is limited to

the relevant scope of the Temporary Restraining Order the evidence filed to the Court, which has

been misunderstood, supports all the other claims asserted as well.

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 56 of 58
2025-02-17

225     My claims and the supporting evidence were never about a judicial review of adjudication but are to petition the court to seek relief for violations of the law to which this Honorable Court has jurisdiction.

226     FMLA, ADA, Norris-La Guardia, fraud, insurance fraud, fraud upon the court, defamation, abusive use of the judicial system, and perjury are just a few of the violations that this affidavit and the evidence cited fully supports.  Herein contains offenses to which criminal charges with jail time are fully established and should necessitate a formal investigation.

227     The plausibility standard should swing heavily in my favor, and I hope that the Court agrees because the violations of law are real and supported by evidence. The harm to my self is supported by firsthand eye-witness expert testimony.  The financial harm is supported by evidence. The evidence that I had proposed to provide under seal is digital forensic data to which I am a qualified IT expert who has worked with numerous government agencies and a broad range of classified materials.

228     I have no control over what they did, and the reason I filed the case with such an abundance of supporting evidence is because I fully understand that the more egregious their violations of the law were the more evidence was needed.  The more they did, and the more evidence gathered to prove it has the ironic effect of being more difficult to understand and therefore more easily misunderstood and then disregarded.

229     This affidavit only touches on a handful of days and violations. The lawsuit lasted until November, the next two affidavits are also based on perjured statements, and after that they never submit any more material evidence.

230     During discovery, we may find out quickly that Randall Romes was not even fully responsible for his affidavit because the evidence supports that possibility.  Additionally, the

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 57 of 58

2025-02-17

evidence supports that Judge Barranco and Judge Truffer both knew about this and aided its

submission onto the court's record and obstructed the question on cross examination to prevent

this information from being discovered in open court.

## DECLARATION OF AFFIRMATION

I solemnly declare and affirm under penalty of perjury, based on my personal knowledge, that
the contents of the foregoing affidavit and all accompanying exhibits are true and correct to
the best of my knowledge.

**February 17, 2025**

/s/ Ryan Dillon-Capps
**Ryan Dillon-Capps**

1334 Maple Avenue
Essex, Maryland 21221
ryan@mxt3.com
703-303-1113

Affidavit of Ryan Dillon-Capps in Support of Plaintiff's Emergency Motion for Reconsideration of Denial of
Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review
Page # 58 of 58

2025-02-17