## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RYAN DILLON-CAPPS, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 24-3744-BAH |
| OHANA GROWTH PARTNERS, LLC, ET AL., | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>ORDER</u>

The Fourth Circuit recently dismissed Plaintiff Ryan Dillon-Capps's ("Plaintiff's") appeal for lack of jurisdiction. *See* ECF 52 (judgment); ECF 53 (mandate). The Court hereby LIFTS the stay that was in place while the appeal was pending.

Pending are Plaintiff's "Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review," ECF 28, and "Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction," ECF 33. The Court has considered these motions and will deny both for the same reasons outlined in the orders denying earlier motions for emergency injunctive relief, ECFs 18, 22, and 27.

Plaintiff has also filed a request for summonses, ECF 30. The Court will deny this request as premature, given that the Court will require Plaintiff to file another amended complaint as described below. The pending motion to seal, ECF 41, will be granted.

At the Court's direction, Plaintiff filed an amended complaint. ECF 18 (order outlining directions for filing an amended complaint); ECF 26 (amended complaint). However, that

amended complaint does not comply with the Court's instructions. Plaintiff will be given one more opportunity to file an amended complaint that does meet the Court's requirements.

As an initial matter, Plaintiff "asserts that no claims, whether previously stated, unstated, or implied, have been waived, abandoned, or otherwise forfeited at any time." ECF 26, at 2 ¶ 2. Plaintiff further contends that the amended complaint "should not be construed as a concession of any factual or legal determinations previously made by the Court. Plaintiff expressly maintains that all claims, both stated and unstated, remain preserved to the fullest extent allowed by law." *Id.* ¶ 3. While Plaintiff may preserve issues for appeal, only the claims that the Court determines are cognizable and for which Plaintiff has stated a plausible claim for relief may proceed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's amended complaint suffers from a number of defects. Beginning with the more technical issues, the Court previously instructed Plaintiff that the amended complaint must comply with the following rules:

> Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, each "allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(l). "Threadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court's Local Rules also require that "[a]ny pleading that states a claim for relief shall set forth each count separately and provide a clear statement of the supporting facts for each count." Loc. R. 103.1(c) (D. Md. 2023). Local Rule 103 also limits complaints to forty (40) pages in length. Loc. R. 103.1(d).

ECF 18, at 16–17. Plaintiff's 68-page amended complaint purports to bring sixteen counts with 126 "sub-counts." *See* ECF 26, at 32–67. While it does lay out groups of counts separately, Plaintiff lists the "sub-counts" without setting forth a clear statement of the supporting facts for each "sub-count" in contravention of the pleading requirements noted previously.

2

More substantively, Plaintiff continues to advance previously dismissed claims involving previously dismissed defendants. *See, e.g.*, ECF 26, at 21–22 ¶ 53 ("Over the course of more than five months, the original conspirators—Ohana Growth Partners, LLC and Miles & Stockbridge, P.C.—delegated most of their efforts to a second group of conspirators: a coalition of Robert Brennen, Clerk Ensor, and Judges DeSimone Jr, Truffer, Barranco, Battista, Alexander, Mayer, Stringer, and Robinson Jr."); ECF 18, at 16 (dismissing conspiracy claims involving Plaintiff's "former employer, state court judges and staff, opposing counsel, and professional ethics bodies"); ECF 26, at 65–67 (asserting claims under the Norris-LaGuardia Act because "[t]he Defendants' fraudulent injunction lawsuit constitutes a direct violation of the Norris-LaGuardia Act (NLA)"); ECF 18, at 10–11 (finding the Norris-LaGuardia Act inapplicable to Plaintiff's claims).

The amended complaint also suffers from substantive defects not previously addressed. First, while Plaintiff cites a number of federal regulations, *see e.g.*, ECF 26, at 6, 37, 39, and 44, regulations alone do not create a private right of action. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291.

Plaintiff also brings claims pursuant to federal criminal statutes. *See* ECF 26, at 44 (18 U.S.C. §§ 1341, 1343), at 46 (18 U.S.C. §§ 1341, 1702), at 47 (18 U.S.C. § 1343), at 56 (18 U.S.C. §§ 1962(c), 1962(d), 1589, 1513, 1951, 1503, 1512, 241, 1956, 1519, and 1001). Unless Congress specifically indicates otherwise, federal criminal statutes do not create private rights of action. *See Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987). The Court has already explained that "18 U.S.C. § 241 is a federal criminal statute that does not create a private right of action." ECF 18, at 15. And Plaintiff again purports to bring a RICO claim. *See* ECF 26, at 56

3

(citing 18 U.S.C. §§ 1962(c), 1962(d)).  "To make out a civil action for damages under the RICO statute, a private plaintiff must demonstrate not only that the defendants have violated § 1962, but also that he has been 'injured in his business or property by reason of [the alleged] violation of section 1962.'" *Kimberlin v. Hunton & Williams LLP*, Civ. No. GJH-15-723, 2016 WL 1270982, at *11 (D. Md. Mar. 29, 2016) (quoting 18 U.S.C. § 1964(c)), *aff'd,* 671 F. App'x 127 (4th Cir. 2016).  "RICO is 'not available for the redress of purely personal injuries.'" *Id.* (quoting *Hickman v. Obama,* Civ. No. JKB-13-1284, 2013 WL 2390869, at *1 (D. Md. May 29, 2013)), *aff'd,* 671 F. App'x 127 (4th Cir. 2016).

Section 1915(e), the statute under which the Court evaluates Plaintiff's amended complaint, "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  As such, "the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*  The Court has previously found that Plaintiff has not plausibly stated a conspiracy claim and determined that Plaintiff's allegations concerning the state case brought against Plaintiff essentially challenge the state court's rulings, which this Court does not have jurisdiction to review.  ECF 18, at 5–9, 16.  Plaintiff's re-assertion of those claims in the amended complaint does not change the Court's analysis.  As before, Plaintiff has not made out a plausible RICO claim.  The RICO claim (and any other conspiracy claims) cannot proceed.

The Trafficking Victims Protection Act *does* permit a private person to bring civil action for alleged forced labor in violation of 18 U.S.C. § 1589 through § 1595. *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 195 (D. Md. 2019). "Section 1589 was 'passed to implement the Thirteenth Amendment against slavery or involuntary servitude.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (quoting *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). "Under § 1589, 'Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion, as well as through physical or legal coercion.'" *Fadlalla*, 402 F. Supp. 3d at 195 (quoting *Muchira*, 850 F.3d at 617). Plaintiff asserts that the imposition of a financial penalty or incarceration by the state court for failure to abide by state court orders constitutes forced labor under this statute. *See* ECF 26, at 59 ¶ 90 ("The defendants' actions also violated 18 U.S.C. § 1589, as the plaintiff was coerced into compliance under threat of financial penalties and incarceration. Judge Barranco's imposition of $2,500 daily fines and fabricated show-cause orders weaponized judicial authority to force submission to fraudulent rulings. These penalties and threats of incarceration, orchestrated in conjunction with fabricated records, constituted forced labor through coercive judicial practices."). The facts alleged do not constitute a cognizable claim for forced labor. *See United States v. Kozminski*, 487 U.S. 931, 943–44 (1988) (noting that "the Court has recognized that the prohibition against involuntary servitude [in the Thirteenth Amendment] does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties"); *Neill v. Weinstein*, Civ. No. 01-2333, 2001 WL 34036322, at *3 (D. Md. Nov. 14, 2001) ("The prohibition against involuntary servitude is not, nor should it be, so rigorous as to prohibit all forms of labor that a citizen is compelled to perform for the benefit of another or society in general.").

None of the other criminal statutes Plaintiff cites afford Plaintiff a civil remedy. *See Fed. Sav. & Loan Ins. Corp.*, 816 F.2d at 137 (no private cause of action under § 1001); *Sutton v. Capstone Bank*, No. 5:13-CV-00461-FL, 2013 WL 5937450, at *1 (E.D.N.C. Nov. 4, 2013) ("[T]here is no private cause of action for violation of 18 U.S.C. §§ 1341 and 1343."); *Taylor v. Grubbs*, No. 2:15-CV-4958-RMG-MGB, 2016 WL 11201765, at *10 (D.S.C. Nov. 8, 2016) ("Plaintiff has no private right of action under 18 U.S.C. §§ 1701, 1702."), *report and recommendation adopted,* No. 2:15-CV-4958-RMG, 2017 WL 464373 (D.S.C. Feb. 3, 2017), *aff'd,* 783 F. App'x 304 (4th Cir. 2019); *Shallow v. Fed. Bureau of Investigation*, No. 1:19-CV-229, 2019 WL 2718493, at *2 (E.D. Va. June 27, 2019) ("18 U.S.C. § 1513 [is a] criminal statute[] that do[es] not create a private right of action."), *aff'd,* 788 F. App'x 189 (4th Cir. 2019); *Moore v. Scott*, Civ. No. 24-2210-BAH, 2024 WL 4529268, at *4 (D. Md. Oct. 18, 2024) ("18 U.S.C. § 1512 does not authorize a private cause of action for money damages."); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) ("The statute at issue here, 18 U.S.C. § 1956, does not express a private right of action."); *Nezbeda v. Liberty Mut. Ins. Corp. (LIC)*, 306 F. Supp. 3d 1335, 1350 (N.D. Ga. 2017) ("The Hobbs Act [18 U.S.C. § 1951] does not provide a private right of action[.]"), *aff'd sub nom. Nezbeda v. Liberty Mut. Ins. Corp.*, 789 F. App'x 180 (11th Cir. 2019); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997) ("18 U.S.C. § 1503 is a criminal statute that does not provide for a private cause of action."), *aff'd,* 525 U.S. 299 (1999), *and overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012); *Downer v. Bureau of Land Mgmt.*, No. 20-CV-191-SWS, 2020 WL 13049422, at *9 (D. Wyo. Nov. 2, 2020) (collecting cases finding that "18 U.S.C. § 1519 does not create a private cause of action available for a private citizen to enforce"). None of Plaintiff's Title 18 claims may proceed.

Next, Plaintiff purports to bring a claim for withholding of COBRA paperwork, including nine "sub-counts" under COBRA, ERISA, the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law § 13-301 et seq., federal regulations and federal criminal statutes, *see* ECF 26, at 44–45, as well as a claim for "insurance fraud," citing federal regulations and criminal statutes, and the MCPA, *id.* at 45–46. The only allegation associated with the "withholding COBRA paperwork" claim is as follows:

> Ohana Growth Partners, LLC, evidence suggests Richard Hartman, modified the RDCs [Plaintiff's] information so that the COBRA paperwork was sent to them, likely at the 212 HQ address, where they held the paperwork. Digital communications were used to make the change, US Postal Service was used in the mailing, and they knew better when they were making those changes. The Allegation portion is that it is Richard Hartman, shipped to 212 HQ address. It is a fact that it was redirected and mailed a second time.

*Id.* at 44–45 ¶ 48. And the only allegation coupled with the "insurance fraud" count (and its "sub-counts") is:

> ALLEGATION – who is the allegation. What was done is a FACT. After receiving the redirected COBRA packet Richard Hartman/Ohana Growth Partners, LLC. opened it, Altered the date on the document, failed to alter all of the dates making it obvious that the document had been altered. Then used the US Postal Service to mail it to RDC. Ohana Growth Partner, LLC. provided options for employees to purchase. We will be seeking digital and physical discovery.

*Id.* at 46 ¶ 49 (capitalization in original). These allegations are plainly insufficient to support a claim under the MCPA, which does not pertain to the employee-employer relationship. *Cf. Howes v. New York Life Ins. Co.*, Civ. No. PWG-16-2952, 2017 WL 1176087, at *3 (D. Md. Mar. 30, 2017) ("[A]s the statute's title suggests, the MCPA provides a remedy to injured consumers, not vendors."). For the reasons explained above, the regulations and criminal statutes cited do not afford Plaintiff a private right of action. To the extent Plaintiff intends to bring a COBRA claim, that claim cannot proceed as pled if for no other reason than Plaintiff has not named the plan administrator. *See Scivetti v. Compass Inc.*, No. 24-CV-3868 (DEH), 2025 WL 3097331, at *7

(S.D.N.Y. Nov. 6, 2025) ("Because liability hinges on status as the plan administrator, Courts have dismissed COBRA notice claims without prejudice where no specific plan administrator is alleged."). Plaintiff should ensure that Plaintiff has alleged each element of the claim, including the identity of the administrator, should Plaintiff wish to pursue a COBRA claim in the amended complaint.

In Count XII, Plaintiff asserts a claim related to "PCI [payment card industry] compliance consumer protection violations," and cites Maryland, federal, D.C., California, Washington, Tennessee, and Florida consumer protection statutes. *See* ECF 26, at 48. While Plaintiff broadly alleges that Plaintiff's former employer failed to meet PCI DSS (Payment Card Industry Data Security Standard) compliance, Plaintiff has not described *how* in any detail, and the specific allegations make clear that the essence of Plaintiff's claims pertain to representations made during the state court litigation. *See, e.g.*, *id.* at 49 ¶ 61 ("Ohana Growth Partners, LLC and Miles & Stockbridge, P.C. disseminated misleading statements in legal filings and arguments, falsely representing PCI DSS compliance issues as unrelated to consumer protections. PCI DSS standards are critical to safeguarding consumer payment information by ensuring the secure handling of sensitive financial data. The defendants' misrepresentations, designed to deceive reasonable consumers and courts, concealed non-compliance with these essential consumer protection standards, causing significant harm to the plaintiff and consumers who relied on the integrity of these claims." (emphasis omitted)). Further, the connection to any states other than Maryland is entirely unclear. These claims may not proceed.

In Counts XIII and XIV, Plaintiff purports to bring claims under the federal and Maryland False Claims Act, the Maryland Public Information Act claims, and various other states' analogous statutes. *Id.* at 51–56. These claims cannot proceed. First, they center on the "fraudulent lawsuit

against the plaintiff" and are premised on allegations of a conspiracy by opposing counsel to that suit, judges and court staff, and oversight bodies that the Court previously dismissed. *See id.* at 53–55 ¶¶ 68–81; ECF 18, at 16. Moreover, the statutes cited are plainly inapplicable here. "The FCA protects the government fisc by 'impos[ing] civil liability on persons who knowingly submit false claims for goods and services to the United States.'" *United States ex rel. Maharaj v. Est. of Zimmerman*, 427 F. Supp. 3d 625, 645 (D. Md. 2019) (quoting *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016)); *id.* at 633 (noting that Maryland's False Claims Act statute is analogous). Plaintiff makes no allegations that any defendant made such a false claim for money against the United States or Maryland. *See* Md. Code Ann., Gen. Provis. § 8-101(b)(1) (defining "claim" as a "request or demand . . . for money or other property"); 31 U.S.C. § 3729(b)(2) (defining "claim" as "any request or demand . . . for money or property"). Further, Plaintiff may not pursue the False Claims Act claims pro se. *See Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020) (holding that a litigant "cannot bring a pro se [False Claims Act] qui tam action" and noting "the consensus amongst all circuits to have squarely considered the issue"). The Maryland Public Information Act, which "establishes a public policy and a general presumption in favor of disclosure of government or public documents," *Kirwan v. The Diamondback*, 721 A.2d 196, 199 (Md. 1998), is also not applicable here. Nor is the Court aware that other states' analogous laws cited would result in a different outcome under those statutes, should they even be applicable. Plaintiff may not pursue these claims.

At bottom, Plaintiff's only viable claims stem from Plaintiff's treatment and termination by Plaintiff's former employer. As such, if filed, the Court expects an amended complaint that complies with this order to contain claims only against Plaintiff's former employer related to the

events leading up to and including Plaintiff's termination. Plaintiff's amended complaint, which will be limited to 40 pages in length, must comply with the requirements noted herein.

Accordingly, it is this 26th of January, 2026, by the United States District Court for the District of Maryland hereby ORDERED that:

(1) The stay is hereby LIFTED;

(2) Plaintiff's "Emergency Motion for Reconsideration of Denial of Temporary Restraining Order and Preliminary Injunction and Request for Expedited Review," ECF 28, is DENIED;

(3) Plaintiff's "Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction," ECF 33, is DENIED;

(4) Plaintiff's request for summonses, ECF 30, is DENIED;

(5) Plaintiff's motion to seal, ECF 41, is GRANTED;

(6) Plaintiff is DIRECTED to file an amended complaint that complies with the requirements noted herein, and does not include any claims dismissed by the Court, within twenty-one (21) days of the date of this order;

(7) Plaintiff is FOREWARNED that failure to file an amended complaint that complies with this order by the deadline will result in dismissal of this action without prejudice and without further order from the Court.

_____/s/_____
Brendan A. Hurson
United States District Judge
